BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN
KIERAN P. RINGGENBERG
BEKO O. REBLITZ-RICHARDSON
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
kringgenberg@bsfllp.com
brichardson@bsfllp.com
*(will comply with LR IA 10-2 within 45 days)*

Attorneys for Counterclaimant Oracle
America, Inc. and Defendant and
Counterclaimant Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON
JOHN A. POLITO
NITIN JINDAL
Three Embarcadero Center
San Francisco, CA  94111-4067
Telephone:  415.393.2000
Facsimile:  415.393.2286
thomas.hixson@morganlewis.com
john.polito@morganlewis.com
nitin.jindal@morganlewis.com
*(will comply with LR IA 10-2 within 45 days)*

DORIAN DALEY
DEBORAH K. MILLER
JAMES C. MAROULIS
ORACLE CORPORATION
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:  650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com
*(will comply with LR IA 10-2 within 45 days)*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation;<br><br>Plaintiff,<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Defendant. | Case No  2:14-cv-01699 LDG VCF<br><br>**COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT;**<br>**(2) VIOLATION OF LANHAM ACT**<br>**(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**(4) INDUCING BREACH OF CONTRACT;**<br>**(5) BREACH OF CONTRACT;**<br>**(6) UNFAIR COMPETITION;**<br>**(7) UNJUST ENRICHMENT / RESTITUTION; and**<br>**(8) AN ACCOUNTING** |
| ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Counterclaimants,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Counterdefendants. | **ANSWER**<br><br>**JURY DEMAND**<br><br>**PUBLIC REDACTED VERSION** |

### ORACLE'S COUNTERCLAIMS AGAINST RIMINI

Counterclaimants Oracle America, Inc. ("Oracle America") and Oracle International Corporation ("OIC") (together "Oracle") for their Counterclaims against Defendants Rimini Street, Inc. ("Rimini") and Seth Ravin (together "Counterdefendants"), allege as follows based on their personal knowledge as for themselves, and on information and belief as to the acts of others:

## I.  INTRODUCTION

1.  These counterclaims mark the latest chapter in the long saga of Rimini's massive theft of Oracle's software, masterminded by its CEO Seth Ravin.  For years, Rimini and Ravin lied to their customers (and to this Court) about how they provide support for various Oracle software products.  Along the way, the Court held Rimini and Ravin in contempt of court for refusing to testify about that support, and later sanctioned Rimini for intentionally destroying evidence of how it provided that support.  Oracle asserts these counterclaims to end Rimini's and Ravin's unlawful conduct, once and for all.

2.  In 2010, Oracle sued Rimini and Ravin for infringement of Oracle's copyrights and other misconduct to provide illegal support services to Oracle customers.  In that case ("*Rimini I*"), the Court has granted or granted in part two Oracle motions for partial summary judgment, establishing Rimini's liability for certain acts of copyright infringement, including (1) copying Oracle's software to locations other than the customers' facilities and (2) copying some customers' software to support multiple customers ("cross-use").  At trial, Oracle will seek additional findings of liability, a substantial award of damages, injunctive relief, and impoundment of all infringing software created by Rimini.

3.  In August 2014, after the Court's second ruling that Rimini had engaged in copyright infringement, Rimini stated publicly that the Court's rulings relate "to processes and Oracle software no longer in use at Rimini."  Rimini did this as a part of a campaign to falsely assure its investors and customers that the rulings in *Rimini I* would "not cause interruptions to service for ANY client or ANY product."  As described below, Rimini's representations were false.  Rimini's "new" process still involves intentional and systematic misuse of Oracle

1

software.  Rimini is both lying to its customers and continuing to infringe Oracle's copyrights.

4.      Rimini's "new" copying, enabled by unlawful downloading from Oracle's websites, violates the same laws as the old support process, as already adjudged by this Court. The new conduct, wrongly advertised to customers as outside the scope of the Court's ruling, necessitates these counterclaims to bring a full stop to Rimini's and Ravin's recidivist illegal copying and cross-use of Oracle's intellectual property.  These counterclaims address the infringement that Oracle knows about based on its investigation to date.  Given Rimini and Ravin's track record of deception and wrongful conduct, Oracle expects that discovery will reveal additional infringement and other wrongdoing.

5.      From its inception, Rimini based its business model on the widespread illegal copying of Oracle's copyrighted software and support materials.  Rimini holds itself out as a support provider to companies that license certain Oracle enterprise software, including its PeopleSoft, J.D. Edwards ("JDE"), Siebel, E-Business Suite, and Oracle Database -branded software.  At every step, Rimini has proclaimed its innocence.  At every step, Oracle has proved Rimini to infringe Oracle's copyrights.

6.      Rimini's "new" model is fundamentally the same as the illegal business model at issue in *Rimini I*.  Rimini simply has shifted some of its illicit activities from its own servers to the cloud, and apparently has continued others.  Rimini and Ravin have not explained – and apparently cannot explain – how they have remedied *any* of the copying and cross-use of Oracle's software this Court held illegal.  Yet Rimini and Ravin continue to recruit Oracle's customers with suspect assurances that they have.

7.      Rimini's "new" business model just extends again the infringing practices Ravin pioneered at SAP TomorrowNow ("SAP TN").  SAP had no choice but to shut down that unlawful enterprise, built on SAP TN's criminal copyright infringement, and Oracle seeks to similarly put an end to Rimini's unlawful activities.  Rimini's and Ravin's copyright infringement and other illegal, wrongful, and unfair business practices threaten irreparable harm to Oracle, its many employees, customers, shareholders, and the industry at large.  Oracle has no adequate remedy at law for the harm threatened and caused by these acts.

## II.      THE PARTIES

8.      On February 15, 2010, Oracle USA, Inc. ("Oracle USA"), a Colorado corporation, merged with and into Sun Microsystems, Inc.  Sun Microsystems, Inc., the surviving corporation, was then renamed "Oracle America, Inc." ("Oracle America").  Counterclaimant Oracle America is a Delaware corporation, with its principal place of business in Redwood City, California.  Oracle America develops and licenses certain intellectual property, including copyrighted enterprise software programs, and provides related services.  Oracle America is the successor in interest to Oracle USA, and Oracle USA is the successor to PeopleSoft USA, Inc. ("PeopleSoft") and a successor in interest to certain PeopleSoft, JDE, and Siebel entities.

9.      Counterclaimant OIC is a California corporation, with its only place of business in Redwood City, California.  OIC owns and licenses certain intellectual property, including copyrighted enterprise software programs used around the world.  Intellectual property rights formerly held by certain PeopleSoft, JDE, and Siebel entities were transferred to OIC as part of Oracle's acquisitions of PeopleSoft and Siebel.  OIC is the owner or exclusive licensee of the copyrights at issue in this action.

10.      Seth Ravin is the founder and CEO and former president of Rimini, and the former President of SAP TN.  He is a resident of Nevada.

11.      Rimini is a Nevada corporation with its principal place of business in Las Vegas, Nevada.  Ravin founded and controls Rimini.

12.      Counterdefendants all are doing business in and have directed their activities at Nevada.  Rimini is headquartered in this district, and Ravin resides in this district.  Rimini also advertises, promotes, sells, licenses, services, and supports customers in Nevada.  Counterdefendants have also committed their unlawful conduct in other states.

13.      At all material times, through his ownership of Rimini and his role as CEO and President, Seth Ravin had both the right and the authority to control, and had a direct financial interest in, Rimini's actions.

14.      At all material times, each of the Counterdefendants was the agent,

3

servant, employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the others, had full knowledge of and gave substantial assistance to the alleged activities, and in doing the things alleged, each was acting within the scope of such agency, service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and each is legally responsible for the acts and omissions of the others.

## III.    JURISDICTION

15.    Oracle's counterclaims fall within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

16.    Oracle's first cause of action arises under the Federal Copyright Act, 17 U.S.C. § 101 *et seq.* and its second cause of action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

17.    This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

18.    This Court also has original subject matter jurisdiction over the state law claims under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the Counterclaimants and Counterdefendants, and the amount in controversy exceeds $75,000.

## IV.    VENUE

19.    Venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because Counterdefendants Rimini and Ravin reside in this district and because a substantial part of the events giving rise to the dispute occurred in this district, a substantial part of the property that is the subject of the action was and is situated in this district, and the Court has personal jurisdiction over each of the Counterdefendants as alleged throughout this Counterclaim.

## V.    DIVISION ASSIGNMENT

20.    Assignment to the Las Vegas division is proper under Civil Local Rule IA 8-1(a), because this action arises, in part, in Las Vegas, where Rimini is headquartered and Ravin

4

1  resides and where, among other places, both engaged in their unlawful conduct.

2  **VI.     FACTUAL ALLEGATIONS**

3       **A.     Oracle's Software And Support Materials**

4            21.     Oracle is the world's largest enterprise software company, and the first to

5  receive J.D. Power & Associates' global certification for outstanding service and support based

6  on measuring customer satisfaction worldwide.  Oracle develops, manufactures, markets,

7  distributes, and services software designed to help its customers manage and grow their business

8  operations.  Oracle's enterprise software and technology offerings include database, middleware,

9  and applications software programs.

10            22.     As is typical in the enterprise software industry, Oracle does not sell

11  ownership rights to its software or related support products to its customers.  Instead, Oracle's

12  customers purchase licenses that grant them limited rights to use specific Oracle software

13  programs, with Oracle retaining all copyright and other intellectual property rights in these

14  works.  In addition, licensed customers can, and typically do, purchase some set of technical

15  support services.  Those services include upgraded products such as updates, bug fixes, or

16  patches to the software programs the customers have expressly licensed from Oracle and have

17  the right to use for purposes authorized by Oracle.

18            23.     Oracle's license agreements with its customers may vary according to the

19  products licensed, including because the customers originally contracted with PeopleSoft, Siebel,

20  and/or JDE, but all of the relevant license agreements for what is now Oracle software set

21  comparable rules for access to, and reproduction, distribution, and use of, that software.  Among

22  other things, those rules prohibit access to, or reproduction, distribution, or use of, any portion of

23  the software not expressly licensed to and paid for by the licensee.  They also prohibit any

24  sublicense, disclosure, use, rent, or lease of the software to third parties.

25            24.     The licenses, with a few exceptions that are not relevant here, also restrict

26  where the customer physically may install the software, to whom it may provide copies, and the

27  purposes for which it may make those copies.  These licensing restrictions are important to

28  protect Oracle's substantial investment in the development of its software.  They also help to

5

1   make worthwhile Oracle's continuous enhancement of its products for the benefit of its

2   customers, which requires significant investment in research and development.

3         25.    Oracle's license agreements define Oracle's confidential information to

4   include, without limitation, Oracle's software, its object and source code, and any associated

5   documentation or service offerings.  In certain instances, licensees may designate third parties to

6   help maintain Oracle's software, but only subject to the terms of the relevant license agreement

7   between the licensee and Oracle.  With a few exceptions that are not relevant here, those

8   agreements generally preclude the third party from installing the software on an offsite server or

9   accessing the source code of the software.  The license agreements generally prohibit the

10  licensee or any third party from using the software offsite without notice to Oracle, prohibit

11  disclosure to third parties, and prohibit any use other than by the customer for production, back

12  up, archival and in-house disaster recovery purposes.  As defined in one illustrative license

13  agreement, "software" specifically includes the update products made available to customers as

14  part of the support contracts that customers purchased from Oracle.

15        26.    Through its Terms of Use, Oracle also restricts access to the technical

16  support websites that Oracle customers or their authorized agents use to access and download

17  Oracle's copyrighted materials licensed to Oracle customers.  These copyrighted materials

18  include software and related updates and instructional materials across the PeopleSoft, JDE,

19  Siebel and Oracle Database families of software products (the "Software and Support

20  Materials").

21        27.    Access to Oracle's Software and Support Materials on its technical

22  websites (including My Oracle Support, Oracle.com, and E-Delivery websites) is governed by

23  the Oracle website's Terms of Use.  These Terms of Use state:  "By accessing or using the Site

24  or the Content provided on or through the Site, you agree to follow and be bound by the

25  following terms and conditions concerning your access to and use of the Site and the Content

26  provided on or through the Site ('Terms of Use') . . . ."  These Terms of Use prohibit users from

27  downloading, storing, viewing, or printing the materials on that website or available for

28  download through the Site other than "solely for personal, informational, non-commercial

6

purposes."  The Terms of Use also prohibit the user from modifying or altering those materials "in any way" and prohibited redistribution.  The Oracle website's Terms of Use further state: "Your use of software is subject to all agreements such as a license agreement or user agreement that accompanies or is included with the Software, ordering documents, exhibits, and other terms and conditions that apply . . . ."

28.     Further, Oracle's E-Delivery website, which provides access to the software applications for Oracle's products, has its own E-Delivery Terms of Use.  These Terms of Use condition access to the site on the following agreement:  "(1) you have already obtained a license from Oracle, or an Oracle partner, for your use of the software and that your Oracle [Agreement] . . . governs your use of the software, or (2) if you have not already obtained a license . . . you accept that the Oracle Trial License Agreement below governs your use of the software for the time specified in such agreement."  The Oracle Electronic Delivery Trial License Agreement in turn states that "[t]his Trial Agreement grants you the temporary right to use the Programs for evaluation purposes on your single computer designated by you. . . . You may use the Programs only for evaluation and testing and not for production use."  The Trial License Agreement prohibits any "use [of] the Programs for commercial timesharing, rental, or service bureau use" and provides that the user may not "duplicate and/or install the Programs other than as specified in this Trial Agreement."

**B.     Rimini's Business Model**

29.     In the world of enterprise software applications, revenue comes from three basic activities:  (a) licenses of the underlying software applications; (b) consulting relating to the implementation and operation of the software; and (c) support contracts to update and upgrade the software.

30.     Rimini provides support services to customers who use Oracle software, including Oracle's PeopleSoft-, JDE-, Siebel-, E-Business Suite- and Oracle Database-branded software.

31.     Rimini claims to compete with Oracle by providing low-cost maintenance and support services to Oracle customers running assorted versions of these software programs.

COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF, ANSWER, AND JURY DEMAND

Rimini advertises that it can cut customer maintenance and support bills in half and give customers a reprieve from software upgrade cycles.  It claims to do so by allowing customers to remain on older, often outdated, versions of Oracle software rather than moving to later versions, and by eliminating fees for fixes and upgrades that customers would otherwise have to pay to remain on the older versions.  Rimini claims to provide such fixes and updates and thereby support outdated software for 10 years past its general availability without additional cost to customers.

32.     In addition to those services, Rimini offers "customization fixes," "tax and regulatory updates," "applications and repository fixes," and "24/7 Support with Guaranteed 30 Minutes or less Response" for software programs to which it has no intellectual property rights. Rimini claims to offer this comprehensive support at "More Than 50% Annual Cost Savings."

33.     Without improperly and impermissibly cross-using one customer's software to create updates and provide support for others, Rimini does not have the development capability to meet the support commitments it advertises at any price, much less the 50% discount it promotes.

34.     Instead, as reflected in the Court's February 13 and August 12, 2014 Orders in *Rimini I*, Rimini's support model depends on infringing Oracle's copyrights and other unlawful acts.  Ravin has caused Rimini to make illegal copies of its customers' licensed Oracle enterprise applications software, which it uses in various illegal ways to offer low-cost support and induce Oracle's customers to cancel their support contracts with Oracle in favor of Rimini.

35.     The day before the Court's February 13, 2014 Order issued in *Rimini I*, Rimini filed for an initial public offering of its stock, with multiple large banks serving as underwriters.  Rimini's public statements and this new suit for declaratory relief suggest that Rimini is seeking to falsely assure its customers that its current business model is not unlawful.

**C.     Rimini's and Ravin's Continued Infringement**

36.     Ravin helped create Rimini's illegal business model at his prior company, SAP TN, with his partner Andrew Nelson.  SAP TN made and used thousands of copies of Oracle's copyrighted software applications and database software and created custom

8

1  programmed tools to "scrape" Oracle's website for bug fixes, patches, updates, and instruction

2  manuals.

3       37.    In 2005, Ravin and Nelson sold SAP TN to the German software

4  conglomerate SAP AG.  SAP AG publicly admitted that SAP TN improperly copied Oracle

5  Software and Support Materials and shut it down in October 2008, having concluded that it could

6  not provide support services without infringing Oracle's intellectual property rights.

7       38.    In March 2010, SAP AG and SAP TN conceded that, during the time that

8  Ravin was managing SAP TN under the supervision and control of SAP AG, SAP TN infringed

9  Oracle's copyrights and violated both the federal Computer Fraud and Abuse Act and California

10 Penal Code section 502(c)(7) by unlawfully accessing Oracle computers.  SAP TN pled guilty to

11 federal criminal charges of illegally downloading Oracle's software and wilfully infringing

12 Oracle's copyrights during that time.

13      39.    After Ravin left SAP TN, he founded Rimini.  Ravin has admitted that

14 Rimini mimics and expands the SAP TN model:  "Our [Rimini's] basic model for

15 TomorrowNow customers is that you're going to get the same kind of savings" because "[w]hat

16 we're offering is on top of what they're used to, which is the vanilla offering that I actually

17 assembled – because it hasn't changed much from what I put together at TomorrowNow several

18 years ago when we were launching the company."  Rimini stated that tax and regulatory updates

19 to Oracle software applications "are packaged the same as Client is used to receiving previously

20 from PeopleSoft Corporation and then TomorrowNow, Inc.  There is no difference in how

21 Rimini tax and regulatory updates are installed."

22      40.    Oracle, of course, owned the intellectual property rights to the software

23 SAP TN copied and used to create its illegal updates.  Ravin and Rimini knew that and

24 capitalized on it by copying the model and boasting about the similarity in services.

25      41.    In 2007, commenting on Oracle's lawsuit against SAP AG and SAP TN

26 for illegally downloading Oracle's intellectual property, Ravin explained that "[i]t is very

27 common for [a customer] to provide a password and ID for us to get to download upgrades and

28 support.  It's a standard industry practice across every consulting firm.  *The key is you have to be*

*authorized*."  (emphasis supplied).  Ravin emphasized that "[y]ou need to be very careful about parsing documents – whether you take 20 or hundreds [of files].  *Either you're authorized or you're not*."  (emphasis supplied).

42.     Ravin's public statement in 2007 stands in contrast to his later conduct.  In defiance of a court order, Ravin and Rimini refused to testify in the SAP case as to whether, as Ravin touted, Rimini had replicated the illicit SAP TN model.  Only after this Court held Ravin and Rimini in contempt of court for this attempt to hide evidence of this conduct did Ravin agree to give testimony.  Dkt. 49 at 2, *Oracle USA, Inc. v. SAP AG*, No. 2:09-CV-01591-KJD-GWF (D. Nev. Jan. 12, 2010).

43.     After Ravin and Rimini knew that Oracle might sue, Rimini destroyed the copies of Oracle's software it had co-mingled in a so-called software library.  It then claimed falsely in court filings that such a library had "never existed."  This Court sanctioned Rimini for that willful destruction of relevant evidence and blatant misrepresentation.  Dkt. 466 at 19-20, *Rimini I.*

44.     Rimini told the public that Oracle's first lawsuit against it was "baseless," and "vehemently" denied "Oracle's false and malicious allegations."  It proclaimed that "Rimini Street's business processes and procedures are entirely legal," and that "Rimini Street has implemented extraordinary processes and procedures to assure the proper use of Oracle's intellectual property."  Specifically, Rimini claimed it "only delivers Oracle software and support materials to each client who is entitled to receive such materials" and "uses separate data 'silos' for each client and has policies against comingling data."  Rimini made and repeated those assertions in pleadings filed in March 2010, December 2010, and June 2011.

45.     Rimini's assertions were false.  In its February 2014 summary judgment order, this Court found it was "undisputed" that Rimini did not "silo" its customers' software, but instead used software it obtained from certain customers to "develop and test software updates for . . . other Rimini customers with similar software licenses."  For example, the Court held: "[I]t is undisputed that the development environments associated with the City of Flint were not used solely for the City of Flint's internal data processing operations.  Instead, the

10

development environments were used to develop and test software updates for the City of Flint and other Rimini customers with similar software licenses. . . . Therefore, the court finds that Rimini's copying of the copyrighted software is outside the scope of" the customer license.

46.     The Court reprised these finding in its August 2014 order holding that Rimini infringed Oracle's Database software:  "Section C [of the license] authorizes use of the software only for the licensee's 'internal business operations,'" but "it is undisputed that Rimini used Oracle Database to create updates for all clients using a particular version of a copyrighted software program."

47.     The Court also found that Rimini committed copyright infringement by copying software environments onto its own systems when the customer license required the software to reside at the customer's facilities.  The Court stated: "Rimini's copying of the copyrighted software on its company systems is also a use outside the scope of" the customer license.

48.     This conduct continued, unabated, until at least July 2014.

49.     In dismissing Rimini's defamation counterclaim, the Court's second summary judgment ruling and subsequent clarification stated that "because 'Rimini had engaged in theft of Oracle's intellectual property, it is true [for purposes of Rimini's defamation allegations] that Rimini has engaged in theft of Oracle's intellectual property," and that "because Rimini had engaged in copyright infringement, and based on Ninth Circuit and Supreme Court legal precedent, Oracle's statements that Rimini had engaged in 'massive theft' were not actionable defamation."  Dkt. 507 at 2-3, *Rimini I.*

50.     After the Court's second summary judgment order, Rimini's chief marketing officer claimed publicly that the Court's infringement findings "relate to processes and Oracle software no longer in use ***at Rimini Street***, and therefore do not cause interruptions to service for ANY client or ANY product." (emphasis supplied)  In a letter to clients following the Court's August 2014 ruling, Rimini stated that "in January 2013, Rimini Street began a project to ***migrate*** all existing PeopleSoft, JD Edwards and Siebel Rimini-Hosted Environments to Client-Hosted Environments and discontinue the use of all Rimini-Hosted Environments.  We are

continuing this migration, which conforms to the Court's recent ruling."  (emphasis supplied)

51.     Rimini's public denials of infringement appear to be, yet again, seriously misleading.  Indeed, Rimini's "new" support model appears to involve all the same acts that the Court has already ruled infringe Oracle's copyrights as a matter of law, and are facilitated by Rimini's continued unlawful downloading from Oracle's technical support websites.  For example, "migrating" infringing software copies simply creates more infringing software copies. And Rimini does not even "migrate" this software back to the customer, as its public proclamations and propaganda imply.  Rather, Rimini pays its customers to locate the infringing software copies on third party cloud servers, specifically, Amazon Web Services and Windstream, so that Rimini has unfettered access to them.  (In fact, it appears that Rimini requires its customers to amend their support agreements with Rimini to specify that Rimini will pay for the cost of hosting the software in the cloud.)

52.     Either Rimini simply has again copied the same infringing copies to a new (non-customer) location, or it has created new copies in some other way, but still at a non-customer location.  Either way (or in combination), Rimini continues illegally to copy Oracle's software.

53.     Rimini then apparently does just what it did before when it housed the software.  Rimini has, throughout 2014, announced the release of comprehensive tax, legal and regulatory updates for PeopleSoft licensees, including updates designed to address national, state, and local requirements across the U.S., Canada, and many other countries.  It is implausible that Rimini's self-proclaimed "fastest . . . update delivery cycle in the industry," simultaneously delivered to all customers, could happen if Rimini did not continue unlawfully to cross-use Oracle's software in the same way it did in the past, using the "migrated" copies on cloud servers rather than the old copies on Rimini servers.  Indeed, flow charts depicting Rimini's new model show that Rimini continues to cross-use copies of PeopleSoft software not located at the customer's facilities to develop updates given to multiple customers – the exact, infringing conduct addressed by the Court's prior orders.

54.     ████████████████████████████████████

1 █████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████

4 █████████████████████████████████████████████████████████

5 █████████████████████████████

6      55.     ███████████████████████████████████████

7 ███████████████████████████████████████████████████████████████

8 ██████████████████████████████████████████████████████████

9 ██████████████████████████████████████████████

10      56.     Thus, Rimini appears to have taken environments ruled infringing by the

11 Court, copied them to a different location, and then continued to apply new updates to the old,

12 infringing code, creating a new infringing derivative work each time.  And the new unlawfully-

13 created updates also infringe because they must, by definition, contain substantial portions of,

14 and derive from, Oracle's copyrighted works.  Thus, Rimini's new, supposedly non-infringing

15 installations (i.e., copies) of Oracle's copyrighted software appear to infringe Oracle's

16 copyrighted software in multiple ways.

17      57.     In the past, Rimini relied on unlawful downloads from Oracle's technical

18 support websites to create the illegal copies and derivative works from Oracle's software, and

19 those downloads also continue.  Since February 2014, Rimini has downloaded millions of files

20 containing Oracle Software and Support Materials from Oracle's technical support websites

21 under usernames containing "@riministreet.com."

22      58.     To conduct this downloading, Rimini has used IP addresses associated

23 with cloud storage providers.  By downloading these files, Rimini created copies of Oracle

24 Software and Support Materials on its own servers or the servers of cloud storage providers.

25 This conduct violates Rimini's customers' Oracle licenses, which permit use of the software only

26 on the customers' own premises.

27      59.     At the end of the day, the only apparent difference between Rimini's new

28 business model and the old is that some of Rimini's conduct takes place in the cloud on servers

1  owned by Amazon Web Services or Windstream, or perhaps others.  Moving the software from

2  Rimini's servers to the cloud servers is a distinction without a difference because these cloud

3  servers still are not the customers' facilities, as the licenses require.  Cross-use of Oracle's

4  software is still infringement no matter where it happens.

5       **D.**     **Rimini's Fraudulent Statements to Oracle Customers**

6         60.     Rimini has made false and misleading statements in commercial

7  advertising and promotion of Rimini's services, through the broad dissemination of public

8  statements and promotional letters, including the following statements:

9         (a)     In a statement made on or about August 15, 2014 to The Register

10  and included in an article available at http://www.theregister.co.uk/2014/08/15/rimini_business_

11  as_usual_oracle_defamation_judgment/, Rimini's Chief Marketing Officer, David Rowe, stated

12  that the Court's infringement findings against Rimini "relate to processes and Oracle software

13  no longer in use at Rimini, and therefore do not cause interruptions to service for ANY client or

14  ANY product."

15         (b)     In a statement made in marketing materials emailed to potential

16  customers in or around November 2014, Rimini stated that Oracle's "support exception

17  including payroll support expires December 31, 2014" for Oracle's E-Business Suite version

18  11.5.10.

19         61.     Rimini knew or should have known that the above-described statements

20  were false and misleading.

21         62.     Rimini knew or should have known that the processes at issue in the

22  Court's infringement findings are the same processes that Rimini continues to use to this day,

23  including its continued use of infringing PeopleSoft software, fixes, and updates from *Rimini I*,

24  its continued cross-use of PeopleSoft software, and its continued practice of creating infringing

25  PeopleSoft environments outside of the customers' facilities.

26         63.     Rimini knew or should have known that the Oracle software at issue in the

27  Court's infringement findings is the *exact same* software that Rimini continues to use to this day.

28  The Court found that the fixes and updates that Rimini generated by cross-using PeopleSoft

software environments on its local servers were infringing.  These fixes and updates were integrated into all of Rimini's PeopleSoft software environments.  Now Rimini has merely copied those software environments onto cloud servers.  Rimini continues to cross-use those infringing software environments to create further infringing fixes and updates.

64.   Rimini knew or should have known that Oracle's Exception to Sustaining Support for E-Business Suite release 11.5.10 does not expire until December 31, 2015, as Oracle has documented in various publicly-available sources.

**E.   Ravin Controlled Rimini's Actions**

65.   Ravin has publicly acknowledged his personal responsibility for Rimini's operations and business model, and for parallels between Rimini and SAP TN:  "There's no way to separate [SAP TN and Rimini].  We look a lot alike in areas because I did both. . . . I designed the TomorrowNow service.  I evolved it and created a better service with Rimini Street."

66.   Ravin personally signed contracts, on behalf of Rimini, in which Rimini committed to research, develop, and test updates and fixes to Oracle's products, including PeopleSoft products, at Rimini's business location, using Rimini's computer system hardware and software.  Ravin is and was personally familiar with Oracle's license agreements and terms of use.  He knew that it violated those agreements, and terms, to develop fixes and updates anywhere other than at the Oracle licensee's owned or leased facilities, on the licensee's computers.

67.   Ravin also controlled Rimini's contractual relationships with customers.  For example, for at least some customers, Ravin was the sole person at Rimini with the power to amend, modify, or alter Rimini's contracts.

68.   Ravin was personally and directly involved in marketing Rimini's services, in Rimini's responses to requests for proposals, and negotiating Rimini's contracts with customers.

**F.   Oracle's Software And Support Materials Are Registered With The Copyright Office**

69.   The Software and Support Materials that Rimini illegally copied included

15

works protected by the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*  Oracle has certificates of registration from the Register of Copyrights that cover the Software and Support Materials copied by Rimini.  These protected works are original works of authorship, owned by Oracle. Counterdefendants' acts violated Oracle's exclusive rights to reproduce, create derivative works, publish, publicly display, and distribute (collectively, "copy") these works.  Counterdefendants' acts were willful and intentional and constitute both direct and indirect copyright infringement under the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*

### G.   Counterdefendants Conspired With And Aided And Abetted Each Other

70.   Counterdefendants willfully, intentionally, and knowingly agreed and conspired with each other to engage in the alleged wrongful conduct, including Counterdefendants' copyright infringement, interference with Oracle's business relationships and other unfair business practices.

71.   Counterdefendants did the acts alleged pursuant to, and in furtherance of, that agreement and/or furthered the conspiracy by cooperating, encouraging, ratifying, or adopting the acts of the others.

72.   As a direct and proximate result of the acts in furtherance of the conspiracy, Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from sales to current and potential customers of Oracle support services and licenses for Oracle's software programs.  The wrongful conduct committed pursuant to the conspiracy was a substantial factor in causing this harm.

73.   Each Counterdefendant also had full knowledge of or should have reasonably known of the true nature of the wrongful conduct of the other Counterdefendant, and aided and abetted such wrongful conduct, including copyright infringement, and other unfair business practices, by providing substantial assistance and/or encouraging the other to act.

74.   Each Counterdefendant also aided and abetted the described wrongful conduct of the other Counterdefendant by giving substantial assistance and/or encouragement that, separately considered, was wrongful in and of itself.

75.   As a direct and proximate result of the aiding and abetting of these acts,

16

1  Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits

2  from sales to current and potential customers of Oracle support services and licenses to Oracle

3  software programs.  The wrongful conduct aided and abetted by the Counterdefendants was a

4  substantial factor in causing this harm.

5      76.  Counterdefendants' intentional agreement to commit, and commission of,

6  these wrongful acts, and aiding and abetting of these wrongful acts, was willful, malicious,

7  oppressive, and in conscious disregard of Oracle's rights, and Oracle is therefore entitled to an

8  award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

9                       **First Claim for Relief**

10                       **Copyright Infringement**

11                       (By OIC Against All Counterdefendants)

12      77.  OIC incorporates by reference each of the allegations in the preceding

13  paragraphs of this Complaint as though fully set forth here.

14      78.  OIC owns a valid and enforceable copyright in, or an exclusive license to,

15  the Software and Support Materials, which are creative works of original authorship.  OIC has

16  pre-existing, or has obtained from the Register of Copyrights, Certificates of Registration that

17  cover many of the Software and Support Materials copied by Rimini.

18      79.  OIC also has obtained, through transfer agreements, all rights, title, and

19  interest in copyrights formerly owned by certain PeopleSoft entities.

20      80.  OIC owned exclusive rights to each of the copyrights at issue in this case

21  at a point in time during which Counterdefendants infringed those exclusive rights.

22      81.  Counterdefendants directly and/or indirectly have infringed copyrights in

23  Oracle Software and Support Materials, including the Software and Support Materials covered

24  by these certificates.  These certificates are identified, dated, and numbered as follows:

25

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleTools 7.5 | November 20, 1998 | TX 4-792-578 |
| PeopleSoft HRMS 7.5 | December 15, 1998 | TX 4-792-575 |

28

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleTools 8.10 | September 5, 2000 | TX 5-266-221 |
| PeopleSoft 8 HRMS SP1 | March 26, 2001 | TX 5-501-312 |
| PeopleSoft 8.3 HRMS | February 1, 2002 | TX 5-469-032 |
| PeopleSoft 8.8 HRMS | June 11, 2004 | TX 6-093-947 |
| PeopleSoft HRMS 8.8 SP1 | February 10, 2010 | TX 7-065-376 |
| PeopleSoft HRMS 8.9 | February 10, 2010 | TX 7-065-381 |
| PeopleSoft HRMS 9.0 | February 10, 2010 | TX 7-065-386 |
| PeopleSoft HRMS 9.1 | February 10, 2010 | TX 7-065-398 |
| PeopleSoft Enterprise Performance Management 8.9 | February 10, 2010 | TX 7-063-672 |
| PeopleSoft Enterprise Performance Management 9.0 | February 10, 2010 | TX 7-063-679 |
| PeopleSoft Financials and Supply Chain Management 8.9 | February 11, 2010 | TX 7-065-332 |
| PeopleSoft Financials and Supply Chain Management 9.0 | February 11, 2010 | TX 7-065-354 |
| PeopleSoft Financials and Supply Chain Management 9.1 | February 11, 2010 | TX 7-065-357 |
| PeopleSoft Campus Solutions 8.9 | February 24, 2010 | TX 7-077-451 |
| PeopleSoft Campus Solutions 9.0 | February 24, 2010 | TX 7-077-460 |
| PeopleTools 8.49 | March 8, 2010 | TX 7-092-855 |
| PeopleTools 8.50 | March 8, 2010 | TX 7-092-757 |

82.     These registrations generally cover, but are not limited to, numerous versions of Oracle software, including the updates, patches, and fixes incorporated in each relevant version, service packs of Oracle updates, patches and fixes, and individual exemplar Software and Support Materials, including certain Oracle knowledge management solutions and certain Oracle updates, patches, and fixes, all of which Rimini and Ravin copied without a license.

83.     Through the acts alleged above, Counterdefendants have violated the exclusive rights of OIC to reproduce, distribute, create derivative works, and publicly display

18

Oracle's Software and Support Materials, including materials that embody the registrations listed above, by, in excess of any license:

- creating derivative works from Oracle's Software and Support Materials;
- reproducing and distributing Oracle's Software and Support Materials and derivative works created from Oracle's Software and Support Materials to facilities other than those of an Oracle licensed customer;
- downloading Oracle's Software and Support Materials from Oracle's technical support websites where the customer whose support credentials were used was not licensed to the materials obtained;
- reproducing, distributing, and creating derivative works from Software and Support Materials in support of Counterdefendants' commercial operations but obtained pursuant to a limited, non-commercial license;
- reproducing, distributing, publicly displaying, and creating derivative works from Software and Support Materials obtained through or for one customer to support a different customer or multiple customers;
- reproducing, distributing, publicly displaying, and creating derivative works from Software and Support Materials not used solely for a single customer's or entity's internal business purposes;
- further reproducing, distributing, and publicly displaying infringing copies of Oracle's Software and Support Materials and derivative works created from Oracle's Software and Support Materials.

84.     In addition to directly infringing the exclusive rights of OIC, Counterdefendants have contributorily and vicariously infringed the exclusive rights of OIC in the Software and Support Materials by controlling, directing, intentionally encouraging, inducing, or materially contributing to the copying, distribution, public display, and creation of derivative works from Oracle's copyrighted Software and Support Materials.  Counterdefendants also obtained a direct financial benefit from the above alleged infringing activities while declining to exercise their right to stop it or limit it.

19

85.     Counterdefendants knew or should have known that copying, distributing, publicly displaying, and creating derivative works of and from Oracle Software and Support Materials, infringed the exclusive rights of OIC in those materials, especially in light of this Court's summary judgment rulings and their own prior admissions.

86.     OIC is entitled to damages in an amount to be proven at trial, including actual damages and profits attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504(b).

87.     OIC is entitled to statutory damages under 17 U.S.C. § 504(c) based on Counterdefendants' infringements after the dates of copyright registration.

88.     Counterdefendants' infringement of the exclusive rights of OIC also has caused OIC irreparable injury.  Unless restrained and enjoined, Counterdefendants will continue to commit such acts.  OIC's remedies at law are not adequate to compensate it for these inflicted and threatened injuries, entitling it to remedies, including injunctive relief as provided by 17 U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

**Second Claim for Relief**

**Violation of Lanham Act**

(By Oracle America and OIC Against All Counterdefendants)

89.     Oracle America and OIC incorporate by reference each of the allegations in Paragraphs 1-76 of this Complaint as though fully set forth here.

90.     Rimini made false and misleading statements in interstate commerce.

91.     Rimini disseminated the above-described false and misleading statements to customers and potential customers as part of its marketing efforts deliberately and with the intention of misleading and influencing them to purchase or retain Rimini's services, to cancel or not continue using Oracle's services, to refrain from purchasing additional services from Oracle, and to create the false impression that Rimini's support services no longer infringe Oracle's copyrights and no longer interfere unlawfully with Oracle's contracts.  Oracle has been and is likely to be further injured by Rimini's statements, both by the direct diversion of sales from

1  Oracle to Rimini and by a lessening of goodwill associated with Oracle's services.

2        92.    Rimini's wrongful conduct has a tendency to deceive—and in fact has

3  deceived—a substantial segment of Rimini and Oracle customers into believing that (1) Rimini

4  has discontinued its infringing processes or its use of infringing Oracle software and (2) Oracle is

5  terminating its support for its customers when it is not.

6        93.    Rimini's alleged conduct is material, in that it is likely to and in fact has

7  influenced the purchasing decisions of Rimini and Oracle customers and potential customers,

8  thereby diverting revenues from Oracle to Rimini.

9        94.    Oracle is informed and believes that unless Rimini's described conduct is

10  enjoined by this Court, Rimini will continue and expand its acts of unfair competition and false

11  advertising to the continued immediate and irreparable injury to Oracle.  This injury includes an

12  impact on the reputations of Oracle and Rimini that cannot be remedied through damages, and

13  Oracle has no adequate remedy at law.  Oracle is entitled to a permanent injunction pursuant to

14  15 U.S.C. § 1116 restraining and enjoining Rimini and its agents, servants, employees, and all

15  persons acting thereunder, in concert with, or on their behalf, from doing or causing any further

16  violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

17                    **Third Claim for Relief**

18                    **Inducing Breach of Contract**

19              (By Oracle America Against All Counterdefendants)

20        95.    Oracle America incorporates by reference each of the allegations in

21  Paragraphs 1-76 and 89-94 of this Complaint as though fully set forth here.

22        96.    Oracle America's customers agreed to be bound by Oracle America's

23  licenses when they or anyone acting on their behalf copied Software and Support Materials.

24  Oracle America's licenses are valid contracts.  Counterdefendants had knowledge of the

25  existence of these contracts at all relevant times.

26        97.    Oracle America has performed all conditions, covenants, and promises

27  required on its part to be performed in accordance with the licenses.

28        98.    Counterdefendants induced Oracle America's customers to breach these

1    contracts by engaging in the independently wrongful acts alleged in this Counterclaim, including

2    violations of state and federal laws.  These independently wrongful acts caused Oracle's

3    customers to be in breach of the contracts.

4            99.    Counterdefendants acted with the desire to interfere with the contracts in

5    order to obtain an unfair competitive advantage or with the knowledge that such interference was

6    certain or substantially certain to occur as a result of their acts.

7            100.   As a result of Counterdefendants' inducing Oracle America's customers to

8    breach the licenses, Counterdefendants have caused damage to Oracle America in an amount to

9    be proven at trial.  Oracle's customers would have otherwise performed on the contracts were it

10   not for Counterdefendants' acts inducing Oracle America's customers to breach them.

11           101.   Counterdefendants acted with oppression and malice in inducing Oracle

12   America's customers to breach the contracts and Oracle America is therefore entitled to an award

13   of punitive damages to punish Counterdefendants' wrongful conduct and deter future wrongful

14   conduct.

15   **Fourth Claim for Relief**

16   **Intentional Interference With Prospective Economic Advantage**

17   (By Oracle America and OIC Against All Counterdefendants)

18           102.   Oracle America and OIC incorporate by reference each of the allegations

19   in Paragraphs 1-76 and 89-101 of this Complaint as though fully set forth here.

20           103.   Oracle America and OIC have and had an expectancy in continuing and

21   advantageous economic relationships with current and prospective purchasers and licensees of

22   Oracle's support services and software, which are conducted through Oracle America and OIC.

23           104.   These relationships contained the probability of future economic benefit in

24   the form of profitable support service contracts and software licenses.

25           105.   Counterdefendants were aware of these economic relationships and

26   intended to interfere with and disrupt them by wrongfully making false and misleading

27   statements to customers and the public that Rimini's new support model does not infringe

28   Oracle's copyrights.

22

106.     Counterdefendants' conduct was wrongful by a measure beyond the fact of the interference itself for reasons including but not limited to Counterdefendants' false and misleading statements to customers and the public that Rimini's new support model does not infringe Oracle's copyright, and Counterdefendants' inducement of customers to breach the contracts governing use of Oracle's Software and Support Materials.

107.     This conduct, as alleged above, constitutes violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and common law fraud.

108.     As a result of Counterdefendants' acts, the above-described relationships have been actually disrupted, causing certain Oracle licensees who are current and prospective support customers to contract with Rimini Street instead of with Oracle America and OIC for those customers' software support and maintenance and, in some cases, for their enterprise software.

109.     As a direct and proximate result of Counterdefendants' actions, Oracle America and OIC have suffered economic harm, including, but not limited to, loss of profits from sales or licenses to current and potential customers of support services and enterprise software programs.  Counterdefendants' wrongful conduct was a substantial factor in causing this harm.

110.     Unless Counterdefendants are restrained by appropriate injunctive relief, their actions are likely to recur and will cause Oracle America and OIC irreparable injury for which there is no adequate remedy at law.

111.     Counterdefendants' interference with Oracle America's and OIC's prospective economic advantage with its current and future customers, as described above, was willful, malicious, oppressive, and in conscious disregard of Oracle America's and OIC's rights, and Oracle America and OIC are therefore entitled to an award of punitive damages to punish Counterdefendants' wrongful conduct and deter future wrongful conduct.

**Fifth Claim for Relief**

**Breach of Contract**

(By Oracle America Against Rimini)

112. Oracle America incorporates by reference each of the allegations in Paragraphs 1-76 and 89-111 of this Complaint as though fully set forth here.

113. Rimini agreed to be bound by the licenses and Terms of Use on Oracle's technical support websites, including the Oracle.com's Terms of Use, E-Delivery Terms of Use, and Electronic Delivery Trial License Agreement when Rimini accessed or downloaded Software and Support Materials from Oracle's technical support websites.

114. Oracle America has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of Oracle's technical support websites' Terms of Use, including Oracle.com's Terms of Use, E-Delivery Terms of Use, and Electronic Delivery Trial License Agreement.

115. Rimini has breached Oracle's technical support websites' Terms of Use, including Oracle.com's Terms of Use, E-Delivery Terms of Use, and Electronic Delivery Trial License Agreement by, among other things:

- Accessing the content available through Oracle's technical support websites, in the form of the Software and Support Materials, without being an authorized and designated Oracle technical support contact;

- Using the Software and Support Materials other than in support of a customer's authorized use of Oracle software for which a customer holds a supported license from Oracle;

- Using the Software and Support Materials without a legitimate business purpose;

- Using the Software and Support Materials in ways other than the furtherance of a relationship with Oracle; and,

- Accessing or using Software and Support Materials other than for personal, informational or non-commercial purposes.

116. As a result of Rimini's breach of Oracle's technical support websites'

24

Terms of Use, Rimini has caused damage to Oracle America in an amount to be proven at trial.

**Sixth Claim for Relief**

**Unfair Competition - Cal. Bus. & Prof. Code § 17200**

(By Oracle America and OIC Against All Counterdefendants)

117.     Oracle America and OIC incorporate by reference each of the allegations in Paragraphs 1-76 and 89-116 of this Complaint as though fully set forth here.

118.     Counterdefendants have engaged in unlawful business acts or practices, including violations of the Lanham Act, making fraudulent statements, and other illegal acts and practices as alleged above, all in an effort to gain unfair competitive advantage over Oracle America and OIC.

119.     These unlawful business acts or practices were committed pursuant to business activity related to providing business applications software and related support and maintenance for that software.

120.     The acts and conduct of Counterdefendants constitute unlawful and unfair competition as defined by California Bus. & Prof. Code § 17200, *et seq.*

121.     As described above, Oracle America and OIC have lost money and property and suffered injury in fact as a result of Counterdefendants' unlawful business acts and practices.

122.     Counterdefendants have improperly and unlawfully taken commercial advantage of Oracle America and OIC investments in their confidential, proprietary, and copyrighted Software and Support Materials and support delivery infrastructure.  In light of Counterdefendants' conduct, it would be inequitable to allow Counterdefendants to retain the benefit of the funds obtained though the unauthorized and unlawful use of that property.

123.     Counterdefendants' unfair business practices unjustly have minimized Oracle America's and OIC's competitive advantages and have caused and are causing them to suffer damages.

124.     As a result of such unfair competition, Oracle America and OIC also have suffered irreparable injury and, unless the Court enjoins Counterdefendants from such unfair

1   competition, will continue to suffer irreparable injury for which Oracle America and OIC have

2   no adequate remedy at law.

3         125.   Counterdefendants should be compelled to disgorge and/or restore any and

4   all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of

5   California Business & Professions Code § 17200 *et seq*., including, but not limited to, returning

6   any revenue earned from the unlawful and unfair use of Oracle America's and OIC's stolen

7   property, and should be enjoined from further unlawful and unfair business practices.

8   <u>**Seventh Claim for Relief**</u>

9   **Unjust Enrichment/Restitution**

10   (By Oracle America and OIC Against All Counterdefendants)

11         126.   Oracle America and OIC incorporate by reference each of the allegations

12   in Paragraphs 1-76 and 89-125 of this Complaint as though fully set forth here.

13         127.   Counterdefendants unjustly received benefits at the expense of Oracle

14   America and OIC through Counterdefendants' wrongful conduct, including Counterdefendants'

15   interference with Oracle America's and OIC's business relationships, and other unfair business

16   practices, which took substantial time and money for Oracle entities, including Oracle America

17   and OIC, to develop.  Counterdefendants continue to unjustly retain these benefits at the expense

18   of Oracle America and OIC.  It would be unjust for Counterdefendants to retain any value they

19   obtained as a result of their wrongful conduct.

20         128.   Oracle America and OIC are entitled to the establishment of a constructive

21   trust consisting of the benefit conferred upon Counterdefendants by the revenues derived from

22   their wrongful conduct at the expense of Oracle entities including Oracle America and OIC as

23   alleged above, and all profits derived from that wrongful conduct.  Oracle America and OIC are

24   further entitled to full restitution of all amounts in which Counterdefendants have been unjustly

25   enriched at Oracle America and OIC's expense.

26   <u>**Eighth Claim for Relief**</u>

27   **An Accounting**

28   (By Oracle America and OIC Against All Counterdefendants)

1    129.    Oracle America and OIC incorporate by reference each of the allegations

2    in Paragraphs 1-76 and 89-128 of this Complaint as though fully set forth here.

3    130.    Counterdefendants have obtained business through the use of unlawful

4    conduct including, but not limited to improperly, willfully, and unlawfully taking commercial

5    advantage of the investment in its Software and Support Materials by Oracle entities including

6    Oracle America and OIC, for the purpose of sabotaging Oracle America's and OIC's ability to

7    do business and compete in the market.

8    131.    Counterdefendants have received money as a result of their misconduct, at

9    the expense of Oracle America and OIC, and some or all of such money is rightfully due to

10    Oracle America and OIC.

11    132.    The amount of money due from Counterdefendants to Oracle America and

12    OIC is unknown to Oracle America and OIC, and cannot be ascertained without an accounting of

13    the income and gross profits Counterdefendants have obtained through their wrongful and

14    unlawful conduct.  Therefore, Oracle America and OIC are entitled to a full accounting.

15    **<u>Prayer For Relief</u>**

16    WHEREFORE, as to Oracle's Counterclaims, Oracle respectfully prays for the

17    following:

18    A.    For a preliminary and permanent injunction restraining

19    Counterdefendants, their officers, agents, servants, employees, and attorneys, and those in active

20    concert or participation with any of them, from the following:

21    (1)    Copying, distributing, publicly displaying, creating

22    derivative works from, or using Oracle Software and Support Materials in any way, including for

23    any business purpose, except as allowed by express license from Oracle;

24    (2)    Copying, distributing, or facilitating copying or distribution

25    of any Oracle Software and Support Materials directly or indirectly from or to any of

26    Counterdefendants' offices, computer systems or networks;

27    (3)    Regardless of the location of any specific Software and

28    Support Materials, copying, distributing, publicly displaying, creating derivative works from, or

1   using Software and Support Materials obtained through or for one customer to support a different

2   customer; and

3                           (4)      Facilitating the copying, distribution or use of, any Oracle

4   Software and Support Materials without keeping a record, which Oracle may inspect upon three

5   (3) business days' written notice, that accurately reflects all Software and Support Materials

6   (a) copied, distributed or used, organized by customer name, (b) the date(s) of the copying,

7   distribution or use, and (c) all other entities involved in the copying, distribution or use,

8   including name of the entity, principal contact, and contact information.

9                           (5)      Making any false, misleading, or unsubstantiated

10  statements concerning Rimini's products and services, including those alleged in Paragraph 98,

11  and from doing or causing any further violations of § 43(a) of the Lanham Act,

12  15 U.S.C. § 1125;

13                    B.      For a preliminary and permanent injunction requiring Rimini to

14  disseminate corrective advertising in a form approved by the Court to acknowledge its violations

15  of the law and to ameliorate the false and deceptive claims previously made;

16                    C.      That the Court order Counterdefendants to file with the Court and

17  serve on Oracle within thirty (30) days after the service on Counterdefendants of such injunction

18  a report in writing, under oath, setting forth in detail the manner and form in which

19  Counterdefendants have complied with the injunction;

20                    D.      For an Order directing Counterdefendants to return Oracle's

21  property, including, without limitation, Oracle's confidential, proprietary, and copyrighted

22  Software and Support Materials, including data, internal documents, and valuable updates,

23  patches, fixes, and other computer code, that Counterdefendants took from Oracle, as set forth in

24  this Complaint;

25                    E.      For an Order impounding or destroying any and all infringing

26  materials pursuant to 17 U.S.C. § 503;

27                    F.      For an Order awarding Oracle punitive damages in a sum to be

28  determined at trial;

1       G.    For restitution and disgorgement of all ill-gotten gains unjustly

2 obtained and retained by Counterdefendants through the acts complained of here;

3       H.    For an Order finding a Constructive Trust for Oracle's benefit,

4 consisting of all revenues received by Counterdefendants from their wrongful conduct which

5 should rightfully have been received by Oracle and all profits derived from that wrongful

6 conduct, and directing Counterdefendants to pay all such sums to Oracle;

7       I.    For damages to be proven at trial;

8       J.    For those damages to be trebled;

9       K.    For statutory damages pursuant to 17 U.S.C. § 504;

10       L.    For prejudgment interest;

11       M.    For an accounting;

12       N.    For an Order awarding Oracle its attorneys' fees and costs; and,

13       O.    For an Order awarding Oracle such other and further relief as the

14 Court deems just and proper.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF, ANSWER, AND JURY DEMAND

**ORACLE'S ANSWER**

Defendant Oracle International Corporation ("Oracle") answers Plaintiff Rimini Street's complaint for declaratory relief as follows.

1.      The allegations of Paragraph 1 are argument and require no response; to the extent a response is required, Oracle denies the allegations.

2.      Oracle admits that it is one of the world's largest enterprise software companies and that it provides support for the enterprise software applications it licenses to customers.  Oracle admits that Rimini holds itself out as a support provider to companies that license certain of Oracle's enterprise software applications.  Oracle denies the remaining allegations of Paragraph 2.

3.      Oracle lacks sufficient knowledge to form a belief about the truth of the allegations of Paragraph 3, and on that basis denies them; however to the extent that Rimini Street is "fast-growing" it is only because of its infringing business model involving, among other wrongful acts, illegal copying of Oracle's copyright software.

4.      Oracle admits that it filed a Complaint against Rimini Street and Seth Ravin in the District of Nevada on January 25, 2010 alleging, among other things, direct infringement by, contributory infringement by, and vicarious liability of Rimini Street and Seth Ravin with respect to a number of Oracle's copyrights.  Oracle admits it stated that "These registrations generally cover, but are not limited to, numerous versions of Oracle software, including the updates, patches and fixes incorporated in each relevant version, service packs of Oracle updates, patches and fixes, and individual exemplar Software and Support Materials, including certain Oracle knowledge management solutions and certain Oracle updates, patches and fixes, all of which Rimini Street copied without a license."  Oracle denies the remaining allegations of Paragraph 4.

5.      Oracle admits the allegations of Paragraph 5.

6.      Oracle admits the allegations of Paragraph 6.

7.      Oracle admits that the Court's February 13, 2014 Order found that Rimini infringed six of Oracle's copyrights relating to PeopleSoft software.  Oracle admits that the

30

1    Court found Oracle established a prima facie case of copyright infringement for the remaining

2    copyrights at issue, relating to JDE and Siebel, but found disputed issues of fact as to Rimini's

3    license defense with respect to the licenses at issue in the motion.  Oracle denies the remaining

4    allegations of Paragraph 7.

5           8.    Oracle denies the allegations of Paragraph 8.

6           9.    Oracle admits that Rimini and Oracle jointly requested a case management

7    conference in *Rimini I* on September 17, 2014.  Oracle denies the remaining allegations of the

8    first sentence of Paragraph 9.  The second sentence of Paragraph 9 is a citation, to which no

9    response is required.  Oracle admits the third sentence of Paragraph 9.  The fourth sentence of

10   Paragraph 9 is a citation, to which no response is required.  Oracle admits that it told this Court

11   that evidence of Rimini's allegedly new support process should not be included in *Rimini I*.

12   Oracle admits that Oracle told this Court on September 17, 2014 that, "[w]ith six months to a

13   year of intensive discovery, Oracle is confident it could show that Rimini's new support process

14   is old wine in a new bottle and every bit as infringing as the old process.  Completing discovery

15   during this time would require Rimini to provide Oracle with relevant discovery faster than it has

16   to date. For example, it has been over 7 months since Oracle began discussing updating

17   discovery with Rimini, and Rimini still has not provided Oracle with an accurate list of

18   customers Rimini has gained since the close of discovery." Dkt. 488 at 7 & n.4, *Rimini I*.  Oracle

19   denies the remaining allegations of the fifth sentence of Paragraph 9.  The sixth sentence of

20   Paragraph 9 is a citation, to which no response is required.

21          10.   Oracle admits the allegations of Paragraph 10.

22          11.   The allegations of the Paragraph 11 are argument and require no response;

23   to the extent a response is required, Oracle denies the allegations.

24          12.   Oracle admits that Rimini is a Nevada corporation with its headquarters in

25   Las Vegas.  Oracle admits that Rimini holds itself out as a support provider to companies that

26   license certain of Oracle's enterprise software applications.  Oracle denies the remaining

27   allegations of Paragraph 12.

28          13.   Oracle admits the allegations of Paragraph 13.

31

14.     Oracle admits the allegations of Paragraph 14.

15.     Oracle does not contest that it is subject to personal jurisdiction in this Court with respect to this matter.  Oracle admits that it has sought to enforce its intellectual property rights against Rimini Street and Seth Ravin in this Court.  Oracle denies the remaining allegations of Paragraph 15.

16.     Oracle does not contest that venue in this District is appropriate in this matter, and does not contest that it is subject to personal jurisdiction in this Court with respect to this matter.  Oracle denies the remaining allegations of Paragraph 16.

17.     Oracle admits the allegations of Paragraph 17.

18.     The allegations of Paragraph 18 are argument and require no response; to the extent a response is required, Oracle restates its responses to Rimini's allegations in Paragraphs 1-17 as set forth above.

19.     Oracle admits that it continues to allege that Rimini's business practices infringe certain of Oracle's copyrights.  Oracle denies the remaining allegations of Paragraph 19, including that Rimini's current business model was modified to comply with the Court's February 13, 2014 Order.

20.     Oracle admits that the selective and incomplete quotes set forth in Paragraph 20 appear to have been taken from Oracle filings in this Court.  Oracle denies the remaining allegations of Paragraph 20.

21.     Oracle admits that the selective and incomplete quote set forth in Paragraph 21 appears to have been taken from Oracle filings in this Court.  Oracle denies the remaining allegations of Paragraph 21.

22.     Oracle admits that Oracle told this Court on September 17, 2014 that "[t]he only apparent difference between the 'new' and the 'old' does not appear to be a change in the development process, but that Rimini's conduct takes place in the cloud, i.e., on servers owned by Amazon web services or Windstream.  But Amazon and Windstream's servers still are not the customers' facilities, and cross-using the software is still infringement no matter where that happens."  Dkt. 488 at 5, *Rimini I.*  Oracle denies the remaining allegations of Paragraph 22.

23.    Oracle admits that Oracle told this Court on September 17, 2014 that, "[w]ith six months to a year of intensive discovery, Oracle is confident it could show that Rimini's new support process is old wine in a new bottle and every bit as infringing as the old process. Completing discovery during this time would require Rimini to provide Oracle with relevant discovery faster than it has to date. For example, it has been over 7 months since Oracle began discussing updating discovery with Rimini, and Rimini still has not provided Oracle with an accurate list of customers Rimini has gained since the close of discovery." Dkt. 488 at 7 & n.4, *Rimini I*. Oracle denies the remaining allegations of Paragraph 23.

24.    The allegations of Paragraph 24 are argument and require no response; to the extent a response is required, Oracle admits Oracle's Counterclaims assert that Rimini Street and Seth Ravin have directly infringed, have contributorily infringed, and are vicariously liable for infringement of a number of Oracle's copyrights.

25.    Oracle does not contest that there presently exists a justiciable controversy regarding Rimini's conduct related to its alleged support of certain of Oracle's PeopleSoft-, JDE-, Siebel-, and Oracle Database-branded software. Oracle denies the remaining allegations of Paragraph 25, including that this litigation is a "war."

26.    The allegations of Paragraph 26 are argument and require no response; to the extent a response is required, Oracle restates its responses to Rimini's allegations in Paragraphs 1-25.

27.    Oracle does not contest that there presently exists a justiciable controversy regarding Rimini's conduct related to its alleged support of certain of Oracle's PeopleSoft-, JDE-, Siebel-, and Oracle Database-branded software. The remaining allegations of Paragraph 27 are argument and require no response; to the extent a response is required, Oracle denies the remaining allegations of Paragraph 27.

28.    Oracle admits that it is the owner or exclusive licensee of the 95 copyright registrations listed in Paragraph 28, that these copyright registrations are valid and enforceable, and that these registrations cover certain of Oracle's software and support materials. Oracle denies the remaining allegations of Paragraph 28.

33

1

**AFFIRMATIVE DEFENSES**

2

**First Affirmative Defense**

3

**Preclusion / Res Judicata**

4        29.    Some or all of Rimini's claim for declaratory relief is barred by res

5   judicata on both claim preclusion and issue preclusion grounds.  Rimini and Oracle are both

6   parties to *Rimini I*.  In ruling on motions for partial summary judgment, this Court has directed

7   entry of judgment in favor of Oracle against Rimini.  *See Rimini I*, Dkt. 474 and Dkt. 476.  These

8   rulings, as well as other decisions and actions in *Rimini I*, preclude in whole or in part the relief

9   that Rimini requests or estop Rimini from seeking in whole or in part the relief that Rimini

10   requests in this action.

11

**Second Affirmative Defense**

12

**No Case or Controversy**

13        30.    Rimini's claim for declaratory relief fails in part for lack of a present case

14   or controversy.  Rimini seeks "a judgment declaring that since at least July 31, 2014, Plaintiff

15   has not infringed copyrights in Oracle Software, *including* the software and support material

16   covered [by]" a list of 95 copyright registrations relating to Oracle's PeopleSoft, JDE, Siebel,

17   and Oracle Database-branded software.  Dkt. 1 ¶ 28 (emphasis added).  Oracle International

18   Corporation is the owner or exclusive rightsholder of many different software applications and

19   related support materials.  Plaintiff has not established the existence of a case or controversy as

20   to Oracle's other software products.

21

**Third Affirmative Defense**

22

**Reservation of Rights**

23        31.    Oracle hereby gives notice that it intends to rely upon any other matter

24   constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal Rules of

25   Civil Procedure, and that it reserves the right to seek leave to amend this Answer to add to,

26   amend, withdraw, or modify these defenses as its investigation continues and as discovery may

27   require.

28

1

**Prayer For Relief**

2          WHEREFORE, as to Rimini's Complaint, Oracle respectfully prays for the

3    following:

4                    A.        For an Order dismissing Rimini's Complaint and all claims and

5    relief sought therein;

6                    B.        For entry of judgment for Oracle and against Rimini;

7                    C.        For an Order awarding Oracle its attorneys' fees and costs; and,

8                    D.        For an Order awarding Oracle such other and further relief as the

9    Court deems just and proper.

10

11   DATED:  February 17, 2015                    MORGAN, LEWIS & BOCKIUS LLP

12

13                                           By:_____/s/ Thomas S. Hixson_____
                                                      Thomas S. Hixson
14                                               Attorneys for Counterclaimant
                                             Oracle America, Inc. and Defendant and
15                                           Counterclaimant Oracle International Corp.

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF, ANSWER, AND JURY DEMAND

1

## **DEMAND FOR JURY TRIAL**

2          In accordance with Fed. R. Civ. P. 38(b), Counterclaimants Oracle America, Inc.,

3   and Oracle International Corp. demand a trial by jury on all issues so triable.

4

DATED:  February 17, 2015                    MORGAN, LEWIS & BOCKIUS LLP

5

6

7                                            By:_____/s/ Thomas S. Hixson_____

8                                                    Thomas S. Hixson
                                             Attorneys for Defendant Oracle America, Inc.
                                             and Defendant and Counterclaimant Oracle
9                                                    International Corp.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF, ANSWER, AND JURY DEMAND