BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:      702.382.7300
Facsimile:      702.382.2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
   (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:      510.874.1000
Facsimile:      510.874.1460
sholtzman@bsfllp.com
brichardson@bsfllp.com

Attorneys for Counterclaimant Oracle
America, Inc. and Defendant and
Counterclaimant Oracle International Corp.

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
NITIN JINDAL (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:      415.442.1000
Facsimile:      415.442.1001
thomas.hixson@morganlewis.com
john.polito@morganlewis.com
nitin.jindal@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:      650.506.4846
Facsimile:      650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Defendant. | Case No 2:14-cv-01699 LDG VCF<br><br>**AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1)   COPYRIGHT INFRINGEMENT;**<br>**(2)  VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT**<br>**(3)   VIOLATION OF LANHAM ACT;**<br>**(4)   INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** |
| ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Counterclaimants,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br><br>Counterdefendants. | **(5)   INDUCING BREACH OF CONTRACT;**<br>**(6)   BREACH OF CONTRACT;**<br>**(7)   UNFAIR COMPETITION;**<br>**(8)   UNJUST ENRICHMENT / RESTITUTION; and**<br>**(9)   AN ACCOUNTING**<br><br>**JURY DEMAND**<br><br>**<u>PUBLIC REDACTED VERSION</u>** |

1        **ORACLE'S AMENDED COUNTERCLAIMS AGAINST RIMINI**

2        Counterclaimants Oracle America, Inc. ("Oracle America") and Oracle International

3    Corporation ("OIC") (together "Oracle") for their Counterclaims against Defendants Rimini

4    Street, Inc. ("Rimini") and Seth Ravin (together "Counterdefendants"), allege as follows based

5    on their personal knowledge as for themselves, and on information and belief as to the acts of

6    others:

7    **I.        INTRODUCTION**

8        1.        These counterclaims mark the latest chapter in the long saga of Rimini's

9    massive theft of Oracle's software, masterminded by its CEO Seth Ravin. For years, Rimini and

10   Ravin lied to their customers (and to this Court) about how they provide support for various

11   Oracle software products. Along the way, the Court held Rimini and Ravin in contempt of court

12   for refusing to testify about that support, and later sanctioned Rimini for intentionally destroying

13   evidence of how it provided that support. After a jury trial, Rimini was found to have infringed

14   Oracle's copyrights in Oracle's PeopleSoft-, JD Edwards- ("JDE")-, Siebel-, and Oracle

15   Database-branded software and support materials, and to have engaged in other unlawful

16   activities. Oracle asserts these counterclaims to end Rimini's and Ravin's unlawful conduct, once

17   and for all.

18       2.        In 2010, Oracle sued Rimini and Ravin for infringement of Oracle's

19   copyrights and other misconduct to provide illegal support services to Oracle customers. In that

20   case ("*Rimini I*"), the Court granted or granted in part two Oracle motions for partial summary

21   judgment, establishing Rimini's liability for certain acts of copyright infringement, including

22   (1) copying Oracle's software to locations other than the customers' facilities and (2) copying

23   some customers' software to support multiple customers ("cross-use").

24       3.        Rimini admitted in Court filings in *Rimini I* that "Rimini continued its

25   infringing activities through at least February 2014," the date of the Court's first ruling in *Rimini I*

26   that Rimini had engaged in copyright infringement.

27       4.        In August 2014, after the Court's second ruling in *Rimini I* that Rimini had

28   engaged in copyright infringement, Rimini stated publicly that the Court's rulings relate "to

1    processes and Oracle software no longer in use at Rimini."

2           5.    In October 2015, after the jury in *Rimini I* found Rimini liable for

3    copyright infringement and computer access violations, Rimini stated publicly that "Rimini Street

4    ceased the use of Oracle software on its servers and transitioned to a remote access connection

5    service model for all clients by July 2014" and that "Rimini Street [has] ceased using the

6    particular processes that Oracle challenged as infringing."

7           6.    Rimini made these and other statements as a part of a campaign to falsely

8    assure its customers and other Oracle software licensees, investors, and the public that the rulings

9    in *Rimini I* would "not cause interruptions to service for ANY client or ANY product."  As

10   described below, Rimini's representations were false.  Rimini's "new" process still involves

11   intentional and systematic misuse of Oracle software.  Rimini is both lying to its customers and

12   continuing to infringe Oracle's copyrights.

13          7.    Rimini's "new" copying, enabled by unlawful downloading from Oracle's

14   websites, violates the same laws as the old support process, as already adjudged by this Court.

15   The new conduct, wrongly advertised to customers as outside the scope of the Court's ruling,

16   necessitates these counterclaims to bring a full stop to Rimini's and Ravin's recidivist illegal

17   copying and cross-use of Oracle's intellectual property.  These counterclaims address the

18   infringement that Oracle knows about based on its investigation to date.  Given Rimini and

19   Ravin's track record of deception and wrongful conduct, Oracle expects that discovery will reveal

20   additional infringement and other wrongdoing.

21          8.    From its inception, Rimini based its business model on the widespread

22   illegal copying of Oracle's copyrighted software and support materials.  Rimini holds itself out as

23   a support provider to companies that license certain Oracle enterprise software, including its

24   PeopleSoft-, JDE, Siebel-, E-Business Suite-, and Oracle Database -branded software.  At every

25   step, Rimini has proclaimed its innocence.  At every step, Oracle has proved that Rimini infringed

26   Oracle's copyrights.

27          9.    Rimini's "new" model is fundamentally the same as the illegal business

28   model at issue in *Rimini I*.  Rimini simply has shifted some of its illicit activities from its own

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1   servers to the cloud or to other locations that do not constitute a licensed customer's facilities, and

2   apparently has continued others.  Rimini and Ravin have not explained – and apparently cannot

3   explain – how they have remedied *any* of the copying and cross-use of Oracle's software this

4   Court held illegal.  Yet Rimini and Ravin continue to recruit Oracle's customers with false

5   assurances that they have.

6          10.     Rimini's "new" business model just extends again the infringing practices

7   Ravin pioneered at SAP TomorrowNow ("SAP TN") and subsequently refined at Rimini.  SAP

8   had no choice but to shut down that unlawful enterprise, built on SAP TN's criminal copyright

9   infringement, and Oracle seeks to similarly put an end to Rimini's unlawful activities.  Rimini's

10   and Ravin's copyright infringement and other illegal, wrongful, and unfair business practices

11   threaten irreparable harm to Oracle, its many employees, customers, shareholders, and the

12   industry at large.  Oracle has no adequate remedy at law for the harm threatened and caused by

13   these acts.

14   **II.     THE PARTIES**

15          11.     On February 15, 2010, Oracle USA, Inc.  ("Oracle USA"), a Colorado

16   corporation, merged with and into Sun Microsystems, Inc.  Sun Microsystems, Inc., the surviving

17   corporation, was then renamed "Oracle America, Inc."  ("Oracle America").  Counterclaimant

18   Oracle America is a Delaware corporation, with its principal place of business in Redwood City,

19   California.  Oracle America develops and licenses certain intellectual property, including

20   copyrighted enterprise software programs, and provides related services.  Oracle America is the

21   successor in interest to Oracle USA, and Oracle USA is the successor to PeopleSoft USA, Inc.

22   ("PeopleSoft") and a successor in interest to certain PeopleSoft, JDE, and Siebel entities.

23          12.     Counterclaimant OIC is a California corporation, with its only place of

24   business in Redwood City, California.  OIC owns and licenses certain intellectual property,

25   including copyrighted enterprise software programs used around the world.  Intellectual property

26   rights formerly held by certain PeopleSoft, JDE, and Siebel entities were transferred to OIC as

27   part of Oracle's acquisitions of PeopleSoft and Siebel.  OIC is the owner or exclusive licensee of

28   the copyrights at issue in this action.

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1          13.     Seth Ravin is the founder and CEO and former president of Rimini, and the

2  former President of SAP TN.  He is a resident of Nevada.

3          14.     Rimini is a Nevada corporation with its principal place of business in Las

4  Vegas, Nevada.  Ravin founded and controls Rimini.

5          15.     Counterdefendants all are doing business in and have directed their

6  activities at Nevada.  Rimini is headquartered in this district, and Ravin resides in this district.

7  Rimini also advertises, promotes, sells, licenses, services, and supports customers in Nevada.

8  Counterdefendants have also committed their unlawful conduct in other states.

9          16.     At all material times, through his ownership of Rimini and his role as CEO

10  and President, Seth Ravin had both the right and the authority to control, and had a direct

11  financial interest in, Rimini's actions.

12        17.     At all material times, each of the Counterdefendants was the agent, servant,

13  employee, partner, joint venturer, representative, subsidiary, parent, affiliate, alter ego, or co-

14  conspirator of the others, had full knowledge of and gave substantial assistance to the alleged

15  activities, and in doing the things alleged, each was acting within the scope of such agency,

16  service, employment, partnership, joint venture, representation, affiliation, or conspiracy, and

17  each is legally responsible for the acts and omissions of the others.

18  **III.    JURISDICTION**

19        18.     Oracle's counterclaims fall within the Court's supplemental jurisdiction

20  pursuant to 28 U.S.C. § 1367(a).

21        19.     Oracle's first and second causes of action arise under the Federal Copyright

22  Act, 17 U.S.C. § 101 *et seq.*, and its third cause of action arises under the Lanham Act, 15

23  U.S.C. § 1051 *et seq.*  Accordingly, this Court has subject matter jurisdiction over this action

24  pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

25        20.     This Court has supplemental subject matter jurisdiction over the pendent

26  state law claims under 28 U.S.C. § 1367, because these claims are so related to Oracle's claims

27  under federal law that they form part of the same case or controversy and derive from a common

28  nucleus of operative facts.

1          21.     This Court also has original subject matter jurisdiction over the state law

2  claims under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the

3  Counterclaimants and Counterdefendants, and the amount in controversy exceeds $75,000.

4  **IV.**    **VENUE**

5          22.     Venue in this district is appropriate, pursuant to 28 U.S.C. § 1391, because

6  Counterdefendants Rimini and Ravin reside in this district and because a substantial part of the

7  events giving rise to the dispute occurred in this district, a substantial part of the property that is

8  the subject of the action was and is situated in this district, and the Court has personal jurisdiction

9  over each of the Counterdefendants as alleged throughout this Counterclaim.

10  **V.**    **DIVISION ASSIGNMENT**

11          23.     Assignment to the Las Vegas division is proper under Civil Local Rule IA

12  8-1(a), because this action arises, in part, in Las Vegas, where Rimini is headquartered and Ravin

13  resides and where, among other places, both engaged in their unlawful conduct.

14  **VI.**    **FACTUAL ALLEGATIONS**

15      **A.**    **Oracle's Software And Support Materials**

16          24.     Oracle is the world's largest enterprise software company, and the first to

17  receive J.D. Power & Associates' global certification for outstanding service and support based

18  on measuring customer satisfaction worldwide.  Oracle develops, manufactures, markets,

19  distributes, and services software designed to help its customers manage and grow their business

20  operations.  Oracle's enterprise software and technology offerings include database, middleware,

21  and applications software programs.

22          25.     As is typical in the enterprise software industry, Oracle does not sell

23  ownership rights to its software or related support products to its customers.  Instead, Oracle's

24  customers purchase licenses that grant them limited rights to use specific Oracle software

25  programs, with Oracle retaining all copyright and other intellectual property rights in these works.

26  In addition, licensed customers can, and typically do, purchase some set of technical support

27  services.  Those services include upgraded products such as updates, bug fixes, or patches to the

28  software programs the customers have expressly licensed from Oracle and have the right to use

1    for purposes authorized by Oracle.

2            26.     Oracle's license agreements with its customers may vary according to the

3    products licensed, including because the customers originally contracted with PeopleSoft, Siebel,

4    and/or JDE, but all of the relevant license agreements for what is now Oracle software set

5    comparable rules for access to, and reproduction, distribution, and use of, that software.  Among

6    other things, those rules prohibit access to, or reproduction, distribution, or use of, any portion of

7    the software not expressly licensed to and paid for by the licensee.  They also prohibit any

8    sublicense, disclosure, use, rent, or lease of the software to third parties.

9            27.     The licenses, with a few exceptions that are not relevant here, also restrict

10   where the customer physically may install the software, to whom it may provide copies, and the

11   purposes for which it may make those copies.  These licensing restrictions are important to

12   protect Oracle's substantial investment in the development of its software.  They also help to

13   make worthwhile Oracle's continuous enhancement of its products for the benefit of its

14   customers, which requires significant investment in research and development.

15           28.     Oracle's license agreements define Oracle's confidential information to

16   include, without limitation, Oracle's software, its object and source code, and any associated

17   documentation or service offerings.  In certain instances, licensees may designate third parties to

18   help maintain Oracle's software, but only subject to the terms of the relevant license agreement

19   between the licensee and Oracle.  With a few exceptions that are not relevant here, those

20   agreements generally preclude the third party from installing the software on an offsite server or

21   accessing the source code of the software.  The license agreements generally prohibit the licensee

22   or any third party from using the software offsite without notice to Oracle, prohibit disclosure to

23   third parties, and prohibit any use other than by the customer for production, back up, archival

24   and in-house disaster recovery purposes.  As defined in one illustrative license agreement,

25   "software" specifically includes the update products made available to customers as part of the

26   support contracts that customers purchased from Oracle.

27           29.     Through its Terms of Use, Oracle also restricts access to the technical

28   support websites that Oracle customers or their authorized agents use to access and download

6

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1   Oracle's copyrighted materials licensed to Oracle customers.  These copyrighted materials

2   include software and related updates and instructional materials across the PeopleSoft, JDE,

3   Siebel, Oracle E-Business Suite, and Oracle Database families of software products (the

4   "Software and Support Materials").

5          30.     Access to Oracle's Software and Support Materials on its technical

6   websites (including My Oracle Support, Oracle.com, and E-Delivery websites) is governed by the

7   Oracle website's Terms of Use.  These Terms of Use state:  "By accessing or using the Site or the

8   Content provided on or through the Site, you agree to follow and be bound by the following terms

9   and conditions concerning your access to and use of the Site and the Content provided on or

10  through the Site ('Terms of Use') . . . ."  These Terms of Use prohibit users from downloading,

11  storing, viewing, or printing the materials on that website or available for download through the

12  Site other than "solely for personal, informational, non-commercial purposes."  The Terms of Use

13  also prohibit the user from modifying or altering those materials "in any way" and prohibited

14  redistribution.  The Oracle website's Terms of Use further state:  "Your use of software is subject

15  to all agreements such as a license agreement or user agreement that accompanies or is included

16  with the Software, ordering documents, exhibits, and other terms and conditions that apply . . . ."

17         31.     Further, Oracle's E-Delivery website, which provides access to the

18  software applications for Oracle's products, has its own E-Delivery Terms of Use.  These Terms

19  of Use condition access to the site on the following agreement:  "(1) you have already obtained a

20  license from Oracle, or an Oracle partner, for your use of the software and that your Oracle

21  [Agreement] . . . governs your use of the software, or (2) if you have not already obtained a

22  license . . . you accept that the Oracle Trial License Agreement below governs your use of the

23  software for the time specified in such agreement."  The Oracle Electronic Delivery Trial License

24  Agreement in turn states that "[t]his Trial Agreement grants you the temporary right to use the

25  Programs for evaluation purposes on your single computer designated by you . . . .  You may use

26  the Programs only for evaluation and testing and not for production use."  The Trial License

27  Agreement prohibits any "use [of] the Programs for commercial timesharing, rental, or service

28  bureau use" and provides that the user may not "duplicate and/or install the Programs other than

1     as specified in this Trial Agreement."

2             32.     To assist customers with valid support agreements in updating their

3     licensed software, Oracle provides software utilities that allow a customer to search for and

4     download updates that meet user-defined criteria, such as the set of products and modules the

5     customer has licensed.

6           **B.**       **Rimini's Business Model**

7             33.     In the world of enterprise software applications, revenue comes from three

8     basic activities: (a) licenses of the underlying software applications; (b) consulting relating to the

9     implementation and operation of the software; and (c) support contracts to update and upgrade the

10     software.

11            34.     Rimini provides support services to customers who use Oracle software,

12     including Oracle's PeopleSoft-, JDE-, Siebel-, E-Business Suite- and Oracle Database-branded

13     software.

14            35.     Rimini claims to compete with Oracle by providing low-cost maintenance

15     and support services to Oracle customers running assorted versions of these software programs.

16     Rimini advertises that it can cut customer maintenance and support bills in half and give

17     customers a reprieve from software upgrade cycles. It claims to do so by allowing customers to

18     remain on older, often outdated, versions of Oracle software rather than moving to later versions,

19     and by eliminating fees for fixes and upgrades that customers would otherwise have to pay to

20     remain on the older versions. Rimini claims to provide such fixes and updates and thereby to

21     support outdated software for 10 years past its general availability without additional cost to

22     customers.

23           36.     In addition to those services, Rimini offers "customization fixes," "tax and

24     regulatory updates," "applications and repository fixes," and "24/7 Support with Guaranteed 30

25     Minutes or less Response" for software programs to which it has no intellectual property rights.

26     Rimini claims to offer this comprehensive support at "More Than 50% Annual Cost Savings."

27           37.     Without improperly and impermissibly cross-using one customer's

28     software to create updates and provide support for others, Rimini does not have the development

1   capability to meet the support commitments it advertises at any price, much less the 50% discount

2   it promotes.

3       38.    Rimini's public statements and its new suit for declaratory relief suggest

4   that Rimini is seeking to falsely assure its existing customers and potential new customers that its

5   current business model is not unlawful.

6       **C.**    **The Beginning of Rimini's and Ravin's Business Model:  SAP TN**

7       39.    Ravin helped create Rimini's illegal business model at his prior company,

8   SAP TN, with his partner Andrew Nelson.  SAP TN made and used thousands of copies of

9   Oracle's copyrighted software applications and database software and created custom

10   programmed tools to "scrape" Oracle's website for bug fixes, patches, updates, and instruction

11   manuals.

12       40.    In 2005, Ravin and Nelson sold SAP TN to the German software

13   conglomerate SAP AG.  SAP AG publicly admitted that SAP TN improperly copied Oracle

14   Software and Support Materials and shut it down in October 2008, having concluded that it could

15   not provide support services without infringing Oracle's intellectual property rights.

16       41.    In March 2010, SAP AG and SAP TN conceded that, during the time that

17   Ravin was managing SAP TN under the supervision and control of SAP AG, SAP TN infringed

18   Oracle's copyrights and violated both the federal Computer Fraud and Abuse Act and California

19   Penal Code section 502(c)(7) by unlawfully accessing Oracle computers.  SAP TN pled guilty to

20   federal criminal charges of illegally downloading Oracle's software and willfully infringing

21   Oracle's copyrights during that time.

22       42.    After Ravin left SAP TN, he founded Rimini.  Ravin has admitted that

23   Rimini mimics and expands the SAP TN model:  "Our [Rimini's] basic model for TomorrowNow

24   customers is that you're going to get the same kind of savings" because "[w]hat we're offering is

25   on top of what they're used to, which is the vanilla offering that I actually assembled – because it

26   hasn't changed much from what I put together at TomorrowNow several years ago when we were

27   launching the company."  Rimini stated that tax and regulatory updates to Oracle software

28   applications "are packaged the same as Client is used to receiving previously from PeopleSoft

1    Corporation and then TomorrowNow, Inc.  There is no difference in how Rimini tax and

2    regulatory updates are installed."

3         43.    Oracle, of course, owned the intellectual property rights to the software

4    SAP TN copied and used to create its illegal updates.  Ravin and Rimini knew that and

5    capitalized on it by copying the model and boasting about the similarity in services.

6         44.    In 2007, commenting on Oracle's lawsuit against SAP AG and SAP TN for

7    illegally downloading Oracle's intellectual property, Ravin explained that "[i]t is very common

8    for [a customer] to provide a password and ID for us to get to download upgrades and support.

9    It's a standard industry practice across every consulting firm.  *The key is you have to be*

10   *authorized.*"  (emphasis supplied).  Ravin emphasized that "[y]ou need to be very careful about

11   parsing documents – whether you take 20 or hundreds [of files].  *Either you're authorized or*

12   *you're not.*"  (emphasis supplied).

13        **D.    Rimini's Undisputed Infringement:  *Rimini I***

14        45.    In *Rimini I*, the Court and the jury found that Rimini had supported its

15   customers through infringement of Oracle's Software and Support Materials.  Rimini made illegal

16   copies of its customers' licensed Oracle enterprise applications software and documentation by

17   reproducing Oracle software and documentation, by creating derivative works based upon Oracle

18   software and documentation, and by distributing Oracle software and documentation and

19   unlicensed derivative works.

20        46.    Within the timeframe at issue in *Rimini I*, and limited to the customers at

21   issue in *Rimini I*, Rimini created at least 478 infringing PeopleSoft, JDE, and Siebel environments

22   on its computer systems.  At least 216 of those environments also contained infringing copies of

23   Oracle Database.  For the timeframe and customers within the scope of the *Rimini I* trial, Rimini

24   made thousands of copies of Oracle software.

25        47.    Rimini's infringement was not limited to environments.  For the timeframe

26   and customers within the scope of the *Rimini I* trial, Rimini also made almost 600,000 infringing

27   copies of Oracle documentation, updates, and other support materials.

28        48.    These Rimini copies were not permitted by any license agreement.  Many

1    of these copies were infringing because they were located on Rimini's computer systems.  Many

2    of these copies were infringing because they were cross-used to support multiple customers

3    (rather than limited to a single licensed customer's internal business operations).  Many copies

4    violated multiple license provisions.

5         **E.     Rimini's Ongoing Infringement**

6              49.     Rimini continues to rely upon copies of Oracle Software and Support

7    Materials to provide low-cost support for Oracle software, and to induce Oracle's customers to

8    cancel their support contracts with Oracle in favor of Rimini.

9              50.     Through at least February 13, 2014, Rimini continued to make infringing

10   copies (including reproductions, derivative works, and distributions) of Oracle Software and

11   Support Materials and to maintain those copies on Rimini's computer systems.

12             51.     Between late 2011 and early 2014, Rimini created more than ███ infringing

13   Oracle software environments (installed copies of Oracle software) that were not within the scope

14   of the *Rimini I* litigation on Rimini's computer systems.  These infringing environments include,

15   for example, two Siebel environments associated with customer ███████████ and a

16   PeopleSoft environment associated with ████████████.

17             52.     Rimini also created on its computer systems infringing copies of Oracle

18   Database software that were not within the scope of the *Rimini I* litigation.  These infringing

19   copies include, for example, an unlicensed version of Oracle Database version 10, release 2,

20   associated with ██████████.

21             53.     No later than July 2014, Rimini claims to have "migrated" all copies of

22   Oracle Software and Support Materials off of its computer systems.  In doing so, Rimini again

23   copied the Oracle Software and Support Materials, in many cases using a USB drive to create

24   those copies.  Rimini nonetheless maintained and still maintains custody and control over these

25   copies, whether stored on cloud systems or hosted on customer servers.

26             54.     Rimini's "migration" of infringing Oracle software environments and other

27   infringing copies of software, updates, and documentation, was unlicensed and constituted a

28   large-scale infringement of Oracle's exclusive rights to reproduce and distribute Oracle's

1    copyrighted Software and Support Materials.  Rimini also violated Oracle's exclusive rights to

2    export and to authorize exportation of Oracle's copyrighted software and support materials.

3           55.    Despite the Court's prior rulings and the jury's verdict, Rimini continues to

4    create unlicensed copies of and derivative works from Oracle Software and Support Materials that

5    are not located at a licensed customer's facilities, and to distribute those copies and derivative

6    works without a license.

7           56.    Despite the Court's prior rulings and the jury's verdict, Rimini continues to

8    create unlicensed copies of and unlicensed derivative works from Oracle software associated with

9    one customer where those copies and derivative works are not solely for the customer's internal

10   business use.  At least some of these copies and derivative works are unlicensed service bureau

11   arrangements.

12          57.    Rimini has also created new means and methods of infringing Oracle's

13   copyrights, including software and techniques that facilitate and result in the unlicensed cross-use

14   of Oracle Software and Support Materials across multiple locations.

15          58.    In the alternative, Rimini has induced, is contributorily liable for, and is

16   vicariously liable for acts of copyright infringement performed directly by Rimini's customers

17   and by other third parties, including creation of unlicensed copies of and derivative works from

18   Oracle's software.  These copies and derivative works are not solely for the customer's internal

19   business use.  At least some of these copies and derivative works are unlicensed service bureau

20   arrangements.

21          59.    Rimini distributes unlicensed copies of and derivative works from Oracle

22   copyrighted Software and Support Materials to its customers.

23          60.    Rimini also continues to distribute unlicensed copies of and derivative

24   works from Oracle Software and Support Materials that it previously created, including continued

25   distribution of copies and derivative works created within the scope of *Rimini I*.

26          61.    Rimini's unlicensed copying, including unlicensed reproduction,

27   distribution, and creation of derivative works, extends to Oracle's PeopleSoft-, JDE-, Siebel-, E-

28   Business Suite-, and Oracle Database-branded software.

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

62.     In many ways, Rimini continues to operate just as it did before, when it housed the software locally.  In 2014 and 2015, Rimini announced the release of comprehensive tax, legal and regulatory updates for PeopleSoft licensees, including updates designed to address national, state, and local requirements across the U.S., Canada, and many other countries, as well as updates for JDE and E-Business Suite licensees.  It is implausible that Rimini's self-proclaimed "fastest . . . update delivery cycle in the industry," simultaneously delivered to all customers, could happen if Rimini did not continue unlawfully to cross-use Oracle's software.

63.     Indeed, flow charts produced by Rimini that allegedly depict Rimini's "new" model confirm that Rimini ████████████████████████████████████ ████████████████████████████████████████████████–the exact, infringing conduct addressed in the Court's prior orders and the jury verdict.

64.     A provisional patent application that Rimini has represented is related to Rimini's "new" support model also confirms that Rimini continues to infringe Oracle's copyrights.  Rimini Street's application states:  "An update can be developed and tested for one client environment.  That update can be reduced to a set of data that can be used to create updates for other client environments that include a same version of the program."  This is precisely the conduct that this Court and the jury already found to be infringing.

65.     Analysis of some of the software Rimini uses in its "new" processes further shows that Rimini continues to keep Oracle software and support materials on its computer systems, or systems under its custody and control, during the process of developing and distributing updates to its customers.

66.     Rimini  took environments ruled infringing by the Court, unlawfully copied and distributed them, and continued to apply new updates to those copies, creating a new infringing derivative work each time.  The new unlawfully-created updates also infringe because they must, by definition, contain substantial portions of, and derive from, Oracle's copyrighted works.  Thus, Rimini's new, supposedly non-infringing copies of Oracle's copyrighted software infringe Oracle's copyrighted software in multiple ways.

67.     In the past, Rimini relied on unlawful downloads from Oracle's technical

13

1   support websites to create illegal copies of and derivative works from Oracle's Software and

2   Support Materials.  Those downloads have continued for customers and time periods outside the

3   scope of *Rimini I.*

4         68.     By downloading these files, Rimini created copies of Oracle Software and

5   Support Materials on its servers or the servers of cloud storage providers.

6         69.     To conduct some of this downloading, Rimini has used IP addresses

7   associated with cloud storage providers, thus acting to conceal its identity from Oracle.

8         70.     Since February 2014 alone, Rimini has downloaded millions of files

9   containing Oracle Software and Support Materials from Oracle's technical support websites.

10   Some of these downloads are under usernames containing "@riministreet.com," while others are

11   not.  As shown at trial, Rimini sought to conceal its downloading activities.

12         71.     Rimini also improperly downloads Oracle Software and Support Materials

13   using credentials of a customer not licensed to those materials.  For example, Rimini downloaded

14   updates to JD Edwards EnterpriseOne 9.1's Rental Management module and to JD Edwards

15   EnterpriseOne 9.2's Advanced Job Forecasting module for customers that had not licensed these

16   modules.

17         72.     Rimini also improperly downloads installation software from Oracle's

18   technical support websites, including but not limited to installation software for Siebel 8.1.1.1.

19         73.     Rimini's unauthorized downloading creates infringing copies of Oracle's

20   PeopleSoft-, JDE-, Siebel-, E-Business Suite-, and Oracle Database-branded Software and

21   Support Materials.

22         74.     Many of these infringing copies are subsequently distributed by Rimini to

23   its customers, constituting further acts of infringement by Rimini.

24         75.     In the alternative, Rimini has induced customers and other third parties to

25   create infringing copies through unauthorized downloading of Oracle Software and Support

26   Materials from Oracle's technical support websites.

27         76.     Rimini's conduct, or in the alternative the conduct of customers and other

28   third parties, violates Rimini's customers' Oracle licenses, which permit use of the software only

1    on the customers' own premises and subject to specific license terms.

2           77.    Rimini's customers pay Rimini to provide support.  Rimini relies upon

3    copies of Oracle Software and Support Materials to provide that support.  Because Rimini relies

4    upon infringing copies of Oracle Software and Support Materials to provide support to its

5    customers, Rimini's profits arise from Rimini's infringement of Oracle's copyrights.

6           78.    Rimini's infringing activity is ongoing.

7           79.    Rimini continues to profit from the foregoing acts of direct and indirect

8    infringement.

9    **F.     Rimini's and Ravin's History of Deception, Misdirection, and Obfuscation**

10          80.    For years, Rimini and Ravin tried to conceal the nature and scope of their

11   illegal actions, and to deceive Oracle, this Court, and the public about those actions.

12          81.    In the SAP case, in defiance of a court order, Ravin and Rimini refused to

13   testify as to whether, as Ravin touted, Rimini had replicated the illicit SAP TN model.  Only after

14   this Court held Ravin and Rimini in contempt of court for this attempt to hide evidence of this

15   conduct did Ravin agree to give testimony.  Dkt. 49 at 2, *Oracle USA, Inc.  v. SAP AG*, No.  2:09-

16   CV-01591-KJD-GWF (D.  Nev.  Jan.  12, 2010).

17          82.    In the *Rimini I* case, after Ravin and Rimini knew that Oracle might sue,

18   Rimini destroyed the copies of Oracle's software it had co-mingled in a so-called software

19   library.  It then claimed falsely in court filings that such a library "never existed."  This Court

20   sanctioned Rimini for that willful destruction of relevant evidence and blatant misrepresentation.

21   Dkt. 466 at 19-20, *Rimini I*.

22          83.    Rimini told the public that Oracle's *Rimini I* lawsuit was "baseless," and

23   "vehemently" denied "Oracle's false and malicious allegations."  It proclaimed that "Rimini

24   Street's business processes and procedures are entirely legal," and that "Rimini Street has

25   implemented extraordinary processes and procedures to assure the proper use of Oracle's

26   intellectual property."  Specifically, Rimini claimed it "only delivers Oracle software and support

27   materials to each client who is entitled to receive such materials" and "uses separate data 'silos'

28   for each client and has policies against comingling data."  Rimini made and repeated those

1    assertions in pleadings filed in March 2010, December 2010, and June 2011.

2          84.    Rimini's assertions were false.  In its February 2014 summary judgment

3    order, this Court found it was "undisputed" that Rimini did not "silo" its customers' software, but

4    instead used software it obtained from certain customers to "develop and test software updates for

5    . . . other Rimini customers with similar software licenses."  For example, the Court held:  "[I]t is

6    undisputed that the development environments associated with the City of Flint were not used

7    solely for the City of Flint's internal data processing operations.  Instead, the development

8    environments were used to develop and test software updates for the City of Flint and other

9    Rimini customers with similar software licenses. . . .  Therefore, the court finds that Rimini's

10    copying of the copyrighted software is outside the scope of" the customer license.

11          85.    The Court reprised these findings in its August 2014 order holding that

12    Rimini infringed Oracle's Database software:  "Section C [of the license] authorizes use of the

13    software only for the licensee's 'internal business operations,'" but "it is undisputed that Rimini

14    used Oracle Database to create updates for all clients using a particular version of a copyrighted

15    software program."

16          86.    In dismissing Rimini's defamation counterclaim, the Court's second

17    summary judgment ruling and subsequent clarification stated that "because 'Rimini had engaged

18    in theft of Oracle's intellectual property, it is true [for purposes of Rimini's defamation

19    allegations] that Rimini has engaged in theft of Oracle's intellectual property," and that "because

20    Rimini had engaged in copyright infringement, and based on Ninth Circuit and Supreme Court

21    legal precedent, Oracle's statements that Rimini had engaged in 'massive theft' were not

22    actionable defamation."  Dkt. 507 at 2-3, *Rimini I*.

23    **G.**    **Rimini and Ravin's Continued Efforts to Deceive**

24          87.    After the Court's second summary judgment order in August 2014,

25    Rimini's chief marketing officer claimed publicly that the Court's infringement findings "relate to

26    processes and Oracle software no longer in use *at Rimini Street*, and therefore do not cause

27    interruptions to service for ANY client or ANY product."  (emphasis supplied).

28          88.    In an earlier letter to customers dated February █ 2014, Rimini stated that

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

"in January 2013, Rimini Street began a project to *migrate* all existing PeopleSoft, JD Edwards and Siebel Rimini-Hosted Environments to Client-Hosted Environments and discontinue the use of all Rimini-Hosted Environments.  We are continuing this migration, which conforms to the Court's recent ruling."  (emphasis supplied)

89.     Rimini's public denials of infringement are, yet again, seriously misleading.  Indeed, as discussed above, Rimini's "new" support model involves the same acts that the Court has already ruled infringe Oracle's copyrights as a matter of law, and are facilitated by Rimini's continued unlawful downloading from Oracle's technical support websites.  For example, "migrating" infringing software copies simply creates more infringing software copies.  And Rimini does not always even "migrate" this software back to the customer, as its public proclamations and propaganda imply.  Rather, Rimini pays its customers to locate the infringing software copies on third party cloud servers, such as Amazon Web Services and Windstream, so that Rimini has unfettered access to them.  (In fact, it appears that Rimini often amends its support agreements with its customers to specify that Rimini will pay for the cost of hosting the software on Rimini's behalf.)

90.     Either Rimini simply has again copied the same infringing copies to a new (non-customer) location, or it has created new copies in some other way, but still at a non-customer location.  Either way (or in combination), Rimini continues illegally to copy Oracle's Software and Support Materials.

H.     **Rimini's Improper Removal or Alteration of Copyright Management Information**

91.     Oracle's software and documentation typically include copyright notices and other Oracle copyright management information.

92.     As part of its support offering, Rimini creates updates, fixes, and documentation based upon Oracle's copyrighted software and documentation.

93.     Rimini has intentionally removed Oracle copyright notices and other Oracle copyright management information from certain files relating to Rimini's creation of updates, fixes, and documentation.

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

94.     As part of its campaign to conceal its unlawful conduct, Rimini has also intentionally altered Oracle copyright notices and other Oracle copyright management information from certain files relating to updates, fixes, and documentation.

95.     Rimini knowingly removed and altered Oracle's copyright management information within these updates, fixes, and documentation.  In fact, ████████████████ ████████████████████████████████████████████████████████████.

96.     For example, Rimini removed or altered Oracle's copyright management information in ████████████████████████████████████████████.

97.     Rimini also ██████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████.

98.     Rimini also created documentation by ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ Rimini also used copies created in this way as templates to create additional documentation, in which Oracle's copyright management information had been removed or altered.

99.     In some instances, Rimini has altered copyright management information such as the title of the work, the name of the author, or the name of the copyright claimant.  In other instances, Rimini has removed this and other copyright management information.

100.     At all relevant times, Rimini has known or has had reasonable grounds to know that the removal or alteration of Oracle's copyright management information would induce, enable, facilitate or conceal Rimini's infringement of Oracle's copyrights.

101.     Rimini distributes or makes available to its customers files with removed or altered Oracle copyright management information.  Rimini does so with knowledge that the Oracle copyright management information has been removed or altered.

102.     For example, Rimini distributed or made available copies of ████████████████████████████████████████ in which Rimini had removed or

18

1    altered Oracle's copyright management information, with knowledge or with reasonable grounds

2    to know that Rimini had removed or altered Oracle's copyright management information.

3        103.    As a second example, Rimini distributed or made available copies of

4    software documentation in which Rimini had removed or altered Oracle's copyright management

5    information, with knowledge or with reasonable grounds to know that Rimini had removed or

6    altered Oracle's copyright management information.

7        104.    Rimini also distributed or made available copies of files from which third

8    parties ███████████ had removed or altered Oracle's copyright management information.

9    Rimini knew or had reasonable grounds to know that these third parties had previously removed

10   or altered Oracle's copyright management information, both because of Rimini's familiarity with

11   Oracle's source code in general and because many Rimini employees were formerly employed by

12   ███████████ third parties that had performed the removal.

13   **I.    Rimini's Fraudulent Statements to Oracle Customers**

14       105.    Rimini has made false and misleading statements in commercial

15   advertising and promotion of Rimini's services, through the broad dissemination of public

16   statements and promotional letters, including the following statements:

17       (a)    In a statement made on or about August 15, 2014 to The Register

18   and included in an article available at http://www.theregister.co.uk/2014/08/15/rimini_business_

19   as_usual_oracle_defamation_judgment/, Rimini's Chief Marketing Officer, David Rowe, stated

20   that the Court's infringement findings against Rimini "relate to processes and Oracle software no

21   longer in use at Rimini, and therefore do not cause interruptions to service for ANY client or

22   ANY product."

23       (b)    In a similar statement made in marketing materials emailed to

24   existing customers on or about August █, 2014, Seth Ravin stated that the Court's infringement

25   findings against Rimini "relate to processes and software no longer used by Rimini Street, and

26   therefore will not cause any interruptions to service for any client or any product line."

27       (c)    In a statement made in marketing materials emailed to potential

28   customers in or around November 2014, Rimini stated that Oracle's "support exception including

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1    payroll support expires December 31, 2014" for Oracle's E-Business Suite version 11.5.10.

2

3            106.    Rimini knew or should have known that the above-described statements

4    were false and misleading.

5            107.    Prior to making those statements, Rimini knew or should have known that

6    the processes at issue in the Court's infringement findings are the same processes that Rimini

7    continues to use to this day, including without limitation Rimini's continued use of infringing

8    PeopleSoft software, fixes, and updates from *Rimini I*, its continued cross-use of PeopleSoft

9    software, and its continued practice of creating infringing PeopleSoft environments outside of the

10   customers' facilities.

11           108.    Prior to making those statements, Rimini knew or should have known that

12   the Oracle software at issue in the Court's infringement findings is the *exact same* software that

13   Rimini continues to use to this day.  The Court found that the fixes and updates that Rimini

14   generated by cross-using PeopleSoft software environments on its local servers were infringing.

15   These fixes and updates were integrated into all of Rimini's PeopleSoft software environments.

16   Now Rimini has merely copied those software environments onto cloud servers.  Rimini

17   continues to cross-use those infringing software environments to create further infringing fixes

18   and updates.

19           109.    Rimini knew or should have known that Oracle's Exception to Sustaining

20   Support for E-Business Suite release 11.5.10 did not expire until December 31, 2015, as Oracle

21   has documented in various publicly-available sources.

22       **J.      Ravin Controlled and Benefitted from Rimini's Actions**

23           110.    Ravin has publicly acknowledged his personal responsibility for Rimini's

24   operations and business model, and for parallels between Rimini and SAP TN:  "There's no way

25   to separate [SAP TN and Rimini].  We look a lot alike in areas because I did both. . . .  I designed

26   the TomorrowNow service.  I evolved it and created a better service with Rimini Street."

27           111.    Ravin personally signed contracts, on behalf of Rimini, in which Rimini

28   committed to research, develop, and test updates and fixes to Oracle's products, including

1    PeopleSoft products, at Rimini's business location, using Rimini's computer system hardware

2    and software.  Ravin is and was personally familiar with Oracle's license agreements and terms of

3    use.  He knew that it violated those agreements, and terms, to develop fixes and updates anywhere

4    other than at the Oracle licensee's owned or leased facilities, on the licensee's computers.

5                    112.    Ravin also controlled Rimini's contractual relationships with customers.

6    For example, for at least some customers, Ravin was the sole person at Rimini with the power to

7    amend, modify, or alter Rimini's contracts.

8                    113.    Ravin was personally and directly involved in marketing Rimini's services,

9    in Rimini's responses to requests for proposals, and negotiating Rimini's contracts with

10   customers.

11                   114.    Ravin at all relevant times had the ability to cause Rimini to cease its

12   infringing and illegal activity:  "[I]f [Ravin] said, 'stop doing it,' we would have stopped."  Ravin

13   failed to exercise his right to control and stop Rimini's unlawful activity.

14                   115.    Ravin at all relevant times received a substantial financial benefit from

15   Rimini's infringing and illegal activity.  At all relevant times, Rimini has paid a salary to Ravin.

16   At all relevant times, he has been the single largest shareholder of Rimini's stock.

17                   116.    In November 2011, Ravin estimated his Rimini stock holdings to be worth

18   $30 million to $40 million.

19   **K.    Oracle's Software And Support Materials Are Registered With The
             Copyright Office**

20

21                   117.    The Software and Support Materials that Rimini illegally copied included

22   works protected by the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*  Oracle has certificates of

23   registration from the Register of Copyrights that cover the Software and Support Materials copied

24   by Rimini.  These protected works are original works of authorship, owned by Oracle.

25   Counterdefendants' acts violated Oracle's exclusive rights to reproduce, create derivative works,

26   publish, publicly display, and distribute (collectively, "copy") these works.  Counterdefendants'

27   acts were willful and intentional and constitute both direct and indirect copyright infringement

28   under the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1      **L.      Counterdefendants Conspired With And Aided And Abetted Each Other**

2           118.    Counterdefendants willfully, intentionally, and knowingly agreed and

3    conspired with each other to engage in the alleged wrongful conduct, including

4    Counterdefendants' copyright infringement, interference with Oracle's business relationships and

5    other unfair business practices.

6           119.    Counterdefendants did the acts alleged pursuant to, and in furtherance of,

7    that agreement and/or furthered the conspiracy by cooperating, encouraging, ratifying, or

8    adopting the acts of the others.

9           120.    As a direct and proximate result of the acts in furtherance of the

10   conspiracy, Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss

11   of profits from sales to current and potential customers of Oracle support services and licenses for

12   Oracle's software programs.  The wrongful conduct committed pursuant to the conspiracy was a

13   substantial factor in causing this harm.

14          121.    Each Counterdefendant also had full knowledge of or should have

15   reasonably known of the true nature of the wrongful conduct of the other Counterdefendant, and

16   aided and abetted such wrongful conduct, including copyright infringement, and other unfair

17   business practices, by providing substantial assistance and/or encouraging the other to act.

18          122.    Each Counterdefendant also aided and abetted the described wrongful

19   conduct of the other Counterdefendant by giving substantial assistance and/or encouragement

20   that, separately considered, was wrongful in and of itself.

21          123.    As a direct and proximate result of the aiding and abetting of these acts,

22   Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits

23   from sales to current and potential customers of Oracle support services and licenses to Oracle

24   software programs.  The wrongful conduct aided and abetted by the Counterdefendants was a

25   substantial factor in causing this harm.

26          124.    Counterdefendants' intentional agreement to commit, and commission of,

27   these wrongful acts, and aiding and abetting of these wrongful acts, was willful, malicious,

28   oppressive, and in conscious disregard of Oracle's rights, and Oracle is therefore entitled to an

1    award of punitive damages to punish their wrongful conduct and deter future wrongful conduct.

2                          **<u>First Claim for Relief</u>**

3                          **Copyright Infringement**

4                  (By OIC Against All Counterdefendants)

5         125.    OIC incorporates by reference each of the allegations in the preceding

6    paragraphs of this Complaint as though fully set forth here.

7         126.    OIC owns a valid and enforceable copyright in, or an exclusive license to,

8    the Software and Support Materials, which are creative works of original authorship.  OIC has

9    pre-existing, or has obtained from the Register of Copyrights, Certificates of Registration that

10    cover many of the Software and Support Materials copied by Rimini.

11         127.    OIC also has obtained, through transfer agreements, all rights, title, and

12    interest in copyrights formerly owned by certain PeopleSoft entities.

13         128.    OIC owned exclusive rights to each of the copyrights at issue in this case at

14    a point in time during which Counterdefendants infringed those exclusive rights.

15         129.    Counterdefendants directly and/or indirectly have infringed copyrights in

16    Oracle Software and Support Materials, including the Software and Support Materials covered by

17    these certificates.  These certificates are identified, dated, and numbered as follows:

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleTools 7.5 | November 20, 1998 | TX 4-792-578 |
| PeopleTools 8.10 | September 5, 2000 | TX 5-266-221 |
| PeopleTools 8.44 | March 8, 2010 | TX 7-092-583 |
| PeopleTools 8.46 | March 8, 2010 | TX 7-092-772 |
| PeopleTools 8.47 | March 8, 2010 | TX 7-092-797 |
| PeopleTools 8.48 | March 8, 2010 | TX 7-092-819 |
| PeopleTools 8.49 | March 8, 2010 | TX 7-092-855 |
| PeopleTools 8.50 | March 8, 2010 | TX 7-092-757 |
| PeopleSoft HRMS 7.5 | December 15, 1998 | TX 4-792-575 |
| PeopleSoft 8 HRMS SP1 | March 26, 2001 | TX 5-501-312 |
| PeopleSoft 8.3 HRMS | February 1, 2002 | TX 5-469-032 |

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleSoft 8.8 HRMS | June 11, 2004 | TX 6-093-947 |
| PeopleSoft HRMS 8.8 SP1 | February 10, 2010 | TX 7-065-376 |
| PeopleSoft HRMS 8.9 | February 10, 2010 | TX 7-065-381 |
| PeopleSoft HRMS 9.0 | February 10, 2010 | TX 7-065-386 |
| PeopleSoft HRMS 9.1 | February 10, 2010 | TX 7-065-398 |
| PeopleSoft Enterprise Performance Management 8.8 | June 11, 2004 | TX 5-993-616 |
| PeopleSoft Enterprise Performance Management 8.9 | February 10, 2010 | TX 7-063-672 |
| PeopleSoft Enterprise Performance Management 9.0 | February 10, 2010 | TX 7-063-679 |
| PeopleSoft 8.4 Financials and Supply Chain Management | August 5, 2002 | TX 5-586-247 |
| PeopleSoft Financials and Supply Chain Management 8.8 SP1 | February 11, 2010 | TX 7-065-319 |
| PeopleSoft Financials and Supply Chain Management 8.9 | February 11, 2010 | TX 7-065-332 |
| PeopleSoft Financials and Supply Chain Management 9.0 | February 11, 2010 | TX 7-065-354 |
| PeopleSoft Financials and Supply Chain Management 9.1 | February 11, 2010 | TX 7-065-357 |
| PeopleSoft Campus Solutions 8.9 | February 24, 2010 | TX 7-077-451 |
| PeopleSoft Campus Solutions 9.0 | February 24, 2010 | TX 7-077-460 |
| PeopleSoft Portal Solutions 8.8 | March 10, 2010 | TX 7-095-798 |
| PeopleSoft Portal Solutions 9.0 | March 10, 2010 | TX 7-095-777 |
| Oracle 8i Enterprise Edition, release 2 (8.1.6) | February 2, 2001 | TX 5-222-106 |

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Oracle 9i Database Enterprise: Edition Release 2 | June 13, 2003 | TX 5-673-282 |
| Oracle Database 10g: Release 1 | January 16, 2009 | TX 6-938-648 |
| Oracle Database 10g: Release 2 | June 29, 2009 | TX 6-942-003 |
| Oracle Database 11g: Release 1 | March 24, 2011 | TX 7-324-157 |
| Oracle Database 11g: Release 2 | March 24, 2011 | TX 7-324-158 |
| Oracle E-Business Suite 11.5.1 | August 4, 2015 | TX 8-108-968 |
| Oracle E-Business Suite 11.5.10 | August 4, 2015 | TX 8-108-961 |
| Oracle E-Business Suite 12.0.0 | August 4, 2015 | TX 8-108-850 |
| Oracle E-Business Suite 12.1.1 | August 4, 2015 | TX 8-108-924 |
| Oracle E-Business Suite 12.2.2 | August 4, 2015 | TX 8-108-872 |
| Oracle E-Business Suite Financial 11.5.1 | August 4, 2015 | TX 8-108-968 |
| Oracle E-Business Suite Financial 11.5.10 | August 4, 2015 | TX 8-108-961 |
| Oracle E-Business Suite Financial 12.0.0 | August 4, 2015 | TX 8-108-850 |
| Oracle E-Business Suite Financial 12.1.1 | August 4, 2015 | TX 8-108-924 |
| Oracle E-Business Suite Financial 12.2.2 | August 4, 2015 | TX 8-108-872 |
| Oracle E-Business Suite Human Capital Management 11.5.1 | October 29, 2015 | TX 8-108-968 |
| Oracle E-Business Suite Human Capital Management 11.5.10 | October 29, 2015 | TX 8-108-961 |

25

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Oracle E-Business Suite Human Capital Management 12.0.0 | October 29, 2015 | TX 8-108-850 |
| Oracle E-Business Suite Human Capital Management 12.1.1 | October 29, 2015 | TX 8-108-924 |
| Oracle E-Business Suite Human Capital Management 12.2.2 | October 29, 2015 | TX 8-108-872 |
| Oracle E-Business Suite Procurement 11.5.1 | October 29, 2015 | TX 8-108-968 |
| Oracle E-Business Suite Procurement 11.5.10 | October 29, 2015 | TX 8-108-961 |
| Oracle E-Business Suite Procurement 12.0.0 | October 29, 2015 | TX 8-108-850 |
| Oracle E-Business Suite Procurement 12.1.1 | October 29, 2015 | TX 8-108-924 |
| Oracle E-Business Suite Procurement 12.2.2 | October 29, 2015 | TX 8-108-872 |
| Siebel 7.8 Initial Release and Documentation | June 29, 2009 | TX 6-941-995 |
| Siebel 8.1.1 Initial Release and Documentation | June 29, 2009 | TX 6-942-001 |
| Database of Documentary Customer Support Materials for PeopleSoft Software | July 1, 2009 | TXu1-607-454 |
| Electronic Software Update JM16587 for JD Edwards EnterpriseOne 9.1 | November 12, 2015 | TX 8-116-321 |
| Electronic Software Update JM16600 for JD Edwards EnterpriseOne 9.1 | November 12, 2015 | TX 8-116-317 |
| Electronic Software Update JM17007 for JD Edwards EnterpriseOne 9.1 | November 12, 2015 | TX 8-116-314 |
| Electronic Software Update JN10058 for JD Edwards EnterpriseOne 9.2 | December 21, 2015 | TX 8-130-597 |

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Oracle E-Business Suite 12 US and Canada End of Year 2013 Statutory Update III | February 10, 2016 | TX 8-150-451 |
| PeopleSoft Human Capital Management 9.2 | February 10, 2016 | TX 8-151-289 |
| PeopleSoft Financials and Supply Chain Management 9.2 | February 10, 2016 | TX 8-151-288 |
| PeopleSoft PeopleTools 8.51 | February 10, 2016 | TX 8-151-290 |
| PeopleSoft PeopleTools 8.52 | February 10, 2016 | TX 8-151-294 |
| PeopleSoft PeopleTools 8.53 | February 10, 2016 | TX 8-151-292 |

130.    These registrations generally cover, but are not limited to, numerous versions of Oracle software, including the updates, patches, and fixes incorporated in each relevant version, service packs of Oracle updates, patches and fixes, and individual exemplar Software and Support Materials, including certain Oracle knowledge management solutions and certain Oracle updates, patches, and fixes, all of which Rimini and Ravin copied without a license.

131.    Through the acts alleged above, Counterdefendants have violated the exclusive rights of OIC to reproduce, distribute, create derivative works, publicly display, and export Oracle's Software and Support Materials, including materials that embody the registrations listed above, by, in excess of any license:

- creating derivative works from Oracle's Software and Support Materials;
- reproducing and distributing Oracle's Software and Support Materials and derivative works created from Oracle's Software and Support Materials to facilities other than those of an Oracle licensed customer;
- downloading Oracle's Software and Support Materials from Oracle's technical support websites where the customer whose support credentials were used was not

27

1      licensed to the materials obtained;

2  •    reproducing, distributing, and creating derivative works from Software and

3      Support Materials in support of Counterdefendants' commercial operations but

4      obtained pursuant to a limited, non-commercial license;

5  •    reproducing, distributing, publicly displaying, and creating derivative works from

6      Software and Support Materials obtained through or for one customer to support a

7      different customer or multiple customers;

8  •    reproducing, distributing, publicly displaying, and creating derivative works from

9      Software and Support Materials not used solely for a single customer's or entity's

10     internal business purposes;

11 •    further reproducing, distributing, and publicly displaying infringing copies of

12     Oracle's Software and Support Materials and derivative works created from

13     Oracle's Software and Support Materials;

14 •    without authorization, exporting or purporting to authorize the exportation of

15     copies of Oracle's Software and Support Materials.

16     132.    In addition to directly infringing the exclusive rights of OIC,

17 Counterdefendants have contributorily and vicariously infringed the exclusive rights of OIC in

18 the Software and Support Materials by controlling, directing, intentionally encouraging, inducing,

19 or materially contributing to the copying, distribution, public display, creation of derivative

20 works, and exportation of and from Oracle's copyrighted Software and Support Materials.

21 Counterdefendants also obtained a direct financial benefit from the above alleged infringing

22 activities while declining to exercise their right to stop it or limit it.

23     133.    Counterdefendants knew or should have known that copying, distributing,

24 publicly displaying, and creating derivative works of and from Oracle Software and Support

25 Materials, infringed the exclusive rights of OIC in those materials, especially in light of this

26 Court's summary judgment rulings and their own prior admissions.

27     134.    OIC is entitled to damages in an amount to be proven at trial, including

28 actual damages and profits attributable to the infringement not taken into account in computing

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1   actual damages under 17 U.S.C. § 504(b).

2          135.   OIC is entitled to statutory damages under 17 U.S.C. § 504(c) based on

3   Counterdefendants' infringements after the dates of copyright registration.

4          136.   Counterdefendants' infringement of the exclusive rights of OIC also has

5   caused OIC irreparable injury.  Unless restrained and enjoined, Counterdefendants will continue

6   to commit such acts.  OIC's remedies at law are not adequate to compensate it for these inflicted

7   and threatened injuries, entitling it to remedies, including injunctive relief as provided by 17

8   U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to

9   17 U.S.C. § 503.

10   **<u>Second Claim for Relief</u>**

11   **Violation of Digital Millennium Copyright Act**

12   (By OIC Against All Counterdefendants)

13          137.   OIC incorporates by reference each of the allegations in the preceding

14   paragraphs of this Complaint as though fully set forth here.

15          138.   Each original work of OIC's copyrighted Software and Support Materials

16   contains Oracle copyright management information.

17          139.   Without OIC's consent, Counterdefendants have created updates, fixes,

18   documentation, and other support materials that contain substantial portions of, and are derived

19   from, OIC's copyrighted works.

20          140.   Counterdefendants intentionally have removed or altered any and all

21   Oracle copyright management information from updates, fixes, documentation, and other support

22   materials.

23          141.   Counterdefendants have distributed updates, fixes, documentation, and

24   other support materials that are reproductions or derivative works of Oracle's copyrighted works

25   to Rimini's customers with the knowledge that Oracle copyright management information has

26   been removed or altered.

27          142.   Counterdefendants removed or altered Oracle's copyright management

28   information knowing, or having reasonable grounds to know, that the removal would induce,

29

1   enable, facilitate or conceal Counterdefendants' infringement of OIC's copyrights.

2          143.    Counterdefendants obtained a direct financial benefit from the above

3   alleged infringing activities while declining to exercise their right to stop it or limit it.

4          144.    Counterdefendants have therefore violated 17 U.S.C. § 1202(a)(2), (b)(2),

5   & (b)(3).

6          145.    OIC is entitled to damages in an amount to be proven at trial, including

7   actual damages, as well as profits attributable to the removals and alterations not taken into

8   account in computing actual damages, under 17 U.S.C. § 1203(c)(2).

9          146.    OIC is entitled to statutory damages under 17 U.S.C. § 1203(c)(3) for each

10   act of removal or alteration, as the Court considers just.

11          147.    In its discretion, the Court may order recovery of costs against

12   Counterdefendants under 17 U.S.C. § 1203(b)(4) and may order reasonable attorney's fees under

13   17 U.S.C. § 1203(b)(5).

14          148.    Counterdefendants' removal and alteration of OIC's copyright

15   management information also has caused OIC irreparable injury.  Unless restrained and enjoined,

16   Counterdefendants will continue to commit such acts.  OIC's remedies at law are not adequate to

17   compensate it for these inflicted and threatened injuries, entitling it to remedies, including

18   injunctive relief as provided by 17 U.S.C. § 1203(b)(1), and an order impounding or destroying

19   any and all infringing materials pursuant to 17 U.S.C. § 1203(b)(2).

20                     **<u>Third Claim for Relief</u>**

21                     **Violation of Lanham Act**

22            (By Oracle America and OIC Against All Counterdefendants)

23          149.    Oracle America and OIC incorporate by reference each of the allegations in

24   Paragraphs 1-124 of this Complaint as though fully set forth here.

25          150.    Rimini made false and misleading statements in interstate commerce.

26          151.    Rimini disseminated the above-described false and misleading statements

27   to customers and potential customers as part of its marketing efforts deliberately and with the

28   intention of misleading and influencing them to purchase or retain Rimini's services, to cancel or

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1   not continue using Oracle's services, to refrain from purchasing additional services from Oracle,

2   and to create the false impression that Rimini's support services no longer infringe Oracle's

3   copyrights and no longer interfere unlawfully with Oracle's contracts.  Oracle has been and is

4   likely to be further injured by Rimini's statements, both by the direct diversion of sales from

5   Oracle to Rimini and by a lessening of goodwill associated with Oracle's services.

6          152.    Rimini's wrongful conduct has a tendency to deceive—and in fact has

7   deceived—a substantial segment of Rimini and Oracle customers into believing that (1) Rimini

8   has discontinued its infringing processes or its use of infringing Oracle software and (2) Oracle is

9   terminating its support for its customers when it is not.

10         153.    Rimini's alleged conduct is material, in that it is likely to and in fact has

11  influenced the purchasing decisions of Rimini and Oracle customers and potential customers,

12  thereby diverting revenues from Oracle to Rimini.

13         154.    Oracle is informed and believes that unless Rimini's described conduct is

14  enjoined by this Court, Rimini will continue and expand its acts of unfair competition and false

15  advertising to the continued immediate and irreparable injury to Oracle.  This injury includes an

16  impact on the reputations of Oracle and Rimini that cannot be remedied through damages, and

17  Oracle has no adequate remedy at law.  Oracle is entitled to a permanent injunction pursuant to 15

18  U.S.C. § 1116 restraining and enjoining Rimini and its agents, servants, employees, and all

19  persons acting thereunder, in concert with, or on their behalf, from doing or causing any further

20  violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

21                          **Fourth Claim for Relief**

22                          **Inducing Breach of Contract**

23                   (By Oracle America Against All Counterdefendants)

24         155.    Oracle America incorporates by reference each of the allegations in

25  Paragraphs 1-124 and 149-154 of this Complaint as though fully set forth here.

26         156.    Oracle America's customers agreed to be bound by Oracle America's

27  licenses when they or anyone acting on their behalf copied Software and Support Materials.

28  Oracle America's licenses are valid contracts.  Counterdefendants had knowledge of the existence

31

1   of these contracts at all relevant times.

2          157.    Oracle America has performed all conditions, covenants, and promises

3   required on its part to be performed in accordance with the licenses.

4          158.    Counterdefendants induced Oracle America's customers to breach these

5   contracts by engaging in the independently wrongful acts alleged in this Counterclaim, including

6   violations of state and federal laws.  These independently wrongful acts caused Oracle's

7   customers to be in breach of the contracts.

8          159.    Counterdefendants acted with the desire to interfere with the contracts in

9   order to obtain an unfair competitive advantage or with the knowledge that such interference was

10  certain or substantially certain to occur as a result of their acts.

11         160.    As a result of Counterdefendants' inducing Oracle America's customers to

12  breach the licenses, Counterdefendants have caused damage to Oracle America in an amount to

13  be proven at trial.  Oracle's customers would have otherwise performed on the contracts were it

14  not for Counterdefendants' acts inducing Oracle America's customers to breach them.

15         161.    Counterdefendants acted with oppression and malice in inducing Oracle

16  America's customers to breach the contracts and Oracle America is therefore entitled to an award

17  of punitive damages to punish Counterdefendants' wrongful conduct and deter future wrongful

18  conduct.

19                         **Fifth Claim for Relief**

20             **Intentional Interference With Prospective Economic Advantage**

21             (By Oracle America and OIC Against All Counterdefendants)

22         162.    Oracle America and OIC incorporate by reference each of the allegations in

23  Paragraphs 1-124 and 149-161 of this Complaint as though fully set forth here.

24         163.    Oracle America and OIC have and had an expectancy in continuing and

25  advantageous economic relationships with current and prospective purchasers and licensees of

26  Oracle's support services and software, which are conducted through Oracle America and OIC.

27         164.    These relationships contained the probability of future economic benefit in

28  the form of profitable support service contracts and software licenses.

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1    165.   Counterdefendants were aware of these economic relationships and

2    intended to interfere with and disrupt them by wrongfully making false and misleading statements

3    to customers and the public that Rimini's new support model does not infringe Oracle's

4    copyrights.

5    166.   Counterdefendants' conduct was wrongful by a measure beyond the fact of

6    the interference itself for reasons including but not limited to Counterdefendants' false and

7    misleading statements to customers and the public that Rimini's new support model does not

8    infringe Oracle's copyright, and Counterdefendants' inducement of customers to breach the

9    contracts governing use of Oracle's Software and Support Materials.

10   167.   This conduct, as alleged above, constitutes violations of the Lanham Act,

11   15 U.S.C. § 1051 *et seq.*, and common law fraud.

12   168.   As a result of Counterdefendants' acts, the above-described relationships

13   have been actually disrupted, causing certain Oracle licensees who are current and prospective

14   support customers to contract with Rimini Street instead of with Oracle America and OIC for

15   those customers' software support and maintenance and, in some cases, for their enterprise

16   software.

17   169.   As a direct and proximate result of Counterdefendants' actions, Oracle

18   America and OIC have suffered economic harm, including, but not limited to, loss of profits from

19   sales or licenses to current and potential customers of support services and enterprise software

20   programs.  Counterdefendants' wrongful conduct was a substantial factor in causing this harm.

21   170.   Unless Counterdefendants are restrained by appropriate injunctive relief,

22   their actions are likely to recur and will cause Oracle America and OIC irreparable injury for

23   which there is no adequate remedy at law.

24   171.   Counterdefendants' interference with Oracle America's and OIC's

25   prospective economic advantage with its current and future customers, as described above, was

26   willful, malicious, oppressive, and in conscious disregard of Oracle America's and OIC's rights,

27   and Oracle America and OIC are therefore entitled to an award of punitive damages to punish

28   Counterdefendants' wrongful conduct and deter future wrongful conduct.

**<u>Sixth Claim for Relief</u>**

**Breach of Contract**

(By Oracle America Against Rimini)

172.   Oracle America incorporates by reference each of the allegations in Paragraphs 1-124 and 149-171 of this Complaint as though fully set forth here.

173.   Rimini agreed to be bound by the licenses and Terms of Use on Oracle's technical support websites, including the Oracle.com's Terms of Use, E-Delivery Terms of Use, and Electronic Delivery Trial License Agreement when Rimini accessed or downloaded Software and Support Materials from Oracle's technical support websites.

174.   Oracle America has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of Oracle's technical support websites' Terms of Use, including Oracle.com's Terms of Use, E-Delivery Terms of Use, and Electronic Delivery Trial License Agreement.

175.   Rimini has breached Oracle's technical support websites' Terms of Use, including Oracle.com's Terms of Use, E-Delivery Terms of Use, and Electronic Delivery Trial License Agreement by, among other things:

- Accessing the content available through Oracle's technical support websites, in the form of the Software and Support Materials, without being an authorized and designated Oracle technical support contact;

- Using the Software and Support Materials other than in support of a customer's authorized use of Oracle software for which a customer holds a supported license from Oracle;

- Using the Software and Support Materials without a legitimate business purpose;

- Using the Software and Support Materials in ways other than the furtherance of a relationship with Oracle; and,

- Accessing or using Software and Support Materials other than for personal, informational or non-commercial purposes.

176.   As a result of Rimini's breach of Oracle's technical support websites'

34

1   Terms of Use, Rimini has caused damage to Oracle America in an amount to be proven at trial.

2   **Seventh Claim for Relief**

3   **Unfair Competition – Cal.  Bus.  & Prof.  Code § 17200**

4   (By Oracle America and OIC Against All Counterdefendants)

5   177.    Oracle America and OIC incorporate by reference each of the allegations in

6   Paragraphs 1-124 and 149-176 of this Complaint as though fully set forth here.

7   178.    Counterdefendants have engaged in unlawful business acts or practices,

8   including violations of the Lanham Act, making fraudulent statements, and other illegal acts and

9   practices as alleged above, all in an effort to gain unfair competitive advantage over Oracle

10   America and OIC.

11   179.    These unlawful business acts or practices were committed pursuant to

12   business activity related to providing business applications software and related support and

13   maintenance for that software.

14   180.    The acts and conduct of Counterdefendants constitute unlawful and unfair

15   competition as defined by California Bus.  & Prof.  Code § 17200, *et seq.*

16   181.    As described above, Oracle America and OIC have lost money and

17   property and suffered injury in fact as a result of Counterdefendants' unlawful business acts and

18   practices.

19   182.    Counterdefendants have improperly and unlawfully taken commercial

20   advantage of Oracle America and OIC investments in their confidential, proprietary, and

21   copyrighted Software and Support Materials and support delivery infrastructure.  In light of

22   Counterdefendants' conduct, it would be inequitable to allow Counterdefendants to retain the

23   benefit of the funds obtained though the unauthorized and unlawful use of that property.

24   183.    Counterdefendants' unfair business practices unjustly have minimized

25   Oracle America's and OIC's competitive advantages and have caused and are causing them to

26   suffer damages.

27   184.    As a result of such unfair competition, Oracle America and OIC also have

28   suffered irreparable injury and, unless the Court enjoins Counterdefendants from such unfair

1    competition, will continue to suffer irreparable injury for which Oracle America and OIC have no

2    adequate remedy at law.

3            185.    Counterdefendants should be compelled to disgorge and/or restore any and

4    all revenues, earnings, profits, compensation, and benefits they may have obtained in violation of

5    California Business & Professions Code § 17200 *et seq.*, including, but not limited to, returning

6    any revenue earned from the unlawful and unfair use of Oracle America's and OIC's stolen

7    property, and should be enjoined from further unlawful and unfair business practices.

8                                    **Eighth Claim for Relief**

9                                  **Unjust Enrichment/Restitution**

10                   (By Oracle America and OIC Against All Counterdefendants)

11           186.    Oracle America and OIC incorporate by reference each of the allegations in

12   Paragraphs 1-124 and 149-185 of this Complaint as though fully set forth here.

13           187.    Counterdefendants unjustly received benefits at the expense of Oracle

14   America and OIC through Counterdefendants' wrongful conduct, including Counterdefendants'

15   interference with Oracle America's and OIC's business relationships, and other unfair business

16   practices, which took substantial time and money for Oracle entities, including Oracle America

17   and OIC, to develop.  Counterdefendants continue to unjustly retain these benefits at the expense

18   of Oracle America and OIC.  It would be unjust for Counterdefendants to retain any value they

19   obtained as a result of their wrongful conduct.

20           188.    Oracle America and OIC are entitled to the establishment of a constructive

21   trust consisting of the benefit conferred upon Counterdefendants by the revenues derived from

22   their wrongful conduct at the expense of Oracle entities including Oracle America and OIC as

23   alleged above, and all profits derived from that wrongful conduct.  Oracle America and OIC are

24   further entitled to full restitution of all amounts in which Counterdefendants have been unjustly

25   enriched at Oracle America and OIC's expense.

26

27

28

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1

**Ninth Claim for Relief**

2

**An Accounting**

3

(By Oracle America and OIC Against All Counterdefendants)

4   189.   Oracle America and OIC incorporate by reference each of the allegations in

5   Paragraphs 1-124 and 149-188 of this Complaint as though fully set forth here.

6   190.   Counterdefendants have obtained business through the use of unlawful

7   conduct including, but not limited to improperly, willfully, and unlawfully taking commercial

8   advantage of the investment in its Software and Support Materials by Oracle entities including

9   Oracle America and OIC, for the purpose of sabotaging Oracle America's and OIC's ability to do

10   business and compete in the market.

11   191.   Counterdefendants have received money as a result of their misconduct, at

12   the expense of Oracle America and OIC, and some or all of such money is rightfully due to

13   Oracle America and OIC.

14   192.   The amount of money due from Counterdefendants to Oracle America and

15   OIC is unknown to Oracle America and OIC, and cannot be ascertained without an accounting of

16   the income and gross profits Counterdefendants have obtained through their wrongful and

17   unlawful conduct.  Therefore, Oracle America and OIC are entitled to a full accounting.

18

**Prayer For Relief**

19   WHEREFORE, as to Oracle's Counterclaims, Oracle respectfully prays for the following:

20   A.   For a preliminary and permanent injunction restraining Counterdefendants,

21   their officers, agents, servants, employees, and attorneys, and those in active concert or

22   participation with any of them, from the following:

23   (1)   Copying, distributing, publicly displaying, creating derivative

24   works from, or using Oracle Software and Support Materials in any way, including for any

25   business purpose, except as allowed by express license from Oracle;

26   (2)   Copying, distributing, or facilitating copying or distribution of any

27   Oracle Software and Support Materials directly or indirectly from or to any of

28   Counterdefendants' offices, computer systems or networks;

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1           (3)      Regardless of the location of any specific Software and Support

2 Materials, copying, distributing, publicly displaying, creating derivative works from, or using

3 Software and Support Materials obtained through or for one customer to support a different

4 customer;

5           (4)      Facilitating the copying, distribution or use of, any Oracle Software

6 and Support Materials without keeping a record, which Oracle may inspect upon three (3)

7 business days' written notice, that accurately reflects all Software and Support Materials (a)

8 copied, distributed or used, organized by customer name, (b) the date(s) of the copying,

9 distribution or use, and (c) all other entities involved in the copying, distribution or use, including

10 name of the entity, principal contact, and contact information;

11           (5)      Removing or altering Oracle's copyright management information;

12           (6)      Distributing or making available materials in which Oracle's

13 copyright management information has been removed or altered;

14           (7)      Making any false, misleading, or unsubstantiated statements

15 concerning Rimini's products and services, including those alleged in Paragraph 105, and from

16 doing or causing any further violations of § 43(a) of the Lanham Act, 15 U.S.C. § 1125;

17        B.      For a preliminary and permanent injunction requiring Rimini to

18 disseminate corrective advertising in a form approved by the Court to acknowledge its violations

19 of the law and to ameliorate the false and deceptive claims previously made;

20        C.      That the Court order Counterdefendants to file with the Court and serve on

21 Oracle within thirty (30) days after the service on Counterdefendants of such injunction a report

22 in writing, under oath, setting forth in detail the manner and form in which Counterdefendants

23 have complied with the injunction;

24        D.      For an Order directing Counterdefendants to return Oracle's property,

25 including, without limitation, Oracle's confidential, proprietary, and copyrighted Software and

26 Support Materials, including data, internal documents, and valuable updates, patches, fixes, and

27 other computer code, that Counterdefendants took from Oracle, as set forth in this Complaint;

28        E.      For an Order impounding or destroying any and all infringing materials

1  pursuant to 17 U.S.C. § 503;

2         F.     For an Order awarding Oracle punitive damages in a sum to be determined

3  at trial;

4         G.    For restitution and disgorgement of all ill-gotten gains unjustly obtained

5  and retained by Counterdefendants through the acts complained of here;

6         H.    For an Order finding a Constructive Trust for Oracle's benefit, consisting

7  of all revenues received by Counterdefendants from their wrongful conduct which should

8  rightfully have been received by Oracle and all profits derived from that wrongful conduct, and

9  directing Counterdefendants to pay all such sums to Oracle;

10         I.      For damages to be proven at trial;

11         J.     For those damages to be trebled;

12         K.    For statutory damages pursuant to 17 U.S.C. § 504;

13         L.     For statutory damages pursuant to 17 U.S.C. § 1203;

14         M.   For prejudgment interest;

15         N.    For an accounting;

16         O.    For an Order awarding Oracle its attorneys' fees and costs; and,

17         P.     For an Order awarding Oracle such other and further relief as the Court

18  deems just and proper.

19

20

21

22

23

24

25

26

27

28

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1

2    DATED:  February 28, 2016                    MORGAN, LEWIS & BOCKIUS LLP

3

4                                                 By _____/s/ Thomas S. Hixson_____
                                                     Thomas S.  Hixson
5                                                    Attorneys for Counterclaimant
                                                     Oracle America, Inc.  and Defendant and
6                                                    Counterclaimant Oracle International Corp.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>DEMAND FOR JURY TRIAL</u>**

In accordance with Fed. R. Civ. P. 38(b), Counterclaimants Oracle America, Inc., and Oracle International Corp. demand a trial by jury on all issues so triable.

DATED:   February 28, 2016                    MORGAN, LEWIS & BOCKIUS LLP


By _____/s/ Thomas S. Hixson_____
Thomas S.  Hixson
Attorneys for Defendant Oracle America, Inc.
and Defendant and Counterclaimant Oracle
International Corp.

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND

1

## CERTIFICATE OF SERVICE

2         I certify that on February 28, 2016, I electronically transmitted the foregoing

3    **ORACLE'S AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE**

4    **RELIEF AND JURY DEMAND** to the Clerk's Office using the Electronic Filing System

5    pursuant to Special Order No. 109.

6    Dated:  February 28, 2016            Morgan, Lewis & Bockius LLP

7

8                      By:             */s/ Thomas S. Hixson*

9                                  Thomas S. Hixson

10                     Attorneys for Counterclaimant
                       Oracle America, Inc. and

11                     Defendant and Counterclaimant
                       Oracle International Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF; JURY DEMAND