BOIES, SCHILLER & FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone: (702) 382-7300
Facsimile: (702) 382-2755
rpocker@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (pro hac vice)
5301 Wisconsin Ave, NW
Washington, DC 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES, SCHILLER & FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
    (*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
NITIN JINDAL (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:  415.442.1000
Facsimile:  415.442.1001
thomas.hixson@morganlewis.com
john.polito@morganlewis.com
nitin.jindal@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:  650.506.4846
Facsimile:   650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Counterclaimant Oracle
America, Inc. and Defendant and
Counterclaimant Oracle International
Corporation*

GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
MICHELE L. MARYOTT (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800
Facsimile: (949) 451-4220
jtthomas@gibsondunn.com
mmaryott@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

HOWARD & HOWARD ATTORNEYS
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
Facsimile: (702) 567-1568
wwa@h2law.com

DEBEVOISE & PLIMPTON LLP
JAMES J. PASTORE (*pro hac vice*)
919 Third Avenue
New York, NY  10022
Telephone:  (212) 909-6000
jjpastore@debevoise.com

DEBEVOISE & PLIMPTON LLP
JEFFREY P. CUNARD (*pro hac vice*)
801 Pennsylvania Avenue N.W.
Washington, DC  20004
Telephone:  (202) 383-8000
jpcunard@debevoise.com

RIMINI STREET, INC.
DANIEL B. WINSLOW (*pro hac vice*)
JOHN P. REILLY (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com
jreilly@riministreet.com

*Attorneys for Plaintiff and Counterdefendant
Rimini Street, Inc., and Counterdefendant
Seth Ravin*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation;<br><br>          Plaintiff,<br><br>   v.<br><br>ORACLE INTERNATIONAL CORPORATION,<br>a California corporation,<br><br>         Defendant. | Case No  2:14-cv-01699 LRH CWH<br><br>**JOINT STATUS REPORT** |
| ORACLE AMERICA, INC., a Delaware<br>corporation, *et al.*,<br><br>         Counterclaimants,<br><br>   v.<br><br>RIMINI STREET, INC., a Nevada corporation, *et<br>al.*,<br><br>         Counterdefendants. | |

1   Plaintiff and Counterdefendant Rimini Street, Inc. and Counterdefendant Seth Ravin

2   (together, "Rimini") and Counterclaimant Oracle America, Inc. and Defendant and

3   Counterclaimant Oracle International Corp. (together, "Oracle"; all parties collectively,

4   "Parties," any party, "Party") submit the following joint status report.

5   **I.      AMENDED PLEADINGS**

6   On October 24, 2016, Oracle filed its Second Amended Counterclaims (ECF No. 306),

7   and Rimini answered on November 11, 2016 (ECF No. 324).

8   On December 5, 2016, Rimini filed a motion for leave to file its Second Amended

9   Complaint.  ECF No. 346; *see also* ECF No. 227 (order setting Dec. 5, 2016, as the "Last date to

10  amend pleadings and add parties").

11  **II.     DISCOVERY PROGRESS**

12  **A.      Documents Sought From and Produced By Rimini**

13  **1.      Document Requests**

14  Since the last status report, Oracle has served three sets of requests for production on

15  Rimini Street:

16  •   Oracle served its Seventh Set of Requests for Production to Rimini Street

17  (comprising Request Nos. 186 through 195) on August 4, 2016.  Rimini served its

18  responses and objections on September 7, 2016.

19  •   Oracle served its Eighth Set of Requests for Production to Rimini Street

20  (comprising Request Nos. 196 through 210) on October 3, 2016.  Rimini served

21  its initial responses and objections on November 7, 2016, and served

22  supplemental responses and objections on December 8, 2016.

23  •   Oracle served its Ninth Set of Requests for Production to Rimini Street

24  (comprising Request Nos. 211 through 224) on November 25, 2016.  Rimini's

25  responses and objections to Oracle's Ninth Set of Requests for Production are due

26  December 30, 2016.[1]

27  _____

28  [1]     Oracle has also served three sets of Requests for Production on defendant Seth Ravin, totaling 51 requests.

1

1    Oracle continues to evaluate Rimini's responses to Oracle's First through Eighth Sets of

2    Requests for Production, and many of the Requests from these sets are the subject of ongoing

3    meet and confer discussions.  Oracle moved to compel Rimini to produce documents in response

4    to Oracle's Seventh Set of Requests for Production on November 3, 2016.  ECF No. 320.

5    In April 2015, before either Party had served any requests for production, the Parties

6    jointly proposed that both sides would have unlimited requests for production.  ECF No. 48

7    (stipulated discovery plan) at 14.

8    Rimini disclosed on October 12, 2016 that it has not yet collected and reviewed Yahoo

9    Instant Messages from any custodian in this matter.  *See* Oct. 12, 2016 letter from E. Vandevelde

10   to N. Herrera.  Rimini employees used Yahoo Instant Messenger from 2006 or earlier through

11   approximately 2015.  Rimini has represented that it continues to investigate possible methods of

12   collecting and producing these documents.  *See* Dec. 7, 2016 letter from E. Vandevelde to N.

13   Herrera.

14                **2.     Interrogatories**

15   Since the last status report, Oracle served its Fourth Set of Interrogatories to Rimini

16   Street (comprising Interrogatory Nos. 13 through 16) on October 7, 2016.  Rimini served its

17   responses and objections on November 10, 2016.  The Parties are meeting and conferring

18   regarding Rimini's responses.

19   No response to any interrogatory that Oracle has served on Rimini to date is currently

20   outstanding, though certain responses are the subject of ongoing meet and confer discussions and

21   motions to compel currently before the Court.

22   The Parties previously agreed that each side will have 35 interrogatories.  July 13, 2015

23   Hearing Tr. at 29:5–9.

24                **3.     Document Productions – Centralized Data Sources**

25   Rimini has produced almost a million non-custodial documents, including documents

26   from SharePoint and Rimini's "Department Shares" data sources, comprising almost 13 million

27

28

1    pages (in addition to the over 5 million pages of custodial documents).[2]  Rimini has also

2    produced over 10 terabytes of other data from a number of complex and centralized sources,

3    including:  Avata, Salesforce, and Rimini's AFW tools; provided access to Rimini's DevTrack;

4    and produced what the Parties refer to as Karen's Directory Printout ("KDP") data, which consist

5    of directory and file structures, as well as metadata, for over 500 environments and client

6    archives.

7             **4.      Document Productions – Custodial Productions and**
                        **Technology-Assisted Review**
8

9             Since the last joint status report was filed on May 5, 2016, both Parties have produced a

10   number of custodial documents and engaged in a lengthy meet and confer process regarding

11   various aspects of implementing the TAR Protocol (ECF No. 106, Ex. A).  On July 28, 2016, the

12   Parties agreed on the following "to-be-determined" percentages as they relate to the review of a

13   "final acceptance sample" to validate the effectiveness of each Party's current TAR model:

14   Oracle's "to-be-determined" percentage is 0.64% with a 0.22% error margin; and Rimini's

15   corresponding "to-be-determined" percentage is 16.58% with a 2.0% error margin.  *See* K. Papay

16   July 28, 2016 Email to M. Cowing et al.; TAR Protocol at 4.  Separately, the Parties agreed on

17   how to apply their existing TAR models to new custodial data that was not included in either

18   Party's initial Review Boundary at the time of the original seed set reviews.  *See* K. Papay Sept.

19   7, 2016 Email to M. Cowing et al. (agreeing, among other things, to run separate final

20   acceptance samples corresponding to new custodial data, but that separate seed set reviews

21   would not be necessary); M. Cowing Sept. 13, 2016 Email to K. Papay et al. (confirming

22   agreement).

23            Rimini's production of custodial documents under the current TAR model is ongoing.

24                      a.      Rimini's separate statement

25            Rimini so far has produced over 1.5 million custodial documents (over 5.3 million pages)

26   from documents in the TAR I initial Review Boundary.  Rimini will continue to review and

27   _____

28   [2]    Rimini also produced approximately one million documents (6.8 million pages) in *Rimini I*,
        that are deemed as having been produced in this litigation as well.

3

1   produce custodial documents (i) from later-collected custodial sources using the current TAR

2   model and (ii) from all custodial sources based on new concepts of responsiveness not accounted

3   for by Rimini's current TAR model.  Rimini expects to complete its productions under the

4   current TAR model for the documents in its initial Review Boundary in a timely manner,

5   consistent with the agreed-upon deadline in the proposed case management schedule below.

6         **5.**      **Depositions**

7       Since the last status report, Oracle has conducted four party depositions:  two depositions

8   of Rimini Street pursuant to Fed. R. Civ. P. 30(b)(6) (May 17, 2016 and June 16, 2016) and the

9   individual depositions of Susan Tahtaras (Nov. 18, 2016) and David Rowe (Dec. 7, 2016).

10      Oracle has noticed the depositions of six additional Rimini witnesses.  The deposition of

11   Manjula Hosalli is scheduled for December 15, 2016.  The remaining five depositions have been

12   noticed for the following dates, but no agreed-upon date has yet been scheduled:  Kevin

13   Maddock (Feb. 9, 2017); Jim Benge (Feb. 23, 2017); Sebastian Grady (Mar. 9, 2017); Nancy

14   Lyskawa (Mar. 23, 2017); and Seth Ravin (Apr. 6, 2017).

15      The Court previously granted each side ten party depositions, "absent further order from

16   the Court upon a showing of good cause."  Dec. 15, 2016 Hearing Tr. at 29:4–11.

17     **B.**     **Discovery Sought From and Produced by Oracle**

18         **1.**      **Document Requests**

19      Since the last status report, Rimini served its Fourth Set of Requests for Production to

20   Oracle (comprising Request Nos. 154 through 160) on November 4, 2016.  Oracle served its

21   responses and objections on December 8, 2016.  Certain other responses are the subject of

22   ongoing meet and confer discussions and motions to compel currently before the Court.

23         **2.**      **Interrogatories**

24      Since the last status report, Rimini served its Second Set of Interrogatories to Oracle

25   (comprising Interrogatory Nos. 7 through 12) on November 4, 2016.  Oracle served its responses

26   and objections on December 8, 2016.

27         **3.**      **Document Productions – Centralized Data Sources**

28

1    Since the last joint status report was filed on May 5, 2016, Oracle has produced more

2    than 63,000 additional pages of non-custodial documents (including many documents in native

3    format) from centralized data sources, including, but not limited to:  Oracle income statements

4    and financial reports; Oracle inter-entity agreements; software and support materials; copyright

5    registrations and related deposit materials; customer-specific reports containing responsive

6    information from Oracle's OKS database; customer-specific licenses and contract documents;

7    terms of use; and, aggregate information regarding Oracle support cancellation rates for relevant

8    products.  Oracle continues to collect, review, and produce relevant non-custodial documents on

9    a rolling basis.

10    **4.    Document Productions – Custodial Productions and Technology-Assisted Review**

11

12    The Parties' meet and confer discussions related to the TAR protocol are described

13    above.  *See* Section II.A.4, *supra*.

14    Since the last joint status report was filed on May 5, 2016, Oracle has produced more

15    than 203,000 additional pages of custodial documents pursuant to the TAR Protocol.  Oracle's

16    production of custodial documents from the custodial sources in its initial Review Boundary is

17    substantially complete under the current TAR Model.  *See* Nov. 30, 2016 letter from K. Papay to

18    E. Vandevelde.

19    Oracle will continue to review and produce custodial documents (i) from later-collected

20    custodial sources using the current TAR Model and (ii) from all custodial sources based on new

21    concepts of responsiveness (based in part on both Oracle's responses to Rimini's additional

22    document requests and on identified additional relevant customers) not accounted for by Oracle's

23    current TAR Model.

24    **5.    Depositions**

25    Rimini has noticed one deposition of Oracle pursuant to Fed. R. Civ. P. 30(b)(6).  *See*

26    Rimini's Amended Notice of Deposition Under Fed. R. Civ. P. 30(b)(6).  Oracle objected to the

27    Amended Notice on December 5, 2016.  Subject to its objections, Oracle currently intends to

28    designate two witnesses to testify regarding the topics in Rimini's Amended Notice.  Deposition

1  of the first designated witness has been scheduled for December 13, 2016.  *See* Rimini's Second

2  Amended Notice of Deposition Under Fed. R. Civ. P. 30(b)(6).  The Parties expect that

3  deposition of the second designated witness will take place in January 2017.  The Parties agree

4  that, despite taking place over two days, this will count as only one deposition.

5        **C.**    **Third Party Discovery**

6          **1.**    **Document Subpoenas to Rimini Customers**

7      *Subpoenas issued by Oracle*.  Oracle has issued subpoenas to 648 Rimini customers, and

8  has received document productions from 388 customers in response.  Oracle continues to meet

9  and confer with Rimini customers on an ongoing basis regarding the scope of the subpoenas, the

10  scope of document productions and their deficiencies, and (in some cases) the customer's

11  objections to the subpoena.

12      Oracle produces the customer productions to Rimini after receipt, and to date has

13  produced the documents of 332 customers to Rimini.

14      *Subpoenas issued by Rimini*.  Rimini has issued subpoenas to 16 Rimini customers, and

15  has received document productions from 5 customers in response.

16          **2.**    **Depositions of Rimini Customers**

17      *Third-party deposition protocol*.  The Parties are working under an agreed-upon protocol

18  to govern certain aspects of depositions of Rimini customers and other third parties.  *See* Nov. 9,

19  2016 letter from M. Lin to E. Vandevelde ("Oracle confirms that it will abide by the agreement

20  previously reached, as it expects Rimini will do as well.").  The terms of the protocol are

21  embodied in correspondence between the Parties, and address items such as number and length

22  of depositions, timing of the service of Rule 45 notices, and production of certain documents

23  prior to depositions.  *See* Oct. 17 and 24 letters from N. Herrera to E. Vandevelde; Oct. 19, 2016

24  letter from E. Vandevelde to N. Herrera.  The Parties are working to memorialize this protocol in

25  a stipulation that will be filed with the Court.

26      *Oracle depositions*.  Oracle has conducted depositions of three Rimini customers:  Media

27  General, Inc. (Nov. 16, 2016); 3M Company (Nov. 21, 2016); and Easter Seals New Hampshire,

28  Inc. (Dec. 1, 2016).

1           Oracle has noticed the depositions of two other Rimini customers, scheduled for the

2   following dates:  Snelling Holdings, LLC (Dec. 14, 2016); and SafeNet, Inc. (Dec. 19, 2016).

3   The depositions of two other Rimini customers, American Electric Power Service Corporation

4   and NCR Corporation, were noticed and then withdrawn, and have not yet been rescheduled.

5           *Rimini depositions.*  Rimini has not noticed the deposition of any Rimini customer.

6           **3.**      **Document Subpoenas to Non-Customer Third Parties**

7           *Colbeck Capital Management.*  Oracle served a subpoena on third party Colbeck Capital

8   Management, which is the subject of a motion to quash currently before the Court.  *See* Case No.

9   3:16-cv-00543, ECF Nos. 2, 13, and 20.

10           **4.**      **Depositions of Non-Customer Third Parties**

11           *Rimini depositions.*  Rimini has noticed the deposition of Spinnaker Support, LLC.

12   Spinnaker objected to the notice on November 25, 2016.  Rimini seeks to re-schedule the

13   deposition, as the original noticed date (December 9, 2016) was withdrawn.

14   **III.**      **THE PARTIES' POSITIONS ON CASE MANAGEMENT ISSUES**

15         **A.**      **Proposal to Extend the Case Calendar, Increase the Number of**

16                         **Party Depositions, and Set the Number of Custodians**

17           Rimini has proposed that the case calendar be extended as set forth below.  Oracle has

18   agreed not to oppose this request in light of Rimini's agreement (contingent upon the Court

19   granting the proposal) that each side be permitted to conduct 25 party depositions (rather than 10

20   per side, the current limit) and that each side be permitted to name 50 document custodians (each

21   party has currently agreed to 40 custodians, though no limit has been set).  The proposed revised

22   case schedule is as follows:

23

| Event | Current Deadline | Parties' proposal |
|---|---|---|
| Last date to exchange final acceptance samples for TAR I as applied to the documents in the Initial Review Boundary for the first 35 custodians | | January 17, 2017 |
| Last date to serve requests for production calling for custodial documents | | February 1, 2017 |

7

| Event | Current Deadline | Parties' proposal |
|---|---|---|
| Last date to request new custodians | | February 1, 2017 |
| Parties collect documents for all new custodians and refresh e-mail collections for all other custodians | | February 2 – 23, 2017 |
| Parties tag seed sets for TAR II Model | | February 24 – March 10, 2017 |
| Parties exchange seed sets for TAR II Model | | March 16, 2017 |
| Parties complete meet and confer re TAR II Model seed sets exchange | | April 6, 2017 |
| Customer list freeze | | May 8, 2017 |
| Parties refresh e-mail collections for all custodians | | May 8-19, 2017 |
| Parties run and produce documents from TAR I model (as to documents outside the TAR I Initial Review Boundary, including all refreshed collections) and from TAR II Model | | May 19 – September 15, 2017 |
| Last date to produce custodial documents from TAR I and TAR II Models | | September 15, 2017 |
| Parties exchange final acceptance samples for TAR I and TAR II Models | | October 2, 2017 |
| Last date to file interim status report | December 19, 2016 | November 28, 2017 |
| Last date to serve interrogatories | | December 1, 2017 |
| Last date to serve requests for production calling for non-custodial documents | | December 1, 2017 |
| Close of fact discovery | April 13, 2017 | February 28, 2018 |
| Last date to file motions to compel related to fact discovery | May 15, 2017 | March 28, 2018 |
| Last date for affirmative expert disclosures | June 2, 2017 | April 18, 2018 |
| Last date to disclose rebuttal experts | July 21, 2017 | June 6, 2018 |
| Close of expert discovery | August 28, 2017 | July 18, 2018 |
| Last date to file dispositive motions | October 6, 2017 | August 15, 2018 |
| Last date to file joint pretrial order | November 13, 2017 | September 19, 2018 |

8

1    The Parties will concurrently file a stipulation and proposed order to memorialize their

2    agreement regarding the additional party depositions and document custodians, and to ask the

3    Court to extend those of the above-listed dates that are the subject of Court's previous order

4    regarding the case schedule.  *See* ECF No. 227.

5                                 a.        Oracle's separate statement

6    Absent Rimini's agreement to increase the number of party depositions and to set a 50-

7    custodian limit, Oracle would oppose Rimini's proposed revised case schedule.

8    **B.    Request to Modify the Court-Ordered Weekly Meet and**
         **Confer Correspondence Schedule to Every Two Weeks**
9

10   The Parties jointly request that the Court modify the existing meet and confer schedule

11   (ECF No. 167 at 5:11-17) from a frequency of every week to a frequency of every other week.

12   The current schedule requires the Parties to exchange issue letters by 3:00 p.m. PT on Mondays

13   and to exchange response letters by 3:00 p.m. PT on Wednesdays.  *Id.*  The Parties have also

14   instituted telephonic conferences on Thursdays to discuss the written correspondence.  The

15   Parties believe that the progress of discovery would improve if some of the attorney and internal

16   company resources required by the weekly process were freed up to engage in the discovery

17   process itself.

18   The Parties propose that beginning the week of December 19, 2016, and every two weeks

19   thereafter, the Parties will continue to comply with the process that is currently in place (*i.e.*, an

20   exchange of letters on Monday and Wednesday, and a telephonic meet and confer on Thursday),

21   subject to change by mutual agreement of the Parties.  This will allow the Parties to use the

22   alternating intervening weeks to investigate and respond to discovery requests and engage in

23   further discovery.  The Parties' concurrently filed stipulation and proposed order concerning

24   party depositions, number of custodians, and case calendar, discussed above, also addresses this

25   jointly proposed change to the schedule for meet-and-confer correspondence.  The Parties are

26   also open to other approaches the Court deems just and proper.

27   **C.    Oracle's Request for Periodic Status Conferences and Dispute**
         **Resolution Briefing via Joint Status Reports**
28

1    Oracle respectfully requests that the Court set regular status conferences at which

2  discovery disputes can be resolved.  In this action and the related *Rimini I* case, Magistrate Judge

3  Leen held status conferences every month or two, and required the Parties to file joint status

4  reports prior to each status conference that informally presented any case management or

5  discovery disputes that require judicial resolution and updated the Court on the status of

6  discovery.  *See* Aug. 28, 2015 Hearing Tr. at 28:4-9.  These status conference statements served

7  as an alternative to formal motions to compel, and were an efficient and effective tool for

8  managing discovery disputes between Oracle and Rimini.  If the Court is amenable to such a

9  process, Oracle believes that it would once again serve the case and the Parties well.

10    The federal rules and the local rules recognize that some complex civil disputes merit

11  more active discovery management, and grant the courts substantial authority to shape the

12  discovery process.  *See* Fed. R. Civ. P. 16(c)(2)(F) & (L) (authorizing discovery oversight and

13  special procedures for complex cases); Civ. L.R. 16-2 (authorizing requests for status

14  conferences, "particularly" in complex cases); Civ. L.R. IB 1-3 (granting broad pretrial authority

15  to magistrate judges).  Oracle respectfully requests that the Court set status conferences at

16  approximately two-month intervals through the close of fact discovery.  In Oracle's experience,

17  the Parties benefit from regular discussion of discovery progress and discovery disputes with the

18  Court.

19    In *Rimini I*, only one of the ten joint status reports filed exceeded 35 pages in length.  In

20  the current matter, *Rimini II*, only two of the seven joint status reports filed under this protocol

21  exceeded 50 pages in length.  By comparison, the briefing on every motion to compel filed to

22  date in *Rimini II* has exceeded 50 pages.  Especially if the Parties resume their previous practice

23  of submitting only key exhibits rather than every single potentially relevant document, the joint

24  status report allows for appropriate resolution of disputes at regular intervals on a manageable

25  record.[3]

26  _____

27  [3]    Rimini has asserted that past joint status reports were "unbridled and unwieldy."  ECF
No. 343 at 3.  This is inaccurate.  The filing "in excess of 500 pages" about which Magistrate
Judge Leen complained, *id.* (citing ECF No. 166 at 5:1-4), included an 84-page joint status report

28  (admittedly the longest such joint status report filed to date), ECF No. 156; a two-page

1    In *Rimini I* and *Rimini II*, exchanges of draft joint statement sections often served as a

2    catalyst for compromise; with some frequency, a Party would drop a disputed issue after the

3    exchange of draft written sections.  As well, no Party ever asked Judge Hicks to reject or

4    overrule Magistrate Judge Leen's resolution of discovery issues through this informal process.

5    Though the Parties have litigated both cases intensely, informal resolution of discovery disputes

6    through the joint status report process has simplified discovery and met the needs of the case.

7    As well, informal resolution of discovery disputes allows the Court to monitor the pace of

8    Rimini's productions.  Rimini's claim for declaratory judgment and Oracle's copyright

9    infringement claims, alone, implicate every copy of Oracle software and support materials

10   (including reproductions, distributions, and creation of derivative works) that Rimini has made,

11   and reach almost all of Rimini's customers.  As in *Rimini I*, Rimini has copied, and must

12   produce, millions and millions of files, as well as communications about and technical

13   documentation concerning those files; while Rimini has made some substantial productions

14   relating to PeopleSoft, significant technical productions for PeopleSoft and almost all technical

15   productions for other product lines are still outstanding, and Rimini has not yet completed its

16   initial production (pursuant to the TAR protocol) of communications about technical files.[4]

17   Because these unproduced files are foundational, serving as the basis for further discovery and

18   analysis, delays in production can have a cascading effect on the overall discovery schedule.

19   The Court previously required Rimini to provide regular updates regarding its technical

20   productions by means of the joint status report process.  *See* Jan. 12, 2016 Hearing Tr. at 43:17-

21   20 (The Court: "I'm going to continue to hold status conferences every 30 days.  Every 30 days

22   I'm going to be asking Rimini why hasn't it finished producing what it knows I'm compelling

23   them to produce.").

24

25

26

---

27   declaration, filed separately by Oracle, ECF No. 158; and, a declaration with 22 exhibits, filed
     separately by Rimini, that totaled 428 pages, ECF Nos. 154 & 157.
     [4]    Oracle's first pending Motion to Compel, ECF No. 256, addresses some of these
28   outstanding productions.

JOINT STATUS REPORT

1    Last, regular opportunities for informal discovery resolution help to ward against less-

2  than-diligent engagement in meet and confer.  The Court has previously admonished Rimini for

3  falsely claiming that certain issues had not been the subject of appropriate meet and confer:

4       [T]his is not, as you claim from the record before me, a litigation by ambush. The Court
        has been employing the status report process.
5       The disputes -- and while I fully appreciate if this is an issue that they sprung on you two
        days before the status report was due, that would be an in -- inappropriate use of the
6       status report process.
        The disputes that are before me right now have been discussed and rediscussed in a series
7       of meet-and-confer conferences and raised in prior status reports with the Court for
        months now and with the subject of a prior motion to compel which Oracle withdrew as a
8       result of the series of agreements that the parties reached in this case.
        So I do not at all regard this as litigation by ambush.
9

10

11  Dec. 15, 2015 Hearing Tr. at 4:8-23.  Regular, informal representations to the Court about the

12  scope of discovery and the issues of concern to each Party help to create a record by which the

13  Court can assess whether disputes are ripe for review.

14    Oracle respectfully requests that the Parties resume informal resolution of disputes

15  through the joint status reports and joint status conferences.  Alternatively, if the Court has a

16  different preferred method for resolving discovery disputes, Oracle would willingly participate in

17  that method, as well.

18    **D.**    **Rimini's Opposition to Oracle's Request for Periodic Status
              Conferences and Dispute Resolution Briefing via Joint Status
19            Reports**

20    Rimini respectfully requests the Court maintain the status quo and allow the Parties to

21  continue to resolve discovery disputes through the meet and confer process, coupled with normal

22  motion practice for targeted issues that require the Court's intervention.  Oracle offers no

23  compelling reason to revert to a burdensome and inefficient status conference and reporting

24  process that required the expenditure of significant time and resources preparing for frequent

25  conferences and written submissions, time and resources that should instead be expended

26  actually completing the discovery requests.  The Parties are regularly meeting and conferring to

27

28

1  resolve discovery disputes, and only rarely involving the Court.  The current system is not

2  broken and need not be changed.

3         **1.**      **The Prior Process Resulted in Significant Burdens and**

                        **Inefficiencies**

4

5         In August 2015, Magistrate Judge Leen instituted a monthly status conference and

6  reporting process in this case.  ECF No. 99.  Though well intentioned, this process became

7  extremely burdensome and detracted from the Parties' discovery efforts.  *See* Jan. 12, 2016

8  Hearing Tr. at 45:17-20 (Magistrate Judge Leen cautioned Oracle she would not allow a

9  discovery schedule that would "kill" Rimini.)  Preparation of the joint status reports required

10  significant attorney and employee time, greatly reducing the resources available for the Parties to

11  engage in the very discovery upon which they were asked to report.  Then, in February 2016,

12  Judge Leen instituted the weekly meet and confer process (ECF No. 167 at 5:11-17), which

13  effectively replaced the monthly status conference process.

14         Under the prior monthly process, the joint status reports were burdensome and unwieldy,

15  at times spanning "in excess of 500 pages" (ECF No. 166 at 5:1-4), and often encompassing

16  multiple motions to compel raised while the Parties were still in the process of meeting and

17  conferring to address those same discovery disputes.  The Parties would thus appear at the status

18  conferences having resolved many of the issues raised in the reports, rendering parts of the

19  reports moot, having served only to document a process that was well on its way to resolution,

20  thereby wasting the parties' time to prepare them and the Court's time to review them.  *See* Feb.

21  24, 2016 Hearing Tr. at 7:3-5 (counsel for Oracle explaining "all the things that have been

22  resolved as far as Oracle's motions to compel, based on the parties' work" between the time the

23  status report was filed and the status conference was held); *see also id.* at 5:18-25 (counsel for

24  Oracle explaining to the Court that the parties had "been continuing to work together" to resolve

25  issues raised in the joint status report and had "resolved [multiple issues] between the parties").

26         This process also invited abuse, as Oracle used the reports to unfairly paint Rimini in a

27  negative light when in fact the Parties' meet and confer was ongoing and Rimini was in the

28  process of providing (or had already agreed to provide) Oracle the information it sought.  *See*

1   ECF NO. 153 (Feb. 12, 2016 Joint Status Report) at 70 (Oracle compels production of Rimini

2   databases despite the fact that "Oracle's investigation and review of Rimini's non-custodial

3   database productions is ongoing"); *see also id*. at 81 (Rimini explains that "[d]uring the parties'

4   meet-and-confer, Rimini agreed to investigate these issues . . . and [t]hese efforts are ongoing").

5          Oracle further took advantage of this process by raising these de facto motions to compel

6   involving complex technical issues, and leaving Rimini only days—or sometimes just hours—to

7   respond.  *See* ECF No. 117 at 10-11 (joint status report in which Oracle served 27 pages of

8   motions two days before filing, and added 14 *additional* pages of argument mere hours before

9   filing, leaving Rimini no time to adequately respond).  The discovery issues in this case are

10  necessarily complex given, among other issues, the technology involved, and the Parties should

11  be afforded the amount of time dictated by the Federal and Local Rules in which to fully brief

12  these issues for the Court.

13         Rather than using their valuable time and resources to prepare unnecessary and lengthy

14  reports to the Court on discovery progress, the parties should use that time and expense to

15  meaningfully advance discovery progress.  This is especially true where the amount of discovery

16  in *Rimini II* is in various aspects double or nearly double the amount it was in *Rimini I*—for

17  example, in RFPs propounded by Oracle (from 98 to 224 and counting), non-party depositions

18  (from 20 to the now 35 per side), and documents produced by Rimini (from about 1 million in

19  *Rimini I* to over 2.5 million under TAR alone in *Rimini II* to date).  Rimini is committed to

20  meeting its discovery obligations.  Indeed, its internal and external discovery costs this year have

21  exceeded $10 million.  But reverting to monthly status conferences, with the reports and

22  appearances that accompany that schedule, is not necessary to successful discovery in this case.

23              **2.       This Case Does Not Require Extraordinary Oversight**

24         The Parties in this case are regularly meeting and conferring to address discovery

25  disputes, and only rarely finding the need to involve the Court through normal motion practice.

26  As discussed in Section III.B, the Parties are already complying with a regular and thorough

27  meet and confer process.  That process is working.   The last status conference on discovery

28  issues was held on April 5, 2016.  ECF No. 200.  In the more than eight months since that

1    conference, only three discovery disputes have been noticed for this Court's intervention.  This is

2    how it should be.  There is no need for special Court involvement here, and a return to the prior

3    conference schedule would only serve to burden the Court and the Parties, and to create

4    inefficiencies that would detract from the necessary work of preparing this case for trial or

5    settlement.  Moreover, the substantial burden of regularly preparing joint status reports unfairly

6    prejudices Rimini, given that Rimini shoulders an extreme and disproportionately large share of

7    the discovery burdens in this case.  *See* Section III.E.  Rimini respectfully requests the Court

8    order the Parties to continue to resolve discovery disputes through meet and confer, coupled with

9    normal motion practice.

10          **E.      Rimini's Request for a Reasonable Limit on Requests for
                      Production**

11

12          The scope of discovery in this case is monumental.  Rimini has produced *millions* of

13   documents, as well as terabytes of data.  And those productions are ongoing, as Rimini averages

14   more than a production per week over the past year.  To date, Oracle has served **224** requests for

15   production ("RFPs") on Rimini, and has refused Rimini's request to set a limit on the number of

16   RFPs each party may propound going forward.  Absent reasonable boundaries, Oracle has taken

17   an untargeted approach, demanding that Rimini respond to duplicative requests (in some cases

18   identical, word-for-word to prior requests), and propounding requests that seek material that is

19   cumulative of information Oracle has already received from Rimini and multiple other sources.

20   *See* ECF No. 256 (Oracle's Motion to Compel); ECF No. 270 (Rimini's Opposition to Oracle's

21   Motion to Compel) (requesting the same information from both Rimini and its clients).  This

22   approach significantly strains Rimini's resources and is not "proportional to the needs of the

23   case, considering the importance of the issues at stake in the action, the amount in controversy,

24   the Parties' relative access to relevant information, the Parties' resources, the importance of the

25   discovery in resolving the issues, and whether the burden or expense of the proposed discovery

26   outweighs its likely benefit."  Fed. R. Civ. P. 26.  Rimini therefore requests that the Court

27   impose a reasonable limit on RFPs—275 total per party—which is more than proportional to the

28

1    Parties' needs, and will ensure that the Parties take a judicious and thoughtful approach to

2    document discovery.

3              **1.        Rimini Has Produced a Vast Amount of Discovery**

4              For the Court's convenience, and so the Court may fully grasp the mammoth amount of

5    discovery in this case, this section provides a summary of discovery conducted to date.

6              While Oracle litigated *Rimini I* using fewer than 100 RFPs, it has already propounded

7    224 in *Rimini II*.[5]  Thus, while *Rimini I* involved four Oracle product lines, and *Rimini II*

8    involves those same four, plus one more, for a total of five (only a 25% increase in scope),

9    Oracle has already more than doubled its document requests, and has indicated that it will

10   continue on this trajectory.  On top of its RFPs, Oracle has also propounded incredibly

11   burdensome interrogatories, requiring thousands of employee and attorney hours to complete.

12   And because the Parties have agreed to 25 party depositions per side and up to 35 third-party

13   depositions per side, there could—assuming the Court adopts the Parties' agreement—be up to

14   120 depositions in this case during the fact discovery period.  This figure does not even include

15   expert depositions.

16             Oracle's unbridled approach to RFPs has caused Rimini—Oracle's much smaller

17   competitor—to produce almost 50 *times* the pages of written discovery that Oracle has in this

18   case.  ECF No. 329 (Rimini's Opposition to Oracle's Motion to Compel) at 20.[6]  Rimini has been

19   forced to hire new employees and contractors specifically to meet Oracle's discovery demands in

20   this case and continues to work diligently to produce more.  Based on these efforts, Rimini has

21   produced over 2.5 *million* documents, totaling almost 18.2 *million* pages, plus over 10 *terabytes*[7]

22   _____

23   [5]        In addition to the 224 RFPs Oracle has served on Rimini, Oracle has issued more than
     *600* third-party subpoenas on Rimini's clients, often requesting the same information it seeks
     from Rimini.  *See* ECF No. 256; ECF No. 270.
24   [6]        By revenue and employee count, Oracle is approximately 227 and 147 times the size of
     Rimini, respectively.  *Compare* Oracle's 2016 Form 10-K (available at
25   http://investor.oracle.com/ financial-reporting/sec-filings/) (showing revenues of $37 billion);
     Oracle's Global Workforce, https://www.oracle.com/corporate/citizenship/workforce/index.html
26   (touting a "workforce of more than 122,000 employees") *and* ECF 346-1 (Rimini Street, Inc.'s
     Second Amended Complaint) at ¶ 2 ("Rimini has . . . annual run-rate revenues of $163
27   million."); *id.* ¶ 3 ("Rimini has more than 830 active worldwide employees").
     [7]        A terabyte is a unit of data storage.  Ten terabytes could hold the full printed collection of
28   the Library of Congress.  *See* http://www.whatsabyte.com/.

1    of other data (*e.g.*, environments and archives) in *Rimini II* alone.[8]  ECF No. 329 at 4.  (In

2    contrast, Oracle has produced only approximately 73,000 documents, totaling only

3    approximately 375,000 pages.)  This is *in addition to* the over one million documents

4    (approximately 6.8 million pages) Rimini produced in *Rimini I*, which is deemed responsive in

5    *Rimini II*, and available to Oracle in this action.  Thus, Oracle has almost **25 million** pages of

6    document discovery and over **10 terabytes** of additional data from Rimini, and will collect much

7    more from third parties.

8          And it doesn't end there.  The vast majority of the documents Rimini has produced in

9    *Rimini II* (approximately 1.6 of the 2.5 million) are custodial documents responsive to fewer than

10    half the RFPs Oracle served to date.  This is because, as Oracle knows, these requests have not

11    yet been incorporated into the Parties' Technology-Assisted Review ("TAR") process.  Once a

12    new predictive coding model (or "TAR II" model) is established for the more than 100 additional

13    RFPs that have not yet been accounted for in the first TAR model, and the custodians'

14    documents are run through that model, Rimini will almost certainly have produced millions more

15    pages of documents to Oracle and the gaping disparity in burdens will grow even more extreme.

16    Further, Rimini has agreed to add ten more custodians, and will thus produce even more data—

17    and on average to date, for each custodian added, Rimini is producing approximately 26 *times*

18    the number of documents that Oracle is producing.  Between the documents Rimini has produced

19    in *Rimini I* and *Rimini II*, and the documents it will produce based on the 224 RFPs Oracle has

20    propounded so far, Oracle already has ample material to argue its case.  And if not, that is only

21    because Oracle has not taken a targeted approach to RFPs, having taken for granted that it could

22    serve as many as it wished.

23          In addition to the custodial documents that have been produced in this case, Rimini has

24    also produced terabytes of non-custodial data, and given Oracle access to other sources

25    containing the core discovery Oracle seeks in this case.  ECF No. 329 at 4.  These non-custodial

26    sources include what the Parties refer to as Karen's Directory Printout ("KDP") data, which

27

28   [8]     The numbers contained in this statement are accurate as of December 8, 2016.

1    consist of directory and file structures, as well as metadata, for over 500 environments and client

2    archives.  *Id.*  They also include information from project management and data tracking systems

3    used in the creation of client environments, including Avata, Salesforce, SharePoint, and

4    Department Shares, as well as online access to DevTrack.  *Id.*

5                    **2.       The Burdens of Oracle's Approach Outweigh Any
                                Benefit**

6

7            Despite having an enormous volume of discovery at its fingertips (with more on the

8    way), Oracle has refused to agree to a reasonable limit on the number of RFPs.  Oracle has

9    instead elected to take a reactionary and scattershot approach, pursuing any material even

10   tangentially related to "Rimini's entire business model."  ECF No. 318 at 2.  To be clear,

11   Oracle's position is *not* that the information must be related to the conduct at issue in this

12   copyright infringement lawsuit; rather, Oracle believes it is entitled to any documents relating to

13   Rimini, the business.  *Id.*[9]

14           More troubling, however, is that Oracle has reached the point where it is serving requests

15   that are entirely duplicative—in some cases identical—to prior requests Oracle has served in this

16   case.  For example, Requests 213 and 223 are exactly the same, *word-for-word*.  Vandevelde

17   Decl. Ex. C (compare RFP No. 213 with RFP No. 223).  And *all* of the requests in Oracle's

18   Seventh Set of RFPs seeking documents related to the Colbeck financing transaction are

19   duplicative of prior requests.  ECF No. 329 at 19.  Oracle has even conceded that many of its

20   requests are encompassed by prior requests.  ECF No. 337 at 10-11; *see* ECF No. 318 at 12;

21   Vandevelde Decl. Ex. B (Supp. Response to RFP No. 196).  This untargeted approach is highly

22   inefficient, requiring Rimini to consistently point Oracle to prior requests and documents it has

23

24

25   [9]      Oracle's reactionary approach is clear from the timing and content of its RFPs.  For
         example, shortly after Rimini announced that it secured financing from Colbeck Capital
26   Management, LLC, Oracle sought "All Documents Concerning the transaction or transactions by
         which [Rimini] obtained th[at] financing" (RFP No. 186), including absurdly broad requests for
27   Rimini's "financial information" (RFP No. 190), "business information" (RFP No. 191),
         "business model" (RFP No. 192), and documents relating to "litigation involving Oracle" (RFP
28   No. 193).  Vandevelde Decl. Ex. A.

1    already produced.  It also shows that Oracle has largely—if not entirely—covered the waterfront

2    with its prior RFPs.

3           There is no question that this case is large and important for both Parties, and indeed for

4    the entire aftermarket software support industry.  But Rimini has expended extraordinary time

5    and expense to respond to the massive amount of discovery Oracle has sought in this case, and

6    the limits of proportionality have been surpassed.  Rimini thus requests a reasonable limit on

7    RFPs.  Such a limit will not curtail Oracle's ability to propound additional RFPs to address

8    issues that arise in depositions, it will only ensure that Oracle use its requests more judiciously to

9    more precisely target the information it purportedly needs to prove its case.

10          **F.      Oracle's Opposition to Rimini's Request to Limit The Parties'
                     Requests for Production of Documents**

11

12          Under the operative pleadings, Oracle accuses Rimini of massive theft of Oracle's IP and

13   of improper statements to its current and prospective customers.  Second Am. Countercl., ECF

14   No. 306, ¶¶ 5-10.  Rimini, for its part, requests a declaration that "Rimini's processes" do not

15   infringe Oracle's copyrights.  Am. Compl., ECF No. 61, ¶ 11.  Both Oracle's and Rimini's

16   claims focus on Rimini's actions.  It is no wonder that Rimini's production dwarfs Oracle's in

17   size:  under the operative pleadings, Rimini's copying and many of its communications are

18   relevant to disputed issues; for the most part, Oracle's documents are not.[10]

19          Rimini now seeks to prevent Oracle from obtaining additional categories of documents,

20   including those relevant to newly arising case issues.  Less than ten days after moving for leave

21   to add five new claims for relief (in its proposed Second Amended Complaint, ECF No. 346-1),

22   Rimini asks the Court to prevent Oracle, which has served 275 RFPs to date (224 on Rimini and

23   51 on Ravin) from seeking any additional categories of documents relating to those new

24   claims.[11]  Rimini's move to limit document requests comes less than a month after Oracle first

25   _____

26   [10]    *See also Rimini I*, Order, ECF No. 1049 (holding on entry of a permanent injunction
         against Oracle that "Rimini's business model was built entirely on its infringement of Oracle's
27       copyrighted software.").
         [11]    Rimini's suggestion that the number of RFPs be limited "per party" makes no difference,
28       as Oracle propounded each of its RFPs on behalf of both Counterclaimant Oracle America, Inc.,
         and Defendant and Counterclaimant Oracle International Corporation.

1    learned, in a deposition of a Rimini employee, that Rimini claims to have again revamped its

2    processes for providing support for Oracle software, purportedly to comply with the permanent

3    injunction entered against Rimini and Ravin in *Rimini I*. *See, e.g.*, Decl. of Thomas S. Hixson, ¶

4    4 & Ex. B (Deposition of Susan Tahtaras,  Nov. 18, 2016, at 52:18-55:9 (changes to Rimini's

5    processes for development), 80:13-82:1 (development now done "manually on the client's

6    machine"), 95:14-96:14 (new employees hired, and others yet to be hired, because of the

7    injunction)). Oracle is entitled to request documents concerning Rimini's post-injunction

8    conduct.[12]  Rimini's naked gamesmanship should not be rewarded;  Rimini may not change the

9    discovery framework at this late date.

> **1.    Rimini's proposal to limit RFPs at this time is both procedurally improper and fundamentally unfair**

12        At the outset of discovery, Rimini agreed with Oracle that "there should be no limit on

13   the number of requests for production of documents" in this case.  ECF No. 48 at 14:14-15

14   (stipulated discovery plan).  "Because stipulations serve both judicial economy and the

15   convenience of the parties, courts will enforce them absent indications of involuntary or

16   uninformed consent."  *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999).  Rimini does not

17   claim that its stipulation to unlimited requests for production was either involuntary or

18   uninformed.  Since requests for production were the only type of discovery where the Parties had

19   complete agreement at the time that the stipulated discovery plan was filed, Rimini can hardly

20   argue that it was compelled to agree.  ECF No. 48 at 14:14-15:2.  Oracle has reasonably relied

21   upon the Parties' agreement for the better part of a year and a half in shaping its discovery

22   strategy, and Rimini should not be permitted to withdraw unilaterally at this late date.

23        Nor has Rimini met its burden to obtain a protective order as to Oracle's future requests

24   for production.  To obtain a protective order that limits a party's ability to conduct discovery, a

---

[12]     While Oracle has served initial document requests relating to this and other new categories of relevant documents based upon information first disclosed in the deposition of Rimini employee Susan Tahtaras, *see* Decl. of Eric D. Vandevelde, ¶ 4 & Ex. C (Oracle's Ninth Set of Requests for Production), Oracle should be permitted to seek further discovery on these issues if required.

1    party may not merely "show[] that discovery may involve some inconvenience and expense . . . .

2    Rather, a party seeking a protective order must show a particular and specific need for the

3    protective order, and broad or conclusory statements concerning the need for protection are

4    insufficient."  *Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife*, 288 F.R.D. 500, 503 (D.

5    Nev. 2013) (internal citations omitted).  Rimini's complaints about the cost and burden of

6    compliance with discovery requests that Oracle has *already served* are not "particular" or

7    "specific" to the relief that Rimini seeks, which targets discovery that Oracle has *not yet served*,

8    regardless of whether its subject matter be Rimini's proposed new claims, Rimini's newly-

9    revealed post-injunction conduct, or other recent case developments. Rimini is not entitled to the

10   sweeping prospective relief that it requests.

11          Last, Rimini's request is inappropriate in light of its pending motion to amend its

12   complaint.  Rimini cites to no case law that permits one party to expand the scope of its

13   pleadings while preventing an opposing party from taking discovery relevant to those pleadings.

14   To the contrary, in the Ninth Circuit, discovery has been permitted in excess of previously

15   agreed limits by a party who propounded certain discovery after having represented that it would

16   need no new discovery of that type when moving to amend its own claims.  *See In re Google*

17   *Adwords Litig.*, Case No. 5:08-cv-3369, 2011 WL 1226101 at *1 & n.1 (N.D. Cal. Apr. 1, 2011).

18   Oracle's future requests for production will not exceed any relevant limit, and at least may be in

19   response to Rimini's proposed amendment, rather than Oracle's.  Rimini may not immunize its

20   proposed new claims from relevant discovery.

21          If Rimini believes any future requests for production served by Oracle to be

22   objectionable, it may seek relief under the Federal Rules, and has shown itself fully capable of

23   pursuing these means.[13]  But Rimini should not be permitted to change the rules and cut off

24   future requests that have not even been served, especially where the scope of this case may

25   change or when new relevant categories of documents may still be discovered.

26

27   _____
     [13]      If Oracle were requesting production of "any material" related to "Rimini's entire
     business model" (a quote that Rimini falsely assigns to Oracle's Motion to Compel, ECF No.
28   318 at 2), then, procedurally, Rimini should seek relief as to that particular document request.

1            **2.**      **Rimini is not unduly burdened by Oracle's requests**

2       Rimini gives a misleading account of the history of discovery and the supposed burdens it

3 face.  Rimini seeks to overwhelm the Court with eye-catching statistics about the documents and

4 pages it has produced, but omits key details.

5       First, Rimini's production to date, by volume, is largely a production of copies of Oracle

6 software and support materials (including derivative works created therefrom).  Just as in *Rimini*

7 *I*, Rimini has copied many terabytes' worth of Oracle's software and support materials during the

8 relevant time period for *Rimini II*.  For Rimini to have copied a volume of Oracle's copyrighted

9 material equivalent to the text of "the full printed collection of the Library of Congress," *see*

10 *supra*, n.7, is significant, and troubling.  But it is not a surprise:  more than ten years ago, Rimini

11 was already planning for capacity to download *more than three terabytes* of infringing copies of

12 just one of the Oracle product lines at issue in this case.  *See* Decl. of Thomas S. Hixson, ¶ 3 &

13 Ex. A (*Rimini I* Pltfs.' Trial Ex. 6).  To complain when forced to produce these copies, which

14 Oracle alleges are infringing, is "unbridled" chutzpah.  That Rimini is smaller than Oracle is of

15 no moment.  Regardless of its size, Rimini is a proven infringer that now seeks a declaratory

16 judgment that its current process no longer infringe.  Broad discovery into Rimini's documents is

17 appropriate where the Parties agree that Rimini has engaged in massive copying, but disagree as

18 to whether that copying was legal.

19       Second, Rimini mischaracterizes its burden in producing custodial documents.  The

20 Parties have put in place a technology-assisted review protocol that substantially reduces

21 Rimini's burden as to custodial productions.  *See* ECF No. 106, Ex. A (Joint Proposal for

22 Technology-Assisted Review (TAR) of Custodial Documents in *Rimini II*) ("TAR Protocol").

23 As to the millions of documents that it has already produced, the TAR Protocol permitted Rimini

24 to review a sample of a few thousand documents, train a computer model, and then produce

25 custodial documents (up to and potentially including all custodial documents that it has produced

26 to date) without any responsiveness review.[14]  The size of the sample does not depend on the

27 

28 [14]      To deem production under the TAR Protocol complete, each Party must review another
sample of documents (again, likely to be only a few thousand documents).

1  number of RFPs at issue.  In other words, as to custodial documents, Rimini's suggestion that

2  each additional RFP served by Oracle causes Rimini to undertake some substantial increment of

3  additional work is inaccurate.

4          Third, Rimini identifies a few examples of requests that it deems to be overlapping or, in

5  one case, duplicative.  As to the former, Rimini's pattern of refusing to produce relevant

6  documents, *see, e.g.*, Oracle's Motion to Compel, ECF No. 318, has led Oracle to ask for

7  documents in both broad and targeted requests.  As to the latter, Oracle's RFPs 213 and 223 (to

8  which Rimini has not yet responded) are inadvertent duplicates, presented in the same document

9  on the same day.[15]  Neither counsels in favor of preventing Oracle from making future discovery

10 requests.[16]

11         Rimini has a long history of "engag[ing] in discovery delays and other litigation tactics"

12 in an effort to prevent Oracle from obtaining the discovery it needs.  *Oracle v. Rimini*, Case No.

13 2:10-cv-0106 (D. Nev.) ("*Rimini I*"), ECF No. 1049 at 11.  Rimini's current effort to reverse a

14 stipulation entered at the beginning of discovery in hopes of obtaining strategic advantage is

15 simply more of the same.  Oracle respectfully requests that the Court reject Rimini's proposal to

16 limit Oracle's future requests for production.

17

18

19

20

21

22

23

24

---

25 [15]        Oracle will withdraw RFP 223 now that the error has been brought to Oracle's attention.
   Oracle also notes that a duplicate RFP, while unfortunate, does not create any additional burden
26 on Rimini.
   [16]        While Oracle's interrogatories are irrelevant to Rimini's request for relief, Oracle notes
27 that Rimini's suggestion of "thousands" of hours spent responding to discovery is unsupported in
   the record.  The only record of a response by Rimini to an interrogatory that required more than
28 one hundred hours to complete relates to Interrogatory No. 3, as to which Oracle's motions to
   compel have been granted multiple times.  *See, e.g.*, Joint Status Report, ECF No. 215 at 5-6.

DATED:  December 12, 2016

GIBSON, DUNN & CRUTCHER LLP          MORGAN, LEWIS & BOCKIUS LLP


By:_____ /s/ Eric D. Vandevelde_____          By:_____ /s/ Thomas S. Hixson_____
Eric D. Vandevelde                                                 Thomas S. Hixson
Attorneys for Plaintiff and Counterdefendant          Attorneys for Counterclaimant Oracle
Rimini Street, Inc. and Counterdefendant Seth          America, Inc. and Defendant and
Ravin                                                 Counterclaimant Oracle International
Corporation


## ATTESTATION OF FILER

The signatories to this document are Eric D. Vandevelde and me, and I have obtained Mr. Vandevelde's concurrence to file this document on his behalf.

DATED:  December 12, 2016          MORGAN, LEWIS & BOCKIUS LLP


By:_____ /s/ Thomas S. Hixson_____
Thomas S. Hixson
Attorneys for Counterclaimant Oracle America,
Inc. and Defendant and Counterclaimant Oracle
International Corporation

24