GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas (*pro hac vice*)
Michele L. Maryott (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: (949) 451-3800
jtthomas@gibsondunn.com
mmaryott@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Samuel G. Liversidge (*pro hac vice*)
Eric D. Vandevelde (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

HOWARD & HOWARD ATTORNEYS
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone: (702) 667-4843
wwa@h2law.com

DEBEVOISE & PLIMPTON LLP
James J. Pastore (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
jjpastore@debevoise.com

DEBEVOISE & PLIMPTON LLP
Jeffrey P. Cunard (*pro hac vice*)
801 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: (202) 383-8000
jpcunard@debevoise.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA 94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV 89169
Telephone: (336) 402-4068
jreilly@riministreet.com

*Attorneys for Plaintiff and Counterdefendant
Rimini Street, Inc., and Counterdefendant Seth
Ravin*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, a California corporation, and ORACLE AMERICA, INC., a Delaware corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:14-CV-01699-LRH-CWH<br><br>**COUNTERDEFENDANT RIMINI STREET, INC.'S AND SETH RAVIN'S MOTION TO DISMISS ORACLE'S THIRD AMENDED COUNTERCLAIMS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br><u>**REDACTED PUBLIC VERSION**</u> |

PLEASE TAKE NOTICE THAT Counterdefendants Rimini Street, Inc. and Seth Ravin (together, "Rimini") respectfully move this Court, pursuant to Rule 12(b)(6) and, in the alternative, Rule 12(c), of the Federal Rules of Civil Procedure for an order dismissing Claims three (violation of the Lanham Act), four (inducing breach of contract), five (intentional interference with prospective economic advantage), seven (unfair competition), eight (unjust enrichment), and nine (accounting) of Oracle's Third Amended Counterclaims.  As detailed in this Motion, Oracle's counterclaims fail to state a claim upon which relief can be granted, and Oracle has not alleged sufficient factual matter to state a claim for relief that is plausible on its face.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the accompanying Declaration of Casey J. McCracken, the entire record in this matter, and any such further submissions or oral argument that may be submitted prior to the determination of this Motion.

Dated:  February 14, 2017

GIBSON, DUNN & CRUTCHER LLP

By:  _/s/ Jeffrey T. Thomas_
Jeffrey T. Thomas

*Attorneys for Plaintiff and Counterdefendant Rimini Street, Inc., and Counterdefendant Seth Ravin*

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................2

III.    LEGAL STANDARD .............................................................................................4

IV.     ARGUMENT ..........................................................................................................5

        A.      Oracle Fails to Allege Essential Elements of Its Interference Claims ............6

                1.      Oracle's Inducing Breach of Contract Claim Is Deficient ..................6

                2.      Oracle's Interference with Prospective Economic Advantage
                        Claim Is Deficient ................................................................................8

                3.      The First Amendment Bars Oracle's Interference Claims in Part .......9

        B.      Oracle's Lanham Act Claim Is Deficient .......................................................10

                1.      Rimini's Public Denials of Infringement Are Not Actionable ..........11

                2.      Oracle Fails to Allege Materiality and Injury as to the Expiration
                        Date Statement ....................................................................................14

                3.      Oracle's Lanham Act Claim Also Fails Under The Inapplicable
                        Legal Standard Oracle Espouses ........................................................15

        C.      Oracle's Claims Are Preempted and Precluded in Part .................................16

        D.      Oracle's Unfair Competition Claim Fails ......................................................18

        E.      Oracle's Unjust Enrichment Claim Is Deficient ............................................19

        F.      Oracle's Claim for "An Accounting" Fails .....................................................20

V.      CONCLUSION .....................................................................................................21

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,
    47 Cal. App. 4th 464 (1996) .................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................4, 5, 7

*Blue Nile, Inc. v. Ice.com, Inc.*,
    478 F. Supp. 2d 1240 (W.D. Wash. 2007) ...........................................................6

*Boule v. Hutton*,
    328 F.3d 84 (2d Cir. 2003) ..........................................................................11, 13

*Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ......................................................................................18

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    16 F. Supp. 3d 1141 (S.D. Cal. 2014) ...............................................................18

*In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*,
    882 F. Supp. 915 (C.D. Cal. 1994) ...................................................................15

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) .............................................................................5

*City & Cty. of San Francisco v. Philip Morris, Inc.*,
    957 F. Supp. 1130 (N.D. Cal. 1997) .................................................................20

*Civic W. Corp. v. Zila Indus., Inc.*,
    66 Cal. App. 3d 1 (1977) ...................................................................................20

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .........................................................10, 11, 12, 13

*CPC Int'l, Inc. v. Skippy, Inc.*,
    214 F.3d 456 (4th Cir. 2000) .............................................................................12

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962) ...........................................................................................20

*Damabeh v. 7-Eleven, Inc.*,
    2013 WL 1915867 (N.D. Cal. May 8, 2013) ......................................................8

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23, 37 (2003) ...........................................................................16

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
   12 F. Supp. 2d 1068 (C.D. Cal. 1998) ..........................................9, 10

*Flowers v. Eli Lilly & Co.*,
   2014 WL 5822845 (D. Nev. Nov. 7, 2014) ...................................19

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009)....................................................9, 10, 12

*Gidding v. Zurich Am. Ins. Co.*,
   2015 WL 6871990 (N.D. Cal. Nov. 9, 2015)......................................7

*Golden v. Sound Inpatient Physicians Med. Grp., Inc.*,
   93 F. Supp. 3d 1171 (E.D. Cal. 2015) ...........................................18

*Hoffman v. Capital Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001).........................................................11

*Idema v. Dreamworks, Inc.*,
   162 F. Supp. 2d 1129 (C.D. Cal. 2001) ...............................16, 17, 18

*Jalbert v. Grautski*,
   554 F. Supp. 2d 57 (D. Mass. 2008) ...............................................17

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
   115 Cal. App. 4th 168 (2004) .........................................................18

*Kabins Family LP v. Chain Consortium*,
   2010 WL 3001890 (D. Nev. July 27, 2010).....................................19

*Karp v. Hill & Knowlton, Inc.*,
   631 F. Supp. 360 (S.D.N.Y. 1986)..................................................12

*Khoury v. Maly's of California Inc.*,
   14 Cal. App. 4th 612 (1993) ...........................................................18

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)........................................................14

*Kunio Tsutsumi v. Advanced Power Techs., Inc.*,
   2013 WL 1953716 (D. Nev. May 10, 2013) ....................................19

*L.A. Taxi Cooperative, Inc. v. Uber Techs.*,
   114 F. Supp. 3d 852 (N.D. Cal. 2015) ............................................13

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page(s)

3

*Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975,*
    113 Nev. 747 (1997) ................................................................19

4

5

*Mattel, Inc. v. MCA Records, Inc.,*
    28 F. Supp. 2d 1120 (C.D. Cal. 1998) ...........................................12

6

*Mattel, Inc. v. MCA Records, Inc.,*
    296 F.3d 894 (9th Cir. 2002).................................................9, 11

7

8

*Miyayama v. Quality Loan Serv. Corp.,*
    2017 WL 132836 (D. Nev. Jan. 13, 2017)........................................20

9

10

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009)....................................................5

11

*Nat'l Servs. Grp., Inc. v. Painting & Decorating Contractors of Am., Inc.,*
    2006 WL 2035465 (C.D. Cal. July 18, 2006) ................................11, 12

12

13

*Natkin v. Winfrey,*
    111 F. Supp. 2d 1003 (N.D. Ill. 2000) .........................................17

14

15

*Oracle America, Inc. v. Service Key, LLC,*
    2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) ...........................6, 7, 19, 21

16

17

*Petersen v. Allstate Indem. Co.,*
    281 F.R.D. 412 (C.D. Cal. 2012) ...............................................5

18

19

*Proctor & Gamble Co. v. Haugen,*
    222 F.3d 1262 (10th Cir. 2002)................................................11

20

*Quinstreet, Inc. v. Ferguson,*
    2008 WL 5146652 (W.D. Wash. Dec. 5, 2008).....................................12

21

22

*Rice v. Fox Broad. Co.,*
    330 F.3d 1170 (2003).......................................................11, 15

23

*Rondberg v. McCoy,*
    2009 WL 5184053 (S.D. Cal. Dec. 21, 2009).....................................20

24

25

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.,*
    983 F. Supp. 1303 (N.D. Cal. 1997) ..........................................5, 8

26

27

*Skydive Arizona, Inc. v. Quattrocchi,*
    673 F.3d 1105 (9th Cir. 2012).................................................11

28

*Stromback v. New Line Cinema,*
    384 F.3d 283 (6th Cir. 2004)..................................................17

Gibson, Dunn &
Crutcher LLP

iv

1
2

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007)..........................................................................5

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008)........................................................................17

*Tyr Sport, Inc. v. Warnaco Swimwear, Inc.*,
  709 F. Supp. 2d 802 (C.D. Cal. 2010) ...........................................................13

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
  117 F. Supp. 3d 1092 (C.D. Cal. 2015) ...........................................................8

*Wise v. Wells Fargo Bank, N.A.*,
  850 F. Supp. 2d 1047 (C.D. Cal. 2012) .....................................................20, 21

*Worth v. Universal Pictures, Inc.*,
  5 F. Supp. 2d 816 (C.D. Cal. 1997).................................................................16

*Yagman v. Galipo*,
  2013 WL 4414849 (C.D. Cal. Aug. 15, 2013).................................................7

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ...............................................................................10

17 U.S.C. § 301(a) ...........................................................................................16

California Business and Professions Code § 17200................................5, 18, 19, 21

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................5, 15

Fed. R. Civ. P. 12(b)(6).....................................................................................5

Fed. R. Civ. P. 12(c)..........................................................................................5

**Treatises**

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[D][2]
  (2005) ...........................................................................................................16

Gibson, Dunn &
Crutcher LLP

RIMINI'S MOTION TO DISMISS
CASE NO. 2:14-CV-01699-LRH-CWH

# I.    INTRODUCTION

Oracle argued in *Rimini I* that Rimini Street, Inc. and Seth Ravin (together, "Rimini") should be held liable for purported "lies" and "misrepresentations" allegedly made to Oracle's existing and prospective customers.  A unanimous jury rejected those claims outright, finding that Rimini did not interfere with a single customer relationship as a result of any unlawful conduct.  Oracle is attempting to resurrect those baseless claims in this lawsuit, but it does not even come close to alleging sufficient facts to survive a motion to dismiss.  Instead, in its bare-bones complaint, Oracle alleges only that Rimini made (i) three statements to the public that it does not infringe Oracle's copyrights (which Oracle calls Rimini's "public denials of infringement"), and (ii) a single statement regarding the expiration date of Oracle's "support exception including payroll support" for E-Business Suite version 11.5.10 that Oracle contends was incorrect.  Oracle premises five claims on these four statements:  (i) induced breach of contract; (ii) intentional interference with prospective economic advantage; (iii) violation of the Lanham Act; (iv) unfair competition; and (v) unjust enrichment.  But Oracle does not allege a single breached contract or a single customer relationship that was disrupted, let alone describe how any breach or disruption was caused by Rimini's statements.  The absence of factual allegations to support these essential elements is fatal to Oracle's claims.  These claims are also barred by the First Amendment because they are based on constitutionally protected speech, and are precluded and preempted by the Copyright Act because they are duplicative of Oracle's infringement claim.  For each of these reasons, Oracle's claims should be dismissed.

Oracle's allegations are particularly deficient when viewed through the lens of Oracle's now-pending motion to dismiss Rimini's claims.  *See* ECF No. 400.  In that motion, Oracle contends that Rimini's well-pleaded allegations of Oracle's misconduct should be dismissed for failure to state a claim.  For all of the reasons set forth in Rimini's concurrently filed opposition brief, Oracle's arguments are meritless.  In addition, the stark contrast between Rimini's detailed factual allegations and Oracle's conclusory recitation of the elements leaves an objective reader with only one conclusion:  Rimini has satisfied the pleading standard, and Oracle has not.

Gibson, Dunn & Crutcher LLP

## II.   BACKGROUND

Oracle is the world's largest enterprise software company.  Oracle's Third Amended Counterclaims, ECF No. 399 ("TAC") ¶ 36.  Oracle licenses its software to its customers and earns billions of dollars in profits per year from maintenance and support.  *See id.* ¶ 37.  Although Oracle owns copyrights in the software itself, Oracle owns no intellectual property giving it a right to exclude Rimini or anyone else from *supporting* the software.  Rather, Oracle's license agreements with its customers expressly allow third parties to support the licensed software.  Rimini entered the market in 2005 to do just that.

Immediately after Rimini entered the market, Oracle began a systematic campaign to disrupt and halt Rimini's growing business.  In January 2010, Oracle filed a lawsuit against Rimini.  *Oracle USA, Inc. v. Rimini Street, Inc.*, 2:10-cv-00106-LRH-VCF (D. Nev. Jan. 25, 2010) ("*Rimini I*").  In that lawsuit, Oracle alleged thirteen claims against Rimini and its CEO, Seth Ravin, including (among others) copyright infringement, inducing breach of contract, intentional interference with prospective economic advantage, unfair competition, unjust enrichment, and an accounting, all of which Oracle also alleges in this case.  *Rimini I*, ECF No. 1.

Oracle filed two motions for summary judgment on its copyright infringement claim, arguing that its license agreements did not permit the manner in which Rimini provided support.  *See Rimini I*, ECF Nos. 237, 405.  After Oracle's motions were granted in part (*see id.*, ECF Nos. 474, 476), Rimini transitioned to non-infringing alternative processes.  This transition was completed by no later than July 2014.  *Rimini I*, ECF Nos. 905-1 ¶¶ 3-10; 905-5 ¶¶ 3-6; 905-4 ¶¶ 3-10; 905-2 ¶¶ 4-11; 905-3 ¶¶ 4-6.

After the first motion was granted in February 2014, Rimini informed its clients in a letter that Rimini had already started to modify its processes (beginning in January 2013), and that its new processes would conform to the Court's order.  TAC ¶ 115 (alleging that Rimini's letter stated "in January 2013, Rimini Street began a project to migrate all existing PeopleSoft, JD Edwards and Siebel Rimini-Hosted Environments to Client-Hosted Environments and discontinue the use of all Rimini-Hosted Environments.  We are continuing this migration,

RIMINI'S MOTION TO DISMISS
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn & Crutcher LLP

which conforms to the Court's recent ruling") (the "First Client Letter Statement").  And in August 2014, *after* Rimini changed its processes, Rimini's Chief Marketing Officer stated (as reported in *The Register*) that the Court's infringement findings related to the past process, which Rimini had recently finished changing.  *Id.* ¶ 132(a) (stating that the Court's findings "relate to processes and Oracle software no longer in use at Rimini, and therefore do not cause interruptions to service for ANY client or ANY product") (the "Register Statement").  Rimini made a similar statement to clients in August 2014 "that the Court's infringement findings against Rimini 'relate to processes and software no longer used by Rimini Street, and therefore will not cause any interruptions to service for any client or any product line.'"  *Id.* ¶ 132(b) (the "Second Client Letter Statement").

Consistent with these statements, on October 15, 2014, Rimini filed this declaratory relief action against Oracle, seeking a declaration that Rimini's revised development processes and new proprietary tools do not infringe Oracle's copyrights.  *Rimini Street, Inc. v. Oracle Int'l Corp.*, 2:14-cv-01699-LRH-CWH (D. Nev. Oct. 15, 2014) ("*Rimini II*").  Oracle responded to Rimini's declaratory relief lawsuit with eight meritless counterclaims on February 17, 2015 (ECF No. 21), which it then amended on February 28, 2016 (ECF No. 174), and again on January 17, 2017 (ECF No. 397).

In addition to Oracle's claim that Rimini's new processes infringe Oracle's copyrights and Oracle's request for a declaration that its intended revocation of Rimini's access to Oracle's support websites is lawful, Oracle also alleges five claims (TAC ¶¶ 189–211, 217–28) based on the allegation that Rimini's February and August 2014 "public denials of infringement" are misleading because Rimini's "new" support model involves "the same acts that the Court has already ruled infringe Oracle's copyrights as a matter of law."  *Id.* ¶ 116.  In other words, Oracle contends that *because* Rimini is infringing, it is lying when it says it is not.  The only other allegedly false statement in Oracle's complaint is the assertion that in November 2014, Rimini stated in marketing materials that Oracle's "support exception including payroll support expires December 31, 2014."  *Id.*  ¶ 132(c) (the "Expiration Date Statement").  Oracle alleges this was false because, according to Oracle, "Oracle's Exception to Sustaining Support for E-Business

Suite release 11.5.10 did not expire until December 31, 2015." *Id.* ¶ 136.[1]  The claims premised on these four statements (the First Client Letter Statement, the Register Statement, the Second Client Letter Statement, and the Expiration Date Statement) are the subject of this motion.

In September 2015, after Oracle filed its counterclaims in *Rimini II*, its similar interference claims went to trial in *Rimini I*.  There, after substantial briefing and oral argument (*Rimini I*, ECF Nos. 766, 767, 771, 773, 867, 869, 874), the Court instructed the jury on the elements of Oracle's induced breach of contract and intentional interference with prospective economic advantage claims (*Rimini I*, ECF No. 880 at 45–48), and Oracle does not dispute that the elements in those instructions govern its pleadings here (*see* ECF No. 400 at 10–11).  Following a three-week trial in which Oracle's primary theme was that Rimini's "wall of lies" and "misrepresentations" interfered with Oracle's current and prospective business relationships, the jury rejected Oracle's claims outright, finding that Rimini did not interfere with any of Oracle's business relationships through any misrepresentations.  *Rimini I*, ECF No. 896.  Oracle then abandoned its unjust enrichment and accounting claims, and the Court entered judgment on Oracle's unfair competition claim premised on Oracle's state-law hacking violation, which is currently being appealed to the Ninth Circuit, and which Oracle does not allege here.  *See id.*; *Rimini I*, ECF No. 1050.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While the court must accept the complaint's factual allegations as

---

[1]  Oracle's counterclaims grossly misrepresent the context of Rimini's statement and omit key facts in order to claim that it was somehow false.  For example, Oracle's counterclaims conspicuously omit the fact that, at the time Rimini made its statement, Oracle was set to discontinue payroll regulatory updates on December 31, 2014.  Rimini's statement that Oracle's "support exception *including payroll support*" expired on December 31, 2014, was both literally true and not misleading.  *See* TAC ¶ 132(c) (emphasis added); *id.* ¶ 136.

Gibson, Dunn &
Crutcher LLP

true, it need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. Rather, "'bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 681). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not state a claim, and mere "labels and conclusions" or "naked assertions devoid of further factual enhancement" are insufficient. *Iqbal,* 556 U.S. at 678. The complaint must state sufficient facts to support every element of the claim. *Twombly*, 550 U.S. at 562; *see Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1310 (N.D. Cal. 1997) (dismissing plaintiff's interference with contractual relation claim where plaintiff could not plead facts supporting essential element of the claim). The analysis under Rule 12(c) is identical to the analysis under Rule 12(b)(6). *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

In Oracle's pending motion to dismiss Rimini's claims, Oracle incorrectly argues that Rule 9(b)'s heightened pleading standard applies to claims of tortious interference and violations of the Lanham Act. Oracle is wrong. Rule 9(b) applies to claims sounding in fraud, not the business torts Rimini has alleged in this case. *See Petersen v. Allstate Indem. Co.*, 281 F.R.D. 412, 416-18 (C.D. Cal. 2012); Rimini Opp. to Oracle Mot. to Dismiss, Feb. 14, 2017 ("Rimini Opp.") at 5–9. However, if Oracle's position were adopted, then *its* claims must *also* be subject to the heightened pleading requirements of Rule 9(b). Under that standard, the complaint must "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Allegations of fraud must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Oracle's pleading falls well short of satisfying the Rule 9(b) standard.

## IV.    ARGUMENT

Oracle's claims for inducing breach of contract, interference with prospective economic advantage, violation of the Lanham Act, violation of California Business and Professions Code

§ 17200, unjust enrichment, and an accounting should be dismissed because, as to each claim, Oracle fails to state a claim upon which relief can be granted.

## A.  Oracle Fails to Allege Essential Elements of Its Interference Claims

Oracle asserts two claims alleging that Rimini's purported misrepresentations interfered with Oracle's customer relationships:  (i) induced breach of contract, and (ii) intentional interference with prospective economic advantage.  These claims fail for the same reasons: Oracle alleges that Rimini made four misrepresentations, but does not even attempt to connect the purported misrepresentations to any specific customer, contract, or relationship.  A misrepresentation is not actionable on its own; it must be tied to a customer and must cause Oracle harm in connection with that relationship.  Oracle's failure to allege facts supporting these essential elements is fatal to both claims.

### 1.  Oracle's Inducing Breach of Contract Claim Is Deficient

To allege a claim for inducing breach of contract, Oracle must allege, among other factors: (1) a valid contract existed; (2) Rimini knew the contract existed; (3) Rimini intended to cause a breach of the contract; (4) Rimini's conduct caused the customer to breach the contract; (5) and Oracle was harmed as a result of the misrepresentation.  *Rimini I*, ECF No. 880 (final jury instructions) at 45–46.  In short, this tort requires unjustifiable conduct that actually caused a breach of contract with a specific customer.  *Id.*  Oracle fails to connect these dots: its misrepresentation allegations remain disconnected from any customer breach caused by Rimini's purported misrepresentation.[2]

Oracle's failure to allege these elements is fatal to its claim.  Indeed, in another case brought by Oracle, *Oracle America, Inc. v. Service Key, LLC*, these same claims were dismissed

---

[2]  Oracle vaguely alleges that Rimini induced Oracle customers to breach contracts "by engaging in the independently wrongful acts" (TAC ¶ 198), but does not identify the "wrongful acts" upon which this claim is based.  The claim cannot be premised on copyright infringement, of course, as such a claim would be preempted.  *See Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1251 (W.D. Wash. 2007) (state-law claim "based on rights equivalent to those protected by copyright" was preempted as the claim's "underlying nature . . . is part and parcel of a copyright claim"); TAC ¶ 195 (not incorporating paragraphs 165–188, Oracle's copyright claim); *Rimini I*, ECF No. 880 at 45.  And Oracle's vague and conclusory complaint alleges no other misconduct, apart from the alleged misrepresentations, that could form the basis for this claim.

RIMINI'S MOTION TO DISMISS
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn & Crutcher LLP

1  for the same reasons.  2012 WL 6019580, at *8 (N.D. Cal. Dec. 3, 2012).  There, Oracle alleged

2  that DLT induced Oracle customers to cancel their Oracle support agreements when DLT told

3  Oracle customers that DLT could provide cheaper support services than Oracle while still

4  providing software patches and updates for Oracle products.  *Id.* at *6.  The Court dismissed

5  Oracle's claim as "too vague to satisfy *Twombly*," reasoning:  "The pleadings fail to identify

6  the particular third parties that DLT purportedly induced to breach Oracle's agreements.

7  Rather, Oracle avers only that Defendants induced 'other Oracle customers and third parties' to

8  breach Oracle's Terms of Use agreements." *Id.* at *8.  In addition, Oracle also failed to identify

9  "the specific provisions of those agreements that allegedly were breached."  *Id.*  Thus, there, as

10  here, "[t]he absence of such allegations deprives [Rimini] of 'fair notice of what the claim is

11  and the grounds upon which it rests.'"  *Id.* (quoting *Twombly,* 550 U.S. at 554–55).

12       Oracle's counterclaim fails to identify a *single* Oracle customer that actually breached

13  its contract as a result of Rimini's purported misrepresentations—not one single example.  *See*

14  TAC ¶ 198.  Nor does Oracle allege *how* Rimini's conduct could have caused any Oracle

15  customers to breach their contracts, or which provisions of those contracts were breached.  *See*

16  *Serv. Key, LLC*, 2012 WL 6019580, at *8; *Yagman v. Galipo*, 2013 WL 4414849, at *10 (C.D.

17  Cal. Aug. 15, 2013) (induced breach of contract claim fails where the plaintiff fails to allege

18  provisions of a contract allegedly breached); *Gidding v. Zurich Am. Ins. Co.*, 2015 WL

19  6871990, at *7 (N.D. Cal. Nov. 9, 2015) (granting motion to dismiss where the plaintiff did not

20  allege how the contract "has been actually breached, as required in order to plead an actionable

21  claim for Inducement of Breach of Contract").  Oracle simply makes no connection between a

22  breach, a customer, and Rimini's purported misrepresentation.  *See* TAC ¶¶ 198–201.

23       Notably, Oracle argues in its motion to dismiss Rimini's claims that "Rimini does not

24  allege any specific facts about how any of its customers breached their contracts with Rimini,"

25  or "facts establishing any actual disruption of Rimini's performance."  ECF No. 400 at 9.

26  Oracle is wrong, for all of the reasons stated in Rimini's contemporaneously filed opposition

27  brief.  Rimini's complaint identified specific clients and specifically alleged that because of

28  Oracle's misrepresentations and harassing conduct, clients breached, terminated, failed to

expand, or declined to renew their contracts with Rimini, and that some prospective clients also declined to elect Rimini's services (*see* Rimini Opp. at 10–12); the analogous facts are completely absent from Oracle's counterclaims. If Oracle believes Rimini's pleading is deficient, then Oracle's claims fail too. Oracle simply cannot have it both ways. Because Oracle's vague claim does nothing more than recite elements of the claim, it should be dismissed.

### 2.    Oracle's Interference with Prospective Economic Advantage Claim Is Deficient

Oracle also fails to allege sufficient facts to support its claim for intentional interference with prospective economic advantage, which requires allegations demonstrating the following elements, among others: (1) an expectancy in a prospective contractual relationship with a customer; (2) that Rimini knew of the prospective relationship; (3) that Rimini engaged in unlawful and improper conduct intending to disrupt the relationship; (4) that the relationship was disrupted as a result of such conduct; and (5) that the unlawful and improper conduct caused Oracle harm. *Rimini I*, ECF No. 880 at 47–48.

Here, Oracle fails to identify a single relationship that was disrupted by any misrepresentations. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1117 (C.D. Cal. 2015) ("it is essential that the claimant allege facts showing that defendant interfered with a relationship with a particular individual"). Rather, Oracle merely alleges that Rimini generally made false statements "in commercial advertising and promotion of Rimini's services, through broad dissemination of public statements and promotional letters" and "in marketing materials emailed to potential customers." TAC ¶ 132(c). This is not enough. *See Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) (dismissing claim where the plaintiff merely alleged interference "'with [Plaintiff's] employees and customers," and did "not specifically identify any of these employees and customers'"); *see also Silicon Knights,* 983 F. Supp. at 1310 (dismissing plaintiff's interference with contractual

1    relation claim where plaintiff could not plead facts showing that any contract was actually

2    disrupted).[3]

3          Oracle must allege particular relationships that were disrupted, but it has not done so.

4    By contrast, Rimini alleged at least five specific disrupted relationships.  Rimini Opp. at 10–

5    12.  Once again, the comparison between the two pleadings supports only one conclusion:

6    Rimini's pleadings are sufficient, and Oracle's are not.

7          **3.     The First Amendment Bars Oracle's Interference Claims in Part**

8          Oracle's interference claims are not only deficiently pleaded, they are barred in part by

9    the First Amendment because they are based on Rimini's alleged statements "to customers and

10   the public that Rimini's new support model does not infringe Oracle's copyright" (TAC ¶¶ 205–

11   06), which is constitutionally protected speech.

12         A plaintiff "cannot state a claim for intentional interference with economic relations and

13   prospective economic advantage" if constitutionally protected speech is "the basis for such a

14   claim."  *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009); *see also Films of Distinction,*

15   *Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) ("First

16   Amendment limitations are applicable to all claims where the gravamen of the claim is the

17   alleged injurious falsehood of a statement").  "If speech is not 'purely commercial'—that is, if

18   it does more than propose a commercial transaction—then it is entitled to full First Amendment

19   protection."  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002).

20         Here, Oracle bases its interference claims on Rimini's public statements following the

21   Court's summary judgment ruling in *Rimini I* that its *current* support model does not infringe

22   Oracle's copyrights.  *See* TAC ¶¶ 115, 132(a)–(b), 205.  However, these statements are entitled

23   to First Amendment protection both because they are public comments on pending litigation,

24

25   ───────────────────

26   [3]  In Oracle's Motion to Dismiss, it argues that pleading intentional interference with
     prospective economic advantage requires an actual breach of contract, not merely a
27   disruption to a contract.  *See* ECF No. 400 at 9.  As explained in Rimini's concurrently filed
     Opposition to Oracle's Motion to Dismiss, Oracle is wrong again.  *See* Rimini's Opp. at 14.
28   But if the Court adopts Oracle's position, then Oracle's own claim fails for the additional
     reason that it has not pleaded "any specific facts about how any of its customers breached
     their contracts with [Oracle]."  *See* ECF No. 400 at 9.

RIMINI'S MOTION TO DISMISS
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

and because they are non-actionable opinion statements reflecting Rimini's interpretation of the Court's ruling.  *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statements purporting to interpret the legality of an action are opinion "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction"); *see also infra*, Section B.1.  Accordingly, the First Amendment bars Oracle's induced breach and intentional interference with prospective economic advantage claim.  *Gardner*, 563 F.3d at 992 (dismissing claim for intentional interference with prospective economic advantage because defendant's statements "are nonactionable opinion protected by the First Amendment"); *Films of Distinction*, 12 F. Supp. 2d at 1083 (dismissing plaintiff's intentional interference with prospective economic advantage claim "based on the alleged falsehood of the [defendant's] statements" "because the First Amendment protects defendants' alleged injurious falsehoods as statements that can not be reasonably construed as implying objective facts").  As a result, even if the Court finds that Oracle's interference claims are sufficiently pleaded (they are not), they should be dismissed to the extent they rely on constitutionally protected speech.

\* \* \*

Because Oracle does not plead any facts demonstrating that Rimini's alleged misrepresentations caused any customer to breach its contract or disrupt its relationship with Oracle, and because Oracle bases its interference claims in part on constitutionally protected speech, those claims fail.

**B.**     **Oracle's Lanham Act Claim Is Deficient**

As with Oracle's interference claims, its Lanham Act claim also fails because Oracle fails to allege an essential element of its claim and because the claim is based in part on non-commercial speech protected by the First Amendment.

The Lanham Act imposes liability for any "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B).  A claim arising under this statute must allege:  (1) a false statement of fact by Rimini in a commercial

advertisement about its own or another's product; (2) that the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) that the deception is material, in that it is likely to influence the purchasing decision; (4) that Rimini caused its false statement to enter interstate commerce; and (5) that Oracle has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to Rimini or by a lessening of the goodwill associated with Oracle's products. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). Oracle cannot satisfy these elements here.

### 1. Rimini's Public Denials of Infringement Are Not Actionable

Oracle cannot base a Lanham Act claim on Rimini's statements that its revised processes do not infringe Oracle's copyrights, which Rimini reasonably believes, because these statements are non-commercial speech protected by the First Amendment, and therefore not actionable under the Lanham Act.

In order not to interfere with First Amendment rights, the Lanham Act is limited strictly to commercial speech. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (2003); *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) ("we have been careful not to permit overextension of the Lanham Act to intrude on First Amendment values"). A statement constitutes "commercial speech" only if it "is speech which does *no more* than propose a commercial transaction." *Rice*, 330 F.3d at 1181 (emphasis added); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001). "If speech is not 'purely commercial'—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection." *Mattel*, 296 F.3d at 906; *see also Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1274 (10th Cir. 2002). Thus, even speech that is partly commercially motivated is not "commercial speech" if it is inextricably intertwined with matters of public concern. *Nat'l Servs. Grp., Inc. v. Painting & Decorating Contractors of Am., Inc.*, 2006 WL 2035465, at *5 (C.D. Cal. July 18, 2006) ("Where particular speech includes commercially-motivated statements that are inextricably intertwined with otherwise fully protected speech, the entirety of the speech may be fully protected"). In addition, statements of opinion are protected by the First Amendment, and cannot be the basis of a Lanham Act claim. *Coastal*, 173 F.3d at 731 ("Statements of opinion

are not generally actionable under the Lanham Act"); *Gardner*, 563 F.3d at 988 (expressions of opinion are protected by the First Amendment).

All three of the public denials of infringement Oracle alleges as the bases for its claim are protected speech commenting on pending litigation. *Quinstreet, Inc. v. Ferguson*, 2008 WL 5146652, at *4 (W.D. Wash. Dec. 5, 2008) (finding that statements made concerning litigation were not commercial speech and were protected by the First Amendment). The statements discuss an ongoing court proceeding, which is a matter of public interest. In particular, the two Client Letter Statements were made to clients who had an interest in the Court's ruling, its scope, and the effect it could have on Rimini and the industry. *See Nat'l Servs. Grp.*, 2006 WL 2035465, at *6 (finding that statements attempting "to inform [defendant's] members of an issue affecting their economic interests" were not commercial speech).

Rimini's statements that its revised processes do not infringe are also non-actionable for the independent reason that they are statements of opinion regarding the application of the Court's ruling. Courts have routinely held that comments on pending litigation and statements of one's litigation position are protected expressions of opinion. *See Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1159–62 (C.D. Cal. 1998) (holding that Mattel's public statements were "non-actionable hyperbole" and "[t]he public would see that the two companies were involved in a lawsuit" and "expect a vigorous debate between both sides in the press," which "is protected by the First Amendment"); *Coastal*, 173 F.3d at 731; *Karp v. Hill & Knowlton, Inc.*, 631 F. Supp. 360, 364–65 (S.D.N.Y. 1986) (finding that "comment on an ongoing court battle" "could reasonably have been understood only as an effort to put the best face on an unfavorable Second Circuit ruling" and was protected by the First Amendment); *see also CPC Int'l, Inc. v. Skippy, Inc.*, 214 F.3d 456, 462–63 (4th Cir. 2000) (recounting on website of "legal events surrounding trademark" protected by First Amendment).

The Ninth Circuit's decision in *Coastal* is particularly instructive. There, the defendant title insurance company falsely stated to potential clients that its competitor was not properly licensed in California and could no longer provide title insurance policies, and the competitor sued alleging a violation of the Lanham Act. 173 F.3d at 729. The Ninth Circuit held that such

Gibson, Dunn & Crutcher LLP

RIMINI'S MOTION TO DISMISS
CASE NO. 2:14-CV-01699-LRH-CWH

1    statements were non-actionable opinion because "[a]bsent a clear and unambiguous ruling from

2    a court or agency of competent jurisdiction, statements by laypersons that purport to interpret

3    the meaning of a statute or regulation are opinion statements, and not statements of fact." *Id.*

4    at 731.  The same result should hold here.  Whether Rimini's revised processes do not infringe

5    is a heavily disputed matter that cannot be proven true or false absent a "clear and unambiguous

6    ruling" on that issue.  *See id.*  Rimini's statements interpreting this Court's order and applying

7    it to different processes are thus statements of opinion, not fact.

8           Rimini's statement to *The Register* is non-actionable commercial speech for the

9    additional reason that it is published in an independent article and is inextricably intertwined

10   with the author's coverage of a matter of public concern—the *Rimini I* lawsuit.  *See Boule*, 328

11   F.3d at 91 (finding statements made in news article not commercial speech where they were

12   intertwined with the reporters' coverage of an issue of public importance); *L.A. Taxi*

13   *Cooperative, Inc. v. Uber Techs.*, 114 F. Supp. 3d 852, 864 (N.D. Cal. 2015) (same); *Tyr Sport,*

14   *Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 802, 818 (C.D. Cal. 2010) (same).  For

15   example, in *Uber*, the court held at the motion to dismiss stage that Uber's statements, made to

16   several journalists and "published in independent online articles," that "Uber is safe" were not

17   commercial speech, were protected by the First Amendment, and were not actionable under the

18   Lanham Act.  *Uber*, 114 F. Supp. 3d at 864.  The court explained that "[b]ecause the challenged

19   statements are 'inextricably intertwined' with the reporters' coverage of a matter of public

20   concern, i.e. whether Uber is safe for riders," the plaintiff's Lanham Act claim could not

21   survive.  *Id.* at 864–65.

22          Similarly, Rimini's statement to *The Register* is not commercial speech because, like

23   the statement in *Uber*, Rimini's statement was "inextricably intertwined with the reporter['s]

24   coverage of a matter of public concern," and therefore not actionable.  *Id.* at 864.  The statement

25   was part of a longer, independent article in *The Register* about the *Rimini I* lawsuit, a matter of

26   public interest.  *See id.*  Indeed, the article itself stated that "*Oracle v. Rimini* is **an important**

27   **case** which **has huge implications** over who will be allowed to support users' software—

28   whether that's Oracle itself or independent third parties, too."  McCracken Decl., Ex. A

(emphasis added).[4]  The article's focus on a matter of public concern with "huge implications" to the publication's audience brings the statement out of the realm of commercial speech.

In stark contrast to Oracle's allegations, Rimini's well-pleaded Lanham Act and tort claims are based on specific factual misstatements made to clients in connection with a commercial transaction.  *E.g.*, ECF No. 369 ¶ 43 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *id.* ¶ 46 ████████████████████████ *id.* ¶ 88 ████████████████████████████████████████████████████████████████ ████████████████████.  Unlike Rimini's public denials of infringement, Oracle's falsehoods about Rimini's products and capabilities are actionable.

Because Rimini's public denials of infringement are not commercial speech, Oracle's Lanham Act claim based on these statements fails.

### 2.  Oracle Fails to Allege Materiality and Injury as to the Expiration Date Statement

The second basis for Oracle's Lanham Act claim—the Expiration Date Statement—fails as well, because, even assuming for purposes of this motion that the statement was false (see note 1, *supra*), Oracle fails to plead any facts demonstrating that this statement was material or likely to influence customers' purchasing decisions, let alone that it did so.

To plead materiality and injury, Oracle must allege facts showing that the statement was "likely to influence the purchasing decision" and that it injured Oracle by a "direct diversion of

---

[4]  The Court may properly consider the entirety of the article in *The Register* on a motion to dismiss under the "incorporation by reference doctrine."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  That doctrine allows consideration of documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the pleading.  *Id.*

1   sales from itself to [Rimini], or by a lessening of the goodwill which its [services] enjoy with

2   the buying public." *Rice*, 330 F.3d at 1180.

3          Here, Oracle alleges that Rimini stated in marketing materials to potential clients that

4   Oracle's "support exception including payroll support expires December 31, 2014" for Oracle's

5   E-Business Suite version 11.5.10, but Rimini "knew or should have known" that the exception

6   actually expired one year later, on December 31, 2015.  TAC ¶¶ 132(c), 136.  But Oracle does

7   not allege why Rimini's purported inaccuracy as to the expiration date was material to any

8   customers or likely to influence their purchasing decision.  *See In re Century 21-RE/MAX Real*

9   *Estate Advert. Claims Litig.*, 882 F. Supp. 915, 924 (C.D. Cal. 1994).

10         Moreover, Oracle's own pleading undermines any possible claim of materiality because

11   it admits that the true expiration date was readily available in "publicly-available sources."

12   TAC ¶ 136.  The public availability of that information is Oracle's only basis for claiming

13   Rimini "knew or should have known" its statement was incorrect.  *Id.*  But customers have

14   access to the same "publicly-available sources."  If the correct expiration date was supposedly

15   so widely disclosed publicly that Rimini must have known it, as Oracle alleges, then customers

16   knew as well.  Thus, there is no plausible showing that one single inaccuracy would have

17   influenced the purchasing decisions of customers that had the correct information readily

18   available.

19   **3.     Oracle's Lanham Act Claim Also Fails Under The Inapplicable Legal**

20   **Standard Oracle Espouses**

21         In its Motion to Dismiss Rimini's claims, Oracle argues (1) that Lanham Act claims

22   based on false representations are subject to Rule 9(b) heightened pleading standards, and

23   (2) that the proponent of a Lanham Act claim must specifically link, at the pleading stage, any

24   alleged misrepresentations to the customers or potential customers it claims to have lost.  *See*

25   ECF No. 400 at 19.  Oracle is wrong, as explained in Rimini's concurrently filed opposition

26   brief.  Rimini Opp. at 9, 22–24.  However, if the Court were to agree with Oracle, then Oracle's

27   own Lanham Act claim would fail because Oracle completely fails to plead any specific false

28   statement by Rimini that caused Oracle to lose a single specific customer.  *See* TAC ¶¶ 189–

94.  Nor does Oracle allege any facts demonstrating that any customer actually relied on any false statements, or that any customer actually left Oracle for Rimini as a result.  *See id.* ¶ 192 (alleging that the statements have "a *tendency* to deceive") (emphasis added).  Thus, Oracle's own allegations do not remotely satisfy the pleading standard Oracle itself espouses.

**C.    Oracle's Claims Are Preempted and Precluded in Part**

In addition to the pleading deficiencies and constitutional prohibitions discussed above, the portions of Oracle's tortious interference and Lanham Act claims that are premised on Rimini's "public denials of infringement" (i.e., all claims except the Expiration Statement), also fail for the independent reason that they are preempted and precluded by the Copyright Act.

Section 301 of the Copyright Act preempts state-law claims that are equivalent to copyright infringement claim.  17 U.S.C. § 301(a).  Courts consistently hold that where, as here, the state-law claim is entirely dependent on a determination of whether the defendant infringed or did not infringe, that claim is preempted.  *See, e.g.*, *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1193 (C.D. Cal. 2001); *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997).  These preemption principles apply with equal force to Lanham Act claims under the related doctrine of preclusion.  *See* 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[D][2] at 1-83 (2005) ("courts have long limited application of the Lanham Act so as not to encroach on copyright interests").

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, the United States Supreme Court held that the Lanham Act cannot be invoked as an end run around copyright laws, or add another layer of protection to copyright holders because the Lanham Act was "not designed to protect originality or creativity"—that is the province of copyright.  539 U.S. 23, 37 (2003).  And to accord "special treatment to communicative products" would cause "the Lanham Act to conflict with the law of copyright, which addresses the subject specifically."  *Id.* at 33 ("in construing the Lanham Act, we have been careful to caution against the misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright").

The Ninth Circuit has held that claims seeking to hold a defendant liable for making allegedly false statements about "the licensing status of each work" are precluded by the

1  Copyright Act under *Dastar*. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144

2  (9th Cir. 2008).   The Court reasoned that "[c]onstruing the Lanham Act to cover

3  misrepresentations about copyright licensing status . . . would allow competitors engaged in the

4  distribution of copyrightable materials to litigate the underlying copyright infringement" (*id.*),

5  which is precisely what Oracle seeks to do here.  Indeed, Oracle's copyright infringement claim

6  is entirely about what the licenses permit and do not permit, and the relevant portion of Oracle's

7  Lanham Act and interference claims concern whether Rimini's *statements* about what the

8  licenses permit and do not permit are misleading.

9       Because these claims are premised on the allegation that Rimini falsely stated—to the

10  press and to its customers—that it is not infringing Oracle's copyrights, the claims rise and fall

11  with whether Rimini infringed or did not infringe.  For example, Oracle alleges in its Lanham

12  Act claim that Rimini "create[d] the false impression that Rimini's support services no longer

13  infringe Oracle's copyrights" and that this alleged lie "divert[ed] revenues from Oracle to

14  Rimini" for services that "continue[] to infringe Oracle's copyrights."  TAC ¶¶ 10, 191, 193.

15  Likewise, the interference claim alleges that Rimini falsely stated that "Rimini's new support

16  model does not infringe Oracle's copyright."  *Id.* ¶¶ 205–06.  Oracle also acknowledges that

17  the Lanham Act and intentional interference claims are based on the same conduct (*id.* ¶ 207),

18  which is also the same conduct underlying Oracle's copyright infringement claim (*id.* ¶ 169–

19  71).  Because these claims are "merely a restatement of [Oracle's] copyright claim," and do

20  "not protect any right 'qualitatively different' from those rights protected by copyright," they

21  are preempted and precluded.  *Idema*, 162 F. Supp. 2d at 1193; *Natkin v. Winfrey*, 111 F. Supp.

22  2d 1003, 1014 (N.D. Ill. 2000) ("Although [plaintiffs] are creative in arguing all the various

23  harms they suffered as a result of [defendant]'s alleged misuse of their [works], . . . the plaintiffs

24  have done nothing more than reallege their copyright claims under the guise of the Lanham

25  Act"); *Jalbert v. Grautski*, 554 F. Supp. 2d 57, 74 (D. Mass. 2008) ("Because the Lanham Act

26  claim is simply a copyright infringement claim in different clothing, it is duplicative of the

27  copyright claim and should be dismissed"); *Stromback v. New Line Cinema*, 384 F.3d 283, 306

28  (6th Cir. 2004) ("Generally, tortious interference claims (with contract or prospective economic

Gibson, Dunn &
Crutcher LLP

1  advantage) are held to be preempted because the rights asserted in such claims are not

2  qualitatively different from the rights protected by copyright").

3  **D.  Oracle's Unfair Competition Claim Fails**

4  Oracle fails to state a claim under California Business and Professions Code § 17200

5  (Oracle's "UCL" claim) because it fails to allege "unfair" or "unlawful" business practices.  A

6  claim under the UCL requires a predicate claim of business practices that are either (1) unfair,

7  (2) fraudulent, or (3) unlawful.  *Khoury v. Maly's of California Inc.*, 14 Cal. App. 4th 612, 619

8  (1993).  Here, Oracle alleges its claim under the "unfair" and "unlawful" prongs.  TAC ¶ 220.

9  First, Oracle cannot state a claim under the "unlawful" prong.  To state a claim under

10  the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation;

11  "[w]here a plaintiff cannot state a claim under the 'borrowed' law, it cannot state a UCL claim

12  either."  *Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171, 1179 (E.D.

13  Cal. 2015).  Here, because the above claims fail, Oracle's UCL claim premised on the

14  "unlawful" prong fails as well.  TAC ¶ 218.[5]

15  Second, Oracle cannot state a claim under the "unfair" prong either.  In cases between

16  competitors such as this one, the word "unfair" in the UCL "means conduct that threatens an

17  incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

18  its effects are comparable to or the same as a violation of the law, or otherwise significantly

19  threatens or harms competition."  *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

20  163, 187 (1999).  Alleging unfair conduct "in a more generalized moral sense" is insufficient;

21  rather, what is required are "acts that more narrowly violate the spirit of the antitrust laws, such

22  as horizontal price fixing, exclusive dealing, or monopolization."  *Celebrity Chefs Tour, LLC*

23  *v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1156 (S.D. Cal. 2014).

24

25

---

26  [5]  Oracle's copyright infringement claim cannot form the predicate "unlawful" conduct for its
   UCL claim because the Copyright Act preempts any state law claim based on the same

27  conduct.  *Idema*, 162 F. Supp. 2d at 1191.  Oracle's private breach of contract claim also
   cannot be the predicate.  *See, e.g.*, *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115

28  Cal. App. 4th 168, 183 (2004); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*,
   47 Cal. App. 4th 464, 479 (1996).

Gibson, Dunn &
Crutcher LLP

18

Here, Oracle has not alleged that Rimini threatened an incipient violation of antitrust law or the policy or spirit of that law.  Rather, Oracle has merely alleged that Rimini's allegedly unfair business practices "unjustly have minimized Oracle America's and OIC's competitive advantages."  TAC ¶ 223.  This only emphasizes how Oracle's allegations fall short:  Rimini's presence in the market is unquestionably *pro*-competitive.  Because Oracle does not allege an "unfair" act akin to an antitrust violation, it cannot sustain a claim under the "unfair" prong of the UCL.

Accordingly, because Oracle cannot state a claim under either the "unfair" or "unlawful" prongs of § 17200, its claim should be dismissed.

## E.   Oracle's Unjust Enrichment Claim Is Deficient

There is no independent cause of action for unjust enrichment in California.  *Serv. Key, LLC*, 2012 WL 6019580, at *10.  And Oracle's unjust enrichment claim under Nevada law fails because Oracle does not—and cannot—allege that *Oracle* conferred a benefit on Rimini.  The Court was not presented with, and had no occasion to consider, this argument in addressing Oracle's unjust enrichment claim in *Rimini I*, which was based in part on computer fraud allegations not alleged here.  *See Rimini I*, ECF No. 36 ¶¶ 160–62.

Unjust enrichment is a quasi-contract theory that stands in where the parties do not have an express contract, but one party conferred a benefit on the other that deserves reciprocal payment.  *Kunio Tsutsumi v. Advanced Power Techs., Inc.*, 2013 WL 1953716, at *8 (D. Nev. May 10, 2013).  Under Nevada law, the elements of an unjust enrichment claim are: "(1) a benefit conferred on the defendant *by the plaintiff*; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment."  *Kabins Family LP v. Chain Consortium*, 2010 WL 3001890, at *6 (D. Nev. July 27, 2010) (citing *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 755 (1997)) (emphasis added).

Where, as here, a third party bestowed the benefit, the claim fails because the benefit does not "in equity and good conscience belong[] to the plaintiff."  *Flowers v. Eli Lilly & Co.*,

2014 WL 5822845, at *5 (D. Nev. Nov. 7, 2014) (Hicks, J.); *see also Miyayama v. Quality Loan Serv. Corp.*, 2017 WL 132836, at *4 (D. Nev. Jan. 13, 2017) (dismissing unjust enrichment claim where the benefit was conferred by a third party, not the plaintiff); *City & Cty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1144 (N.D. Cal. 1997) (granting motion to dismiss where "Plaintiffs cite no benefit which has been conferred on defendants by plaintiffs themselves," because allowing such a claim to proceed would "stretch [the Court's] powers too far").

Any revenue Rimini gained was from its *clients*, not Oracle. Oracle's allegation that Rimini "unjustly received benefits at the expense of Oracle" (TAC ¶ 227)—without stating from where those purported benefits came—reveals not only deficient pleading, but also that Oracle *cannot* state a claim for unjust enrichment under Nevada law. The claim should be dismissed.

## F.      Oracle's Claim for "An Accounting" Fails

Finally, Oracle's counterclaim for "an accounting" fails to state a claim because Oracle does not, and cannot, allege a special relationship between Oracle and Rimini that would justify an accounting. Accounting is not a cause of action, but rather a remedy available only in certain circumstances not applicable here. *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1055 (C.D. Cal. 2012) ("Accounting is not an independent cause of action but merely a type of remedy and an equitable remedy at that"). "An accounting may be brought to compel a defendant to account to a plaintiff for money where (1) a fiduciary duty exists; or (2) where no fiduciary duty exists, 'the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'" *Id.* (quoting *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14 (1977)); *see also Rondberg v. McCoy*, 2009 WL 5184053, at *4 (S.D. Cal. Dec. 21, 2009) ("While a fiduciary relationship between the parties is not required to state a cause of action for accounting, plaintiff must allege some relationship that requires an accounting").

Here, there is no alleged fiduciary relationship between Oracle and Rimini. Nor does Oracle allege this is the "rare case" where the accounts "are of such a 'complicated nature'" that an ordinary legal action is not practical. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478

Gibson, Dunn & Crutcher LLP

1   (1962); *Wise*, 850 F. Supp. 2d at 1055.  Nor could it.  Other courts have dismissed Oracle's

2   attempt to allege similar claims for an accounting.  *Serv. Key LLC*, 2012 WL 6019580, at *11

3   (dismissing Oracle's accounting claim for failure "to allege the precise nature of the relationship

4   that purportedly gives rise" to an accounting).

5       In *Rimini I*, Rimini moved to dismiss Oracle's claim for an accounting on the same

6   grounds, but the Court denied the motion.  *Rimini I*, ECF No. 78.  The Court reasoned that

7   "[a]lthough the parties in this matter do not have a fiduciary relationship, the court shall not

8   dismiss this claim at this time because the record before the court is insufficient for the court to

9   determine the full relationship between the parties or how much Defendants have earned from

10  allegedly unauthorized downloading of Oracle's databases."  *Id.* at 11.  The Court has now

11  presided over a trial between the parties.  It is apparent that there is no special relationship

12  between Oracle and Rimini that could justify an accounting.  More importantly, Oracle has not

13  alleged such a relationship, which it is required to do.  The "claim" for an accounting should

14  therefore be dismissed.

## V.   CONCLUSION

16      Oracle's counterclaims for violations of the Lanham Act (third counterclaim), inducing

17  breach of contract (fourth counterclaim), intentional interference with prospective economic

18  advantage (fifth counterclaim), unfair competition under California Business and Professions

19  Code § 17200 (seventh counterclaim), unjust enrichment (eighth counterclaim), and an

20  accounting (ninth counterclaim) should be dismissed.

21  Dated:  February 14, 2017

22              GIBSON, DUNN & CRUTCHER LLP

23              By:   */s/ Jeffrey T. Thomas*
                            Jeffrey T. Thomas

24

25              *Attorneys for Plaintiff and Counterdefendant*
                *Rimini Street, Inc., and Counterdefendant Seth*
                *Ravin*

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I caused to be electronically uploaded a true and correct copy in Adobe "pdf" format of the above document to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is deemed complete upon transmission of the Notice of Electronic Filing ("NEF") to the registered CM/ECF users.  All counsel of record are registered users.

DATED:  February 14, 2017

GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Jeffrey T. Thomas*
Jeffrey T. Thomas

*Attorneys for Plaintiff and Counterdefendant Rimini Street, Inc., and Counterdefendant Seth Ravin*

Gibson, Dunn & Crutcher LLP

RIMINI'S MOTION TO DISMISS
CASE NO. 2:14-CV-01699-LRH-CWH