BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV BAR NO. 3568)
300 SOUTH FOURTH STREET, SUITE 800
LAS VEGAS, NV 89101
TELEPHONE: 702.382.7300
FACSIMILE:  702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone: (202) 237-2727
Facsimile:  (202) 237-6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
(*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:   510.874.1000
Facsimile:   510.874.1460
sholtzman@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
THOMAS S. HIXSON (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
NITIN JINDAL (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
thomas.hixson@morganlewis.com
john.polito@morganlewis.com
nitin.jindal@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Counterclaimants and Defendants Oracle America, Inc. and Oracle International Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation; Plaintiff,<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, a California corporation, and ORACLE AMERICA, INC., a Delaware corporation<br>Defendants.<br>ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Counterclaimants,<br><br>v.<br>RIMINI STREET, INC., a Nevada corporation, *et al.*,<br>Counterdefendants. | Case No  2:14-cv-01699 LRH CWH<br><br>**DECLARATION OF CHRISTIAN B. HICKS IN SUPPORT OF ORACLE'S OPPOSITION TO RIMINI'S MOTION FOR PROTECTIVE ORDER**<br><br>**DESIGNATED "HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY" PURSUANT TO STIPULATED PROTECTIVE ORDER**<br><br>**FILED UNDER SEAL PURSUANT TO COURT ORDER DATED _____.** |

I, Christian B. Hicks, declare as follows:

**Background**

1. I am a managing director of Elysium Digital, A Stroz Friedberg Company, which is a technical litigation consulting company located in Boston, Massachusetts, specializing in providing computer science and electrical engineering expertise for intellectual property, computer forensics, and other high-tech disputes. I have been retained by Defendants and Counterclaimants Oracle America, Inc. and Oracle International Corporation (collectively, "Oracle") in this action. I have personal knowledge of the matters stated herein and could and would testify competently about them if called upon to do so.

2. My compensation is not dependent on the outcome of this litigation.

**Materials Considered**

3. I have examined the technical documents, programs, and source code produced by Rimini Street, Inc. ("Rimini") in this action, as well as in *Oracle USA, Inc. v. Rimini Street, Inc.,* Case No. 2:10-cv-0106-LRH-PAL (*"Rimini I"*), which I understand have been deemed produced in this action.

4. In this regard, I have examined the process by which Rimini provides support including its development of fixes and updates. My investigation is ongoing. I understand Rimini may produce additional materials. I reserve the right to update or modify my conclusions herein based on these materials.

5. In particular, I have examined the software known as Automation Framework ("AFW") and accompanying documents, produced by Rimini on September 12, 2014, and the source code produced on June 6, 2014, as well as additional versions of the software and updated database logs produced on July 21, 2016, March 24, 2017, and April 26, 2017. Review is ongoing, and I reserve the right to update or modify my conclusions herein upon completion of that review.

6. I have also reviewed Rimini's Response and First and Second Supplemental

DECLARATION OF CHRISTIAN B. HICKS ISO ORACLE'S OPPOSITION
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY

Responses to Oracle's Interrogatory No. 2, which purports to explain the process by which it designs and develops fixes in the course of providing support services for the PeopleSoft family of products, including the operation of AFW. Although the response contains gaps in the technical explanation, for purposes of this declaration only, I have accepted its representations regarding the technical operation of AFW, as discussed herein.

7. I have also reviewed Rimini's May 15, 2017 Motion for Protective Order, the parties' December 13, 2015 Joint Status Report, the transcript of the December 15, 2015 Status Hearing, Rimini's December 30, 2015 Supplemental Report, and the transcript of the January 12, 2016 Status Hearing.

8. I previously provided a Declaration in connection with Oracle's January 7, 2016 Response to Rimini's December 30, 2015 Supplemental Report, in which I offered opinions regarding the time and complexity involved in collecting and producing file-level metadata from environments located on Rimini's systems and from customer hosted environments.

9. My conclusions are based on these documents and Rimini's discovery responses, combined with my own investigation and understanding of Rimini's support processes to date.

**Oracle's Interrogatory Nos. 5 and 11**

10. I understand that Oracle's Interrogatory No. 5 requests Rimini to provide specific metadata ("name, path, location, creation date, last access date, and MD5 hash of each related file") for all copies of Oracle J.D. Edwards, PeopleSoft, Siebel, and Oracle Database software and support materials in Rimini's possession, custody, or control. I also understand that Rimini had previously produced the same types of metadata for copies of Oracle files in *Rimini I*.

11. I also understand that Oracle's Interrogatory No. 11 requests Rimini to provide specific metadata ("name, path, location, creation date, last access date, and MD5

hash of each related file") for all copies of Oracle E-Business Suite software and support materials in Rimini's possession, custody, or control. I understand that EBS was not at issue in *Rimini I*.

12. The requested metadata essentially comprises an index of the files: the names of all the files, sizes, how they are organized, associated dates, and MD5 hash codes (which provide unique identifiers for different files and identify duplicate files). Such metadata would not contain sensitive, substantive customer data, because the data sought by Oracle is information about the files themselves, not about their contents.

13. This metadata was useful in *Rimini I*, where, for example, it identified all of the computer systems containing Oracle files, which allowed the Parties to identify and agree upon the existence of exact copies without requiring Rimini to ever produce the underlying files.

**Conclusions**

14. As discussed below, based on the operation of Rimini's AFW program, as well as Rimini's response to Oracle's Interrogatory No. 2, I previously concluded that the access rights Rimini has with AFW are the same as those required to transfer the requested metadata from customer environments to Rimini's servers.

15. Based on my more recent investigation, as further discussed below, I conclude that Rimini has added additional code to the AFW software that Rimini has installed on customer-hosted systems that allows Rimini ███████████ ███████████████████████████████████████████████ In particular, Rimini ███████████████████████████████████████████████████ ███████████████████████ using AFW.

16. I further conclude, as discussed below, that the AFW program is capable of ███████████████████████████████████ and that Rimini routinely ███████ ███████████████████████████████ For example, Rimini has ███████

4

██████████████████████████████████████████████████████

████████████████████████

**Collection of File-Level Metadata from Customer-Hosted Environments**

17. I understand that Rimini claims it does not have possession, custody, or control of customer-hosted copies of Oracle software and support materials.

18. As I previously noted, according to Rimini's response to Oracle's Interrogatory No. 2, each Rimini customer is required to provide Rimini with remote access to that customer's system (page 9, line 4):

"Each Rimini Client is required to provide Rimini with remote access credentials (usually a unique username and password combination) as well as a secure connection method such as VPN – a Virtual Private Network set up across the Internet – that allows Rimini to access that Rimini Client's Computer Systems without being physically present at the site where the Rimini Client's Computer Systems are located (i.e., through remote access). By using these remote access credentials, Rimini is able to access that Rimini Client's Computer Systems from any location around the world for the purpose of providing the Rimini Services set forth in the Support SOW."

19. Rimini then describes installing AFW (page 14, line 9):

"The AFW Tools are installed on each Rimini Client's Computer Systems when Rimini commences its relationship with such Rimini Client. The AFW Tools rely on the Automation Framework Manager ("AFM"), which also is installed on each Rimini Client's Computer Systems when Rimini commences its relationship with such Rimini Client. The AFM is a Rimini-developed service that periodically checks the Rimini Client's dedicated account on the Rimini FTP Server for files written in the XML programming language that contain machine-readable instructions for that Rimini Client."

20. Rimini also describes installing other software tools (page 9, line 27):

"Rimini also places certain software development tools onto each Rimini Client's Development Environment (e.g., a tool that allows engineers to edit COBOL code)."

21. I previously concluded, based on my analysis of Rimini's document productions and interrogatory responses to date, that the same methodology used for installing AFW and other software development tools should enable the installation of software such as Karen's Directory Printer ("KDP") that generates file-level metadata of the type requested by Oracle's Interrogatory Nos. 5 and 11.

22. I also understand that, although Rimini previously claimed it has had technical issues with transferring KDP output files back to Rimini's systems, it now claims that it may not "without client authorization…install third-party software (i.e., KDP software) on clients' systems to extract information for reasons unrelated to Rimini's support services of the clients' software" and that Rimini's access is limited only to the purpose of providing services to its clients."

23. I previously noted that Rimini's response to Interrogatory No. 2 provides two examples of sending files from the customer-hosted environment back to Rimini's system, and confirmed the existence of these operations in my examination of AFW.

24. I previously noted there is an AFW Tool referred to in Rimini's interrogatory response as "CopyRSIFileFromClienttoClient" which, when run, creates an XML file on a customer-hosted or cloud-hosted environment and copies that XML file to Rimini's FTP server.

25. I previously noted there are multiple programs, or "tools" that Rimini appears to use when creating fixes and updates to Oracle software, including one known as *CodeAnalyzer* and another called ▇▇▇▇ which are used to ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇ Given files containing file-level metadata, either of these programs could be used to ▇▇▇▇▇▇▇▇▇▇▇▇

6
DECLARATION OF CHRISTIAN B. HICKS ISO ORACLE'S OPPOSITION
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY

     1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     2     26. Since then, I have discovered two other features of Rimini's AFW tool that

     3           pertain to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     4           ▮▮▮▮▮▮▮▮

     5     **Rimini Created Functionality in AFW to** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

     6     27. First, Rimini created a subprogram within AFW called ▮▮▮▮▮▮▮▮▮▮

     7           ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for use by Rimini employees. ▮▮▮

     8           ▮▮▮▮▮▮▮▮▮▮ first appeared in the source code for AFW version numbered

     9           ▮▮▮▮▮ on or around approximately ▮▮▮▮▮▮▮▮

    10     28. According to text shown in the ▮▮▮▮▮▮▮▮ user interface ▮▮▮▮▮

    11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    12           ▮▮▮

    13     29. A Rimini support engineer running ▮▮▮▮▮▮▮▮ on his or her machine

    14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    17           ▮▮▮ (discussed below).

    18     30. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    21           ▮▮▮▮▮

    22     31. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    24           ▮▮▮▮

    25     32. For example, we can see in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a true and correct

    28

DECLARATION OF CHRISTIAN B. HICKS ISO ORACLE'S OPPOSITION
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY

copy of which is attached as Appendix A.

33. I am able to identify ████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████

34. I am also able to ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████ (RSI2_AFW_00000006).

35. Attached as Appendix B is a spreadsheet that ████████████████
████████████████████████████ and produced by Rimini or customers in this case, and ████████████████████████ The columns of this spreadsheet are defined as follows:

    a. "BATES_NUMBER" is the bates number or range of bates numbers within the Rimini or customer production for ████████████
████████████████

DECLARATION OF CHRISTIAN B. HICKS ISO ORACLE'S OPPOSITION
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**Rimini's AFW Program** [redacted]

36. Second, AFW contains a subprogram called [redacted] that implements an [redacted] which provides the ability to [redacted] [redacted] Certain AFW subprograms, such as [redacted] discussed above, require this functionality.  I have further observed [redacted] [redacted]

37. The data [redacted] flows in the following pattern:

   a. An AFW subprogram, [redacted] [redacted]

   b. The subprogram [redacted] [redacted] [redacted] [redacted] [redacted] [redacted] [redacted]

38. The files and line numbers in the above example come from the following representative files from AFW version [redacted] [redacted]

9

1 ███████████████████████████████ a true and correct copy
2 of which is attached as Appendix C; ██████████████████████
3 ██████████████████████████████████ a true and
4 correct copy of which is attached as Appendix D;
5 ████████████████████████
6 ██████████████████████████████████████████ a true
7 and correct copy of which is attached as Appendix E.  Other versions may contain
8 corresponding other files that implement the same functionality.
9    39. In the ████████████████████████████████████████
10 I can identify execution of ██████████ by means of the presence of █
11 ████████████████████████████████
12 █████████ and can parse █████ that appear in █████████
13 █████████ An example of this ███████
14    a. ███████████████████████
15 ████████████████████████████████████████
16 █████████████████████
17    40. Aggregating these █████████ I observed that there are ███████
18 ████████████████████████████████
19 █ (i.e., the time period covered by the current Rimini AFW productions) █
20 ████████████████████████████████
21 ████
22    41. For example, in █████████ at least █████████████████
23 ████████████ As shown in Appendix F, I have parsed █████████
24 █████████████ into a table format; the columns of this spreadsheet are
25 defined as follows:
26 ████████████████████████████████
27 ██████████████████████████

DECLARATION OF CHRISTIAN B. HICKS ISO ORACLE'S OPPOSITION
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY



23   //
24   //
25   //
26   //
27   //
28

11

1   I declare that the foregoing is true under penalty of perjury under the laws of the United
2   States.
3   Executed June 1, 2017 in Boston, Massachusetts.

By: _____
Christian B. Hicks