# EXHIBIT C
# Corrected Rimini Third Amended Complaint
# REDACTED

GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas (*pro hac vice*)
Michele L. Maryott (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: (949) 451-3800
jtthomas@gibsondunn.com
mmaryott@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Samuel G. Liversidge (*pro hac vice*)
Eric D. Vandevelde (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

HOWARD & HOWARD ATTORNEYS
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV  89169
Telephone: (702) 667-4843
wwa@h2law.com

*Attorneys for Plaintiff and Counterdefendant
Rimini Street, Inc., and Counterdefendant Seth
Ravin*

DEBEVOISE & PLIMPTON LLP
James J. Pastore (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
jjpastore@debevoise.com

DEBEVOISE & PLIMPTON LLP
Jeffrey P. Cunard (*pro hac vice*)
801 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone:  (202) 383-8000
jpcunard@debevoise.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA  94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV  89169
Telephone: (336) 402-4068
jreilly@riministreet.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, a California corporation, and ORACLE AMERICA, INC., a Delaware corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:14-CV-01699-LRH-CWH<br><br>**CORRECTED THIRD AMENDED COMPLAINT FOR:**<br>**(1)   DECLARATORY JUDGMENT OF NONINFRINGEMENT OF COPYRIGHT**<br>**(2)   DECLARATORY JUDGMENT OF NO HACKING**<br>**(3)   DECLARATORY JUDGMENT OF COPYRIGHT MISUSE**<br>**(4)   INTENTIONAL INTERFERENCE WITH CONTRACT**<br>**(5)   INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**(6)   VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT**<br>**(7)   VIOLATION OF LANHAM ACT**<br>**(8)   VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiff Rimini Street, Inc. ("Rimini"), for its Third Amended Complaint against Defendants Oracle International Corporation and Oracle America, Inc. (unless otherwise indicated, together, "Oracle"), alleges as follows:

## INTRODUCTION AND BACKGROUND

1.      Rimini was founded by Seth Ravin in Las Vegas, Nevada in 2005 with his own savings and money raised from friends and family.  Rimini was formed in response to the tremendous customer demand for an alternative choice to the costly and unending upgrade cycles, rising support fees, and layers of hidden maintenance costs associated with traditional models of aftermarket support provided by enterprise software vendors like Oracle without any meaningful competition.  Rimini has signed more than 1,850 clients around the world since its inception (with each supported product line for a given company representing a separate client), including more than 150 of the Fortune 500 and Fortune Global 100 (many of them leading technology companies), that have chosen Rimini for financial savings and a superior support model that better meets their needs.  Rimini's clients also include many government, public sector, and not-for-profit organizations around the world.

2.      Since its inception, Rimini has experienced consistent, rapid growth due to client success with its support offering.  Indeed, Rimini has reported 43 consecutive quarters of revenue growth, with an average annual growth rate of 37% since 2010, and now has annual run-rate revenues of $163 million.  As of September 30, 2016, Rimini has more than 830 active worldwide employees, an increase of 30% year-over-year, with more than 400 in the United States.  Rimini is planning to become a public company, with an initial public offering of its stock.

3.      Rimini's vision and business plan has always been to serve the large and growing global demand for alternative choices in aftermarket support services for enterprise software products, like those offered by Oracle.  Unlike the extensive availability of aftermarket alternative choices in local mechanics and repair shops for automobiles or other consumer goods, the aftermarket for enterprise software support has been characterized by the very

Gibson, Dunn & Crutcher LLP

expensive and often unresponsive offerings of the software vendors themselves, and few alternative choices for consumers.

4.      Enterprise software licensees want alternative choices to the expensive aftermarket support offered by enterprise software vendors like Oracle because the traditional model involves (i) costly and unending upgrade and update cycles in order to be eligible to continue receiving full support services, (ii) uplift penalty charges for licensees that choose ***not*** to upgrade (the upgrade may not be wanted or needed), and (iii) supplemental costs for support services that are traditionally "out of scope," but regularly needed by licensees, such as support for customizations, performance, and interoperability.

5.      By contrast, Rimini's aftermarket support program includes these traditionally "out of scope" support services at no extra charge, provides ultra-responsive 24 x 7 support with 15-minute emergency response guarantees, and offers its clients dedicated, named engineers with an average of 15 years of experience—all at around 50% of the annual support fees demanded by enterprise software vendors.  By using Rimini for support, enterprise software licensees can save up to 90% on their total operating costs over a decade, and they receive a highly responsive support model where clients on average rate their satisfaction with solving cases at more than 4.8 out of 5.0 (where 5.0 is "excellent"), compared to remaining on the software vendor's expensive and unresponsive annual support program and model.

6.      Rimini initially offered aftermarket services for Oracle's Siebel software product, and later expanded its offerings to include support for Oracle's PeopleSoft, JD Edwards, Database, E-Business Suite, and other software products.  To date, hundreds of Oracle software licensees have enjoyed and successfully utilized Rimini support services.

7.      Rimini's success has made it the leading global provider of independent aftermarket enterprise software support services for Oracle software products.  And Rimini is poised for even greater growth.

8.      Rimini's success, however, has also made it a target.  Rimini's offering of independent aftermarket support for Oracle software products, and the decision of Oracle licensees to purchase Rimini's services, pose a direct competitive threat to Oracle, the world's

Gibson, Dunn & Crutcher LLP

largest enterprise software company, and the high-margin support contracts that bring it billions of dollars every year.

9.     This action arises from just the latest chapter in Oracle's attempt to slow Rimini's growth and protect Oracle's inflated profits.  Oracle's harassment and anticompetitive tactics to stave off competition from Rimini began soon after Rimini's inception.  Indeed, within days following Rimini's announced service offering for Oracle's Siebel software in 2005, Oracle sent a threatening letter to Rimini, and such threatening and hostile letters continued from 2005 to 2009.  During this same period, Oracle refused each and every one of Rimini's offers to meet "anywhere, any time" to attempt a resolution of any Oracle concerns.

10.     In addition to its threatening letters, Oracle took a number of anticompetitive steps designed to make it more difficult and costly for independent aftermarket support providers to compete and service their Oracle licensee clients.  For example, in 2007, Oracle changed its website terms of use to preclude third-party support providers like Rimini from using automated tools to assist clients in downloading the potentially thousands of software support files from Oracle's website to which the clients were entitled and had paid Oracle for in full, requiring instead that substantial additional time and labor resources be expended to download the same (client-entitled and fully-paid-for) files manually.

11.     Despite Oracle's anticompetitive conduct between 2005 and 2009, licensees continued to turn to Rimini in record numbers to escape Oracle's punitive business practices, unresponsive service, and costly support model.  So, on January 25, 2010, Oracle sued Rimini for copyright infringement (the "*Rimini I*" case) and 11 other causes of action for alleged business misconduct.

12.     On January 28, 2010, three days after Oracle filed its complaint, Oracle's then-Executive Vice President of Customer Services, Juergen Rottler, was quoted in an article threatening third parties that dare compete with Oracle for aftermarket service of Oracle's products, stating, "***We believe we should be the ones to support our customers, . . . If you're a third party support provider offering multivendor support, we're coming.  We're coming.***"

13.     Rimini did not believe it was infringing any Oracle copyrights, and had no interest in infringing Oracle's copyrights or engaging in any wrongful conduct.  After years of litigation, Rimini was found liable for infringing specific Oracle copyrights based on its use of certain legacy support processes.  The jury specifically found that Rimini did not "willfully" infringe any of Oracle's copyrights, and instead found that Rimini's infringement was "innocent" (meaning that Rimini "was not aware that its acts constituted infringement" and "had no reason to believe that its acts constituted infringement").  Rimini was also found liable for continuing to use automated tools to download files from Oracle's websites for a brief period after Oracle changed its website terms of use to prohibit the use of such tools.

14.     The jury rejected Oracle's claim that Mr. Ravin was vicariously or personally liable for any of the innocent infringement, rejected Oracle's damages claim of $249 million, and instead awarded only $50 million, which included a Fair Market Value License for the use of Oracle's copyrighted works.  Further, the jury found that Oracle suffered no lost profits as a result of the "innocent" infringement, it rejected all of Oracle's claims for tortious interference, and it refused to award Oracle punitive damages.  In the end, Oracle withdrew or lost 9 out of the 12 claims it pursued aggressively against Rimini for years.

15.     Oracle did not publicize these findings by the jury, and instead mounted a campaign to misrepresent to Rimini's clients and prospective clients the results of the litigation and the nature of Rimini's support services.

16.     While Rimini respectfully disagrees with the Court's findings, it has complied with the support process changes required by the Court, has paid the judgment to Oracle in full, and is pursuing an appeal of the judgment with the Ninth Circuit Court of Appeals.

17.     Since the *Rimini I* trial ended in October 2015, Rimini's growth has accelerated, it has launched support for additional Oracle product lines, and it continues to expand its operations.  But, undoubtedly in response to Rimini's continued growth and success, Oracle has expanded its efforts to interfere with Rimini's client relationships.

18.     Despite the modifications Rimini has made to its processes to ensure compliance with the Court's orders in *Rimini I* (pending appeal) and with Oracle's licenses, and although

Gibson, Dunn &
Crutcher LLP

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Oracle's most senior executives have conceded publicly and under oath, as they must, that Oracle licensees are free to use third parties instead of Oracle for their aftermarket support needs (or even "self-support" without any outside assistance), Oracle clearly wants to keep potential competitors and Oracle licensees guessing about how to comply with Oracle's complex licensing rules.  To this day, after a decade of harassment and litigation, Oracle still refuses to tell its licensees what practices it views as proper.  This game-playing should stop.  Consumers have spoken, and they want the ability to freely, without harassment or threat, exercise their legal right to choose an alternative aftermarket support provider instead of the software vendor's offering.  Oracle should stop interfering with its licensees' rights and with legal, open market competition, and choice.

19.     Rimini wants certainty, and has thus brought this action seeking a declaration that its current processes do not infringe Oracle's copyrights.

20.     Rimini also wants a level, fair market playing field.  Thus, Rimini brings this further action to put a stop to Oracle's deceptive and anticompetitive conduct and practices that are designed to slow Rimini's growth and foreclose competition in aftermarket support for Oracle's software products.

21.     Oracle says that it invites fair and open competition, but its actions prove otherwise.  Indeed, there is overwhelming evidence that Oracle has orchestrated and implemented a scheme to disparage Rimini and its services with false and misleading statements to Rimini's current and prospective clients.  For example, Oracle knows that Rimini and other third parties may legally provide support for Oracle software, and that Oracle licensees may legally purchase third-party support.  As Oracle's own co-CEO testified under oath, "***customers are free to use someone other than Oracle for their maintenance and support***" and "***[i]t is the customer's choice***."  (Emphasis added.)  But privately, Oracle tells customers, ███████████████████████████████████████████████████████████████
███████████████████████████████  This is a false statement, plain and simple, and Oracle knows it.  Oracle also makes numerous other false and deceptive statements regarding Rimini's services.  These statements include that ███████████████████████████████████████

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  █████████████████████, among many other false and deceptive statements.  Oracle makes

4  these false statements to try to interfere with and slow Rimini's growth and foreclose

5  competition in aftermarket service for Oracle's software products.

6       22.      After engaging in these deceptive and anticompetitive practices for years, Oracle

7  recently took an unprecedented step in its campaign to foreclose competition for aftermarket

8  software support and interfere with Rimini's existing and prospective economic relationships.

9  On January 17, 2017, Oracle sent Rimini a letter providing Rimini 60 days' notice of Oracle's

10  intent to "terminate and revoke any and all permissions, licenses and rights that [Rimini] has

11  been granted to access Oracle's support websites." ███████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  █████████████████████████████████ Despite being fully

16  aware that Rimini was offering those services to its clients for more than a decade, and despite

17  having brought dozens of claims against Rimini in litigation since 2010, Oracle never claimed,

18  until it sent its letter, that it was improper for its customers to use Rimini to provide these

19  services.  Oracle's sudden and baseless notice of revocation of Rimini's access rights is a brazen

20  anticompetitive and tortious act, and it will have direct and harmful effects on clients and the

21  competitive market.

22       23.      Oracle's conduct constitutes intentional interference with Rimini's contractual

23  relations, intentional interference with Rimini's prospective economic advantage, and it

24  violates the Nevada Deceptive Trade Practices Act, the Lanham Act, and California's Unfair

25  Competition Law.  Further, Rimini seeks a declaration that Oracle's notice of revocation of

26  Rimini's access to Oracle's support websites constitutes copyright misuse, and that Rimini's

27  continued access to those websites would not constitute hacking under the federal, California,

28  or Nevada anti-hacking laws.

**PARTIES**

24.     Plaintiff Rimini is a Nevada corporation, with its headquarters in Las Vegas.

25.     Defendant Oracle International Corporation is a California corporation, with its principal place of business in Redwood City, California.  Oracle International Corporation is the owner or exclusive licensee of the copyrights at issue in this action.

26.     Defendant Oracle America, Inc. is a Delaware corporation, with its principal place of business in Redwood City, California.  Oracle America, Inc. competes with Rimini in providing aftermarket software support services to enterprises that purchase Oracle software.

**JURISDICTION AND VENUE**

27.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 over the first, second, third, and seventh causes of action.  The first cause of action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  The second cause of action arises, in part, under the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*, and is brought pursuant to the Declaratory Judgment Act.  The third cause of action arises under the federal common law relating to copyright misuse, and is brought pursuant to the Declaratory Judgment Act.  The seventh cause of action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

28.     This Court has supplemental subject matter jurisdiction over the state law claims asserted in the second, fourth, fifth, sixth, and eighth causes of action under 28 U.S.C. § 1367, because these claims are so related to Rimini's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

29.     This Court also has original subject matter jurisdiction over the state law claims under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.

30.     Rimini is informed and believes, and upon such information and belief alleges, that Oracle International Corporation and Oracle America, Inc. have systematically and continuously availed themselves of the privilege of doing business in Nevada to exploit the copyrights at issue in this action.  These copyrights are currently being asserted against Rimini

Gibson, Dunn &
Crutcher LLP

in *Rimini I*, which Oracle International Corporation and Oracle America, Inc. themselves brought in this District.  Oracle International Corporation and Oracle America, Inc. have also asserted counterclaims in this very action.   Oracle International Corporation and Oracle America, Inc. therefore have sufficient contacts with this District in connection with the facts alleged in this action.  Oracle International Corporation and Oracle America, Inc. are thus subject to personal jurisdiction in this Court.

31.    Venue in this District is appropriate, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the dispute occurred in this District and because the Court has personal jurisdiction over Oracle International Corporation and Oracle America, Inc. as alleged throughout this Complaint.

32.    Assignment to the Las Vegas division is proper under Civil Local Rule IA8-1(a) because this action arises, in part, in Las Vegas, where Rimini is headquartered and where *Rimini I* was litigated.

## **FACTUAL ALLEGATIONS**

33.    For more than a decade, Oracle licensees have clamored for an alternative choice to the never-ending cycle of forced software upgrades and updates, and the exorbitant annual fees charged by Oracle for its aftermarket support.  Rimini has increasingly become a preferred alternative to Oracle's support offering, with its client-focused, ultra-responsive support service and significant savings.

34.    But Rimini's success has also caused it to become a target.  Indeed, from soon after Rimini's inception to the present, Oracle has sought to curb Rimini's growth by any means possible in order to protect its multi-billion-dollar cash cow of high-margin support contracts.

35.    Oracle is currently engaging in an anticompetitive and deceptive scheme to broadly disseminate false and misleading statements throughout Rimini's current and prospective client base with the intent of causing fear, uncertainty, and doubt regarding Rimini's services.  Moreover, on January 17, 2017, Oracle took the unprecedented step of providing notice that it intended to revoke Rimini's access to Oracle's software support websites, which Rimini has been accessing on behalf of its clients to provide aftermarket

software support services for more than a decade.  This scheme has caused, and continues to cause, damage to Rimini's business.

36.     Upon information and belief, this scheme has been, and continues to be, orchestrated and led by Oracle management in the United States, including, without limitation, at Oracle's headquarters in California.

**A.     Oracle's False and Misleading Statements Regarding Rimini's Services**

37.     As part of Oracle's efforts to slow Rimini's growth, Oracle has disseminated numerous false and misleading statements regarding Rimini's services throughout Rimini's current and prospective client base in an effort to persuade those current and prospective clients to terminate their relationships with Rimini.

38.     Customers shopping for enterprise software want to ensure that after purchasing their software license, and spending significant time and resources implementing and integrating that software into vital aspects of their businesses, they will have the option of selecting and using an alternative to the enterprise software vendor's support offering and model.  Accordingly, to induce enterprises to purchase its software, Oracle states publicly that its licensees are free to support and maintain their software themselves ("self-support") or through third parties like Rimini, and █████████████████████████

39.     For example, Oracle's co-CEO testified under oath in September 2015 that Oracle's "customers are free to use someone other than Oracle for their maintenance and support" and that "[i]t is the customer's choice" of whether to use Oracle or a third party for such maintenance and support.  Indeed, Oracle's publicly stated philosophy with regard to such competition is "bring it on" because "competition makes you better" and "keeps you very, very sharp."  Oracle's Senior Vice President of Alliances and Channels for Europe, Middle East, and Asia, David Callaghan, has publicly echoed these statements about customer choice.  In an article published in August 2016 for which he was asked about competition from "[t]hird-party support providers," Mr. Callaghan stated, "In a free market there will always be competition. We respect our customers, and customers have a choice. . . .  It means organizations like ours can never and should never be complacent.  You have to earn the right."

40.     Oracle has also stated publicly that its software licenses permit third-party support.  Oracle's Senior Vice President of Global Practices, Richard Allison, confirmed in sworn trial testimony that Oracle's licenses permit third-party support providers like Rimini to "dial in remotely to the customer's facility and access and use the software that way." ▮

41.     While Oracle publicly states that it respects "customer choice" and that third-party support is a viable option, internal documents written by Oracle's senior management, along with Oracle's private correspondence with its licensees, tell a vastly different story.

42.

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████   These statements are false, as Oracle well knows.  Upon information and belief, Oracle

7 has made similar false and misleading statements about ████████████████████████

8 █████████████████████████████████ to other Rimini current and prospective

9 clients.

10        43.    As set forth in detail below, Oracle's latest anticompetitive maneuver further

11 underscores the disingenuous nature of Oracle's public statements that it accepts and welcomes

12 third-party support.  On January 17, 2017, Oracle sent Rimini a letter providing Rimini 60 days'

13 notice of Oracle's intent to revoke Rimini's access to Oracle's support websites.  In doing so,

14 Oracle made clear its intent to block every one of its licensees from ██████████████

15 use Rimini to access and download support files from Oracle's websites—services that those

16 licensees want to purchase from Rimini.

17        44.    Oracle has also falsely described to a number of Rimini's current and

18 prospective clients █████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████   ████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ██████████████████████████████████ Oracle knew or should have known that Rimini

28 offers its clients complex and sophisticated software application, repository, and customization

Gibson, Dunn &
Crutcher LLP

1  fixes, and patent-pending tax, legal, and regulatory research technology, among many other

2  services, that ████████████████████████████████████████████████████████

3  ███████

4        45.    Another example of Oracle's false and misleading representations about ██

5  ██████████████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████████████████████

8  ██████████████████████████████████████████████████████████████████

9  ██████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████████

13  ███████  ███████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████  This too is

18  false. ████████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████████████

20  ████████████████████  Upon information and belief, Oracle has used ████████████

21  ███████████████████████████  as a template to disseminate such false and

22  misleading representations to a number of Rimini's prospective and current clients.

23        46.    In a similar vein, ████████████████████████████████

24  ██████████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████████████████████████████

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

1   ███████████████████████████████████████████████

2   ███████████████████████████████████████████████

3   ███████████████████████████████████████████████

4   ████   Upon information and belief, Oracle has used this and similar ██████████

5   during its discussions with Rimini's current and prospective clients to disseminate such

6   misleading representations, and it continues to do so.

7        47.   ██████████████████████████████████████

8   ██████   ████████████████████████████████████████

9   ███████████████████████████████████████████████

10  ███████████████████████████████████████████████

11  ███████████████████████████████████████████████

12  ███████████████████████████████████████████████

13  ████████████   █████████████████████████████████

14  ███████████████████████████████████████████████

15  ███████████████████████████████████████████████

16  ███████████████████████████████████████████████

17  ███████████████████████████████████████████████

18  ███████████████████████████████████████████████

19  ███████████████████████████████████████████████

20  ███████████████████████████████████████████████

21  ███████████████████████████████   Upon information and belief,

22  Oracle representatives have used this and similar ██████████ to disseminate false and

23  misleading representations regarding █████████████   to Rimini's prospective

24  and current client base.

25       48.   Oracle has also made the false statement to its licensees that ██████████

26  ███████████████████████████████████████████████

27  ███████████████████████████████████████████████

28  ███████████████████████████████████████████████

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████ This statement is false, and Oracle knew or should have known of its falsity.

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ███████████████████ Upon information and belief, Oracle has used, and continues to

11 use, these and similar ███████████ to dissuade Rimini's current and prospective client base

12 from establishing or continuing their relationships with Rimini.

13     49.    Oracle has also falsely represented to Rimini's prospective and existing clients

14 that █████████████████████████████████████████████

15 ██████████████████████████

16     50.    ████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

1    █████████████████████████████  Despite that capacity, Oracle

2 continues to make these false statements, and has now purported to revoke Rimini's access to

3 Oracle's websites based in part on the groundless insinuation ████████████████████

4 ███████████████████████████████████████████████████

5        51.    Oracle has also falsely represented to Rimini's clients that ████████████

6 █████████████████████████  ████████████████████████

7 ███████████████████████████████████████████████████

8 ███████████████████████████████████████████████████

9 ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ███████████████████████████████████████████████████

12 ███████████████████████████████████████████████████

13 ███████████████████████████████████████████████████

14 Upon information and belief, Oracle has disseminated, and continues to disseminate, similar

15 false statements to prospective and current Rimini clients.

16        52.    And Oracle continues to tell Rimini's client base that █████████████

17 ███████████████████████████████████████████████████

18 ███████████████████████████████████████████████████

19 ███████████████████████████████████████████████████

20 ███████████████████████████████████████████████████

21 ███████████████████████████████████████████████████

22 ███████████████████████████████████████████████████

23 █████████████████  Thus, upon information and belief, Oracle has made this and similar

24 statements to Rimini's current and prospective clients that ████████████████████

25 ██████████████████████████

26        53.    Upon information and belief, Oracle has disseminated other false, misleading,

27 and disparaging statements regarding Rimini's services and business model throughout

28 Rimini's current and prospective client base that are similar to the statements alleged herein.

Therefore, Oracle's false, misleading, and disparaging statements discussed throughout this Complaint are exemplary only, and other instances of Oracle's misconduct will be proven at trial.  Further, upon information and belief, the examples discussed herein are not isolated instances but reflect a calculated scheme by Oracle to interfere with Rimini's client relationships.

54.     Oracle knew, or should have known, that the above statements by Oracle to Rimini's current and prospective clients are false and misleading because of Oracle's intimate familiarity with Rimini's services as a result of, among other things, years of litigation and discovery, including production of millions of pages of documents and data with details about Rimini's processes.

55.     The apparent intent of Oracle's various false, misleading, and disparaging statements regarding Rimini's services is to cause fear and uncertainty among Rimini's client base in the hope that these deceptive statements will slow Rimini's rapid growth by dissuading licensees that are considering contracting with Rimini from doing so, and induce licensees that have already chosen Rimini to return to Oracle for support.  Indeed, Oracle contacts its licensees soon after receiving information that the licensee is considering choosing Rimini or that the licensee has in fact signed a contract with Rimini.  For example, ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████

56.     While Rimini has continued to focus on providing excellent and responsive support at the best possible value for its clients, Oracle's conduct has had its intended effect on some Rimini clients and prospective clients.  ████████████████████████ ████████████████████████████████████████████████████

████████     Indeed, but for Oracle's interference and as a direct result of Oracle's anticompetitive and coercive conduct, some prospective clients that would have selected Rimini for their aftermarket support services decided against doing so, some current Rimini clients

decided not to expand their relationships with Rimini, and some other Rimini clients terminated their relationships with Rimini.  Upon information and belief, such clients include, for example, ███████████████████████████████████████████████████████████████, a construction materials manufacturer, and ████████████████████████.  Other Rimini clients have decided against expanding their existing relationship with Rimini because of Oracle's conduct, including, upon information and belief, ████████████████████.

**B.  Oracle's Selective Threats of License Audits Targeting Rimini's Clients**

57.  Oracle is also using the threat of software license audits to interfere with Rimini's client relationships.  While Oracle is permitted to audit its customers' licenses under its license agreements, Oracle uses its audit power to improperly harass Rimini's clients and interfere with Rimini's business.  Indeed, as one former Oracle licensee recently stated publicly, Oracle is "notorious around the globe for their predatory audit practices."  The licensee continued, "Oracle and its related entities utilize the limited audit rights granted to them under their software license agreements as a tool to improperly drive further sales of Oracle software products."

58.  In letters to Rimini client ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Gibson, Dunn & Crutcher LLP

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

1

2          ███████████████          Upon information and belief, other clients have terminated their contracts with

3    Rimini or opted not to renew because of Oracle's threats and actions.

4    **C.      Oracle's Attempt to Foreclose Competition by Revoking Rimini's Access to**

5            **Oracle's Websites**

6          59.    Less than two weeks after the United States Court of Appeals for the Ninth

7    Circuit entered an order staying the permanent injunction entered by this Court in *Rimini I*,

8    Oracle's outside counsel in this case informed Rimini's counsel, for the first time, that it would

9    be filing a claim for declaratory relief.   Oracle's counsel did not disclose the basis for

10   declaratory relief on the ground that it was work product.

11         60.    On January 17, 2017, Oracle sent Rimini a cease and desist letter stating that, in

12   60 days, Oracle intended to revoke Rimini's access to the Oracle websites where Oracle makes

13   its updates, patches, and other support materials available for licensees of Oracle enterprise

14   software        products,         including         support.oracle.com,        edelivery.oracle.com,

15   updatecenter.oracle.com, and "any Oracle Single Sign On account" (collectively, the "Oracle

16   Websites").   This retaliatory action was undertaken with the clear intent to interfere with and

17   harm Rimini's prospective and current contractual relationships.

18         61.    Also on January 17, 2017, Oracle filed amended counterclaims in this litigation

19   and included three new claims for declaratory relief.   Recognizing that its conduct is potentially

20   unlawful, Oracle has requested that the Court hold that Oracle's purported revocation of

21   Rimini's access does not constitute intentional interference with Rimini's contractual

22   relationships, interference with Rimini's expectation of prospective economic advantage, or an

23   unfair business practice under California Business and Professions Code § 17200.

24         62.    Oracle's support customers pay ██████████████████████████

25   ████—to obtain technical support services from Oracle for the enterprise software they license.

26   By signing up, these customers obtain the right to access, download, and use the bug fixes,

27   patches, and updates that Oracle makes available on the Oracle Websites for its enterprise

28   software.   But when a customer decides to transition from Oracle to Rimini, they lose access to

the Oracle Websites on the day their support contract with Oracle expires.  Thus, if these customers do not download copies of the support files they want before their Oracle support contract lapses, it is Oracle's policy that the customer will lose access to the software they have paid for the right to possess and use.

63.   These customers naturally want to retain the support files they are entitled to, but doing so is a complicated and time-consuming task.  The Oracle Websites contain millions of software files, and Oracle provides no meaningful assistance to its customers to help them determine which of the files they are entitled to or will be useful.  Because Rimini has more than 10 years of experience helping clients navigate the Oracle Websites, customers transitioning off Oracle support routinely engage Rimini to assist them in setting the scope and identity of the support files they are entitled to, and then appoint Rimini as their agent to execute downloads on their behalf.

64.   Rimini has been offering these services to its clients for over a decade, with Oracle's full knowledge.  Oracle does not dispute that its customers are permitted to hire third parties like Rimini to perform such services, or that these third parties are entitled to download copies of support materials from the Oracle Websites. █████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████

65.   If Oracle strips its customers ████████████ select and use Rimini as their authorized third party to access the Oracle Websites and download support materials, the customers face the prospect of failing to obtain these valuable materials for which they have paid Oracle ████████████.  This makes it more burdensome for customers to transition off Oracle support, and serves as a strong disincentive against switching from Oracle to Rimini as a competitive aftermarket service.

Gibson, Dunn & Crutcher LLP

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

66.     Oracle's actions are designed to completely foreclose its customers from using "a competing company"—Rimini, Oracle's largest competitor—"to access [Oracle's] support materials," a result that this Court made clear would constitute copyright misuse during *Rimini I. See Rimini I*, ECF No. 111 at 8.

67.     Oracle's proffered bases for suddenly terminating Rimini's lawful, contractually supported access are entirely pretextual.  In reality, Oracle's transparent and anticompetitive motive is especially clear given Rimini's more than 10 years of access to the Oracle Websites. Moreover, Oracle's conduct—contrary to its allegations in its Third Amended Counterclaims—constitutes tortious interference with Rimini's contractual and economic relations, an unfair business practice under § 17200, and blatant copyright misuse.

68.     Although Rimini vehemently disputes that Oracle has the right to unilaterally revoke the access rights granted to Rimini by Oracle's and Rimini's shared customers, Rimini will refrain from accessing the Oracle Websites—to its clients' detriment—until the illegitimacy of Oracle's conduct has been adjudicated or is otherwise determined or resolved.

**1.     Oracle's Reasons for Attempting to Revoke Rimini's Access Are Pretext**

69.     In both its letter and its counterclaims, Oracle offers a number of purported justifications for attempting to revoke Rimini's access, but none of Oracle's reasons withstand even a cursory review.

70.     For example, Oracle claims that revocation is proper because Rimini has conducted "massive downloads" at rates significantly higher than other Oracle customers.  But the fact that Rimini, which is in the business of providing downloading support to its clients, engages in substantially more downloading activity than the average Oracle customer accessing the Oracle Websites is no surprise.  Nor is it unusual, as Oracle alleges, that Rimini downloads a broad scope of materials (including files for different software platforms and files in different languages) on behalf of clients who are planning to leave Oracle support.  Rimini's clients often ask Rimini to download a comprehensive set of the support files they have paid for and are entitled to receive, in light of the fact that the clients will lose access to these files when their support agreement with Oracle expires.  In other words, Oracle's statistics are a red herring—

they confirm only that Rimini has a long and growing list of clients that want the downloading support ███████████████████████████, and the statistics certainly do not support any inference that Rimini is engaging in misconduct.

71.     Notably, Oracle does not identify any harm to its websites based on Rimini's purportedly "massive" downloads.  And, even more tellingly, Oracle does not dispute that the clients for whom Rimini performed these downloads could permissibly have downloaded precisely the same volume of files themselves.  In reality, Oracle's objection is not to the download volumes, but to the fact that Rimini—Oracle's main competitor in the aftermarket for software support—is lawfully performing those downloads.

72.     Oracle also refers to Rimini's "improper computer access" at issue in *Rimini I*.  But, as Oracle well knows, Rimini Street stopped using automated download tools voluntarily *before* Oracle even filed suit in *Rimini I.*  There has been no adjudication that Rimini has used any automatic tools on the Oracle Websites since that time.  To the contrary, Rimini has repeatedly informed Oracle, via letters and court filings, that Rimini has not engaged in any automatic downloading.  Further, upon information and belief, ████████████████ ████████████████████████████████████████████████████████  Thus, Oracle's insinuations that Rimini has used prohibited automated download tools lack any factual basis.

73.     Oracle also seeks to justify its purported revocation by citing to Rimini's "proven infringement" in *Rimini I*, but this too is baseless.  The jury in *Rimini I* unanimously concluded that all adjudicated "infringement" was "innocent."  As instructed by this Court, this finding of "innocent infringement" means that Rimini Street was not "aware" and had "no reason to believe that its acts constituted infringement."  These findings are consistent with Rimini's long-standing position that it has endeavored to provide support consistent with Oracle's license agreements.  Moreover, there has been no adjudication in this case of any infringement by Rimini related to downloading or anything else.  Nor does Oracle's letter explain how Rimini's lawful downloading on behalf of clients constitutes a continuation of

Gibson, Dunn & Crutcher LLP

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Rimini's "proven infringement," or why Oracle suddenly must revoke Rimini's access on this basis, more than a year after the jury verdict in *Rimini I*.

74.     In sum, Oracle has failed to identify a single alleged violation or damage of any kind that would justify its actions.  Devoid of any legitimate basis for revoking Rimini's access, Oracle's motives are clear: it wants to foreclose competition in the aftermarket for software support services.  This is especially apparent when viewed in parallel with Oracle's campaign of fraudulent misrepresentations to Rimini's clients and other conduct designed to instill fear, uncertainty, and doubt about the lawfulness of third-party support, as alleged above.

75.     Indeed, in Oracle's amended counterclaims filed January 17, 2017, Oracle pointedly alleged that in light of "Rimini's recent accusations of unlawful practices against Oracle, Oracle has determined that termination of Rimini's and Ravin's access to and use of Oracle's support websites is necessary to finally bring an end to Rimini's and Ravin's unlawful practices."  Oracle thus has made clear that it has taken this action not for legitimate business reasons but instead to boycott, retaliate against, and harm Rimini for daring to enforce its legal rights and for daring to hold Oracle accountable for its unlawful and anticompetitive conduct.  This is further evidence of Oracle's anticompetitive conduct and intent.

76.     Oracle seeks to justify its illegal conduct by citing its website terms of use, which purportedly give Oracle the right to terminate access to the Oracle Websites "at any time, for any reason." ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████ Moreover, Oracle cannot terminate access to its support websites for an improper purpose, such as to impede legitimate competition, which is exactly what it is doing here.

///

///

Gibson, Dunn &
Crutcher LLP

### 2.   Oracle's Attempted Revocation Also Constitutes Copyright Misuse

77.     In addition to being entirely unjustified, Oracle's conduct constitutes copyright misuse.  Oracle is attempting to leverage its limited copyright power to control competition in the aftermarket for (uncopyrightable) software support services.   Specifically, Oracle's attempted revocation requires Oracle's customers not to use Rimini—Oracle's primary competitor in the aftermarket for software support—for access and downloading services related to those customers' software support materials.

78.     Oracle's conduct indisputably violates the boundaries this Court set in *Rimini I* with respect to copyright misuse.  In *Rimini I*, Rimini alleged a counterclaim for declaratory judgment of copyright misuse, and Oracle moved to dismiss.  In granting Oracle's motion, this Court drew a line in the sand, explaining that Oracle's policies did not constitute copyright misuse because they were "only a limitation on third-party business models and [] *not a restriction on Oracle customers*" and did not "*preclude a customer from using either a competing company* or no company at all *to access its support materials*."   *Rimini I*, ECF No. 111 at 8 (emphasis added).   Oracle has now crossed that line: the effect of Oracle's revocation notice is that customers are now precluded from using Rimini, Oracle's largest competitor, to access Oracle support materials.

79.     Moreover, Oracle is leveraging its copyrights to accomplish the intended revocation.  Oracle claims the right, based on its terms of use, to terminate any party's access to its website "at any time for any reason."  Third Amended Counterclaims at ¶ 47.  Thus, despite the fact that Oracle's customers have paid ███████████████████ for the right to access the Oracle Websites, and despite Oracle's failure to identify *any* harm or violation caused by Rimini's downloading practices, Oracle now contends it can terminate the agency those customers have rightfully granted to Rimini to assist with certain downloading tasks.  Oracle is only able to impose such unfavorable (and anticompetitive) conditions on its customers as a result of its copyright power—if a customer will not acquiesce to Oracle's unfettered discretion to revoke, Oracle can refuse to offer to provide support services (including access to the copyrighted materials on the Oracle Websites).

Gibson, Dunn &
Crutcher LLP

80.     Rimini and Oracle are competitors in the aftermarket (or aftermarkets) for software support.  One service Rimini offers its clients is assistance in accessing the Oracle Websites and downloading support files that the customer has paid Oracle for in full and has a right to obtain, possess, and use.  Clients appoint Rimini as their agent to perform these services.  Oracle's letter claims that Oracle's purported revocation "extends to any permission, license, or right granted or allegedly granted to Rimini by a Rimini customer, Rimini prospective customer, or other third party."  The "Rimini customer[s]" that grant Rimini permission to access the Oracle Websites are also Oracle customers that have paid Oracle for the right to possess and use the support materials located on the Oracle Websites and for the right to access the websites—including by using third parties like Rimini—to obtain those purchased materials.  By attempting to revoke Rimini's access, Oracle is expressly and knowingly prohibiting its customers from using Rimini's services to access and download support materials.  Oracle's conduct therefore forces its customers "not to use a competitor's products" and constitutes copyright misuse.  *See* ECF No. 90 at 6.

81.     As a result of Oracle's conduct, Oracle's customers that are transitioning to Rimini are forced to either download files themselves (and to navigate the Oracle Websites on their own, without Rimini's guidance), try to identify a third-party resource with the knowledge and capacity to navigate the Oracle Websites and perform the downloads, or leave Oracle support without having secured the files they paid for and are entitled to possess and use.  This result does not promote "the broad public availability of the arts nor the public welfare."  *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 705 (9th Cir. 2015) (Wardlaw, J. concurring).  On the contrary, it reduces competition by making it more difficult for customers to leave Oracle support and eliminates customer choice in the aftermarket for software support services.

### 3.     Oracle's Revocation Notice Has Interfered with, and Will Continue to Interfere with, Rimini's Contractual and Prospective Economic Relationships

82.     Oracle's conduct also interferes with Rimini's contractual and economic relationships, and will continue to do so going forward.

83.     While Rimini does not require clients to have software archives, Rimini has entered into contracts with nearly all of its clients, based on client demand, to provide support file downloading services before they leave Oracle support. █████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

84.     Oracle is well aware that Rimini has been contracting with clients to provide such services for the past decade—Rimini and Rimini's clients (in response to third-party subpoenas) have produced hundreds of agreements to Oracle in both *Rimini I* and this litigation containing variations of the above language.  Oracle is also aware that Rimini is continually attempting to enter into new contracts with both current and prospective clients.

85.     Oracle's attempted revocation of Rimini's access to the Oracle Websites is intentional, willful, and designed to interfere with Rimini's contractual and economic relations.  Oracle acted with the knowledge that its actions would cause such interference, and has no privilege or justification for doing so.  And Oracle's attempted revocation has disrupted, and will continue to disrupt, both Rimini's current contracts with clients and Rimini's economic relationships with current and prospective clients.

86.     Indeed, Oracle's revocation notice prevented Rimini from completing downloading services that Rimini was contractually obligated to provide. ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

26

1

2

87.     Moreover, Oracle's conduct has disrupted Rimini's performance of its
contractual downloading obligations by making performance more burdensome. ████████

88.     Oracle's purported revocation has also disrupted Rimini's enjoyment of
economic gain from its existing economic relationships. ████████████████

████████████████ Oracle's conduct has therefore significantly
reduced the economic gain Rimini was reasonably likely to receive from its prospective client
relationships.

89.     Oracle's conduct will also continue to interfere with Rimini's contractual and
economic relationships. ████████████████

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9    90.    Through Oracle's interference with Rimini's contractual and economic

10   relationships, Oracle has also reduced the goodwill associated with Rimini's brand and

11   damaged Rimini's reputation among its current clients and economic relationships.

12       **4.    Oracle's Purported Revocation is Contrary to the Spirit of the Antitrust**

13           **Laws and Harms Competition**

14   91.    Oracle is the largest enterprise software company in the world, and it dominates

15   the aftermarket for software support for its own software products, providing such services to

16   the overwhelming majority of its software customers.  Oracle maintains this dominance despite

17   charging prices ⬛⬛⬛⬛⬛⬛⬛ what Rimini and other third-party support providers

18   charge. ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

19   92.    Oracle seeks to use its market power to foreclose competition in the aftermarket

20   or aftermarkets (including any submarkets) for software support for Oracle enterprise software.

21   Indeed, Oracle has engaged in a campaign to spread fear, uncertainty, and doubt among

22   customers, including through the pervasive use of false statements regarding third-party support

23   for Oracle enterprise software.  Moreover, despite leading its customers to believe at the time

24   they license Oracle enterprise software that they are free to purchase aftermarket support

25   services from third parties, Oracle has erected numerous hurdles to prevent its customers from

26   using third-party support, including ⬛⬛⬛⬛⬛⬛⬛ and prohibiting the use

27   of automated download tools on its websites (which makes it more difficult for clients to

28   download the materials they have paid for prior to leaving Oracle support).

93.     Oracle's purported revocation of Rimini's access to the Oracle Websites is yet another attempt by Oracle to foreclose third-party support in the aftermarket (or aftermarkets) for software support for its enterprise software.  Oracle has been fully aware of Rimini's downloading services for over a decade, and has never taken the position that Rimini could not download support materials on behalf of customers until now.  As alleged above, Oracle's proffered justifications for the revocation are entirely pretextual.  In light of Oracle's long history of assenting to Rimini's provision of these services, and its failure to provide any legitimate basis for suddenly changing course, it is clear that Oracle's true motive is to foreclose competition from Rimini, its largest competitor for software support services.

94.     Oracle's efforts to foreclose competition in the aftermarket (or aftermarkets) for software support violate the policy or spirit of the antitrust laws because the effects of Oracle's conduct are comparable to a violation of those laws, or otherwise significantly threaten or harm competition as described herein.

95.      Rimini and Oracle compete in the relevant aftermarket (or aftermarkets) for software support for Oracle enterprise software.  Rimini and Oracle compete for customers in California and throughout the United States.

96.     The aftermarket (or aftermarkets) for software support are separate from, albeit derivative of, the primary market for Oracle's enterprise software.  Indeed, but for the demand for Oracle's enterprise software, there would be no demand for support services for that software. ██████████████████████████████████████████████ ███████████████████████████████████████████ It is clear that support for Oracle's enterprise software is part of a separate, albeit derivative, aftermarket (or aftermarkets) for software support.

97.     ███████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████ In fact, Oracle leads its customers to believe, and customers reasonably believe, that they will be free to shop in the aftermarket (or aftermarkets) for software support despite their choice in the primary market.  Further, at the time Oracle's customers entered into

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn & Crutcher LLP

agreements with Oracle, it was impossible for them to know that Oracle would later alter its practices in ways designed to deter competition for aftermarket software support, including Oracle's sudden and baseless termination of the customers' right to designate Rimini as a downloading support service provider.  Accordingly, customers' selection of Oracle software is not the functional equivalent of a contractual commitment to permit Oracle's anticompetitive conduct in the aftermarket (or aftermarkets) for software support.

98.     Oracle's customers generally pay ███████ for Oracle's software and expend significant resources implementing and customizing that software to fit the needs of their business.  Enterprise software customers often need to purchase necessary hardware to install the software, hire employees to maintain the software, and retain consultants to customize and integrate the software with their computer systems to fully exploit the features of the software.  These investments may not necessarily be re-deployed easily to switch to another vendor's enterprise software.  Switching to another vendor's software may entail substantial expense in the form of acquisition costs, implementation costs, customization costs, and the cost of re-training of employees.  Finally, comparative life-cycle pricing is difficult given the numerous variable costs involved, which all can vary as a company expands or downsizes.  Customers make their investments believing, based on Oracle's own statements, that they will be permitted to obtain Oracle's software and later, if they choose, transition from Oracle to a third-party support provider like Rimini to provide support for the software.  But now that these customers are locked in to Oracle software—having built their business infrastructure around the software and invested ████████████—Oracle seeks to capitalize on their vulnerability by changing its policies and otherwise erecting barriers to prevent its customers from transitioning to third-party support.

99.     Oracle's conduct is designed to, and will, reduce competition and customer choice in the aftermarket (or aftermarkets) for software support.  As a result of Oracle's unprecedented actions, customers can no longer use Rimini to download software support files they have already paid for and are entitled to obtain, possess, and use as they transition to a third-party support provider.  These customers thus must choose between conducting their own

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

downloading (and attempting to navigate the byzantine Oracle Websites on their own), trying to identify a third-party resource with the knowledge and capacity to navigate the Oracle Websites and perform the downloads, or leaving Oracle support without the files for which they paid ███████ fees.  This serves as a barrier to deter customers from leaving Oracle support, and, for those customers that elect to do so anyway, makes transitioning more burdensome and inefficient.  Such conduct penalizes customers that deal with Oracle's competitors and further deters customers from switching from Oracle aftermarket support to other competitors, thus compelling customers to deal with Oracle exclusively on a de facto basis.

100.    Oracle's attempted revocation also violates the antitrust laws and harms competition because Oracle is wrongfully seeking to leverage its copyright monopoly over its enterprise software and support materials to control the aftermarket (or aftermarkets) for uncopyrightable software support services.  A copyright owner's attempt "to impermissibly expand his lawful protection from competition contravenes not only the policy of the copyright laws, but also the central purpose of the antitrust laws . . . to preserve competition." *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699 (9th Cir. 2015) (Wardlaw, J. concurring).

101.    Oracle's message to its customers is clear: if they do not want to lose access to support materials they have paid ██████████████ for, these customers must stay with Oracle aftermarket support in perpetuity.   Oracle's aggressive tactics create a strong disincentive for its customers to engage Oracle's competitors like Rimini, and further enable Oracle to maintain its dominant market position and ████████████████████ .

## FIRST CAUSE OF ACTION

### (Declaration of Non-Infringement of Copyrights)

### (Against Oracle International Corporation)

102.    Rimini incorporates by reference and realleges Paragraphs 1 through 101 as if set forth in full herein.

103.    Rimini seeks a declaratory judgment under (i) the United States Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act"), and (ii) 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act").  There presently exists a justiciable controversy regarding

Rimini's right to provide software support free of any allegation by Oracle that such conduct constitutes an infringement of Oracle's copyrights.

104.    Since at least 2010, Oracle has publicly accused Rimini of violating its software copyrights.  On January 25, 2010, Oracle filed a Complaint against Rimini in the District of Nevada alleging, *inter alia*, infringement of copyrights that purportedly covered "numerous versions of Oracle software, including the updates, patches and fixes incorporated in each relevant version, service packs of Oracle updates, patches and fixes, and individual exemplar Software and Support Materials, including certain Oracle knowledge management solutions and certain Oracle updates, patches and fixes." *Rimini I*, ECF No. 1 at 20–21.

105.    In its answer to Oracle's complaint, Rimini denied Oracle's copyright infringement allegations and asserted that the license agreements of its clients authorized its activities with respect to the asserted copyrights.  *Rimini I*, ECF No. 30 at 25.

106.    On March 30, 2012, Oracle filed its First Motion for Partial Summary Judgment of Infringement on eight copyright registrations relating to Rimini's provision of services for four of its clients.  *Rimini I*, ECF Nos. 237, 246.  In response, Rimini argued that its activities were authorized by Oracle's software licenses.  *See Rimini I*, ECF No. 266.

107.    The Court granted in part and denied in part Oracle's First Motion for Partial Summary Judgment in part on February 13, 2014.  The Court found that Rimini had infringed six of Oracle's PeopleSoft copyrights when providing services to two of Rimini's PeopleSoft clients.  *Rimini I*, ECF No. 474.

108.    While Rimini respectfully disagrees with the Court's February 13, 2014 Order, Rimini modified its services to discontinue use of the processes the Court found to be infringing. By July 31, 2014, Rimini had completed the modifications to its processes to comply with the Court's February 13, 2014 Order.

109.    Notwithstanding Rimini's changed processes to conform with the Court's order, and without specifying what specific processes are unlawful or how support could lawfully be provided as contemplated by its license agreements, Oracle has continued to assert that Rimini's new processes infringe Oracle's copyrights at case management conferences (*see Rimini I*, ECF

Gibson, Dunn & Crutcher LLP

No. 490) and in post-trial briefing in *Rimini I*. Yet, in *Rimini I*, Oracle also repeatedly and successfully resisted including any adjudication of whether Rimini's current processes are infringing in the trial in *Rimini I*; that case addressed only Rimini's legacy processes.

110.    The unanimous jury in *Rimini I* concluded that Rimini's infringement of Oracle's copyrights using its former processes was "innocent," meaning Rimini "was not aware that its acts constituted infringement" and "had no reason to believe that its acts constituted infringement."

111.    On February 17, 2015, Oracle filed counterclaims in this action alleging that Rimini's current software support processes infringe Oracle's PeopleSoft copyrights.  ECF No. 21.  Oracle also filed amended counterclaims in this action on February 28, 2016, and on October 24, 2016, with additional allegations related to Oracle's PeopleSoft, JD Edwards, Siebel, Oracle Database, and E-Business Suite copyrights.  ECF Nos. 173, 306.

112.    Oracle's statements and actions make clear that a credible threat of immediate litigation exists for copyright infringement against Rimini.  Indeed, such litigation has been ongoing for more than 18 months.  Therefore, there presently exists a justiciable controversy regarding Rimini's right to provide software support free of any allegation by Oracle that such conduct constitutes an infringement of Oracle's copyrights.  The parties thus have adverse legal interests over a dispute of sufficient reality that is capable of conclusive resolution through a declaratory judgment.

113.    In light of the modifications Rimini has made to its processes for providing support for Oracle's software in compliance with this Court's February 2014 Order in *Rimini I*, Rimini requests a judgment declaring that, since at least July 31, 2014, Rimini has not infringed Oracle's software copyrights identified, dated, and numbered below:

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleTools 7.5 | November 20, 1998 | TX 4-792-578 |
| PeopleSoft 7.0 financials, distribution & manufacturing 7.0 | December 15, 1998 | TX 4-792-576 |

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleSoft HRMS 7.0 | December 15, 1998 | TX 4-792-577 |
| PeopleSoft HRMS 7.5 | December 15, 1998 | TX 4-792-575 |
| PeopleSoft Financials, Distribution & Manufacturing 7.5 | December 15, 1998 | TX 4-792-574 |
| PeopleTools 8.10 | September 5, 2000 | TX 5-266-221 |
| PeopleSoft Financials and Supply Chain Management (FIN/SCM) 8.0 | November 20, 2000 | TX 5-291-439 |
| PeopleSoft HRMS 8.0 | November 20, 2000 | TX 5-291-440 |
| PeopleSoft 8 HRMS PeopleBooks | November 28, 2000 | TX 5-311-638 |
| PeopleSoft 8 Financials and Supply Chain Management PeopleBooks | November 28, 2000 | TX 5-311-637 |
| PeopleSoft 8 HRMS SP1 | March 26, 2001 | TX 5-501-312 |
| PeopleSoft 8 FIN/SCM SP1 | March 26, 2001 | TX 5-501-313 |
| PeopleSoft 8 EPM SP3 | March 30, 2001 | TX 5-345-698 |
| PeopleSoft 8 Customer Relationship Management PeopleBooks | September 27, 2001 | TX 5-456-778 |
| PeopleSoft 8 Promotions Management, Collaborative Supply Management, eRFQ, Supplier Connection, and Supply Chain Portal Pack PeopleBooks | September 27, 2001 | TX 5-456-781 |
| PeopleSoft 8 Customer Relationship Management | September 27, 2001 | TX 5-456-777 |
| PeopleSoft 8 Financials and Supply Chain Management:  Service Pack 2 | September 27, 2001 | TX 5-456-780 |
| PeopleSoft 8 FIN/SCM SPI PeopleBooks | October 19, 2001 | TX 5-595-355 |
| PeopleSoft 8 Student Administration Solutions PeopleBooks | November 30, 2001 | TX 5-431-290 |
| PeopleSoft 8.3 HRMS PeopleBooks | February 1, 2002 | TX 5-469-031 |
| PeopleSoft 8.3 HRMS | February 1, 2002 | TX 5-469-032 |

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleSoft 8.3 Enterprise Performance Management PeopleBooks | March 11, 2002 | TX 5-485-842 |
| PeopleSoft 8.3 Enterprise Performance Management | March 11, 2002 | TX 5-485-839 |
| PeopleSoft 8.1 Customer Relationship Management PeopleBooks | March 20, 2002 | TX 5-733-209 |
| PeopleSoft 8.1 Customer Relationship Management | March 20, 2002 | TX 5-493-450 |
| PeopleSoft 8.4 Financials and Supply Chain Management | August 5, 2002 | TX 5-586-247 |
| PeopleTools 8.4 | August 5, 2002 | TX 5-586-248 |
| PeopleTools 8.4 PeopleBooks | August 5, 2002 | TX 5-586-249 |
| PeopleSoft 8.4 Financials and Supply Chain Management PeopleBooks | August 5, 2002 | TX 5-586-246 |
| PeopleSoft 8.4 Customer Relationship Management PeopleBooks | August 7, 2002 | TX 5-586-236 |
| PeopleSoft 8.8 HRMS | June 11, 2004 | TX 6-093-947 |
| PeopleSoft 8.8 Customer Relationship Management | June 11, 2004 | TX 6-015-317 |
| PeopleSoft 8.8 Enterprise Performance Management | June 11, 2004 | TX 5-993-616 |
| Database of Documentary Customer Support Materials for PeopleSoft Software | July 1, 2009 | TXu1-607-454 |
| PeopleSoft HRMS 8.8 SP1 | February 10, 2010 | TX 7-065-376 |
| PeopleSoft HRMS 8.9 | February 10, 2010 | TX 7-065-381 |
| PeopleSoft HRMS 9.0 | February 10, 2010 | TX 7-065-386 |
| PeopleSoft HRMS 9.1 | February 10, 2010 | TX 7-065-398 |
| PeopleSoft Customer Relationship Management 8.8 SP1 | February 10, 2010 | TX 7-063-664 |

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleSoft Customer Relationship Management 8.9 | February 10, 2010 | TX 7-063-668 |
| PeopleSoft Customer Relationship Management 9.0 | February 10, 2010 | TX 7-065-371 |
| PeopleSoft Customer Relationship Management 9.1 | February 10, 2010 | TX 7-063-653 |
| PeopleSoft Financials and Supply Chain Management 8.8 | February 10, 2010 | TX 7-063-688 |
| PeopleSoft Enterprise Performance Management 8.8 SP2 | February 10, 2010 | TX 7-063-683 |
| PeopleSoft Enterprise Performance Management 8.9 | February 10, 2010 | TX 7-063-672 |
| PeopleSoft Enterprise Performance Management 9.0 | February 10, 2010 | TX 7-063-679 |
| PeopleSoft Financials and Supply Chain Management 8.8 SP1 | February 11, 2010 | TX 7-065-319 |
| PeopleSoft Financials and Supply Chain Management 8.9 | February 11, 2010 | TX 7-065-332 |
| PeopleSoft Financials and Supply Chain Management 9.0 | February 11, 2010 | TX 7-065-354 |
| PeopleSoft Financials and Supply Chain Management 9.1 | February 11, 2010 | TX 7-065-357 |
| PeopleSoft Student Administration Solutions 8.0 SP1 | February 24, 2010 | TX 7-077-447 |
| PeopleSoft Campus Solutions 8.9 | February 24, 2010 | TX 7-077-451 |
| PeopleSoft Campus Solutions 9.0 | February 24, 2010 | TX 7-077-460 |
| PeopleTools 8.42 | March 8, 2010 | TX 7-092-406 |
| PeopleTools 8.43 | March 8, 2010 | TX 7-092-603 |
| PeopleTools 8.44 | March 8, 2010 | TX 7-092-583 |
| PeopleTools 8.45 | March 8, 2010 | TX 7-092-617 |

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleTools 8.46 | March 8, 2010 | TX 7-092-772 |
| PeopleTools 8.47 | March 8, 2010 | TX 7-092-797 |
| PeopleTools 8.48 | March 8, 2010 | TX 7-092-819 |
| PeopleTools 8.49 | March 8, 2010 | TX 7-092-855 |
| PeopleTools 8.50 | March 8, 2010 | TX 7-092-757 |
| PeopleSoft Portal Solutions 9.0 | March 10, 2010 | TX 7-095-777 |
| PeopleSoft Portal Solutions 8.8 | March 10, 2010 | TX 7-095-798 |
| PeopleSoft Financials and Supply Chain Management 9.2 | February 10, 2016 | TX 8-151-288 |
| PeopleSoft Human Capital Management 9.2 | February 10, 2016 | TX 8-151-289 |
| PeopleSoft PeopleTools 8.51 | February 10, 2016 | TX 8-151-290 |
| PeopleSoft PeopleTools 8.53 | February 10, 2016 | TX 8-151-292 |
| PeopleSoft PeopleTools 8.52 | February 10, 2016 | TX 8-151-294 |
| Initial release of JDE EnterpriseOne XE | April 26, 2007 | TX 6-541-033 |
| Cumulative Update 8 for JDE EnterpriseOne Xe | April 26, 2007 | TX 6-541-048 |
| Initial release of JDE EnterpriseOne 8.0 | April 26, 2007 | TX 6-541-050 |
| Cumulative Update 1 for JDE EnterpriseOne 8.0 | April 26, 2007 | TX 6-541-034 |
| Initial release of JDE EnterpriseOne 8.9 | April 26, 2007 | TX 6-541-049 |
| Initial release of JDE EnterpriseOne 8.10 | April 26, 2007 | TX 6-541-038 |
| Cumulative Update 2 for JDE EnterpriseOne 8.10 | April 26, 2007 | TX 6-541-032 |
| Initial release of JDE EnterpriseOne 8.11 | April 26, 2007 | TX 6-541-028 |
| Initial release of JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-040 |
| ESU for JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-027 |

Gibson, Dunn &
Crutcher LLP

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Cumulative Update 1 for JDE EnterpriseOne 8.11 SP1 | April 26, 2007 | TX 6-541-039 |
| Initial release of JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-041 |
| ESU for JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-045 |
| Cumulative Update 1 for JDE EnterpriseOne 8.12 | April 26, 2007 | TX 6-541-042 |
| Initial release of JDE World A7.3 | April 26, 2007 | TX 6-541-029 |
| Cumulative Update 16 for JDE World A7.3 | April 26, 2007 | TX 6-541-031 |
| Initial release of JDE World A8.1 | April 26, 2007 | TX 6-541-047 |
| Code Change for JDE World A8.1 | April 26, 2007 | TX 6-541-044 |
| Initial release of JDE World A9.1 | April 26, 2007 | TX 6-541-030 |
| Cumulative Update 6 for JDE World A8.1 | May 1, 2007 | TX 6-545-421 |
| Electronic Software Update JM16587 for JD Edwards EnterpriseOne 9.1 | November 12, 2015 | TX 8-116-321 |
| Electronic Software Update JM16600 for JD Edwards EnterpriseOne 9.1 | November 12, 2015 | TX 8-116-317 |
| Electronic Software Update JM17007 for JD Edwards EnterpriseOne 9.1 | November 12, 2015 | TX 8-116-314 |
| Electronic Software Update JN10058 for JD Edwards EnterpriseOne 9.2 | December 21, 2015 | TX 8-130-597 |
| Siebel 6.3 Initial Release and Documentation | June 29, 2009 | TX 6-941-989 |
| Siebel 7.0.5 Initial Release and Documentation | June 29, 2009 | TX 6-941-988 |
| Siebel 7.5.2 Initial Release and Documentation | June 29, 2009 | TX 6-941-990 |
| Siebel 7.7.1 Initial Release and Documentation | June 29, 2009 | TX 6-941-993 |
| Siebel 7.8 Initial Release and Documentation | June 29, 2009 | TX 6-941-995 |
| Siebel 8.0 Initial Release and Documentation | June 29, 2009 | TX 6-942-000 |
| Siebel 8.1.1 Initial Release and Documentation | June 29, 2009 | TX 6-942-001 |

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Database of Documentary Customer Support Materials for PeopleSoft Software | July 1, 2009 | TXu1-607-454 |
| Database of Documentary Customer Support Materials for J.D. Edwards Software | July 1, 2009 | TXu1-607-455 |
| Database of Documentary Customer Support Materials for Siebel Software | July 1, 2009 | TXu1-607-453 |
| Cumulative Update 3 for JDE EnterpriseOne 8.12 | January 15, 2010 | TX 7-041-278 |
| Initial release of JDE EnterpriseOne 9.0 | January 15, 2010 | TX 7-041-256 |
| Cumulative Update 1 for JDE EnterpriseOne 9.0 | January 15, 2010 | TX 7-041-267 |
| Initial release of JDE World A9.2 | January 15, 2010 | TX 7-041-290 |
| Oracle 8i Enterprise Edition, Release 2 (8.1.6) | February 2, 2001 | TX 5-222-106 |
| Oracle 9i Database Enterprise:  Edition Release 2 | June 13, 2003 | TX 5-673-282 |
| Oracle Database 10g:  Release 1 | January 16, 2009 | TX 6-938-648 |
| Oracle Database 10g:  Release 2 | June 29, 2009 | TX 6-942-003 |
| Oracle Database 11g:  Release 1 | March 24, 2011 | TX 7-324-157 |
| Oracle Database 11g:  Release 2 | March 24, 2011 | TX 7-324-158 |
| Oracle E-Business Suite 12.0.0 | August 4, 2015 | TX 8-060-232 |
| Oracle E-Business Suite Human Capital Management 12.0.0 | October 29, 2015 | TX 8-108-944 |
| Oracle E-Business Suite Financial 12.0.0 | August 4, 2015 | TX 8-060-258 |
| Oracle E-Business Suite Procurement 12.0.0 | October 29, 2015 | TX 8-108-850 |
| Oracle E-Business Suite 12.2.2 | August 4, 2015 | TX 8-060-253 |
| Oracle E-Business Suite Human Capital Management 12.2.2 | October 29, 2015 | TX 8-108-877 |
| Oracle E-Business Suite Financial 12.2.2 | August 4, 2015 | TX 8-060-269 |
| Oracle E-Business Suite Procurement 12.2.2 | October 29, 2015 | TX 8-108-872 |

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn & Crutcher LLP

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| Oracle E-Business Suite 12.1.1 | August 4, 2015 | TX 8-060-249 |
| Oracle E-Business Suite Human Capital Management 12.1.1 | October 29, 2015 | TX 8-108-891 |
| Oracle E-Business Suite Financial 12.1.1 | August 4, 2015 | TX 8-060-255 |
| Oracle E-Business Suite Procurement 12.1.1 | October 29, 2015 | TX 8-108-924 |
| Oracle E-Business Suite 11.5.10 | August 4, 2015 | TX 8-060-225 |
| Oracle E-Business Suite Human Capital Management 11.5.10 | October 29, 2015 | TX 8-108-914 |
| Oracle E-Business Suite Financial 11.5.10 | August 4, 2015 | TX 8-060-259 |
| Oracle E-Business Suite Procurement 11.5.10 | October 29, 2015 | TX 8-108-961 |
| Oracle E-Business Suite 11.5.1 | August 4, 2015 | TX 8-060-246 |
| Oracle E-Business Suite Human Capital Management 11.5.1 | October 29, 2015 | TX 8-108-902 |
| Oracle E-Business Suite Financial 11.5.1 | August 4, 2015 | TX 8-060-264 |
| Oracle E-Business Suite Procurement 11.5.1 | October 29, 2015 | TX 8-108-968 |
| Oracle E-Business Suite 12 US and Canada End of Year 2013 Statutory Update III | February 10, 2016 | TX 8-150-451 |
| Oracle E-Business Suite Purchasing 11.5.1 | January 8, 2014 | TX 7-781-659 |
| Oracle E-Business Suite Purchasing 11.5.9 | January 8, 2014 | TX 7-781-641 |
| PeopleSoft Customer Relationship Management 9.0 | February 10, 2010 | TX 7-065-371 |
| PeopleSoft Portal Solutions 9.1 | March 10, 2010 | TX 7-095-773 |
| PeopleTools 8.42 | March 8, 2010 | TX 7-092-406 |
| Database of Documentary Customer Support Materials for J.D. Edwards Software | July 1, 2009 | TXu1-607-455 |
| Database of Documentary Customer Support Materials for Siebel Software | July 1, 2009 | TXu1-607-453 |

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

## SECOND CAUSE OF ACTION

## (Declaration of No Violation of Federal, California, and Nevada Anti-Hacking Statutes)

## (Against All Defendants)

114.    Rimini incorporates by reference and realleges Paragraphs 1 through 113 as if set forth in full herein.

115.    Rimini seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act").   There presently exists a justiciable controversy regarding whether access by Rimini to the Oracle Websites after Oracle's attempted revocation of Rimini's access rights takes effect will constitute a violation of the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030) ("CFAA"), the California anti-hacking statute (Cal. Penal Code § 502), and the Nevada anti-hacking statute (Nev. Rev. Stat. § 205.4765).

116.    Oracle's January 17, 2017 letter to Rimini purports to revoke Rimini's access to the Oracle Websites as of March 18, 2017.  Oracle's letter also states that "any continued access [by Rimini to the Oracle Websites] may violate state and federal computer access laws."

117.    Rimini accesses the Oracle Websites as an appointed agent of Oracle's customers, pursuant to the authorization and permission granted to Rimini by those customers. ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ███████████████████████████.  These customers have authorized Rimini to act as an agent to, among other things, access and download support materials from the Oracle Websites on their behalf.  As a result, Rimini has the authority to access the Oracle Websites as an agent of Oracle's customers, when so appointed, and Rimini's access to, use of, and downloading from, the Oracle Websites is authorized and permitted, regardless of Oracle's cease and desist letter and counterclaims seeking to block Rimini's access to the Oracle Websites.

118.    In light of Oracle's cease and desist letter and counterclaims, and Oracle's conduct in *Rimini I*, Oracle's statements and actions make clear that a credible threat of immediate litigation exists regarding whether any access to the Oracle Websites by Rimini after

the 60-day notice period constitutes a violation of the federal and state anti-hacking laws.  The parties thus have adverse legal interests over a dispute of sufficient reality that is capable of conclusive resolution through a declaratory judgment.

119.    Rimini therefore requests a judgment declaring that any access to, use of, and downloading from, the Oracle Websites after March 18, 2017 as authorized by Rimini's clients does not violate the federal, California, or Nevada anti-hacking statutes.

120.    Moreover, although Oracle's revocation letter was sent on behalf of both Oracle America, Inc. and Oracle International Corporation ("OIC"), ████████████████████ ████████████████████████████████████████

### THIRD CAUSE OF ACTION

### (Declaration of Unenforceability of Copyrights As a Result of Copyright Misuse)

### (Against Oracle International Corporation)

121.    Rimini incorporates by reference and realleges Paragraphs 1 through 120 as if set forth in full herein.

122.    Rimini seeks a declaratory judgment under the Declaratory Judgment Act. There presently exists a justiciable controversy regarding whether Oracle's attempted revocation of Rimini's access to the Oracle Websites constitutes copyright misuse.  The parties thus have adverse legal interests over a dispute of sufficient reality that is capable of conclusive resolution through a declaratory judgment.

123.    In light of Oracle's attempt to extend its copyright over software into the aftermarket for software support in violation of the policies underlying the copyright laws, Rimini seeks a declaration that Oracle's copyrights listed in Paragraph 113 are unenforceable until Oracle withdraws its revocation of Rimini's access to the Oracle Websites.

### FOURTH CAUSE OF ACTION

### (Intentional Interference With Contractual Relations)

### (Against All Defendants)

124.    Rimini incorporates by reference and realleges Paragraphs 1 through 123 as if set forth in full herein.

Gibson, Dunn & Crutcher LLP

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

125.    At all relevant times, Rimini has maintained valid contracts with clients to provide aftermarket support services for software that its clients had licensed from Oracle.

126.    At all relevant times, Oracle had knowledge of the existence of these valid contracts between Rimini and its clients.  Indeed, Oracle has contacted a number of Rimini's clients directly regarding their use of Rimini's software support services.

127.    Oracle has engaged in a concerted campaign to create fear, uncertainty, and doubt among Rimini's clients and to interfere with and disrupt the valid contracts between Rimini and its clients.  As set forth above, Oracle's campaign includes, without limitation, numerous false and misleading representations regarding Rimini's software support services and targeting Rimini's clients with threats of selective license audits, and Oracle's purported revocation of Rimini's ability to access the Oracle Websites on behalf of Rimini's clients, which Rimini has agreed to do by contract.

128.    Oracle's actions are designed to induce Rimini's clients to breach their contracts with Rimini or, at a minimum, to disrupt those contracts in order for Oracle to obtain an unfair competitive advantage over Rimini.  Oracle knows that its actions are certain, or substantially certain, to cause the breach and/or disruption of the contracts between Rimini and its clients.

129.    Oracle's intentional interference has resulted in the actual breach and/or disruption of the contractual relationships that Rimini enjoyed with a number of its clients.  Rimini has also been forced to dedicate substantial resources to investigate and respond to client concerns related to Oracle's wrongful conduct alleged herein, thereby making Rimini's enjoyment of the contracts more expensive and burdensome.  Moreover, Oracle's purported revocation of Rimini's access to the Oracle Websites has impeded Rimini's ability to provide downloading support to its clients, and made Rimini's provision of such services more burdensome, which services Rimini is obligated to perform by the terms of its contracts with clients.

130.    As a direct and proximate result of Oracle's intentional interference with Rimini's contractual relations, Rimini has now suffered and will continue to suffer, economic harm, including, but not limited to, lost profits, costs of mitigation, loss of goodwill, injury to

Gibson, Dunn &
Crutcher LLP

its business reputation, and other actual, consequential, and/or incidental damages in an amount to be determined in the course of this proceeding.  Oracle's wrongful conduct described herein was a substantial factor in causing this harm.

131.    In engaging in this scheme to wrongfully interfere with the contractual relations between Rimini and its clients, Oracle's conduct was willful, malicious, oppressive, and in conscious disregard for Rimini's rights.  Rimini is therefore entitled to an award of punitive damages to punish Oracle's wrongful conduct and to deter future wrongful conduct.

## FIFTH CAUSE OF ACTION

### (Intentional Interference With Prospective Economic Advantage)

### (Against All Defendants)

132.    Rimini incorporates by reference and realleges Paragraphs 1 through 131 as if set forth in full herein.

133.    Rimini has prospective economic relationships with both its current and prospective clients.  These economic relationships have a probable future economic benefit or advantage to Rimini and it is reasonably likely and probable that Rimini would have realized these economic advantages absent Oracle's wrongful conduct.

134.    Oracle had knowledge of the existence of these prospective economic relationships.  Indeed, Oracle has contacted a number of Rimini's clients directly regarding their use of Rimini's software support services.

135.    Oracle has intentionally interfered with the prospective economic relationships by, for example, making numerous false and misleading representations to Rimini's current and prospective clients regarding Rimini's software support services, targeting Rimini's clients with threats of selective license audits, and by purporting to revoke Rimini's access to the Oracle Websites.

136.    These actions by Oracle are designed to disrupt Rimini's prospective economic relationships with its current and prospective clients in order for Oracle to obtain an unfair competitive advantage over Rimini.  Indeed, Oracle knows that its actions are certain or substantially certain to disrupt Rimini's prospective economic relationships.

137.   Oracle's actions to interfere with Rimini's prospective economic relationships are independently wrongful acts because they are proscribed by the following legal standards:

a.   Oracle's false and misleading statements to Rimini's current and prospective clients regarding Rimini's services constitute acts of consumer fraud and deceptive trade practices under the Nevada Deceptive Trade Practices Act;

b.   Oracle's false and misleading statements to Rimini's current and prospective clients regarding Rimini's services constitute violations of the Lanham Act;

c.   Oracle's conduct described herein constitutes violations of California Business and Professions Code §§ 17200 *et seq.*;

d.   Oracle's conduct described herein constitutes copyright misuse; and

e.   ███████████████████████████████████████████████████████████████████████████████████████

138.   Oracle's intentional interference has actually disrupted Rimini's prospective economic relationships with some of its current and prospective clients.  Indeed, but for Oracle's anticompetitive tactics and as a direct result of Oracle's wrongful conduct, some clients have terminated their relationships with Rimini or decided against expanding their relationship with Rimini, and some prospective clients have decided against contracting with Rimini for aftermarket support of their Oracle software products.  Moreover, Oracle's purported revocation of Rimini's access to the Oracle Websites has impeded Rimini's ability to provide downloading support to its prospective and current clients, and has made Rimini's provision of software support services more burdensome, thereby disrupting Rimini's expectation of future gain from Rimini's existing economic relationships.

139.   As a direct and proximate result of Oracle's intentional interference with Rimini's prospective economic relationships, Rimini has now suffered and will continue to suffer, economic harm, including, but not limited to, lost profits, costs of mitigation, loss of goodwill, injury to Rimini's business reputation, and other actual, consequential, and/or

Gibson, Dunn &
Crutcher LLP

1  incidental damages in an amount to be determined in the course of this proceeding.  Oracle's

2  wrongful conduct described herein was a substantial factor in causing this harm.

3      140.    In engaging in this concerted campaign to interfere with Rimini's prospective

4  economic relationships with its current and prospective clients, Oracle's conduct was willful,

5  malicious, oppressive, and in conscious disregard for Rimini's rights.  Rimini is therefore

6  entitled to an award of punitive damages to punish Oracle's wrongful conduct and to deter

7  future wrongful conduct.

8                              **SIXTH CAUSE OF ACTION**

9              **(Violations of Nevada Deceptive Trade Practices Act)**

10                            **(Against All Defendants)**

11      141.    Rimini incorporates by reference and realleges Paragraphs 1 through 140 as if

12  set forth in full herein.

13      142.    As described herein, Oracle has committed acts of consumer fraud and deceptive

14  trade practices within the meaning of NRS § 41.600(2)(e) and NRS §§ 598.0903, *et seq.*  These

15  acts include, without limitation, (i) Oracle's numerous false and misleading representations of

16  fact disparaging Rimini's services, and (ii) purporting to allow licensees that purchase Oracle

17  software to use third-party support providers such as Rimini but then directly interfering with

18  licensees' ability to do so, including by attempting to revoke Rimini's access to the Oracle

19  Websites and the other acts as alleged herein.

20      143.    Oracle's false and misleading representations of fact disparaging Rimini's

21  services include, but are not limited to, that (i) ████████████████████████████████

22  ████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

144.   Rimini's current and prospective clients have relied upon Oracle's false and misleading misrepresentations of fact regarding Rimini's services to Rimini's detriment.

145.   This evidence that Oracle has engaged in deceptive trade practices is also *prima facie* evidence of Oracle's intent to injure Rimini and to destroy or substantially lessen competition in aftermarket service for Oracle's software products.

146.   Oracle's conduct, as alleged herein, constitutes "bait and switch" advertising as that term is defined in NRS §§ 598.0903, *et seq.*

147.   Oracle's deceptive trade practices and acts of consumer fraud have proximately caused the actual breach and/or disruption of the contractual relationships that Rimini enjoyed with a number of its clients.  Oracle's actions have also resulted in the disruption of Rimini's prospective economic relationships with its current and prospective clients.  And, as a direct result of Oracle's conduct, Rimini has suffered and will continue to suffer, economic harm, including, but not limited to, lost profits, costs of mitigation, loss of goodwill, injury to Rimini's business reputation, and other actual, consequential, and/or incidental damages in an amount to be determined in the course of this proceeding.

148.   Unless Oracle is enjoined from continuing to commit the acts of consumer fraud described herein, Oracle's actions are likely to recur and will cause Rimini irreparable injury for which there is no adequate remedy at law.

149.   Rimini is also entitled to its costs in this action and reasonable attorneys' fees under NRS § 41.600(3)(b).

## SEVENTH CAUSE OF ACTION

### (Violations of the Lanham Act)

### (Against All Defendants)

150.    Rimini incorporates by reference and realleges Paragraphs 1 through 149 as if set forth in full herein.

151.    As described herein, Oracle has made false and misleading statements regarding Rimini's services in advertising or promotional material to Rimini's current and prospective clients.  These false and misleading statements about Rimini's services were made in interstate commerce.

152.    Oracle's false and misleading statements regarding Rimini's services actually deceived, or have a tendency to deceive, a substantial segment of Rimini's current and prospective clients to whom the false and misleading statements were directed.  These false and misleading statements deceived, or have a tendency to deceive, Rimini's current and prospective clients into believing, without limitation, that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

153.    Oracle has disseminated, and, upon information and belief, continues to disseminate, the false and misleading statements described herein to Rimini's current and prospective client base deliberately and with the intent of preventing customers that planned to

48

Gibson, Dunn & Crutcher LLP

leave Oracle and contract with Rimini from doing so, and to induce clients that have chosen Rimini to terminate their relationships and return to Oracle.

154. Oracle's false and misleading statements regarding Rimini's services are material in that they are likely to influence, and, as alleged herein, have influenced, the purchasing decisions of Rimini's current and prospective clients.

155. Rimini has been and is likely to be further injured by Oracle's false and misleading statements about Rimini's services by the direct diversion of sales from Rimini to Oracle and by the lessening of the goodwill that Rimini enjoys with its clients with regard to Rimini's services.

156. Rimini is informed and believes that unless Oracle is enjoined from making false and misleading statements regarding Rimini's services in advertising and promotional material to Rimini's current and prospective clients, Rimini will continue to suffer immediate and irreparable injury.  This injury includes negative impacts on Rimini's reputation that cannot be remedied through damages, and Rimini has no adequate remedy at law.  Rimini is entitled to a permanent injunction pursuant to 15 U.S.C. § 1116 restraining and enjoining Oracle and its agents, employees, and all persons acting in concert with or on their behalf from doing or causing any further violations of the Lanham Act, 15 U.S.C. § 1125.

## EIGHTH CAUSE OF ACTION

### (Violations of California Business & Professions Code §§ 17200 *et seq.*)

### (Against All Defendants)

157. Rimini incorporates by reference and realleges Paragraphs 1 through 156 as if set forth in full herein.

158. Oracle's aforementioned actions constitute "unlawful" business practices under California Business & Professions Code §§ 17200 *et seq.*—including, but not limited to, Oracle's (i) intentional interference with Rimini's contractual relations, (ii) intentional interference with Rimini's prospective economic advantage, (iii) violations of the Nevada Deceptive Trade Practices Act, (iv) violations of the Lanham Act, (v) copyright misuse, and

Gibson, Dunn & Crutcher LLP

159.    Oracle's attempted revocation of Rimini's access to the Oracle Websites and other conduct described above also constitutes an "unfair" business practice under California Business & Professions Code §§ 17200 *et seq.* and *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999).

160.    Oracle's conduct violates the policy or spirit of the antitrust laws because its effects are comparable to a violation of those laws, or otherwise significantly threatens or harms competition as described herein.

161.    Oracle's conduct also constitutes copyright misuse.    A copyright owner's attempt "to impermissibly expand his lawful protection from competition contravenes not only the policy of the copyright laws, but also the central purpose of the antitrust laws . . . to preserve competition."   *Omega S.A. v. Costco Wholesale Corp.*, 776 F.3d 692, 699 (9th Cir. 2015) (Wardlaw, J. concurring).

162.    As a direct and proximate result of Oracle's unlawful and unfair acts, Rimini has suffered injury to its business, including damage to its reputation and client relationships as well as actual and consequential damages, including the loss of past, present, and future profits, the loss of clients and potential clients, and disruption of its legally protected interest to operate its business as intended.  Rimini has no adequate remedy at law and will suffer further injury and damage unless such wrongful conduct is enjoined.

163.    Rimini therefore seeks an injunction pursuant to California Business and Professions Code § 17203 prohibiting Oracle from engaging in unfair and unlawful business practices, including those set forth herein, and remedying the harm Oracle has caused Rimini.

164.    As a direct and proximate result of Oracle's unlawful and unfair acts, Oracle has further been unjustly enriched in an amount to be determined at trial.  Pursuant to Business and Professions Code § 17203, Rimini seeks complete restitution from Oracle as a result of its unfair and unlawful acts.

## **PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing allegations, Rimini seeks judgment awarding it the following relief:

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

(a)     A judgment declaring that, since at least July 31, 2014, Rimini has not infringed Oracle's software copyrights identified in Paragraph 113 of this Complaint;

(b)     A judgment declaring that Rimini's access to the Oracle Websites, on behalf of Oracle customers with contractual rights to access and download files from those websites, would not constitute hacking under the CFAA or the California and Nevada anti-hacking statutes;

(c)     A judgment declaring that Oracle's copyrights identified in Paragraph 113 are unenforceable in light of and until Oracle remedies its copyright misuse in the form of its refusal to give Rimini access to the Oracle Websites.

(d)     Damages in an amount to be determined at trial;

(e)     Injunctive relief, including an order prohibiting Oracle from engaging in the wrongful conduct described herein and remedying the harm caused by Oracle's conduct;

(f)     Punitive damages in an amount to be determined at trial;

(g)     Attorneys' fees, costs, and expenses incurred in connection with this action; and

(h)     All such other and further relief as this Court deems just and proper.

///
///
///
///
///
///

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff Rimini Street, Inc. demands a trial by jury on all issues so triable.

Gibson, Dunn & Crutcher LLP

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Dated:  September 19, 2017

GIBSON, DUNN & CRUTCHER LLP

By: __/s/ Jeffrey T. Thomas__
Jeffrey T. Thomas

*Attorneys for Plaintiff and Counterdefendant*
*Rimini Street, Inc., and Counterdefendant Seth*
*Ravin*

CORRECTED THIRD AMENDED COMPLAINT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP