UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RIMINI STREET, INC. a Nevada Corporation;

Plaintiff,

v.

ORACLE INTERNATIONAL
CORPORATION, a California Corporation,

Defendant.

_____

ORACLE AMERICA, INC., a Delaware
Corporation; and ORACLE
INTERNATIONAL CORPORATION,

Plaintiff,

v.

RIMINI STREET, INC.; and SETH RAVIN, an
individual,

Counter-defendants.

Case No. 2:14-cv-1699-LRH-CWH

ORDER

Before the court is plaintiff/counter-defendants Rimini Street, Inc. ("Rimini Street") and

Seth Ravin's ("Ravin") motion to dismiss defendant/counter-claimants Oracle International

Corporation and Oracle America, Inc.'s (collectively "Oracle") third amended counterclaims

(ECF No. 397). ECF No. 409. Oracle filed an opposition (ECF No. 440) to which Rimini Street

and Ravin replied (ECF No. 466).

1

## I. Facts and Procedural Background

Counter-claimant Oracle develops, manufacturers, and licenses computer software, particularly Enterprise Software Programs.[1] Rather than sell its software to consumers outright, Oracle licenses its software to customers through software licensing agreements which govern the customers' rights to use the software. Along with its software licensing business, Oracle also provides software maintenance and support services to its software licensees through separate software support service contracts. Oracle holds a number of federal copyrights for its various software applications, including the particular Enterprise Software Programs at issue in this action.

Counter-defendant Rimini Street provides third-party maintenance and support services to consumers who license software applications and competes directly with Oracle to provide these after-license services. Rimini Street does not develop or manufacture its own competing software applications and holds no federal copyrights. Rather, Rimini Street contracts with software licensees to provide software maintenance and support services for certain software applications including the particular Oracle copyrighted Enterprise Software Programs at issue in this action. Counter-defendant Ravin is the owner and CEO of Rimini Street.

This is the second action between the parties. In the first action, *Oracle USA., Inc. v. Rimini Street, Inc.*, case no. 2:10-cv-0106-LRH-PAL ("*Oracle I*"), Oracle brought several claims against Rimini Street and Ravin for copyright infringement and other business torts based on (1) the process Rimini Street used to provide software maintenance and support services to customers who had licensed Oracle software, and (2) the manner in which Rimini Street accessed and preserved copies of Oracle's copyrighted software source code. *See Oracle I*, case no. 2:10-cv-0106-LRH-PAL, ECF No. 1. While litigation in *Oracle I* was proceeding, Rimini Street allegedly changed the manner by which it accessed and preserved its customers' licensed

---

[1] Enterprise Software is a type of computer software program that enables core operational tasks - like payroll, human resource tasking, and inventory management - across an entire organization. Instead of being tied to a specific computer, Enterprise Software is hosted on a server and provides simultaneous access and service to a large number of users over a computer network. These features and functions are in contrast to typical computer software, which is generally a single-user application executed on a user's personal computer. A key feature of Enterprise Software is the ability to modify and customize the software for an entity's specific needs and to support the software through periodic updates to maintain the software's continuing functionality and compliance with regulatory and tax changes.

software and the process by which it provided software maintenance and support services to its clients in response to the court's summary judgment orders (*Oracle I*, case no. 2:10-cv-0106-LRH-PAL, ECF Nos. 474, 476). Subsequently, on October 15, 2014, Rimini Street initiated the present action against Oracle seeking a declaration from the court that its new software maintenance and support processes do not infringe Oracle's software copyrights. *See* ECF No. 1.

After Rimini Street changed its maintenance and support model for servicing Oracle's copyrighted software, Rimini Street allegedly made several false statements about its business services in company press releases and customer marketing materials. In particular, Rimini Street allegedly told current and prospective clients that its software maintenance and support model no longer infringes Oracle's software copyrights and that its new support model complies with the court's recent orders in *Oracle I*. Further, Rimini Street allegedly told current and potential customers that Oracle was stopping its own support of its E-Business Suite version 11.5.10 software a year earlier than anticipated. In response, Oracle filed counterclaims against Rimini Street and Ravin related to these allegedly false statements and Rimini Street's ongoing alleged copyright infringement. ECF No. 21. Oracle then twice amended its counterclaims to add new allegations and claims against counter-defendants. ECF Nos. 173, 306. Finally, on January 17, 2017, Oracle filed its third and final amended counterclaims against Rimini Street and Ravin alleging twelve (12) causes of action: (1) copyright infringement; (2) violation of the Digital Millennium Copyright Act; (3) violation of the Lanham Act; (4) inducing breach of contract; (5) intentional interference with prospective economic advantage; (6) breach of contract; (7) unfair competition in violation of California Business & Professions Code § 17200 *et seq*; (8) unjust enrichment; (9) accounting; (10) declaratory judgment that Oracle did not intentionally interfere with contractual relations; (11) declaratory judgment that Oracle did not intentionally interfere with prospective economic advantage; and (12) declaratory judgment that Oracle did not violate California Business & Professions Code § 17200 *et seq*. ECF No. 397. Thereafter, counter-defendants filed the present motion to dismiss certain claims from Oracle's third amended counterclaims. ECF No. 409.

///

## II.    Legal Standard

### A.  Rule 12(b)(6)

Counter-defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a legally cognizable cause of action. *See* FED. R. CIV. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See Id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks and citations omitted). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The

court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

### B. Rule 9(b)

Pursuant to the Federal Rules of Civil Procedure, a complaint triggers the heightened pleading standard of Rule 9(b), rather than the broad notice pleading standard of Rule 8(a)(2), when the complaint alleges facts that "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). To determine whether a complaint sounds in fraud, a court looks to the substance of the party's allegations. *Id*. There are no "magic words" or formal requirements for a complaint to sound in fraud (*Id*. at 1108), and fraud need not be an element of a claim for Rule 9(b)'s heightened pleading standard to apply to the allegations in a complaint (*See Grand Canal Shops II, LLC v. Iavarone*, 2012 WL 6041643, at *2 (D. Nev. Dec. 4, 2012)). Generally, a complaint that alleges a party made "misrepresentations" in order to induce a breach of contract or otherwise interfere with current or prospective contractual relations is sufficient to trigger Rule 9(b)'s heightened pleading standard. *See e.g., BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, No. C10-1053, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010); *Hologram USA, Inc. v. Pulse Evolution Corp.*, 2015 WL 316900, at *4 (D. Nev. Jan. 23, 2015). Similarly, a complaint that alleges a party violated the Lanham Act by making misrepresentations in its advertising and marketing materials likewise triggers Rule 9(b)'s pleading standard. *LT Int'l Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1244-45 (D. Nev. 2014).

To sufficiently allege a claim under Rule 9(b) of the Federal Rules of Civil Procedure, a complaint must make specific allegations of the alleged fraud sufficient "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To provide a defendant with appropriate notice, a complaint must allege the "time, place, and specific content of the false representations as well

as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also*, *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 102 (E.D. Cal. 2010) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (Cal. 1991)) ("[I]n a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'"). However, there is a recognized exception to Rule 9(b)'s heightened pleading standard when "the facts constituting the circumstances of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him." *Nuebronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). "In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts" and the court may review the sufficiency of the complaint under Rule 8(a)(2)'s pleading standard. *Id*.

## III.    Discussion

In their present motion, counter-defendants Rimini Street and Ravin seek to dismiss the following six (6) claims from Oracle's third amended counterclaims: claim three for violation of the Lanham Act; claim four for inducing breach of contract; claim five for intentional interference with prospective economic advantage; claim seven for unfair competition in violation of California Business & Professions Code § 17200 *et seq*; claim eight for unjust enrichment; and claim nine for an accounting. *See* ECF No. 409. The court shall address each claim below.

### A.    Copyright Act Preemption

Initially, Rimini Street and Ravin contend that several of Oracle's non-copyright-based business torts - particularly Oracle's claims for violation of the Lanham Act, inducing breach of contract, and intentional interference with prospective economic advantage - are preempted by the Copyright Act because these claims are interrelated to, and effectively indistinguishable from, Oracle's separately pled copyright infringement claim. *See* ECF No. 409 at 16-18. As addressed in detail below, the court disagrees.

Section 301 of the Copyright Act explicitly preempts state law claims that are equivalent to a claim of copyright infringement. 17 U.S.C. § 301(a) ("[A]ll legal or equitable rights that are

equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . are governed exclusively by this title."). However, the Copyright Act does not preempt state law claims based on "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(b)(3). The Ninth Circuit has developed a two-part test to determine when a state law cause of action is preempted by Section 301. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2007). First, the conduct, activity, or subject matter of the state law claim must fall within the subject matter of copyrights as identified in 17 U.S.C. §§ 102 & 103. [2] *Id*. Second, the right(s) asserted under the state law claim must be equivalent to the exclusive rights of a copyright holder contained within 17 U.S.C. § 106.[3] *Id*.

In its third amended counterclaims, Oracle's challenged business tort claims are premised on allegations that Rimini Street falsely stated to the public in various press releases and to its current and potential customers in marketing materials that its new software maintenance and

---

[2] 17 U.S.C. § 102 states in its entirety: "Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories: literary works; musical works, including any accompanying words; dramatic works, including any accompanying music; pantomimes and choreographic works; pictorial, graphic, and sculptural works; motion pictures and other audiovisual works; sound recordings; and architectural works. In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."
17 U.S.C. § 103 states in its entirety: "Subject matter of copyright: Compilations and Derivative Works (a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully. (b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."
[3] 17 U.S.C. § 106 states in its entirety: "Exclusive Rights in Copyrighted Works: Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

support processes, enacted in response to the court's summary judgment orders in *Oracle I*, do not infringe Oracle's software copyrights and that the court's rulings in *Oracle I* "relate to processes and software no longer used by Rimini Street." *See* ECF No. 397, ¶132. The court has reviewed the documents and pleadings on file in this matter and finds that although Oracle's challenged misrepresentation-based business tort claims are related to Oracle's separately pled copyright infringement claim, these claims are not preempted by the Copyright Act because these claims involve conduct that does not fall within the exclusive subject matter of copyrights and seek to protect rights separate from the exclusive rights protected under the Copyright Act.

First, as to the alleged misrepresentations that Rimini Street actually changed its software maintenance and support processes in response to the court's summary judgment orders in *Oracle I* and thereby no longer engages in that particular infringing conduct the court finds that these claims do not fall within the exclusive subject matter of copyrights. The nature of these statements is straightforward: Rimini Street either changed its software maintenance and support processes for supporting Oracle's copyrighted software as it claimed in 2014,[4] or it did not change its infringing processes as Oracle alleges.[5] Nothing about the factual assertions made in these statements requires the court or the jury to evaluate and determine Oracle's separately pled copyright infringement claim before evaluating these misrepresentation-based claims or in evaluating the truth or falsity of these statements. Thus, these specific misrepresentation allegations do not fall "within the subject matter of copyrights" as required under the first prong of *Sybersound* and the claims are not preempted. 517 F.3d at 1150.

Second, as to the alleged misrepresentations that Rimini Street's new software maintenance and support processes do not infringe Oracle's software copyrights, the court finds

---

[4] Oracle alleges that throughout 2014, the year the court issued its summary judgment orders in *Oracle I*, Rimini Street repeatedly told the press and its current and prospective clients that it had already begun to "migrate" its hosted environments and were "continuing the migration, which complies to the Court's ruling." ECF No. 397, ¶115. Further, Oracle alleges that on numerous occasions Rimini Street told existing and potential customers that because Rimini Street had changed its software maintenance and support process, the court's summary judgment rulings in *Oracle I* would not cause any interruptions in Rimini Street's ability to provide maintenance and support services on Oracle's copyrighted software. ECF No. 397, ¶132.

[5] Oracle specifically alleges that Rimini Street did not, in fact, migrate its infringing hosting services and instead still engages in software hosting on its own servers, conduct that the court found to be infringing in *Oracle I*. ECF No. 397, ¶116.

that the rights sought to be protected by the misrepresentation-based business tort claims are not "equivalent to the exclusive rights of a copyright holder" as required under the second prong of *Sybersound* and are likewise not preempted by the Copyright Act. *Id*. The court recognizes that Oracle's ultimate success on establishing the falsity of Rimini Street's claims about non-infringement of Oracle's copyrights depends entirely on proving its separately pled copyright infringement claim. Because a determination of the truth or falsity of Rimini Street's statements necessarily depends on a determination of whether Rimini Street now engages in copyright infringement, the court finds these claims fall "within the subject matter of copyrights" and satisfy the first prong of preemption under *Sybersound*. *Id*. However, Oracle's challenged business torts involve and protect other rights than the exclusive rights identified in and protected under the Copyright Act, and thus, are not otherwise preempted.

In the Ninth Circuit the test for determining whether the rights protected by a state law claim are "equivalent" to the exclusive rights under the Copyright Act for preemption purposes is whether the state cause of action "protect rights which are qualitatively different from the copyright rights" and whether the state claim has "an extra element which changes the nature of the action." *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1143 (9th Cir. 2006). Here, Oracle's claims allege intentional interference with current and prospective customer relations. These claims necessarily include "extra elements" besides the underlying copyright infringement. In particular, Oracle must establish both current and potential contractual relationships with customers for Oracle's own software support services as well as counter-defendants' intent to disrupt those contractual relationships through the alleged misrepresentations in order to ultimately succeed on these claims. These additional elements are not required for Oracle to succeed on its separately pled copyright infringement claim. Where the state law claim(s) allege an extra element that changes the nature of the action, there is no preemption under the Copyright Act. *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. 2004). Further, the rights Oracle seeks to protect in these claims are its rights to contracts which are separate and distinct from Oracle's ownership rights under the Copyright Act. *See* 17 U.S.C. § 106 (identifying the exclusive rights of copyright ownership). Thus, these state law claims

afford Oracle different rights than those protected by the copyright laws and are not preempted. *See Laws*, 448 F.3d at 1144.

Moreover, state law claims based on fraudulent statements are generally not preempted by the Copyright Act unless the alleged fraud involves false statements about a party's status as a licensee (*Dastar Corporation v. Twentieth Century Fox Corp.*, 539 U.S. 23, 34-36 (2003)); the authorship or origin of the copyrighted work (*Micro/sys, Inc. v. DRS Technologies, Inc.*, 2015 WL 12748631, at *4 (C.D. Cal. February 18, 2015)); the authorization to engage in specific conduct by the copyright holder (*Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307-08 (S.D. N.Y. 2011); or the nature, characteristics, or qualities of the copyrighted work (*Id.*). Here, none of the alleged misrepresentation involve the origin or authorship of the copyrighted works, Rimini Street's status as a licensee of Oracle's copyrighted software, Rimini Street's authorization to use the Oracle copyrighted software, or the nature or qualities of Oracle's copyrighted software. And nowhere in its third amended counterclaims does Oracle allege that Rimini Street claimed ownership of the underlying software or that Rimini Street licensed any of Oracle's copyrighted software applications. Rather, the alleged misrepresentations involve factual assertions by Rimini Street that its new software maintenance and support processes do not constitute copyright infringement under the law. Therefore, based on the above, the court finds that Oracle's claims for violation of the Lanham Act, inducing breach of contract, and intentional interference with prospective economic advantage are not preempted by the Copyright Act.

### B. First Amendment Preclusion

In their motion to dismiss, Rimini Street and Ravin also argue that Oracle's misrepresentation-based business tort claims are precluded by the First Amendment to the United States Constitution. *See* ECF No. 409. Specifically, defendants argue that the alleged misrepresentations are (1) constitutionally protected non-commercial speech, (2) constitute constitutionally protected comments concerning ongoing and pending litigation, and (3) constitute non-actionable statements of opinion. As addressed below, the court disagrees.

"[M]isrepresentation claims and other actions based on a defendant's allegedly false speech must be reconciled with the First Amendment." *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d. 315, 326 (citing *Oxycal Labs., Inc. v. Jeffers*, 909 F. Supp. 719, 724 (S.D. Cal. 1995)). The First Amendment protects individuals and corporations who engage in protected speech from tort liability "where the gravamen of the claim is the alleged injurious falsehood of a statement." *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998); *see also, Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (holding that there is no tort liability for claims based on a party's statements if constitutionally protected speech is "the basis for such a claim."). The determination of whether a statement is protected under the First Amendment is a matter of law to be determined by the court. *Peterson v. Little, Brown & Co.*, 502 F. Supp. 2d. 1124, 1133 (W.D. Wash. 2007).

Oracle's business tort claims for violation of the Lanham Act, inducing breach of contract, and intentional interference with prospective economic advantage are based on four (4) separate alleged misrepresentations Rimini Street made in 2014 either about its own services or Oracle's services. First, Oracle alleges that in February 2014, Rimini Street falsely stated to its customers and the interested consuming public that it had already begun to migrate client software environments away from hosting the environments on its own servers and that its continued migration of client software environments to a different hosting method "conforms to the Court's recent ruling." ECF No. 397, ¶ 115. Second, Oracle alleges that in August 2014, Rimini Street's chief marketing officer released a company press release which was quoted in several different publications commenting that the court's rulings in *Oracle I* "relate to processes and Oracle software no longer in use at Rimini Street, and therefore do not cause interruptions to service for any client or any product." *Id.*, ¶ 114; ¶ 132(a). Third, Oracle alleges that Rimini Street made a similar statement in its e-mailed marketing materials to existing customers denying any service interruptions for ongoing maintenance and support services. *Id.*, ¶ 132(b). Finally, Oracle alleges that in November 2014, Rimini Street misrepresented to its customers that Oracle's own support services for its E-Business Suite version 11.5.10 software would be expiring on December 31, 2014. *Id.*, ¶ 132(c). The court has reviewed Rimini Street's motion

and, as addressed below, finds that the First Amendment does not preclude Oracle's misrepresentation-based business tort claims because the allegedly false and misleading statements: (1) constitute non-protected commercial speech; (2) are not protected under the litigation privilege; and (3) constitute actionable factual assertions rather than non-actionable opinion statements.

First, the court finds that Rimini Street's allegedly false statements constitute commercial speech which is afforded less First Amendment protection than non-commercial speech. *See Gorran*, 464 F. Supp. 2d. at 326 (quoting *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 524 (S.D.N.Y. 2001)) ("The level of First Amendment protection afforded a party 'depends on whether the activity sought to be regulated constitutes commercial or noncommercial speech.'"). In determining whether speech is commercial, a district court considers the three factors set forth by the Supreme Court in *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983): (1) whether the speech was an advertisement; (2) whether the speech refers to a particular product; and (3) whether the speaker has an economic motivation. *See Charles v. City of Los Angeles*, 697 F.3d 1146, 1151 (9th Cir. 2012). A party's representation constitutes commercial advertising when the statement is made "by a defendant who is in commercial competition with plaintiff" and was made "for the purpose of influencing consumers to buy defendant's goods or services." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003). If a party's speech is not commercial, then it is entitled to the full protections of the First Amendment. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002).

In its third amended counterclaims Oracle has alleged that Rimini Street is a direct competitor in the software maintenance and support market. ECF No. 397, ¶ 14; ¶ 52. Oracle has also alleged, and the court agrees, that Rimini Street's statements were made with the direct purpose of influencing consumers towards Rimini Street's maintenance and support services and away from Oracle's similar services. *Id.*, ¶ 192-193. Further, all of the alleged misrepresentations were made either in Rimini Street's e-mailed marketing materials or were part of its general marketing efforts and promotion of its services. *See Id.*, ¶ 132; ¶ 191. In fact, in every alleged misrepresentation Rimini Street directly references either its own maintenance and support

services or Oracle's services. *Id.*, ¶ 132(a) (stating that there would be no interruptions to service for any client); ¶ 132(c) (stating that Oracle's support for a particular version of E-Business Suite software would be ending). Based on these allegations and the parties' arguments in the underlying motion briefing, the court finds that Rimini Street had a clear economic motivation in making the alleged misrepresentations in order to convince current customers to stay with Rimini Street despite the ongoing litigation and recent adverse court rulings and to convince prospective clients that Rimini Street would continue to provide its regular software maintenance and support services. It is irrelevant to the court's inquiry that Rimini Street's statements were not part of a classic advertising campaign because the representations still involve Rimini Street's services and were part of the informal promotion of Rimini Street's business. *Id.* at 1181 (citing *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (holding that representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion"). Thus, the court finds that the alleged misrepresentations constitute commercial speech and are therefore not precluded from civil litigation under the First Amendment.

Second, the court finds that Rimini Street's alleged misrepresentations are not protected by the litigation privilege. The litigation privilege immunizes parties for statements made during judicial proceedings and for truthful statements about ongoing and pending litigation. *See e.g., Allstate Ins. Co. v. Shah*, 2017 U.S. Dist. LEXIS 50543, at *11 (D. Nev. March 31, 2017). The privilege operates as an absolute bar to tort liability and extends to all statements about expected, ongoing, or past court proceedings that do not distort the litigation or make the statements unfair or untrue. *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 900 (E.D. Cal. 2006); *see also, Shah*, 2017 U.S. Dist. LEXIS 50543, at *11 (quoting *Rubin v. Green*, 847 P.2d 1044, 1194 (Cal. 1993)) (stating that the privilege extends to "any communication that bears 'some relation to any ongoing or anticipated lawsuit.'"). Here, Rimini Street's statements are not covered or protected under the privilege because its statements solely concern its business practices rather than the ongoing litigation in *Oracle I*. The only mention of the ongoing litigation in *Oracle I* was in relation to Rimini Street's own maintenance and support services

and Rimini Street's statements did not reference any statements made by the court nor did they discuss the underlying issues in the court's orders. Rather, the statements mentioned that Rimini Street's clients would not be suffering from any interruptions of contracted services because Rimini Street had already engaged in modifications to its business model. *See* ECF No. 397, ¶ 132(a)-(b). Such indirect commercial statements of ongoing litigation are not the type of statements protected by the litigation privilege. *See Shah*, 2017 U.S. Dist. LEXIS 50543, at *11. Therefore, the court finds that Oracle's claims are not precluded by the litigation privilege.

Finally, the court finds that Rimini Street's statements do not constitute non-actionable opinion statements. Generally, only assertions of fact are actionable in a civil action as statements of opinion are protected by the First Amendment. *Grand Canyon Skywalk Dev., LLC v. Cieslak*, 2014 U.S. Dist. LEXIS 69749, *9 (D. Nev. March 21, 2014); *see also*, *Peterson*, 502 F. Supp. 2d at 1133 (holding that expressions of opinion are protected under the First Amendment); *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 795 (N.D. Cal. 2010) ("An expression of pure opinion is protected by the First Amendment and may not form the basis of a civil lawsuit."). However, expressions of opinion "may suggest that the speaker knows for certain facts to be true or may imply that facts exist which will be sufficient to render the message" false and then support a civil claim. *Id.* (citing *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993)). "The rule for distinguishing an opinion from an assertion of fact is whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Id.* (citing *Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001)). Reviewing Rimini Street's statements, the court finds that the alleged misrepresentations constitute more than Rimini Street's opinion about its business services and contain specific factual assertions about Rimini Street's support processes that will be proven either true or false in this litigation. In particular, Rimini Street's statements contain certain factual representations that the "processes and Oracle software" the court deemed infringing were "no longer in use at Rimini" and that the court's ruling would "not cause interruptions to service for any client or any product." ECF No. 391, ¶ 132(a). These alleged misrepresentations are not simply Rimini Street's opinion about its maintenance and support services. Further,

14

Rimini Street's statement about the end date for Oracle's E-Business Suite software application is likewise a factual assertion that is provably true or false. When Rimini Street made this statement to its customers it was not opining about Oracle's services. Instead, Rimini Street made a specific statement that Oracle was stopping its support service for a particular software product a full year before Oracle contends it was actually stopping its support services. Thus, the court finds that a reasonable person, reviewing Rimini Street's statements, would likely understand the statements to suggest or involve factual assertions rather than general opinion. As such, these statements constitute actionable assertions of fact. *Grand Canyon Skywalk Dev., LLC*, 2014 U.S. Dist. LEXIS 69749, *9. Therefore, the court finds that Oracle's misrepresentation-based business tort claims are not precluded by the First Amendment.

### C.  Lanham Act

The Lanham Act, codified at 15 U.S.C. § 1051 *et seq.*, protects federal trademarks and prohibits certain conduct including trademark infringement and false advertising. Section 43 of the Lanham Act imposes civil liability against any person or entity who makes a "false or misleading description of fact, or false or misleading representation of fact" in commercial advertising or promotion which misrepresents the nature, characteristics, or qualities of its or another person or entity's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B); *see also, Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295, 306-07 (S.D. N.Y. 2011) (stating that Section 43 prohibits misrepresentations of goods through commercial advertising or promotion).

To state a false advertising claim under Section 43, an aggrieved party must allege: (1) a false statement of fact by the defendant in a commercial advertisement or promotion about its own or another's product; (2) that the statement actually deceived or has the tendency to deceive the consuming public; (3) that the false statement is material, in that it is likely to influence the purchasing decision of the consuming public; (4) that defendant caused its false statement to enter interstate commerce; and (5) that the aggrieved party has been or is likely to be injured as a result of the false statement, either by direct diversion of sales or by a lessening of the goodwill associated with its products. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that

the statement was literally false, either on its face or by necessary implication," when viewed and analyzed in the statement's full context. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Where an advertisement is demonstrated to be literally false, a plaintiff is entitled to a presumption that the consuming public was deceived or misled by the false statement and that the false statements were material to the consuming public's purchasing decisions. *POM Wonderful LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS 55426, at *28-29 (C.D. Cal. July 17, 2008) ("A plaintiff is entitled to relief under the Lanham Act on proof of literal falsity alone, as the court will assume that the false statements actually mislead consumers."); *see also*, *Energy Four, Inc. v. Dornier Medical Systems, Inc.,* 765 F. Supp. 724, 731 (N.D. Ga. 1991) ("When representations are actually false, a court does not have to determine whether the representations are likely to create confusion" and actually false claims are presumed material.). However, "[e]ven if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod Farms*, 108 F.3d at 1140.

The court has reviewed the documents and pleadings on file in this matter and finds that Oracle has sufficiently alleged a false advertising claim under the Lanham Act. First, as addressed above, the court finds that Rimini Street's alleged misrepresentations constitute commercial speech. *See* Supra § III(B). Second, Oracle has plead sufficient facts in its third amended counterclaims demonstrating that Rimini Street's statements were literally false and thus, Oracle is entitled to a presumption of materiality and consumer deception. *POM Wonderful LLC*, 2008 U.S. Dist. LEXIS 55426, at *28-29. For example, Oracle alleges that Rimini Street stated in marketing materials to potential clients that Oracle's "support exception including payroll support expires December 31, 2014" for Oracle's E-Business Suite version 11.5.10, but that Oracle's support services for that product actually expired one year later, on December 31, 2015. ECF No. 397, ¶ 132(c). Thus, taking Oracle's allegations as true, Rimini Street's statement about Oracle's maintenance and support services was literally false as the time it was made. Similarly, Oracle alleges that Rimini Street made other misrepresentations that its current maintenance and support services and business model complied with the court's orders in *Oracle*

*I. Id.*, ¶ 132(a)-(b). Oracle has alleged that these statements are also literally false because Rimini Street's current services infringe Oracle's registered software copyrights. *Id.*, ¶ 116. Further, even if Oracle is not entitled to a presumption of materiality and consumer deception, Oracle has pled that Rimini Street's allegedly false statements were material to Rimini Street clients' decision to stay with Rimini Street' services and that its statements were likely to influence the client's purchasing decision. *Id.*, ¶ 191-193. Finally, Oracle has alleged that it has been directly injured as a result of the false statements through a direct diversion of sales from itself to Rimini Street as well as a lessening of the goodwill associated with Oracle's own products. *Id.*, ¶ 194. Therefore, based on these allegations, the court finds that Oracle has sufficiently plead a claim against counter-defendants for violation of the Lanham Act.

### D. Inducing Breach of Contract

To allege a claim for inducing breach of contract, sometimes referred to or pled as intentional interference with contractual relations, a plaintiff must allege: (1) a valid and existing contract; (2) defendant's knowledge of the contract; (3) intentional acts by the defendant intended or designed to disrupt the contractual relationship; (4) actual breach or disruption of the contract; and (5) damages from the disruption or breach. *Sutherland v. Gross.*, 772 P.2d 1287, 1290 (Nev. 1989); *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003). Further, a plaintiff must allege either an actual breach of a contract or a significant disruption, rather than simple impairment of contractual duties. *Treasury Sols. Holding Inc. v. Upromise, Inc.*, 2010 WL 5390134, at *5 (D. Nev. 2010).

The court has reviewed the underlying documents and pleadings and finds that Oracle has sufficiently alleged a claim against counter-defendants for inducing breach of contract. In its third amended counterclaims, Oracle asserts the existence of valid contracts with its customers through its software licenses which govern the customer's use of the licensed Oracle software. ECF No. 397, ¶ 196. Further, Oracle alleges that Rimini Street acted with the specific intent of causing the licensees to breach their software licenses by misrepresenting both Rimini Street's maintenance and software support services as well as the licensee's authorization to use or allow access to the underlying licensed software. *Id.*, ¶ 198-99. In particular, Oracle alleges that Rimini

17

Street has misrepresented to its customers that certain actions that it performs as part of its business services, including the creation of copies of the software, are authorized under the software licenses when in fact they constitute a direct breach of those same licenses. *Id*., ¶ 75; ¶ 102. Further, Oracle alleges that defendants knew of Oracle's contracts because they relied on the customers' licenses in order to engage in the underlying alleged copyright infringement. Finally, Oracle has identified several current clients as exemplars of clients whose software license agreements were allegedly breached by Rimini Street's conduct. *Id*., ¶ 102. Therefore, the court finds that Oracle has sufficiently pled a claim for inducing breach of contract and shall deny counter-defendants' motion as to this claim.

### E. Intentional Interference with Prospective Economic Advantage

Under Nevada law, to sufficiently plead a claim for intentional interference with prospective economic advantage, a plaintiff must allege: (1) the existence of a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of that prospective relationship; (3) an intent to harm the plaintiff by preventing or interfering with the prospective contractual relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987); *see also, Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993). In order to establish the requisite intent to harm, a plaintiff "must show that the means used to divert the prospective advantage was unlawful, improper, or was not fair and reasonable." *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003) (internal citations omitted); *see also, Las Vegas-Tonopah-Reno Stage Line, Inc., v. Gray Line Tours of S. Nev.*, 792 P.2d 386, n. 1 (Nev. 1990) (emphasizing that "[i]mproper or illegal interference is crucial to the establishment of this tort"). Further, to allege actual harm, a plaintiff must allege that he "would have been awarded the contract but for the defendant's interference." *Bally Tech., Inc., v. Bus. Intelligence Solutions*, 2012 WL 3656498, * 4 (D. Nev. Aug. 23, 2012); *see also, Roche v. Audio Visual Servs. Grp., Inc.*, 2011 WL 2971034, * 5 (D. Nev. July 20, 2011) (holding that actual harm "is not satisfied when the pleadings indicate that the harm which occurred could just as easily have occurred due to acts other than those of the

Defendant."). Finally, in order to sufficiently allege a claim for intentional interference with prospective business advantage, it is essential that the plaintiff plead facts showing that defendant interfered with plaintiff's relationship with a particular individual. *Damabeh v. 7-Eleven, Inc.*, 2013 U.S. Dist. LEXIS 66565, at \*29 (N.D. Cal. 2013). Allegations that a defendant interfered with the plaintiff's relationship with an unidentified customer are not sufficient, nor are general allegations that the plaintiff had ongoing expectations in continuing economic relationships with current or prospective customers. *Id*. at \*30. (holding that "[w]ithout an existing relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit.'") (internal citations omitted).

In their motion to dismiss, Rimini Street and Ravin argue that Oracle has failed to identify a single prospective contractual relationship that was disrupted by the allege misrepresentations. *See* ECF No. 409. The court agrees. Nowhere in Oracle's third amended counterclaims has Oracle identified a specific relationship or specific prospective customer with which counter-defendants are alleged to have interfered. Rather, Oracle merely alleges it has "an expectancy in continuing advantageous economic relationships with current and prospective purchasers and licensees of Oracle's support services and software" and that these "relationships contained the probability of future economic benefit in the form of profitable support service contracts and software licenses." ECF No. 397, ¶ 203-04. The court acknowledges Oracle's argument that its allegations involve a discrete set of customers, namely Oracle licensees who specifically left Oracle's maintenance and support services to go to Rimini Street due to Rimini Street's misrepresentation, but Oracle does not specifically identify any of these discrete customers who would have continued with Oracle for maintenance and support services but for Rimini Street's misrepresentations. Further, the court acknowledges Oracle's argument that its current allegations are similarly pled to its interference with prospective economic advantage claim in *Oracle I* which the court found was sufficiently pled back in August 2010. *See Oracle I*, case no. 2:10-cv-0106-LRH-VCF, ECF No. 78. However, at the time the court entered its original order in *Oracle* I, the court was not as familiar with the parties or the litigation as the

19

court is now and the parties had not been engaged in over seven years of discovery and continuing litigation over similar, if not nearly identical, claims. In *Oracle I* the court was more lenient with Oracle's allegations as Oracle claimed that much of the knowledge as to which licensees had contracted with Rimini Street was solely within Rimini Street's knowledge. Now, the burden is on Oracle to identify either a prospective client or prospective contract, especially as the identities of prospective clients is information that Oracle should have discovered after years of litigation in *Oracle I*. Further, Oracle has failed to offer any explanation or reason as to why it could not identify, as it did in its inducing breach of contract claim, any prospective customer or economic advantage that Rimini Street allegedly interfered with in the three years since Rimini Street made the underlying misrepresentations. Therefore, the court finds that Oracle has failed to sufficiently plead a claim for intentional interference with prospective economic advantage and the court shall grant counter-defendants' motion as to this claim.

### F. Unfair Competition Claim

As part of its third amended counterclaims, Oracle has alleged a claim for unfair competition under California Business and Professions Code Section 17200 ("California's UCL"). *See* ECF No. 397. California's unfair competition statute prohibits any unfair competition, which is defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200. Oracle specifically alleges a violation under both the "unfair" and "unlawful" prongs of the California statute. ECF No. 397, ¶ 218; ¶ 223.

In their motion to dismiss, counter-defendants argue that Oracle cannot state a claim under the "unlawful" prong because Oracle has failed to sufficiently allege a predicate violation. *See Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171, 1179 (E.D. Cal. 2015) (holding that "[w]here a plaintiff cannot state a claim under the 'borrowed' law, it cannot state a UCL claim either."). Here, however, Oracle has sufficiently alleged claims under both the Lanham Act and for inducing breach of contract which satisfies the predicate "unlawful" business practices for a violation of California's UCL. *See Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App. 2009) ("An unlawful business practice under

the UCL is anything that can properly be called a business practice and that at the same time is forbidden by law.").

Counter-defendants also contend that Oracle has failed to state a claim under the "unfair" prong of California's UCL. In actions between direct competitors the word "unfair" in California's UCL is interpreted to mean "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). In its third amended counterclaims, Oracle alleges that Rimini Street engaged in a systematic breach of Oracle's software licenses in order to gain a competitive edge over Oracle in providing software maintenance and support services. ECF No. 397, ¶ 222. Further, Oracle has sufficiently pled a claim for false advertising in violation of the Lanham Act which Oracle alleges is a significant harm to competition. *Supra* § III(C). Finally, Oracle has alleged that it was directly harmed by counter-defendants' anti-competitive activities. ECF No. 397, ¶ 223-224. Therefore, the court finds that Oracle has sufficiently pled a claim for violation of California's UCL under both the "unlawful" and "unfair" prongs.

## G. Unjust Enrichment

Unjust enrichment is a quasi-contract claim that stands in equity where the parties do not have an express contract guiding the parties' conduct. *Kunio Tsutsumi v. Advanced Power Techs., Inc.*, 2013 WL 1953716, at *8 (D. Nev. May 10, 2013). To plead a claim for unjust enrichment, a plaintiff must allege that the defendant unjustly retained money or property against fundamental principles of equity. *See Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 700 (Nev. 1995). Under Nevada law, the elements of an unjust enrichment claim are: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment." *Kabins Family LP v. Chain Consortium*, 2010 WL 3001890, at *6 (D. Nev. July 27, 2010).

In their motion to dismiss, counter-defendants contend that Oracle has failed to allege that it conferred a benefit on Rimini Street and thus, it fails to state a claim for unjust enrichment. The court agrees. In its third amended counterclaims, Oracle alleges that Rimini Street was enriched by Oracle's customers by misdirecting business away from Oracle and retained profits that would have otherwise gone to Oracle. *See* ECF No. 391, ¶ 227. However, the benefit received by Rimini Street (monies paid for software support services) was not conferred by Oracle. Rather, Oracle's licensees hired and contracted with Rimini Street to provide software support services. Thus, any revenue Rimini Street gained was from Oracle's licensees and not Oracle. Where, as here, a third party bestowed the benefit, a claim for unjust enrichment fails because the benefit does not "in equity and good conscience belong[] to the plaintiff." *Flowers v. Eli Lilly & Co.*, 2014 WL 5822845, at *5 (D. Nev. Nov. 7, 2014). Therefore, the court finds that Oracle has failed to allege a claim for unjust enrichment and shall dismiss this claim accordingly.

## H. Accounting

An action for an accounting "is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due, administer full relief and render complete justice." *Verdier v. Superior Court*, 88 Cal. App. 2d 527, 530 (Cal. 1948). An accounting "is equitable in nature, and may be sought 'where . . . the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable.'" *Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal. App. 3d 1, 14 (Cal. 1977) (citation and quotes omitted). Although courts typically grant an accounting where a fiduciary relationship exists between the parties, courts have extended the remedy of accounting to nonfiduciaries where "dealings between the parties are so complex that an equitable master, and not a jury, is required to sort out the various dealings between the parties." *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 918-19 (Bankr. D. Nev. 2005).

In its third amended counterclaim, Oracle seeks an accounting to ascertain the income and gross profits Rimini Street and Ravin have allegedly obtained from their unlawful conduct. In opposition, counter-defendants argue that there is no fiduciary relationship between the parties and as such, an accounting is not warranted. *See* ECF No. 409. Although the parties in this

matter do not have a fiduciary relationship, the court shall not dismiss this claim at this time because the record before the court is insufficient to determine the complexity of the parties' relationship with each other, the various relationships between the parties' customers, the associated damages of Oracle claims, and the profits obtained by counter-defendants alleging unlawful acts.

IT IS THEREFORE ORDERED defendants' motion to dismiss (ECF No. 409) is DENIED in-part and GRANTED in-part in accordance with this order. Defendant/counterclaimants Oracle International Corporation and Oracle America, Inc.'s fifth cause of action for intentional interference with prospective economic advantage and eighth cause of action for unjust enrichment are DISMISSED with prejudice from defendant/counterclaimants' third amended counterclaims (ECF No. 397).

IT IS SO ORDERED.

DATED this 21st day of September, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE