UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RIMINI STREET, INC. a Nevada Corporation;

        Plaintiff,

     v.

ORACLE INTERNATIONAL
CORPORATION, a California Corporation,

        Defendant.

_____

ORACLE AMERICA, INC., a Delaware
Corporation; and ORACLE
INTERNATIONAL CORPORATION,

        Plaintiff,

     v.

RIMINI STREET, INC.; and SETH RAVIN, an
individual,

        Counter-defendants.

Case No. 2:14-cv-1699-LRH-CWH

ORDER

Before the court is defendant and counter-claimants Oracle International Corporation and Oracle America, Inc.'s (collectively "Oracle") motion to dismiss claims two through eight of plaintiff Rimini Street, Inc.'s ("Rimini Street") third amended complaint (ECF No. 487). ECF No. 505. Plaintiff Rimini Street filed an opposition (ECF No. 537) to which Oracle replied (ECF No. 543).

## I.    Facts and Procedural Background

Defendant Oracle develops, manufacturers, and licenses computer software, particularly Enterprise Software Programs.[1] Rather than sell its software to consumers outright, Oracle licenses its software to customers through software licensing agreements which govern the customers' rights to use the software. Along with its software licensing business, Oracle also provides software maintenance and support services to its software licensees through separate software support service contracts. Oracle holds a number of federal copyrights for its various software applications, including the particular Enterprise Software Programs at issue in this action.

Plaintiff Rimini Street provides third-party maintenance and support services to consumers who license software applications from other software companies and competes directly with Oracle to provide these after-license services. Rimini Street does not develop or manufacture its own competing software applications and holds no federal copyrights. Rather, Rimini Street contracts with software licensees to provide software maintenance and support services for certain software applications including the particular Oracle copyrighted Enterprise Software Programs at issue in this action. Counter-defendant Seth Ravin ("Ravin") is the owner and CEO of Rimini Street.

This is the second action between the parties. In the first action, *Oracle USA., Inc. v. Rimini Street, Inc.*, case no. 2:10-cv-0106-LRH-(VCF) ("*Oracle I*"), Oracle brought several claims against Rimini Street and Ravin for copyright infringement and other business-related torts based on (1) the process Rimini Street used to provide software maintenance and support services to customers who had licensed Oracle software, and (2) the manner in which Rimini Street accessed and preserved copies of Oracle's copyrighted software source code. *See Oracle I*, case no. 2:10-cv-0106-LRH-(VCF), ECF No. 1. While litigation in *Oracle I* was proceeding,

---

[1] Enterprise Software is a type of computer software program that enables core operational tasks - like payroll, human resource tasking, and inventory management - across an entire organization. Instead of being tied to a specific computer, Enterprise Software is hosted on a server and provides simultaneous access and service to a large number of users over a computer network. These features and functions are in contrast to typical computer software, which is generally a single-user application executed on a user's personal computer. A key feature of Enterprise Software is the ability to modify and customize the software for an entity's specific needs and to support the software through periodic updates to maintain the software's continuing functionality and compliance with regulatory and tax changes.

Rimini Street allegedly changed the manner by which it accessed and preserved its customer's licensed software and the process by which it provided software maintenance and support services to its clients in response to the court's summary judgment orders (*Oracle I*, case no. 2:10-cv-0106-LRH-VCF, ECF Nos. 474, 476). Subsequently, on October 15, 2014, Rimini Street initiated the present action against Oracle seeking a declaration from the court that its new software maintenance and support processes do not infringe Oracle's software copyrights. *See* ECF No. 1.

After Rimini Street changed its maintenance and support model for servicing Oracle's copyrighted software, Oracle allegedly made several false statements about Rimini Street's business services to Oracle licensees who had or were thinking about contracts with Rimini Street for after-license support services. In particular, Oracle allegedly told its licensees that Rimini Street was still engaging in copyright infringement of Oracle's software copyrights and that Rimini Street's new software support model for Oracle copyrighted software does not comply with the court's orders in *Oracle I*. Further, Oracle allegedly misrepresented the type and quality of software maintenance and support services that Rimini Street is capable of providing. Rimini then twice amended its complaint to add new allegations and claims against Oracle based on these alleged misrepresentations. *See* ECF Nos. 63, 367.

On January 17, 2017, Oracle sent Rimini Street a letter providing 60 days' notice of Oracle's intent to revoke Rimini Street's access to Oracle's various support websites.[2] After the sixty-day period ran, Oracle allegedly revoked and terminated all of Rimini Street's access to Oracle's support websites, thereby allegedly preventing Rimini Street from carrying out certain support services for Rimini Street's clients. In response, Rimini Street filed a motion for leave to file a third amended complaint to add new allegations and claims arising from Oracle's revocation of access to the support websites (ECF No. 465) which was granted by the court (ECF No. 486). Subsequently, on May 2, 2017, Rimini Street filed its third and final complaint

---

[2] Oracle hosts several different websites on which Oracle offers various software updates, patches, and other software support materials and documentation for licensees of Oracle's software. These support websites are made available to licensees through client logins which allow the licensees to access the websites and download particular fixes and support materials for the licensee's particular licensed Oracle software application.

against Oracle alleging eight (8) causes of action: (1) declaratory judgment that Rimini Street's new software maintenance and support processes do not infringe Oracle's software copyrights; (2) declaratory judgment that Rimini Street has not engaged in any violation of the Federal, California, and Nevada anti-hacking statutes; (3) declaratory judgment that Oracle has engaged in copyright misuse; (4) intentional interference with contractual relations; (5) intentional interference with prospective economic advantage; (6) violation of Nevada's Deceptive Trade Practices Act, Nevada Revised Statutes ("NRS") § 598 *et seq.*; (7) violation of the Lanham Act; and (8) unfair competition in violation of California Business & Professions Code § 17200 *et seq.* ECF No. 487. Thereafter, Oracle filed the present motion to dismiss certain claims from Rimini Street's third amended complaint. ECF No. 505.

## II.  Legal Standard

### A.  Rule 12(b)(6)

Defendant Oracle seeks dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a legally cognizable cause of action. *See* Fed. R. Civ. P. 12(b)(6) (stating that a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) does not require detailed factual allegations; however, a pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet this broad pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw

the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See Id.* at 678-679 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks and citations omitted). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, bare assertions in a complaint amounting "to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 698) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

### B. Rule 9(b)

Pursuant to the Federal Rules of Civil Procedure, a complaint triggers the heightened pleading standard of Rule 9(b), rather than the broad notice pleading standard of Rule 8(a)(2), when the complaint alleges facts that "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). To determine whether a complaint sounds in fraud, a court looks to the substance of the party's allegations. *Id.* There are no "magic words" or formal requirements for a complaint to sound in fraud (*Id.* at 1108), and fraud need not be an element of a claim for Rule 9(b)'s heightened pleading standard to apply to the allegations in a complaint (*See Grand Canal Shops II, LLC v. Iavarone*, 2012 WL 6041643, at *2 (D. Nev. Dec. 4, 2012)). Generally, a complaint that alleges a party made "misrepresentations" in order to induce a breach of contract or otherwise interfere with current or prospective contractual relations is sufficient to trigger Rule 9(b)'s heightened pleading standard. *See e.g., BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, No. C10-1053, 2010 WL 3853025, at *3 (N.D. Cal. Sept. 29, 2010);

5

*Hologram USA, Inc. v. Pulse Evolution Corp.*, 2015 WL 316900, at *4 (D. Nev. Jan. 23, 2015).

Similarly, a complaint that alleges a party violated the Lanham Act by making

misrepresentations in its advertising and marketing materials likewise triggers Rule 9(b)'s

pleading standard. *LT Int'l Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1244-45

(D. Nev. 2014).

To sufficiently allege a claim under Rule 9(b) of the Federal Rules of Civil Procedure, a

complaint must make specific allegations of the alleged fraud sufficient "to give defendants

notice of the particular misconduct which is alleged to constitute the fraud charged so that they

can defend against the charge and not just deny that they have done anything wrong." *Semegen v.*

*Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To provide a defendant with appropriate notice, a

complaint must allege the "time, place, and specific content of the false representations as well

as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756,

764 (9th Cir. 2007); *see also*, *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 102 (E.D. Cal.

2010) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (Cal. 1991))

("[I]n a fraud action against a corporation, a plaintiff must 'allege the names of the persons who

made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what

they said or wrote, and when it was said or written.'"). However, there is a recognized exception

to Rule 9(b)'s heightened pleading standard when "the facts constituting the circumstances of the

alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him."

*Nuebronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). "In such situations, plaintiffs cannot be

expected to have personal knowledge of the relevant facts" and the court may review the

sufficiency of the complaint under Rule 8(a)(2)'s pleading standard. *Id*.

## III. Discussion

In its motion, Oracle seeks to dismiss six (6) claims from Rimini Street's third amended

complaint (ECF No. 487): claim two for a declaratory judgment that Rimini Street has not

engaged in any violation of the Federal, California, and Nevada anti-hacking statutes; claim three

for a declaratory judgment that Oracle has engaged in copyright misuse; claim four for

intentional interference with contractual relations; claim five for intentional interference with

prospective economic advantage; claim six for violation of Nevada's Deceptive Trade Practices Act, NRS § 598 *et seq.*; claim seven for violation of the Lanham Act; and claim eight for unfair competition in violation of California Business & Professions Code § 17200 *et seq. See* ECF No. 505. The court shall address each claim below.

## A. Declaratory Judgment re: Anti-Hacking Statutes

Rimini Street's second cause of action is for a declaratory judgment that it did not, has not, and would not violate either the Federal Computer Fraud and Abuse Act ("CFAA"), the California Computer Data Access and Fraud Act ("CDAFA"), or the Nevada Computer Crimes Law ("NCCL") by continuing to access Oracle's support websites after Oracle's purported revocation of Rimini Street's authorization to access those support websites.[3] ECF No. 487. Rimini Street's claim for declaratory relief is based upon Oracle's January 17, 2017 cease-and-desist letter which informed Rimini Street that its authorization to access Oracle's various support websites would be revoked as of March 18, 2017. In its third amended complaint, Rimini Street alleges that it acts as an authorized agent for its clients who license Oracle's copyrighted software and, as part of those software licenses, are specifically authorized to access Oracle's support websites. ECF No. 487, ¶ 117. Based on the alleged express authorization to access Oracle's support websites on the licensees' behalf, Rimini Street seeks a declaration from the court that continued access of Oracle's support websites after March 18, 2017, is not a violation of the CFAA, CDAFA, and the NCCL.

///

---

[3] The Federal CFAA prohibits "[a]cts of computer trespass by those who are not authorized users or who exceed authorized use." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2015). Specifically, the CFAA imposes criminal and civil liability for "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss." 18 U.S.C. § 1030(a)(5)(C). Similarly, California's CDAFA, found at California Penal Code § 502, imposes criminal and civil liability on any person who "[k]nowingly accesses and without authorization takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network" or "[k]nowingly and without permission uses or causes to be used computer services." CAL. PENAL CODE § 502(a)(2) - (3). Finally, the NCCL also imposes criminal and civil liability on "a person who knowingly, willfully and without authorization . . . [o]btains or attempts to obtain, permit access to or causes to be accessed . . . a program or any supporting documents which exist inside or outside a computer, system or network" or "who knowingly, willfully, and without authorization . . . [o]btains or attempts to obtain access to, permit access to or causes to be accessed . . . a computer, system or network." NEV. REV. STAT. §§ 205.4761(1) & (3); NEV. REV. STAT. § 205.511(1).

In its motion to dismiss, Oracle contends that Rimini Street's declaratory relief claim fails to state a claim for relief as a matter of law in light of recent Ninth Circuit precedent established in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016). *See* ECF No. 505. Specifically, Oracle argues that in light of *Facebook*, Rimini Street's continued access of Oracle's support websites after Oracle's explicit revocation of authorization constitutes a violation of the CFAA, CDAFA, and the NCCL regardless of any prior or subsequent authorization from Oracle's software licensees.

The court has reviewed the allegations in Rimini Street's third amended complaint, along with the documents and pleadings on file in this matter, and finds that the court cannot, on the limited record and argument before the court, conclude that Rimini Street's continued access of Oracle's support websites after March 18, 2017, is or is not a violation of the Federal, California, and Nevada anti-hacking statutes. The court recognizes Oracle's argument that the Ninth Circuit's recent decision in *Facebook* confirms that continuing to access a website after receiving an express revocation of authorization to access that website by the website's owner is an actionable violation of both the CAFA and the CDAFA.[4] *See Facebook, Inc.*, 944 F.3d 1058, 1067-1069 (reaffirming the rule that a defendant violates the CFAA and CDAFA when the defendant accesses a website after permission to access the website has been specifically revoked by the owner of the website and the defendant was aware of such express revocation). However, although *Facebook* dealt, in a limited manner, with subsequent third party authorization to access a website after the website's owner revoked such authorization,[5] the parties have not addressed the issue of *Facebook*'s precedential effect in this action where the third party authorization comes from a licensee with a direct contractually vested property interest in accessing the website which arises from the underlying license. And here Rimini Street has specifically pled that Oracle's software licenses specifically grant the licensee "the right to access, download, and use the bug fixes, patches, and updates that Oracle makes available" on its support websites.

---

[4] The court finds that the ruling in *Facebook* would be equally applicable to the NCCL which prohibits similar conduct to that prohibited by the CAFA and CDAFA.

[5] *Facebook, Inc.*, 944 f.3d 1058, 1067 ("Once permission has been revoked, technological gamesmanship or the enlisting of a third party to aid in access will not excuse liability.").

ECF No. 487, ¶ 62. Rimini Street has further alleged that the software licenses specifically allow the licensee to appoint an agent to access the support websites and execute downloads on the licensees' behalf. *Id*. ¶ 63-64. In this vein, Rimini Street has alleged that its clients - the licensees of Oracle's software - have granted Rimini Street the authority to access the Oracle support websites on their behalf. *Id*. ¶ 83. Based on these allegations, the parties' minimal briefing on this issue, and *Facebook's* limited discussion of subsequent third party authorization, the court finds that further development of this claim - including the actual language of Oracle's software licenses and the extent of the licensee's authorization to Rimini Street - is necessary to properly evaluate this claim. Therefore, the court shall deny Oracle's motion to dismiss this claim without prejudice.

### B. Declaratory Judgment re: Copyright Misuse

In its third claim for relief, Rimini Street seeks a declaratory judgment that Oracle has engaged in copyright misuse arises from its January 17, 2017 cease-and-desist letter and, as such, Oracle's software copyrights are unenforceable as a matter of law. *See* ECF No. 487. Oracle moves to dismiss this claim contending that Rimini Street's present copyright misuse claim is duplicative of its separately pled affirmative defense of copyright misuse raised in response to Oracle's copyright infringement counterclaims and should be dismissed. *See* ECF No. 505. The court agrees.

Generally, a claim for declaratory judgment of copyright misuse is duplicative of a separately pled affirmative defense of copyright misuse and should be dismissed as such. *Adobe Systems Inc. v. Kornrumpf*, 2011 WL 3055223, at *2 (N.D. Cal. 2011). In order for a declaratory judgment claim of copyright misuse to not be duplicative, a defendant must demonstrate that the declaratory relief claim would address additional issues or provide additional insight "not afforded by adjudication of their copyright misuse defense." *Id*. at *3. Here, Rimini Street has not established that its present claim is not redundant or duplicative of its affirmative defense. Nowhere in its third amended complaint has Rimini Street alleged that the present claim covers conduct not addressed by its copyright misuse affirmative defense based on the same cease-and-desist letter. In fact, the allegations and arguments supporting both claims are the same. As such,

there is no suggestion that Rimini Street's "copyright misuse affirmative defense would be insufficient." *Id.* Further, there is no indication that a declaratory judgment of copyright misuse would serve a separately useful purpose in this action. Therefore, the court finds that Rimini Street's separately pled affirmative defense will afford it sufficient protection for Oracle's alleged misuse of its copyrights. Accordingly, the court shall grant Oracle's motion and dismiss this claim.

### C. Intentional Interference with Contractual Relations

To sufficiently allege a claim for intentional interference with contractual relations a plaintiff must allege: (1) a valid and existing contract; (2) defendant's knowledge of the contract; (3) intentional acts by the defendant intended or designed to disrupt the contractual relationship; (4) actual breach or disruption of the contract; and (5) damages from the disruption or breach. *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989); *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003). Further, a plaintiff must allege either an actual breach of a contract or a significant disruption of a contract rather than a simple impairment of contractual duties. *Treasury Sols. Holding Inc. v. Upromise, Inc.*, 2010 WL 5390134, at *5 (D. Nev. 2010).

In its third amended complaint, Rimini Street asserts the existence of valid contracts between itself and its clients "to provide aftermarket support services for software that its clients had licensed from Oracle" and that Oracle had knowledge of these software support service contracts at all relevant times in this action. ECF No. 487, ¶125-126. Rimini Street then alleges three separate theories of Oracle's intentionally interfering conduct. First, Rimini Street alleges that Oracle made several misrepresentations to Rimini Street's clients about Rimini Street's business services in order to cause those clients to breach and/or terminate their support service contracts with Rimini Street. *See Id.*, ¶ 37-56. Second, Rimini Street alleges that Oracle engaged in selective audits of Rimini Street's clients in order to harass and drive those clients away from Rimini Street's software maintenance and support services. *See Id.*, ¶ 57-58. Finally, Rimini Street alleges that Oracle's January 17, 2017 cease-and-desist letter impermissibly revoked Rimini Street's access to Oracle's support websites thereby causing severe contractual disruptions between Rimini Street and its clients. *See Id.*, ¶ 59-90.

10

In its motion to dismiss, Oracle argues that each of Rimini Street's separate theories of intentional contractual interference fails to state a claim upon which relief can be granted. The court shall address each theory below.

### 1. Misrepresentations to Rimini Street Clients

In support of its intentional interference with contractual relations claim based upon Oracle's misrepresentations, Rimini Street alleges that Oracle made several false statements concerning Rimini Street's maintenance and support services directly to Rimini Street's clients including falsely stating that using Rimini Street's services renders the clients' underlying licensed software "unsupportable." *Id.*, ¶¶44-50. Rimini Street further alleges that Oracle made those misrepresentations with the specific intent of causing those clients to disrupt, breach, or terminate their support service contracts. *Id.* As a consequence of these alleged misrepresentations, Rimini Street alleges that it has "been forced to dedicate substantial resources to investigate and respond to client concerns related to Oracle's wrongful conduct . . . thereby making [its] enjoyment of the contracts more expensive and burdensome." *Id.*, ¶ 129. Rimini Street has also alleged that ultimately, as a result of Oracle's conduct, "some current [Rimini Street] clients decided not to expand their relationships with [Rimini Street], and some other [Rimini Street] clients terminated their relationships with [Rimini Street]" and Rimini Street has specifically identified several current clients in its third amended complaint as exemplars of clients who demanded Rimini Street expend additional resources to meet its contractual obligations only to terminate their support service contracts. *Id.*, ¶ 56.

Oracle first argues that Rimini Street's claim fails because there are no allegations in the third amended complaint that the alleged misrepresentations caused any actual disruption or breach of Rimini Street's support service contracts either by Rimini Street or by its clients. In particular, Oracle contends that Rimini Street must allege specific facts showing that Oracle's conduct directly caused disruption of its support service contracts. *See Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 2015 WL 5768534, at *7 (D. Nev. 2015). However, the court notes that Rimini Street has specifically alleged that because of Oracle's alleged misrepresentations, Rimini Street's clients raised concerns with Rimini Street about the validity

and legality of its support service contracts and caused confusion among Rimini Street's clients as to the actual services it offers. *See* ECF No. 487, ¶ 44-56. Rimini Street further alleges that it was required to expend significant resources to investigate and address those concerns and eliminate any confusion the client had over the services Rimini Street offered and that such expenditure of Rimini Street's limited resources made its ultimate performance under those contracts more expensive and burdensome which ultimately deprived Rimini Street of the full benefit and enjoyment of its support service contracts. ECF No. 487, ¶ 129. Such allegations of increased cost for performance have consistently been held sufficient to allege an actual disruption of a contract for an intentional interference with contractual relations claim. *See Colonial Life and Accident Insurance Co. v. Stentorians*, 2014 WL 794571, at *5 (C.D. Cal. 2014); *see also, Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1129 (1990) ("We have recognized that interference with the plaintiff's performance may give rise to a claim for interference with contractual relations if plaintiff's performance is made more costly or more burdensome" by the defendant's intentional conduct.). Thus, the court finds that Rimini Street has sufficiently alleged an actual contractual disruption as a result of Oracle's alleged misrepresentations to support a claim for intentional interference with contractual relations.

Oracle also contends that Rimini Street's allegations that some clients have terminated their support service contracts as a result of Oracle's alleged misrepresentations are insufficient to constitute an intentional interference claim because Rimini Street's support service contracts are terminable at-will. Generally, an action for intentional interference with contractual relations cannot be based upon a defendant inducing the termination, rather than breach, of a contract that is terminable at will unless it was done maliciously or with improper means. *See* 44B AM.JUR. 2d, *Interference* § 23; *see also, Reeves v. Hanlon*, 33 Cal.4th 1140, 1151 (2004) (holding that causing the termination of an at-will contract is not actionable as a claim for intentional interference with contractual relations); *see also, Ferris v. South Florida Stadium Corp.*, 926 So. 2d 399, 402 (Fla. 2006) (holding that where interference with an at-will contract is direct and unjustified, that interference is actionable in tort). Here, Rimini Street has alleged that the purpose behind Oracle's alleged misrepresentations was to "cause fear and uncertainty among"

Rimini Street's clients and to specifically harm Rimini Street. ECF No. 487, ¶ 55. Thus, the court cannot find, at this time, that Oracle's alleged conduct was justifiable. Further, there is no evidence before the court of the nature of Rimini Street's contracts with its clients and whether those contracts are truly terminable at-will. As such, the court finds that Rimini Street has also sufficiently alleged that its clients' termination of their support service contracts as a result of Oracle's alleged misrepresentations constitutes an intentional interference with its contractual relations. Therefore, based on the allegations in the third amended complaint, the court finds that Rimini Street has sufficiently pled a claim for intentional interference with contractual relations based on alleged misrepresentations by Oracle.

### 2. "Selective" Customer Audits

Rimini Street's second theory for intentional interference with contractual relations alleges that Oracle is "using the threat of software license audits to interfere with [Rimini Street's] client relationships." ECF No. 487, ¶ 57. In particular, Rimini Street alleges that Oracle has already engaged in audits of certain Rimini Street clients who have licensed Oracle software pursuant to the client's particular Oracle software license agreements and threatened to audit other Rimini Street clients for the sole purpose of harassing those clients and improperly coercing them into terminating their support service contracts with Rimini Street. *Id*. Further, Rimini Street alleges that these "selective" audits are nothing but "a pretext for Oracle to demand a highly burdensome license audit at the client's expense simply for doing business with Rimini Street." *Id*., ¶ 58. As a result of these audits, Rimini Street alleges that "clients have terminated their contracts with [Rimini Street] or opted not to renew because of Oracle's threats and actions." *Id*.

Initially, Oracle again argues that Rimini Street's allegations related to client termination of Rimini Street's support service contracts are insufficient to support an intentional interference claim because those support service contracts are terminable at-will. However, as addressed above, where the alleged interference with an at-will contract is malicious and unjustified, as alleged here, causing the termination of an at-will contract is actionable. *See Supra* §C(1) (citing *Ferris*, 926 So. 2d at 402).

13

Oracle also seeks to dismiss this claim on the basis that it has an absolute right to enforce its own contracts and, as such, its conduct of auditing its licensees pursuant to the express provisions of its software licenses is not actionable, even if it ultimately caused the licensees to breach or terminate their support service contracts with Rimini Street. *See* ECF No. 505. As addressed below, the court finds that Oracle's argument is premature and cannot be determined on the limited motion to dismiss standard which solely concerns the sufficiency of the allegations pled in Rimini Street's third amended complaint. *See Iqbal*, 556 U.S. at 678.

Generally, there is no liability for causing a breach of contract where the breach is caused by the exercise of an absolute right, that is, an act which a person or entity has a definite legal right to engage in without any qualification. *See* 44B AM.JUR. 2d *Interference* §22. An absolute right includes rights incident to ownership of property, rights growing out of contractual relations, and the right to enter or refuse to enter into contractual relations. *Id*. Further, one is privileged to cause another not to enter into or continue a business relation with a third person by asserting in good faith, or threatening to protect properly, a legally protected right believing that the interest may otherwise be impaired or destroyed by the performance of the transaction. *Id*.

Here, Rimini Street recognizes that Oracle is "permitted to audit its customers' licenses under its license agreements." ECF No. 487, ¶ 57. Thus, Oracle's right to engage in an audit is a right growing out of a contractual relationship and constitutes an absolute right. The question now becomes whether Oracle's threat to use and actual use of its audit right was, as Oracle contends, in good faith or with a belief that it was necessary to protect its own contractual rights. In its motion to dismiss, Oracle contends that the audits were necessary to determine whether clients were utilizing improper downloading tools to download materials from Oracle's support websites and whether the licensees were accessing only that information which they were entitled to obtain under their specific software license agreements. *See* ECF No. 505. However, there is no evidence before the court supporting Oracle's contention as the parties have not yet conducted any discovery on this claim. Further, Rimini Street has alleged that Oracle did not have any good faith basis to threaten an audit because Oracle had knowledge that Rimini Street's clients were not engaged in any conduct violating their particular Oracle software license

14

agreements. *See Id.*, ¶ 58. Moreover, there are no allegations in the third amended complaint identifying the specific license language Oracle contends supports its argument. Therefore, based upon the allegations in the complaint, the court finds that Rimini Street has sufficiently pled a claim for intentional interference with contractual relations based upon Oracle's audits.

### 3. January 17, 2017 Cease-and-Desist Letter

Rimini Street's third and final theory for intentional interference with contractual relations arises from Oracle's January 17, 2017 cease-and-desist letter. In support of this theory Rimini Street alleges that clients routinely engage Rimini Street to assist them in identifying support files from Oracle's support websites that the clients are entitled to download pursuant to their Oracle software license agreements and then appoint Rimini Street as their agent to execute those downloads from Oracle's support websites on their behalf. ECF No. 487, ¶ 63, 83. Rimini Street further alleges that it has been offering these services to clients for over a decade and with Oracle's full knowledge of these client contracts. *Id.*, ¶ 64, 84. However, Rimini Street alleges that on "January 17, 2017, Oracle sent [Rimini Street] a cease and desist letter stating that, in 60 days, Oracle intended to revoke [Rimini Street's] access to" Oracle's support websites, and did, in fact, revoke Rimini Street's access sixty days later on March 18, 2017. *Id.*, ¶ 60. As a result of Oracle's revocation, Rimini Street alleges that it was prevented "from completing downloading services that [it] was contractually obligated to provide," and Rimini Street has identified a number of clients whose support service agreements were either breached or disrupted because of Oracle's revocation of access to its support websites. *Id.*, ¶ 86-88. Finally, Rimini Street has alleged that Oracle's purpose in sending the cease-and-desist letter was to disrupt Rimini Street's ability to service its clients and cause Rimini Street to either breach its own contracts with its clients or expend significant additional resources in completing its obligations. *Id.*, ¶ 85. Based on these allegations, the court finds that Rimini Street has sufficiently pled a claim for intentional interference with contractual relations based on Oracle's January 17, 2017 cease-and-desist letter and subsequent revocation of access to Oracle's support websites.

///

///

## D.  Intentional Interference with Prospective Economic Advantage

Under Nevada law, to sufficiently plead a claim for intentional interference with prospective economic advantage, a plaintiff must allege: (1) the existence of a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of that prospective relationship; (3) an intent to harm the plaintiff by preventing or interfering with the prospective contractual relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987); *see also, Wichinsky v. Mosa*, 847 P.2d 727, 729-30 (Nev. 1993). In order to establish the requisite intent to harm, a plaintiff "must show that the means used to divert the prospective advantage was unlawful, improper, or was not fair and reasonable." *Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003) (internal citations omitted); *see also, Las Vegas-Tonopah-Reno Stage Line, Inc., v. Gray Line Tours of S. Nev.*, 792 P.2d 386, n. 1 (Nev. 1990) (emphasizing that "[i]mproper or illegal interference is crucial to the establishment of this tort"). Further, to allege actual harm, a plaintiff must allege that he "would have been awarded the contract but for the defendant's interference." *Bally Tech., Inc., v. Bus. Intelligence Solutions*, 2012 WL 3656498, * 4 (D. Nev. Aug. 23, 2012); *see also, Roche v. Audio Visual Servs. Grp., Inc.*, 2011 WL 2971034, * 5 (D. Nev. July 20, 2011) (holding that actual harm "is not satisfied when the pleadings indicate that the harm which occurred could just as easily have occurred due to acts other than those of the Defendant."). Finally, in order to sufficiently allege a claim for intentional interference with prospective business advantage, it is essential that the plaintiff plead facts showing that defendant interfered with plaintiff's relationship with a particular individual. *Damabeh v. 7-Eleven, Inc.*, 2013 U.S. Dist. LEXIS 66565, at *29 (N.D. Cal. 2013). Allegations that a defendant interfered with the plaintiff's relationship with an unidentified customer are not sufficient, nor are general allegations that the plaintiff had ongoing expectations in continuing economic relationships with current or prospective customers. *Id*. at *30. (holding that "[w]ithout an existing relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was 'at

most a hope for an economic relationship and a desire for future benefit.'") (internal citations omitted).

In its motion to dismiss, Oracle argues that Rimini Street has failed to identify a single prospective contractual relationship that was disrupted by the alleged misrepresentations. *See* ECF No. 505. The court agrees. Initially, the court notes that Rimini Street's claim for intentional interference with prospective economic advantage is based on the same three theories of conduct as its claim for intentional interference with contractual relations. *See* ECF No. 487. Yet nowhere in Rimini Street's third amended complaint has Rimini Street identified a specific relationship or specific prospective customer with which Oracle is alleged to have interfered.[6] Rather, throughout the third amended complaint, Rimini Street merely alleges that it "has prospective economic relationships with both its current and prospective clients" but does not identify those prospective relationships. ECF No. 487, ¶ 133. Even when alleging that Oracle's conduct "will prevent some of [Rimini Street's] current clients from expending their services" and that it "was negotiating with numerous prospective clients for support service contracts" prior to some of Oracle's alleged tortious conduct, Rimini Street fails to actually identify any prospective clients. *Id.*, ¶ 88-89. Such allegations are insufficient to allege a claim for intentional interference with prospective economic advantage. *Damabeh*, 2013 U.S. Dist. LEXIS 66565, at *29. The court acknowledges Rimini Street's argument that its allegations involve a discrete set of customers, but Rimini Street does not specifically identify any of these discrete customers who would have continued with Rimini Street for maintenance and support services but for Oracle's alleged misrepresentations, selective audits, and/or the cease-and-desist letter. The burden is on Rimini Street to identify either a prospective client or prospective contract, especially as the identities of prospective clients is information solely within its own control. Further, Rimini Street has failed to offer any explanation or reason as to why it could not

---

[6] In its third amended complaint Rimini Street does identify one customer, Yanmar, who chose to not engage in a new support service contract with Rimini Street. *See* ECF No. 487, ¶ 50. However, the alleged misrepresentations made to Yanmar were made by a non-party, Oracle Corporation Japan, a separate and distinct entity from the named Oracle defendants. Rimini Street has not brought suit against this separate corporate entity, nor has Rimini Street alleged any agency or control over the actions of Oracle Corporation Japan by the named Oracle defendants. Thus, this allegation is insufficient to support Rimini Street's claim for intentional interference with prospective economic advantage.

identify, as it did in its intentional interference with contractual relations claim, any prospective customer or economic advantage that Oracle allegedly interfered with in the months and years since Oracle's allegedly tortious conduct. Therefore, the court finds that Rimini Street has failed to sufficiently plead a claim for intentional interference with prospective economic advantage.

### E. Violation of Nevada's Deceptive Trade Practices Act

Rimini Street's sixth cause of action is for a violation of Nevada's Deceptive Trade Practices Act, NRS § 598.0903 *et seq. See* ECF No. 487, ¶ 141-149. Rimini Street contends that Oracle committed two separate deceptive trade practices in violation of Nevada's Deceptive Trade Practices Act. First, Rimini Street contends that Oracle made false and misleading representations of fact disparaging Rimini Street's goods, services or business in violation of NRS § 598.0915(8). Second, Rimini Street contends that Oracle employed a "bait and switch" advertising scheme for its own Enterprise Software products in violation of NRS § 598.0917. Oracle has moved to dismiss both alleged violations arguing that Rimini Street's allegations fail to satisfy any of the specified definitions for a deceptive trade practice identified under Nevada law. *See* ECF No. 505. The court shall address each alleged deceptive trade practice below.

### 1. False or Misleading Representations of Fact, NRS § 598.0915(8)

To state a claim under Nevada's Deceptive Trade Practices Act, a plaintiff must allege (1) a deceptive trade practice or other unlawful or prohibited conduct as defined by statute and (2) damages resulting from the alleged deceptive trade practice. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). Under NRS § 598.0915(8), a person or entity engages in a 'deceptive trade practice' if, in the course of his or her occupation, he or she disparages the goods, services or business of another person by making false or misleading representations of fact.

In support of its claim, Rimini Street alleges that Oracle has made "numerous false and misleading representations of fact disparaging [Rimini Street's] services." ECF No. 487, ¶ 142. These alleged misrepresentations include, but are not limited to, that Rimini Street cannot provide legitimate support for Oracle's licenses, that Rimini Street's services will render the clients' software unsupportable by another software support provider, that Rimini Street cannot

investigate and resolve technical issues for clients without accessing or modifying the software's source code in violation of the clients' software licensing agreements, and that Rimini Street is stealing Oracle's intellectual property through its current software support processes. *Id*., ¶ 143. Further, Rimini Street alleges that its "current and prospective clients have relied upon Oracle's false and misleading misrepresentations of fact regarding [Rimini Street's] services to [Rimini Street's] detriment." *Id*., ¶ 144. This reliance has allegedly led to "the actual breach and/or disruption of the contractual relationships that [Rimini Street] enjoyed with a number of its clients" resulting in monetary damages to Rimini Street. *Id*., ¶ 147. The court finds that these allegations are sufficient to allege a claim for a violation of Nevada's Deceptive Trade Practices Act under the false or misleading representation of fact prong of that act. Therefore, the court shall deny Oracle's motion to dismiss this claim.

### 2. Bait and Switch, NRS § 598.0917

Under NRS § 598.0917, a person or entity engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she employs a 'bait and switch' advertising scheme. A 'bait and switch' advertising scheme is one in which a person or entity advertises an offer to sell or lease goods or services which the seller or lessor in truth does not intend to sell or lease, accompanied by at least one of seven enumerated practices: (1) refusal to show the goods advertised; (2) disparagement in any material respect of the advertised goods or services; (3) requiring other sales or other undisclosed conditions before selling or leasing the advertised goods or services; (4) refusal to take orders for the sale or lease of goods or services advertised; (5) showing or demonstrating defective goods for sale or lease which are unusable or impractical for the purposes set forth in the advertisement; (6) accepting a deposit for the goods or services for sale or lease and subsequently switching the purchase order or lease to higher priced goods or services; and/or (7) tendering terms of sale or lease less favorable than the terms advertised. NEV. REV. STAT. § 598.0917.

In support of its 'bait and switch' theory, Rimini Street argues that Oracle engaged in an illegal bait and switch by advertising to potential customers that its software licenses allowed the licensee to use a third-party software support provider such as Rimini Street to provide software

19

maintenance and support services for the licensed software applications, but then directly interferes with the licensee's ability to engage a third-party software support provider. *See* ECF No. 487, ¶ 142. The court has reviewed the documents and pleadings on file in this matter and finds that Oracle's alleged "bait and switch" conduct does not constitute a deceptive trade practice. First, the court finds that Oracle's alleged conduct does not constitute "bait and switch" advertising under the statutory definition of NRS § 598.0917. Nevada law defines "bait and switch" advertising as "an offer to sell or lease goods or services which the seller or lessor in truth may not intend or desire to sell or lease" and then declining to sell or lease the advertised goods in order to sell or lease other goods. *See* NEV. REV. STAT. § 598.0917. Described more colloquially, it is a "sales practice whereby a merchant advertises a low-priced product to lure customers into the store only to induce them to buy a higher-priced product." Black's Law Dictionary (10th Ed. 2014). In its third amended complaint, Rimini Street alleges that Oracle advertised software licenses with the understanding that the licensed software could be supported by third parties like Rimini Street, but then, after the sale, took certain actions to prevent the licensed software from being serviced by Rimini Street. *See* ECF No. 487, ¶ 142-146. Rimini Street's claim, then, is not about an advertised product not actually being offered for sale or substituted with a different product as required under the statute. In fact, Rimini Street acknowledges that the advertised software products were actually licensed to customers and were not substituted by other software. Further, the alleged "switch" occurred after Oracle's advertised software application had already been licensed and not before, as required under Nevada law. Thus, Rimini Street's allegation fail to allege an actual "bait and switch" under NRS § 598.0917. Additionally, under NRS § 598.0917, the alleged bait and switch advertising offer must be accompanied by one or more of the seven practices listed in the statute. Rimini Street does not allege in its third amended complaint that Oracle's purported software licensing offer was accompanied by any of those proscribed practices. Moreover, Rimini Street fails to identify a single customer that was subjected to the purported bait and switch advertising campaign, nor does Rimini Street identify a single customer that cancelled its software maintenance and support services with Rimini Street as a result of Oracle's advertising. Thus, the court finds that Rimini

Street's allegations fail to allege a violation of Nevada's Deceptive Trade Practices Act under the "bait and switch" provision. Therefore, the court shall grant Oracle's motion on this claim.

### F. Lanham Act

The Lanham Act, codified at 15 U.S.C. § 1051 *et seq.*, protects federal trademarks and prohibits certain conduct including trademark infringement and false advertising. Section 43 of the Lanham Act imposes civil liability against any person or entity who makes a "false or misleading description of fact, or false or misleading representation of fact" in commercial advertising or promotion which misrepresents the nature, characteristics, or qualities of its or another person or entity's goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B); *see also, Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295, 306-07 (S.D. N.Y. 2011) (stating that Section 43 prohibits misrepresentations of goods through commercial advertising or promotion).

To state a false advertising claim under Section 43, an aggrieved party must allege: (1) a false statement of fact by the defendant in a commercial advertisement or promotion about its own or another's product; (2) that the statement actually deceived or has the tendency to deceive the consuming public; (3) that the false statement is material, in that it is likely to influence the purchasing decision of the consuming public; (4) that defendant caused its false statement to enter interstate commerce; and (5) that the aggrieved party has been or is likely to be injured as a result of the false statement, either by direct diversion of sales or by a lessening of the goodwill associated with its products. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication," when viewed and analyzed in the statement's full context. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Where an advertisement is demonstrated to be literally false, a plaintiff is entitled to a presumption that the consuming public was deceived or misled by the false statement and that the false statements were material to the consuming public's purchasing decisions. *POM Wonderful LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS 55426, at *28-29 (C.D. Cal. July 17, 2008) ("A plaintiff is entitled to relief under the Lanham Act on proof of literal falsity alone, as the court will assume that the false statements actually mislead

consumers."); *see also*, *Energy Four, Inc. v. Dornier Medical Systems, Inc.,* 765 F. Supp. 724, 731 (N.D. Ga. 1991) ("When representations are actually false, a court does not have to determine whether the representations are likely to create confusion" and actually false claims are presumed material.). However, "[e]ven if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod Farms*, 108 F.3d at 1140.

The court has reviewed the documents and pleadings on file in this matter and finds that Rimini Street has not sufficiently alleged a false advertising claim under the Lanham Act. Specifically, the court finds that Oracle's alleged misrepresentations do not constitute actionable commercial speech. In determining whether speech is commercial, a district court considers the three factors set forth by the Supreme Court in *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983): (1) whether the speech was an advertisement; (2) whether the speech refers to a particular product; and (3) whether the speaker has an economic motivation. *See Charles v. City of Los Angeles*, 697 F.3d 1146, 1151 (9th Cir. 2012). A party's representation constitutes commercial advertising when the statement is made "by a defendant who is in commercial competition with plaintiff" and was made "for the purpose of influencing consumers to buy defendant's goods or services." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003). Further, to be actionable under the Lanham Act, the alleged commercial statements "must be sufficiently disseminated to the relevant purchasing public." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 55 (2nd Cir. 2002); *see also, Storage Tech Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, 2006 U.S. Dist. LEXIS 43690, at *63 (D. Mass. June 28, 2006) (holding that to be actionable a statement "must at a bare minimum target a class or category of purchasers or potential purchasers, not merely particular individuals.").

In its third amended complaint, Rimini Street has alleged that Oracle is a direct competitor in the software maintenance and support market. ECF No. 487, ¶ 26. Rimini Street has also alleged that several of Oracle's alleged misrepresentations were made with the direct purpose of influencing consumers towards Oracle's maintenance and support services and away from Rimini Street's similar services. *Id.*, ¶ 152-153. However, all of the alleged

misrepresentations were made either in phone calls or in e-mails between Oracle and its own customers. *Id.*, ¶ 37-56. There are no allegations in the third amended complaint that Oracle engaged in an organized advertising campaign disparaging Rimini Street's business. Rather, all of the alleged misrepresentations were made one-on-one between Oracle and its current or prospective customers. The court recognizes that "representations less formal than those made as part of a classic advertising campaign may suffice" to establish liability under the Lanham Act and that Oracle's alleged misrepresentations fall within this broad context. *Fashion Boutique*, 314 F.3d at 56. However, these alleged statements must still be "disseminated sufficiently to the relevant purchasing public" for the statements to constitute a violation under the Lanham Act. *Id.*; *see also, Storage Tech Corp.*, 2006 U.S. Dist. LEXIS 43690, at *63-64. "[B]usinesses harmed by isolated disparaging statements do not have redress under the Lanham Act; [instead] they must seek redress under state law causes of action." *Id.* at 57. The court finds that Rimini Street's allegations of limited and direct customer interaction are "insufficient to satisfy the requirement that representations be disseminated widely in order to constitute 'commercial advertising or promotion' under the Lanham Act." *Id.* at 58. Therefore, based on the allegations in the third amended complaint, the court finds that Rimini Street has not sufficiently pled a claim against Oracle for violation of the Lanham Act and the court shall dismiss this claim accordingly.

### G.  Unfair Competition Claim

Rimini Street's final cause of action is for a violation of California's unfair competition law, found at California Business and Professions Code Section 17200 ("California's UCL"). *See* ECF No. 487, ¶ 157-164. California's unfair competition statute prohibits any unfair competition, which is defined as "any unlawful, unfair, or fraudulent business act or practice." CAL. BUS. & PROF. CODE §§ 17200. Rimini Street specifically alleges a violation under both the "unfair" and "unlawful" prongs of the California statute. ECF No. 487, ¶ 158-159.

In its motion to dismiss, Oracle argues that Rimini Street cannot state a claim under the "unlawful" prong because Rimini Street has failed to sufficiently allege a predicate violation. *See Golden v. Sound Inpatient Physicians Med. Grp., Inc.*, 93 F. Supp. 3d 1171, 1179 (E.D. Cal.

2015) (holding that "[w]here a plaintiff cannot state a claim under the 'borrowed' law, it cannot state a UCL claim either."). Here, however, Rimini Street has sufficiently alleged claims under Nevada's Deceptive Trade Practices Act and for intentional interference with contractual relations which satisfy the predicate "unlawful" business practices for a violation of California's UCL. *See Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (Cal. Ct. App. 2009) ("An unlawful business practice under the UCL is anything that can properly be called a business practice and that at the same time is forbidden by law."). Thus, the court finds that Rimini Street has sufficiently pled a claim under California's UCL under the "unlawful" prong.

Oracle also contends that Rimini Street has failed to state a claim under the "unfair" prong of California's UCL. In actions between direct competitors the word "unfair" in California's UCL is interpreted to mean "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). In its third amended complaint, Rimini Street alleges that Oracle revoked Rimini Street's access to Oracle's support websites in order to eliminate Rimini Street as a competitor in the software maintenance and support services market. ECF No. 487, ¶ 59-68. Further, Rimini Street has alleged that Oracle has made material false statements about Rimini Street's business services in order to gain a competitive edge over Rimini Street in providing software maintenance and support services. *Id*. Finally, Rimini Street has alleged that it was directly harmed as a result of Oracle's anti-competitive activities. ECF No. 487, ¶ 162. Based on these allegations, the court finds that Rimini Street has also sufficiently pled a claim for violation of California's UCL under the "unfair" prong. Therefore, the court shall deny Oracle's motion to dismiss this claim.

///
///
///
///
///

IT IS THEREFORE ORDERED defendants' motion to dismiss (ECF No. 505) is DENIED in-part and GRANTED in-part in accordance with this order. Plaintiff Rimini Street's third cause of action for a declaratory judgment that Oracle has engaged in copyright misuse; fifth cause of action for intentional interference with prospective economic advantage; sixth cause of action for a violation of Nevada's Deceptive Trade Practices Act under the "bait and switch" provision of NRS § 598.0917; and seventh cause of action for violation of the Lanham Act are DISMISSED with prejudice from plaintiff's third amended complaint (ECF No. 487).

IT IS SO ORDERED.

DATED this 7th day of November, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE