GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas (*pro hac vice*)
Michele L. Maryott (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: (949) 451-3800
jtthomas@gibsondunn.com
mmaryott@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Samuel G. Liversidge (*pro hac vice*)
Eric D. Vandevelde (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

HOWARD & HOWARD ATTORNEYS
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV  89169
Telephone: (702) 667-4843
wwa@h2law.com

*Attorneys for Plaintiff and Counterdefendant*
*Rimini Street, Inc., and Counterdefendant Seth*
*Ravin*

DEBEVOISE & PLIMPTON LLP
James J. Pastore (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
jjpastore@debevoise.com

DEBEVOISE & PLIMPTON LLP
Jeffrey P. Cunard (*pro hac vice*)
801 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: (202) 383-8000
jpcunard@debevoise.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA  94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV  89169
Telephone: (336) 402-4068
jreilly@riministreet.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, a California corporation, and ORACLE AMERICA, INC., a Delaware corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:14-CV-01699-LRH-CWH<br><br>**RIMINI STREET, INC. AND SETH RAVIN'S MOTION TO COMPEL INFORMATION CONCERNING ORACLE'S COMMUNICATIONS WITH LAW ENFORCEMENT ENTITIES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>***PUBLIC REDACTED VERSION*** |

Plaintiff and Counterdefendant Rimini Street, Inc. and Counterdefendant Seth Ravin (together, "Rimini") respectfully move this Court, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure and Local Rule 26-7 for an order compelling Oracle International Corporation, and Oracle America, Inc. ("Oracle") to produce documents and testimony relating to its communications with law enforcement agencies regarding Rimini, the legality of Rimini's support services, and the legality of third party support.   This includes: (1) a deponent competent to testify to Topic 5 of Rimini's Fifth Notion of Deposition under Federal Rule of Civil Procedure 30(b)(6); (2) an amended response to Rimini's Interrogatory No. 14; and (3) documents and communications responsive to Rimini's RFP Nos. 4, 9, 11, 14, 154, 155–157, 161–162, 166, 167, 172, 186–190, 199, 200, 205, 206, 271–273, 275, 277–279, 288, and 289. Rimini respectfully requests that the Court order Oracle to produce the documents and interrogatory response within 14 days of the Court's Order and to produce a prepared 30(b)(6) witness at a reasonable time shortly thereafter.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the supporting Declaration of Casey McCracken ("McCracken Decl.") and exhibits thereto, the entire record in this matter, and any such further submissions or oral argument that may be submitted prior to the determination of this Motion.

Dated:  March 28, 2018

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Jeffrey T. Thomas*
Jeffrey T. Thomas

*Attorneys for Plaintiff and Counterdefendant Rimini Street, Inc., and Counterdefendant Seth Ravin*

Gibson, Dunn & Crutcher LLP

RIMINI'S MOTION TO COMPEL ORACLE'S COMMUNICATIONS WITH LAW ENFORCEMENT ENTITIES
CASE NO. 2:14-CV-01699-LRH-CWH

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ..................................................................................................... 3

    A.    Oracle's Communications with Law Enforcement Agencies ........................... 3

    B.    Rimini's Discovery Requests ......................................................................... 4

        1.    Rimini's Requests for Production ......................................................... 4

        2.    Rimini's Interrogatory No. 14 .............................................................. 6

        3.    Rimini's 30(b)(6) Deposition Topic Encompassing Oracle's
             Communications with Government Agencies Regarding Rimini .......... 7

    C.    Meet and Confer Correspondence After Rimini Received the USAO's
        Subpoena .................................................................................................... 8

III. LEGAL STANDARDS ......................................................................................... 9

IV. ARGUMENT ...................................................................................................... 10

    A.    Oracle's Communications With Law Enforcement Entities Are
        Relevant ..................................................................................................... 11

    B.    The Court Should Compel Oracle to Produce a Rule 30(b)(6) Deponent
        on the Full Scope of Topic 5 ...................................................................... 12

    C.    Oracle Should Be Compelled to Produce Documents and Answer
        Written Discovery ...................................................................................... 13

        1.    The Court Should Compel Oracle to Produce Its
             Communications with Law Enforcement Agencies .............................. 13

        2.    The Court Should Compel Oracle to Provide an Amended
             Response to Interrogatory No. 14 ....................................................... 16

V. CONCLUSION .................................................................................................... 17

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burlington N. & Santa Fe Ry. v. United States Dist. Court*,
  408 F.3d 1142 (9th Cir. 2005) ................................................................9

*Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*,
  430 F. Supp. 2d 1157 (D. Nev. 2006) .....................................................13

*F.T.C. v. AMG Servs., Inc.*,
  291 F.R.D. 544 (D. Nev. 2013) ..............................................................9

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ...............................................................................11

*Izaguirre v. Greenwood Motor Lines, Inc.*,
  No. 1:10-581 WBS, 2011 WL 5325658 (D. Idaho Nov. 3, 2011), *aff'd*, 523
  F. App'x 482 (9th Cir. 2013) ..................................................................13

*Kawamura v. Boyd Gaming Corp.*,
  No. 2:13-CV-00203-JCM, 2014 WL 3953179 (D. Nev. Aug. 13, 2014) ............................9

*Little v. City of Seattle*,
  863 F.2d 681 (9th Cir. 1988) ..................................................................9

*McDonald v. Escape the Room Experience, LLC*,
  No. 15-CV-7101 (RA) (KNF), 2016 WL 6561408 (S.D.N.Y. Oct. 3, 2016) ...................13

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ...............................................................................11

*Pears v. Mobile Cty.*,
  645 F. Supp. 2d 1062 (S.D. Ala. 2009) ...................................................14

*In re Riverside-Linden Inv. Co.*,
  945 F.2d 320 (9th Cir. 1991) ..................................................................12

*Romero v. Nevada Dep't of Corr.*,
  No. 2:08-cv-808-JAD-VCF, 2013 WL 6206705 (D. Nev. Nov. 27, 2013) ...................13

**Other Authorities**

Anti-Trust Division Manual, Fifth Edition, *available at*
  https://www.justice.gov/atr/file/761126/download (last updated August
  2017) ...................................................................................................15

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES
(continued)

Page(s)

William E. Kovacic, *Rating the Competition Agencies: What Constitutes Good Performance?* (2009) *available at* https://www.ftc.gov/sites/default/files/documents/public_statements/rating-competition-agencies-what-constitutes-good-performance/2009rating.pdf .......................15

**Rules**

Fed. R. Civ. P. 16 ....................................................................................................................14

Fed. R. Civ. P. 26 ..................................................................................................................9, 11

Fed. R. Civ. P. 37 ....................................................................................................................9

Gibson, Dunn &
Crutcher LLP

# I.      INTRODUCTION

Previously unbeknownst to Rimini, it appears that, shortly after a jury found Rimini Street liable for "innocent" infringement in the trial of the related case of *Oracle USA, Inc. v. Rimini Street, Inc. ("Rimini I")*, 10-CV-106 (D. Nev.), Oracle began communicating with law enforcement agencies—including the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), and the United States Attorneys' Office ("USAO")—about the lawfulness of Rimini's business practices.  The existence of these communications should have been disclosed to Rimini throughout the discovery process in this litigation, in response to no fewer than 32 written discovery requests.  Yet, Rimini did not learn about these communications until it received a grand jury subpoena from the USAO, which was issued ***the very day after discovery closed in this case.***

Oracle's communications with law enforcement agencies concerning Rimini, including regarding the precise conduct at issue in this civil case, are directly relevant to the claims in this case.  Yet Oracle did not produce them before discovery closed on February 28, 2018.  Indeed, Oracle has since refused to produce them or any related information.

After Rimini received the subpoena from the USAO, Rimini reached out to Oracle through multiple meet and confer letters demanding that Oracle (1) produce Oracle's communications with law enforcement agencies about Rimini, as such documents are responsive to dozens of Rimini Requests for Production ("RFP"); and (2) ensure that its corporate representative designated to testify in response to Rimini's Federal Rule of Civil Procedure 30(b)(6) deposition covering Oracle's communications with government entities be prepared to testify specifically on Oracle's communications with law enforcement agencies. Oracle refused as to both requests.  To date, Oracle has not produced a single communication with law enforcement agencies.  And Oracle declined to educate its corporate representative, who was deposed on March 22, 2018, on this topic.

Oracle resists production of these critical documents and testimony on two grounds. First, Oracle contends that these communications are somehow irrelevant to this case.  In reality, they are highly relevant.  Such communications constitute statements from Oracle to a

1

Gibson, Dunn & Crutcher LLP

third party about Rimini.  And, more specifically, they constitute statements about Rimini's conduct and support processes that Oracle perceives to be unlawful, which are central to a number of claims and counterclaims in this litigation.  The communications likely contain discoverable information as to Oracle's contentions in this case, Oracle's interpretations of its license agreements and Terms of Use, and Oracle's motives in revoking Rimini's access to Oracle's support web sites, among other things.  At a minimum, Oracle's statements to third parties about the conduct alleged in this case are clearly relevant to Oracle's counterclaims of copyright infringement and both parties' claims regarding Oracle's revocation of Rimini's access to Oracle's support websites.

Second, as to Rimini's document requests, Oracle asserts that even though Rimini served 31 RFPs and an interrogatory covering these communications, Oracle is not required to produce them because Oracle limited its productions to particular document custodians, and these communications are possessed by different (undisclosed) custodians.  Oracle asserts that because discovery closed on February 28, 2018, it is too late for Rimini to request these documents now, even though these communications only came to light via the USAO's subpoena, prompted in part by Oracle, which issued the day after discovery closed.

Oracle is wrong.  Good cause exists to require Oracle to produce these documents now. Despite knowing about these communications for years, and despite numerous meet and confers regarding Oracle's communications with government agencies, Oracle failed to disclose their existence to Rimini—instead waiting for Rimini to find out when the grand jury subpoena issued the day after fact discovery closed.  Oracle should not benefit from its gamesmanship. Rimini was diligent in requesting (via dozens of discovery requests) Oracle's communications with government agencies and reiterating those requests immediately upon learning of the grand jury subpoena.  There is no prejudice to Oracle to producing these critical and easily-identifiable documents, which it has known about for years.  And it would be unjust to permit Oracle to manipulate discovery by withholding key documents—documents that underlie and helped prompt the USAO's investigation of Rimini's support practices.  Rimini, thus, respectfully requests that the Court compel Oracle to produce documents and testimony concerning its

2

Gibson, Dunn &
Crutcher LLP

communications with law enforcement agencies within fourteen days of the Court's Order, so that Rimini can obtain this highly relevant evidence.

## II.   BACKGROUND

### A.   Oracle's Communications with Law Enforcement Agencies

In or before May of 2016, Oracle contacted the FBI to attempt to prompt an investigation into Rimini's support practices. *See* Declaration of Casey McCracken ("McCracken Decl.") Ex. A ████████████████████████████████████ ████████████████████████ ████████████████████████████████████████████████████████████ ; *see also id.* at Ex. B ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████. ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████  Throughout discovery, beyond simply learning that Oracle had attempted to prompt an investigation into Rimini's support practices, Rimini had no way of knowing that Oracle had been engaging in active communications with the DOJ about Rimini as part of an actual investigation.

On March 2, 2018, Rimini received a subpoena from the USAO for the Northern District of California, which was issued on March 1, 2018—the day after the close of fact discovery in this case. *Id.* ¶ 27.  It is apparent from the subpoena itself that the FBI or USAO has been in communication with Oracle and that the USAO's subpoena was prompted, at least in part, by Oracle.  Rimini is unaware of the extent of those communications or the identities of the individuals from Oracle who communicated with law enforcement agencies.  But, notably, Oracle does not deny that the communications exist or that it attempted to prompt a government investigation. *Id.* at Ex. W.  Oracle cannot deny that sometime after a Nevada federal court and jury exonerated Rimini's founder Seth Ravin from any liability for infringement and found

3

Rimini to be an "innocent" infringer under U.S. copyright law, and during the current civil proceedings in this Nevada federal court to adjudicate the legal merits of Rimini's new software maintenance procedures, Oracle sought to initiate a separate criminal matter in the Northern District of California Department of Justice.  There can be little doubt that this tactic by Oracle was intended to intimidate and harass Rimini Street and its officers in a new forum outside Nevada.

**B.      Rimini's Discovery Requests**

      **1.      Rimini's Requests for Production**

Beginning in June 2015 and continuing through 2017, Rimini served on Oracle no less than 31 RFPs and one interrogatory that would encompass Oracle's communications with law enforcement agencies about Rimini, and related documents.  Those RFPs include the following: RFP Nos. 4, 9, 11, 14, 154–57, 161–62, 166–67, 186–90, 199–200, 205–06, 271–73, 275, 277–79.  *See id.* at Appendix 1 (providing full text of all 31 RFPs).  Paraphrased for ease of reading, these RFPs include:

- **RFP No. 4:** Documents and communications regarding the use of Oracle's Software and Support Materials in development and testing environments by third-party support providers.

- **RFP No. 9:** Documents relating to Oracle's license agreements that allegedly preclude a third party from installing Software and Support Materials on an offsite server and/or cloud-computing storage.

- **RFP No. 11:** Documents relating to awareness by Oracle of any alleged infringement of any Oracle copyrighted works relating to the PeopleSoft family of software products, including any alleged infringement by Rimini Street.

- **RFP No. 14:** Documents relating to any statement, communication, or correspondence by Oracle that refers or relates to Rimini Street.

- **RFP No. 154:** Documents and communications concerning the allegation that Rimini improperly downloads Oracle Software and Support Materials.

- **RFP No. 155:** Documents and communications concerning the allegation that Rimini improperly downloads installation software from Oracle's technical support websites.

- **RFP No. 156:** Documents and communications concerning the allegation that Rimini has cross-used one customer's software environment to develop updates for others.

- **RFP No. 157:** Documents and communications concerning the allegation that Rimini knowingly concealed, induced, enabled, or facilitated infringement.

4

- **RFP No. 161–162:** All Communications between Oracle and any Third Party in which Oracle makes any statement Relating to Rimini or its services.

- **RFP Nos. 166–167:** Communications between Oracle and *any third party* relating to the use of automated or robotic methods to download Oracle Software and Support Materials by Rimini or any Rimini Street Client.

- **RFP No. 172:** Documents and Communications relating to a Rimini client that has purportedly improperly downloaded Oracle Software and Support Materials.

- **RFP No. 186:** Documents and Communications relating to any statement that Rimini cannot timely deliver tax and regulatory updates for its clients without impermissibly cross-using Oracle's software.

- **RFP Nos. 187–188:** Communications between Oracle and *any third party* in which Oracle represents that Rimini cannot provide legitimate support for the Oracle software at issue in this litigation.

- **RFP Nos. 189–190:** Communications between Oracle and *any third party* in which Oracle represents that Rimini is stealing or engaging in the theft of Oracle Software and Support Materials and/or Oracle intellectual property, or similar such statements.

- **RFP Nos. 199–200:** Communications between Oracle and *any third party* relating to the lawfulness of Third Party Support for the software at issue in this case.

- **RFP Nos. 205–206:** Communications between Oracle and *any third party* relating to "unauthorized third party support providers," "unauthorized 3rd party providers," "unauthorized support providers," or similar such statements.

- **RFP Nos. 271–273, 275:** Communications between Oracle and *any third party* relating to whether "Rimini's downloading" "comport[s] with the licenses and terms of use" for Oracle support websites.

- **RFP No. 277:** Documents and communications supporting or refuting the allegation that Rimini relies upon copies of Oracle Software and Support Materials to provide low-cost support.

- **RFP No. 278:** Documents and communications supporting or refuting the allegation that Rimini nonetheless maintained and still maintains custody and control over these copies, whether stored on cloud systems or hosted on customer servers.

- **RFP No. 279:** Documents and communications supporting or refuting the allegation that it is "implausible" that Rimini could "simultaneously deliver[]" updates to customers "could happen if Rimini did not continue unlawfully to cross-use Oracle's software."

- **RFP Nos. 288–289:** Communications between Oracle and *a third party* relating to what Oracle believes to be excessive or unlawful downloading from the Oracle Support Websites.

The complete RFPs and Oracle's responses thereto are listed in the accompanying Declaration of Casey J. McCracken. In each case, Oracle agreed to produce documents that would encompass communications between Oracle and law enforcement concerning Rimini

Gibson, Dunn &
Crutcher LLP

and its processes subject to the parties' agreements on custodians and technology assisted review ("TAR").  For example, Rimini's RFP No. 161 requested:

> All Communications between Oracle and any Third Party in which Oracle makes any statement Relating to Rimini or its services.

*Id.* at Ex. G at 7.  In response, Oracle agreed to produce responsive documents:

> Subject to and without waiving its objections, Oracle agrees to produce non-privileged responsive documents, (a) subject to the parties' agreement on identified Oracle custodians and the parties' agreed TAR Protocol, and (b) from the non-custodial sources described in General Objection Paragraph 5, to the extent Oracle's investigation has revealed that those sources are likely to have responsive documents.  Oracle has produced many such documents already.

*Id.* at Ex. H at 9.

## 2.    Rimini's Interrogatory No. 14

On December 22, 2016, Rimini served on Oracle its Third Set of Interrogatories, including Interrogatory No. 14, which reads:

> Please describe in detail any statements or representations made by Oracle to any government agency Relating to the ability of Rimini or any other Third Party Support Provider to provide maintenance and/or support for Oracle software, including by identifying the date of the statements, to whom the statements were made, and any documents reflecting the statements."

*Id.* at Ex. K at 5.  Rimini's Interrogatory was directed to obtaining Oracle's communications with government entities about Rimini *in those entities' capacities* as "government entities." However, Oracle interpreted the interrogatory to be asking for Oracle's communications with its "government customers," and, thus, objected that the interrogatory was, therefore, overbroad, and refused to answer at all on that basis.  *Id.* at Ex. L at 6–7.

During the meet and confer process, Rimini explained that it was seeking a description of Oracle's communications with government entities in their capacities as government entities. However, Oracle still resisted answering the interrogatory.  Even though Oracle knew that Oracle had been communicating with the FBI and USAO (and perhaps other law enforcement agencies) about Rimini concerning the very conduct at issue in this case, and those communications would be directly responsive to this interrogatory, it did not inform Rimini of this fact.  Instead, it told Rimini that the communications it sought through the interrogatory were "irrelevant" and misleadingly told Rimini that Rimini was going on a "fishing expedition."

1    McCracken Decl., Ex. M (March 1, 2017 Letter from Wan to Vandevelde).  Oracle refused to

2    answer the interrogatory, and the parties initiated letter briefing to bring the dispute before the

3    Court.  *Id.* ¶ 26.

4            Rimini and Oracle exchanged sections of joint letter briefing, but ultimately did not

5    bring the dispute to this Court because they were able to reach a compromise.   To avoid

6    burdening the Court with motion practice, Rimini narrowed its interrogatory request to Oracle's

7    communications with "any competition agency, the United States Executive Office of the

8    President, the Department of Homeland Security, and/or the American Technology Council."

9    McCracken Decl., Ex. N.  While Oracle's communications with the DOJ still fall within the

10   narrowed scope because the DOJ is a competition agency, had Rimini known of Oracle's

11   communications with the DOJ, it would have more explicitly requested them.

### 3.    Rimini's 30(b)(6) Deposition Topic Encompassing Oracle's Communications with Government Agencies Regarding Rimini

13           On January 3, 2018, Rimini served on Oracle its Fifth Notice of Deposition ("Deposition

14   Notice") under Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)").  *Id.* at Ex. P.  Topic

15   5 of that Notice requested the Oracle produce a deponent competent to testify to:

> Communications made by or on behalf of Oracle to regulatory or government
> entities or agencies Relating to Oracle's enforcement of Oracle's rights under
> the License Agreements as they Relate to Third Party Support (including the
> License Agreement provisions identified in Topic 1).

19   *Id.* at 8.  This deposition topic encompasses Oracle's communications with law enforcement

20   agencies regarding the legality of Rimini's support processes.  Oracle objected to this topic,

21   claiming that any communications with entities other than Rimini's current or prospective

22   clients would be irrelevant.  *Id.* at Ex. Q at 3–4.  Oracle unilaterally informed Rimini that it was

23   refusing to testify as to any government agencies other than competition agencies, the United

24   States Executive Office of the President, the Department of Homeland Security, and/or the

25   American Technology Council.  *Id.*  Rimini did not agree to Oracle's unilateral narrowing of

26   the topic.[1]

---

27   [1]   Oracle moved for a protective order to prevent a deposition on this topic (and all other topics
28         in the Notice) on the grounds that Rimini's noticing of multiple 30(b)(6) depositions was

Gibson, Dunn &
Crutcher LLP

**C.      Meet and Confer Correspondence After Rimini Received the USAO's Subpoena**

On March 9, 2018, counsel for Rimini sent a letter to counsel for Oracle rejecting Oracle's proposed narrowing of Topic 5 of the Deposition Notice, and reaffirming that Rimini expected Oracle's witness to be prepared to testify to the full scope of Topic 5, including communications with government entities such as the FBI, the USAO, the DOJ, state Attorney General's Offices, and/or similar law enforcement agencies. *Id.* at Ex. R.

On March 12, 2018, Rimini sent a follow-up letter to Oracle regarding Oracle's deficient responses and productions related to Rimini's various written discovery requests. *Id.* at Ex. S. Rimini informed Oracle that Oracle's communications with law enforcement agencies concerning Rimini were directly responsive to dozens of RFPs and Interrogatory No. 14. *Id.* Rimini therefore requested that Oracle (1) produce all communications between it and law enforcement agencies concerning Rimini; and (2) supplement its response to Interrogatory No. 14 to describe such communications, including oral communications. *Id.*

On March 13, 2018, Oracle responded to Rimini's letter concerning Topic 5 of the Deposition Notice. *Id.* at Ex. T.  Oracle again refused to provide a deponent competent to testify about Oracle's communications with law enforcement agencies concerning Rimini because (1) Oracle believed that such communications are beyond the scope of the Deposition Notice, and (2) Oracle believed that any such communications "have no relevance to this civil case pending in Nevada." *Id.*

Two days later, on March 15, 2018, Oracle responded to Rimini's meet and confer letter concerning its written discovery requests, in which it further refused to provide any documents or interrogatory responses concerning its communications with law enforcement agencies. *Id.* at Ex. U.  Again, Oracle maintained that it did not believe such communications were relevant to the instant action.   Oracle also asserted that, while dozens of Rimini RFPs clearly encompassed the documents at issue, Oracle did not agree "to a scope of production that would

---

overbroad and burdensome.  ECF No. 682 at 9–12.  Oracle could have raised an argument as to the breadth of Topic 5, but it chose not to.  Its motion for a protective order was denied, and thus the deposition was ordered to proceed.  ECF No. 694.

include any of the communications Rimini now seeks." *Id.* While Oracle did not explain that statement, it appears Oracle intends to argue that its communications with law enforcement agencies (and documents referencing them) would be in the possession of persons who were not document custodians in the case.

On March 19, 2018, Rimini responded to both of Oracle's letters, reasserting its position that the documents and testimony must be produced and inviting an oral meet and confer. *Id.* at Ex. V. Oracle responded in a letter on March 21, 2018. Although the parties had exchanged several letters regarding production of the communications at issue, Oracle suddenly switched positions and stated that it "neither confirm[s] nor den[ies]" the existence of "any communications with the DOJ or the FBI related to Rimini" or the "existence of any documents responsive to Rimini's discovery requests at issue." Oracle also reaffirmed that it was refusing to produce documents or testimony. *Id.* at Ex. W.

On March 22, 2018, Rimini deposed Oracle's Rule 30(b)(6) designee, Michael Solomon, who claimed to be unable to testify as to any communications concerning Rimini with law enforcement agencies. That same day, counsel for Oracle and Rimini engaged in a telephonic meet and confer conference in which all of the issues addressed in the previous letters were discussed. *Id.* ¶ 30. The parties were not able to resolve their dispute, and this motion ensued.

**D.     Oracle's Subsequent Use of the Grand Jury Subpoena in Motion Practice**

Despite claiming that Oracle's communications with the government regarding the grand jury subpoena have no relevance to the civil dispute between Rimini and Oracle, on March 26, 2018 (two days ago), Oracle cited the grand jury subpoena to this Court in support of its claim for attorneys' fees on remand in *Rimini I*. *Rimini I*, ECF No. 1118. Oracle argued that the subpoena was "further indication that [Rimini's] ongoing processes are unlawful." *Id.* at 10.

### III.     LEGAL STANDARDS

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." *Burlington N. & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d

9

1142, 1148–49 (9th Cir. 2005) (quoting Rule 26 advisory committee's note (1983 amendment)). Federal Rule of Civil Procedure 26 sets forth the scope of discovery parties may obtain: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  In determining whether the discovery sought is proportional to the needs of the case, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

When a party fails to provide the requested discovery, the requesting party may move to compel production.  *See* Fed. R. Civ. P. 37(a).  The "party resisting discovery bears the burden of showing why a discovery request should be denied." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013).  Specifically, "[t]he party opposing discovery bears the burden of showing the discovery is overly broad and unduly burdensome, or not relevant." *Kawamura v. Boyd Gaming Corp.*, No. 2:13-CV-00203-JCM, 2014 WL 3953179, at *4 (D. Nev. Aug. 13, 2014). The Court has broad discretion in controlling discovery.  *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

## IV.    ARGUMENT

Oracle should be required to disclose its communications with law enforcement agencies to properly respond to Rimini's various discovery requests.  **First**, the requested discovery is critically relevant to this case and consists of Oracle's own statements concerning the precise conduct at issue in this litigation.  **Second**, testimony from Oracle's corporate representative should be compelled because Rimini properly noticed a valid deposition covering this topic, Rimini did not agree to narrow it, and there is no basis for Oracle to unilaterally refuse to prepare its witness.  **Third**, there is good cause to order production of Oracle's communications with law enforcement agencies, and a response to Rimini's interrogatory, because such documents are relevant, Rimini served numerous requests seeking the documents during discovery and was diligent in seeking them as soon as it learned (through

10

Gibson, Dunn & Crutcher LLP

1    the USAO subpoena) the extent of Oracle's communications, and there is no burden or

2    prejudice to Oracle.  **Finally**, it would do a disservice to the discovery process to allow Oracle

3    to avoid producing these documents by not revealing their existence during extensive meet and

4    confers, only to have the USAO's subpoena (revealing the existence of these communications)

5    issue the day after discovery closed.

6    **A.     Oracle's Communications with Law Enforcement Entities Are Relevant**

7            Oracle first claims that its communications with law enforcement about Rimini are not

8    relevant.  But Oracle is wrong.  These communications are directly relevant to a number of

9    claims and counterclaims in this case.

10           Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery

11   regarding any matter, not privileged which is relevant to the subject matter involved in the

12   pending action." Fed. R. Civ. P. 26(b)(1).  "The key phrase in this definition—'relevant to the

13   subject matter involved in the pending action'—has been construed *broadly* to encompass any

14   matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

15   that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)

16   (quoting Fed. R. Civ. P. 26(b)(1)) (emphasis added).  Discovery is not "limited to the merits of

17   a case, for a variety of fact-oriented issues may arise during litigation that are not related to the

18   merits." *Id.*  As the Supreme Court has made clear, "civil trials in the federal courts no longer

19   need be carried on in the dark. The way is now clear, consistent with recognized privileges, for

20   the parties to obtain *the fullest possible knowledge* of the issues and facts before trial." *Hickman*

21   *v. Taylor*, 329 U.S. 495, 501 (1947) (emphasis added).

22           This case primarily concerns Rimini's provision of support services to Oracle software

23   licensees and whether those services comply with Oracle's license agreements.  ECF No. 487

24   (Rimini's Third Amended Complaint) ¶¶ 9–23.  Oracle's communications with the DOJ were

25   made to prompt an investigation into Rimini's support services.  It is highly likely, therefore,

26   that Oracle made statements or a presentation about what Oracle believes constitutes Rimini's

27   infringement, which is directly relevant to Rimini's claim for a declaration of no copyright

28   infringement and Oracle's copyright infringement counterclaim.  The communications also

RIMINI'S MOTION TO COMPEL ORACLE'S COMMUNICATIONS WITH LAW ENFORCEMENT
ENTITIES
CASE NO. 2:14-CV-01699-LRH-CWH

1    likely would reveal Oracle's contentions in this case—or possibly be in tension with them.

2    Moreover, these communications would  reveal information about Oracle's interpretation of its

3    license agreements as applied to Rimini's conduct.  They would also potentially reveal

4    information about the propriety of a Rimini client's creation of archives of Oracle updates and

5    files.  Indeed, Oracle's communications with law enforcement agencies that directly address

6    the accused conduct at issue could be some of the most relevant documents in the case.

7           Further, these communications are relevant to Rimini's own claims—and Oracle's

8    declaratory judgment claim—based on Oracle's unilateral revocation of Rimini's access to

9    Oracle's support websites.  These communications would allow Rimini to demonstrate that

10   Oracle has been seeking ways in which to cut off Rimini's access to its websites and the great

11   lengths to which it has gone in order to do so.  In addition, based on the subpoena, it appears

12   that Oracle's communications may have related to Rimini's downloading of support materials

13   from Oracle's websites, and those communications, thus, may shed light on the reasons for

14   Oracle's revocation of Rimini's access to those websites, which is a disputed issue in the case

15   underlying Rimini's claims for interference with contract and unfair competition.  Therefore,

16   these documents more than meet Rule 26's minimal relevance threshold required for them to

17   be discoverable.

18          Lastly, Oracle claims that its involvement with law enforcement entities is irrelevant

19   here because this case is a civil matter.  But that is entirely inconsistent with Oracle's own

20   position that it has recently taken in *Rimini I*.  On March 26, 2018, in its renewed motion for

21   attorneys' fees, Oracle cited to the grand jury subpoena as purported evidence of the

22   unlawfulness of Rimini's conduct.  *Rimini I*, ECF No. 1118 at 10, 14.  It is not appropriate for

23   Oracle to use the subpoena as affirmative evidence against Rimini while denying Rimini the

24   discovery showing that Oracle contributed to prompting that subpoena.

25   **B.    The Court Should Compel Oracle to Produce a Rule 30(b)(6) Deponent on the Full
26          Scope of Topic 5**

27          Rimini requests that the Court compel Oracle to produce a prepared witness on Topic 5

28   of its Fifth Notice of Deposition, which covers "Communications made by or on behalf of

1    Oracle to … government entities … Relating to Oracle's enforcement of Oracle's rights under

2    the License Agreements."  Oracle served objections to Rimini's deposition notice, attempting

3    to unilaterally narrow the topic, on purported relevance grounds, to communications with

4    limited government entities.  McCracken Decl. at Ex. Q at 3–4.

5        As discussed above, Oracle's relevance objection lacks merit.  Oracle has not argued

6    that preparing a witness to testify to Oracle's communications with law enforcement agencies

7    regarding Rimini would be burdensome, nor has Oracle made any other objection.  Oracle

8    cannot unilaterally narrow the scope of the deposition, and Rimini did not agree to any

9    narrowing of scope.  Therefore, a deposition of a prepared witness on this topic should proceed.

10        Further, Oracle has waived any objections to this deposition topic. Oracle moved for a

11    protective order to prevent depositions that included this topic from occurring altogether.  ECF

12    No. 682 at 9–12.  Oracle could have raised an argument as to the breadth of Topic 5 at that time,

13    but it chose not to.  Arguments that could have been raised, but were not, are waived.  *See In re*

14    *Riverside-Linden Inv. Co.*, 945 F.2d 320, 325 (9th Cir. 1991).

15        Accordingly, Rimini requests that the Court compel Oracle to provide a deponent

16    competent to testify to the full scope of Topic 5, including Oracle's communications with law

17    enforcement agencies regarding Oracle's enforcement of its license agreements as they related

18    to Rimini.

19   **C.    Oracle Should Be Compelled to Produce Documents and Answer Written**
          **Discovery**
20
          **1.    The Court Should Compel Oracle to Produce Its Communications with**
21              **Law Enforcement Agencies**

22        Rimini served on Oracle no less than 31 RFPs that cover Oracle's communications with

23    law enforcement agencies concerning Rimini.  *See supra* Section II.B.1; McCracken Decl.

24    Appendix 1.  For example, RFP Nos. 161 and 162 seek "All Communications between Oracle

25    and any Third Party in which Oracle makes any statement Relating to Rimini or its services."

26    *Id.* at Ex. G at 7.  Oracle agreed to produce documents in response to those requests (and 28

27    others), subject to the parties TAR protocol, as well as from certain non-custodial sources.

28

13

1    Oracle makes two arguments to resist producing its communications with law

2 enforcement agencies.  First, it argues that the documents are not relevant.  But that is not true,

3 as established above.  *See supra* Section IV.A.  Second, Oracle argues that even though Rimini

4 requested the documents at issue in dozens of requests, Oracle's agreement to produce

5 documents in response to those requests was limited to the document custodians identified

6 through the TAR process, as well as certain non-custodial sources.  Although Oracle has not

7 said so explicitly, Oracle seems to argue that its communications with law enforcement agencies

8 would not come from those sources—likely the communications were between an Oracle

9 lawyer and law enforcement agencies, and lawyers are not custodians in the TAR protocol.

10 Oracle further argues that it is too late for Rimini to specifically request these communications

11 because fact discovery closed (the day before the subpoena issued).

12    The Court should reject Oracle's arguments and compel production the documents

13 because there is good cause to do so.  A party may seek additional discovery after the discovery

14 cutoff has passed upon a showing of good cause.  *See Crockett & Myers, Ltd. v. Napier,*

15 *Fitzgerald & Kirby, LLP*, 430 F. Supp. 2d 1157, 1163 (D. Nev. 2006); *Romero v. Nevada Dep't*

16 *of Corr.*, No. 2:08-cv-808-JAD-VCF, 2013 WL 6206705, at *6 (D. Nev. Nov. 27, 2013).  Good

17 cause exists to extend a discovery deadline where the movant has been diligent in seeking the

18 requested information.  *See Crockett*, 430 F. Supp. 2d at 1163.  Good cause also exists when a

19 party discovers new information not previously disclosed by the opposing party.  *See, e.g.,*

20 *McDonald v. Escape the Room Experience, LLC*, No. 15-CV-7101 (RA) (KNF), 2016 WL

21 6561408, at *1 (S.D.N.Y. Oct. 3, 2016) (finding defendant established "good cause" to conduct

22 discovery past the deadline, in part because the "plaintiff concealed relevant documents");

23 *Izaguirre v. Greenwood Motor Lines, Inc.*, No. 1:10-581 WBS, 2011 WL 5325658, at *3 (D.

24 Idaho Nov. 3, 2011), *aff'd*, 523 F. App'x 482 (9th Cir. 2013) ("Delay due to untimely or

25 misleading discovery responses can constitute good cause" under Rule 16(b)); *cf. Pears v.*

26 *Mobile Cty.*, 645 F. Supp. 2d 1062, 1086 (S.D. Ala. 2009) (finding "good cause" under Rule

27 16(b) to amend complaint due to the fact that "defendants concealed" necessary information

28 from the plaintiff "until after the deadline for amending pleadings had passed").

RIMINI'S MOTION TO COMPEL ORACLE'S COMMUNICATIONS WITH LAW ENFORCEMENT
ENTITIES
CASE NO. 2:14-CV-01699-LRH-CWH

1       Rimini diligently requested the documents at issue.  It served 31 requests for production

2   that would cover them.  And when Rimini learned of the extent of Oracle's communications

3   with law enforcement agencies after receiving the USAO's March 1, 2018 subpoena, it

4   immediately requested those communications from Oracle.  McCracken Decl., Ex. S.

5       Oracle would suffer no prejudice by being ordered to produce the documents.  Oracle

6   has known of the existence of these documents for years, and has not identified any burden to

7   producing them.  Indeed, it appears that Oracle would easily be able to locate the documents

8   through a simple search (*e.g.*, for specific email addresses in the emails of the relevant

9   participants or on a shared drive where letters are stored).

10      These communications with law enforcement agencies are likely in the possession of

11  Oracle's in-house or outside counsel and, thus, similarly would fall outside the TAR process.

12  Yet, the fact that the documents may not come from custodians selected in the TAR process is

13  not dispositive.  This Court has previously ordered production of narrow sets of documents

14  outside the TAR process.  For example, in February 2017, it ordered the production of Oracle's

15  outside counsel's letters to Rimini customers regarding Rimini's purported infringement,

16  because they were highly relevant to the case.  ECF No. 427.

17      Nor should the passage of the document discovery deadline bar discovery into these

18  documents.  Rimini was diligent in requesting the documents as soon as was served with the

19  subpoena.  Oracle knew of the documents throughout discovery and throughout the parties'

20  many meet and confer discussions, but did not disclose them to Rimini.  The timing of the

21  subpoena—issued the day after discovery closed on February 28, 2018—is also suspicious and

22  seems unlikely to be a coincidence.  It would defeat all sense of justice and fair play to allow

23  Oracle to attempt to prompt a criminal investigation, fail to disclose the existence of that effort

24  during extensive meet and confer discussions regarding discovery requests that encompass

25  communications with government agencies, and resist all such requests—only for the grand

26  jury subpoena to be issued the very day after fact discovery ended.  Accordingly, the Court

27  should compel production of these documents.

28

## 2. The Court Should Compel Oracle to Provide an Amended Response to Interrogatory No. 14

Rimini's Interrogatory No. 14 asks Oracle to

Please describe in detail any statements or representations made by Oracle to any government agency Relating to the ability of Rimini or any other Third Party Support Provider to provide maintenance and/or support for Oracle software, including by identifying the date of the statements, to whom the statements were made, and any documents reflecting the statements.

McCracken Decl. Ex. K at 5. Oracle's communications with law enforcement agencies fall directly within the scope of Interrogatory No. 14 as posed. However, Oracle refused to answer the interrogatory. During the meet and confer process, even though Oracle knew it was sitting on easily-identifiable and highly relevant communications about the very conduct at issue in this case, Oracle misleadingly accused Rimini of going on a "fishing expedition." *Id.* at Ex. M at 4–5. Not knowing of the communications that Oracle was going through pains not to reveal, Rimini, for the sake of compromise and to avoid motion practice, narrowed the scope of the interrogatory to "any competition agency, the United States Executive Office of the President, the Department of Homeland Security, and/or the American Technology Council."

Oracle should be compelled to describe its communications prompting the USAO's subpoena for two reasons. First, the requested communications with the DOJ fall within Rimini's narrowed interrogatory because the DOJ is a competition agency charged with investigating and enforcing U.S. antitrust laws. *See* JUSTICE.GOV, Anti-Trust Division Manual, Fifth Edition, *available at* https://www.justice.gov/atr/file/761126/download (last updated August 2017); *see also* William E. Kovacic, *Rating the Competition Agencies: What Constitutes Good Performance?*, FTC.GOV (2009) *available at* https://www.ftc.gov/sites/default/files/documents/public_statements/rating-competition-agencies-what-constitutes-good-performance/2009rating.pdf (referring to the DOJ as a "competition agency").

Second, even if the Court agrees with Oracle that the communications do not fall within the scope of the interrogatory as narrowed, there is good cause to compel Oracle to disclose its communications with law enforcement agencies in its response. When Rimini agreed to narrow

Gibson, Dunn & Crutcher LLP

the scope of its request—in order to avoid initiating motion practice—it did not know about these communications. Conversely, Oracle did know about them, but did not disclose them, repeatedly telling Rimini that there were no relevant documents and that it was pursuing a "fishing expedition." Had Rimini known of these communications, Rimini would have specifically demanded that Oracle describe them as part of Rimini's agreement with Oracle on the scope of the interrogatory. The importance of the evidence, Rimini's diligence after recently learning of these communications, the lack of prejudice to Oracle, and the circumstances of the parties meet-and-confer efforts all weigh in favor of compelling this discovery.

## V.    CONCLUSION

The discovery Rimini seeks through its Rule 30(b)(6) deposition notice, its thirty RFPs, and Interrogatory No. 14 is highly relevant to numerous claims and counterclaims in this case and is proportional to the needs of the case. Rimini, therefore, respectfully requests that the Court grant Rimini's Motion and issue an order compelling Oracle to produce documents and communications responsive to the full scope of Rimini's document requests and to fully respond to Interrogatory No. 14 within fourteen days, and compelling Oracle to produce a deponent who is able to testify to the full scope of Topic 5 of Rimini's deposition notice at a reasonable time shortly after Rimini receives the documents.


Dated:  March 28, 2018


                              GIBSON, DUNN & CRUTCHER LLP


                              By:   /s/ Jeffrey T. Thomas
                                        Jeffrey T. Thomas

                              *Attorneys for Plaintiff and Counterdefendant*
                              *Rimini Street, Inc., and Counterdefendant Seth*
                              *Ravin*

Gibson, Dunn & Crutcher LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused to be electronically uploaded a true and correct copy in Adobe "pdf" format of the above document to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is deemed complete upon transmission of the Notice of Electronic Filing ("NEF") to the registered CM/ECF users.  All counsel of record are registered users.

DATED:  March 28, 2018

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Jeffrey T. Thomas_
Jeffrey T. Thomas

*Attorneys for Plaintiff and Counterdefendant Rimini Street, Inc., and Counterdefendant Seth Ravin*

102483263

RIMINI'S MOTION TO COMPEL ORACLE'S COMMUNICATIONS WITH LAW ENFORCEMENT ENTITIES
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn & Crutcher LLP