1   BOIES SCHILLER FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2   300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3   Telephone:   702.382.7300
    Facsimile:   702.382.2755
4   rpocker@bsfllp.com

5   BOIES SCHILLER FLEXNER LLP
    WILLIAM ISAACSON (pro hac vice)
6   KAREN DUNN (pro hac vice)
    1401 New York Avenue, NW, 11th Floor
7   Washington, DC 20005
    Telephone:   202.237.2727
8   Facsimile:   202.237.6131
    wisaacson@bsfllp.com
9   kdunn@bsfllp.com

10  BOIES SCHILLER FLEXNER LLP
    STEVEN C. HOLTZMAN (pro hac vice)
11  KATHLEEN R. HARTNETT (pro hac vice)
    BEKO O. REBLITZ-RICHARDSON
12  (pro hac vice)
    1999 Harrison Street, Suite 900
13  Oakland, CA 94612
    Telephone:   510.874.1000
14  Facsimile:   510.874.1460
    sholtzman@bsfllp.com
15  khartnett@bsfllp.com
    brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (pro hac vice)
JOHN A. POLITO (pro hac vice)
SHARON R. SMITH (pro hac vice)
FRANK KENNAMER (pro hac vice)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:   415.442.1000
Facsimile:   415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com
frank.kennamer@morganlewis.com

DORIAN DALEY (pro hac vice)
DEBORAH K. MILLER (pro hac vice)
JAMES C. MAROULIS (pro hac vice)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:   650.506.4846
Facsimile:   650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Defendants and
Counterclaimants Oracle America, Inc.
and Oracle International Corp.*

16                  UNITED STATES DISTRICT COURT
17                      DISTRICT OF NEVADA

| | |
|---|---|
| 18  RIMINI STREET, INC., a Nevada corporation, <br>      Plaintiff, <br><br> 19           v. <br><br> 20  ORACLE AMERICA, INC., a Delaware <br> 21  corporation; and ORACLE INTERNATIONAL <br>      CORPORATION, a California corporation, <br> 22           Defendants. | Case No. 2:14-cv-01699 LRH CWH <br><br> **ORACLE'S MOTION FOR <br> SUMMARY JUDGMENT AND <br> PARTIAL SUMMARY JUDGMENT <br> AND SUPPORTING MEMORANDUM <br> OF POINTS AND AUTHORITIES <br> REGARDING ORACLE'S CEASE- <br> AND-DESIST LETTER** |
| 23  ORACLE AMERICA, INC., a Delaware <br>      corporation; and ORACLE INTERNATIONAL <br> 24  CORPORATION, a California corporation, <br>           Counterclaimants, <br><br> 25           v. <br><br> 26  RIMINI STREET, INC., a Nevada corporation; <br>      SETH RAVIN, an individual, <br> 27           Counterdefendants. | Judge:     Hon. Larry R. Hicks <br><br><br><br><br><br> <u>**REDACTED**</u> |

28

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    STATEMENT OF UNDISPUTED FACTS (LR 56-1) ........................................ 3

      A.     No Agreement Grants Rimini The Rights It Asserted In Opposition To Oracle's Motion to Dismiss. ...................................................................... 3

           1.     Oracle Software License Agreements ████████████ ████ ...................................................................... 3

           2.     ███████████████████████████████. .................................... 4

           3.     Oracle Support Websites' Terms Of Use Confirm Oracle's Right To Control Access To Its Support Websites. ....................................... 5

      B.     Rimini Street Has Engaged In Massive And Harmful Access to And Downloading From Oracle's Support Websites. ...................................... 6

      C.     In January 2017, Oracle Put Rimini on Notice That Rimini's Continued Access To Oracle's Websites Would Be Unauthorized. ......................... 8

      D.     Oracle Licensees Enjoy Uninterrupted Access. ......................................... 8

      E.     Rimini Is Unable to Identify Any Right To Access Oracle's Support Websites. ................................................................................................... 9

      F.     Rimini Can Identify No Harm Or Damages Caused By The Letter. ................. 10

III.   LEGAL STANDARD ...................................................................................... 14

IV.   ORACLE IS ENTITLED TO SUMMARY JUDGMENT ON RIMINI'S DECLARATORY RELIEF CLAIM CONCERNING THE LETTER. ......................... 15

V.     THE SAME UNDISPUTED FACTS DISPOSING OF COUNT II ENTITLE ORACLE TO PARTIAL SUMMARY JUDGMENT ON RIMINI'S UNFAIR COMPETITION AND INTENTIONAL INTERFERENCE CLAIMS TO THE EXTENT THEY ARE BASED ON THE LETTER. ........................................... 18

      A.     The UCL Permits Oracle To Exercise Its Statutory Rights Without Liability. ................................................................................................... 18

      B.     The Letter Also Cannot Constitute "Wrongful" Or "Improper" Interference. .............................................................................................. 19

VI.   ADDITIONAL, INDEPENDENT REASONS REQUIRE SUMMARY JUDGMENT FOR ORACLE ON RIMINI'S LETTER-BASED CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS. ............. 21

      A.     Rimini Cannot Prove That It Was Contractually Obligated To Access And Download Materials From Oracle Websites. ..................................... 22

      B.     Rimini Cannot Prove That Oracle's Letter Caused Disruption. .......................... 23

      C.     Rimini Cannot Identify Cognizable Harm Or Damage. ................................... 25

VII.   SUMMARY JUDGMENT FOR ORACLE IS INDEPENDENTLY REQUIRED ON RIMINI'S UCL CLAIM BASED ON THE LETTER. ..................................... 25

VIII.   CONCLUSION ................................................................................................ 26

# TABLE OF AUTHORITIES

<u>Cases</u>

*AirHawk Int'l, LLC v. TheRealCraigJ, LLC*,
   2016 WL 9584008 (C.D. Cal. Aug. 1, 2016) ........................................................ 22

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) .................................................................................. 19

*Arkley v. Aon Risk Servs. Companies, Inc.*,
   2012 WL 12885707 (C.D. Cal. June 13, 2012) ..................................................... 23

*Berman v. Dean Witter & Co.*,
   44 Cal. App. 3d 999 (1975) .................................................................................... 18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 17

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ........................................................................................... 19

*Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) .................................................................................. 19

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ............................................................................... 19

*Doe I v. Wal-Mart Stores, Inc.*,
   572 F.3d 677 (9th Cir. 2009) .................................................................................. 26

*Dryden v. Tri-Valley Growers*,
   65 Cal. App. 3d 990 (Ct. App. 1977) ..................................................................... 20

*Express, LLC v. Fetish Grp., Inc.*,
   464 F. Supp. 2d 965 (C.D. Cal. 2006) ................................................................... 26

*Facebook v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) ........................................................................ passim

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
   525 F.3d 822 (9th Cir. 2008) ............................................................................ 21, 25

*Fitbug Ltd. v. Fitbit, Inc.*,
   78 F. Supp. 3d 1180 (N.D. Cal. 2015) ................................................................... 26

*Holper v. Ace Am. Ins. Co.*,
   2014 WL 2960296 (D. Nev. June 27, 2014) .......................................................... 15

*Home Gambling Network, Inc. v. Piche*,
   2013 WL 5492568 (D. Nev. Sept. 30, 2013) ......................................................... 23

*Indep. Cellular Tel., Inc. v. Daniels & Assocs.*,
   863 F. Supp. 1109 (N.D. Cal. 1994) ...................................................................... 15

*Intel v. Hamidi*,
   30 Cal.4th 1342 (2003) ............................................................................ 21

*J.J. Indus., LLC v. Bennett*,
   119 Nev. 269 (2003) ................................................................................. 21

*Jane Doe I v. Wal-Mart Stores, Inc.*,
   2007 WL 5975664 (C.D. Cal. Mar. 30, 2007) ......................................... 26

*Lake at Las Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp.*,
   867 F. Supp. 920 (D. Nev. 1994) ............................................................. 15

*Linares v. CitiMortgage, Inc.*,
   No. C-14-3435 EMC, 2015 WL 2088705 (N.D. Cal. May 5, 2015) ......... 26

*LucasArts Entm't Co. v. Humongous Entm't Co.*,
   870 F. Supp. 285 WL 760205 (N.D. Cal. 1993) ................................. 22, 24

*Methodist Hosp. of S. California v. Blue Cross of California*,
   2010 WL 11508022 (C.D. Cal. Feb. 26, 2010) ......................................... 23

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
   2008 WL 11334030 (C.D. Cal. Mar. 17, 2008) ......................................... 22

*Montgomery v. eTreppid Techs., LLC*,
   No. 2008 WL 11401776 (D. Nev. July 2, 2008) ....................................... 22

*Mossimo Holdings, LLC v. Haralambus*,
   2017 WL 1240739, (C.D. Cal. Apr. 4, 2017) ........................................... 24

*Neal v. Select Portfolio Servicing, Inc.*,
   2017 WL 4224871 (N.D. Cal. Sept. 22, 2017) ......................................... 20

*O'Brien v. Morgan Stanley DW, Inc.*,
   2008 WL 4224409 (D. Nev. Sept. 10, 2008) ............................................ 22

*Olszewski v. ScrippsHealth*,
   107 Cal. Rptr. 2d 187 (Cal. App. 2001) .............................................. 19, 21

*Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*,
   2015 WL 5768534 (D. Nev. Sept. 29, 2015) ............................................ 23

*Oracle USA, Inc. v. Rimini St., Inc.*
   No. 2:10-CV-00106-LRH-PAL (D. Nev. Oct. 29, 2010) ........................... 5

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018) ...................................................................... 8

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   50 Cal. 3d 1118 (1990) ............................................................................. 24

*Prappas v. Meyerland Cmty. Imp. Ass'n*,
   795 S.W.2d 794 (Tex. App. 1990) ....................................................... 20, 21

*Register.com v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004) .................................................................... 21

*Sebastian Int'l, Inc. v. Russolillo*,
   No. CV 00-3476 SVW JWJX, 2005 WL 1323127 (C.D. Cal. Feb. 22, 2005) ...... 25

*Stereoscope, LLC v. U.S. Bank Nat'l Ass'n*,
   675 F. App'x 725 (9th Cir. 2017) ............................................................ 24

*Swim v. Wilson*,
   90 Cal. 126 (1891) ................................................................................. 18

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..................................................... 15

*United of Omaha Life Ins. Co.*,
   225 F.3d 1042 (9th Cir. 2000) .................................................................. 19

Statutes, Rules & Other Authorities

18 U.S.C. § 1030 .......................................................................... 15, 21

44B Am. Jur. 2d *Interference* § 22 ......................................................... 20

Cal. Bus. & Prof. Code § 17200 ............................................................. 19

Cal. Bus. & Prof. Code § 17204 ............................................................. 26

California Penal Code § 502 .............................................................. 15, 21

Fed. R. Civ. P. 30 ............................................................................... 9

Fed. R. Civ. P. 56 .................................................................. 14, 15, 17

N.R.S. § 205.4765 ....................................................................... 15, 21

N.R.S. § 205.511 ............................................................................. 21

Restatement (Second) Of Torts § 766 ....................................................... 22

Restatement (Third) Of Agency § 7.01 ...................................................... 18

Oracle International Corporation and Oracle America, Inc. ("Oracle") respectfully move this Court to grant Oracle summary judgment on Rimini Street, Inc.'s ("Rimini") second claim for relief and partial summary judgment on Rimini's fourth and eighth claims for relief.  This motion is based on the matters and argument contained herein, the supporting declarations and exhibits thereto, the entire record in this action, and such other matters as may be presented to the Court.

## I.   INTRODUCTION

On January 17, 2017, Oracle sent Rimini a letter providing 60 days' notice that Rimini was to cease and desist accessing Oracle's support websites ("the Letter").  The Letter warned Rimini that further access would violate certain computer-protection statutes.  Rimini has since pled claims in this lawsuit against Oracle based on the Letter.  Through this motion, Oracle seeks summary judgment against Rimini on its claims to the extent they are based on the Letter.

Oracle's cease and desist Letter to Rimini followed a procedure the Ninth Circuit endorsed for protecting computer systems in *Facebook v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), *as amended on denial of rehearing en banc* (Dec. 9, 2016).  Under *Facebook*, Rimini faces statutory liability if it accesses Oracle's support websites now that 60 days have passed because Oracle's letter provided clear notice that Rimini is not authorized to access those websites.  As Oracle explained in its Letter, with detailed support, "Rimini's downloading is staggering in its scope," "exceeds many of its customers' reasonably expected uses," and "does not comport with the licenses and terms of use under which Rimini is ostensibly operating."  Oracle also cited Rimini's "proven infringement" and that Rimini "continues to infringe Oracle's copyrights."

In Count II of its operative complaint (the Third Amended Complaint or "TAC"), Rimini seeks a declaration from this Court that Oracle's Letter is a legal nullity, and that Rimini may access Oracle's support websites without liability under the Federal Computer Fraud and Abuse Act ("CFAA"), the California Computer Data Access and Fraud Act ("CDAFA"), or the Nevada Computer Crimes Law ("NCCL"), so long as Rimini purports to act on behalf of its customers.  In Counts IV and VIII, Rimini asserts, respectively, that the Letter renders Oracle liable for intentionally interfering with Rimini's contractual relations and under the California Unfair

Competition Law (the "UCL").  Oracle now seeks summary judgment as to Rimini's Count II and partial summary judgment as to Rimini's Counts IV and VIII as they relate to the Letter.

*First*, Oracle is entitled to summary judgment on Rimini's Count II for declaratory relief because the Letter can be a basis for claims by Oracle under computer access statutes.  At the pleading stage, the Court declined to dismiss Count II because Rimini "specifically pled that Oracle's software licenses specifically grant the licensee 'the right to access, download, and use the bug fixes, patches, and updates that Oracle makes available' on its support websites" and "further alleged that the software licenses specifically allow the licensee to appoint an agent to access the support websites and execute downloads on the licensees' behalf."  ECF No. 633 at 8:23–9:3.  The Court noted "the limited record and argument before the court" as well as the "parties' minimal briefing on this issue" at the motion to dismiss stage, and stated that "further development of this claim – including the actual language of Oracle's software licenses and the extent of the licensee's authorization to Rimini Street – is necessary to properly evaluate this claim."  *Id.* at 8:10, 9:5–9.  That further development has occurred.  Following discovery, there is *no* evidence that ███████████████████████████████████████.  No one—and certainly not Rimini—has an irrevocable right to access Oracle's support websites.  The Letter was consistent with Oracle's contractual rights and followed the process set forth by the Ninth Circuit in *Facebook*.  Any further access by Rimini of Oracle's support websites thus would violate the CFAA, the CDAFA, the NCCL, and other law.

*Second*, the same reasoning supports Oracle's motion for partial summary judgment on Rimini's intentional interference (Count IV) and UCL (Count VIII) claims to the extent they are based the Letter.  Oracle has the legal right to control access to its support websites, including under state and federal computer access statutes.  It can be neither improper nor unfair for Oracle to exercise that legal right, including as set forth in *Facebook*.  Rimini's self-serving notion of "fairness" cannot override Oracle's rights under state and federal computer access laws.  The UCL and the common law prevent Rimini from asserting these claims based on the Letter.

*Third*, partial summary judgment for Oracle on the intentional interference and UCL

claims (to the extent they are based on the Letter) is separately and independently appropriate because Rimini cannot establish critical elements of either claim. ████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ██████, and Rimini is unable to prove that Oracle's conduct caused any disruption of that obligation.  Moreover, Rimini cannot prove (among other things) that the Letter caused any cognizable harm.  In fact, Rimini admits that████████████████████████████████████████████ ██████████████.

Because Oracle acted lawfully in issuing the Letter, as shown by undisputed facts, summary judgment should be entered for Oracle on Rimini's Letter-based claims.

## II.    STATEMENT OF UNDISPUTED FACTS (LR 56-1)

### A.    No Agreement Grants Rimini The Rights It Asserted In Opposition To Oracle's Motion to Dismiss.

#### 1.    Oracle Software License Agreements ████████████████████

1.    Oracle customers purchase software licenses which grant them limited rights to copy and use specific Oracle software programs.   Oracle's Corrected Third Amended Counterclaim ("Oracle TAC"), ECF No. 584[1], ¶ 37; Rimini's Operative Answer, ECF No. 414 ("Answer") ("The allegations in paragraph 37 are admitted"); *see also* Declaration Of Sean P. Rodriguez In Support Of Oracle's Motion For Summary Judgment And Partial Summary Judgment And Supporting Memorandum Of Points And Authorities Regarding Oracle's Cease-and-Desist Letter ("Rodriguez Decl.") Ex. 1 at 4  (defining "Oracle Software Licensee" as "an entity that has entered into an agreement with Oracle that licenses and sets forth the other terms and conditions by which such entity obtains rights to use [Oracle] Software, including the right

---

[1] Pursuant to this Court's order (ECF No. 591), Oracle's Corrected Third Amended Counterclaims (ECF No. 584) replaced Oracle's Third Amended Counterclaims (ECF No. 399).  The Parties agreed (as reflected in ECF No. 591) to treat Rimini's previously filed answer (ECF No. 410) as responsive to Oracle's Corrected Third Amended Counterclaims (ECF No. 584).  The unredacted version of ECF No. 410 (Rimini's operative answer) is ECF No. 414.

1   to engage independent service providers in connection with such rights").

2        2.        Oracle's standard license agreements █████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   █████████████████████████.   Rodriguez Decl. Ex. 2 at 175:13–20 ████████████

5   ████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████

8   ██████████████████████████████

9        **2.**        █████████████████████████████████████████████

10  ██████████████████████████████████████

11       3.        █████████████████████████████████████████████████

12  ███████████████████   Rodriguez Decl. Ex. 3 at 48:11–49:23.

13       4.        █████████████████████████████████████████████████

14  ██████████████████████████████████.   *Id.* at 48:11–49:5.

15       5.        █████████████████████████████████████████████████

16  ████████████   *Id.* at 51:9–17; 59:12–22.

17       6.        For example, Oracle's Software Technical Support Policies from March 2014 state

18  that they "are subject to change at Oracle's discretion."   Rodriguez Decl. Ex. 4 at 1; *see also*

19  Rodriguez Decl. Ex. 3 at 51:9–17.

20       7.        The 2014 Software Technical Support Policies reference My Oracle Support,

21  stating: "Access to My Oracle Support is governed by the Terms of Use posted on the My Oracle

22  Support web site.   The Terms of Use are subject to change and a copy of these terms is available

23  upon request.   Access to My Oracle Support is limited to your designated technical contacts."

24  Rodriguez Decl. Ex. 4 at 20.

25       8.        Oracle's 2014 Software Technical Support Policies define "You" and "Your" as

26  "the individual or entity that has ordered technical support from Oracle" and states "Your

27  technical contacts are the sole liaisons between you and OSS for technical support services" and

28

"you must notify OSS whenever technical contact responsibilities are transferred to another individual." *Id*. at 1, 4.

9.     These are not recent developments.  There are ████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████" and that ██████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ Rodriguez Decl. Ex. 5 at -187; -192–93; Rodriguez Decl. Ex. 2 at 182:12–15; *see also* Rodriguez Decl. Ex. 6 at -467; -472–73 ██████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ████████████████████ Rodriguez Ex. 2 at 104:11–18.[2]

### 3.     Oracle Support Websites' Terms Of Use Confirm Oracle's Right To Control Access To Its Support Websites.

10.     To receive access credentials to Oracle's support websites, a user must agree to the Terms of Use ("TOU"), and every time a user accesses the site there is a link to the TOU that explains that website usage is subject to the TOU.  Trial Tr. at 863:19–864:8, *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH-PAL (D. Nev. Oct. 29, 2010) ("*Rimini I*"), ECF No. 794; *see also* Oracle TAC, ECF No. 584, ¶¶ 41–42; Answer, ECF No. 414, ¶ 41 ("Admitted that Oracle's Terms of Use contain certain restrictions regarding access to Oracle's technical support websites."); *see also* Rodriguez Decl. Ex. 7 at 6 ("By using the Oracle Web sites, you agree to these Terms of Use."); Rodriguez Decl. Ex. 8 (the Letter) at 39:18–40:5; ECF No. 397-1 (same).

11.     Oracle.com's TOU state that "Oracle reserves the right to terminate the permissions granted" to those accessing" the Oracle websites "at any time."  Rodriguez Decl. Ex.

---

[2]  The names of Oracle support websites have changed throughout the years.  "Customer Connection" was the name of the PeopleSoft online support website that was a predecessor to My Oracle Support, "which provides support for all of the Oracle software."  Trial Tr. at 864:9–24, *Rimini I*, ECF No. 794.

7 at 6 ¶ 5.

12.     Oracle.com's TOU state:  "Oracle may, in its sole discretion, at any time discontinue providing or limit access to the Site, any areas of the Site or Content provided on or through the Site.  You agree that Oracle may, in its sole discretion, at any time, terminate or limit your access to, or use of, the Site or any Content."  Rodriguez Decl. Ex. 7 at 7 ¶ 11.[3]

13.     My Oracle Support is Oracle's "general portal to support" and by 2015 provided "support for all of the Oracle software."  Rodriguez Decl. Ex. 3 at 58:17–59:6; Trial Tr. at 864:9– 865:12, *Rimini I*, ECF 794; *see also* Rodriguez Decl. Ex. 9 at 109:17–24 (My Oracle Support "portal is the location where Oracle stores software, patches and fixes, tax and regulatory updates, security patches, localizations, language patches").

14.     The My Oracle Support TOU state "Oracle retains the right to revoke access to the Materials at any time for any reason."[4]  Rodriguez Decl. Ex. 7 at 13.

**B.      Rimini Street Has Engaged In Massive And Harmful Access to And Downloading From Oracle's Support Websites.**

15.     Rimini has a ████████████████████████  Rodriguez Decl. Ex. 8 at 30:9– 25.

16.     Rimini admits it "engages in substantially more downloading activity than the average Oracle customer accessing the Oracle Websites."  Rimini TAC, ECF No. 489, ¶ 70; *see also* ECF No. 461 at 5:15–19 (Rimini brief stating it "should not be surprising that Rimini . . . would be the largest downloader of Oracle support materials.");  Answer, ECF No. 414 at 21:8–

---

[3] My Oracle Support's TOU have been "largely the same as they were for Customer Connection." Trial Tr. at 864:23–24, *Rimini I*, ECF No. 794.  For example, like the current My Oracle Support TOU, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████  *Compare* Rodriguez Decl. Ex. 10 at -480, *with* Rodriguez Decl. Ex. 7 at 11–14.

[4] My Oracle Support TOU define "Materials" to mean: "various programs, software and web-based tools, and other materials made available by Oracle now and in the future, including but not limited to bulletins, white papers, and other technical publications; information on product certification, product availability, and product desupport; any bug database; service requests that you have submitted; software patches; bulletin board and forum messages; and hyperlinks to web sites not controlled by Oracle."  Rodriguez Decl. Ex. 7 at 11.

15; Rodriguez Decl. Ex. 11 at -605 (Rimini executive wrote: ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

     17.    Rimini executive Nancy Lyskawa admitted during her 30(b)(6) deposition that

████████████████████████████████████████████████████████████

████████████████  Rodriguez Decl. Ex. 9 at 129:6–8.

     18.    In internal emails, Rimini employees referred to ████████████████

████████████████████████  Rodriguez Decl. Ex. 11 at -603

(Rimini executive wrote: ████████████████████████████████

███████.

     19.    Rimini's TAC admits Rimini has had a practice of downloading "comprehensive" sets of Oracle files and a "broad scope of materials (including files for different software platforms and files in different languages)."  Rimini TAC, ECF No. 489, ¶ 70.

     20.    Rimini's ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████  Rodriguez Decl. Ex. 8 at

77:16–79:6; 114:5–115:6.

     21.    For example, users associated with the riministreet.com email domain were responsible for more than half of all download-part requests from Oracle's support websites in 2015 and more than 70% in 2016.  Rodriguez Decl. Ex. 7 at 2–3; Rodriguez Decl. Ex. 8 at 79:11–80:18, 118:20–120:24.

     22.    In evidence presented to the jury in *Rimini I*, including Rimini CEO Seth Ravin's own testimony and internal Rimini emails, Rimini executives and employees discussed helping themselves to "the buffet" of copyrighted materials available to licensees on Oracle's websites, "making a crap load of money from [Oracle's] free stuff" that Rimini downloaded, and becoming worried when Oracle was "onto us from massive download volumes."  Trial Tr. at 272:16–25, *Rimini I*, ECF No. 790; Trial Tr. at 508:5–13; 547:1–16, *Rimini I*, ECF No. 792.

23.     Mr. Ravin directed Rimini employees to "keep downloading" Oracle software for its files and admitted under oath that he personally made "the decision to continue to use" automated downloading tools despite knowing that Oracle had changed its Terms of Use to prohibit that practice.  Trial Tr. at 273:1–13, *Rimini I*, ECF No. 790; *id.* at 482:15–483:15; *see also* Rimini TAC, ECF No. 489, ¶ 13.[5]

**C.      In January 2017, Oracle Put Rimini on Notice That Rimini's Continued Access To Oracle's Websites Would Be Unauthorized.**

24.     On January 17, 2017, Oracle sent the Letter to Rimini, which alerted Rimini that any access of Oracle websites after the expiration of 60 days (March 17, 2017) by any "Rimini employee, contractor, or executive" would be unauthorized and should be deemed unlawful.  Rodriguez Decl. Ex. 7 at 1–4.

25.     The Letter cited the December 9, 2016 Ninth Circuit *Facebook* decision and the express termination provisions under Oracle's Terms of Use.  *Id.* at 3–4; *see also id.* at 15–37.

**D.      Oracle Licensees Enjoy Uninterrupted Access.**

26.     The Letter does not preclude any Oracle licensee with an active Oracle support agreement from accessing Oracle's support sites.  ECF No. 414 at 21 ("Oracle's letter and counterclaims do not claim that Rimini's clients would not be able to download the same software that Rimini has downloaded"); ECF No. 461 at 6 (Oracle licensees have the option of "creating their own archive"); Rodriguez Decl. Ex. 9 at 42:11–12 (after Oracle revoked Rimini's access,

███████████████████████████████████████

27.     Oracle explained in the Letter that if an Oracle "licensee believes it needs access to My Oracle Support after the 60th day from today and the customer's maintenance end date on

---

[5] This Court and the jury in *Rimini I* found that Rimini and Mr. Ravin willfully and without authorization downloaded materials from Oracle's websites. Order at 2–3, *Rimini I*, ECF No. 1164. When the Ninth Circuit overturned the *Rimini I* downloading claim judgment it rested solely on its interpretation of the relevant statutes, never questioning the underlying factual findings. *Id.* (explaining that the panel decision turned on its legal conclusion that the *method* Rimini used did not violate the California or Nevada downloading statutes); *see also Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948 (9th Cir. 2018).

its Oracle support would otherwise have expired by that date, that licensee may contact Oracle," which would consider whether "to extend that customer's access to My Oracle Support for some further period of time, or to provide other assistance to the customer."  Rodriguez Decl. Ex. 7 at 4.

28. ████████████████████████████████████████████████████

████████████████████████████ Rodriguez Decl. Ex. 8 at 29:23–30:8.

**E.    Rimini Is Unable to Identify Any Right To Access Oracle's Support Websites.**

29.    Rimini designated Nancy Lyskawa, senior vice president of Rimini's global client onboarding, as its Rimini's 30(b)(6) representative to discuss *inter alia* Rimini's ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Rodriguez Decl. Ex. 12; Rodriguez Decl. Ex. 9 at 29:7–20; *id.* at 118:23–119:3.

30.    During her 30(b)(6) deposition, Ms. Lyskawa acknowledged ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ *Id.* at 109:25–110:13; *id.* at 111:6–21 (same).

31.    Ms. Lyskawa testified that █████████████████████████████ *Id.* at 111:23–112:9.

32.    Ms. Lyskawa stated that █████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ *Id.* at 132:12–133:17.

33.    Ms. Lyskawa ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* at 108:16–109:5 ███████

1 ███████████████████████████████████████████████

2 ████████████████████████████████████); *id.* at 112:10–19 █████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5     **F.     Rimini Can Identify No Harm Or Damages Caused By The Letter.**

6     34.    Rimini admits that ███████████████████████████

7 ███████████████████████████████████████████████

8 █████████████████████.  *Id.* at 246:23–247:5 ████████████████

9 ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ███████████████████████████*id.* at 247:6–13 ████████████

12 ███████████████████████████████████████████████

13 ███████████████████████████████████████████████

14 █; *id.* at 247:14–18 █████████████████████████████████

15 ███████████████████████████████████████████████

16 █████████████████████████████.").[6]

17     35.    Rimini has admitted that ███████████████████████

18 Rodriguez Decl. Ex. 11 at -605 █████████████████████████████

19 █████████████████ Rodriguez Decl. Ex. 9 at 218:13–16 ████████████

20 ████████████████████ *id.* at 162:3–25 ███████████████████

21 ████████████████████████████████████████████████

22     36.    Rimini "continues to advise its clients on the recommended scope of archives"

23 ████████████████████████████████████ Rodriguez Decl. Ex. 1 at 13:1–3

24 (admission that Rimini "continues to advise its clients on the recommended scope of archives");

25 _____

26 [6] Ms. Lyskawa testified in her April 19, 2018 deposition (at the conclusion of discovery) that she

27 ███████████████████████████████████████████ Rodriguez Decl. Ex. 20 at
194:22–195:7.

28

1  Rodriguez Decl. Ex. 13 at 3:12–14 (same); Rodriguez Decl. Ex. 9 at 42:14–44:17 ███████

2  ███████████████████████████████████████████████████████████████

3  ████████████████████ Rodriguez Decl. Ex. 14 at 223:2–6 ████████████████

4  ██████████████████████████████████ *id.* at 206:5–11 █████████

5  ███████████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████

7  ███████████████████████████████████; Rodriguez Decl. Ex. 11 at  -603

8  ███████████████████████████████████████████████████████████████

9  ███████████████████████████████████████████████████████████████

10  ███████████████████████████████ Rodriguez Decl. Ex. 15 █████

11  ███████████████████████████████████████████████████████████████

12  ███████████████████████████████████████; Rodriguez Decl. Ex. 16 at

13  217:9–21.

14      37.    Oracle's **Interrogatory No. 20** asked Rimini *inter alia* to identify ██████

15  ███████████████████████████████████████████████████████████████

16  ███████████████████████████████████████████████████████████████

17  ████████████████ Rodriguez Decl. Ex. 17 at 1.

18      38.    Rimini responded in part by citing its ████████████████

19  ███████████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████████████

21  ████████ *Id.* at 6:25–7:10; *see also id.* at 4:9–27 █████████████

22  ███████████████████████████████████████████████████████████████

23  ███████████████████████████████████████████████████████████████

24  ███████████████████████████████████████████████████████████████

25  ████████████████████

26      39.    Rimini's response to Oracle's Interrogatory No. 20 provided ██████

27  ███████████████████████████████████████████████████████████████

28

1　█████████████████████████████████████████████

2　██████████████████████████████████" *Id.* at 5:4–6:13; *see also* Rodriguez Decl. Ex. 9 at 156:8–15

3　█████████████████████████████████████████████

4　█████████████████████████████████████████████

5　█████████████████████████████████████████████

6　████████████████████████████████████

7　40.　Rimini ███████████████████████████████████

8　██████████████████████████ Rodriguez Decl. Ex. 17 at 5:4–6:13

9　████████████ Rodriguez Decl. Ex. 9 at 165:24–166:4 ██████████████

10　█████████████████████████████████████████████

11　█████████████████████████████

12　41.　For the ███████████████████████████████████

13　█████████████████████████████████████████████

14　███████████████████████████████████████ *Compare*

15　Rodriguez Decl. Ex. 19 ██████████ *with* Rodriguez Decl. Ex. 17 at 5:4–6:13 ████████

16　42.　Ms. Lyskawa testified that Rimini's ██████████████████

17　██████████████████████████████████ Rodriguez Decl.

18　Ex. 9 at 144:21–145:3 ████████████████████████████████

19　█████; *id.* at 140:13–18 ██████████████████████ *id.* at 140:19–25

20　██████████████████████████████ *id.* at 141:1–9 (███████████████

21　█████████; *id.* at 141:10–17 ██████████████████, 145:2–9

22　█████████████████████████████████████████ *id.*

23　at 146:4–10 █████████████████████████

24　43.　Oracle's Letter ███████████████████████████████

25　██████████████████████████████████ *Id.* at 149:16–

26

---

27 [7] Rimini's list names 44 customers, but numbers only 43 because there are two customers labeled as "39."  Rodriguez Decl. Ex. 17 at 5:4–6:13.

28

1   21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮

5   44.   Rimini admits ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 151:21–152:3

7   (emphasis added); *see also id.* 53:8–25 ▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮; *id.* at 167:16–19 ▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11   ▮▮▮▮; Rodriguez Decl. Ex. 17 at 5–6.

12   45.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rodriguez Decl. Ex. 21; Rodriguez

14   Decl. Ex. 16 at 240:9–22; Rodriguez Decl. Ex. 9 at 171:17–21 ("▮▮▮▮▮▮

15   ▮▮▮▮▮▮▮▮▮

16   46.   Rimini contends that the Letter ▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   Rodriguez Decl. Ex. 17 at 6:15–17.

20   47.   Rimini admits it is ▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   Rodriguez Decl. Ex. 9 at 164:10–165:8.

23   48.   **Oracle's Interrogatory No. 21** asked Rimini *inter alia* to ▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Rodriguez

26   Ex. 17 at 7:17–20.

27   49.   Rimini responded by ▮▮▮▮▮▮▮▮▮▮▮

28

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ██████████████████████████████ Rodriguez Ex. 17 at 9:6–12.

4    50.   Rimini ████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████ Rodriguez Ex. 19; *see also*

7 Rodriguez Ex. 18 at 5:25–27.

8    51.   **Oracle's Interrogatory No. 22** asked Rimini *inter alia* to ████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████ Rodriguez Ex. 17 at 9:12–20.

12    52.   Rimini responded by ████████████████████████████████

13 ██████. Rodriguez Ex. 17 at 11:1–3.

14    53.   Rimini ████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 Rodriguez Ex. 23 ¶ 71 ██████████████████████████████████

17 ██████ *id.* ¶ 72 ██████████████████████████████████

18    54.   Rimini does not ████████████████████████████████

19 ████████████ (Rodriguez Ex. 18 at 5:25–27; Rodriguez Ex. 19 at 9–10), and ████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████ (Rodriguez Ex. 22 at D-1 p. 2; 4).[8]

## III.   LEGAL STANDARD

Summary judgment is warranted where there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Lake at Las*

*Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp.*, 867 F. Supp. 920, 923 (D. Nev. 1994), *aff'd*, 78

---

[8] Rimini lists ████████████████████
Rodriguez Ex. 19 at 10; *see also* Rodriguez Ex. 18 at 5:25–27.

F.3d 593, 1996 WL 79482 (9th Cir. 1996).  "Because the defendant does not bear the burden of proof at trial, the defendant need only point to the insufficiency of the plaintiff's evidence to shift the burden to the plaintiff to raise genuine issues of fact as to each claim by substantial evidence." *Indep. Cellular Tel., Inc. v. Daniels & Assocs.*, 863 F. Supp. 1109, 1113 (N.D. Cal. 1994) ("defendant's motion for summary judgment faces a lighter burden").  A defendant meets its burden for summary judgment "(1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial." *Holper v. Ace Am. Ins. Co.*, 2014 WL 2960296, at *2 (D. Nev. June 27, 2014), *aff'd,* 650 F. App'x 357 (9th Cir. 2016) (granting defendant summary judgment on plaintiff's claim for declaratory relief where there were no "questions of material fact that would require a trial"). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

## IV.   ORACLE IS ENTITLED TO SUMMARY JUDGMENT ON RIMINI'S DECLARATORY RELIEF CLAIM CONCERNING THE LETTER.

In *Facebook*, the Ninth Circuit held that a defendant "can run afoul" of both the CFAA and CDAFA when it "has no permission to access a computer or when such permission has been revoked explicitly.[9]  Once permission has been revoked, technological gamesmanship or the enlisting of a third party to aid in access will not excuse liability." *Facebook*, 844 F.3d at 1067.

---

[9] As the Court is aware, the CFAA "prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use." *Facebook*, 844 F.3d at 1065–66 *see also* 18 U.S.C. § 1030(a)(2)(C) (covering one who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer").  California's CDAFA and Nevada's NCCL likewise protect and establish rights to be free of unwanted computer intrusions that are enforceable through private rights of action. California Penal Code § 502; N.R.S. § 205.4765; *Facebook*, 844 F.3d at 1069 (describing a "similar" analysis under both CFAA and CDAFA, and finding Power in violation of CDAFA(c)(2) because after receiving a cease-and-desist letter it "knowingly accessed and without permission took, copied, and made use of Facebook's data"); *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1174 (C.D. Cal. 2018) ("CDAFA is California's state-law analogue to the CFAA.").  The NCCL prohibits similar conduct to that prohibited by CFAA and CDAFA.  ECF No. 633 at 8 n.4.

*Facebook* confirmed that computer system owners can put a party on notice that it lacks authorization to access a computer system by sending the party a cease-and-desist letter. *Id.* That is precisely what Oracle did here by sending Rimini the Letter. SUF ¶ 27.

Rimini's Count II seeks a declaration that, notwithstanding the Letter, Rimini would not violate federal, California, or Nevada computer laws for "any access to, use of, or downloading from" Oracle's support websites "***authorized by Rimini's clients***." Rimini TAC, ECF No. 489, ¶ 119 (emphasis added). At the pleading stage, the Court declined to dismiss Count II because Rimini "specifically pled that Oracle's software licenses specifically grant the licensee 'the right to access, download, and use the bug fixes, patches, and updates that Oracle makes available on its support websites'" and "has further alleged that the software licenses specifically allow the licensee to appoint an agent to access the support websites and execute downloads on the licensees' behalf." ECF No. 633 at 8–9.[10] In other words, and in an apparent effort to distinguish *Facebook*, Rimini pled that Oracle licensees have an unfettered right (1) to access Oracle's websites and (2) to appoint any third party to act as their "agent" in exercising that alleged right. Those allegations are false as a matter of undisputed fact, and Oracle is now entitled to judgment on this claim.

As the Court observed in denying Oracle's motion to dismiss, the parties devoted only "minimal briefing" to these allegations at the pleading stage, including because only the pleadings were before the Court. *Id.* at 8–9. As a result, the Court found that "development of this claim - including the actual language of Oracle's software licenses and the extent of the licensee's authorization to Rimini Street - is necessary to properly evaluate this claim." *Id.* at 9.

Discovery has since completed, and—contrary to Rimini's pleading—Rimini has

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[10] *See, e.g.,* Rimini TAC, ECF No. 489, ¶ 117 (Rimini "accesses the Oracle Websites as an appointed agent of Oracle's customers, pursuant to the authorization and permission granted to Rimini by those customers"); *see also id.* ¶ 80 ("The 'Rimini customer[s] . . . paid Oracle for the right to possess and use the support materials located on the Oracle Websites and for the right to access the websites—including by using third parties like Rimini.").

1

▮▮▮▮▮▮▮▮▮. For example, during her testimony as Rimini's corporate representative

2   regarding the Letter, Ms. Lyskawa ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ SUF ¶¶ 29–33. ▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮. SUF ¶¶ 1–14. Oracle is therefore entitled to summary judgment. *Celotex Corp. v. Catrett*,

10   477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate

11   time for discovery and upon motion, against a party who fails to make a showing sufficient to

12   establish the existence of an element essential to that party's case, and on which that party will

13   bear the burden of proof at trial.").

14       *Facebook* also rejected the same agency-based argument Rimini makes here:  that

15   subsequent third-party authorization allows otherwise forbidden access, explaining that the

16   "consent that Power had received from Facebook users was *not sufficient* to grant continuing

17   authorization to access Facebook's computers after Facebook's express revocation of

18   permission." *Facebook*, 844 F.3d at 1068 (emphasis added).  Users' authorization was not enough

19   because the users could not supersede Facebook's rights under both the CFAA and CDAFA to

20   exclude Power from Facebook's systems.  *Id.* at 1069.  Analogizing to a physical property right,

21   the Ninth Circuit explained:

22       Suppose that a person wants to borrow a friend's jewelry that is held in a safe
        deposit box at a bank. The friend gives permission for the person to access the
23       safe deposit box and lends him a key. Upon receiving the key, though, the
        person decides to visit the bank while carrying a shotgun. The bank ejects the
24       person from its premises and bans his reentry. The gun-toting jewelry borrower
        could not then reenter the bank, claiming that access to the safe deposit box
25       gave him authority to stride about the bank's property while armed. **In other
        words, to access the safe deposit box, the person needs permission both
26       from his friend (who controls access to the safe) and from the bank (which
        controls access to its premises). Similarly, for Power to continue its
27       campaign using Facebook's computers, it needed authorization both from**

28

1
2

**individual Facebook users (who controlled their data and personal pages) and from Facebook (which stored this data on its physical servers). Permission from the users alone was not sufficient to constitute authorization after Facebook issued the cease and desist letter.**

3   *Id.* (emphasis added).

4       In short, to access Oracle's support websites, Rimini needs permission ***both*** from a

5   customer (which controls access to its licensed Oracle software) ***and*** from Oracle (which controls

6   access to its support websites).  Permission from Rimini's own customers alone is "not sufficient

7   to constitute authorization" after Oracle issued the Letter— ███████████████████████

8   ████████████████████████████████████████████████████████████████████

9   *Id.* at 1067–69.[11]  Therefore, any Rimini access of Oracle's support websites after March 17, 2017

10  is unauthorized and unlawful, and Oracle is entitled to summary judgment on Rimini's Count II.

11  **V.   THE SAME UNDISPUTED FACTS DISPOSING OF COUNT II ENTITLE**
12  **ORACLE TO PARTIAL SUMMARY JUDGMENT ON RIMINI'S UNFAIR COMPETITION AND INTENTIONAL INTERFERENCE CLAIMS TO THE**
13  **EXTENT THEY ARE BASED ON THE LETTER.**

14      The undisputed facts that necessitate summary judgment on Count II also entitle Oracle

15  to partial summary judgment on both Rimini's UCL and intentional interference claims (Counts

16  VIII and IV, respectively), to the extent those claims are based on the Letter.  With respect to the

17  UCL, it is not "unfair" for Oracle to exercise computer access rights that the federal, California,

18  and Nevada Legislatures have all concluded should be protected.  Nor can the exercise of those

19  rights amount to "improper" or "wrongful" interference.

20      **A.  The UCL Permits Oracle To Exercise Its Statutory Rights Without Liability.**

21      As one theory of UCL liability in Count VIII, Rimini alleges that Oracle's "revocation of

22

23  ─────────────────────
    [11] *Facebook*'s "bank" reasoning follows from the basic legal principle that ████████████
    ████████████████████████████████ *Swim v. Wilson*, 90 Cal. 126, 128 (1891)
24  ("the defendant, acting for [the principal] and as his agent, did not have any greater" property right
    than his principal); *Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1004 (1975) ("Jack on the
25  other hand is not entitled to any greater right than his principal Leona.").  In addition, an agent
    such as Rimini remains liable for conduct that violates a statute.  Restatement (Third) Of Agency
26  § 7.01, comment (c) (2006) ("When an agent's conduct violates a constitution, statute, regulation,
    or ordinance, the agent is subject to liability although the agent acted at the principal's direction
27  or to further the principal's interests, unless the imposition of liability is inconsistent with the
    constitution, statute, regulation, or ordinance.").

28

Rimini's access to the Oracle Websites and other conduct described above also constitutes an 'unfair' business practice." Rimini TAC, ECF No. 489, ¶ 159. This theory fails because the UCL does not prohibit conduct as "unfair" if it is independently legal. Because Oracle's Letter was independently legal, including as a means to protect Oracle's rights under federal and state computer access statutes, it cannot be the basis for Rimini's UCL claim.

It is well recognized that a plaintiff cannot convert conduct "clearly permitted" by a statute into a UCL violation. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012) (treating motion to dismiss as one for summary judgment and affirming UCL judgment for defendant, quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999)); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 (9th Cir. 2011) ("California law unequivocally permits Defendants' conduct, therefore affording safe harbor from UCL liability."); *United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *Olszewski v. ScrippsHealth*, 107 Cal. Rptr. 2d 187, 203 (Cal. App. 2001), *aff'd in part in superseding opinion at* 30 Cal. 4th 798 (2003) ("Because the Legislature considered that activity and determined it to be lawful, we may not override that determination by permitting a UCL claim against a private party and deprive that private party of the safe harbor constructed by the Legislature."). Independent statutory rights do not "evaporate merely because the plaintiff discovers" that unfair competition may be "a conveniently different label" to attack the exercise of those rights. *Cel-Tech,* 20 Cal. 4th at 182; *see also Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("if the conduct is deemed reasonable and condoned under the antitrust laws," courts will not find a violation of the "unfair" prong of Section 17200).

Oracle has federal and state statutory rights to control access to its servers. *See supra* n.9. Oracle's Letter to Rimini tracks the procedure approved by the Ninth Circuit for denying access to a computer system in order to assert claims under computer access statutes. Because Oracle's Letter is a recognized mechanism for asserting its statutory rights, that Letter cannot be the basis for a UCL "unfair" prong claim.

### B.   The Letter Also Cannot Constitute "Wrongful" Or "Improper" Interference.

Oracle also is entitled to summary judgment on Rimini's theory of intentional interference with contractual relations based on the Letter (Count IV) because Oracle has an absolute right to exclude Rimini from its support websites.  As this Court explained when deciding Oracle's motion to dismiss:

> Generally, there is no liability for causing a breach of contract where the breach is caused by the exercise of an absolute right, that is, an act which a person or entity has a definite legal right to engage in without any qualification.  **An absolute right includes rights incident to ownership of property, rights growing out of contractual relations, and the right to enter or refuse to enter into contractual relations**.

ECF No. 633 at 14–15 (citing 44B Am. Jur. 2d *Interference* § 22) (emphasis added).  An absolute privilege may also attach if the challenged conduct complies with a statutory procedure.  *Prappas v. Meyerland Cmty. Imp. Ass'n*, 795 S.W.2d 794, 796–98 (Tex. App. 1990), *writ denied* (Feb. 20, 1991) (approving an absolute privilege "because specifically authorized by" a statute that served an important public "policy"; discussing California authorities); *see also Neal v. Select Portfolio Servicing, Inc.*, 2017 WL 4224871, at *4 (N.D. Cal. Sept. 22, 2017) ("…an intentional interference claim will not arise if the defendant's conduct consists of something which he had an absolute right to do.") (internal citations and quotation marks omitted)); *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 996 (Ct. App. 1977) ("[I]t is well settled that no actionable wrong is committed where, as here, the defendant's conduct consists of something which he had an absolute right to do.").

The Letter asserts Oracle's absolute rights in at least three ways.

*First*, the rights asserted in the Letter asserted are "absolute" because they grow out of contractual relations:  Oracle's TOU ███████████████ binding contracts that preserve Oracle's right to revoke access, as explained above.  The Letter cited those Terms of Use, SUF ¶ 25, making clear that Oracle asserts absolute rights.  ECF No. 663 at 14 ("An absolute right includes . . . rights growing out of contractual relations").

*Second*, the rights protected by the Letter are "absolute" because they are incident to property ownership.  *Id.* ("An absolute right includes rights incident to ownership of

property"). Computer systems are physical property, and the right to control access to them is enforceable through an action for trespass to chattels. *Register.com v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004); *Intel v. Hamidi*, 30 Cal.4th 1342, 1356 (2003).

**Third**, the Letter concerns Oracle's absolute right to assert the protections of the cited computer access statutes. Those statutes serve policy goals so important that the federal, Nevada, and California Legislatures each created felony criminal liability for violators and simultaneously empowered private plaintiffs with a right of action. 18 U.S.C. 1030(e), 1030(c)(2)(B)(ii); Cal Penal Code. § 502(d)(1), 502(e)(1); N.R.S. § 205.4765-205.506, 205.511. Few rights could be more "absolute" than those enforceable by felony conviction. *Cf. Prappas*, 795 S.W.2d 794 (discussing California authorities and approving an absolute privilege "because specifically authorized by statute" that served an important public "policy"); *Olszewski*, 107 Cal. Rptr. 2d 187, 200-01 (absolute privilege applies to statements made when pursuing a statutorily authorized lien).

## VI. ADDITIONAL, INDEPENDENT REASONS REQUIRE SUMMARY JUDGMENT FOR ORACLE ON RIMINI'S LETTER-BASED CLAIM FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS.

Although Rimini's intentional interference claim fails based on Oracle's "absolute" right to exclude, *see* Section V.B, it also fails because Rimini cannot prove (and in fact the evidence disproves) that Oracle disrupted any contractual obligation or harmed Rimini.

"In an action for intentional interference with contractual relations, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 274 (2003); *see Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008) (same). Summary judgment is proper where a plaintiff has not met its burden of adducing evidence that "that there has been actual disruption as a result of" the defendant's activities, and that the plaintiff has "suffered damage as a result." *Milton H. Greene Archives, Inc. v. CMG*

*Worldwide, Inc.*, 2008 WL 11334030, at \*20 (C.D. Cal. Mar. 17, 2008); *see also LucasArts Entm't Co. v. Humongous Entm't Co.*, 870 F. Supp. 285, 291, 1993 WL 760205 (N.D. Cal. 1993) (summary judgment where there is no evidence of "actual disruption" including "loss of time, money, goodwill, reputation and business opportunity"). Rimini lacks evidence that there has been any actual disruption of any contractual obligation—or any other cognizable harm.

### A. Rimini Cannot Prove That It Was Contractually Obligated To Access And Download Materials From Oracle Websites.

Contrary to Rimini's allegation that Oracle disrupted its "obligation" to "access the Oracle Websites on behalf of Rimini's clients," Rimini cannot show that it had a valid and existing contractual obligation to any Rimini customer to access and download from Oracle websites at the time of the alleged interference.

As an initial matter, Rimini admits that ███████████████████████████████ ████████████████████████████████████████████. SUF ¶¶ 39–40; ¶¶ 48–50.[12] As a matter of law, ████████████ cannot be the subject of interference with contractual relations because Rimini cannot satisfy the necessary element of an existing contract that obligated Rimini to access Oracle's support websites. *O'Brien v. Morgan Stanley DW, Inc.*, 2008 WL 4224409, at \*7 (D. Nev. Sept. 10, 2008) (summary judgment for defendants "because a valid and existing contract held by the plaintiff is an essential element of a claim for intentional interference with current contractual relationships"); *see also AirHawk Int'l, LLC v. TheRealCraigJ, LLC*, 2016 WL 9584008, at \*6 (C.D. Cal. Aug. 1, 2016) (dismissing interference with contractual relations where no contract "at the time of the interference"); *Montgomery v. eTreppid Techs., LLC*, No. 2008 WL 11401776, at \*7 (D. Nev. July 2, 2008) (same).[13]

---

[12] Rimini appears never to have ████████████████████████████████████ █████████████████████████████████ SUF ¶ 50.

[13] Rimini identified ███████████████████ SUF ¶¶ 51–54. ██████████████████ are missing the element of an existing contractual obligation just as much as ████████ with whom Rimini had no contract at the time of the Letter because Rimini complains that the Letter prevented a new potential obligation, not an existing obligation. *See* Restatement (Second) Of Torts § 766B comments (c), (g).

---

1        As for the ███████████████████████████, Rimini has not and cannot

2  identify terms that obligate Rimini to access any Oracle support websites or to download Oracle

3  support material for its customers.  SUF ¶ 41; *see also id. ¶¶* 37–38.  By Rimini's own admission,

4  ████████████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████.  *Id.* at ¶¶ 37–38 (emphasis added).

6  Oracle is not aware of any customer suing Rimini for breach of any contractual provision as a

7  result of the Letter, ████████████████████████████████████████████████

8  ████████████████████████.  *Id*. at ¶¶ 34; 36.  And even today, with the Letter in force,

9  Rimini "continues to advise its clients on the recommended scope of archives"; indeed, Rimini

10  executives unanimously agree that ████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████

12  ████████████████████████  *Id.* at ¶ 36.

13        These undisputed facts warrant summary judgment in favor of Oracle on this claim as it

14  relates to the Letter.  *See Home Gambling Network, Inc. v. Piche*, 2013 WL 5492568, at *12 (D.

15  Nev. Sept. 30, 2013), *aff'd,* 563 F. App'x 771 (Fed. Cir. 2014) (summary judgment for defendants

16  on intentional interference with contractual relations where contract at issue did "not actually

17  cover" the subject of the lawsuit); *Arkley v. Aon Risk Servs. Companies, Inc.*, 2012 WL 12885707,

18  at *3 (C.D. Cal. June 13, 2012) (dismissing interference with contractual relations claim in part

19  because of the lack of basis that the third parties to an alleged disrupted contract "were subject to

20  contractual obligations that were disrupted"); *cf. Methodist Hosp. of S. California v. Blue Cross

21  of California*, 2010 WL 11508022, at *8 (C.D. Cal. Feb. 26, 2010) (dismissing case where

22  defendant could not have interfered with obligations that do not exist).

23      **B.**    **Rimini Cannot Prove That Oracle's Letter Caused Disruption.**

24        Rimini also cannot point to "specific facts showing that the actions taken by" Oracle

25  "directly resulted in the disruption" of the contracts between Rimini and its customers.

26  *Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 2015 WL 5768534, at *7 (D. Nev.

27  Sept. 29, 2015) (summary judgment for defendant where plaintiff failed to cite any specific facts

28

1    showing how the defendant interfered, or "how that interference directly resulted in the disruption

2    of" the contract); *see also Stereoscope, LLC v. U.S. Bank Nat'l Ass'n*, 675 F. App'x 725, 726 (9th

3    Cir. 2017) (dismissing interference claim for failure to plead causation, namely that "the contract

4    would otherwise have been performed" but for the defendant's conduct (internal citations and

5    quotation marks omitted)); *Mossimo Holdings, LLC v. Haralambus*, 2017 WL 1240739, at *5

6    (C.D. Cal. Apr. 4, 2017), *aff'd*, 2018 WL 3982334 (9th Cir. Aug. 21, 2018) ("The third element

7    incorporates a causation requirement that the intentional acts be a substantial factor in causing the

8    breach.").

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ████████████████████████████████ SUF ¶¶ 41–45; *see also id.* ¶ 53. ████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████ SUF ¶ 28.

14        Nor can Rimini show causation, as it was Rimini's own conduct that caused any

15   disruption.  Rimini lacks evidence that the Letter—████████████████████████

16   ████████████████████████████████████████████████████.

17   *LucasArts Entm't*, 870 F. Supp. at 291 (summary judgment for plaintiff against defendant's

18   interference counterclaim where defendant "has yet to produce any evidence" identifying

19   actionable disruption); *see also Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118,

20   1129 (1990).  Rimini's **choice** to █████████████████████████████████

21   █████████████████████ is therefore equally fatal as a factual matter (SUF ¶¶ 40; 45; 53), as it

22   is for the legal reasons explained in the last section.  Moreover, Rimini's own admissions indicate

23   that ██████████████████████████████████████████████

24   *See, e.g.*, Rodriguez Decl. Ex. 9 at 166:9–19 ████████████████████

25   ████████████████████████████████████████████████████

26   ████████████████████████ *id.* at 167:1–15 (Rimini ██████████████

27   ████████████████████████ *id.* at 210:15–211:22 ████████████████

28

1

2 ████████████████████████ SUF ¶ 53 ███████████████

3 ███████████

4    **C.    Rimini Cannot Identify Cognizable Harm Or Damage.**

5    Finally, Rimini is unable to establish any cognizable harm from the Letter.  *Sebastian*

6 *Int'l, Inc. v. Russolillo*, 2005 WL 1323127, at *10 (C.D. Cal. Feb. 22, 2005) (summary judgment

7 for defendant where "none of Plaintiff's proffered evidence is sufficient to allow a reasonable

8 trier of fact to find that Plaintiff suffered damages as a result of Defendants' alleged intentional

9 interference with Plaintiff's contractual relations, or to establish the level of such damages beyond

10 mere speculation . . .").  The evidence indicates that Oracle's Letter ████████████████

11 ████████████   SUF ¶ 35.  Rimini admits that Oracle's Letter, ███████████████

12 ██████████████████████████████  SUF ¶¶ 35, 46–47.  Rimini admits

13 it has not ████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ██████████████████████████████████████  SUF ¶ 34; *see Family*

16 *Home & Fin. Ctr.*, 525 F.3d at 825 (upholding summary judgment for defendant where plaintiff

17 did not produce evidence that defendant "influenced or caused" a third party to "terminate" its

18 contract with the plaintiff).  By Rimini's own admission, it was ███████████████████

19 ████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ██████████████████████  SUF ¶¶ 44–45.  And though Rimini claims it ████████

22 ████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ████████████████████████.  SUF ¶¶ 44–47.

25 **VII.   SUMMARY JUDGMENT FOR ORACLE IS INDEPENDENTLY REQUIRED ON
26          RIMINI'S UCL CLAIM BASED ON THE LETTER.**

27    Rimini's UCL claim based on the Letter also fails for an independent reason.  Specifically,

28

Rimini lacks evidence sufficient to demonstrate that it lost money or property as a result of Oracle's alleged unfair competition.  *Jane Doe I v. Wal-Mart Stores, Inc.*, 2007 WL 5975664, at *6 (C.D. Cal. Mar. 30, 2007) ("a private plaintiff under Section 17200 [the UCL] must be someone 'who has suffered injury in fact and has lost money or property as a result of such unfair competition.'" (quoting Cal. Bus. & Prof. Code § 17204)), *aff'd sub nom. Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009); *Linares v. CitiMortgage, Inc.*, No. C-14-3435 EMC, 2015 WL 2088705, at *7 (N.D. Cal. May 5, 2015).  Summary judgment under the UCL is proper where the plaintiff can identify no "particular instances" where customers were lost or when "there is nothing in the record demonstrating that the [challenged conduct] actually was responsible for any loss of money or property." *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1197 (N.D. Cal. 2015) (summary judgment for defendant where the plaintiff could establish no "quantum of lost money or property"); *Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006) (summary judgment for defendant appropriate under the UCL where plaintiff made no non-speculative "showing of any harm or damages").  ████████████

████████████████████████████████████████████████████████████

████████████████████ Rimini admits that ████████████████████

████████████████████████████████████

## VIII.   CONCLUSION

For these reasons, Oracle respectfully requests that the Court grant summary judgment in favor of Oracle on Count II in Rimini's Third Amended Complaint and partial summary judgment in favor of Oracle on Counts IV and VIII in Rimini's Third Amended Complaint as they relate to the Letter.

DATED:  October 12, 2018                    BOIES SCHILLER FLEXNER LLP

                                            By: */s/ Richard J. Pocker*
                                            Richard J. Pocker
                                            Attorneys for Defendants and Counterclaimants
                                            Oracle America, Inc. and Oracle International Corp.

1

## <u>CERTIFICATE OF SERVICE</u>

2    I certify that on October 12, 2018, I electronically transmitted the foregoing **ORACLE'S**

3   **MOTION FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT AND**

4   **SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES REGARDING**

5   **ORACLE'S CEASE-AND-DESIST LETTER** to the Clerk's Office using the Electronic Filing

6   System pursuant to Local Rules Section 1C.

7   Dated:  October 12, 2018                    BOIES SCHILLER FLEXNER LLP

8

9                                     By:   /s/ *Ashleigh Jensen*
10                                          Ashleigh Jensen

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28