BOIES SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:     702.382.7300
Facsimile:     702.382.2755
rpocker@bsfllp.com

BOIES SCHILLER FLEXNER LLP
WILLIAM ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
1401 New York Avenue, NW, 11th Floor
Washington, DC 20005
Telephone:     202.237.2727
Facsimile:     202.237.6131
wisaacson@bsfllp.com
kdunn@bsfllp.com

BOIES SCHILLER FLEXNER LLP
STEVEN C. HOLTZMAN (*pro hac vice*)
KATHLEEN R. HARTNETT (*pro hac vice*)
BEKO O. REBLITZ-RICHARDSON
(*pro hac vice*)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone:     510.874.1000
Facsimile:     510.874.1460
sholtzman@bsfllp.com
khartnett@bsfllp.com
brichardson@bsfllp.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
JOHN A. POLITO (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
FRANK KENNAMER (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:     415.442.1000
Facsimile:     415.442.1001
benjamin.smith@morganlewis.com
john.polito@morganlewis.com
sharon.smith@morganlewis.com
frank.kennamer@morganlewis.com

DORIAN DALEY (*pro hac vice*)
DEBORAH K. MILLER (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:     650.506.4846
Facsimile:     650.506.7114
dorian.daley@oracle.com
deborah.miller@oracle.com
jim.maroulis@oracle.com

*Attorneys for Defendants and
Counterclaimants Oracle America, Inc. and
Oracle International Corp.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation,<br>Plaintiff,<br><br>v.<br><br>ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Defendants. | Case No. 2:14-cv-01699 LRH CWH<br><br>**ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES REGARDING RIMINI'S MIGRATION AND WINDSTREAM HOSTING** |
| ORACLE AMERICA, INC., a Delaware corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br>Counterclaimants,<br><br>v.<br><br>RIMINI STREET, INC., a Nevada corporation; SETH RAVIN, an individual,<br>Counterdefendants. | Judge:     Hon. Larry R. Hicks<br><br><br>**PUBLIC REDACTED** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS (LR 56-1) ............. 3

        A.      The Licenses For the Customers At Issue In This Motion Contain Limited
                License Grants ███████████████████████████ ............ 3

        B.      Rimini Copied Oracle's Copyrighted Software to Create Infringing "Local"
                Environments on Its Computer Systems .......................................... 4

        C.      Rimini Copied and Distributed Infringing Oracle Software Environments
                During Its So-Called "Migration." ................................................. 6

        D.      The New Environment Instances Built on Windstream From the Infringing
                "Migrated" Copies of Oracle Software Are Also Infringing ................. 11

III.    LEGAL STANDARD ........................................................................... 20

IV.     ORACLE HOLDS EXCLUSIVE RIGHTS TO REPRODUCE AND
        DISTRIBUTE THE RELEVANT COPYRIGHTS ...................................... 20

V.      RIMINI INFRINGED ORACLE'S COPYRIGHTS BY CREATING
        ADDITIONAL COPIES OF THE INFRINGING LOCAL ENVIRONMENTS ........ 21

        A.      Rimini Copied Protected Expression When As Part of the "Migration" It
                Created ████████████ Copies of the Infringing Local Environments
                On Rimini's Computer Systems ..................................................... 21

        B.      Rimini Possesses No Express License Defense For This Copying ............ 23

VI.     RIMINI INFRINGED ORACLE'S DISTRIBUTION RIGHT BY ████████
        ████████████████ .................................................................. 24

VII.    RIMINI INFRINGED ORACLE'S COPYRIGHTS BY COPYING AND
        ██████████████████████████ ORACLE'S SOFTWARE TO WINDSTREAM
        WITHOUT A LICENSE ....................................................................... 25

        A.      Rimini's ████████████████████████████ Amounts To Contributory Copyright Infringement ........... 25

        B.      Rimini Also Directly Infringed Oracle's Copyrights by Copying ████
                ██████████████████ ...................................................... 26

        C.      Rimini's Express License Defense Fails Because The Windstream
                Environments Are Not Located at the Customer's Facilities.................. 27

VIII.   CONCLUSION ................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bourne v. Walt Disney Co.*,
  68 F.3d 621 (2d Cir. 1995)........................................................................................23

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
  2012 U.S. Dist. LEXIS 177718 (S.D. Cal. Nov. 14, 2012) .....................................21

*Capitol Records LLC v. ReDigi Inc.*,
  934 F. Supp. 2d 640 (S.D.N.Y. 2013)......................................................................22

*Cohen v. Paramount Pictures Corp.*,
  845 F.2d 851 (9th Cir. 1988).....................................................................................25

*Columbia Pictures Industries, Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013)...................................................................................26

*Cosmetic Ideas, Inc. v. IAC/InteractiveCorp.*,
  606 F.3d 612 (9th Cir. 2010).....................................................................................20

*Dream Games of Arizona v. PC Onsite*,
  561 F.3d 983 (9th Cir. 2009).....................................................................................21

*Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*,
  307 F.3d 197 (3d Cir. 2002).......................................................................................30

*F.B.T. Productions, LLC v. Aftermath Records*,
  621 F.3d 958 (9th Cir. 2010).....................................................................................30

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996).......................................................................................26

*Graphic Design Marketing, Inc. v. Xtreme Enters., Inc.*,
  772 F. Supp. 2d 1029 (E.D. Wisc. 2011) ..................................................................21

*HyperQuest, Inc. v. N'Site Solutions, Inc.*,
  632 F.3d 377 (7th Cir. 2011).....................................................................................30

*LGS Architects, Inc. v. Concordia Homes of Nevada*,
  434 F.3d 1150 (9th Cir. 2006)...................................................................................23

*MAI Sys. Corp. v. Peak Computer Corp.*,
  991 F.2d 511 (9th Cir. 1993).....................................................................................23

i

*Manno v. Tennessee Production Center, Inc.*,
   657 F. Supp. 2d 425 (S.D.N.Y. 2009) .................................................................................24

*Michaels v. Internet Entm't Group, Inc.*,
   5 F. Supp. 2d 823 (C.D. Cal. 1998) .....................................................................................23

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   6 F. Supp. 3d 1086, 1097-98 (D. Nev. 2014) ............................................................. passim

*Oracle USA, Inc. v. Rimini Street, Inc.*,
   879 F.3d 948 (9th Cir. 2018) ...........................................................................4, 24, 27, 28

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...............................................................................................26

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663, 134 S.Ct. 1962 (2014) ...................................................................................25

*Rainero v. Archon Corp.*,
   2013 WL 5965916 (D. Nev. Nov. 7, 2013) ...................................................................24, 28

*Range Road Music, Inc. v. East Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ...............................................................................................20

*Religious Tech. Ctr. v. Netcom On-Line Comm'n Svcs., Inc.*,
   923 F. Supp. 1231 (N.D. Cal. 1995) .....................................................................................21

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ...............................................................................................20

*Sony/ATV Publishing, LLC v. Marcos*,
   651 F. App'x. 482 (6th Cir. 2016) .......................................................................................24

*Triad Sys. Corp. v. Southeastern Express Co.*,
   64 F.3d 1330 (9th Cir. 1995), *overruled on other grounds by Gonzales v.*
   *Texaco*, 344 F. App'x 304 (9th Cir. 2009) ..........................................................................27

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
   875 F.2d 1044 (2d Cir. 1989) ...............................................................................................24

*Viesti Associates, Inc. v. McGraw–Hill Global Educ. Holdings, LLC*,
   2015 WL 585806 (D. Col. Feb. 11, 2015) ......................................................................24, 28

*Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*,
   210 F. Supp. 2d 147 (E.D.N.Y. 2002) .................................................................................23

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) ...............................................................................................23

ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
RIMINI'S MIGRATION AND WINDSTREAM HOSTING

**STATUTES**

17 U.S.C. § 106.................................................................................................23, 25

17 U.S.C. § 201.........................................................................................................20

17 U.S.C. § 410.............................................................................................6, 20, 21

17 U.S.C. § 501.........................................................................................................20

**RULES**

Federal Rule of Civil Procedure 56.......................................................................1, 20

ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
RIMINI'S MIGRATION AND WINDSTREAM HOSTING

1  **NOTICE OF MOTION AND MOTION**

2        Pursuant to Federal Rule of Civil Procedure 56(a), Oracle International Corporation

3  ("Oracle" or "OIC") respectfully moves this Court to grant Oracle partial summary judgment on

4  Oracle's first claim for relief against Rimini Street, Inc. ("Rimini") and on Rimini's second

5  affirmative defense (express license).  This motion is based on this notice of motion, supporting

6  memorandum of points and authorities herein, the evidence attached to the accompanying

7  Appendix of Exhibits, the supporting declarations, the entire record in this action, and such other

8  matters and argument as may be presented to the Court.

9  **I.  INTRODUCTION**

10        In *Rimini I*, this Court ruled that Rimini infringed Oracle's copyrights by making copies of

11  Oracle software on computers located at Rimini's facilities rather than a customer's facilities.

12  The undisputed evidence here shows that, rather than delete those infringing copies, Rimini made

13  *additional copies* of the infringing customer environments, and either sent copies of those

14  infringing environments to customers or third-party hosters.  Oracle is entitled to a judgment as a

15  matter of law because a copy of an infringing software environment is necessarily infringing,

16  regardless of where it is sent.  Further, as to the environments that Rimini sent to third parties,

17  Rimini has once again violated the facilities restriction in the relevant licenses, as a third party's

18  facilities are not the customer's facilities.

19        From the moment it initiated the *Rimini II* litigation, Rimini touted its so-called

20  "migration" as a part of its supposed cure to its widespread infringement of Oracle's software

21  copyrights.  ECF No. 1 ¶ 8.  In actuality, Rimini's "migration" constituted systematic, unlicensed

22  reproduction and distribution of infringing copies of Oracle's copyrighted software on a massive

23  scale—largely *after* this Court issued its February 2014 partial summary judgment order in *Rimini*

24  *I*, and in clear violation of that order.  Following that order, Rimini created ▌▌▌▌▌▌ *additional*

25  copies of Oracle software ▌▌▌▌▌▌▌▌▌▌▌▌▌▌

26        After the Court ruled in *Rimini I* that the "local" PeopleSoft environments on Rimini's

27  systems were infringing and unlicensed, instead of deleting those environments (or at least

28  ceasing to use them), Rimini instead made even *more* copies of those infringing environments and

1

1   then distributed those copies to new locations. ███████████████████████

2   ███████████████████████████████████████████████████████

3   ███████████████████████████

4        This motion concerns Rimini's reproduction and distribution of Oracle software in

5   connection with Rimini's "migration" of environments it claims are associated with four

6   exemplar Rimini customers: ███████████████████████████

7   █████████████████████████ Oracle seeks a ruling that Rimini

8   infringed the relevant Oracle copyrights, and possesses no express license defense, as to each of

9   the following categories of copying:

   - First, as part of the "migration," Rimini made additional infringing copies of the

11        infringing environments it had on its computer system. ████████████████

12        ███████████████████████████████████████████

13        ████████████████████

   - Second, Rimini created and then distributed additional copies of those materials to its

15        customers ███████████████████████

   - Third, Rimini created ████████████████ additional copies of those materials

17        ████████████████ on third-party cloud servers hosted by Windstream Hosted

18        Solutions.

19        Rimini's conduct infringed Oracle's copyrights, and none of Rimini's copying and

20   distribution here was licensed.  No license allowed Rimini's ████████████" reproduction of

21   these infringing copies of Oracle's copyrighted software on Rimini's computer systems, or to

22   then distribute those copies.  Applied to the undisputed facts, the law and principles that animated

23   the Court's past orders—including the Court's prior interpretation of relevant license provisions,

24   which was affirmed by the Ninth Circuit and has preclusive effect here—mandate the same result

25   here:  a finding of copyright infringement and the dismissal of Rimini's express license defense

26   for all of these copies.

27        Rimini's express license defense further fails with respect to the Oracle software

28   environments copied to Windstream and supposedly associated with ████████████████

                                          2

1    ████████████████████████████████████████.  Rimini copied the environments again

2    ███████████████████████████████████████ to create new

3    working environment instances hosted by third-party cloud-hosting provider Windstream.  These

4    Windstream environments are not at the customer's "facilities."  The term "facilities" refers to a

5    physical location, owned or leased by the licensee customer.  In *Rimini I*, the Court ruled that the

6    PeopleSoft facilities restriction "expressly limits copying the licensed software to only the

7    [licensee's] facilities," and that environments hosted on Rimini servers violated that restriction.

8    The Ninth Circuit affirmed.  Windstream is likewise not the licensee's facility because

9    Windstream data centers are a separate location from the licensee, which the licensee does not

10   own or lease.  The customer merely contracts with Windstream for cloud services.  As shown in

11   detail through the exemplars in this motion, the Windstream-hosted environments are unlicensed

12   because they violate the same facilities restriction that the Court previously construed in *Rimini I*.

13   **II.     STATEMENT OF UNDISPUTED MATERIAL FACTS (LR 56-1)**

14          Oracle sets forth below the specific, undisputed facts that are material to its request for

15   partial summary judgment, together with citations to the evidence attached as exhibits ("Ex.") to

16   the supporting Appendix of Exhibits, as required by Civil Local Rule 56-1 and Civil Local Rule

17   10-3(b), and as described in the accompanying Declaration of Marilyn Tiki Dare ("Dare Decl."),

18   Declaration of Lisa Ripley ("Ripley Decl."), Declaration of Lindsey Shinn ("Shinn Decl."), and

19   Declaration of Barbara A. Frederiksen-Cross ("Frederiksen-Cross Decl.").  These facts are cited

20   throughout this motion as "SUF [#]," with reference to the numbered paragraphs in this section.

21          **A.     The Licenses For the Customers At Issue In This Motion Contain Limited
                      License Grants ███████████████████████████████████████.**

22

23          1.     The PeopleSoft licenses for ████████████████████████████████████

24   ████████████████████████████ contain the same limited license grants included in the

25   City of Flint license that the Court in *Rimini I* ruled, and the Ninth Circuit affirmed, "expressly

26   limit[] use of the software [] to the City of Flint's facilities," "expressly limit[] copying the

27   licensed software to *only* the City of Flint's facilities," and "do[] not authorize Rimini's off-site

28   copies of the licensed software."  *See* Ripley Decl. ¶¶ 5-7; Ex. 8 (City of Flint, MI PeopleSoft

3

1  license) at ORCLRS0004135; Ex. 9 (███████████████████████) at

2  ORCLRST00049306; *id.* at ORCLRST00049310; Ex. 10 (█████████████ PeopleSoft

3  license) at ORCLRST00049092; Shinn Decl. ¶¶ 3-5; Ex. 14 (Document from the Florida

4  Secretary of State re ██████████████████████); Exs. 15a-15b (Documents ████

5  █████████████████████); *Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1086,

6  1097-98 (D. Nev. 2014) (ruling that City of Flint license included facilities restriction); *Oracle*

7  *USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 959-60 (9th Cir. 2018) (affirming copyright

8  liability for PeopleSoft software based on facilities restriction).

9        2.    The PeopleSoft licenses for ████████████████████████████

10  ████████████████████████ contain the same limited license grants included in the

11  license for the Pittsburgh Public Schools, which the Court construed as limiting both the copying

12  and use of the licensed software to "facilities owned or leased by [the Pittsburgh Public

13  Schools]." *Oracle USA, Inc.*, 6 F. Supp. 3d at 1100; *see* Ripley Decl. ¶¶ 8-12; Ex. 11 (Pittsburgh

14  Public Schools license, ORCLRS016498); Ex. 12 ██████████ PeopleSoft license,

15  ORCLRST00763306); Ex. 13 (████████ PeopleSoft license, ORCLRST00007225).

16        3.    The Oracle PeopleSoft licenses for the four customers at issue in this motion ██

17  ████████████████████████████████████ *See* Ripley Decl. ¶¶ 6-7, 9-12; Ex. 13

18  (███████ ORCLRST00007225); Ex. 10 (███████ ORCLRST00049092); Ex. 9 ████████

19  ORCLRST00049305 at 9306); Ex. 12 (████████ ORCLRST00763306).

20        4.    Oracle PeopleSoft customers with such limited license grants may not ████████

21  ████████████████████████████ without an express license

22  right to do so.  Shinn Decl. ¶¶ 18, 34; Ex. 44 (Transcript Excerpts of 30(b)(6) Deposition of

23  Oracle (Richard Allison), Mar. 28, 2018) at 133:18-135:17, 146:24-147:7; Ex. 28 (Transcript

24  Excerpts of Deposition of Safra Catz, Feb. 16, 2018) at 67:14-21, 76:6-77:24.

25      **B.**    **Rimini Copied Oracle's Copyrighted Software to Create Infringing "Local"**
          **Environments on Its Computer Systems.**

26

27        5.    Each of the four customers discussed here contracted with Rimini after ████

28  ████████████████████████████████ Shinn Decl. ¶¶ 6-7; Ex. 16

1  (Rimini's 7th Supp. Resp. to Interrog. No. 1); Ex. 17 (Rimini's 7th Supp. Resp. to Interrog. No. 1,

2  Ex. A-6 ███████████████████████████████████████████████████████████████

3  █████████████████████████████

4        6.     After the close of fact discovery in *Rimini I* in December 2011, Rimini created six

5  PeopleSoft environments purportedly associated with these four customers: ███████████

6  ███████████████████████████████████████████████████, with approximate build dates of

7  █████████████████████████████, respectively), █████████████████████, approximate build date

8  of ██████████████), ████████████████████████████████████, approximate build date of

9  ████████████████), and █████████████████████████████, approximate build date of ████████████).

10  Shinn Decl. ¶¶ 8-9, 13-15; Ex. 18 (Rimini's 10th Supp. Resp. to Interrog. No. 3 at 10); Ex. 19

11  (Rimini's 10th Supp. Resp. to Interrog. No. 3, Ex. D-1.4); Ex. 23 (Oracle's Am. Requests for

12  Admission No. 1, Jan. 29, 2018); Ex. 24 (Oracle's Am. Requests for Admission No. 1, Exhibit B-

13  1, dated Jan. 29, 2018); Ex. 25 (Rimini's Feb. 28, 2018 Resps. and Objs. to Am. RFA No. 1).

14        7.     Rimini created those six PeopleSoft environments █████████████████

15  ██████████████████, and each of those environments embodied substantial portions of the

16  protected expression covered by Oracle's registered, copyrighted works, as described in the chart

17  below. Shinn Decl. ¶¶ 8-9, 13-15; Ex. 18 (Rimini's 10th Supp. Resp. to Interrog. No. 3 at 10);

18  Ex. 19 (Rimini's 10th Supp. Resp. to Interrog. No. 3, Ex. D-1.4); Ex. 23 (Oracle's Am. Requests

19  for Admission No. 1, Jan. 29, 2018); Ex. 24 (Oracle's Am. Requests for Admission No. 1, Exhibit

20  B-1, Jan. 29, 2018); Ex. 25 (Rimini's Feb. 28, 2018 Resps. and Objs. to Am. RFA No. 1).

| Customer | Software Product | Copyrights | Infringing Copies |
|---|---|---|---|
| ██████████████ | PeopleSoft HRMS 9.1<br>PeopleTools 8.50.25 | TX 7-065-398<br>TX 7-092-757 | ████████ |
| | PeopleSoft FSCM 9.1<br>PeopleTools 8.51.11 | TX 7-065-357<br>TX 8-151-290 | ████████ |
| ██████████████ | PeopleSoft HRMS 8.3<br>PeopleTools 8.17.09 | TX 5-469-032<br>TX 5-266-221 | ████████ |
| ███████████████ | PeopleSoft HRMS 8.3 SP1<br>PeopleTools 8.20.07 | TX 5-469-032<br>TX 5-266-221 | ████████ |
| ██████████ | PeopleSoft HRMS 8.3 SP1<br>PeopleTools 8.20.13 | TX 5-469-032<br>TX 5-266-221 | |

21

22

23

24

25

26

27        8.     The registrations for TX 5-469-032 (PeopleSoft 8.3 HRMS), TX 7-065-398

28  (PeopleSoft HRMS 9.1), TX 7-065-357 (PeopleSoft Financials and Supply Chain Management

9.1), TX 5-266-221 (PeopleTools 8.10), and TX 7-092-757 (PeopleTools 8.50) were each obtained within five years of first publication.  The registration for TX 8-151-290 (PeopleTools 8.51) was obtained five years and five months after first publication.  Four of the certificates establish OIC as the original copyright claimant as to each of the works, and ownership of the two certificates that identify PeopleSoft, Inc. as the original claimant were transferred to OIC on March 1, 2005.  OIC is also PeopleSoft, Inc.'s successor-in-interest, and owns the PeopleSoft-branded software.  Dare Decl. ¶¶ 3-8; Exs. 1-6 (certificates of registration); Ex. 7 (Asset Transfer Agreement); *see also* ECF No. 867-3, Declaration of Marilyn Tiki Dare in support of Oracle's Motion Pursuant to 17 U.S.C. § 410(c) at ¶¶ 20-22, 23(g); *id.*, Exs. QQ.15 & RR.

9.     Rimini does not ███████████████████████████████████████ ███████████████████████ and Rimini's express license affirmative defense██████ ████████████████████.  Shinn Decl. ¶ 12; Ex. 22 (Rimini's First Suppl. Resp. to Interrog. No. 15 at 6-7); *see Oracle USA, Inc.*, 6 F. Supp. 3d at 1094.

**C.     Rimini Copied and Distributed Infringing Oracle Software Environments During Its So-Called "Migration."**

10.     As part of what Rimini called a "migration," Rimini████████████████ ████████████████████████████████ of the local Oracle software environments that were on Rimini's computer systems█████████████████████ ████████████████████, and then ████████████████ █████████████████████████.  Shinn Decl. ¶¶ 9-11, 20, 25, 42; Ex. 21 (Rimini's First Supp. Resp. to Interrog. No. 4); Ex. 55 (Transcript Excerpts of Deposition of 30(b)(6) Deposition of Rimini (Steven Salaets), May 17, 2016 ("Salaets I Depo.")) at 169:23-170:25; Ex. 19 (Rimini's Tenth Supp. Resp. to Interrog. No. 3 at 10); Ex. 20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5); Ex. 30 (Transcript Excerpts of Deposition of Manjula Hosalli, Dec. 15, 2016 ("Hosalli Depo.")) at 12:1-14, 13:19-14:1, 131:6-24, 196:21-197:15, 198:12-18; Ex. 35 (Transcript Excerpts of Deposition of David Miller, Nov. 9, 2017 ("Miller Depo.")) at 34:11-21.  Rimini ██████████████████ of those environments and then ████████████████████.  Shinn Decl. ¶¶ 42, 20; Ex. 55 (Salaets I Depo.) at 157:15-20;

1  Ex. 30 (Hosalli Depo.) at 131:6-24, 167:1-4.

2         11.    Rimini CEO Seth Ravin admitted during his deposition that a ███████

3  ██████████████████████████████████████████████████████ Shinn Decl. ¶¶

4  29; Ex. 39 (Transcript Excerpts of Deposition of Seth Ravin, Feb. 15, 2018 ("Ravin Depo.")) at

5  187:11-188:2.

6         12.    Rimini ████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  █████████████████████ Shinn Decl. ¶¶ 44, 25, 42, 11, 96, 20, 16; Ex. 57 (Depo. Ex. 8);

9  Ex. 35 (Miller Depo.); Ex. 55 (Salaets I Depo.) at 190:22-195:3; 206:9-24, 207:2-5; Ex. 21

10  (Rimini's First Supp. Resp. to Interrog. No. 4); Ex. 109 (████████████████); Ex. 30 (Hosalli

11  Depo.) at 193:1-229:15; Ex. 26 (Transcript Excerpts of Deposition of Jim Benge, Feb. 23, 2018

12  ("Benge Depo.")) at 200:21-203:9.

13         13.    Rimini used a ██████████ for each customer that ███████████████████

14  ████████████████ of the migration, including: █████████████████████████████

15  ███████████████████████████████████████████████████

16  ████████████████████████ Shinn Decl. ¶¶ 96, 44, 42, 20-22; Ex. 109

17  ██████████████████); Ex. 57 (Depo. Ex. 8); Ex. 55 (Salaets I Depo.) at 206:7-208:15; Ex. 31

18  (Depo. Ex. 216); Ex. 32 (Depo. Ex. 217); Ex. 30 (Hosalli Depo.) at 193:1-229:15.

19         14.    The migration ████████████████████████████████████████████

20  attached to the Appendix as Exhibit 109, reflect Rimini's ██████████████████████ of the local

21  environments associated with those customers. *Id.*

22         15.    The " ██████████ of these environments that Rimini ████████████████

23  ████████████ on Rimini's systems.  Shinn Decl. ¶¶ 20, 42, 84, 66, 19, 28, 25, 63, 87-90, 50; Ex.

24  30 (Hosalli Depo.) at 196:21-197:15, 198:12-14; *id.* at 12:1-14, 13:19-14:1, 131:6-24, 216:9-14,

25  230:10-17, 239:23-243:18; Ex. 55 (Salaets I Depo.) at 78:7-80:10, 81:23-82:10, 116:7-118:2; Ex.

26  97 (RSI2_017433179 ██████████████████████████████████ Ex. 100

27  (RSI2_017461571 (same for ██████████)); Ex. 79  (RSI2_013620047 (██████████

28  ████████████)); Ex. 101 (RSI2_017461758 ██████████████████████████████████

7

1   Ex. 29 (Transcript Excerpts of Deposition of Stanley Corpuz, Feb. 2, 2018 ("Corpuz Depo.")) at

2   94:12-95:1; Ex. 38 (Depo. Ex. 809); Ex. 35 (Miller Depo.) at 79:1:80:5, 88:22-90:19; Ex. 76

3   (RSI2_013577762 (          ██████████ )); Ex. 102 (RSI2_017747206 (███████████████

4   Ex. 103 (RSI2_017747210 (████████  Ex. 63 (Transcript Excerpts of Deposition of 30(b)(6)

5   Deposition of Rimini (Steven Salaets), Feb. 20, 2018) at 82:11-83:4.

6          16.    The environment █████████████████████████ that Rimini had

7   ████████████████.  Shinn Decl. ¶ 25; Ex. 35 (Miller Depo.) at 38:25-39:18, 40:3-9,

8   43:15-21, 52:24-53:2, 64:14-18, 92:7-13, 95:22-96:6, 97:24-98:7.  These ████ were included

9   as part of the migration so that ████████████████████.  Shinn Decl. ¶¶ 25,

10  28, 19; Ex. 35 (Miller Depo.) at 64:14-18, 88:22-90:19, 98:9-100:1; Ex. 38 (Depo. Ex. 809); Ex.

11  29 (Corpuz Depo.) at 94:12-95:1.

12         17.    These ████████████████████████████████████

13  ████████████████████.  Shinn Decl. ¶¶ 25, 20, 23; Ex. 35 (Miller

14  Depo.) at 36:25-40:9, 43:15-45:2; Ex. 33 (Depo. Ex. 219); Ex. 30 (Hosalli Depo.) at 196:21-

15  197:15; 239:23-243:18.

16         18.    At least the environments associated with ██████████████, used to

17  ████████████████████████████████████████

18  ████████████ by Rimini.  Frederiksen-Cross Decl. ¶¶ 6-14; Exs. 52-54.

19         19.    Rimini then ██████████████████████████████████

20  of the Oracle software environments for each customer ████████████████ each

21  customer.  Shinn Decl. ¶¶ 11, 42, 96; Ex. 21 (Rimini's First Supp. Resp. to Interrog. No. 4); Ex.

22  55 (Salaets I Depo. at 158:4-12); Ex. 109 (████████████).

23              a.    Rimini ██████████████████████████████

24                    ████████████  Shinn Decl. ¶¶ 66; Ex. 79 (RSI2_013620047 (Mar. 9,

25                    2014, ████████████████████████████████

26                    ████████████████████████████████

27                    ████████

28              b.    Rimini copied the local environment for ██████████████

8

1  ████. Shinn Decl. ¶¶ 77, 84, 16; Ex. 90 (RSI2_016823906); Ex. 97

2  (RSI2_017433179 ████████████████████████

3  ████████████████████ Ex. 26 (Benge Depo.) at

4  200:21-203:9.

5       c.    Rimini copied the local environment for ██████████

6  ████████ Shinn Decl. ¶¶ 88; Ex. 101 (RSI2_017461758 (█

7  ████████████████████████████████

8  ████████ )).

9       d.    Rimini copied the local environment ██████████

10  ████████. Shinn Decl. ¶¶ 75, 87, 86, 42, 45-47, 20, 24; Ex. 88

11  (RSI2_016546576 ████████████ )); Ex. 100 (RSI2_017461571 ███

12  ████████████████████████████████

13  ████████")); Ex. 99 (RSI2_017461566 (████████████

14  ████████████████████ *see generally*

15  Ex. 55 (Salaets I Depo.) at 213:2-220:7; 224:18-230:12; 328:13-330:25;

16  Ex. 58 (Depo. Ex. 9); Ex. 59 (Depo. Ex. 11); Ex. 60 (Depo. Ex. 23); Ex. 30

17  (Hosalli Depo.) at 157:6-158:15, 201:8-202:21, 257:13-260:7; Ex. 34

18  (Depo. Ex. 221).

19     20.   Rimini then distributed the ████████████████ Oracle

20  software environments ████████████████. Shinn Decl. ¶¶ 96, 22, 20, 42, 36;

21  Ex. 109 (████████████); Ex. 32 (Depo. Ex. 217); Ex. 30 (Hosalli Depo.) at 200:14-202:7,

22  214:6-14 Ex. 55 (Salaets I Depo.) at 158:4-12, 188:1-20; Ex. 46 (Depo. Ex. 193).

23       a.    Rimini ████████████████████████.

24  Shinn Decl. ¶¶ 62, 8, 10, 35; Ex. 75 (RSI2_013555942 (R. Charland

25  email)); Ex. 18 (Rimini's Tenth Supp. Resp. to Interrog. No. 3 at 10); Ex.

26  20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5); Ex. 45

27  (Transcript Excerpts of 30(b)(6) Deposition of Snelling Holdings (Caren

28  Coffel), Dec. 14, 2016 ("Coffel Depo.")) at 1:1-25, 45:9-46:2.

9

1          b.      Rimini ███████████████████████████████.

2                  Shinn Decl. ¶¶ 77, 16, 8, 10; Ex. 90 (RSI2_016823906 (████████

3                  ██████████████████████████████████████████

4                  ███)); Ex. 26 (Benge Depo.) at 200:21-203:9; Ex. 18 (Rimini's Tenth

5                  Supp. Resp. to Interrog. No. 3 at 10); Ex. 20 (Rimini's Tenth Supp. Resp.

6                  to Interrog. No. 3, Ex. D-3.5).

7          c.      Rimini ███████████████████████████████.

8                  Shinn Decl. ¶¶ 62, 8, 10, 35; Ex. 75 (RSI2_013555942 (████████

9                  █████; Ex. 18 (Rimini's Tenth Supp. Resp. to Interrog. No. 3 at 10); Ex.

10                 20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5); Ex. 45

11                 (Coffel Depo.) at 1:1-25, 45:9-46:2.

12         d.      Rimini █████████████████████████████

13                 █████████████████. Shinn Decl. ¶¶ 58, 69, 8, 10; Ex. 71 (RSI2_002919999

14                 (██████████████████████████████████

15                 ████████ Ex. 81 (RSI2_013809328 (██████████████████

16                 Ex. 18 (Rimini's Tenth Supp. Resp. to Interrog. No. 3 at 10); Ex. 20

17                 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5).

18      21.     Rimini CEO Seth Ravin was on notice from the Court's February 13, 2014 Order

19   in *Rimini I* that "representative" Oracle licenses "██████████████████████

20   █████████████████████████████████," '" and that █████████████████████

21   ████████████████████████████████████

22   ███████████████████ Shinn Decl. ¶¶ 93-94, 42; Ex. 106 (RSI2_025031645

23   (███████████████)); Ex. 107 (RSI2_025031647 (██████████████))

24   (emphasis added); *see generally* Ex. 55 (Salaets I Depo.) at 90:12-91:4, 91:25-92:9, 273:2-9.

25      22.     Rimini's servers, and ████████████████████████

26   ███████████ Shinn Decl. ¶¶ 93-94, 42; Ex. 107 (RSI2_025031647 (████████████

27   ███); Ex. 55 (Salaets I Depo.) at 158:4-12, 188:1-20.

28

ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
RIMINI'S MIGRATION AND WINDSTREAM HOSTING

**D.**    **The New Environment Instances Built on Windstream From the Infringing "Migrated" Copies of Oracle Software Are Also Infringing.**

23.    Rimini █████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████. Shinn Decl. ¶¶ 95, 42-43, 45, 52-53, 10, 30, 67, 60, 25;

Ex. 108 (RSI2_025031650 (███████████████████████████████Ex. 106))); Ex. 56

(Depo. Ex. 7); Ex. 55 (Salaets I Depo.) at 161:15-163:3, 167:8-170:25; Ex. 66 (Depo. Ex. 289);

Ex. 65 (Transcript Excerpts from 30(b)(6) Deposition of Toll Brothers (Nancy Myers), Jan. 27,

2017) at 54:7-63:8; Ex. 58 (Depo. Ex. 9 (███████████████████████)); Ex. 55

(Salaets I Depo.) at 213:2-220:7; Ex. 20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-

3.5, ███████████████████████████████████████████")); Ex. 40

(Transcript Excerpts from Deposition of David Rowe, Dec. 7, 2016 ("Rowe Depo.")) at 92:8-

93:16; Ex. 80 (RSI2_013793223 (D. Miller email re ████████); Ex. 73 (RSI2_013545164 ███

█████████████████)); *see generally* Ex. 35 (Miller Depo.) at 11:4-12:7, 20:24-22:17, 29:10-

30:3; Ex. 55 (Salaets I Depo.) at 78:7-80:10, 81:23-82:10, 273:2-9.

24.    Rimini ██████████████████████████████████████████████████

███████████████████████. Shinn Decl. ¶¶ 93, 95, 55-56, 27, 25; Ex. 106 (RSI2_025031645 ███

████████████████); Ex. 108 (RSI2_025031650 ███████████████████████████████

Ex. 68 (RSI2_000009145, ███████████████████Ex. 69 (RSI2_000009329, █████████

█████████; Ex. 37 (Depo. Ex. 806); Ex. 35 (Miller Depo.) at 74:6-76:20.

25.    Rimini ██████████████████████████████████████████████████

████████████████████████. Shinn Decl. ¶¶ 93, 95, 37, 56, 45, 42, 60; Ex. 106

(RSI2_025031645, ██████████████████████); Ex. 108 (RSI2_025031650 (██████████████

██████████████ Ex. 106)); Ex. 47 (Transcript Excerpts from 30(b)(6) Deposition of Tierpoint,

LLC (Denny Heaberlin), Feb. 28, 2018 ("Heaberlin Depo")) at 15:9-23; 25:8-22; Ex. 69

(RSI2_000009329, ████████████████████ Ex. 58 (Depo. Ex. 9 (██████████████████

██████████); Ex. 55 (Salaets I Depo.) at 213:2-220:7; Ex. 73 (RSI2_013545164 █████████

█████████).

11

26.     Rimini ████████████ other third-party or cloud locations are not the customer's facilities ████████████. Shinn Decl. ¶¶ 30-33; Ex. 41 (Depo. Ex. 134); Ex. 42 (Depo. Ex. 153); Ex. 43 (Depo. Ex. 154); Ex. 40 (Rowe Depo.) at 79:15-80:15, 92:11-96:24, 98:15-24, 102:14-105:25, 198:8-207:2, 207:3-211:18.

27.     ████████████ amended their agreements with Rimini to state that they ████████████████████████████████████████ while ████████████ opted to ██ ████████████ Shinn Decl. ¶¶ 55-56, 8, 10; Ex. 68 (████████████ RSI2_000009145); Ex. 69 ████████████ RSI2_000009329); Ex. 18 (Rimini's Tenth Supp. Resp. to Interrog. No. 3 at 10); Ex. 20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5, ████████████

28.     Rimini agreed ████████████████████████████████████████. Shinn Decl. ¶¶ 55-56, 93, 60; Ex. 68 ████████████ RSI2_000009145); Ex. 69 ████████████ No. 1, RSI2_000009329); Ex. 106 (RSI2_025031645 (████████████)); Ex. 73 (RSI2_013545164 ████████████ ████████████).

29.     Rimini ████████████████████████████████████████████████████ Shinn Decl. ¶¶ 76, 69, 58, 73, 60, 81, 96; Ex. 89 (RSI2_016546586 (████████████)); Ex. 82 (RSI2_013809328 (████████████)); Ex. 71 (RSI2_002919999 ████████████ ████████████)); Ex. 86 (RSI2_015509497 ████████████████████████████████ ████████████); Ex. 73 (RSI2_013545164 ████████████)); Ex. 94 (RSI2_017359078 ████████████ Ex. 109 (████████████).

30.     ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Shinn Decl. ¶¶ 79, 83, 72, 80, 25-26, 64, 42, 29, 20, 96; Ex. 92 (RSI2_016914552 ( ████████████); Ex. 96 (RSI2_017364057 (████████████

12

1     ████████████████████████████ Ex. 85 (RSI2_014785292, ██████████ ); Ex.

2     93 (RSI2_016918356, ██████████ ); Ex. 36 (Depo. Ex. 804); Ex. 35 (Miller Depo.) at 42:20-

3     43:1, 45:19-47:12, 55:5-60:25; Ex. 77 (RSI2_013619494, ██████████ Ex. 55 (Salaets I

4     Depo.) at 87:1-89:19, 237:5-238:12; Ex. 39 (Ravin Depo.) at 50:16-22; Ex. 30 (Hosalli Depo.) at

5     216:15-218:7; Ex. 109 ██████████ ).

6         31.     Once the PeopleSoft software was copied to Windstream's servers, Rimini would

7     ██████████ . Shinn Decl. ¶¶ 25, 20, 96; Ex. 35 (Miller Depo.) at 60:11-23; Ex.

8     30 (Hosalli Depo.) at 216:15-217:3; Ex. 109 ██████████ ).

9         32.     Rimini then built or configured the PeopleSoft Software (██████████

10     ████████████████████████████████

11     ██████ Shinn Decl. ¶¶ 61, 65, 25, 20, 96; Ex. 74 (RSI2_013545847 ██████████

12     ██████████████████████

13     ██████ Ex. 78 (RSI2_013619724 (██████████████

14     ████████████████████████████████

15     ██████████████████████ ) at 36:9-24, 41:3-8, 42:8-19; 47:5-25; Ex. 30

16     (Hosalli Depo.) at 218:16-219:10; Ex. 109 (██████████ ).

17         33.     Rimini did not ████████████████████████

18     ██████████ s. Shinn Decl. ¶¶ 8, 10; Ex. 18 (Rimini's Tenth Supp. Resp. to Interrog.

19     No. 3 at 10); Ex. 20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5, ██████████

20         34.     Rimini then reproduced Oracle software ██████████████

21     ████████████████████████████████

22     ██████████ second Oracle software environments ██████████

23     ██████████ , respectively. Shinn Decl. ¶¶ 71, 74, 82, 96,

24     20, 42; Ex. 84 (RSI2_014783994 at RSI2_014783999 ██████████████

25     ██████ ; Ex. 87 (RSI2_015728276 (██████████ )); Ex. 95 (RSI2_017359106

26     (██████████ )); Ex. 109 (██████████

27     ██████████████████ ")); Ex. 30 (Hosalli

28     Depo.) at 224:11-16; Ex. 55 (Salaets I Depo.) at 87:1-89:19, 237:5-238:12.

35.     Rimini's copying resulted in the creation of at least four environment instances on Windstream:  two ostensibly associated with ███████████████████████ and two with ████████████████████████████████).  Shinn Decl. ¶¶ 8, 10, 96, 71, 82; Ex. 18 (Rimini's Tenth Supp. Resp. to Interrog. No. 3 at 10); Ex. 20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5); Ex. 109 (████████████████); Ex. 84 (RSI2_014783994); Ex. 95 (RSI2_017359106 (████████████████)).

36.     Each of these environment instances embodies substantial portions of the protected expression covered by Oracle's registered, copyrighted works, as described in the chart below. Shinn Decl. ¶¶ 13-15; Ex. 23 (Oracle's Am. Requests for Admission No. 1, Jan. 29, 2018); Ex. 24 (Oracle's Am. Requests for Admission No. 1, Exhibit B-1, Jan. 29, 2018 (rows 443, 444, 451, 452)); Ex. 25 (Rimini's Feb. 28, 2018 Resps. and Objs. to Am. RFA No. 1).

| Customer | Software Product | Copyrights | Infringing Copies |
| --- | --- | --- | --- |
| ██████████ | PeopleSoft HRMS 8.3 SP1 | TX 5-469-032 | ██████████ |
| | PeopleTools 8.20.07 | TX 5-266-221 | |
| ██████████ | PeopleSoft HRMS 8.3 SP1 | TX 5-469-032 | ██████████ |
| | PeopleTools 8.20.13 | TX 5-266-221 | |

37.     Rimini identified the "build source" ███████████████████████████████████████████████████████ as discussed above.  Shinn Decl. ¶¶ 8, 10; Ex. 18 (Rimini's Tenth Supp. Resp. to Interrog. No. 3 at 10); Ex. 20 (Rimini's Tenth Supp. Resp. to Interrog. No. 3, Ex. D-3.5, ███████████").

38.     The following graphic illustrates Rimini's migration of Oracle software licensed to ████████████████████████████████████████████ Any RAM copies created by Rimini are not reflected in this illustration.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

39.     The following graphic illustrates Rimini's migration of Oracle software licensed to

14

1

2     ████████████████████. Any RAM copies created by Rimini are not reflected in this illustration.

3

4

5

6

7

8

9

10    40.   The following graphic illustrates Rimini's migration of Oracle software licensed to

11

12    ████████████████. Any RAM copies created by Rimini are not reflected in this illustration.

13

14

15

16

17

18

19

20

21

22

23

24    41.   The following graphic illustrates Rimini's migration of Oracle software licensed to

25

26

27    ████████████████████. Any RAM copies created by Rimini are not reflected in this illustration.

28

ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
RIMINI'S MIGRATION AND WINDSTREAM HOSTING

1

2

3

4

5

6

7

8

9

10

11

12

13     **A.**    **Windstream Facilities Are Not the Rimini Customers' Facilities.**

14     42.    Windstream is a ███████████████████████████████████

15 ████████████████████. Shinn Decl. ¶¶ 38, 51, 37; Ex. 48 (Depo. Ex. 2202 at ████

16 ████████████████); Ex. 64 (Depo. Ex. 2231 at Section 11.c ████████

17 ████████); Ex. 47 (Heaberlin Depo.) at 60:17-25.

18     43.    ████████████████████████████████████

19 ███████████████████████████████████████████

20 ████████ Shinn Decl. ¶¶ 51, 41, 37; Ex. 64 (Depo. Ex. 2231); Ex. 51 (Depo. Ex. 2211); Ex. 47

21 (Heaberlin Depo.) at 33:6-34:3, 56:10-20.[1]

22     a.    The ████████████████████████████

23 ████████████████████████████████████████████

24 ████████████████████████████████████████

25 ███████████████████████████████████

26

27 [1] The ██████████ Shinn Decl. ¶ 51; Ex. 64 (Depo. Ex. 2231).  This paragraph █████

28 ████████████████████████" throughout for clarity.

ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
RIMINI'S MIGRATION AND WINDSTREAM HOSTING



1 ███████████████████████████████████████

2 ██████████████████████  Shinn Decl. ¶¶ 51; Ex. 64 (Depo. Ex.

3 2231) at Section 1.b ███████

4   b.  ████████████████████████████

5 ████████████████████████████████

6 ██████████████████████████████

7 ███████████ *Id.* at ████████████████

8   c.  ████████████████████████████

9 ████████████████████████████████

10 ██████████ . *Id.* at █████████████████

11 █████████████

12   d.  ███████████████████████████

13 ██████████████████████████████████

14 ████████████████████████████████

15 ████████████████████████████

16 ██████████████████████████████████████

17 . . .” *Id.* at ██████████████████████

18 ████████████████████████████████████████

19 ████  *Id.* at Exhibit A.

20   e.  ████████████████████████████

21 ████████████████████████████

22 ██████████████████████████████████

23 ████████████████████████████████

24 ████████████████████

25   44.  ████████████████████████████████

26 ████████████████████████████████████████

27 ████████  Shinn Decl. ¶¶ 70, 41, 37; Ex. 83 (RSI2_014708918) at RSI2_014708924; Ex.

28 51 (Depo. Ex. 2211); Ex. 47 (Heaberlin Depo.) at 33:6-34:3, 35:19-38:2 (█████████████

ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
RIMINI'S MIGRATION AND WINDSTREAM HOSTING



1 ██████████████████████[2]

2 a. ███████████████████████████████████████

3 ██████████████████████████████████

4 ████████████████████████████████████████

5 ██████████████████████████████████

6 ████████████████████████████████████████

7 ███████████████████████ Shinn Decl. ¶¶ 70; Ex. 83

8 (RSI2_014708924) at ██████████

9 b. █████████████████████████████████████

10 ████████████████████████████████████████

11 █████████████████████████████████████

12 ██████████████████████" *Id.* at RSI2_014708930.

13 c. ████████████████████████████████████████

14 ██████████████████████████████████

15 ███████████ *Id.* at ██████████

16 d. █████████████████████████████████████

17 ████████████████████████████████████████

18 ██████████████████████████████████████

19 █████████████████████████████

20 ████████████████████████████████████████ . .

21 . ." *Id.* at Section 3.i. ██████████████████

22 *Id.* at ██████████

23 45. In a Windstream multitenant agreement (███████████████████████

24 ████████████████████████████████████████████

25 ███████████████████████ Shinn Decl. ¶¶ 38, 37; Ex. 48 (Depo.

26

27 [2] The Master Services Agreement attached to the Rio Tinto agreement defines "Company" as
Windstream.  Shinn Decl. ¶¶ 70; Ex. 83 (RSI2_014708924).  This paragraph substitutes
"[Windstream]" for "Company" throughout for clarity.

28

ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
RIMINI'S MIGRATION AND WINDSTREAM HOSTING

1    Ex. 2202); Ex. 47 (Heaberlin Depo.) at 15:9-23, 17:1-10.

2        46.      In contrast, in a Windstream colocation agreement, ███████████

3    ████████████████████████████████████████████████

4    ████████████████████████████████████████████████

5    ██████████ Shinn Decl. ¶¶ 37; Ex. 47 (Heaberlin Depo.) at 61:1-11; *id.* at 14:7-22, 31:5-18.

6        47.   ████████████████████████████████ with Windstream.

7    Shinn Decl. ¶¶ 51, 70; Ex. 64 (Depo. Ex. 2231); Ex. 83 (RSI2_014708924).

8        48.   ████████████████████████████ Shinn Decl. ¶¶ 38-40; Ex.

9    50 (Depo. Ex. 2210); Ex. 48 (Depo. Ex. 2202); Ex. 49 (Depo. Ex. 2203).

10       49.   ████████████████████████████████████████

11   ████████████████████████████████████████████

12   ███████████████████ Shinn Decl. ¶¶ 92, 85, 65, 72, 91, 78, 59, 69; Ex. 105

13   (RSI2_021735795 ████████████████████████████████)); Ex.

14   98 (RSI2_017461548 ████████████████████████████)); Ex.

15   78 (RSI2_013619724 ████████████████████████████████

16   ████████████); Ex. 85 (RSI2_014785292 ████████████)); Ex. 104 (RSI2_021452979

17   (████████████████████████████████████████████

18   ███████████████ Ex. 91 (RSI2_016913482 █████████████

19   ████████████████████████████ Ex. 72  (RSI2_013042892 █████████

20   ██████████████████████████████████████; Ex. 82

21   (RSI2_013810189 (████████████████████████████████

22   ██████████████████████)).

23       50.    Rimini is on notice that the ███████████████████████████

24   ██████████████████████████████████████████. Shinn Decl. ¶¶

25   79, 83, 51, 41, 37, 70; Ex. 92 (RSI2_016914552 (████████████████████

26   █████████████)); Ex. 96 (RSI2_017364057 (same re ███████)); Ex. 64 (Depo. Ex. 2231);

27   Ex. 83 (RSI2_014708924); Ex. 51 (Depo. Ex. 2211); Ex. 47 (Heaberlin Depo.) at 33:6-34:24.

28       51.    Rimini orchestrated the migration ████████████████████████

19

1     ███████████████████████ Shinn Decl. ¶¶ 54, 25; Ex. 67 (████████████████

2     ███████████ 2., RSI2_000009236); Ex. 35 (Miller Depo.) at 92:7-100:1.

### III. LEGAL STANDARD

Summary judgment is appropriate when the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a).  "A party may move for summary judgment" on a "claim or defense" or on "part of" a "claim or defense."  *Id.*

### IV. ORACLE HOLDS EXCLUSIVE RIGHTS TO REPRODUCE AND DISTRIBUTE THE RELEVANT COPYRIGHTS

To prove a *prima facie* case of copyright infringement, Oracle must show (1) ownership of the relevant copyrights, and (2) copying of protected expression.  *Range Road Music, Inc. v. East Coast Foods, Inc*., 668 F.3d 1148, 1153 (9th Cir. 2012).  For all of the conduct at issue in this motion, Oracle's copyright registrations and transfer agreements relating to those registrations satisfy the first element.  Rimini's discovery admissions, document production, and deposition testimony, discussed in sections below in connection with the infringing copies that Rimini created, satisfy the second element.

OIC was the owner or exclusive licensee of exclusive rights in the registered copyrights at issue in this motion at all relevant times, satisfying the first element of Oracle's prima facie infringement case.  17 U.S.C. §§ 501(b), 201(d)(2); SUF 8.  Where a certificate of copyright registration was obtained within five years of first publication of the registered work, the copyright is presumed valid, and all statements of fact within the certificate are presumed to be true.  17 U.S.C. § 410(c); *see also Cosmetic Ideas, Inc. v. IAC/InteractiveCorp.*, 606 F.3d 612, 619 (9th Cir. 2010).

For five of the six registrations at issue in this motion, the statutory presumption is sufficient to establish OIC's ownership or exclusive license.  SUF 8.  Thus, OIC is the current owner of these registered works.  17 U.S.C. § 201(d)(1).  Since no competent, extrinsic evidence to the contrary has been produced, the first element of Oracle's *prima facie* infringement case has been satisfied as to these registrations.  SUF 8; *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1086-

88 (9th Cir. 1989) (affirming summary judgment because evidence regarding derivative work and authorship status was insufficient to rebut the presumption); *Dream Games of Arizona v. PC Onsite*, 561 F.3d 983, 987 & n.2 (9th Cir. 2009).

As for PeopleTools 8.51 (TX 8-151-290), the certificate of registration for this copyrighted work issued approximately five months after the five-year window that would have entitled this copyright to the § 410(c) statutory presumption. SUF 8. Given this minor delay, and consistent with the Copyright Act and in light of the overwhelming evidence of Oracle's ownership (SUF 8), the Court should exercise its discretion to give full weight to the sixth registration, for PeopleTools 8.51 (TX 8-151-290) and conclude that the copyright and all statements contained in its certificate of registration are valid. *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2012 U.S. Dist. LEXIS 177718, at *8 (S.D. Cal. Nov. 14, 2012) ("The Copyright Act allows the district court the discretion to determine the evidentiary weight accorded to a certificate when the only flaw is the passage of time," and noting that most courts conclude that even registrations not obtained within five years constituted *prima facie* evidence) (collecting cases); *Graphic Design Marketing, Inc. v. Xtreme Enters., Inc.*, 772 F. Supp. 2d 1029, 1032-33 (E.D. Wisc. 2011) (affording 410(c) presumption "even though the copyright was obtained ten years after first publication"); *Religious Tech. Ctr. v. Netcom On-Line Comm'n Svcs., Inc.*, 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (finding that "plaintiff's registrations are strong evidence of the validity of their claimed copyrights" after reviewing evidence of assignment of copyrights and of renewal terms for works registered more than five years after date of first publication).

## V.   RIMINI INFRINGED ORACLE'S COPYRIGHTS BY CREATING ADDITIONAL COPIES OF THE INFRINGING LOCAL ENVIRONMENTS

### A.   Rimini Copied Protected Expression When As Part of the "Migration" It Created ███████████" Copies of the Infringing Local Environments On Rimini's Computer Systems.

Even after the Court unambiguously ruled in February 2014 that Rimini infringed Oracle's copyrights by creating copies of Oracle's PeopleSoft software on Rimini's computer systems, Rimini continued to create copies of Oracle's PeopleSoft software ██████████

21

1          ███████   SUF 5-8.  During its migration process, Rimini created additional copies of Oracle's

2   protected expression ██████████████████████████████████████

3   ████████████████████████████████████   SUF 10, 16-18.  Rimini then

4   created yet more copies of Oracle software by creating copies ████████████████████

5   ██████████████████████████████████████

6   ███████████████████████   SUF 10, 19, 21-23.  This allowed Rimini to retain

7   access to the fruits of its infringing conduct from the *Rimini I* era because ████████████████

8   ████████████████████████████████████   the Oracle software environments

9   and methods found to be infringing in *Rimini I.*  SUF 1-2, 10, 16-18.

10          Each copy that Rimini created during this process—███████████████████████

11   ███████████████████ (SUF 10, 15-18, 22), and each subsequent copy ████████████

12   ████████████████████ (SUF 10, 19-20)—is a distinct copy of Oracle's software.

13   Copies of software cannot be "moved" electronically; instead, each step in Rimini's process

14   yields an additional copy, such that there are at least two copies where once there was only one.

15   SUF 10, 15, 19.  Rimini understood this; ████████████████████████████████████

16   ██████████████████████████████████████████████████████████████

17   ██████████████████████████████████   SUF 11, 21; *see, e.g.,*

18   *Capitol Records LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 649-51 (S.D.N.Y. 2013) (finding

19   reproduction right infringed where defendant argued that "it 'migrates' a file from a user's

20   computer to its Cloud Locker, so that the same file is transferred to the ReDigi server and no

21   copying occurs," noting that "when a user downloads a digital music file or 'digital sequence' to

22   his 'hard disk,' the file is 'reproduce[d]' on a new phonorecord within the meaning of the

23   Copyright Act.").

24          Each of these copies further embodied Oracle's protected expression.  Oracle

25   demonstrated in the section above that each of the six ████ environments at issue here, associated

26   with ██████████████████████████, contained the copyrighted expression

27   protected by the enumerated copyright registrations.  *See supra* Section IV; SUF 5-8.  Oracle also

28   demonstrated that with respect to at least four of these environments, ████████████████,

1  ███████████, that they ███████████████████████████████████ SUF 18.  Rimini

2  then copied these six ███ environments associated with ████████████████████

3  ███ to create the ████████████████████████████████████.  SUF 5-6, 10,

4  15, 19.  When it created each copy, it reproduced the same Oracle protected expression found in

5  underlying ███ environment.  SUF 10-11, 15-19, 23.  "When [Rimini] copies a copy, [it] copies

6  the original."  *Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147, 165

7  (E.D.N.Y. 2002) ("There is a transitive property to actual copying:  if work A is an actual copy of

8  work B, and work B is an actual copy of work C, then work A is deemed an actual copy of work

9  C.") (citing *Pye v. Mitchell*, 574 F.2d 476 (9th Cir. 1978)); *see also MAI Sys. Corp. v. Peak

10  Computer Corp.,* 991 F.2d 511, 518-19 (9th Cir. 1993) (affirming summary judgment finding of

11  infringement where defendant copied plaintiff's software into computer memory from a storage

12  medium and maintained multiple copies on computers at its headquarters).

13  **B.    Rimini Possesses No Express License Defense For This Copying.**

14  Rimini had no license to engage in any of this copying.  Express license is an affirmative

15  defense.  *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1114

16  (9th Cir. 2000).  A copyright owner holds the exclusive right both "to do and *to authorize*" each

17  of the exclusive rights enumerated in the Copyright Act.  17 U.S.C. § 106 (emphasis added).

18  Rimini "has the initial burden to identify any license provisions that it believes excuse its

19  infringement."  *Oracle USA, Inc.*, F. Supp. 3d at 1093; *see also Bourne v. Walt Disney Co.*, 68

20  F.3d 621, 631 (2d Cir. 1995); *Michaels v. Internet Entm't Group, Inc.*, 5 F. Supp. 2d 823, 831,

21  834 (C.D. Cal. 1998).  If Rimini identifies any license it alleges to be relevant, Oracle can

22  overcome the license defense by showing that Rimini's conduct exceeded the scope of what the

23  license authorized.  *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156

24  (9th Cir. 2006) (licensee liable for infringement where plaintiff showed that licensee's conduct

25  exceeded scope of the license).

26  The licenses for ████████████████████████████████████████████

27  ████████████████████████████████ the provisions found in the City of

28  Flint and Pittsburgh Public Schools licenses and construed by the Court.  SUF 1-3.  Rimini's

23

1    discovery admissions and employee deposition testimony make clear that Rimini's copying in

2    connection with the migration—███████████████████████████████████████████████

3    █████████████████████████████████████████████████████████

4    ███████████████████████ SUF 10-15, 19-20.  Rimini's systems are not the customer's

5    facilities, and given the Ninth Circuit's final ruling regarding the facilities restrictions ██████

6    ████████ Rimini is estopped from arguing for a different interpretation now, so this Rimini

7    copying was unlicensed.  SUF 1-2, 4, 9, 21-22; *Oracle USA, Inc.*, 6 F. Supp. 3d at 1097-98;

8    *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 959-60 (9th Cir. 2018) (affirming same);

9    *Rainero v. Archon Corp.*, 2013 WL 5965916, at *3 (D. Nev. Nov. 7, 2013) (citing *Kourtis v.*

10   *Cameron*, 419 F.3d 989, 994 (9th Cir. 2005)) (standard for preclusion); *see also Viesti Associates,*

11   *Inc. v. McGraw–Hill Global Educ. Holdings, LLC*, 2015 WL 585806, at *6 (D. Col. Feb. 11,

12   2015) (party estopped from litigating the meaning of a term in a license that contained "the same

13   or substantially similar language" to a previously-analyzed license in case involving the same

14   parties).

15   **VI.    RIMINI INFRINGED ORACLE'S DISTRIBUTION RIGHT BY**

16   ███████████████████████████████████████████████

17        After Rimini repeatedly reproduced copies of the infringing environments—██████

18   █████████████████████████████████████████████████████—Rimini then

19   distributed ██████████████ by sending them to ████████████████████████████

20   ████████.  SUF 12-14, 19-20.  This Rimini distribution constituted another act of

21   infringement by Rimini.  *See, e.g.*, *Sony/ATV Publishing, LLC v. Marcos*, 651 F. App'x. 482, 486

22   (6th Cir. 2016) (affirming district court's finding that defendant's act of mailing compact discs

23   constituted an infringing distribution); *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 875 F.2d

24   1044, 1049 (2d Cir. 1989) (affirming district court finding that defendant's shipment of

25   copyrighted works constituted an infringing distribution); *Manno v. Tennessee Production*

26   *Center, Inc.*, 657 F. Supp. 2d 425, 429 (S.D.N.Y. 2009) (finding defendant's distribution of

27   copyrighted compact discs through the mail constituted infringement).  As the owner and

28   exclusive licensor of the copyrights in-suit, Oracle maintains the exclusive right to distribute

1   copies of the materials covered by these copyrights.  17 U.S.C. § 106(3).  Oracle also holds the

2   separate and distinct right to reproduce the materials.  *Cohen v. Paramount Pictures Corp.*, 845

3   F.2d 851, 853 (9th Cir. 1988) (finding license containing language permitting the copying of a

4   work did not include language permitting its distribution). ██████████████████████

5   ███████████████████████████████████████  SUF 9.  Rimini also cannot

6   justify its distribution on the basis of its customers' Oracle licenses because those licenses ███

7   █████████████████████████████████.  SUF 1-4.  Thus, Rimini's

8   distributions of █████████████████████████████████████████

9   ███████████████  constitute acts of infringement that are separate and distinct from Rimini's

10  infringing reproduction of Oracle's software, and separately actionable.  17 U.S.C. § 106; *see*

11  *Cohen*, 845 F.2d at 853; *cf. Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 134 S.Ct.

12  1962, 1969 (2014) ("Each time an infringing work is reproduced or distributed, the infringer

13  commits a new wrong.").

14  **VII.    RIMINI INFRINGED ORACLE'S COPYRIGHTS BY COPYING ███████ ORACLE'S SOFTWARE TO**

15  **WINDSTREAM WITHOUT A LICENSE**

16          After Rimini ████████████████████████████████████████

17  ████  Rimini ████████████████████████████████████████

18  so Rimini could █████████████████████████████.  SUF 12-14, 24-25, 29-33,

19  35-37, 40-41.  ████████████████████████████████████████

20  ████████████████████████████  34, 36, 40-41.  All of this copying,

21  ████████████████████████████████████, is infringing and

22  unlicensed:  the resulting software environments embody protected Oracle expression, and the

23  PeopleSoft software licenses for ███████████████  include limited license grants that

24  ███████████████████.  SUF 1-3.  No provision permitted Rimini to

25  ███████████████████.  SUF 1-4, 21-22.

26          **A.    Rimini's ████████████████████████████████**

27                  **Amounts To Contributory Copyright Infringement.**

28          After Rimini ensured that ████████████████████████████████

25

1    ███████████████████████████, Rimini ████████████████████████████

2    ██████████████████████████████████████ SUF 29-30.  █████████████████

3    ████████████ and Rimini █████████████████████████████████████████

4    ████████████ associated with ██████████████████ on Windstream servers, located at

5    █████████████████████. SUF 31-37, 40-41, 50.

6        Rimini is liable for the copying that ███████████████████████████

7    ██████ "[O]ne who, with knowledge of the infringing activity, induces, causes or materially

contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."

9    *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007); *see also Fonovisa, Inc.*

10   *v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).  Rimini's conduct satisfies these

11   elements.  Rimini unquestionably had knowledge that these infringing copies would be made.

12   SUF 23-30, 33, 50.  Rimini also induced and materially contributed to the creation of the

13   infringing copies by, among other things, █████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████

16   ███████████████████████ copies of Oracle software.  SUF 10, 15, 19-20, 23-25, 29.  Rimini

17   was already well aware, based on the Court's February 2014 Order, that ████████t PeopleSoft

18   licenses limited copying to the customers' facilities.  SUF 1-2, 21, 23, 26.  Rimini also knew that

19   ████████████████████████████████████████████████████████████████

20   ██████. SUF 23, 25-27, 42, 50.  Oracle has thus established all elements of a contributory

21   copyright infringement claim, and finding such infringement on summary judgment is appropriate

22   here.  *See Fonovisa, Inc.*, 76 F.3d at 264; *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d

23   1020, 1039 (9th Cir. 2013) (affirming district court's grant of summary judgment on plaintiff's

24   claims of contributory infringement based on inducement theory of liability).

25       **B.**    **Rimini Also Directly Infringed Oracle's Copyrights by Copying** ████████

26   ███████████████████████████████

27       Rimini itself also created copies of Oracle software ██████████████.  After Rimini ████

28   ████████████████████████████████████████████████████████████████

1  ████████████, Rimini personnel then "████████████████████

2  ████████████████████████████. SUF 30-34. This "████

3  ████ resulted in the reproduction of the Oracle protected expression ████████

4  ████████ and constitutes direct infringement. SUF 35-36, 40-41; *see also Triad Sys. Corp. v.*

5  *Southeastern Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995) (prima facie case of copyright

6  infringement where defendant was "copying [plaintiff's] entire [computer] programs" to provide

7  software service and maintenance to plaintiff's software customers), *overruled on other grounds*

8  *by Gonzales v. Texaco*, 344 F. App'x 304, 306 (9th Cir. 2009).

9        **C.      Rimini's Express License Defense Fails Because The Windstream**
10               **Environments Are Not Located at the Customer's Facilities.**

11       The ████ license interpretation the Court reached in *Rimini I*, which put Rimini-hosted

12  environments beyond the scope of the relevant licenses, applies with equal force to these

13  Windstream-hosted environments, which are also not the customer's facilities.

14       In interpreting the license for City of Flint, the Court in *Rimini I* determined that the City

15  of Flint's license "expressly limits copying the licensed software to *only* the City of Flint's

16  facilities." *Oracle USA, Inc.*, 6 F. Supp. 3d at 1097; *Oracle USA, Inc. v. Rimini Street, Inc.*, 879

17  F.3d 948, 959-60 (9th Cir. 2018) (affirming same). ████████████████████

18  ████████████████████████████████████

19  ████████████████████████████████████

20  ████████████████████ SUF 1.

21       Similarly, the *Rimini I* Court also ruled that the license for Pittsburgh Public Schools

22  limited the copying and use of the licensed software to "facilities owned or leased by [the

23  Pittsburgh Public Schools]," that Rimini "made copies of the licensed software at its own

24  facilities and outside the control of the Pittsburgh Public Schools," and as such, the copying was

25  outside the scope of the license. *Oracle USA, Inc.*, 6 F. Supp. 3d at 1101. ████████████

26  ████████████████████████████ SUF 2. Given

27  the Ninth Circuit's final ruling regarding the facilities restrictions in these PeopleSoft licenses,

28  Rimini is estopped from arguing for a different interpretation. *See, e.g., Rainero*, 2013 WL

27

1   5965916, at *3; *Viesti Associates*, 2015 WL 585806 at *6 (finding party estopped from litigating

2   the meaning of a term in a license that contained "the same or substantially similar language" to a

3   previously-analyzed license in a case involving the same parties).

4     The *Rimini I* Court also made clear that "facilities" are a physical space, by differentiating

5   "systems" from "facilities" when it noted that "it is undisputed that Rimini's copies of the

6   licensed PeopleSoft-branded software are kept *on* Rimini's systems *at* its facilities and outside the

7   control of the City of Flint." *Oracle USA, Inc.*, 6 F. Supp. 3d at n.10 (emphasis added).  The

8   Ninth Circuit affirmed the *Rimini I* Court's interpretation and application of the facilities

9   restriction.  *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 959-60 (9th Cir. 2018).

10     Applying here the license interpretation that the *Rimini I* Court applied to Rimini local-

11   hosted environments, the Windstream environments are not at any customer's facilities either.

12   SUF 4.  The Windstream-hosted PeopleSoft software environments ostensibly associated with

13   ███████████████████ were ████████████████████████████████████

14   ████████████████ SUF 6-7, 10-15, 18-20, 29-37, 40-41, 50.  The ███████████████

15   █████████ licenses do not authorize ██████████████████████.  SUF 1-2.

16   ████████████████████████████████████████████████.  But Oracle

17   PeopleSoft customers █████████████████ may not ████████████████████████

18   ███████████████████████ without an express license right to do so.  SUF 4.

19     Under a straightforward application of the *Rimini I* Court's ruling that the software at

20   issue can be located "*only*" at the customer's facilities, the software cannot be located at

21   Windstream.  *Oracle USA, Inc.*, 6 F. Supp. 3d at 1097.  In affirming the *Rimini I* Court's ruling,

22   the Ninth Circuit rejected Rimini's arguments that the plain meaning of "facilities" encompasses

23   servers not kept on customers' "actual premises" such as when customers "contract[] with third

24   parties for still more capacity." *Oracle USA, Inc. v. Rimini Street, Inc.*, 879 F.3d 948, 959-60 (9th

25   Cir. 2018).  Windstream is a █████████████████████████████████

26   ████████████████████████████████.  SUF 42.  This is not the customers' facilities.

27     The █████████████████████████████████ further confirm that the

28   Windstream facilities are not the customers' facilities.  ████████████████████████████

28

1 ███████████████████████████████████████████████

2 ████████████████████████████████████████ and by

3 specifying that █████████████████████████████████

4 █████████████████████████████████████████

5 ██████████████████████████████████████████

6 ████████████████████████████ SUF 43-44.  Windstream's corporate designee's

7 testimony also ███████████████████████████████████.  SUF

8 46.  The agreements that ████████████████ have with Windstream ██████████

9 ███████████████████████████████████████████

10 ███████████████████ SUF 43-47. ██████████████████████████

11 ████████████████████████████████████.  SUF 43-46.  Nor do

12 any ██████████████ agreements █████████████████████████

13 ████████████████████████████████████

14 ████████████████████████ SUF 46-47.  And although customers ██████████

15 ████████████████████████████████████████

16 █████████████ the environments.  SUF 43-44.

17      Moreover, ██████████████████, Rimini's conduct runs afoul of the ██████

18 ███████████████████████████████████.  *See* SUF 1-2.

19 Rimini ███████████████████████████████████████████████

20 ████████████ SUF 23, 25.  The Windstream copies were not created solely for the internal

21 business use of the customer; they were created, in large part, for ████████████████

22 █████████████████████████████████████

23 ██████████████████████████████████████

24 █████.  SUF 43-44, 49.  Rimini orchestrated the migration ████████████████

25 ████████████████████████████████████████████

26 ████████  SUF 51.  Such copies cannot be said to be "solely for the internal business use" of the

27 customers with which they are associated.

28      Oracle's facilities restriction is not unique.  In *Dun & Bradstreet Software Services, Inc. v.*

*Grace Consulting, Inc.*, 307 F.3d 197, 212 (3d Cir. 2002), the license agreement provided in relevant part that "the customer is authorized to use 'the system solely for its own internal operation . . . within Customer's data center at the location designated on the Customer and Product Information Schedule, at any other site which may replace it as provided in this section, or through a service bureau upon written prior approval of M & D.'"  The court there stated that "[t]he limitation of the license authorization to the customer's site and for its own internal operation is plain; use elsewhere may be permissible but with written prior approval of the licensor." *Id.*; *see also, e.g.*, *HyperQuest, Inc. v. N'Site Solutions, Inc.,* 632 F.3d 377, 379 (7th Cir. 2011) (defendant was limited to using the software only within its own facilities, and received no rights to modify the software or sell it to others).

        Neither of the customers at issue nor Rimini ██████████████████████████████ ███████████████████████████████  SUF 1-2, 4.  Any claim by Rimini that the use of off-site or cloud-hosted storage is an industry standard has no effect on express license requirements.  *Dun & Bradstreet*, 307 F.3d at 211 (rejecting defendant's argument that "it was industry practice to allow programs off-site," noting that "[a] defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble."); *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958, 966-7 (9th Cir. 2010) ("evidence regarding industry custom" was immaterial in light of the "unambiguous[]" contract terms, and therefore "the district court erred in denying [plaintiff] summary judgment").

        The PeopleSoft environments associated with Rimini customers ███████████████ copied to Windstream are not located at those customers' facilities under the PeopleSoft facilities restrictions or solely for those customers' internal business operations.  Oracle is therefore entitled to summary judgment on Rimini's express license defense as to those copies.

## VIII.   CONCLUSION

        For the foregoing reasons, Oracle respectfully requests the Court grant this Motion for Partial Summary Judgment.

1

2

3   DATED:  October 12, 2018                MORGAN, LEWIS & BOCKIUS LLP

4

5                                           By:_____/s/ John A. Polito_____
                                                        John A. Polito
6                                             Attorneys for Defendants and Counterclaimants
                                              Oracle America, Inc. and Oracle International
7                                                           Corp.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on October 12, 2018, I electronically transmitted the foregoing ORACLE'S

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING RIMINI'S MIGRATION

AND WINDSTREAM HOSTING to the Clerk's Office using the CM/ECF System for filing and

transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel are CM/ECF

registrants.


Dated: October 12, 2018                          Morgan, Lewis & Bockius LLP


By:  _____/s/ John A. Polito_____
                  John A. Polito

Attorneys for Defendants and
Counterclaimants Oracle America, Inc. and
Oracle International Corp.

1

CERTIFICATE OF SERVICE