GIBSON, DUNN & CRUTCHER LLP
Jeffrey T. Thomas (*pro hac vice*)
Michele L. Maryott (*pro hac vice*)
Joseph A. Gorman (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: (949) 451-3800
jtthomas@gibsondunn.com
mmaryott@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
Samuel G. Liversidge (*pro hac vice*)
Eric D. Vandevelde (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com

HOWARD & HOWARD ATTORNEYS
W. West Allen (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV  89169
Telephone: (702) 667-4843
wwa@h2law.com

DEBEVOISE & PLIMPTON LLP
James J. Pastore (*pro hac vice*)
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
jjpastore@debevoise.com

DEBEVOISE & PLIMPTON LLP
Jeffrey P. Cunard (*pro hac vice*)
801 Pennsylvania Avenue N.W.
Washington, DC 20004
Telephone: (202) 383-8000
jpcunard@debevoise.com

RIMINI STREET, INC.
Daniel B. Winslow (*pro hac vice*)
6601 Koll Center Parkway, Suite 300
Pleasanton, CA  94566
Telephone: (925) 264-7736
dwinslow@riministreet.com

RIMINI STREET, INC.
John P. Reilly (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 500
Las Vegas, NV  89169
Telephone: (336) 908-6961
jreilly@riministreet.com

*Attorneys for Plaintiff and Counterdefendant
Rimini Street, Inc., and Counterdefendant Seth
Ravin*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIMINI STREET, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>ORACLE INTERNATIONAL CORPORATION, a California corporation, and ORACLE AMERICA, INC., a Delaware corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:14-cv-01699-LRH-CWH<br><br>**RIMINI STREET, INC.'S, OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ORACLE'S FIRST CLAIM FOR RELIEF AND RIMINI'S AFFIRMATIVE DEFENSES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br><u>**PUBLIC REDACTED VERSION**</u> |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND AND RESPONSE TO ORACLE'S STATEMENT OF FACTS ............2

III. LEGAL STANDARD .........................................................................................5

IV. ARGUMENT ....................................................................................................6

    A.    <u>Oracle Is Not Entitled to Summary Judgment on</u> ███████
        ███████ ..........................................................................................6

        1.    Oracle Is Precluded from Pursuing These Infringement Claims ...........6

        2.    Collateral Estoppel Does Not Apply Here ...........................................11

        3.    Oracle Has Failed to Meet Its Burden at Summary Judgment..............15

    B.    Oracle Is Not Entitled to Summary Judgment on Rimini's Defenses..............17

        1.    Oracle Consented to Rimini's Use of Certain Processes .....................17

        2.    Oracle's Claims Are Partially Barred by the Statute of
            Limitations .......................................................................................22

        3.    Oracle's Delay in Bringing Suit Supports Rimini's Laches
            Defense .............................................................................................25

        4.    Oracle Is Equitably Estopped from Challenging Rimini's
            Processes ..........................................................................................26

        5.    Oracle Abandoned and Waived Its Right to Challenge Certain
            Processes ..........................................................................................27

        6.    Oracle Has Unclean Hands .................................................................29

V. CONCLUSION ...............................................................................................30

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...................................................................................................6

*Atchley v. Pepperidge Farm, Inc.*,
   2008 WL 5377770 (E.D. Wash. Dec. 22, 2008) ........................................................9

*Automation By Design, Inc. v. Raybestos Prods. Co.*,
   463 F.3d 749 (7th Cir. 2006) ....................................................................................16

*Beauchamp v. Anaheim Union High Sch. Dist.*,
   816 F.3d 1216 (9th Cir. 2016) ..................................................................................13

*Bourne v. Walt Disney Co.*,
   68 F.3d 621 (2d Cir. 1995) ........................................................................................12

*Bros. Records, Inc. v. Jardine*,
   318 F.3d 900 (9th Cir. 2003) ....................................................................................29

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
   213 F.3d 474 (9th Cir. 2000) ......................................................................................6

*Cybergun, S.A. v. Jag Precision*,
   2014 WL 7336074 (D. Nev. Dec. 19, 2014) .............................................................25

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) ....................................................................................25

*De Forest Radio Tel. & Tel. Co. v. United States*,
   273 U.S. 236 (1927) .................................................................................................18

*Dream Games of Ariz., Inc. v. PC Onsite*,
   561 F.3d 983 (9th Cir. 2009) ....................................................................................29

*Effects Assoc., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ....................................................................................18

*Eldred v. Ashcroft*,
   537 U.S. 186 (2003) .................................................................................................30

*Enters. Int'l, Inc. v. Int'l Knife & Saw, Inc.*,
   2014 WL 3700592 (W.D. Wash. July 24, 2014) ......................................................24

*Fahmy v. Jay-Z*,
   2014 WL 12558782 (C.D. Cal. July 21, 2014) .........................................................25

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Fahmy v. Jay-Z*,
   835 F. Supp. 2d 783 (C.D. Cal. 2011) ................................................23, 24, 25

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) ................................................................................7

*Ferring B.V. v. Actavis, Inc.*,
   2014 WL 3697260 (D. Nev. July 23, 2014) ...........................................8

*Field v. Google Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) ...............................................17, 18

*Garcia v. Coleman*,
   2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) .........................................24

*Granite Rock Co. v. Int'l Bhd. of Teamsters, Local 287*,
   649 F.3d 1067 (9th Cir. 2011) ..............................................................14

*Green v. Ancora-Citronelle Corp.*,
   577 F.2d 1380 (9th Cir. 1978) ..............................................................14

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
   739 F. Supp. 1392 (C.D. Cal. 1990) ...................................................26, 27

*Harris v. Emus Records Corp.*,
   734 F.2d 1329 (9th Cir. 1984) ..............................................................17

*Houghton v. South*,
   965 F.2d 1532 (9th Cir. 1992) ................................................................6

*Hydranautics v. FilmTec Corp.*,
   204 F.3d 880 (9th Cir. 2000) ................................................................11

*In re Int'l Nutronics, Inc.*,
   28 F.3d 965 (9th Cir. 1994) ....................................................................7

*Intelligent Dig. Sys., LLC v. Beazley Ins. Co.*,
   906 F. Supp. 2d 80 (E.D.N.Y. 2012) ..................................................26, 27

*Jean-Gilles v. City of Rockland*,
   463 F. Supp. 2d 437 (S.D.N.Y. 2006) ....................................................10

*Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*,
   575 F.2d 530 (5th Cir. 1978) ................................................................15

*Keane Dealer Servs., Inc. v. Harts*,
   968 F. Supp. 944 (S.D.N.Y. 1997) .....................................................19, 21

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Kennedy v. Gish, Sherwood & Friends, Inc.*,
  143 F. Supp. 3d 898 (E.D. Mo. 2015)..............................................................20

*Kepner-Tregore, Inc. v. Exec. Dev., Inc.*,
  79 F. Supp. 2d 474 (D.N.J. 1999) ...................................................................25

*Klamath Water Users Protective Ass'n v. Patterson*,
  204 F.3d 1206 (9th Cir. 1999)........................................................................12

*Lambert Corp. v. LBJC Inc.*,
  2014 WL 2737913 (C.D. Cal. June 16, 2014) .................................................25

*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997).........................................................................29

*Littlejohn v. United States*,
  321 F.3d 915 (9th Cir. 2003)......................................................................11, 22

*Marya v. Warner/Chappell Music, Inc.*,
  131 F. Supp. 3d 975 (C.D. Cal. 2015) ............................................................29

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2010)...........................................................................17

*Micro Star v. Formgen, Inc.*,
  154 F.3d 1107 (9th Cir. 1998).........................................................................28

*Miller v. Glenn Miller Prods., Inc.*,
  454 F.3d 975 (9th Cir. 2006)...........................................................................25

*Mpoyo v. Litton Electro-Optical Sys.*,
  430 F.3d 985 (9th Cir. 2005).............................................................................7

*Netbula, LLC v. Chordiant Software, Inc.*,
  2009 WL 2044693 (N.D. Cal. July 9, 2009)....................................................18

*Oracle Am., Inc. v. Terix Comp. Co.*,
  2015 WL 1886968 (N.D. Cal. Apr. 24, 2015) ......................................26, 27, 29

*Oracle USA, Inc. v. Rimini St., Inc.*,
  879 F.3d 948 (9th Cir. 2018)...............................................4, 16, 17, 26

*Padilla v. Nevada*,
  2012 WL 6021357 (D. Nev. Sept. 18, 2012) .....................................................9

*Perez v. Alta-Dena Certified Dairy, LLC*,
  647 F. App'x 682 (9th Cir. 2016) ....................................................................11

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
134 S. Ct. 1962 (2014) ....................................................................................10, 22, 25

*Polar Bear Prods., Inc. v. Timex Corp.,*
384 F.3d 700 (9th Cir. 2004)....................................................................................23

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.,*
324 U.S. 806 (1945) ..................................................................................................29

*Roley v. New World Pictures, Ltd.,*
19 F.3d 479 (9th Cir. 1994)......................................................................................23

*Rosen v. Masterpiece Mktg. Grp., LLC,*
2016 WL 7444688 (C.D. Cal. Nov. 29, 2016) .........................................................29

*San Remo Hotel, L.P. v. S.F. City & Cty.,*
364 F.3d 1088 (9th Cir. 2004).....................................................................................9

*Shloss v. Sweeney,*
515 F. Supp. 2d 1068 (N.D. Cal. 2007) ...................................................................29

*Skidmore v. Led Zeppelin,*
2016 WL 1442461 (C.D. Cal. Apr. 8, 2016) ......................................................25, 27

*State of Nev. v. Watkins,*
914 F.2d 1545 (9th Cir. 1990)...................................................................................13

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,*
322 F.3d 1064 (9th Cir. 2003).....................................................................................9

*Taylor v. Sturgell,*
553 U.S. 880 (2008) ..................................................................................................11

*United States v. Botefuhr,*
309 F.3d 1263 (10th Cir. 2002)............................................................................13, 14

*United States v. King Feature Entm't, Inc.,*
843 F.2d 394 (9th Cir. 1988).....................................................................................28

*United States v. Liquidators of European Fed. Credit Bank,*
630 F.3d 1139 (9th Cir. 2011).....................................................................................7

*United States v. Real Prop. Located at 22 Santa Barbara Drive,*
264 F.3d 860 (9th Cir. 2001).....................................................................................14

*Viesti Assocs., Inc. v. McGraw-Hill Global Educ. Holdings, LLC,*
2015 WL 585806 (D. Colo. Feb. 11, 2015) ..............................................................13

1

2

**TABLE OF AUTHORITIES**
(continued)

                                                                          Page(s)

3   *William A. Graham Co. v Haughey*,
4       568 F.3d 425 (3d Cir. 2009)..................................................................23

5   *Wood v. Santa Barbara Chamber of Commerce, Inc.*,
        705 F.2d 1515 (9th Cir. 1983).............................................................24

6   **Statutes**

7   17 U.S.C. § 202 .....................................................................................17

8   17 U.S.C. § 507 .....................................................................................22

9   **Other Authorities**

10

11  2 *Nimmer on Copyright*, § 8.08.............................................................16

    Restatement (Second) of Judgments § 27 .......................................13, 15
12

13  18A Wright & Miller, Federal Practice & Procedure § 4443 ...............14

14  **Rules**

15  Fed. R. Civ. P. 56 ...............................................................................5, 13

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH

# INDEX OF EXHIBITS

**Declaration of Joseph A. Gorman**

Exhibit A    Excerpts of Seth Ravin 2.15.18 Deposition Transcript

Exhibit B    Excerpts of Nancy Lyskawa 4.19.18 Deposition Transcript

Exhibit C    Exhibit 2 Supplemental – 6.6.14

Exhibit D    ████████████████████████████████████████

Exhibit E    Excerpts of Lawrence Ellison 2.27.18 Deposition Transcript

Exhibit F    Excerpts of Safra Catz 2.16.18 Deposition Transcript

Exhibit G    Exhibit 1857 to Safra Catz 2.16.18 Deposition

Exhibit H    Exhibit 1856 to Safra Catz 2.16.18 Deposition

Exhibit I    Oracle's Q4 2018 Earnings Call, dated 6.19.18

Exhibit J    Exhibit 2700 to Mark Hurd 2.22.18 Deposition

Exhibit K    Excerpts of Emily Roudebush 2.27.18 Deposition Transcript

Exhibit L    Excerpts of Cathy Jameson 7.12.17 Deposition Transcript

Exhibit M    Excerpts of Russel Metcalfe 2.28.18 Deposition Transcript

Exhibit N    Exhibit 1663 to Buffy Ransom 1.12.18 Deposition

Exhibit O    Exhibit 1662 to Buffy Ransom 1.12.18 Deposition

Exhibit P    Excerpts of Owen Astrachan 5.4.18 Expert Report

Exhibit Q    Excerpts of Barbara Frederiksen-Cross 6.19.18 Supplemental Expert Report

Exhibit R    Excerpts of Christian B. Hicks 5.4.18 Expert Report

Exhibit S    Excerpts of Barbara Frederiksen-Cross 9.19.18 Deposition Transcript

Exhibit T    Excerpts of Buffy Ransom 1.12.18 Deposition Transcript

Exhibit U    Exhibit 1672 to Buffy Ransom 1.12.18 Deposition

Exhibit V    Exhibit 1674 to Buffy Ransom 1.12.18 Deposition

Exhibit W    Exhibit 1675 to Buffy Ransom 1.12.18 Deposition

Exhibit X    Excerpts of Richard Allison 3.28.18 Deposition Transcript

Exhibit Y    Exhibit 3091 to Richard Allison 3.28.18 Deposition

**INDEX OF EXHIBITS**
(continued)

Page(s)

Exhibit Z       Exhibit 3092 to Richard Allison 3.28.18 Deposition

Exhibit AA      Rimini Press Release, dated 10.3.11

Exhibit BB      Excerpts of Seth Ravin 11.17.11 Deposition Transcript

Exhibit CC      Excerpts of Steven Salaets 5.17.16 Deposition Transcript

Exhibit DD      Exhibit HHHHH to Barbara Frederiksen-Cross 5.4.18 Expert Report

Exhibit EE      Excerpts of Steven Salaets 6.16.16 Deposition Transcript

Exhibit FF      Excerpts of Jonathan Koop 3.16.16 Deposition Transcript

Exhibit GG      Excerpts of Mark Hurd 2.22.18 Deposition Transcript

Exhibit HH      Excerpts of Paul Simmons 12.1.11 Deposition Transcript

Exhibit II      Excerpts of Devan Brua 1.23.17 Deposition Transcript

Exhibit JJ      Excerpts of *Rimini I* 9.21.15 Trial Transcript

Exhibit KK

Exhibit LL

**Declaration of Casey McCracken**

Exhibit A       Oracle's Fourth Amended Responses to Rimini's First Set of Interrogatories, dated 2.28.18

Exhibit B       "Exhibit A" to Oracle's Fourth Amended Responses to Rimini's First Set of Interrogatories, dated 2.28.18

Exhibit C       "Exhibit A-2" to Oracle's Fourth Amended Responses to Rimini's First Set of Interrogatories, dated 3.21.18

Exhibit D       Letter from Casey McCracken to John Polito, dated 9.7.18

Exhibit E       Letter from Spencer Wan to Casey McCracken, dated 10.9.18

**Declaration of Steven Salaets**

Exhibit A

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn & Crutcher LLP

**INDEX OF EXHIBITS**
(continued)

Page(s)

Exhibit B  ██████████████████████████████████████
           ████████████

Exhibit C  ██████████████████████████████████

Gibson, Dunn &
Crutcher LLP

# I. INTRODUCTION

Oracle had a full and fair opportunity in *Rimini I* to pursue all claims and damages arising out of Rimini's previous support processes ("Process 1.0").  Yet, Oracle now seeks partial summary judgment on its copyright infringement claim relating to ███████████ ████████████████████████████████████████████████████████████████████████████████ ██████ while the parties were still litigating *Rimini I* and long before that case had gone to trial. Oracle is precluded from pursuing its claim ███████████████████ because Oracle *could have* pursued in *Rimini I* all claims and damages ███████████████████, but it chose not to.  *See* ECF No. 910.  Oracle insisted that *Rimini I* focus solely on Process 1.0, represented that it would seek in *Rimini I* damages through February 2014, and maintained that all claims relating to Rimini's revised support processes ("Process 2.0") should be litigated in a separate case.  This Court accepted Oracle's position and held that Oracle was "entitled" to pursue in *Rimini I* all claims that had accrued during that litigation.  Oracle had all the discovery it needed to pursue its PeopleSoft claim then.  Thus, Oracle's motion should be denied.

Oracle's motion also fails on the merits.  Oracle contends that ████████████ ████████████████████████████████████████████████████████████████████████████████ █████████████████████████ But Oracle has not analyzed the different licenses at issue, some of which ██████████████████ and some of which Oracle failed to produce.  Nor has Oracle presented a shred of evidence even hinting that these clients lacked actual or constructive control ██████████, as is required under the Ninth Circuit's decision in *Rimini I*.  Oracle seeks summary judgment as to all of ████████████████ during a certain time period based on licenses and facts that do not apply to those clients.  Because Oracle has not met its burden, its motion should be denied on this basis as well.

Oracle's separate request for judgment on Rimini's affirmative defenses should also be denied.  Oracle presents only a partial picture of those defenses and fails to address any of the relevant evidence in the record.  Contrary to Oracle's assertions, the evidence shows that Oracle has repeatedly stated that █████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████.  Oracle

ignores clear evidence establishing (or at the very least raising a triable issue of fact) that several of its infringement claims are barred under the statute of limitations and laches because Oracle knew or should have known about the conduct underlying those claims more than three years before it filed its counterclaims in this lawsuit.  Oracle is also wrong that ruling on Rimini's defenses will streamline the issues for trial, because Oracle has moved for partial summary judgment on those defenses as they relate to Oracle's copyright counterclaim *only*; it does not seek judgment on those *same* defenses as they relate to any of Oracle's *other* counterclaims. Thus, these defenses will remain in the case no matter how the Court rules on Oracle's motion.

Rimini respectfully requests that this Court deny Oracle's motion in full.

## II.  BACKGROUND AND RESPONSE TO ORACLE'S STATEMENT OF FACTS

### A.  *Rimini I* Lawsuit

Oracle sued Rimini in 2010, alleging twelve causes of action against both Rimini and its CEO Seth Ravin.  *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-cv-0106-LRH-VCF ("*Rimini I*").  The parties engaged in extensive fact discovery through December 5, 2011.

### 1.  February 2014 Summary Judgment Ruling

Oracle argued in *Rimini I* that two aspects of Rimini's software support practices in use at the time—what Oracle called ███████████████████—infringed Oracle's copyrights.  Rimini responded that these processes were permitted by Oracle's customers' licenses, a key question in *Rimini I*.

In March 2012, Oracle moved for summary judgment on Rimini's express license defense, using the ███████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████████████████████████

On February 13, 2014, this Court granted Oracle's motion in part and denied it in part, concluding that Rimini exceeded the scope of the license provisions because ████████████
███████████████████████████████████████████████████████████████

Gibson, Dunn & Crutcher LLP

1    ████████████████████   *Id.* at 12 & n.10, 18.  The parties then entered into a limited

2    stipulation concerning the City of Flint and Pittsburgh Public Schools licenses:

3         *For purposes of this action*, the Parties agree and stipulate that the ████████
          license agreements for all of Rimini's ████████████  have identical or

4         similar language to the ████████████████  … construed by the Court in its February 13, 2014

5         order[.]

6    *Rimini I*, ECF No. 599 ¶ 1 (emphasis added).

7         **2.    Rimini Transitions to Process 2.0**

8         Contrary to Oracle's purported statement of undisputed fact #6 (ECF No. 888 at 3),

9    Rimini did not continue providing support for PeopleSoft in the same manner after this Court's

10   summary judgment ruling.  Instead, ████████████████████████████████

11   ████████████████████████████████████████

12   ████████████████████████████████████████

13   ████████████████████████████   *See Rimini I*, ECF No. 1134-

14   3; Ex. A at 118:23–19:3; Ex. B at 110:11–25.[1]

15        **3.    Rimini Produces Supplemental Information at Oracle's Request**

16        In February 2014, Oracle demanded that Rimini provide supplemental discovery on its

17   then-current practices.  ECF No. 910-2, -5.  ████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23        **4.    Oracle Pursues Certain Damages Through February 2014**

24        Rimini requested that the parties be permitted to conduct discovery on Process 2.0 and

25   to present evidence of the revised processes at trial.  *See Rimini I*, ECF No. 488 at 12.  But

26   Oracle persuaded the Court to limit the *Rimini I* trial to "Rimini's old support model" and to

27

28   _____

     [1]  Unless stated otherwise, all exhibit citations are to the Declaration of Joseph A. Gorman filed
     concurrently herewith.

1  reserve for "a separate lawsuit" all issues relating to Process 2.0 (*id.* at 8), representing that it

2  would seek in *Rimini I* all damages for conduct occurring through "February 13, 2014" (ECF

3  No. 910-10 at 2).  Oracle then requested, and was granted, leave to supplement the damages

4  report of its expert Elizabeth Dean ("*Rimini I* Dean Report").  ECF No. 910-11 at 4–5.  In

5  granting Oracle leave to supplement, this Court held that Oracle was "entitled" to seek damages

6  for infringing conduct that occurred "during [the] litigation."  *Id.* at 4.

7      *Rimini I* went to trial in September 2015.  The jury found Rimini liable for "innocent"

8  infringement, and awarded Oracle a fair market value license.  *Rimini I*, ECF No. 896.  On

9  appeal, the Ninth Circuit affirmed Rimini's liability for PeopleSoft on the "narrow grounds" of

10  "local hosting" because "[t]he record" supported a finding that "the Rimini servers where the

11  copying took place were outside the control of the customers."  *Oracle USA, Inc. v. Rimini St.,*

12  *Inc.*, 879 F.3d 948, 960 & n.6 (9th Cir. 2018).  The Ninth Circuit also affirmed Rimini's liability

13  for JD Edwards and Siebel on a limited theory of *future-customer* "cross use."  *Id.* at 957.

14  **B.    *Rimini II* Lawsuit**

15      In October 2014, shortly after Rimini completed its transition to Process 2.0, Rimini

16  filed this lawsuit (*Rimini II*) seeking a declaration that Process 2.0 does not infringe.

17      **1.    Oracle Files Its Counterclaims After Rimini Transitions to Process 2.0**

18      On February 17, 2015—nearly five months after Rimini initiated this lawsuit, and over

19  six months after Rimini completed its transition to Process 2.0—Oracle alleged various

20  counterclaims against Rimini, including that its revised processes infringe and "violate[] the

21  same laws as the old support process."  ECF No. 21 ¶ 4.  But contrary to its representations in

22  *Rimini I*, Oracle claimed that its *Rimini II* "counterclaims [are not] limited to Rimini's current

23  practices," instead arguing that "[c]ustomers who joined Rimini after the close of fact discovery

24  in *Rimini I* in December 2011 are the subject of *Rimini II*, not *Rimini I*."  ECF No. 48 at 3–4.

25  Rimini responded with various affirmative defenses.

26  **2.    Oracle's Motion for Partial Summary Judgment**

27      Oracle seeks partial summary judgment on two issues.  First, Oracle seeks partial

28  summary judgment as to ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

ECF No. 888 at 2; ECF No. 891 ¶ 10, Ex. 27.[2]   Oracle submits Rimini's Supplemental

Objections & Responses to Oracle's Interrogatory Nos. 3 & 5 and Rimini's accompanying

Exhibit D-1.4 in support of its claim that Rimini ███████████████████████████████████

████████████████████████████████████████████.   *See* ECF No. 891 ¶ 4, Ex. 21.

Exhibit D-1.4 ██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████."

*Id.* at 10. ██████████████████████████████████████████

Date." *Id.* ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████   Declaration of Steven Salaets ("Salaets Decl.")

¶ 2. ██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.[3]  *Id.* ¶¶ 3–4.  Based on this

Exhibit alone—and with *zero* analysis of these clients' control ████████████████, or their

software licenses, some of which ████████████████████████—Oracle claims that it is

undisputed that Rimini infringed.  ECF No. 888 at 2–3, 8; ECF No. 891 ¶ 5, Ex. 22.

Second, Oracle seeks partial summary judgment on Rimini's affirmative defenses

(implied license and consent, statute of limitations, laches, equitable estoppel, waiver and

abandonment, unclean hands, and preclusion), but *only* as they relate to Oracle's copyright

infringement counterclaim.  Oracle has not requested summary judgment on these defenses as

they relate to Oracle's *other* counterclaims.

## III.  LEGAL STANDARD

Partial summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

In assessing whether summary judgment is appropriate, "[t]he evidence of the nonmovant

---

[2]  Rimini reserves its right to challenge the validity of these registrations.  *See* ECF No. 961.

[3]  Rimini incorporates by reference its concurrently filed Opposition to Oracle's Motion for Partial Summary Judgment Re Rimini's Migration and Windstream Hosting, which also analyzes this issue.

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH

1    [Rimini] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*

2    *v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   Where "the party moving for summary

3    judgment would bear the burden of proof at trial, it must come forward with evidence which

4    would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R.*

5    *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotations

6    omitted).   If the moving party fails to present such evidence, then its motion must be denied.

7    *See Houghton v. South*, 965 F.2d 1532, 1537 (9th Cir. 1992).

### IV.  ARGUMENT

8

9    Oracle contends that it is entitled to partial summary judgment on the ███████

10   ███████ and several of Rimini's affirmative defenses.  Oracle is wrong on both counts.

**A.    Oracle Is Not Entitled to Summary Judgment on** ██████████████████

11

12   Oracle argues that it is entitled to summary judgment on ████████████████████

13   because ███████████████████ … provided a conclusive basis for Rimini's

14   liability" in *Rimini I*, and therefore Rimini is "collaterally estopped from contesting its liability"

15   in *Rimini II*.  ECF No. 888 at 4.  Oracle's motion should be denied for three reasons.  *First*, for

16   all the reasons stated in Rimini's pending Motion for Summary Judgment Re: Preclusion of

17   Oracle's Already Adjudicated Claims (ECF No. 910), Oracle is precluded from pursuing all

18   claims and damages relating to ██████████.  *Second*, Rimini is not collaterally estopped

19   from contesting liability relating to ████████████, because Rimini's express license

20   defense for each ████████ was not actually litigated in *Rimini I*.  Rather, the parties

21   stipulated to the exemplar licenses in that case (████████████████████████),

22   which they have *not* done in this case, and so, to prevail, Oracle must prove why each individual

23   license does not authorize Rimini's conduct—which it has not done.  Nor can it, because at

24   least some of the licenses ██████████████████.  *Third*, Oracle has failed

25   to show the absence of any triable issue of material fact on the question of whether Rimini

26   committed unauthorized copying in violation of the Copyright Act.

27   **1.    Oracle Is Precluded from Pursuing These Infringement Claims**

28   The doctrine of claim preclusion bars Oracle from pursuing any claims or damages

Gibson, Dunn &
Crutcher LLP

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH

relating to the ████████████ because Oracle *could have* sought damages for these ████████████ in *Rimini I*, but chose not to do so.

Claim preclusion "bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). It applies where the prior case (1) "reached a final judgment on the merits," (2) "involved identical parties or privies," and (3) "involved the same 'claim' or cause of action as the later suit." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

Here, Oracle concedes that *Rimini I* reached final judgment, and that *Rimini I* and *Rimini II* involve identical parties or their privies. ECF No. 888 at 6. Oracle also acknowledges that its infringement claim relating to ████████████ is "identical" to the claim "decided in *Rimini I*." *Id.* at 5. Indeed, Oracle's motion is premised on the notion that ████████ ████████████████████████████████████████████████ ████████████████████████ is the same conduct adjudicated in *Rimini I*. Thus, there is no dispute that the PeopleSoft claim here "arise[s] out of the same transactional nucleus of facts" as the PeopleSoft claim that the parties already litigated, and that the two suits "involve[] the same 'claim' or cause of action." *Mpoyo*, 430 F.3d at 987.

The only dispute is whether Oracle *could have* pursued in *Rimini I* all claims and related damages for the ████████████ at issue. Although "the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action" (*United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011), the undisputed evidence independently demonstrates that Oracle could have pursued in *Rimini I* all claims and damages for these ████████████.

Oracle stated from the beginning of *Rimini I* that it was seeking pre- and post-complaint damages "through the end date of trial" and judgment. ECF No. 916, Tab 6 at 56. And in persuading this Court to limit trial in *Rimini I* to "Rimini's old support model" and to reserve

for "a separate lawsuit" all issues relating to Process 2.0 (*Rimini I*, ECF No. 488 at 8), Oracle represented that it would seek all damages for conduct occurring through "February 13, 2014" (ECF No. 910-10 at 2).  Oracle then successfully sought leave to supplement the *Rimini I* Dean Report to include damages, and customers that Rimini had gained, as of the original close of fact discovery.  ECF No. 910-11 at 4–5.  Indeed, Oracle was "*entitled*" to seek such damages for conduct that occurred "during [the] litigation."  ECF No. 910-11 at 4 (emphasis added).

But Oracle failed to pursue claims and damages for allegedly infringing conduct relating to ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████  *See* ECF No. 914 ¶¶ 9, 21, 23, 27, 31, 39, 46, 51. Pursuant to Oracle's request, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.  *Compare* ECF No. 913, *with* ECF No. 891 ¶ 10, Ex. 27. ████████████████████████████████ ██████████████████████████████████  *Compare* Ex. C, *with* ECF No. 891 ¶ 10, Ex. 27. Rimini produced additional client-specific contractual and financial information through August 2014.  *See* ECF Nos. 910-6, 910-7, 910-8, 913. ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████  *See* ECF No. 914 ¶¶ 9, 21, 23, 27, 31, 39, 46, 51.

By August 2014, Oracle had thirteen months to either request additional information relating to Rimini's creation of PeopleSoft environments or supplement the *Rimini I* Dean Report to include additional damages claims.  *See Ferring B.V. v. Actavis, Inc.*, 2014 WL 3697260, at *5 (D. Nev. July 23, 2014) (precluding second infringement claim where plaintiff has "'ample opportunity' to raise damages issue during the[] thirteen months" between the post-complaint launch of the infringing product and trial in the first lawsuit).  In fact, this Court stated in July 2015—two months before trial in *Rimini I*, and over a year after Rimini had changed its processes—that there was "still time for both parties to file supplemental reports." ECF No. 910-11 at 4.  Oracle could have pursued these claims at that time, but it chose not to.

Oracle's arguments to the contrary lack merit.  Oracle insists that preclusion does not apply because (1) Oracle's *Rimini II* PeopleSoft claim covers a different period than its *Rimini I* claim; (2) each act of infringement constitutes a new wrong; and (3) this Court already rejected Rimini's preclusion argument in *Rimini I*.  *See* ECF No. 888 at 19.  Each argument is wrong.

*First*, Oracle argues that its current ███████████ is not precluded because it involves conduct that occurred after Oracle filed its complaint in *Rimini I*.  But, from the very beginning of *Rimini I*, Oracle sought "both pre- and post-complaint damages" for the alleged infringement. ECF No. 910-11 at 2.  And "[i]t is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is *whether they could have been brought*."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (emphasis added); *see also San Remo Hotel, L.P. v. S.F. City & Cty.*, 364 F.3d 1088, 1094 (9th Cir. 2004) ("Claim preclusion precludes relitigation of claims that were raised or *should have been raised* in earlier litigation.") (emphasis added).  Here, there is no question that Oracle could and should have pursued infringement claims and damages ███████████— Oracle had the discovery it needed and was expressly *entitled* to do so.  Oracle's failure to pursue those claims and damages in *Rimini I* does not give Oracle a free pass to relitigate *Rimini I*; it means that Oracle is precluded from pursuing them in this action.

Oracle's reliance on *Atchley v. Pepperidge Farm, Inc.*, 2008 WL 5377770 (E.D. Wash. Dec. 22, 2008), and *Padilla v. Nevada*, 2012 WL 6021357 (D. Nev. Sept. 18, 2012), is unavailing.  In *Atchley*, the court concluded that claim preclusion was inapplicable, not because the two lawsuits covered two different periods (as Oracle suggests), but because they "involve[d] different factual contentions"—the second action "involve[d] allegations regarding the termination and resale of [a] distributorship," whereas the first action involved "the purchase, formation[,] and operation" of the distributorship.  2008 WL 5377770, at *4.

And *Padilla* recognized that claims arising out of post-complaint events may be barred in later litigation where the claim "depends on the allegation that a series of wrongful acts constituted *a single scheme*."  2012 WL 6021357, at *6 (emphasis added).  Here, Oracle has

1   insisted that Rimini engaged in a "*single course of conduct*" (*Rimini I*, ECF No. 771 at 2), and

2   that Rimini's entire business was based on infringing conduct (*see Rimini I*, ECF No. 146 at 2;

3   *Rimini I*, ECF No. 747 at 4; ECF No. 910-12 at 1940:15–41:13; *see* ECF No. 888 at 1 (asserting

4   that ████████████████████████████████████████████████████████████

5   ████████████████████████████████   Thus, Oracle's PeopleSoft claim is barred even

6   though the allegedly infringing conduct occurred after it filed its complaint in *Rimini I*.

7       *Second*, Oracle cites *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969

8   (2014), which held that "[e]ach time an infringing work is reproduced or distributed, the

9   infringer commits a new wrong" that "gives rise to a discrete 'claim.'"  *See* ECF No. 888 at 19.

10  But, as explained in Rimini's pending motion (ECF No. 910 at 18–19), "[s]eparately accruing

11  harm should not be confused with harm from past violations that are continuing" (*Petrella*, 134

12  S. Ct. at 1969 n.6).  Oracle claims Rimini's infringement arising out of its former processes was

13  continuous.  *E.g.*, *Rimini I*, ECF No. 771 at 2 ("This case is about [Rimini's] *single course of*

14  *conduct*[.]").  Thus, Oracle's claims pertaining to ████████████████████   are merely

15  "additional examples of the earlier-complained of conduct," learned of after Oracle filed its

16  complaint in *Rimini I*, that do not themselves constitute new claims sufficient to avoid a finding

17  of res judicata.  *E.g.*, *Jean-Gilles v. City of Rockland*, 463 F. Supp. 2d 437, 454 (S.D.N.Y. 2006)

18  (res judicata "applies to facts learned after the filing of the earlier complaint when such facts

19  are merely additional examples of the earlier-complained of conduct") (quotations omitted).

20      *Third*, Oracle argues that this Court "rejected" Rimini's preclusion arguments in *Rimini*

21  *I*.  Not so.  In *Rimini I*, Rimini moved to preclude Oracle from shoehorning its claims arising

22  out of Process 1.0 into *Rimini II*.  *Rimini I*, ECF No. 554.  This Court did not address Rimini's

23  argument.  Instead, the Court stated that "[t]he issue of whether to allow Oracle to seek damages

24  in the separate *Rimini* [*II*] action for customers Rimini gained after the close of fact discovery

25  in this action is an issue solely related to the separate *Rimini* [*II*] action."  ECF No. 910-11 at 3

26  n.3.  The Court also stated that it would address the issue "in a separate order in response to the

27  duplicate motion to preclude filed in the *Rimini* [*II*] action."  *Id.*  In that separate order, the

28  Court declined to rule on the merits of Rimini's arguments, and instead invited Rimini to refile

1   its motion in view of the "jury's verdict in [*Rimini I*]."  ECF No. 114 at 2–3.

2   Oracle had every opportunity in *Rimini I* to assert claims relating to the 47 PeopleSoft

3   environments.  Its failure to do so means it is precluded from pursuing them now.[4]

4       **2.      Collateral Estoppel Does Not Apply Here**

5   Oracle is also wrong that Rimini is collaterally estopped from contesting its liability for

6   any of ███████████████████████ identified in Oracle's motion.

7   The doctrine of collateral estoppel—or issue preclusion—"bars successive litigation of

8   an issue of fact or law actually litigated and resolved in a valid court determination essential to

9   the prior judgment."  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  It governs where (1) "the

10  issue at stake is identical to an issue raised in the prior litigation," (2) "the issue was actually

11  litigated in the prior litigation," and (3) "the determination of the issue in the prior litigation

12  [was] a critical and necessary part of the judgment in the earlier action."  *Littlejohn v. United*

13  *States*, 321 F.3d 915, 923 (9th Cir. 2003).  "The party asserting preclusion bears the burden of

14  showing with clarity and certainty what was determined by the prior judgment."  *Hydranautics*

15  *v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).  These requirements are not satisfied here.

16  *First*, Rimini's express license defense relating to ████████████████████ is

17  not identical to its express license defense in *Rimini I*.  The issue here—whether the customer

18  licenses associated with █████████████████████████████████

19  ████████████████████—is not identical to the issue litigated in *Rimini I*—

20  whether the ██████████████████████████████████

21  ████████████████s—because the licenses at issue here differ in their terms and meaning.

22  In *Rimini I*, Oracle argued at summary judgment that Rimini copied the █████████

23  ████████████████████████████████████████ in a manner that exceeded

24  each specific client's ████████ license.  *See Rimini I*, ECF No. 474 at 4–5, 8–20.  ████████

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [4] Oracle's request for summary judgment on Rimini's preclusion defense should also be

27  denied.  Oracle has failed to demonstrate that *no* issues litigated in *Rimini I* are precluded from
    being litigated in *Rimini II*, and in order to obtain judgment on the entire defense, Oracle would

28  need to show that it is inapplicable to this entire case, which it has not done.  *Cf. Perez v. Alta-*
    *Dena Certified Dairy, LLC*, 647 F. App'x 682, 685 (9th Cir. 2016) (reversing "complete
    dismissal" of two claims where only certain "pieces of the two causes of action" failed).

1　███████████████████████████████████████████████

2　███████████████████████████████████████████████

3　███████████████████████████████████████████████

4　██████████████ This Court held that Rimini's ████████████ exceeded the

5　scope of these license provisions because ██████████████████████

6　██████████████████████████████ *Id.* at 12 & n.10, 18.

7　　　　The parties then stipulated "[f]*or purposes of this action*" that "the ██████ license

8　agreements for all of Rimini's █████████████ have identical or similar language" to the

9　█████████████████ licenses construed at summary judgment. *Rimini I*,

10　ECF No. 599 ¶ 1 (emphasis added). Here, however, the ████████████ in many of the

11　licenses associated with ███████████████████ are not identical to the ████████

12　████████████████████████.

13　　　　For instance, █████████████████████████████████

14　███████████████████████████████████████████████

15　███████████████████████████████████████████████

16　███████████████████████████████████████████████

17　███████████████████████████████████████████████

18　███████████████████████████████████████████████

19　███████████████████████████████████████████████

20　███████████████████████████████████████████████

21　███████████████████████████████████████████████

22　████████████████████████████████

23　　　　Whether these provisions carry the same meaning as the ██████████████

24　████████████████████ licenses must be determined on a license-by-license basis

25　to ascertain "the intent of the [contracting] parties." *Klamath Water Users Protective Ass'n v.*

26　*Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). Oracle has not even attempted to demonstrate

27　that ████████████ was improper under each of these licenses, as is its burden. *Bourne v. Walt*

28　*Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (where "the scope of the license is at issue, the

copyright owner bears the burden of proving that the defendant's copying was unauthorized").[5]

Worse, Oracle *failed to produce* the specific customer licenses for at ████████ ████████ (*e.g.*, Ex. D ████████ Declaration of Casey McCracken ("McCracken Decl.") ¶¶ 3–6 ████), and is barred from obtaining summary judgment on this basis as well. *See* Fed. R. Civ. P. 56(d)(1); McCracken Decl. ¶¶ 4–5. Indeed, Oracle *admits* that a license exists for each of these clients. ECF No. 888, Ex. 27. But, it did not produce the licenses and thus cannot meet its burden of showing that the scope of the license was exceeded.

Oracle relies on *Viesti Associates, Inc. v. McGraw-Hill Global Education Holdings, LLC*, 2015 WL 585806, at *5 (D. Colo. Feb. 11, 2015), but each license there involved the same contracting parties, and the court expressly stated that the licenses at issue in the earlier actions were "identical" to the "agreements … at issue in this case." By contrast, the customer licenses associated with ████████████ are undisputedly *not* identical to ████ ████████████ *Viesti* is therefore completely inapposite.

*Second*, Oracle's collateral estoppel argument also fails on the second element—which Oracle does not even address in its motion—because each customer license relating ████ ████████ was *not* "actually litigated" and construed in *Rimini I*.

An issue is "actually litigated" when it "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." Restatement (Second) of Judgments § 27 cmt. d; *see also Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (issue was "actually litigated and adjudicated" where "the parties presented arguments on the issue, and the district court made a final ruling which was appealed and affirmed by this court"). But it is black letter law that an issue is *not* "actually litigated" where it was "***the subject of a stipulation between the parties***" in the previous action. Restatement (Second) of Judgments § 27 cmt. e (emphasis added); *see also United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002) ("[W]hen a particular fact is established not by judicial

---

[5]  To the extent Oracle attempts to analyze these licenses for the first time on reply, that argument need not be considered, and Rimini respectfully requests that it be stricken or that Rimini be given an opportunity to respond. *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs.").

resolution but by stipulation of the parties, that fact has not been 'actually litigated' and thus is not a proper candidate for issue preclusion.") (quotations omitted).  A stipulation is binding in later litigation only "if the parties have manifested an intention to that effect."  *Id.*; *see also Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1383 (9th Cir. 1978) ("stipulation of settlement" in previous action had preclusive effect because "it is clear that the parties intended the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action"); 18A Wright & Miller, Federal Practice & Procedure § 4443 ("Stipulation of individual issues is treated much as a consent judgment," and "issue preclusion ordinarily does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation.").

For example, in *Granite Rock Co. v. International Brotherhood of Teamsters, Local 287*, 649 F.3d 1067, 1070 (9th Cir. 2011), the plaintiff could challenge whether the defendant had ratified a collective bargaining agreement on a certain date, even though the parties in the previous action had stipulated that a ratification vote was not held on that date.  The Ninth Circuit held that the issue was "not litigated on the merits" and thus "not subject to collateral estoppel."  *Id.*  Similarly, the Tenth Circuit held in *Botefuhr* that a stipulation concerning the value of certain stock in a previous tax court proceeding did not preclude the parties in the second action from litigating the issue because "it is clear that the parties never adjudicated the value of [the] stock."  309 F.3d at 1282–83; *see also United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 873–74 (9th Cir. 2001) (stipulation in previous tax court proceeding that spouse had no income tax liability for tax year 1985 had no preclusive effect because "there is no evidence that the parties intended the stipulation to be a final adjudication of the merits").

Rimini may likewise assert each of the ███████████ at issue here.  As explained above, this Court construed two exemplar licenses at summary judgment in *Rimini I* (*Rimini I*, ECF No. 474 at 4–5, 8–20), and the parties entered into a limited stipulation that ███████ licenses at issue had "identical or similar language" to those exemplar licenses (*Rimini I*, ECF No. 599 ¶ 1).  But the parties never manifested any intent to be bound by that stipulation for all

███████ licenses in subsequent litigation.  To the contrary, the stipulation states expressly that it applies solely "[f]or the purposes of this action." *Id.*

As a result, the meaning of the ███████ licenses (aside from the two exemplar licenses) have never been "actually litigated"; the parties have *never* presented argument on any of the licenses belonging to Rimini's other ███████; and this Court has *never* construed any of those other licenses.  Rimini may therefore press its express license defense for each ███████ identified in Oracle's motion, and litigate the construction of each and every corresponding license in this action.  *See Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 532, 537–40 (5th Cir. 1978) (consent judgment dismissing previous declaration judgment action of patent invalidity and non-infringement did not collaterally estop alleged infringer from contesting the validity of the patent in subsequent infringement action).  To conclude otherwise would "discourage compromise" and "decrease the likelihood that the issues in an action would be narrowed by stipulation," thereby "intensify[ing] litigation."  Restatement (Second) of Judgments § 27 cmt. e.

Rimini is not estopped from contesting liability relating to ███████ ███████ because the licenses relating to those ███████ are not identical to the *Rimini I* exemplar licenses, and they have never been litigated by the parties or construed by the Court.

### 3.    Oracle Has Failed to Meet Its Burden at Summary Judgment

Oracle argues that, collateral estoppel aside, it is entitled to partial summary judgment on its copyright infringement claim relating to ███████.  Oracle contends that it owns the relevant copyrights, that Rimini ███████ ███████, and that Rimini does not have an express license defense for any of ███████.  ECF No. 888 at 6–10.  The Court should reject Oracle's position for two reasons.

*First*, Oracle has failed to prove that Rimini's conduct exceeded the scope of the customer licenses.  Under the express license defense, once a party accused of copyright infringement (Rimini) points to a license that it believes authorizes its conduct, the burden shifts to the party asserting infringement (Oracle) to prove that the accused conduct exceeds the scope

of that license. *Rimini I*, ECF No. 474 at 6–7. Here, it is undisputed that there is a license for each of ████████████ at issue (*see* ECF No. 890, Ex. 19; ECF No. 891, Ex. 28), which Rimini contends authorizes its conduct.[6] Those licenses differ from the licenses in *Rimini I*, yet Oracle has not even attempted to explain why the different licenses prohibit Rimini's conduct. Even if those licenses were the same (they are not), the question is not just where the ████████████. Rather, the Ninth Circuit decision requires Oracle to show that the ████████ were outside of the actual or constructive control of the clients. *Rimini I*, 879 F.3d at 960 & n.6 ("narrow[ly]" upholding liability because "[t]he record" demonstrated "that the Rimini servers where the copying took place were *outside the* [*actual or constructive*] *control* of the customers"). Oracle has not even attempted to do so. In fact, Oracle ignores that the licenses expressly provide ████████████████████

████████████████████

████████████████████

████████████████████

████████████████████

████████████████████ .[7] Indeed, the evidence shows that clients did, in fact,

_____

[6] Rimini steps into the shoes of its clients and may copy the licensed software in the course of providing support services. As the Ninth Circuit held, "the very work of maintaining customized software requires copying," and "updates to enterprise software must be tested and modified to fit with bespoke customizations before being put to actual use." *Rimini I*, 879 F.3d at 956. It also recognized that "[Oracle's] licenses generally permit Oracle's licensees to maintain the software and make development environments for themselves" (*id.*), and that the licensees may "hire Rimini to perform such work for them" (*id.* at 953). Because the licensees may hire Rimini to maintain software, and such maintenance inherently "requires copying," Rimini necessarily may make copies of Oracle software in the course of providing support. Moreover, absent express language to the contrary, licensees may have agents perform the same rights they have under a license. *See Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757–58 (7th Cir. 2006); *see also* 2 *Nimmer on Copyright*, § 8.08[D][2] (licensees can "fix, update, debug, customize, test and modify [their] copy of [the licensed software]" and have "unbridled authority to 'authorize' others to effectuate those activities for [them]").

[7]



RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn & Crutcher LLP

exercise such control.  *See* Declaration of Jim Benge ¶¶ 3–4.

*Second*, even if Rimini's conduct exceeded the scope of the licenses, Rimini's conduct would at most constitute breach of contract, not copyright infringement.  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 941 (9th Cir. 2010) ("[F]or a licensee's violation of a contract to constitute copyright infringement, there must be *a nexus between the condition and the licensor's exclusive right of copyright*.") (emphasis added).  Here, Oracle's allegation that Rimini violated ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ (ECF No. 888 at 9–10), is not "grounded in an exclusive right of copyright."  *MDY*, 629 F.3d at 940.  Oracle does not object to the actual creation of copies—*i.e.*, the exercise of the reproduction right.  Nor does Oracle contest that each licensee was entitled to copy the software.  Oracle instead objects only ████████████████████████████████████████████████████████████████ █████████████████  *See* ECF No. 891, Ex. 28.  But because copyright protections extend to *the work* itself, not the location in which it is embodied, Oracle's complaint gives rise, at best, to a contract claim.  *See* 17 U.S.C. § 202 ("Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied."); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1336 (9th Cir. 1984).  The Ninth Circuit did not address this issue in *Rimini I.  Rimini I*, 879 F.3d at 957.

**B.     Oracle Is Not Entitled to Summary Judgment on Rimini's Defenses**

Oracle also seeks partial summary judgment on a number of Rimini's affirmative defenses to Oracle's copyright infringement counterclaim.  Oracle has not moved on Rimini's defenses to the other counterclaims at issue, which will remain in the case no matter how this Court rules on Oracle's motion.  Oracle's motion should be denied as to each defense.

**1.     Oracle Consented to Rimini's Use of Certain Processes**

"An implied license can be found where the copyright holder engages in conduct 'from which the other party may properly infer that the owner consents to his use.'"  *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) (quoting *De Forest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 241 (1927)); *see also Effects Assoc., Inc. v. Cohen*, 908 F.2d 555,

558 (9th Cir. 1990) (noting that a "nonexclusive license may be granted orally, or may even be implied from conduct"). "Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence where the copyright holder knows of the use and encourages it." *Field*, 412 F. Supp. 2d at 1116. "Whether the licensor intended to grant an implied license is a question of fact that must be left to the jury." *Netbula, LLC v. Chordiant Software, Inc.*, 2009 WL 2044693, at *6 (N.D. Cal. July 9, 2009) (quotations omitted).[8]

Here, there is at the very least a triable issue of fact as to whether Oracle has engaged in conduct from which Rimini, and the industry in general, could (and did) properly infer that Oracle consented to the very processes that it contends are unlawful in this litigation.

**a.** One such example is the ████████████████████   In this lawsuit, Oracle claims that Rimini violates the ████████████████████ whenever Rimini ████████████████████.   But Oracle has repeatedly and publicly *encouraged* its ████████████████████.

Oracle's founder, former CEO, and current Chief Technology Officer Lawrence Ellison agreed that ████████████████████ ████████████████   Ex. E at 82:17–83:5.  Oracle's co-CEO Safra Catz has also stated that ████████████████████ ████████████████.   Ex. F at 83:16–84:3; Ex. G at 1.  And she has encouraged customers to use Oracle's "own cloud system" or "bring [their] Oracle licenses to *someone else's cloud*."  Ex. H at 6 (emphasis added).  On a recent earnings call, Catz stated:  "[Our customers are] using [on-premise licenses], in fact, in the cloud, and that's … what they were designed for, frankly, and what's very excited about."  Ex. I at 10; *see also* Ex. J at 3 ("Oracle customers who already own a license to PeopleSoft applications may use the Oracle cloud to host instances of their licensed applications.").  It is no surprise,

---

[8]  Oracle argues that an implied license exists only in the "narrow circumstance[]" where "one party [Oracle] created a work at [the other's] request [Rimini] and handed it over, intending that [Rimini] copy and distribute it." ECF No. 888 at 11 (quotations omitted). But courts—including this Court—"have held that an implied license can exist even where the copyright owner does not create a custom work for the putative licensee." *Netbula*, 2009 WL 2044693, at *6; *see also Rimini I*, ECF No. 474 at 25.  The Court should do so again here.

Gibson, Dunn &
Crutcher LLP

then, that ████████████████████████████████████████ *E.g.*, Ex. K at 22:3–24:11; Ex. L at 121:8–22:24; Ex. M at 23:14–24:10; 25:17–26:7, 33:18–34:25; 35:13–36:17).  Oracle's encouragement and failure to object means that it has consented to use of the cloud.  *See Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944, 947 (S.D.N.Y. 1997) ("[C]onsent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license.").

**b.**  Oracle has also reviewed *and approved* the support processes ████████████ ████████████████████████ another third-party support provider that uses processes that mirror Rimini's. ████████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1  ████████████████████████████████████████████████████

2  ███████████████████████████████████████

3       Despite the similarities between ███████ and Rimini's support processes, Oracle

4  claims that it is copyright infringement for Rimini to do what Oracle told ██████ was lawful.

5  For instance, █████████████████████████████████████████████████████

6  ████████████████████████████████████ Ex. Q ¶¶ 23–24; Ex. R ¶ 1.1. ████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ██████ *E.g.*, Ex. Q ¶¶ 217, 390–93, 469–70; Ex. S at 150:3–151:24, 170:6–76:2.

12      Oracle's position is a complete reversal of its dealings with ██████ and a transparent

13 attempt to foreclose Rimini from providing third-party support—all while Oracle has been

14 saying publicly that third-party support is permissible.   Indeed, Oracle's expert Barbara

15 Frederiksen-Cross admitted ████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 █████████████████████

18      It is manifestly unfair to Rimini and to Oracle licensees, who are aware of ███████████

19 offerings, to permit Oracle to treat these two competitors differently.  Having already approved

20 of the ███████ support processes at issue here—and in fact stating that they *do not constitute*

21 *copyright infringement*—Oracle is barred by the doctrines of consent and implied license from

22 changing its tune now.  *See Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898,

23 909 (E.D. Mo. 2015) ("Common industry practice is also indicative of consent.").

24     **c.**  Oracle has also consented to ██████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH

1

2

3

4

5

6

7

8      ████████████████████████████████ Oracle's affirmative statement that it would

9  provide ████████████████, and then its failure to do so over three years later (after

10 the statute of limitations for copyright infringement has run), demonstrates Oracle's belief that

11 those processes, which are similar to Rimini's, do not infringe. *See Keane Dealer Servs.*, 968

12 F. Supp. at 947; *see also* Ex. P ¶¶ 118–28.

13     **d.** Likewise, Oracle sued and settled with ████████████—another third-party support

14 provider—yet did not prohibit, and in fact permitted, ████████████ from performing a number

15 of processes at issue here.   Specifically, █████████████████████████████████

16 █████████████████████████████████████████████████████████████████████

17 █████████████████████████████. X at 234:15–35:7, 235:25–36:6.  When Oracle

18 sued CedarCrestone in 2013, Oracle did not complain about the processes that Oracle now

19 claims are infringing, █████████████████████████████████████████████████

20 █████████████████████████████████████ *Id.* at 235:19–23.

21 Instead, Oracle focused on two practices not at issue here.

22            █████████████████████████████████████████████████████

23 ███████████████████████████████████████ *Id.* at 242:14–24; Ex. Y.

24 The settlement that Oracle agreed to either ignored or *expressly permitted* several practices that

25 Oracle alleges are infringing in this case.  Oracle did not enforce ██████████████████

26 █████████████████████████████████████████████████████████████████████

27 ██████████████████████████Ex. X at 248:5–25.  And in stark contrast to Oracle's

28 position here, █████████████████████████████████████████████████████████

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5 ████████████████████████████████████ Oracle's endorsement of these

6 practices precludes it from claiming that it is infringement for Rimini to engage in them.

7 **e.** Oracle is wrong that Rimini is collaterally estopped from asserting its consent and

8 implied license defense. Although Rimini asserted an implied license and consent defense in

9 *Rimini I*, that defense related to the claims and allegations at issue in that case. The issues

10 presented here are not "identical," and Rimini's precise theories have not "actually [been]

11 litigated." *See Littlejohn*, 321 F.3d at 923. ████ was not even at issue in *Rimini I*, and much of

12 the evidence and events underlying Rimini's defense had not even transpired during *Rimini I*.

13 Oracle is also wrong that it "necessarily revoked any implied license when it sued

14 Rimini in early 2010." ECF No. 888 at 12. Oracle filing a lawsuit against Rimini in 2010 for

15 certain conduct (Process 1.0) does not mean that Oracle can overcome this defense for all *future*

16 claims relating to *other* conduct (Process 2.0). In 2014, Rimini revised its support processes

17 and began engaging in the acts Oracle challenges here—after this Court's summary judgment

18 ruling in *Rimini I*, and well after Oracle sued Rimini in 2010. And at no point has Oracle ever

19 objected to any of its licensees' ████████████████████████████████

20 ████████████████████████████████████████████████ Oracle's

21 sudden change of heart is calculated solely to impede lawful competition from its largest

22 support services competitor. Oracle's motion should be denied.

23 **2.      Oracle's Claims Are Partially Barred by the Statute of Limitations**

24 The statute of limitations for copyright infringement claims is three years. 17 U.S.C.

25 § 507(b). A claim "accrues" either "when an infringing act occurs" (*Petrella*, 134 S. Ct. at

26 1969), or when the plaintiff "has knowledge of a violation or is chargeable with such

27 knowledge" (*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004)

28 (quotations omitted)). "Actual or constructive knowledge of facts giving rise to the alleged

infringement is sufficient; knowledge of the legal theory is not required." *Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 788 (C.D. Cal. 2011).  Knowledge of one infringing act triggers a "duty" to affirmatively monitor for and investigate other acts of infringement for all published works. *Fahmy*, 835 F. Supp. 2d at 790.  If a plaintiff "had sufficient information of possible wrongdoing to place [it] on inquiry notice or to excite storm warnings of culpable activity," then "the burden shifts to [plaintiff] to show that [it] exercised reasonable due diligence and yet [was] unable to discover [its] injuries." *William A. Graham Co. v Haughey*¸ 568 F.3d 425, 438 (3d Cir. 2009). Here, there is a triable issue of fact as to whether Oracle's counterclaims relating to Process 1.0 and EBS are barred by the statute of limitations.

**a.**  Oracle's theory is that Rimini's entire "*business model* … relied on extensive infringement of Oracle's copyrights" (*Rimini I*, ECF No. 747 at 4 (emphasis added)), that Rimini engaged in a "*single course of conduct*" (*Rimini I*, ECF No. 771 at 2), and that Rimini "*continued* its operations in an unabashed fashion" (*Rimini I*, ECF No. 747 at 3 (emphasis added)).  In *Rimini II*, Oracle has similarly claimed that Rimini's "business model" is based on "*continuous*[]" and "widespread illegal copying of Oracle's copyrighted software," and that "Rimini's 'new' model is fundamentally the same as the illegal business model at issue in *Rimini I*." ECF No. 399 at 4 (emphasis added).

Thus, Oracle's entire attack on Rimini is "one for 'continuous' infringement, but such a theory does not toll the statute of limitations." *Fahmy*, 835 F. Supp. 2d at 789.  Indeed, "in a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of suit," but the "copyright plaintiff ***cannot … reach back beyond the three-year limit*** and sue for damages or other relief for infringing acts that he knew about at the time but did not pursue." *Polar Bear Prods.*, 384 F.3d at 706 (emphasis added); *see also Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (copyright owner prohibited from recovering damages for infringement that occurred more than three years before filing suit because he claimed that defendants "continued to infringe his copyright," both before and after the three years preceding the filing of suit).

Even if each allegedly infringing act contained its own statute of limitations, Oracle was

on constructive notice in September 2011 that Rimini was engaging in acts that Oracle now claims are infringing.  The parties participated in extensive fact discovery through December 5, 2011, on the exact processes at issue here.  *See Rimini I*, ECF No. 161 at 9; *see also Enters. Int'l, Inc. v. Int'l Knife & Saw, Inc.*, 2014 WL 3700592, at *5 (W.D. Wash. July 24, 2014).  And while Oracle alleges that it had no information about Rimini's pre-February 2012 conduct (*see* ECF No. 888 at 13), Oracle had sufficient information about Rimini's business practices to trigger "a duty to investigate" whether Rimini had committed additional acts of infringement. *Fahmy*, 835 F. Supp. 2d at 790.  Oracle's failure to conduct an investigation does not mean it gets to assert its pre-February 2012 claims now; rather, it means that "equity will impute to [it] knowledge of facts that would have been revealed by reasonably required further investigation." *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983).

**b.**  Oracle asserts claims "going back to 2010" arising out of Rimini's support of EBS. ECF No. 888 at 12.  But by no later than November 2011, Oracle *knew* (i) of the acts giving rise to its copyright infringement claim relating to PeopleSoft, JD Edwards, and Siebel, and (ii) that Rimini supported EBS in a manner that followed its support of the other product lines.

On October 3, 2011, Rimini publicly announced the "launch and immediate availability of its support services for Oracle [EBS] licensees."  Ex. AA.  The press release stated that Rimini's "support program for Oracle E-Business Suite" "[f]ollow[s] the same successful model used in the design for each of its other product lines."  *Id.* █████████

████████████████████████████████████████

████████████████████████████████████  Ex. BB at 53:4–17.

Accordingly, by no later than November 2011, Oracle knew the facts supporting its infringement claims relating to the other product lines, and that Rimini's support of EBS followed the same model as those other product lines.  As a result, there is at the very least a question of fact as to whether Oracle had a duty to investigate whether Rimini engaged in any allegedly infringing acts when supporting EBS.  *See Garcia v. Coleman*, 2008 WL 4166854, at *7 (N.D. Cal. Sept. 8, 2008) (knowledge may be inferred where a plaintiff has special industry knowledge).  Oracle's failure to even investigate bars it from pursuing any claims relating to

1  EBS that accrued before February 17, 2012.  *See Fahmy*, 835 F. Supp. 2d at 790; *Kepner-*

2  *Tregore, Inc. v. Exec. Dev., Inc.*, 79 F. Supp. 2d 474, 488 (D.N.J. 1999).

3        Rimini has presented sufficient evidence to prove (or at the very least raise a triable

4  issue of fact concerning) its statute of limitations defense.  Oracle's motion should be denied.

5        **3.      Oracle's Delay in Bringing Suit Supports Rimini's Laches Defense**

6        "Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the

7  facts, acquiesces in a transaction and sleeps upon his rights."  *Danjaq LLC v. Sony Corp.*, 263

8  F.3d 942, 950–51 (9th Cir. 2001) (quotations omitted).  A laches defense will lie when the

9  plaintiff's delay in initiating the lawsuit is "unreasonable" and "prejudic[ial]" to the defendant.

10  *Id.* (quotations omitted); *see Petrella*, 134 S. Ct. at 1967.

11        Here, Oracle's unreasonable and prejudicial delay supports the application of laches.

12  As stated above, Oracle knew, or should have known, about the acts that it now complains

13  about.  Yet, Oracle stood by and waited to assert its counterclaims relating to the same acts at

14  issue in *Rimini I* until *just after* Rimini had invested countless resources revamping its entire

15  support model.  *Cf. Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006) ("A

16  defendant may establish prejudice by showing that during the delay, it invested money to

17  expand its business or entered into business transactions based on [its] presumed rights.");

18  *Cybergun, S.A. v. Jag Precision*, 2014 WL 7336074, at *2 (D. Nev. Dec. 19, 2014) ("Courts

19  have … found prejudice where the defendant continued its infringing business during plaintiff's

20  unreasonable delay, thus increasing potential infringement liability.") (citation omitted).

21        And while the Supreme Court held in *Petrella* that laches generally cannot be raised as

22  a defense to a copyright infringement claim where the claim was brought within the applicable

23  statute of limitations (134 S. Ct. at 1967), it also acknowledged that laches may still be invoked

24  in "extraordinary circumstances" *and* at the remedial stage even if liability is established.  *Id.*

25  at 1967; *see also*, *e.g.*, *Skidmore v. Led Zeppelin*, 2016 WL 1442461, at *7 (C.D. Cal. Apr. 8,

26  2016); *Fahmy v. Jay-Z*, 2014 WL 12558782, at *3 (C.D. Cal. July 21, 2014); *Lambert Corp. v.*

27  *LBJC Inc.*, 2014 WL 2737913, at *5 n.5 (C.D. Cal. June 16, 2014).  Because the injunctive

28  relief and infringer profits that Oracle seeks relating to Rimini's pre-February 2012 acts (*see*

ECF No. 21) may be barred by laches, Oracle's motion should be denied.

**4.      Oracle Is Equitably Estopped from Challenging Rimini's Processes**

Oracle should be equitably estopped from challenging Rimini's processes that Oracle has long known about and either declined to challenge or expressly approved.

Equitable estoppel has four elements:  "(1) that Oracle knew the facts of [Rimini's] infringing conduct; (2) that Oracle intended that its conduct be acted on or acted in such a way to suggest the same; (3) that [Rimini was] ignorant of the true facts; and (4) that [Rimini] relied on Oracle's conduct to [its] injury."  *Oracle Am., Inc. v. Terix Comp. Co.*, 2015 WL 1886968, at *3 (N.D. Cal. Apr. 24, 2015); *see also Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398 (C.D. Cal. 1990) (same).  Equitable estoppel "is usually a question of fact inappropriate for summary judgment."  *Intelligent Dig. Sys., LLC v. Beazley Ins. Co.*, 906 F. Supp. 2d 80, 95 (E.D.N.Y. 2012) (quotations omitted).

Here, Oracle has proclaimed that the provision of third-party support—which inherently "requires copying the software" (*Rimini I*, 879 F.3d at 956)—is permitted by its software licenses.  *See supra* at IV.B.1.a; *see also Oracle USA, Inc. v. Rimini St., Inc.*, No. 16-16832, Dkt. 50 (Answering Brief for Appellees Oracle USA, Inc. and Oracle Int'l Corp) at 29, filed Feb. 21, 2017 (9th Cir.) ("Nothing in Oracle's licenses prohibits Oracle's customers from using other products, or from using third parties to service Oracle's products.").  Yet, Oracle has refused Rimini's repeated requests to provide guidance on *how* it can provide such support services consistent with the customer licenses.  *See, e.g.*, *Rimini I*, ECF No. 959-3.

Oracle has been aware for nearly a decade of Rimini's acts that allegedly infringe Oracle's copyrights.  In *Rimini I*, Oracle claimed that Rimini's Process 1.0 infringed because it impermissibly "cross-used" and "locally hosted" Oracle's software.  *Rimini I*, 879 F.3d at 956, 959.  Relying on Oracle's repeated representations that third-party support can be performed under its licenses, ███████████████████████████████████████████████████████

██████████████████████████████████ Ex. A at 118:23–19:3; Ex. B at 110:11–25.  As Rimini changed its support processes, Oracle changed its liability theories.  Rather than use this lawsuit to determine whether Rimini's revised processes comply with this Court's rulings and the jury's

findings in *Rimini I*, Oracle has radically expanded its previous arguments as to what constitutes infringement. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

Because there is at least an issue of fact as to whether Oracle should be estopped from challenging processes it previously approved or did not object to, Oracle's motion should be denied. *See Intelligent Dig.*, 906 F. Supp. 2d at 94 ("equitable estoppel prevents one from denying his own expressed or implied admission which has in good faith been accepted and acted upon by another"); *Terix*, 2015 WL 1886968, at *4 (equitable estoppel appropriate where copyright holder knew of "allegedly infringing behavior," yet induced accused infringer to continue "to build its business").

### 5. Oracle Abandoned and Waived Its Right to Challenge Certain Processes

The abandonment and waiver defense bars a copyright infringement suit where the copyright holder displays "an intent … to surrender rights in his work." *Skidmore*, 2016 WL 1442461, at *5 (quotations omitted). Abandonment occurs when the copyright owner "clearly manifest[s]" an "intention through some affirmative act" to "surrender a copyright interest in his work." *Hadady Corp.*, 739 F. Supp. at 1398. "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Feature Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). The defense can bar part of a

Gibson, Dunn & Crutcher LLP

claim if, for example, a copyright holder abandons or waives *some* rights without relinquishing others.  *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998).

Here, Oracle's knowing and overt actions demonstrate that it has abandoned and waived its right to enforce the facilities restrictions in the PeopleSoft licenses in the way it seeks to do here.  As part of Rimini's transition to Process 2.0, ███████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████

Outside this litigation, Oracle has *never* claimed that PeopleSoft licensees may not use the cloud. ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

In direct contrast to its overt actions and statements in the marketplace, and the conduct of actual customers, Oracle now claims for the first time that ██████████████████████

██████████████████████████████████████████████████████████████████

████████████████████  But Oracle has abandoned and waived its right to claim that ████████

██████████████████████████████████  Oracle has not engaged in "mere 'passivity'" on this issue.  ECF No. 888 at 17 (quoting *Rosen v. Masterpiece Mktg. Grp., LLC*, 2016 WL 7444688, at \*13–14 (C.D. Cal. Nov. 29, 2016)).  Instead, Oracle has repeatedly, publicly, and

1   unambiguously condoned the very practice it now seeks to prohibit.  *See Terix*, 2015 WL

2   1886968, at *3 ("fail[ure] to take steps to prevent unauthorized downloads by third parties"

3   constitutes waiver).  At a minimum, Rimini has raised a triable issue of fact, foreclosing

4   summary judgment.  *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 992–93

5   (C.D. Cal. 2015) (abandonment is "a highly fact-specific inquiry").

6           **6.     Oracle Has Unclean Hands**

7           "To prevail on an unclean hands defense, a defendant in a copyright infringement action

8   must demonstrate that … the plaintiff's conduct is inequitable … [and] relates to the subject

9   matter of its claims."  *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1082 (N.D. Cal. 2007); *see also*

10  *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009) (noting unclean

11  hands serves as a defense to copyright infringement "when the plaintiff's transgression is of

12  serious proportions and relates directly to the subject matter of the infringement action").

13  Contrary to Oracle's attempt to cabin this Court's equitable discretion, courts have a "wide

14  range" of "discretion in refusing to aid the unclean litigant" and are "not bound by formula or

15  restrained by any limitation that tends to trammel the free and just exercise of discretion."

16  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945) (quotations

17  omitted); *see also Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997)

18  (recognizing that courts have "discretion" to apply the "equitable" defense of unclean hands).

19          The defense applies where the rights holder acts in "any fraudulent or deceitful manner."

20  *Bros. Records, Inc. v. Jardine*, 318 F.3d 900, 910 (9th Cir. 2003).  Courts also apply the defense

21  "when [the] plaintiff misused the process of the courts … *by misrepresenting the scope of his*

22  *copyright to the court and opposing party*."  *Dream Games*, 561 F.3d at 991 (emphasis added);

23  *see also Shloss*, 515 F. Supp. 2d at 1082 (unclean hands applies when copyright holder uses

24  copyright "to prohibit [the use of] noncopyrighted material and copyrighted material in which

25  [he] d[oes] not own or possess interest in the copyrights"); *Terix*, 2015 WL 1886968, at *5

26  (refusing to strike unclean hands defense where it was based on "Oracle's alleged anti-

27  competitive conduct," and the "conduct that Oracle seeks to curb is the very conduct that

28  [defendant] alleges should be permitted").

1    Here, Oracle has misrepresented the scope of its copyrights to this Court, Rimini, and

2 the public, all in an attempt to foreclose lawful competition in the software support market—

3 an area in which Oracle has no exclusive rights.

4    **a.**  Oracle has repeatedly and publicly stated that third-party support is permissible and,

5 in fact, invited because "competition makes you better."  *E.g.*, Ex. JJ at 918:17–18; *see supra*

6 at IV.B.1.   But Oracle has privately told customers that ██████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 ██████████████████████████████████  In this way, Oracle has sought to use its limited

10 copyright monopoly to bully and intimidate customers into avoiding Rimini.

11    **b.**   Oracle claims that ██████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████████████████████  Prohibiting the use of knowledge

17 has no basis in the Copyright Act, and violates the First Amendment.  *See Eldred v. Ashcroft*,

18 537 U.S. 186, 217 (2003) ("[C]opyright gives the holder no monopoly on any knowledge.").

19    **c.**  Oracle also condoned certain practices when performed by other third-party support

20 providers (which those providers then tout throughout their marketing, *see*, *e.g.*, IV.B.1), and

21 yet argues that those practices constitute infringement when performed by Rimini.  Oracle is

22 therefore intentionally releasing information about what is *permitted*, but then seeking to hold

23 Rimini liable when Rimini engages in that same conduct.

24    A reasonable jury could—and would—find that Oracle has unclean hands.

25 ### V.  CONCLUSION

26 Oracle's motion for partial summary judgment should be denied.

27

28

1    Dated:  November 16, 2018

2                                          GIBSON, DUNN & CRUTCHER LLP

3

4                                          By:   /s/ Jeffrey T. Thomas
                                                  Jeffrey T. Thomas

5
                                           *Attorneys for Plaintiff and Counterdefendant*
6                                          *Rimini Street, Inc., and Counterdefendant Seth*
                                           *Ravin*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused to be electronically uploaded a true and correct copy in Adobe "pdf" format of the above document to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system.  After the electronic filing of a document, service is deemed complete upon transmission of the Notice of Electronic Filing ("NEF") to the registered CM/ECF users.  All counsel of record are registered users.

DATED:  November 16, 2018

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Jeffrey T. Thomas
                    Jeffrey T. Thomas

*Attorneys for Plaintiff and Counterclaimant*
*Rimini Street, Inc. and Counterdefendant*
*Seth Ravin*

32

RIMINI STREET, INC.'S OPPOSITION TO ORACLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:14-CV-01699-LRH-CWH