\

1    BOIES, SCHILLER FLEXNER LLP
    RICHARD J. POCKER (NV Bar No. 3568)
2    300 South Fourth Street, Suite 800
    Las Vegas, NV 89101
3    Telephone:   702.382.7300
    Facsimile:    702.382.2755
4    rpocker@bsfllp.com

5    PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
6    WILLIAM A. ISAACSON (*pro hac vice*)
    KAREN DUNN (*pro hac vice*)
7    2001 K Street, NW
    Washington, DC 20006
8    Telephone:   202.223.7300
    Facsimile:    202.223.7420
9    wisaacson@paulweiss.com
    kdunn@paulweiss.com
10

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
SHARON R. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:   415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com
sharon.smith@morganlewis.com

DORIAN DALEY (*pro hac vice*)
JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:   650.506.4846
Facsimile:    650.506.7114
dorian.daley@oracle.com
jim.maroulis@oracle.com

11
*Attorneys for Plaintiffs and*
*Counterdefendants Oracle International*
12   *Corporation and Oracle America, Inc.*

13

14

15                    UNITED STATES DISTRICT COURT

16                          DISTRICT OF NEVADA

17   ORACLE INTERNATIONAL CORP., a
    California corporation, and ORACLE
18   AMERICA, INC., a Delaware corporation,

19                    Plaintiffs/Counterdefendants,
    v.
20

RIMINI STREET, INC., a Nevada corporation,
21   and SETH RAVIN, an individual,

22                    Defendants/Counterclaimants.

23

Case No.  2:14-cv-01699-MMD-DJA

**ORACLE INTERNATIONAL**
**CORPORATION AND ORACLE**
**AMERICA, INC.'S RESPONSE TO**
**RIMINI'S OMNIBUS PRE-TRIAL**
**MOTIONS IN LIMINE**

***PUBLIC REDACTED VERSION***

24

25

26

27

28

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................... 1

I.  MOTION NO. 1: MOTION TO EXCLUDE ALL TOMORROWNOW
    EVIDENCE .................................................................................................... 1

    A.  The TomorrowNow Evidence Is Admissible Under Rule 404(b) to Show
        Plans and Preparation ......................................................................... 3

    B.  TomorrowNow Evidence Is Admissible Under the Intrinsic Evidence Rule. ........ 3

    C.  The TomorrowNow Evidence Is Admissible Under Rule 402 to Prove
        Oracle's Lanham Act Claim .................................................................. 3

    D.  TomorrowNow Evidence Is Admissible for Impeachment Purposes ................... 4

    E.  The TomorrowNow Evidence Is Admissible to Rebut Any Evidence About
        Rimini or Ravin's State of Mind ............................................................ 5

    F.  Rule 402 and Rule 403 Do Not Bar the Admission of TomorrowNow
        Evidence ............................................................................................ 5

II.  MOTION NO. 2: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF
     RIMINI'S PAYMENT FOR CLIENT REFERENCES ............................................ 5

III. MOTION NO. 3: MOTION TO EXCLUDE CONTEMPT PROCEEDINGS ................ 8

    A.  Evidence from the Contempt Proceedings and the Court's Related Findings
        Are Relevant Under Rule 402 ................................................................ 9

    B.  The Probative Value of the Court's Findings and Related Evidence from
        the Contempt Proceedings Outweighs Any Potential Prejudice to Rimini .......... 11

IV.  MOTION NO. 4: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF
     RIMINI'S SPOLIATION OF EVIDENCE IN 2010 .............................................. 14

V.   MOTION NO. 5: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF
     RIMINI'S DEFICIENT ██████████████████ ............................................. 16

VI.  MOTION NO. 6: THE COURT SHOULD NOT EXCLUDE JUDGE HICKS'S
     HOLDINGS THAT ARE RELEVANT TO ORACLE'S CLAIMS. ............................ 18

VII. MOTION NO. 7: MOTION TO PRECLUDE USE OF EVIDENCE OF CHANGE
     IN PROCESSES TO ESTABLISH LIABILITY OR WILLFULNESS ........................ 22

VIII. MOTION NO. 8: MOTION TO PRECLUDE USE OF EVIDENCE FROM
      *RIMINI I* TO CONTRADICT THE *RIMINI I* SPECIAL VERDICT FINDINGS. ........ 25

    A.  The Court Should Deny Rimini's Motion to Preclude Willfulness Evidence
        from *Rimini I* as Moot ........................................................................ 25

    B.  If Rimini Opens the Door to State of Mind Evidence as to Process 2.0,
        Oracle Should be Permitted to Rebut and Impeach Witness Testimony
        Using Evidence of Willfulness .............................................................. 26

    C.  The Court Has Previously Ruled That Oracle May Argue for Lost Profits
        Damages Related to the "Gap Customers" ............................................... 27

IX.  MOTION NO. 9: THE COURT SHOULD NOT EXCLUDE HYPOTHETICAL
     QUESTIONS THAT ASSUME RIMINI HAS INFRINGED ................................... 28

X.   MOTION NO. 10: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF
     RIMINI'S SOFTWARE LIBRARY ................................................................... 30

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aircrash in Bali, Indonesia,*
    871 F.2d 812 (9th Cir. 1989) ................................................................. 23

*Atlanta Channel, Inc. v. Solomon,*
    2021 WL 4243383 (D.D.C. Sept. 17, 202) ......................................... 29

*Banks v. McIntosh Cnty., Georgia,*
    2022 WL 2758609 (S.D. Ga. July 14, 2022) ........................................ 7

*Barten v. State Farm Mut. Auto. Ins. Co.,*
    2015 WL 11111309 (D. Ariz. Apr. 8, 2015) ...................................... 21

*Cargill Inc. v. Progressive Dairy Sols., Inc.,*
    362 F. App'x 731 (9th Cir. 2010) ...................................................... 11

*Chaudhry v. Smith,*
    2020 WL 869115 (E.D. Cal. Feb. 21, 2020) ..................................... 12

*Chein v. Shumsky,*
    373 F.3d 978 (9th Cir. 2004) (en banc) ............................................ 22

*Clark Tech. LLC v. Corncob Inc.,*
    2019 WL 4279462 (E.D. Wis. Sept. 10, 2019) .................................. 7

*Conboy v. Wynn Las Vegas,*
    2013 WL 1701069 (D. Nev. Apr. 18, 2013) ................................... 6, 7

*Cooper v. Firestone Tire & Rubber Co.,*
    945 F.2d 1103 (9th Cir. 1991) ............................................................ 7

*Creswell v. HCAL Corp.,*
    2007 WL 628036 (S.D. Cal. Feb. 12, 2007) ................................ 12, 13

*Engquist v. Or. Dep't of Ag.,*
    478 F3d 985 (9th Cir. 2007) ........................................................ 12, 13

*Ensource Invs. LLC v. Willis,*
    2020 WL 532376 (S.D. Cal. Feb. 3, 2020) ................................... 20, 21

*Gilanian v. City of Boston,*
    431 F. Supp. 2d 172 (D. Mass. 2006) ................................................ 23

*Goff v. Washington Cnty.,*
    No. 03-268, 2005 WL 8165291 (D. Idaho Mar. 10, 2005) .................. 20

ii

*Grace v. Apple*,
    2020 WL 227404 (N.D. Cal. Jan. 15, 2020) ........................................................ 13

*Gray v. Golden Gate Nat'l Recreational Area*,
    866 F. Supp. 2d 1129 (N.D. Cal. 2011) ............................................................. 23

*Hamilton v. AVPM Corp.*,
    593 F. App'x 314 (5th Cir. 2014) ..................................................................... 29

*Ind. Ins. Co. v. Gen. Elec. Co.*,
    326 F. Supp. 2d 844 (N.D. Ohio 2004)............................................................. 24

*Jacobs v. Alexander*,
    2016 WL 4440957 (E.D. Cal. Aug. 22, 2016) .................................................... 7

*Johnson v. Cnty. of L.A.*,
    2007 WL 7269840 (C.D. Cal. Apr. 23, 2007) ................................................... 14

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
    2015 WL 12696109 (C.D. Cal. Nov. 5, 2015) ............................................. 12, 13

*Marez v. Bassett*,
    2011 WL 13213813 (C.D. Cal. Oct. 3, 2011) ................................................... 13

*McConnell v. Wal-Mart Stores, Inc.*,
    995 F. Supp. 2d. 1164 (D. Nev. 2014) .............................................................. 24

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) (Breyer, J., concurring) ................................................... 21

*Nipper v. Snipes*,
    7 F.3d 415 (4th Cir. 1993)................................................................................ 20

*Novick v. Shipcom Wireless, Inc.*,
    946 F.3d 735 (5th Cir. 2020)............................................................................ 23

*Okada v. Whitehead*,
    759 F. App'x 603 (9th Cir. 2019) (unpublished) ................................................. 7

*Olivier v. Exxon Mobil Corp.*,
    2022 WL 3010691 (M.D. La. July 29, 2022) .................................................... 23

*Oracle USA, Inc. v. Rimini St., Inc.*,
    2014 WL 5285963 (D. Nev. Oct. 14, 2014) ..................................................... 19

*Oracle USA, Inc. v. Rimini St., Inc.*,
    209 F. Supp. 3d 1200 (D. Nev. 2016) .............................................................. 19

*Oracle USA, Inc. v. Rimini St., Inc.*,
    6 F. Supp. 3d 1108 (D. Nev. 2014) ..................................................... 18, 21, 26

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Outley v. City of New York,*
    837 F.2d 587 (2d Cir. 1988) ........................................................................... 5

*Oyeniran v. Holder,*
    672 F.3d 800 (9th Cir. 2012) ........................................................................ 27

*In re Paoli R.R. Yard PCB Litig.,*
    916 F.2d 829 (3d Cir. 1990) ......................................................................... 15

*PBM Prods., LLC v. Mead Johnson & Co.,*
    639 F.3d 111 (4th Cir. 2011) ........................................................................ 16

*Polar Bear Prods., Inc. v. Timex Corp.,*
    384 F.3d 700 (9th Cir. 2004) ........................................................................ 21

*Rozier v. Ford Motor Co.,*
    573 F.2d 1332 (5th Cir. 1978) ...................................................................... 23

*Santa Maria City Firefighters Union v. City of Santa Maria,*
    2022 WL 2198707 (C.D. Cal. Feb. 9, 2022), *modified on reconsideration,*
    2022 WL 2200420 (C.D. Cal. May 9, 2022) ................................................ 20

*Schindler v. Seiler,*
    474 F.3d 1008 (7th Cir. 2007) ...................................................................... 20

*SEC v. Ambassador Advisors,*
    LLC, 2022 WL 2188145 (E.D. Pa. Feb. 28, 2022) ...................................... 29

*Smith v. Baker,*
    2012 WL 4468624 (D. Nev. Sept. 25, 2012) ............................................... 21

*Tom v. Martinez,*
    2004 WL 5794824 (S.D. Cal. Nov. 23, 2004) ............................................... 5

*U.S. v. Boulware,*
    384 F.3d 794 (9th Cir. 2004) .......................................................... 12, 13, 19

*Uber Techs., Inc. v. Doe,*
    2015 WL 1926291 (N.D. Cal. Apr. 27, 2015) .............................................. 21

*United States v. Abel,*
    469 U.S. 45 (1984) ........................................................................................ 20

*United States v. Anderson,*
    741 F.3d 938 (9th Cir. 2013) ........................................................................ 1, 7

*United States v. Balwani,*
    2022 WL 597040 (N.D. Cal. Feb. 28, 2022) ............................................... 23

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

*United States v. Barry*,
    2010 WL 11470165 (N.D. Ga. 2010) ................................................................. 5

*United States v. Cordero*,
    973 F.3d 603 (6th Cir. 2020) ....................................................................... 16

*United States v. Drebin*,
    557 F.2d 1316 (9th Cir. 1977) ..................................................................... 3

*United States v. Gay*,
    967 F.2d 322 (9th Cir. 1992) ....................................................................... 4

*United States v. Hansen*,
    2021 WL 2434561 (W.D. Wash. June 15, 2021) ................................................. 21

*United States v. Jackson*,
    84 F.3d 1154 (9th Cir. 1996) ....................................................................... 3

*United States v. Jones*,
    29 F.3d 1549 (11th Cir. 1994) ..................................................................... 20

*United States v. Kealoha*,
    2019 WL 2620004 (D. Haw. June 26, 2019) ..................................................... 13

*United States v. Lozano*,
    623 F.3d 1055 (9th Cir. 2010) ..................................................................... 5

*United States v. Mende*,
    43 F.3d 1298 (9th Cir. 1995) .................................................................. 5, 15

*United States v. Pafaite*,
    2022 WL 837489 (M.D. Pa. Mar. 21, 2022) ..................................................... 18

*United States v. Sanft*,
    2021 WL 5770292 (W.D. Wash. Dec. 6, 2021) ................................................. 29

*United States v. Sine*,
    493 F.3d 1021 (9th Cir. 2007) ............................................................ 20, 21, 22

*United States v. Slade*,
    2015 WL 4208634 (D. Alaska July 10, 2015) ........................................... *passim*

*United States v. Stinson*,
    647 F.3d 1196 (9th Cir. 2011) ..................................................................... 19

*Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*,
    2019 WL 2211897 (S.D. Cal. May 22, 2019) ............................................... 12, 13

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
    2010 WL 11505684 (C.D. Cal. Jan. 25, 2010) ................................................. 13

v

**Other Authorities**

Fed. R. Evid. 402 ................................................................................................ *passim*

Fed. R. Evid. 403 ................................................................................................ *passim*

Fed. R. Evid. 404 ................................................................................ 9, 16, 25, 30

Fed. R. Evid. 404(a)(3) ................................................................................ 4

Fed. R. Evid. 404(b) ................................................................................ 1, 3

Fed. R. Evid. 404(b)(2) ................................................................................ 16

Fed. R. Evid. 407 ................................................................................ 22, 23, 24

Fed. R. Evid. 607 ................................................................................ 26

Fed. R. Evid. 613(b) ................................................................................ 26

Fed. R. Evid. 701 ................................................................................ 29

Fed. R. Evid. 701(b) ................................................................................ 30

Fed. R. Evid. 801(c) ................................................................................ 20

Fed. R. Evid. 802 ................................................................................ 19, 25, 29

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1   Plaintiffs/Counterdefendants Oracle International Corporation, and Oracle America, Inc.

2   (together "Oracle"), submit the following response to Rimini Street, Inc. and Seth Ravin's (together

3   "Rimini") omnibus pre-trial motions *in limine*. Rimini's motions *in limine* should be denied.

4   **ARGUMENT**

5   **I.     MOTION NO. 1: MOTION TO EXCLUDE ALL TOMORROWNOW EVIDENCE**

6   This Court admitted the TomorrowNow evidence in the *Rimini I* trial. It is likewise

7   admissible here (1) under Rule 404(b) because it shows a continuing "preparation" and "plan" by

8   Mr. Ravin to violate Oracle's copyrights; (2) as intrinsic "evidence necessary to tell a clear and

9   coherent story" of Mr. Ravin's and Rimini's conduct from inception through this action, *United*

10  *States v. Slade*, 2015 WL 4208634, *1–2 (D. Alaska July 10, 2015) (citing *United States v.*

11  *Anderson*, 741 F.3d 938 (9th Cir. 2013); (3) under Rule 402 because it is directly relevant to

12  Oracle's Lanham Act claim that Rimini made false statements to Oracle's customers regarding the

13  differences between Rimini's support practices and the support practices of an adjudicated criminal

14  copyright infringer; (4) for purposes of impeachment; and (5) to rebut any suggestion that Rimini

15  did not intend to violate Oracle's copyrights.

16  In marketing materials to customers, Mr. Ravin stated that he designed TomorrowNow's

17  support processes and that they were substantially the same as Rimini's Process 1.0. The processes

18  Mr. Ravin designed resulted in TomorrowNow incurring extensive civil and criminal liability.[1] *See*

19  *Rimini I*, ECF Nos. 606-10, 606-31. "[TomorrowNow] made at least 6,189 Copies of Oracle's

20  PeopleSoft Software. Each such copy constituted an infringement" of Oracle's copyrights. *Rimini*

21  *I*, ECF No. 606-30, ¶ 16. TomorrowNow also pled guilty to criminal copyright infringement on

---

[1] Rimini asserts that the "criminal allegations against TomorrowNow refer to specific acts of infringement that occurred after Ravin had already left the company. Mot. at 3. The criminal information, however, alleges that "Beginning on an unknown date, *by no later than in or about March 2005*, and continuing to on or about October 12, 2008 . . . TOMORROWNOW, INC., through its employees and agents, did willfully . . . infringe the copyrights of copyrighted works, that is, Oracle software . . . ." *Rimini I*, ECF No. 560-8 at ¶ 6 (Reckers Decl., Ex. H (Information, United States v. TomorrowNow, Inc., N.D. Cal. Case No. 4:11-cr-00642-PJH, Dkt. 1)) at 4:5–12. Mr. Ravin left TomorrowNow in March 2005. Regardless of the exact date on which Mr. Ravin left TomorrowNow, by his own admission, he designed the TomorrowNow model of support that violated the criminal copyright laws. And there is no question that Oracle's civil case against TomorrowNow was also about the support processes that Mr. Ravin designed.

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1  September 14, 2011, admitting that "TomorrowNow was engaged in an effort to convince Oracle

2  customers . . . to terminate their use of Oracle's maintenance and support services. . . .  In order to

3  service some customers, TomorrowNow obtained copies of the Oracle software . . . .  One of the

4  ways that TomorrowNow obtained some of these materials was by downloading the materials from

5  Oracle websites." *Rimini I*, ECF No. 606-10 at 3.  And when TomorrowNow shuttered its door,

6  ████████████████████████████████████████████████████████████████████

7  ████████████████████████.  *Rimini I*, ECF No. 608 (Ex. 17, *Rimini I* Slepko Dep. at 73:7–17);

8  ECF No. 608 (Ex. 13, *Rimini I* Ravin 11/18/11 Dep. at 399:7–16).

9         Contrary to Rimini's mischaracterization of the *Rimini I* trial record, Mot. at 2, the Court

10  denied Rimini's motion in limine to exclude TomorrowNow evidence and admitted at the *Rimini I*

11  trial evidence of "the TomorrowNow history, as it relates to the defendant's mental state and

12  intention," *Rimini I*, ECF No. 794 (Tr. at 753:3–10), including evidence that TomorrowNow parent

13  SAP AG ("SAP") admitted wrongdoing by TomorrowNow in July of 2007, Declaration of

14  Benjamin P. Smith ("Smith Decl."), Ex. 1 (Oracle *Rimini I* Closing, Part 1) at 114, and that

15  TomorrowNow was shut down in October of 2008, Smith Decl., Ex. 2 (Oracle *Rimini I* Closing,

16  Part 2) at 59.  This Court initially admitted only evidence related to "[Mr. Ravin's] awareness of

17  the challenge to the process that was common between TomorrowNow and when he was there, and

18  what was being done in connection with this particular litigation," because Rimini successfully

19  argued that the TomorrowNow evidence would prejudice the jury as to whether Rimini likewise

20  infringed Oracle's copyrights.  *Rimini I* ECF No. 790 (Tr. at 402:20–405:23).  The Court expanded

21  the scope after "the TomorrowNow issue . . . was placed in front of the jury in the course of [Mr.

22  Ravin's] direct examination."  *Rimini I* ECF No. 794 (Tr. at 752:16–753:10).  Here, the evidence

23  is relevant even if Mr. Ravin does not put at issue his belief in the legitimacy of Process 2.0 because

24  he implemented the same infringing business model at both TomorrowNow and Rimini, and the

25  evidence is admissible to tell a clear and coherent story and demonstrate Mr. Ravin's plans and

26  preparation for infringing Oracle's copyrights.  It is also relevant to Oracle's Lanham Act claims

27  and Rimini's standard messaging to customers that TomorrowNow's processes are different from

28  Rimini's.  In addition, Mr. Ravin intends to testify that he has, *at all times*, respected Oracle's

1  intellectual property rights so the TomorrowNow evidence is admissible for that reason.  ECF No.

2  1309 at 19, ¶ 57.  Finally, Rimini has put *Rimini I* evidence, including the TomorrowNow evidence,

3  directly at issue, by arguing that "because of what was revealed during discovery in *Oracle I*, Oracle

4  was on notice that Rimini might be continuing to infringe Oracle's copyrights."  ECF No. 1253 at

5  32.  The Court's summary judgment order notes that "there is an issue of material fact as to what

6  claims Oracle knew or should have known about prior to February 17, 2012, that must be resolved

7  at trial."  *Id.* at 32, 34.  Thus, the TomorrowNow evidence should be admitted at trial for this reason

8  as well.

9  ### A.     The TomorrowNow Evidence Is Admissible Under Rule 404(b) to Show Plans and Preparation.

10  The Ninth Circuit has held that Rule 404(b) is a "rule of inclusion …[;] unless the evidence

11  of other crimes tends only to prove propensity, it is admissible."  *United States v. Jackson*, 84 F.3d

12  1154, 1159 (9th Cir. 1996) (citation omitted).  The intent behind the rule is not to "flatly prohibit

13  the introduction of such evidence but to limit the purpose for which it may be introduced."  *Id.*  The

14  TomorrowNow evidence is admissible to show the genesis of Ravin's continuing plan to violate

15  Oracle's copyrights. *Cf. United States v. Drebin*, 557 F.2d 1316 (9th Cir. 1977) (evidence "was

16  properly admitted as proof of a common plan or scheme").

17  ### B.     TomorrowNow Evidence Is Admissible Under the Intrinsic Evidence Rule.

18  Oracle will present a claim for damages from September 28, 2011, to July 31, 2014, for

19  infringement of Oracle's PeopleSoft copyrights in 47 PeopleSoft development environments—a

20  period that, under this Court's order, was not adjudicated in *Rimini I,* but for which liability was

21  established by the *Rimini I* verdict.  ECF No. 1253 at 22.  The TomorrowNow evidence is essential

22  to "tell[ing] a clear and coherent story," of Ravin's development of an illegal support process at

23  TomorrowNow, his wholesale transference of that process to Rimini, his recruiting former

24  TomorrowNow customers to purchase Rimini Street's services, and the *Rimini I* jury finding that

25  Rimini's Process 1.0 was illegal.  *Slade*, 2015 WL 4208634, *1–2.

26  ### C.     The TomorrowNow Evidence Is Admissible Under Rule 402 to Prove Oracle's Lanham Act Claim.

27

28  The TomorrowNow evidence is admissible under Rule 402 because the evidence is directly

3

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

relevant to Oracle's Lanham Act claim.   Because of the close ties between Rimini and TomorrowNow and the publicity around TomorrowNow's civil and criminal liability, Rimini frequently faced questions from prospective customers about the differences between Rimini and TomorrowNow.   Before TomorrowNow pled guilty, Ravin touted Rimini's services are being identical to TomorrowNow's.   After the guilty plea, Rimini created a document titled, "██████████ ████████████████████████," Rimini provided the following talking point to its sales team under the heading, "████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████" Smith Decl., Ex. 3 (P-0637 (RSI2_000122710) at 41).[2]   These statements are false and they violate the Lanham Act, as Oracle has alleged throughout the litigation.   Smith Decl., Ex. 14 (Oracle's Responses to 6th Set of Interrogatories at 15:25–16:1).   Along with the other false statements that Rimini made to Oracle's customers that resulted in those customers' terminating their Oracle support contracts and seeking support from Rimini, these false statements serve as the basis for Oracle's $1.3 billion Lanham Act claim in this case.   The TomorrowNow evidence is central to proving (1) that Rimini's statements to customers differentiating its support model from TomorrowNow's were false and (2) the statements were crucial to Rimini's efforts to win Oracle's customers by distinguishing Rimini from its CEO's prior company and that company's very public criminal copyright infringement.

**D.**     **TomorrowNow Evidence Is Admissible for Impeachment Purposes.**

Mr. Ravin intends to testify at trial that "at all times," he "has intended to respect, and has respected, Oracle's intellectual property rights."   ECF No. 1309 at 19, ¶ 57.   The TomorrowNow evidence is admissible for impeachment.   Fed. R. Evid. 404(a)(3); *United States v. Gay*, 967 F.2d

---

[2] This statement ████████████████ was part of Rimini's ██████████████████████. According to Rimini's Chief Marketing Officer, ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ Smith Decl., Ex. 4 (Rowe Dep. 128:18-129:18).

4

322, 328 (9th Cir. 1992); *Outley v. City of New York*, 837 F.2d 587, 593 (2d Cir. 1988).

**E.      The TomorrowNow Evidence Is Admissible to Rebut Any Evidence About Rimini or Ravin's State of Mind.**

Oracle maintains that Rimini and Mr. Ravin's state of mind are not relevant to Oracle's copyright infringement claims, but to the extent that Rimini or Mr. Ravin present evidence of their state of mind, the TomorrowNow evidence is admissible to rebut that testimony, and to show Mr. Ravin's knowledge of and intent to infringe Oracle copyrights. *See, e.g.*, *United States v. Barry*, 2010 WL 11470165, at *4 (N.D. Ga. 2010) (admitting prior bad acts).

**F.      Rule 402 and Rule 403 Do Not Bar the Admission of TomorrowNow Evidence.**

Rimini seeks exclusion of the TomorrowNow evidence under Rule 402 and 403.  But this evidence is relevant, and Rule 403 is "an extraordinary remedy to be used sparingly ... Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it."  *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (citation omitted); *Tom v. Martinez*, 2004 WL 5794824, at *1 (S.D. Cal. Nov. 23, 2004). Because of its probative value to key issues, the Court should admit the TomorrowNow evidence, particularly because any concerns of prejudice can be mitigated through appropriate limiting instructions. *See United States v. Lozano*, 623 F.3d 1055, 1060 (9th Cir. 2010).

**II.      MOTION NO. 2: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF RIMINI'S PAYMENT FOR CLIENT REFERENCES**

Oracle should not be precluded from presenting evidence that Rimini paid for client references, including those made by ███████████████████—Rimini's first purported "customer."  Mot. at 5.  Oracle presented evidence of ████ practices in the *Rimini I* trial, and that information is also relevant here.  First, this evidence is relevant to Ravin's credibility, as his dealings with ██████ and other references demonstrate a willingness to mislead customers. Second, as to Oracle's Lanham Act claims:  (a) when Rimini uses customer references that it has paid for without disclosing that the reference was paid, it is deceiving customers; and (b) references to ████ and its then-owner ████████ involvement are relevant to provide full factual context for Oracle's claim that Rimini falsely advertises itself and its services.  Finally, the evidence is relevant

5

1   to damages because if Rimini wins a client by violating Oracle's copyrights and false statements to

2   customers, and that customer becomes a reference, the damage from Rimini's illegal conduct is

3   compounded when that customer entices others to buy Rimini's services.  Rimini has an organized

4   program to sign new customers through the use of references, and credits referrals for customers it

5   wins.  Smith Decl., Ex. 5 (P-2069 at 25).

6   ████ is a marketing services company that Rimini claimed was its "first customer."  ECF

7   No. 1384-8 at 85.  ████ and Rimini arranged a relationship where Rimini paid ████ for "marketing

8   services," entered into a service contract with ████ ostensibly to maintain Siebel software, and then

9   presented ████ as a reference customer to attract others.  *Id.* ████ never implemented Siebel

10  software, and any services that Rimini actually provided ████ were minimal.  *Id.*; *see also Rimini*

11  *I*, ECF No. 790 (Tr. at 355:16-19).  ████ the ██████████, had known Ravin since the

12  third grade, and he is now employed by Rimini.  *Rimini I*, ECF No. 790 (Tr. at 340:15–17, 361:7–

13  13).

14  Rimini's practice of "buying" customers did not end with ████.  Rimini secured the ████

15  ██████████████—through a significant discount in exchange for

16  future customer references.  ECF No. 1384-8 at 87.  In 2016, Rimini was offering ████████

17  ████ to customers if they would serve as a reference.  *Id.* at 87–88, n. 217–19.  Rimini also

18  traded free ████████ for customer references.  *Id.*

19  **Rule 402**.  Rimini's tactics to procure its first "customers"—particularly ████—are relevant

20  in multiple ways.  First, this evidence is relevant because it is "evidence necessary to tell a clear

21  and coherent story" of Ravin's and Rimini's conduct from inception through this fiction, and to

22  provide context for Oracle's current Lanham Act claims.  *United States v. Slade*, 2015 WL

23  4208634, at *1–2 (D. Alaska July 10, 2015).  Second, paid and fraudulent references used with

24  customers constitute material misstatements under Oracle's Lanham Act claims.  Third, evidence

25  on these subjects is also relevant to Ravin's credibility because his past conduct with ████

26  implicates his trustworthiness.  *See Conboy v. Wynn Las Vegas*, 2013 WL 1701069, at *2 (D. Nev.

27  Apr. 18, 2013) (admitting evidence that was "relevant to plaintiff's credibility as a witness").

28  In the analogous context of a prosecutor's ability to admit evidence of acts beyond those

6

1    that are "intrinsic" to the crime charged, courts in the Ninth Circuit have admitted "circumstantial

2    evidence explaining the general nature of a defendant's business activity" to "provid[e] a context

3    in which the transactions at issue took place" and give the jury a "clear and comprehensible"

4    account of events. *United States v. Anderson*, 741 F.3d 938, 949–50 (9th Cir. 2013) (admitted

5    evidence of the defendant's business practices in a criminal copyright case because "the larger and

6    more sophisticated his operation was, the more likely it was that he knew what he was doing was

7    illegal"); *see also Slade*, 2015 WL 4208634, at *2. Rimini's habit of misleading customers helps

8    demonstrate the extent of its lack of forthrightness and provides the full context of its operations.[3]

9       This evidence is also relevant to Ravin's credibility. Courts routinely admit evidence when

10    it undermines the credibility of a witness. *See Wynn Las Vegas, LLC*, 2013 WL 1701069, at *2;

11    *see also Cooper v. Firestone Tire & Rubber Co*., 945 F.2d 1103, 1105 (9th Cir. 1991) ("The

12    evidence of other accidents, whether similar or not, tends to show the witness's claims of product

13    safety are overstated and the witness therefore may not be reliable.")*; Okada v. Whitehead*, 759 F.

14    App'x 603, 605 (9th Cir. 2019) (unpublished) (admitting evidence for the independent reason that

15    it was "were highly relevant to [the defendant's] credibility as a witness."). Courts have concluded

16    that evidence is relevant to a witness' credibility if it would tend to call into question the honesty

17    or reliability of the witness. *See Whitehead*, 759 F. App'x at 605; *Cooper*. 945 F.2d 1103 at 1105.

18    The jury could find evidence concerning Rimini's early customer referrals highly relevant to

19    Ravin's honesty and reliability as a witness—particularly Ravin's dealings with ██████.

20      **Rule 403.** The probative value of this evidence is not outweighed by any substantial

21    prejudice to Rimini, potential to waste time, or potential to confuse the jury under Rule 403.

---

[3] The cases Rimini cites are inapposite. Unlike in *Jacobs v. Alexander*, 2016 WL 4440957, at *9 (E.D. Cal. Aug. 22, 2016), where the court granted an unopposed motion *in limine*, the evidence Rimini seeks to exclude is not relevant only to "previously dismissed claims," but also to Oracle's Lanham Act claim and the history of the parties' dispute. *Banks v. McIntosh Cnty., Georgia*, 2022 WL 2758609, at *8 (S.D. Ga. July 14, 2022) involved the very different legal question whether a previous zoning ordinance that the court described was a proper "historical fact" under the Supreme Court's test for including evidence of past discrimination. Finally, *Clark Tech. LLC v. Corncob Inc.,* 2019 WL 4279462, at *11 (E.D. Wis. Sept. 10, 2019) has nothing to do about what evidence may be relevant to a Lanham Act claim; there the plaintiffs for the first time on summary judgment attempted to argue that the defendants had violated the Lanham Act "on an entirely different alleged misrepresentation."

7

1   Rimini's arguments that the evidence is too "old" because it occurred 15–17 years ago and did not

2   involve Oracle present no barrier to admission.  The conduct at issue is not from a random time in

3   the past, but rather the very beginning of Rimini's operations, as such it provides a clear picture to

4   the jury of what Rimini has been doing since it engaged its first "customer."  Additionally, the

5   conduct may not directly involve Oracle, but it involves Rimini's customers and Rimini's

6   relationship with its customers, which is at the heart of Oracle's Lanham Act claim.  In any event,

7   Rimini's objections are arguments it can make to the jury.

8   **III.    MOTION NO. 3: MOTION TO EXCLUDE CONTEMPT PROCEEDINGS**

9        The Court should reject Rimini's attempt to exclude (1) evidence from the contempt

10   proceedings arising out of *Rimini I*, including materials produced after the close of discovery in

11   *Rimini II*; (2) exhibits, trial testimony, deposition testimony, expert opinions from the contempt

12   proceedings; and (3) evidence and argument about Judge Hicks's Order finding Rimini in contempt

13   of the Permanent Injunction.  Rimini claims that the "contempt proceedings are irrelevant to *Rimini*

14   *II* because they involve conduct that occurred after the conduct being adjudicated in this litigation,"

15   which Rimini claims "is not relevant to the distinct claims, issues, and evidence set for adjudication

16   in *Rimini II*."  Mot. at 7, 8.  Rimini's central defense in this case is that it implemented a "Process

17   2.0" in July 2014 and has respected Oracle's copyrights and license agreements since that time.

18   ECF No. 1309 at 2, 4.  Judge Hicks's contempt findings show that Rimini's claims are false, as

19   Rimini infringed Oracle's copyrights and violated its licenses terms in 2019 and 2020.

20        Unable to dispute the fact Rimini continued its improper conduct years after it implemented

21   its purported "Process 2.0," Rimini once again argues that this case is hermetically sealed off from

22   *Rimini I*.  Judge Hicks already rejected this argument: "there is no separate and delineated line

23   between [*Rimini I*] and [*Rimini II*] based solely on Process 1.0 and 2.0," and that "the permanent

24   injunction does not just enjoin Process 1.0," but instead enjoins conduct that has been adjudicated

25   infringing.  *Rimini I*, ECF No. 1459 at 10–11.  Further, all evidence from *Rimini I* is part of the

26   record in this case.  ECF No. 95.  The "claims, issues, and evidence" to be presented at trial are

27   accordingly *not* distinct from the conduct adjudicated and enjoined in *Rimini I*, as Rimini claims,

28   Mot. at 8, and certainly are not distinct from the conduct adjudicated in the contempt proceedings.

After the contempt hearing, this Court found, based on the evidence that Rimini now seeks to exclude, that Rimini's conduct consistent with its Process 2.0 support processes, infringed Oracle's copyrights and violated the Permanent Injunction. Evidence and argument about these findings, and the underlying documents, expert reports, and testimony, is relevant and admissible.

### A. Evidence from the Contempt Proceedings and the Court's Related Findings Are Relevant Under Rule 402.

The evidence from the contempt proceedings and the Court's related findings are relevant and admissible for reasons that have nothing to do with Rimini's willfulness or Rimini's or Ravin's habit and character. ECF No. 1378 at 24–26.[4]

**First**, the contempt findings and underlying documentary and testimonial record prove the falsity of Rimini's statements to Oracle customers, which are at issue in Oracle's Lanham Act claims against Rimini. ECF No. 1378 at 24. After this Court ruled on summary judgment in *Rimini I* that local hosting and cross-use constituted infringement of Oracle's copyrights, Rimini told customers that "the Court's rulings relate to processes and software no longer in use at Rimini Street." *E.g.*, Smith Decl., Ex. 6 (P-8074 (TOLLBROS2-SUB00000447)). Rimini's revised "Process 2.0" support processes were in place both throughout the *Rimini II* time period and during the time period at issue in the contempt proceedings. The evidence and findings from the contempt proceedings show that, under Process 2.0, Rimini continued to host Oracle copyrighted material on its systems and continued to cross-use customer environments. Accordingly, the evidence and findings Rimini moves to exclude are probative of Oracle's Lanham Act claims because they directly contradict Rimini's statements to customers, proving they were false.

Documents produced in the contempt proceedings after the close of discovery in *Rimini II* show Rimini's statements were demonstrably false because they prove that even under Rimini's revised processes, Rimini continued to host Oracle copyrighted material on its systems,[5] and

---

[4] Given that Oracle does not intend to introduce the contempt evidence and arguments about the Court's findings as propensity evidence, the Court need not consider Rimini's argument that this evidence is inadmissible under Rule 404. Mot. at 10-11.

[5] *See, e.g.*, *Rimini I*, ECF No. 1535 (Tr. at 141:4–146:21, 147:22–148:19, 149:1–152:11, 152:25–162:1); ECF No. 1536 (Tr. at 373:17–374:6); ECF No. 1538 (Tr. at 719:10–721:7); ECF No. 1538 (Tr. at 717:13–717:9, 831:20–832:15, 833:1–838:2) (*Rimini I* contempt trial testimony discussing OREX_0013, OREX_0004, DTX-0110, OREX_0094, OREX_0096, OREX_0097).

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

continued to cross-use customer environments.[6]  Moreover, Rimini executives provided testimony during the contempt proceedings providing further support for these facts.  *E.g.*, *Rimini I*, ECF No. 1538 at 835:6–11 ("We should not have Oracle files on our system, and this was a case where the client clearly sent us one file that contained stored procedures for a program."); *id.* at 807:2–808:10.  Moreover, this Court, relying on the documents produced after the close of discovery in *Rimini II* and on Rimini executives' testimony, found that Rimini continued to host Oracle copyrighted material on its systems under Rimini's revised Process 2.0 support processes, *Rimini I*, ECF No. 1548 at 7–15 (finding Rimini customers sent Rimini Oracle copyrighted PeopleSoft files, and Rimini stored them on its systems), and that Rimini continued to engage in cross-use, *e.g.*, *id.* at 23–26 ("Rimini cross used City of Eugene's development environment to support other clients").

**Second**, the findings and underlying evidence from the contempt proceedings are relevant to rebut Rimini's assertions that its revised Process 2.0 support processes and "Acceptable Use Policies" ("AUP") prevent continued infringement of Oracle's copyrights.  Rimini says that it intends to show that, since July 2014, its Process 2.0 and support procedures prevent cross-use.  ECF No. 1309 at 17–19.  Documents produced in the contempt proceedings, after the close of discovery in *Rimini II*, directly contradict the facts Rimini intends to prove at trial as to how its revised processes purportedly prevent infringement.[7]  Additionally, Rimini witnesses provided testimony during the contempt proceedings that confirm Rimini's revised Process 2.0 support processes did not prevent infringement.  *E.g.*, *Rimini I*, ECF No. 1538 at 715:7–19, 717:1–3, 831:20–832:15.  Several of the Court's findings provide additional probative evidence demonstrating that Rimini's Process 2.0 still results in cross-use, and Rimini has violated its own

---

[6] *See, e.g.*, *Rimini I*, ECF No. 1536 (Tr. at 261:3–267:22, 269:10–270:2, 275:21–284:22); ECF No. 1538 (Tr. at 639:3–647:12, 653:12–656:5, 737:15–738:17, 769:20–775:15, 785:10–789:10, 797:11–799:19, 805:2–807:18, 812:15–21); ECF No. 1539 (Tr. at 997:17–999:18, 1001:18–1005:18, 1005:19–1008:14, 1050:23–1055:24, 1061:7–1068:1); ECF No. 1543 (Tr. at 1365:1–1366:24, 1371:25–1374:25) (*Rimini I* contempt trial testimony discussing OREX_0021, DTX-401, OREX_0028, OREX_0022, OREX_0084, OREX_0027, DTX-0302).

[7] *See, e.g.*, *Rimini I*, ECF No. 1535 (Tr. at 124:23–128:13, 168:15–172:6); ECF No. 1536 (Tr. at 362:17–363:4) ECF No. 1538 (Tr. at 724:13–729:14, 757:18–760:3); ECF No. 1542 (Tr. at 1232:19–1236:25) (*Rimini I* contempt trial testimony discussing OREX_0017, OREX_0100); *see also* n. 5 and 6, *supra* (*Rimini I* contempt trial testimony discussing OREX_0096, OREX_0021, DTX-0401, OREX_0028, OREX_0022, OREX_0084, OREX_0027, DTX-0302).

10

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

AUP on multiple occasions. *Rimini I*, ECF No. 1548 at 7–15, 25–26, 29–30.

**Third**, to the extent that Rimini puts its state of mind at issue for the period of July 2014 and after, the evidence from the contempt proceedings is relevant to rebut any suggestion by Rimini that it did not intend to violate Oracle's copyrights. That evidence shows that Rimini's continuing infringement of Oracle's copyrights—under its revised Process 2.0 support processes, which were in place throughout both the *Rimini II* time period and the time period at issue during the contempt proceedings—was *not* "the result of a good faith and reasonable interpretation of the Permanent Injunction," but instead, was "willful." *Rimini I*, ECF No. 1548 at 17, 19, 26, 30, 49.

**Fourth**, Rimini plans to argue that J.D. Edwards ("JDE") software source code in JDE licenses refers only to what Rimini calls the software's "closed code," ECF No. 1309 at 59, which is not human readable and which Rimini cannot as a practical matter use or access. Rimini witnesses admitted at the contempt hearing that it provides JDE support by copying what Rimini calls "open code," which is human readable and which Rimini can access, modify, and copy, and argued that open code was not source code that may not be copied under JDE licenses. (Rimini created the terms "open code" and "closed code," and Rimini's own expert witness admitted that the phrases and their definitions were provided by counsel. Smith Decl., Ex. 7 (*Rimini I*, Astrachan Depo. at 245:13–17, 248:9–249:9). The Court rejected Rimini's contentions and made the legal determination that source code refers to open code. *Rimini I*, ECF No. 1548 at 41–42. Documents produced in the contempt proceedings and related testimony from a Rimini executive show that Rimini adopted a narrow definition of source code that violates Oracle copyrights. Rimini adopted this stance after admitting in earlier documents that source code includes open code. *E.g.*, Smith Decl., Ex. 8 (OREX_1340); *Rimini I*, ECF No. 1542 at 1215:10–1218:13.

**B.    The Probative Value of the Court's Findings and Related Evidence from the Contempt Proceedings Outweighs Any Potential Prejudice to Rimini.**

The contempt evidence and findings are highly probative of issues to be determined at trial—*see supra* § A—and thus may be admitted notwithstanding some potential prejudice. *E.g.*, *Cargill Inc. v. Progressive Dairy Sols., Inc.*, 362 F. App'x 731, 733 (9th Cir. 2010) (it is permissible to allow jury to consider testimony describing existence and nature of other lawsuits where relevant

11

to claims at issue); *Kaneka Corp. v. SKC Kolon PI, Inc.*, 2015 WL 12696109, at *8 (C.D. Cal. Nov. 5, 2015) (admitting administrative proceeding findings regarding patent validity as relevant evidence of defendant's good faith belief its products were not infringing and as relevant to Lanham Act claims asserting defendant's statements to customers were false and misleading); *Creswell v. HCAL Corp.*, 2007 WL 628036, at *7 (S.D. Cal. Feb. 12, 2007) (admitting evidence of other lawsuits to contradict claim and undermine credibility). Here, the probative value of the evidence is not outweighed by any potential prejudice. Fed. R. Evid. 403.

Rimini relies primarily on *Engquist v. Or. Dep't of Ag.*, 478 F3d 985 (9th Cir. 2007), in support of its contention that the contempt evidence and findings are "highly prejudicial" because jurors are likely to give the order more weight than it warrants. Mot. at 9. *Engquist* acknowledges that there are instances in which a prior judgment is admissible under Rule 403 balancing. *Id.* at 1010 (citing *U.S. v. Boulware*, 384 F.3d 794, 808 (9th Cir. 2004)). In *Boulware*, the Ninth Circuit reversed the district court's conviction where it improperly excluded a prior judgment in a related case. The Ninth Circuit acknowledged that the judgment "did not have preclusive effect," but found that the probative value of the judgment outweighed any potential prejudice under Rule 403 because it "directly contradicted the government's theory of the case," and "[a]ny danger that the jury would have given undue weight" to the judgment "could have been dealt with by a cautionary instruction." *Id.* at 808; *see also Chaudhry v. Smith*, 2020 WL 869115, at *4 (E.D. Cal. Feb. 21, 2020) (distinguishing *Engquist,* stating "there are instances where a prior case, including the verdict or damages, are relevant and admissible"). Under *Enguist*, the fact that Rimini was held in contempt is properly before the jury as it contradicts Rimini's theory of the case—that it has respected Oracle's intellectual property since 2014. Further, the Courts specific factual findings that do not use the term "contempt" show that Rimini violated both Oracle's copyrights and Rimini's policies. *Engquist* also does not support Rimini's contention that documents produced during the contempt proceedings and testimony from Rimini witnesses, which is highly probative of facts at issue in *Rimini II*, are prejudicial. *Engquist*, 478 F.3d at 1010.[8]

---

[8] Rimini's other cited cases also are inapposite. In *Whitewater W. Indus., Ltd. v. Pac. Surf Designs, Inc.*, 2019 WL 2211897, at *4-5 (S.D. Cal. May 22, 2019), although the court excluded evidence relating to a case that had been dismissed without prejudice in light of a settlement, the

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

Nor does the fact that the contempt judgment is currently pending on appeal eliminate the probative value of the contempt findings or affect the probative value of Rimini's produced documents and proffered testimony.  Mot. at 9 (relying on *Grace v. Apple*, 2020 WL 227404, at *3 (N.D. Cal. Jan. 15, 2020)).  In *Grace*, the primary factor guiding the court's balancing analysis under Rule 403 was that the evidence and testimony regarding the verdict plaintiffs sought to introduce was being offered only as "background information" and therefore was "of minimum probative value."  *Id.* at *2.  Other cases demonstrate that the lack of finality of a proceeding does not destroy the probative value of evidence relating to it where the evidence is relevant to contradict a party's claim.  *E.g.*, *Creswell*, 2007 WL 628036, at *7 (denying motion *in limine* to exclude evidence of pending lawsuit because probative value of the pending lawsuit was not substantially outweighed by the danger of prejudice or possible confusion of the jury); *Kaneka Corp.*, 2015 WL 12696109, at *8 (denying motion *in limine* regarding prior and pending administrative proceedings where defendant would not be prejudiced by introduction of the evidence "because the Court will instruct the jury that the Commission's findings are not binding on their decision").

Like in *Boulware*, the findings and evidence of Rimini's contempt "directly contradict" Rimini's claims that its revised Process 2.0 support processes prevent infringement of Oracle's copyrights.  This evidence is highly probative of Rimini's liability, and any potential prejudice can be "dealt with by a cautionary jury instruction."  *Id.*  Contrary to Rimini's suggestion that introduction of the contempt findings and related evidence would waste time, they will aid the jury in reaching its determination.  *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *27 (C.D. Cal. Jan. 25, 2010) (evidence from separate case not unfairly prejudicial or confusing where the allegations in the two cases mirrored each other "so a jury likely could understand them

---

court declined to exclude argument, testimony, or evidence relating to separate case that arose from the same "common factual nucleus of operative fact" as case being tried.  Here, the contempt evidence is more similar to the evidence that was the subject of the motion in limine that was denied in *Whitewater*; that case therefore weighs in favor of denying Rimini's motion.  In *Marez v. Bassett*, 2011 WL 13213813, at *3 (C.D. Cal. Oct. 3, 2011), the prior verdicts were being offered for an improper propensity purpose; here, the contempt evidence is offered for three reasons that have nothing to do with Rimini's or Ravin's propensity to behave a certain way.  *United States v. Kealoha*, 2019 WL 2620004, at *5-6 (D. Haw. June 26, 2019), is inapposite because it relies on *Engquist* and *Marez*, and likewise fails to support Rimini's argument.

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

without the parties spending an inordinate amount of extra time hearing evidence or testimony on the issue"); *Johnson v. Cnty. of L.A.*, 2007 WL 7269840, at *4 (C.D. Cal. Apr. 23, 2007) (denying motion to exclude prior ruling because jury may be informed "that the same conclusion they are being asked to reach has been reached by another court").

## IV.   MOTION NO. 4: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF RIMINI'S SPOLIATION OF EVIDENCE IN 2010

Rimini hopes to prohibit Oracle from introducing evidence of Rimini's destruction of a software library containing Oracle copyrighted materials and files in 2010, which the Court deemed spoliation in *Rimini I*.  Rimini contends the established spoliation is irrelevant, and unduly prejudicial, character evidence.  Mot. at 11–13.  But Oracle does not seek to introduce this evidence to suggest any propensity to spoliate.  Oracle seeks to introduce this evidence to (1) challenge the credibility of Rimini's contention that it does not presently and improperly maintain *another* software library of copyrighted Oracle materials; and (2) provide a complete picture of Rimini's deliberately ██████████████████████.

In the *Rimini I* complaint, Oracle alleged that Rimini maintained a library of Oracle copyrighted software on Rimini's systems.  *Rimini I,* ECF No. 1 ¶ 50.  Rather than a simple denial, Rimini's answer contained a lengthy discussion of Oracle's allegations, including an affirmative statement that "[s]uch a 'library' never existed."  *Rimini I,* ECF No. 30 ¶¶ 31–36.  In fact, the software library did exist; Rimini destroyed it shortly before *Rimini I* was filed; Rimini lied about destroying it; and this Court sanctioned Rimini for spoliation.  *Rimini I*, ECF No. 466 at 16–18.

Rimini unsuccessfully moved *in limine* to exclude evidence of the spoliation of the library in *Rimini I*.  *Rimini I*, ECF No. 721 at 8.  Based on the prejudice that the spoliation could cause Oracle at trial, the Court explained to the jury that "Rimini Street has a location on its computer systems that some employees refer to as the 'software library,'" and that "Rimini breached its duty to preserve relevant evidence when it deleted certain material in the software library in January 2010."  (Tr. at *Rimini I*, ECF No. 881, at 35.  The Court instructed the jury that it may but was not required "to infer that the deleted material included evidence that was favorable to Oracle's claims and unfavorable to Rimini Street's defenses in this case."  *Id.*

14

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

The parties dispute whether Rimini maintains an additional software library containing Oracle copyrighted materials.  While Oracle will provide evidence that Rimini improperly created and maintains ███████████████████████████████████████, Rimini's expert contends that "███████████████████████████████████████" and that Oracle's contentions to the contrary are "███████."  ECF. No. 1384-1 (Cauthen Rebuttal Report) ¶¶ 134–55; ECF No. 1384-3 (Frederiksen-Cross Report) ¶¶ 415–27; ECF No. 1384-4 (Frederiksen-Cross Rebuttal Report) ¶ 148; Smith Decl., Ex. 9 (Astrachan Rebuttal Report) ¶¶ 456, 506–515. The parties also dispute Rimini's ████████████████████████████████ ████████████████ in decades of software development and forensic work.  ECF No. 1384-3 ¶ 70.

**Rule 402.**  Evidence of Rimini's prior maintenance of a software library is relevant to Oracle's Lanham Act claim.  Evidence concerning the prior software library is also relevant to rebut the false contention that software libraries do not exist on Rimini systems, and to present the jury with a "clear and coherent story" of Rimini's ongoing practices, including ████████████ ████████.  *Slade*, 2015 U.S. Dist. LEXIS 89717, at *4.

With respect to credibility, the Court in *Rimini I* denied a motion *in limine* to present evidence on the same issue: spoliation of the PeopleSoft library.  As noted above, in that case, Rimini lied about the existence of the software library.  Smith Decl., Ex. 11 (DTX-3011).  In light of these false statements, the Court held in denying Rimini's motion *in limine* that "deletion of the library is relevant to the credibility and bias of Rimini and its employees, given repeated statements by Rimini that the library never existed, and sworn, false testimony to the same effect by Rimini employees." 2015 LEXIS 113722 at *16.  At trial, Rimini's CEO reviewed and approved the false statements in Rimini's Answers, but eventually admitted that Rimini had a library of PeopleSoft installation software.  *Rimini I*, ECF No. 785 (Tr. at 242:1–23, 247:17–25).

**Rule 403.**  Exclusion under Rule 403 "is an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.  Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (citation omitted); *see also In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

The relevance of Rimini's spoliation of its software library in 2010 is not substantially outweighed by the danger of unfair prejudice, as courts have previously held. *United States v. Cordero*, 973 F.3d 603, 620–21 (6th Cir. 2020) ("We have repeatedly ruled that spoliation evidence is highly probative and not sufficiently inflammatory to warrant exclusion under Rule 403." (collecting cases)). This is especially true here where the spoliation relates to a library that Rimini falsely represented did not exist. This conduct also relates to this action because of Rimini's marketing claims that it has remedied practices found to be improper in the parties' prior litigation. *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 116, 124–25 (4th Cir. 2011) (affirming district court's ruling that evidence of prior suits in a case in which "[t]he parties [we]re familiar combatants on the Lanham Act battlefield" was not more prejudicial than probative).

**Rule 404.** Contrary to Rimini's argument regarding the inadmissibility of character evidence, Rule 404(b)(2) states that evidence of prior bad acts may be admissible for many reasons. The evidence of Rimini's 2010 spoliation establishes that Rimini's improper maintenance of software libraries, as well as its ███████████████████, are neither isolated nor remedied—they are part of Rimini's ongoing business. *See Slade*, 2015 U.S. Dist. LEXIS 89717, at *4.

## V.   MOTION NO. 5: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF RIMINI'S DEFICIENT ████████████████

Rimini's ███████████████ are not irrelevant or unduly prejudicial, Mot. at 13–17, they are relevant and important evidence for the jury to hear, as Rimini's deficiencies suggest a pattern of hiding improper conduct.

To provide support, "████████████████████████████████████████████████████████████████████████████████." ECF No. 1384-3 (Frederiksen-Cross Report) ¶ 66. However, whereas "████████████████████████████████ is a basic principle that is widely practiced throughout the software industry," "[i]f Rimini's claims are to be believed, Rimini ██████████████████████████████████████████████████████████████." *Id.* ¶ 70. After reviewing Rimini's records (and referencing those that Rimini could not or would not provide), Oracle expert Frederiksen-Cross opined "[b]ased on [her] own experience of over 40 years in software

development" that Rimini's ████████████████████████████████████████████

███████████████," *id.* ¶ 67, and that Rimini's deficiencies rendered it "nearly impossible (or at

least unworkable) to identify all instances of Rimini's copying and distribution, through cross-use

or otherwise," *id.* ¶ 76.  *See also* ECF 1384-1 (Cauthen Rebuttal Report) ¶¶ 166–77 (discussing

Rimini's "fail[ure] to ███████████████████████████████████████████████████

██████████████████████" and noting "██████████████████████████████████████

████████████████████████████████████   The jury is entitled to draw

inferences from Rimini's "██████████████████████████████████████████, and

the probative value of those ████████ far outweighs any potential prejudice.  *See* ECF No. 1384-3

(Frederiksen-Cross Report) ¶ 70.

**Rule 402.**  Rimini's argument focuses on the relevance of recent "spoliation."  Mot. at 15–

16.  However, Oracle's experts do not offer any spoliation opinions.

**Rule 403.**   Rimini contends there are two reasons why the Court should exclude this

evidence despite its probative value—both of which fail.   First, Rimini refers to the objective

evidence of Rimini's ███████████████ as "speculative" and claims it "suggests bad faith

without any reasonable basis."  Mot. at 16.  Oracle's expert testimony is not based on speculation;

it is based on a combination of facts, detailed analysis of Rimini's ████████████████, and the

testimony of Rimini's own witnesses.   For example, Frederiksen-Cross analyzes the specific

███████████████████ that Rimini uses for each Oracle product, providing ████████████

████████████.  ECF No. 1384-3 (Frederiksen-Cross Report) §§ VII–XI (PeopleSoft); XII (E-

Business Suite); XIII (JD Edwards); XIV (Siebel); XV (Oracle Database).  She relied on Rimini's

witnesses, who effectively admit to Rimini's ████████████████, to reach her conclusions.  *Id.*

¶ 139 n.73 (citing the deposition of a Rimini employee who could not recall how the ████████████

█████████████████ and whether they were ██████████████, as support for the conclusion

that ████████████████████████████████████████████████████████████████████

███████████████  *id.* ¶ 384 (stating "████████████████████████████████████████

██████████████████████████████████████████████████," and citing Rimini

Group Vice President for Global Support Mackereth's deposition as indicating that Rimini

17

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

employees "testified that they ████████████████████████████████████

████████████████"). If Rimini would like to challenge these expert opinions as "speculative,"

it is free to do so via cross-examination, and the jury can make its own decision thereafter.

Second, Rimini wrongly argues that the Court should resolve this "discovery dispute"

before trial to avoid "confus[ing] the jury." Mot. at 16. Oracle is not seeking to rehash discovery

disputes before the jury. Rather, Oracle—through its experts—plans to inform the jury that

Rimini's ████████████████████████████████████ any technology company

our experts have seen. When Rimini argues, as it has in the past, that Oracle has only pointed to a

limited number of examples of improper conduct, the jury should be able to learn that Rimini has

adopted ████████████████████ that Oracle believes are intended to hide its improper conduct.

Given the evidence suggests Rimini's deficiencies are deliberate, their probative value far

outweighs any threat of prejudice. *United States v. Pafaite*, 2022 WL 837489, at *5 (M.D. Pa. Mar.

21, 2022) (acknowledging "acts of stealth and deception" "have substantial probative value").

## VI.   MOTION NO. 6: THE COURT SHOULD NOT EXCLUDE JUDGE HICKS'S HOLDINGS THAT ARE RELEVANT TO ORACLE'S CLAIMS.

Rimini's moves to exclude judicial holdings from this Court in *Rimini I* that are directly

relevant to Oracle's Lanham Act claim. Rimini does not challenge the relevance of these holdings.

Instead, it refers to these holdings as "hearsay" and argues they are "unfortunate" and "prejudicial."

As explained below, these rulings are not hearsay, and they are fair and accurate characterizations

of Rimini's conduct, so they are not unduly prejudicial either.

Rimini has offered the *Rimini I* summary judgment rulings as the reason it claims to have

changed its support practices. As noted in Rimini's motion *in limine* No. 7, Rimini has said in

Court, and its CEO has testified, that the summary judgment rulings in *Rimini I* explain Rimini's

conduct in this case. And Rimini tells customers falsely that it is complying with these orders.

Rimini falsely asserts that Judge Hicks's finding that Rimini engaged in "'massive theft' of

Oracle's intellectual property" was "unfair and unnecessary to any legal conclusion." Mot. at 17

(citing *Oracle USA, Inc. v. Rimini St., Inc.*, 6 F. Supp. 3d 1108, 1128 (D. Nev. 2014)). In fact, this

finding was necessary to Judge Hicks's granting Oracle summary judgement on Rimini's

defamation claim.  Far from being an "unnecessary" comment, in filing a defamation claim, Rimini sought a ruling from this Court on the issue of whether it had, in fact, engaged in "massive theft" of Oracle's intellectual property, citing that language *in haec verba*.  While Rimini doubtless believes it was "unfortunate" that this Court found that Oracle's statement was true, "truth is an absolute defense to defamation."  *Id.* at 1131.

Rimini claims that Judge Hicks "felt compelled to essentially withdraw" or "later qualified" these statements, which it says were "unfair and unnecessary," Mot. 6 at 17—but that is misleading. In a later order, Judge Hicks clarified that, while the summary judgment order did not resolve "a separately pled cause of action" of *intentional* theft, it did hold that statements that "Rimini had engaged in 'massive theft'" were true because "there is no meaningful distinction between 'theft' and 'copyright infringement' in the Ninth Circuit."  *Oracle USA, Inc. v. Rimini St., Inc.*, 2014 WL 5285963, at *1 (D. Nev. Oct. 14, 2014).  Judge Hicks did not withdraw his summary judgment order based on the truthfulness of Rimini's "massive theft."

Rimini also takes issue with Judge Hicks's statement in holding a permanent injunction was warranted because "Rimini's business model was built entirely on its infringement of Oracle's copyrighted software."  *Oracle USA, Inc. v. Rimini St., Inc.*, 209 F. Supp. 3d 1200, 1208–09 (D. Nev. 2016).  Rimini does not allege this accurate holding was ever "withdrawn"—it was not.

**Rule 802.**  These *Rimini I* holdings are not inadmissible hearsay because they will not be "offered to prove the truth of the matters asserted," *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004).  Rimini raised a defamation claim regarding the statement "massive theft," and the Court held Rimini's claim failed as a matter of law—because the statement was true.  Referring to that prior holding is the same as referring to the "legal effect" of the prior order, and that legal effect is not hearsay as a matter of law.  *See United States v. Stinson*, 647 F.3d 1196, 1210–11 (9th Cir. 2011) (a prior order may be offered "to establish its legal effect"); *Boulware*, 384 F.3d at 806 (citing judgment to establish ownership and legal obligations—the legal effect of the rulings—is appropriate because "a prior judgment is not hearsay ... to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties"); *id.* at 806–07 (holding hearsay rule "did not prohibit Boulware from introducing the state court judgment");

19

*United States v. Sine*, 493 F.3d 1021, 1036 n.12 (9th Cir. 2007) (noting government "could have referred to [the prior] order in more limited ways that would not have constituted the use of hearsay," such as asking Sine "about the fact that [the prior] order denied recovery against" certain parties, as that denial would help prove claims); *Santa Maria City Firefighters Union v. City of Santa Maria*, 2022 WL 2198707, at *6 (C.D. Cal. Feb. 9, 2022), *modified on reconsideration*, 2022 WL 2200420 (C.D. Cal. May 9, 2022) (party may introduce decision to show practice "was a violation of law" and was "adjudged adverse and retaliatory" because decisions introduced as "legally operative verbal conduct" are not hearsay).

The cases cited by Rimini do not prohibit introducing prior judgments to show their holdings or legal effects. Far from it. They show that earlier court decisions are typically excluded only where they dealt "with statements that recapitulate in detail others' testimony and declarations" or go to the credibility of the party or witness. *See Sine*, 493 F.3d at 1036; *Ensource Invs. LLC v. Willis*, 2020 WL 532376, at *1 n.1 (S.D. Cal. Feb. 3, 2020) (decision inadmissible because it had "little to no relevance" to the issues in the case and was "relevant only for their criticism of Defendant's credibility"). Where not involving facts going to credibility, however, court orders are admissible—even for cross-examination. *See Sine*, 493 F.3d at 1036 n.12.[9]

The "massive theft" statement is not hearsay for another, more basic reason too. Rimini asked the Court to determine whether it was defamation—i.e., whether it was a "verbal act"—so even before the Court ruled on it, the statement was not hearsay under Federal Rule of Evidence 801(c). *See Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) ("verbal acts (e.g., words of contract or slander) are not hearsay"); *Goff v. Washington Cnty.*, No. 03-268, 2005 WL 8165291, at *5–6 (D. Idaho Mar. 10, 2005) (noting defamatory statement would be verbal act if claim filed).

**Rule 403.** Admitting accurate descriptions of Rimini's prior conduct would not lead to unfair prejudice, even though the descriptions are unflattering. *See, e.g.*, *United States v. Abel*, 469

---

[9] Moreover, Rimini's cases involve prior decisions in different courts (often state courts) that involved "some of the same parties," *see United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993), not cases (like this one) between the exact same parties in the same court—and certainly not cases (like this one) giving rise to collateral estoppel. *See* 2 McCormick on Evid. § 298 (8th ed.) (noting some courts are unwilling to admit previous judgment *unless* res judicata or collateral estoppel apply).

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1  U.S. 45, 54 (1984) ("precise description of the gang as a lying and murderous group" is admissible);

2  *Smith v. Baker*, 2012 WL 4468624, at \*14 (D. Nev. Sept. 25, 2012) (remarks that defendant claimed

3  were "inflammatory" were admissible as "an accurate description of Smith's acts and inferences

4  arising therefrom").  Nothing in Rule 403 supports Rimini's attempt to strip from the trial true

5  statements describing its unauthorized copying of another's software for profit.

6      And Judge Hicks's prior descriptions of Rimini's conduct are plainly accurate.  As the Court

7  explained, "there is no meaningful distinction between 'theft' and 'copyright infringement.'  One

8  of the leading Ninth Circuit copyright infringement cases refers to the copyright infringement

9  defendant as an 'ordinary thief.'"  *Oracle*, 6 F. Supp. 3d at 1131 (quoting *Polar Bear Prods., Inc.

10  v. Timex Corp.*, 384 F.3d 700, 709 (9th Cir. 2004)); *see also Metro-Goldwyn-Mayer Studios Inc. v.

11  Grokster, Ltd.*, 545 U.S. 913, 961 (2005) (Breyer, J., concurring) ("[D]eliberate unlawful copying

12  is no less an unlawful taking of property than garden-variety theft."); *Uber Techs., Inc. v. Doe*,

13  2015 WL 1926291, at \*3 (N.D. Cal. Apr. 27, 2015) ("Infringement suits, too, involve theft.").

14      While some cases have held that a judge's prior statements were prejudicial "because 'jurors

15  are likely to defer to findings and determinations relevant to credibility,'" *Ensource*, 2020 WL

16  532376, at \*1 (quoting *Sine*, 493 F.3d at 1033),[10] the statements here do not involve Rimini's

17  credibility.  The "massive theft" statement was integral to the Court's rejection of Rimini's

18  defamation counterclaim.  Moreover, Rimini put its own reputation at issue by asking the Court to

19  hold whether that statement was defamation.  Having lost on that point in this Court, Rimini is now

20  claiming that jurors should hear nothing about issues that *Rimini* raised.  The "prejudice" Rimini

21  faces is that its conduct is so egregiously bad that if the jury learns about it, it likely will hurt them,

22  but that is not a Rule 403 issue.  Similarly, the holding that Rimini's business model was "entirely

23  built on infringement" goes to Rimini's practice and intent, and the need for a permanent injunction.

24      The Ninth Circuit explained that its "determination that reference to facts found in a judicial

25

26  [10] Rimini's other cases deal with prior judicial decisions on credibility, too. *See, e.g.*, *United States
   v. Hansen*, 2021 WL 2434561, at \*3 (W.D. Wash. June 15, 2021) (holding Rule 403 prejudice

27  *because* the comments went to "credibility"); *Barten v. State Farm Mut. Auto. Ins. Co.*, 2015 WL
   11111309, at \*3 (D. Ariz. Apr. 8, 2015) (holding prior statements against expert's credibility as

28  "neutral" were prejudicial under Rule 403).

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1   opinion can unfairly prejudice a party" when those facts involve "credibility" does "not mean that

2   admission of such facts will always fail the balancing test of Rule 403." *Sine*, 493 F.3d at 1034. In

3   *Sine*, the government had also conceded the credibility-related facts "were of little probative value,"

4   unlike here, where they are squarely relevant to Oracle's Lanham Act claim.  While Rimini may

5   think statements regarding its culpability are "unfortunate," they are plainly relevant to Oracle's

6   claims now and thus more probative than prejudicial.[11]

7   **VII.    MOTION NO. 7: MOTION TO PRECLUDE USE OF EVIDENCE OF CHANGE IN
         PROCESSES TO ESTABLISH LIABILITY OR WILLFULNESS**

8

9       Rimini's motion under Rule 407 seeks to prohibit Oracle from arguing that Rimini's

10   changes from Process 1.0 to Process 2.0—evidence of which Rimini concedes is admissible—

11   "show or contribute to showing liability or Rimini's mental state." Mot. at 19.  The motion should

12   be denied because Rule 407 is inapplicable for remedial measures purportedly taken to comply with

13   legal mandates.  Moreover, even if Rule 407 is applicable, the Rule permits Oracle to use Rimini's

14   changes to impeach Rimini's witnesses and establish liability for Oracle's Lanham Act claims.

15   And, if Rimini puts its intent at issue, Oracle should be permitted to rebut any such evidence,

16   including with evidence of process changes.  Finally, the motion should be denied because there

17   are factual disputes about whether Rimini's Process 2.0 is a remedial measure.

18       Rimini asserts that it changed from Process 1.0 to 2.0 not as a remedial measure before a

19   finding of liability, but in response to the *Rimini I* summary judgment order, and also asserts that it

20   "further modified Process 2.0 in response to the injunction." Mot. at 19–20.  Rimini initiated this

21   case with its claim for declaratory relief alleging that "Rimini Street modified its services to

22   discontinue use of the processes the Court found to be infringing in its February 13, 2014 [Summary

23   Judgment] Order" and "[b]y July 31, 2014, Rimini Street had completed its migration to processes

24   compliant with the Court's February 13, 2014 Order."  ECF No. 1 ¶ 8.  Ravin also has asserted

25   ███████████████████████████████████████████.  Smith Decl., Ex. 12 (Ravin 2/15/18 Dep.)

26   44:11–45:3, 49:24–50:6, 53:18–54:14.  And ████████████████████████████████████████

---

[11] Rimini also cites *Chein v. Shumsky*, 373 F.3d 978, 989 n.6 (9th Cir. 2004) (en banc), which is
nothing like this case.  It merely held that a superior court judge could not testify as an expert
witness and tell the jury how to interpret a defendant's statement.  *Id.*

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1 █████████████████████████. *Id.* at 27:12–24, 28:18–29:1, 32:22–33:6.

2     Courts routinely admit evidence and argument regarding remedial measures taken by a

3 defendant in response to court orders or to comply with the law or a government mandate.  Rule

4 407 is intended to support "a social policy of encouraging people to take, or at least not discouraging

5 them from taking, steps in furtherance of added safety."  Advisory Committee Notes on Proposed

6 Rules, Fed. R. Evid. 407.  But Rule 407's policy is not furthered, and therefore the rule's exclusions

7 are inapplicable, where "the defendant has not voluntarily participated in the subsequent measure

8 at issue" because "the admission of that measure into evidence does not 'punish' the defendant for

9 his efforts to remedy his safety problems."  *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 817

10 (9th Cir. 1989) (admission of report on investigation defendant "was legally obligated to cooperate

11 with" did not violate Rule 407); *see also Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 740 (5th

12 Cir. 2020) (Rule 407 inapplicable for remedial measures defendant was "legally obligated to take");

13 *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978) (invoking [Rule 407's] exclusion

14 policy inappropriate where estimate was prepared because the remedial measure was to be required

15 by a superior authority); *Olivier v. Exxon Mobil Corp.*, 2022 WL 3010691, at *1–2 (M.D. La. July

16 29, 2022) (Rule 407 is inapplicable for remedial measures taken to comply with legal mandates).

17     Because Rimini contends all of its changes in process were done in response to a court

18 order, they were not "voluntary" remedial measures.  Rule 407 does not apply.  *E.g.*, *Gilanian v.*

19 *City of Boston*, 431 F. Supp. 2d 172, 177–78 (D. Mass. 2006) (evidence of policy changes made in

20 response to court decision finding prior policy unlawful "is admissible for any reason"); *United*

21 *States v. Balwani*, 2022 WL 597040, at *5–6 (N.D. Cal. Feb. 28, 2022) (action defendant "believed"

22 was necessary was "involuntary and not a remedial measure under Rule 407" even though the

23 agency "did not specify how [defendant] should cure the deficiencies"); *Gray v. Golden Gate Nat'l*

24 *Recreational Area*, 866 F. Supp. 2d 1129, 1140–41 (N.D. Cal. 2011) (that defendant failed to

25 comply with legal requirements for years does not make new efforts to comply voluntary).

26     In addition, the changes in process that Rimini made following the *Rimini I* summary

27 judgment and injunction orders contradict Rimini's statements to customers that Rimini had already

28 ceased the conduct ruled unlawful in *Rimini I*.  Thus, even if the changes were remedial measures

within the scope of Rule 407, which they are not, Oracle is permitted to use the changes to impeach Rimini's witnesses and establish liability for Oracle's Lanham Act claims.  Fed. R. Evid. 407 ("the court may admit this evidence for another purpose, such as impeachment").

Oracle does not seek to use Rimini's subsequent modification of Process 1.0 to "prove that the original process infringed . . . with respect to Process 1.0 support for 'gap customers.'"  Mot. at 22.  A jury found that Rimini's Process 1.0 infringed Oracle's copyrights and the Court subsequently held on summary judgment in this case that the jury's findings establish liability with respect to the gap customers.  ECF No. 1253 at 3, 21–29.[12]  The only issue with respect to gap customers is the amount of damages to be awarded.  The facts describing Process 1.0 will be relevant to the extent of such damages.

In addition, if Rimini puts its state of mind at issue during trial, Oracle should be permitted to rebut Rimini's arguments and evidence with Oracle's own arguments regarding Rimini's state of mind, including based on Rimini's changes in processes.  Rule 407; *see also, e.g.*, *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d. 1164, 1174 (D. Nev. 2014) (if defendant "opens the door" to otherwise irrelevant arguments, the Rule 407 analysis "will change").

Finally, Rimini argues that "Rimini 2.0" was a remedial measure, and defines 2.0 as follows:

> Under Process 2.0, Rimini supports customers on the client's own environment located on the client's own systems (to address "local hosting") and no longer relies on generic environments to develop updates for multiple clients (to address "cross-use").  That makes Rimini's change from Process 1.0 to Process 2.0 a subsequent remedial measure.

Mot. at 22.  Rimini cites its own description of the case in the Pretrial Order to support this statement.  But there are factual disputes about the measures Rimini took, and when, including with respect to cross-use.  Motions in limine should not be used to resolve factual disputes or to weigh evidence.  *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  And this Court already has held that the "Migration" entailed more copying of already-infringing Oracle software for which there is no license defense.  ECF No. 1253 at 92.

---

[12] Oracle will also establish that Rimini has no license defense for ███ additional customer environments created during this gap period but not addressed by the Court's order.

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

## VIII.   MOTION NO. 8: MOTION TO PRECLUDE USE OF EVIDENCE FROM *RIMINI I* TO CONTRADICT THE *RIMINI I* SPECIAL VERDICT FINDINGS.

The Court should deny Rimini's motion that seeks to prohibit Oracle from using evidence from *Rimini I* to "relitigate issues that have already been adjudicated" and "contradict the jury's verdict and special findings in that case." Mot. at 22. As Oracle told Rimini on several meet and confers, it has no intention of re-trying *Rimini I*. Rather, as stated in the Joint Pretrial Order, Oracle's *Rimini I* trial testimony designations and exhibits are appropriately tailored to demonstrate the aspects of Rimini's infringing support practices that are relevant to Oracle's numerous affirmative remaining claims in *this* case. ECF No. 1309 at 77.

Oracle does not intend to relitigate the issue of Ravin and Rimini's willfulness from the *Rimini I* trial. State-of-mind is irrelevant to Oracle's copyright infringement claims in this case. If Rimini puts its state of mind at issue, however, evidence of Rimini' willfulness from the *Rimini I* record is relevant and admissible for impeachment purposes, and neither the Seventh Amendment nor the doctrine of collateral estoppel bar Oracle from using evidence from the *Rimini I* litigation to impeach Rimini's false statements about its state of mind as to Process 2.0.

Rimini also argues that the special verdict form in *Rimini I* found that the best measure of Oracle's actual damages for Rimini's infringement was a fair market value license and that Oracle suffered no lost profits, and Rimini gained no profits, as a result of the infringement found at the *Rimini I* trial. Mot. at 23. To the extent that Rimini seeks to preclude Oracle from recovering lost profits damages related to the 47 "gap customers" for whom liability was established by the Court in its summary judgment order, the motion should be denied. The Court already has ruled that Oracle may argue for either lost profits or fair market value license damages related to these customers at the *Rimini II* trial. ECF No. 1253 at 80–81.[13]

### A.   The Court Should Deny Rimini's Motion to Preclude Willfulness Evidence from *Rimini I* as Moot.

Rimini's motion for preclusion of willfulness evidence from *Rimini I* attempts to create issues where none exist; Rimini's state of mind is not relevant in this case. In *Rimini I*, for the sole

---

[13] Rimini seeks an order requiring Oracle to abide by Rules 402, 404, and 802 as it relates to all exhibits and testimony from *Rimini I*. Such an order is unnecessary as Oracle is already required to abide by the Federal Rules of Evidence.

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

purpose of determining the amount of Oracle's statutory damages, which Oracle did not accept, the jury found that Rimini's infringement of Oracle's copyrighted works prior to 2012 was not "willful," but "innocent." *Rimini I*, ECF No. 896 at 5–6. In this case, however, Oracle seeks only *actual* damages for its copyright infringement claims, so intent is irrelevant. Oracle has withdrawn any claim for statutory damages. It has also moved to exclude as irrelevant all evidence and argument regarding "innocent infringement," either in connection with the jury's finding in *Rimini I* or the conduct at issue here. ECF No. 1378 at 16–18. If for any reason Rimini is allowed to present evidence or argument that its prior infringement was "innocent," Oracle should be allowed to present evidence and argument that, as Judge Hicks previously ruled, "Rimini's business model was built entirely on its infringement of Oracle's copyrighted software" and Rimini engaged in "theft." *See Oracle,* 6 F. Supp. 3d at 1128; *Oracle*, 209 F. Supp. 3d at 1208–09.

Otherwise, to the extent that Oracle offers evidence from the *Rimini I* record, it will do so for purposes other than proving Rimini's willfulness as to its pre-July 2014 infringement or its continuing infringement of Oracle's copyrights in this case. Accordingly, Rimini's motion with respect to willfulness should be denied as moot.

### B. If Rimini Opens the Door to State of Mind Evidence as to Process 2.0, Oracle Should be Permitted to Rebut and Impeach Witness Testimony Using Evidence of Willfulness.

Rimini has indicated that it plans to prove at trial that it "believed and currently believes that its practices with respect to Oracle's intellectual property were authorized by its clients' license agreements," and that at "*all times*, it has intended to respect, and has respected, Oracle's intellectual property rights." ECF No. 1309 at 19 (emphasis added). Rimini appears to intend to use the *Rimini I* jury's "innocent infringement" finding with respect to Process 1.0 to argue that its repeated infringement under Process 2.0 was again an innocent mistake. If Rimini puts its state of mind at issue regarding its practices under Process 2.0, the Court should permit Oracle to rebut and impeach Rimini witness testimony under Fed. R. Evid. 607 and 613(b) using evidence probative of willfulness—including prior witness testimony and exhibits from the *Rimini I* record. Neither the Seventh Amendment nor collateral estoppel bar such use of the *Rimini I* evidence.

In the Seventh Amendment cases that Rimini cites for support, the court determined whether

26

*bifurcation of issues in the same action*—such as separating liability from damages, comparative negligence, or other affirmative defenses—caused the *same issue* to be re-examined by different juries.   Neither bifurcation nor the constitutional concerns that it raises are present here. Additionally, the Seventh Amendment does not bar the *Rimini II* jury from examining evidence, including evidence from *Rimini I*, that is relevant to Rimini's willfulness regarding it copyright infringement under Process 2.0—an entirely different and separate issue that was never tried to the first jury.   And to the extent Oracle uses evidence from *Rimini I* to impeach false testimony about Rimini's state of mind regarding Process 2.0, the *Rimini II* jury need not reconsider, let alone contradict, the *Rimini I* jury's finding about Rimini's state of mind.

Furthermore, the doctrine of collateral estoppel does not preclude Oracle from introducing evidence from *Rimini I* for impeachment purposes to show that Rimini engaged in willful copyright infringement under Process 2.0.   The issues are not "identical in both proceedings."   *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012).   Rimini's state of mind with respect to its infringing conduct under Process 2.0 is not identical to Rimini's state of mind with respect to its copyright infringement under Process 1.0.   While the law defining "willfulness" and "innocence" with respect to copyright infringement is the same, the evidence and argument that will be presented in this case will be different from that presented in *Rimini I* because the infringing processes, timeframe, and customers are different, and some of the copyrights at issue are different.   Additionally, pretrial preparation and discovery in *Rimini I* could not have reasonably embraced the issue of Rimini's intent with respect to Process 2.0 because fact discovery in *Rimini I* closed in December 2011, and Rimini claims that it completed the transition from Process 1.0 to Process 2.0 by July 31, 2014.

**C.    The Court Has Previously Ruled That Oracle May Argue for Lost Profits Damages Related to the "Gap Customers."**

The Court should deny Rimini's motion to the extent that it seeks to preclude Oracle from recovering lost profits for the 47 "gap customers" that Rimini gained between September 28, 2011, the date of Rimini's last disclosed customer list prior to the close of discovery in *Rimini I*, and February 13, 2014, the end of the *Rimini I* damages period.   Rimini raised the very same issue by partial summary judgment motion four years ago.   ECF No. 913 at 29–30.   Rimini lost that motion.

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

ECF No. 1253 at 80–81 ("whether Oracle is entitled to lost profits or fair market value license damages is a distinct question related to the specific at issue gap customers and to be decided by the jury.  While a reasonable jury in [*Rimini I*] concluded that fair market value license damages was proper as it related to the 228 customers at issue there, a reasonable jury could find that as it relates to these distinct gap customers lost profits is proper.").

### IX.    MOTION NO. 9: THE COURT SHOULD NOT EXCLUDE HYPOTHETICAL QUESTIONS THAT ASSUME RIMINI HAS INFRINGED

In depositions of representatives of customers who left Oracle for Rimini, and are therefore part of Oracle's damages claims, Oracle asked customer representatives ███████████ ████████████████████████████████████████████████████████████████████ ████████████████████████.  Rimini's customers answered this question ███████████ ████████████████████████████████████████████████████████████████████ ███████████.  Smith Decl., Ex. 13 (Bonfanti Depo.) at 75:21–25; Ex. 15 (Hovsepian Depo.) at 42:4–14; Ex. 16 (Jackson Depo.) at 105:25–107:8; Ex. 17 (Jacobs Depo.) at 40:22–41:3; Ex. 18 (Jameson Depo.) at 67:25–69:1; Ex. 19 (Jamieson Depo.) at 83:23-84:5; Ex. 20 (Myers Depo.) at 126:24–128:7; Ex. 21 (Ownbey Depo.) at 67:3–68:1; Ex. 22 (Sullivan Depo.) at 51:8–52:23; Ex. 23 (Sutton Depo.) at 58:3–10; Ex. 24 (Treece Depo.) at 32:15–33:23; Ex. 25 (Valdez Depo.) at 65:22–66:14; *see also* Ex. 10 (White Depo.) at 30:14–21.  Oracle asked essentially the same questions to Rimini customers in *Rimini I* and the Court admitted the testimony, albeit with a limiting instruction that it was only admissible to prove causation, to which Oracle does not object. *Rimini I*, ECF No. 781 (Tr. at 28:13–24).

Because it is harmful to its case, Rimini again seeks to preclude Oracle from presenting this evidence, asserting (just as it did unsuccessfully in *Rimini I*) that the questions are improper "hypotheticals" that are outside the capacity of "lay witness testimony" and "irrelevant to the facts Oracle must prove at trial." Mot. at 28.  The Court should follow its ruling in *Rimini I.*  The customer witnesses had foundation to testify; they were designated by Rimini's customers as having knowledge regarding ███████████████████████████████████.  Rimini infringed Oracle's copyrights in "Process 1.0," and Oracle will present extensive evidence showing

1    that Rimini's "Process 2.0" is no better, so the questions were not "███████████." Finally, the

2    questions are relevant to causation and damages and do not unfairly prejudice Rimini.[14]

3        **Rules 602 and 701**.  Courts have held that where, as here, questions to lay witnesses are

4    "limited by the factual foundation laid in earlier admitted testimony" and based on "facts that ha[ve]

5    been independently established in the record," they are not speculative.  *Cuti*, 720 F.3d at 458; *see*

6    *also Atlanta Channel, Inc. v. Solomon*, 2021 WL 4243383, at *5 (D.D.C. Sept. 17, 202).  In *Cuti*

7    for example, the Second Circuit held that answers to hypothetical questions that asked accountant

8    witnesses how, if at all, they would have changed their accounting of certain transactions if they

9    had known all of the facts underlying those transactions, were permissible.  *Id*.

10       As in *Cuti*, the questions to Rimini's customers had a proper foundation.  Each of the

11   witnesses had knowledge of ████████████████████████████████████████████

12   ████████████████████████████████.  *See* Smith Decl. Ex. 19 (Jamieson Depo.) at 24:18–

13   22.  This distinguishes this case from *SEC v. Ambassador Advisors*, LLC, 2022 WL 2188145, at

14   *3 (E.D.  Pa. Feb. 28, 2022), *United States v. Sanft*, 2021 WL 5770292, at *2 (W.D. Wash. Dec. 6,

15   2021) and *Hamilton v. AVPM Corp.*, 593 F. App'x 314, 319 (5th Cir. 2014), as all those cases

16   involved situations where courts precluded witnesses from testifying about the potential actions or

17   reactions of *third parties* with which they were unaffiliated.  Oracle's questions elicited answers

18   based on the witnesses' personal knowledge.  *See Atlanta Channel Inc.* 2021 WL 4243383, at *5.

19       The law is not "clear that Rule 701 bars lay witnesses from answering hypothetical

20   questions," as Rimini asserts.  Mot. at 28.  The Court in *Cuti* allowed just that, 720 F.3d at 459, and

21   the cases that Rimini cites for this proposition are not as broad as it suggests.  In those cases, the

22   courts did not say that lay opinion witnesses could never be posed hypothetical questions, but only

23   those that require "specialized knowledge" or were not within the witness' perception should be

---

[14] Rimini's appendix to Motion No. 9 also includes customer testimony having nothing to do with any "hypothetical" questions, including testimony regarding ██████████████████████████ ████████████████████████████████████████.  *See* Smith Decl., Ex. 18 (Jameson Depo.) at 68:8–15, Ex. 19 (Jamieson Depo.) at 84:19–23; Ex. 22 (Sullivan Depo.) at 51:5–23; Ex. 23 (Sutton Depo.) at 59:3–10; and Ex. 24 (Treece Depo.) at 33:4–19.  And one of Rimini's excerpts also includes testimony regarding ███████████████████████ ████████████████████████████████████████████████████ Smith Decl., Ex. 24 (Treece Depo.) at 33:25–34:1; 34:21–35:11.

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1    excluded.  *See Sinkovich*, 232 F.3d 200, 203–04.  This evidence will be "helpful to the jury" under

2    Rule 701(b).  Evidence of what Rimini's customers █████████████████████████████████████

3    ████████████████████████████ is directly relevant to the element of causation in Oracle's

4    claims and will be "helpful" to the jury under Rule 701(b).

5          **Rules 402 and 403**.  This evidence is relevant to the element of causation in Oracle's claims,

6    including Oracle's Lanham Act claim, and is not unfairly prejudicial to Rimini.

7    **X.    MOTION NO. 10: THE COURT SHOULD NOT EXCLUDE EVIDENCE OF RIMINI'S SOFTWARE LIBRARY**

8          When the parties disputed the relevance of Rimini's software library in *Rimini I*, the Court

9    determined that evidence of the software library was not only admissible, but that its incomplete

10   status warranted a jury instruction.  *See Rimini I*, ECF No. 881 at 35.  Rimini now acts as if the

11   software library is ██████████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████████████████████████████

14   ██████.  *See* ECF No. 1384-1 (Cauthen Rebuttal Report) ¶¶ 134–55; ECF No. 1384-3

15   (Frederiksen-Cross Report) ¶¶ 415–27; ECF. No. 1384-4 (Frederiksen-Cross Rebuttal Report)

16   ¶ 148.    Within  the  ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████"  ECF No. 1384-3 ¶ 416.

18         **Rule 402, Rule 403, and Rule 404.**  Especially in light of Rimini's claims that evidence of

19   its software library is "stale," Mot. at 29, because the software library is ██████████████████ *id.*

20   at 11, this evidence is crucial to the narrative underlying Oracle's Lanham Act claim.  *See Slade*,

21   2015 WL 4208634, at *1–2 (admitting "evidence necessary to tell a clear and coherent story" of

22   abuse).  The facts show that Rimini ████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████████████████████████████████

25   █████████████████████████████████████.  This evidence is relevant to both Rimini's ████

26   ██████████████████████████████████████████████████████████████████████████████████

27   ██████.  Moreover, all of Rimini's arguments for exclusion relate to only Rimini's ████████

28   ████████████████████████████████████████.  *See* Mot. at 29.

30

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1

DATED: September 30, 2022                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                            By:        */s/ Benjamin P. Smith*
                                                        Benjamin P. Smith
4

5                                            Attorneys for Plaintiffs and Counterdefendants
                                             Oracle International Corporation and Oracle
6                                                         America, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORACLE'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on the 30th day of September, 2022, I electronically transmitted the foregoing **ORACLE INTERNATIONAL CORPORATION AND ORACLE AMERICA, INC.'S RESPONSE TO RIMINI'S OMNIBUS PRE-TRIAL MOTIONS IN LIMINE** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

DATED:  September 30, 2022

MORGAN, LEWIS & BOCKIUS LLP

By:  _____/s/ Benjamin P. Smith_____
Benjamin P. Smith

Attorneys for Plaintiffs and Counterdefendants
Oracle International Corporation and Oracle
America, Inc.

CERTIFICATE OF SERVICE