1   MORGAN, LEWIS & BOCKIUS LLP
    BENJAMIN P. SMITH (*pro hac vice*)
2   SHARON R. SMITH (*pro hac vice*)
    One Market, Spear Street Tower
3   San Francisco, CA  94105
    Telephone:     415.442.1000
4   Facsimile:     415.442.1001
    benjamin.smith@morganlewis.com
5   sharon.smith@morganlewis.com

6   DORIAN DALEY (*pro hac vice*)
    JAMES C. MAROULIS (*pro hac vice*)
7   ORACLE CORPORATION
    500 Oracle Parkway, M/S 5op7
8   Redwood City, CA 94070
    Telephone:     650.506.4846
9   Facsimile:     650.506.7114
    dorian.daley@oracle.com
10  jim.maroulis@oracle.com

11  *Attorneys for Plaintiffs and Counterdefendants*
    *Oracle International Corporation and Oracle*
12  *America, Inc.*

BOIES, SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:     702.382.7300
Facsimile:     702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:     202.223.7300
Facsimile:     202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

13

14

15                          UNITED STATES DISTRICT COURT

16                                  DISTRICT OF NEVADA

17  ORACLE INTERNATIONAL CORP., a
    California corporation, and ORACLE
18  AMERICA, INC., a Delaware corporation,

19              Plaintiffs/Counterdefendants,

20      v.

21  RIMINI STREET, INC., a Nevada corporation,
    and SETH RAVIN, an individual,
22
                Defendants/Counterclaimants.
23

Case No.  2:14-cv-01699-MMD-DJA

**ORACLE INTERNATIONAL
CORPORATION AND ORACLE
AMERICA, INC.'S RESPONSE TO
RIMINI'S *DAUBERT* MOTION TO
EXCLUDE PROPOSED EXPERT
WITNESS TESTIMONY**

**REDACTED PUBLIC VERSION**

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

LEGAL STANDARD ................................................................................................................ 1

ARGUMENT ........................................................................................................................... 1

I.    BARBARA FREDERIKSEN-CROSS'S OPINIONS SHOULD NOT BE
      EXCLUDED. ................................................................................................................. 1

      A.    The law of the case bars Rimini's arguments on derivative works ........................ 2

      B.    Ms. Frederiksen-Cross's opinions regarding cross-use are not contrary to
            law. ......................................................................................................................... 2

      C.    Rimini's arguments on "analytic dissection" are wrong. ....................................... 6

      D.    Rimini (not Ms. Frederiksen-Cross) misstates the DMCA standard. .................. 10

II.   PAUL PINTO'S AVOIDED COST ANALYSIS AND OPINION THAT RIMINI
      COULD NOT OFFER A ███ DISCOUNT WITHOUT INFRINGEMENT
      SHOULD NOT BE EXCLUDED .................................................................................. 13

      A.    Rimini identifies no reason to exclude Mr. Pinto's avoided-costs analysis ......... 13

      B.    Mr. Pinto's opinion that Rimini could not offer a ███ discount without
            infringement is admissible. ................................................................................... 16

III.  ELIZABETH DEAN'S HYPOTHETICAL NEGOTIATION MODEL AND
      CAUSATION OPINIONS SHOULD NOT BE EXCLUDED. ........................................ 17

      A.    Ms. Dean's hypothetical negotiation model is reliable. ........................................ 17

      B.    Ms. Dean's opinions on causation are admissible. .............................................. 20

IV.   JOHN CAUTHEN'S OPINIONS ANALYZING AND COMPARING RIMINI'S
      SYSTEMS SHOULD NOT BE EXCLUDED. ............................................................... 21

      A.    Cauthen's substantiated ███ analysis is admissible. ........................................ 21

      B.    Cauthen is qualified to opine on the ERP support industry. ................................ 22

V.    RIMINI'S CONTENTIONS CONCERNING "STATE OF MIND" OPINION
      TESTIMONY ARE MISPLACED AND OVERBROAD. .............................................. 22

      A.    Mr. Pinto's opinion, based on documentary evidence and industry
            expertise, that customers value Rimini's massive discounts is admissible .......... 23

      B.    Dr. McDaniel's statements in his opinion are not inadmissible speculation
            concerning the state of mind of Rimini or its employees ..................................... 25

      C.    Cauthen does not present inadmissible expert testimony on Rimini's intent,
            motivation, or state of mind. ................................................................................. 27

CONCLUSION ....................................................................................................................... 30

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*,
  2017 WL 10350547 (C.D. Cal. Nov. 13, 2017)...................................................................... 12

*Amazon.com, Inc. v. Comm'r*,
  934 F.3d 976 (9th Cir. 2019)...................................................................................................... 19

*Antonick v. Elec. Arts, Inc.*,
  841 F.3d 1062 (9th Cir. 2016) ...................................................................................................... 7

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994)........................................................................................................ 7

*Associated Press v. All Headline News Corp.*,
  608 F. Supp. 2d 454 (S.D.N.Y. 2009)....................................................................................... 11

*Barber v. Corizon Health, Inc.*,
  2019 WL 8112500 (W.D. Pa. May 6, 2019)........................................................................... 20

*Barlovento, LLC v. AUI, Inc.*,
  2020 WL 6689618 (D.N.M. Nov. 13, 2020)........................................................................... 30

*Bayoh v. Afropunk LLC*,
  2020 WL 6269300 (S.D.N.Y. Oct. 26, 2020) ......................................................................... 20

*Beaton v. SpeedyPC Software*,
  2017 WL 6569630 (N.D. Ill. Dec. 21, 2017) ......................................................................... 23

*Bell v. Wilmott Storage Servs., LLC*,
  12 F.4th 1065 (9th Cir. 2021) ...................................................................................................... 7

*Berkla v. Corel Corp.*,
  66 F. Supp. 2d 1129 (E.D. Cal. 1999)........................................................................................ 5

*Bounce Exch., Inc. v. Zeus Enter. Ltd.*,
  2015 WL 8579023 (S.D.N.Y. Dec. 9, 2015) ......................................................................... 11

*Boyd v. City and Cty. of S.F.*,
  576 F.3d 938 (9th Cir. 2009)...................................................................................................... 15

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
  2012 WL 13170064 (N.D. Cal. July 13, 2012)........................................................................ 7

*Carlson v. Sam's West, Inc.*,
  2022 WL 428551 (D. Nev. Feb. 2, 2022) ........................................................................... 1, 16

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014).........................................................................1

*Comm'r v. First Sec. Bank of Utah, N.A.*,
    405 U.S. 394 (1972) ......................................................................7, 11, 14, 19

*Computer Assocs. Int'l v. Quest Software, Inc.*,
    333 F. Supp. 2d 688 (N.D. Ill. 2004) ..............................................................8

*In re Corporate Res. Servs., Inc.*,
    603 B.R. 888 (Aug. 22, 2019) (S.D.N.Y. 2019) ...........................................22

*In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig. v. Countrywide Fin.
    Corp.*,
    984 F. Supp. 2d 1021 (C.D. Cal. 2013) ...........................................................8

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)................................................................................*passim*

*DropzoneMS, LLC v. Cockayne*,
    2019 WL 7630788 (D. Or. Sept. 12, 2019).......................................................9

*Dura Auto. Sys. Of Ind., Inc. v. CTS Corp.*,
    285 F.3d 609 (7th Cir. 2002)..........................................................................30

*Empire Med. Review Servs., Inc. v. CompuClaim, Inc.*,
    326 F. Supp. 3d 685 (E.D. Wis. 2018) ...........................................................11

*Enter. Tech. Holdings, Inc. v. Noveon Sys., Inc.*,
    2008 WL 11338356 (S.D. Cal. July 29, 2008) ...............................................11

*Ernst v. City of Chicago*,
    2013 WL 4804837 (N.D. Ill. Sept. 9, 2013) ..................................................10

*In re Flashcom, Inc.*,
    503 B.R. 99 (C.D. Cal. 2013), aff'd, 647 F. App'x 689 (9th Cir. 2016) ..................2

*Freteluco v. Smith's Food & Drug Ctrs., Inc.*,
    2021 WL 183321 (D. Nev. Jan. 19, 2021) .....................................................28

*Friedman v. Live Nation Merch., Inc.*,
    833 F.3d 1180 (9th Cir. 2016).................................................................11, 12

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
    2015 WL 263556 (D. Hawai'i Jan. 21, 2015)............................................11, 12

*In re: Genetically Modified Rice Litig.*,
    666 F. Supp. 2d 1004 (E.D. Mo. 2009)...........................................................30

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

*Hana Fin., Inc. v. Hana Bank*,
    735 F.3d 1158 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015) ...................... 10

*Ironshore Ins. Ltd. V. W. Asset Mgmt. Co.*,
    2013 WL 2051863 (S.D.N.Y. May 15, 2013)............................................ 10

*Janopoulos v. Harvey L. Walner & Assocs., Ltd.*,
    866 F. Supp. 1086 (N.D. Ill. 1994) ........................................................ 30

*Jarvis v. K2 Inc.*,
    486 F.3d 526 (9th Cir. 2007)................................................................... 18

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
    --- F. Supp. 3d ---, 2022 WL 1817415 (N.D. Cal. 2022) ......................... 29

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
    2022 WL 2343268 (N.D. Cal. June 28, 2022) .......................... 23, 24, 27

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
    2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ........................................ 11

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012), *as amended* (June 13, 2012)..................... 7

*McLane Co., Inc. v. ASG Techs. Grp. Inc.*,
    2019 WL 590081 (W.D. Tex. Jan. 2, 2019)..................................... 16, 17

*Micro Star v. Formgen Inc.*,
    154 F.3d 1107 (9th Cir. 1998)................................................................... 2

*Nat'l Union Fire Ins. Co. v. Smith Tank & Steel, Inc.*,
    2014 WL 5794952 (M.D. La. Nov. 6, 2014) .......................................... 30

*Nazar v. Harbor Freight Tools USA Inc.*,
    2020 WL 4730975 (E.D. Wash. May 27, 2020) ..................................... 10

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) .................................. 23, 24

*Oracle Corp. v. SAP AG*,
    765 F.3d 1081 (9th Cir. 2014)..................................................... 17, 18, 19

*Oracle USA, Inc. v. Rimini St., Inc.*,
    2022 WL 112187 (D. Nev. Jan. 12, 2022) ........................................ 6, 7, 8

*Prall v. Ford Motor Co.*,
    2017 WL 361545 (D. Nev. Jan. 24, 2017) ............................................. 16

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010), *as amended* (Apr. 27, 2010).................... 1

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

*Reno-Tahoe Specialty, Inc., v. Mungchi, Inc.*,
    2014 WL 7336082 (D. Nev. Dec. 19, 2014)........................................................... 12

*Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*,
    2017 WL 1345195 (N.D. Ohio Apr. 12, 2017)...................................................... 11

*Roman v. W. Mfg., Inc.*,
    691 F.3d 686 (5th Cir. 2012).................................................................................. 22

*Sherwin-Williams Co. v. JB Collision Servs., Inc.*,
    2015 WL 4742494 (S.D. Cal. Aug. 11, 2015) ...................................................... 10

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
    927 F. Supp. 2d 1069 (D. Or. 2013) ..................................................................... 23

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000), *overruled on other grounds by Skidmore v.*
    *Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)................................................................. 5

*TK-7 Corp. v. Est. of Barbouti*,
    993 F.2d 722 (10th Cir. 1993)................................................................................ 14

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare*
    *Fund v. Teikoku Pharma USA*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) ................................................. 23, 24, 26

*United States v. Holmes*,
    No. 18-258, 2021 WL 2035177 (N.D. Cal. May 21, 2021) ................................... 22

*United States v. Luschen*,
    614 F.2d 1164 (8th Cir.)......................................................................................... 28

*Villagomes v. Lab'y Corp. of Am.*,
    2010 WL 4628085 (D. Nev. Nov. 8, 2010) .......................................................... 14

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018)................................................................................ 17

**Statutes**

17 U.S.C. § 1202 ................................................................................... 10, 11, 12

**Other Authorities**

Rule 30(b)(6)........................................................................................................ 26

Rule 701 .................................................................................................................. 9

Rule 702 ......................................................................................................... 1, 6, 16

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

Rule 703 ................................................................................................................. 30

Treas. Reg. § 1.482-1(b)(1) ................................................................................... 19

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

Plaintiffs/Counterdefendants Oracle International Corp. and Oracle America, Inc. ("Oracle") hereby oppose Rimini Street, Inc. and Seth Ravin's ("Rimini") motion to exclude certain opinions of Oracle experts Dr. Patrick McDaniel, Mr. John Cauthen, Mr. Paul Pinto, Ms. Elizabeth Dean, and Ms. Barbara Frederiksen-Cross ("Rimini Daubert").   Rimini concedes that each of Oracle's experts is qualified and reliable—Rimini has not moved to prevent any of them from testifying.   To the extent that Rimini seeks to exclude specific opinions by Oracle's qualified experts, Rimini's motion is rife with legal error, again attempts to reargue contentions it has already lost (in some instances many times before), and is factually inaccurate.  Rimini's motion to exclude should be denied.

## LEGAL STANDARD

Where an expert's report is reliable and relevant, factual disputes cannot support a *Daubert* motion as they are "best settled by a battle of the experts before the fact finder, not by judicial fiat." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1048-49 (9th Cir. 2014); *see id.* at 1049 ("Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable.") (citation omitted).  "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder,'" and is concerned only with the methodology, "not the conclusion to which the evidence would lead." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010), *as amended* (Apr. 27, 2010) (citation omitted).  "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* at 565.  Under the Ninth Circuit's "liberal" approach to Rule 702, expert testimony should generally be "attacked by cross examination, contrary evidence, and attention to the burden of proof, rather than excluded." *Carlson v. Sam's West, Inc.*, 2022 WL 428551, at *2 (D. Nev. Feb. 2, 2022).

## ARGUMENT

### I.   BARBARA FREDERIKSEN-CROSS'S OPINIONS SHOULD NOT BE EXCLUDED.

Rimini's motion to exclude sections of Ms. Frederiksen-Cross's expert opinion is not a proper *Daubert* motion and should be denied.  Rimini does not dispute that Ms. Frederiksen-Cross's

1

opinion—including the sections Rimini seeks to exclude—is relevant or that her methodology is reliable—which are the only relevant inquiries under *Daubert*.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  Instead, Rimini purports to identify four legal errors underlying portions of her opinion.  But Rimini is the one mistaken on the law—as this Court already has held on multiple occasions.

**A.    The law of the case bars Rimini's arguments on derivative works.**

Rimini's lead argument—that Ms. Frederiksen-Cross used the wrong definition for derivative works—already has been rejected by this Court.   Rimini concedes as much, "acknowledg[ing] that on summary judgment this Court" applied the definition of derivative works relied on by Ms. Frederiksen-Cross and "subsequently denied Rimini's motion to certify that ruling for interlocutory appeal."  Rimini Daubert at 22.  On summary judgment, this Court faithfully applied *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998), to hold that a Rimini update may be an infringing derivative work "even if the individual update contained only Rimini written expression," because if "it only interacts and is useable with PeopleSoft and it was designed using Oracle's utility tools software, it substantially incorporated [PeopleSoft] protected material." ECF No. 1253 ("MSJ Order") at 52-53.  Rimini does not dispute that Ms. Frederiksen-Cross relies on this definition of derivative works.  Rimini Daubert, Ex. C ¶¶ 179-80.[1]  Accordingly, Rimini's *Daubert* challenge is a procedurally improper motion for reconsideration barred by the law of the case doctrine. *See In re Flashcom, Inc.*, 503 B.R. 99, 128–29 (C.D. Cal. 2013), aff'd, 647 F. App'x 689 (9th Cir. 2016) (law of the case forbids a motion in limine on issue already resolved at summary judgment so a "dissatisfied litigant c[annot] continually seek reconsideration and prevent finality to the judgment").

**B.    Ms. Frederiksen-Cross's opinions regarding cross-use are not contrary to law.**

Rimini next takes issue with what it describes as Ms. Frederiksen-Cross's opinions regarding cross-use.  In doing so, Rimini both misstates what this Court held in its summary

---

[1] Unless otherwise noted, citations to letter exhibits reference the corresponding exhibits to the Declaration of Eric Vandevelde at ECF No. 1384-1 *et seq.*

judgment order <u>and</u> Ms. Frederiksen-Cross's opinions.

Ms. Frederiksen-Cross's testimony concerning cross-use tracks the Court's statement of the applicable law in its summary judgment ruling and jury instructions in *Rimini I* concerning cross-use. She presents instances of cross-use because, to develop updates and fixes, Rimini copies Oracle Software in one customer environment and does that for the benefit of many other customers. Ms. Fredrickson-Cross's testimony concerning cross use relies on the provisions of Oracle licenses limiting use of the software solely to a customer's internal data processing operations, and therefore not for other customers' operations. Based on this provision, on summary judgment, the Court held that Rimini was infringing Oracle copyrights where environments associated with Rimini customer City of Flint were "used to develop and test software updates for the City of Flint **and** other Rimini customers with similar software licenses." *Rimini I*, ECF No. 474 at 13 (emphasis added); *see also* MSJ Order at 45 ("Campbell Soup's license allows the licensee to use the software solely for its own 'internal data processing operations'"). The Court accordingly gave the jury the following instruction at trial: "The PeopleSoft software licenses prohibited Rimini Street from copying or preparing derivative works from PeopleSoft software *other than to support the specific licensee's own internal data processing operations* on the licensee's own computer systems. Any copying or preparation of derivative works outside the scope of those limitations was prohibited by the license agreements." *Rimini I*, ECF No. 880 at 30. Ms. Fredrickson-Cross's conclusion tracks with the Court orders.

In the paragraphs of Ms. Frederiksen-Cross's reports that Rimini has highlighted for exclusion, Ms. Frederiksen-Cross's opinions closely track this Court's rulings. Ms. Frederiksen-Cross explains that ███████████████████████████████████████████ ███████████████████████████████████████████ ███████ Ex. D ¶ 22 (emphasis added); *id.* ¶¶ 21-23. She further explains that EBS updates ███████████████████████████████████████████ ███████████████████████████████████████████ ███████ Ex. C. ¶¶ 382-83 (emphasis added); *id.* ¶¶ 390-94; *see also* Ex. D ¶¶ 24-27 (EBS prototyping discussion). Her JD Edwards cross-use opinions similarly rely on ███████████

1

2

3       ███████████████  Ex. D ¶¶ 28-29 (emphasis added); *see also* Ex. C ¶¶ 471-72, 474.  Rimini's

4   motion offers no basis to exclude these opinions.[2]

5       Rimini pretends that this Court has rejected Ms. Frederiksen-Cross's "prototype" theory of

6   cross-use as a matter of law.  Rimini Daubert at 23; *id.* at 25 (claiming "the Court rejected the anti-

7   prototyping theory that underpins the majority of Ms. Frederiksen-Cross's opinions").  The Court

8   did no such thing.  It <u>granted</u> summary judgment in *Rimini I* and again in this case to Oracle because

9   multiple instances of Rimini's prototyping demonstrated infringing cross-use as a matter of law.

10  The Court held it undisputed that Rimini "prototyped under color of Campbell Soup's license" a

11  PPACA update that it was not authorized to develop and test in Campbell Soup's environment and

12  then delivered that update to other licensees in violation of Oracle's copyrights.  MSJ Order at 43-

13  46.  Likewise, the Court held Rimini violated Oracle's copyrights by developing and testing a

14  PPACA update "in City of Eugene's environment as a 'prototype' for" other customers.  *Id.* at 53.

15      Even the portion of the MSJ Order Rimini highlights rejected its argument here.  The Court

16  <u>denied</u> Rimini's motion for summary judgment on infringement claims premised on its purported

17  "reuse of know-how," holding that Rimini "cannot use Oracle software to develop an update …

18  that it then distributes to another Oracle licensee."  MSJ Order at 85-88.  The Court further based

19  its denial on Ms. Frederiksen-Cross's opinion that "Rimini has copied files 'containing a substantial

20  amount of Oracle copyrighted EBS code,' which Rimini then uses to create updates for clients other

21  than the source of the copied EBS code," *id.* at 88; *id.* (similar for JDE source code files)—i.e., her

22  opinion that Rimini was not simply engaging in "know-how."

23      This Court went on to hold:

24      Moreover, Rimini's "know-how" argument is irrelevant to the Court's analysis:
        Rimini has presented no evidence that it took the "know-how" it received by
25      developing this update in City of Eugene's environment and used it to develop a
        separate update for other clients. Rather, the evidence shows that the update was
26      only developed in City of Eugene's environment and was then given outright to

27  _____
    [2] The same is true with Rimini's request to remove Ms. Frederiksen-Cross's ███████████

28  ███████████████████████████████████████████  If Rimini's
    motion is really limited to this narrow prototyping issue, it has no reason to exclude ████████

                                           4

three of Rimini's other clients.

*Id.* at 53.  In response, Rimini raises irrelevant arguments, ignoring that Ms. Frederiksen-Cross's opinions demonstrate that Rimini's processes ███████████████████████████████████

████  Rather, Rimini ████████████████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. C ¶ 31 ███████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████ ; *id.* ¶¶ 73-74, 200-01, 270-73 █████████████████

████████████████████████████████████████ ; *id.* ¶¶ 642-50 ██████████████

███████████████████████████████████████████████████. This Court already

found Rimini's conduct in this regard impermissible.  MSJ Order at 43-46, 53-55.

Rimini also implies, without evidence, that it memorizes know-how to service other customers.  Rimini Daubert at 25.  However, that is not what Ms. Frederiksen-Cross found; she opines that ████████████████████████████████████████████████████████████████

███████████████████████████████████ Ex. C ¶¶ 225-40, 600-01.[3]

Moreover, Rimini's knowledge-gained theory is wrong as a matter of law.  There is neither a "knowledge" nor a "know-how" defense to copyright infringement.  Rimini does not cite any authority to support its argument that if it is relying on "knowledge" gained from working on one customer's update, it can replicate that update for other customers.  Copying and cross-use are infringement, whether or not Rimini's engineers are staring at the code the moment they copy it. *See Berkla v. Corel Corp.*, 66 F. Supp. 2d 1129, 1140 (E.D. Cal. 1999) ("there is no doubt that 'copying' would include using the copyright protected expression as a model or a template for one's own work even if done from memory as opposed to actual or electronic tracing"); *Three Boys Music*

---

[3] Rimini also misrepresents other parts of Ms. Frederiksen-Cross's Report.  For example, Rimini claims Ms. Frederiksen-Cross assumed "any use of one client's software" to benefit another is cross-use, Rimini Daubert at 24 (citing Ex. C ¶ 24), but that paragraph actually says: ███████

████████████████████████████████████████████████████████████████████████████████

██████████████████ Ex. C ¶ 24.  That paragraph is limited to ███████████████████

███████████████████████████████████████████████████████████████ not merely

"any use of one client's software" for the benefit of another.

5

*Corp. v. Bolton*, 212 F.3d 477, 482-83 (9th Cir. 2000) (subconscious copying of song from memory does not excuse infringement), *overruled on other grounds by Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).  Even Rimini's expert Professor Astrachan concedes that memorizing and retyping is not "know-how."  Declaration of Benjamin Smith ("Smith Decl."), Ex. 1 (Astrachan Depo.) 126-27.  Nor is it even feasible to "memorize" and later reproduce the complicated code in this case.

Moreover, Rimini's challenge is overbroad.  Rimini claims that its *Daubert* challenge is limited to excluding Ms. Frederiksen-Cross's opinions "that the act of developing or testing an update in a 'prototype' client's environment and then separately developing and testing the same or a similar update in other clients' environments is 'cross-use.'"  Rimini Daubert at 25 n.6.  But this is a mischaracterization of the opinions that Rimini now seeks to exclude.

Finally, in *Rimini I*, this Court held Rimini in contempt where Rimini <u>claimed</u> it was merely using know-how (as it claims here), but in actuality Rimini was testing and troubleshooting updates for some customers using other customers' environments.  *Rimini I*, ECF No. 1548 at 27-29 (holding Rimini in contempt for using the environment of one customer that had not reported any bug to "develop [] knowledge and know-how" and using that knowledge in a complaining customer's environment to fix the bug).  Ms. Frederiksen-Cross ██████████████████████ and, just as in *Rimini I*, Rimini cannot escape liability by using the manufactured term "know-how."

**C.     Rimini's arguments on "analytic dissection" are wrong.**

Rimini's claim that Ms. Frederiksen-Cross did not conduct "analytic dissection" depends on misapplication of Ninth Circuit case law, ignores the reality of what Ms. Frederiksen-Cross did in her expert reports, and flies in the face of this Court's prior orders finding that Ms. Frederiksen-Cross has conducted analytic dissection.

Rimini implies in a footnote that Judge Hicks's *Rimini I* Order holding Rimini in contempt for willfully violating the injunction also held that Ms. Frederiksen-Cross's opinions failed the Rule 702 standard for lack of analytic dissection.  Rimini Daubert at 28 n.8 (citing *Oracle*, 2022 WL 112187, at *22).  But the Court held <u>exactly the opposite</u>:  her opinion in that case "conducted a form of analytic dissection," since it "considered the matching portions of the files and filtered for unprotected expression."  *Oracle USA, Inc. v. Rimini St., Inc.*, 2022 WL 112187, at *21 (D. Nev.

Jan. 12, 2022).  The *Rimini I* order also noted her methodology was not undermined by Rimini's arguments and found her "opinion[] helpful to [the Court's] ultimate conclusions and therefore decline[d] to disqualify" it as an expert opinion.  *Id.*  The Court similarly should deny Rimini's recycled *Daubert* motion against Ms. Frederiksen-Cross on analytic dissection.[4]

**First**, analytic dissection is <u>not</u> required where there is direct evidence of literal copying. "Analytic dissection" refers to identifying "those elements of a work that are protectable" before comparing the substantial similarity of the accused work to the original work.  *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442-43 (9th Cir. 1994).  When there is "literal similarity," such identification and comparison is unnecessary. 4 Nimmer on Copyright § 13.03[A][2] (2019); *see also Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1074 (9th Cir. 2021) ("As Professor Nimmer explains, '[i]f such duplication is literal or verbatim, then clearly substantial similarity exists'"); *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016) (noting that a plaintiff need not prove infringement via substantial similarity and access when there is "direct evidence of copying"); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012), *as amended* (June 13, 2012) (same); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2012 WL 13170064, at *3 (N.D. Cal. July 13, 2012) (denying *Daubert* motion and noting "abstraction/filtration/comparison test is not required where the alleged copying is literal code").

Here, Ms. Frederiksen-Cross found that ████████████████████████████ ██████████████████████████████████████████████████████████████. Ex. C ¶¶ 279-282, 608-10, 614-16, 627, 663-64, 669, 673, 731-738, 740 (████████████████████ ███████); Smith Decl., Ex. 2 (BFC Ex. SSS) (████████████████████████████████ ███████████████████████████████████████████); Ex. R ¶¶ 21, 43.  This is direct evidence of copying for which analytic dissection is not needed under Ninth Circuit law.

---

[4] Prior to the contempt hearing, the Court denied Rimini's motion in limine to exclude the testimony of Ms. Frederickson-Cross, stating: "There can be no dispute that Ms. Frederiksen-Cross is an expert in forensic software analysis—she has 45 plus years of experience as a software developer and consultant and is trained in forensic analysis of computer software in the context of copyright infringement. [*Rimini I*] ECF No. 1368-1-s ¶¶ 3-4. Her expert opinions have been considered in *Rimini II*, among other cases in this Circuit and the Court sees no reason, based on her qualifications or experience, that her opinions should be excluded here." *Rimini I*, ECF No. 1459 at 13.

1    **Second**, the idea that Ms. Frederiksen-Cross did not conduct the "proper" analytic

2    dissection test is wrong.  Experts performing analytic dissection are not required to follow one

3    "formal" methodology.  *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 694

4    (N.D. Ill. 2004); *see also In re Countrywide Fin. Corp. Mortgage-Backed Secs. Litig. v.*

5    *Countrywide Fin. Corp.*, 984 F. Supp. 2d 1021, 1036 (C.D. Cal. 2013).  Here, Ms. Frederiksen-

6    Cross ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ███████████████████████████, and she considered functional code versus code that is expressive

9    and has no programming rationale.  For example, Rimini asserts Ms. Frederiksen-Cross did not

10   "filter out unprotectable elements" or analyze whether matching code was "protectable," Rimini

11   Daubert at 27, but she did just that.  *See, e.g.*, Ex. C ¶¶ 279 (████████████████████

12   ████████████████████████████), 282 (████████████████████).  Ms.

13   Frederiksen-Cross also excluded files based on their lack of protected expression.  *E.g.*, Ex. R ¶¶

14   8, 48, 53 (████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████); Smith Decl., Ex. 3 (BFC Surrebuttal Ex. MM) ████████████████████

17   ████████); Smith Decl., Ex. 4 (BFC Ex. MMM) (████████████████████████████

18   ████████████████████████████████████████████████████████████

19   ████████).  Ms. Frederiksen-Cross further attempted to apply Professor Astrachan's flawed

20   method of analytic dissection and concluded that, even under his rubric, Rimini still copied

21   substantial amounts of Oracle's protected expression.  Ex. R ¶¶ 9-27.  The idea that Ms.

22   Frederiksen-Cross did not apply analytic dissection when comparing Rimini files to Oracle code is

23   fiction.

24       Moreover, Ms. Frederiksen-Cross did not just "match" lines of code but gave her expert

25   opinion regarding whether there was "substantial similarity" between files, including based on

26   functionality.  Ex. C ¶¶ 282, 338, 342, 345, 364, 640-41, 673, 803.  That comparison is what analytic

27   dissection entails.  *See Skidmore*, 952 F.3d at 1064 (operative question is whether infringing work

28   contains "substantial similarity in protectable expression"); *Oracle*, 2022 WL 112187, at *22

8

1   (analytic dissection is considering "matching portions of the files" and filtering "for unprotected

2   expression").

3       **Third**, Rimini falsely asserts that another court excluded Ms. Frederiksen-Cross's expert

4   opinion "because she failed to perform analytic dissection."  Rimini Daubert at 27 (discussing

5   *DropzoneMS, LLC v. Cockayne*, 2019 WL 7630788 (D. Or. Sept. 12, 2019)).  That is a remarkable

6   misstatement of *DropzoneMS*, which excluded her testimony because counsel proffered her expert

7   opinions nearly "six months after the expert discovery deadline," and the court concluded her

8   opinions could not be offered as lay testimony under Rule 701.  2019 WL 7630788, at *5-7; *see*

9   *also id.* at *7 (noting the burden of reliable methodology had not been met because the report "did

10  not even attempt to explain how either the UltraEdit text editor or Araxis Merge programs work—

11  likely because any attempt to do so would signal she is proffering expert testimony" rather than lay

12  testimony); *id.* at *14 (noting the plaintiff conceded "there is no 'filtration analysis' … because it

13  is not an expert report").  Rimini's selective editing of these quotes to ignore the party's attempt to

14  fit Ms. Frederiksen-Cross's expert opinion into a supposedly lay declaration betrays the

15  inapplicability of *DropzoneMS* to this case.  Furthermore, Rimini made the same argument in the

16  *Daubert* motion that it filed during the *Rimini I* contempt proceedings, *Rimini I*, ECF No. 1392 at

17  10-11, and again during its cross-examination of Ms. Frederiksen-Cross during the contempt

18  hearing, *Rimini I*, ECF No. 1537 (Tr. at 513:17-514:11).  On each occasion, the Court denied

19  Rimini's *Daubert* challenge.  *Rimini I*, ECF Nos. 1459 at 13-14, ECF No. 1548 at 34.[5]

20      **Finally**, Rimini's argument that Ms. Frederiksen-Cross cannot rely on her Surrebuttal

21  Report is wrong.  It consists of a surgical dismantling of Professor Astrachan's opinions.  Ex. R ¶¶

22  6-18, 28-73 (explaining why Professor Astrachan's myopic, ▮▮▮▮▮▮▮▮▮▮

23  ▮▮▮▮▮▮ is flawed, his rebuttal exhibits are misleading or ignore ▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮▮▮▮▮, and why his other criticisms of Ms. Frederiksen-Cross's Opening Report are

25  unfounded).  And the paragraphs Rimini complains about show that the ▮▮▮▮▮▮▮▮▮

26

_____

27  [5] *DropzoneMS* is also distinguishable because, there, the allegedly copied elements included "many
    third-party and open-source packages" and did not provide direct evidence of copying. *Id.* at *14.
28  Here, Ms. Frederiksen-Cross's opinions demonstrate ▮▮▮▮▮▮▮▮▮▮

Professor Astrachan requests (which is not required) only "further illustrate[s]" Ms. Frederiksen-Cross's opinion in her Opening Report that Rimini's code was substantially similar to Oracle's. *See id.* ¶¶ 22-27.

Thus, the Surrebuttal Report is not, as Rimini claims, a "correction of [] oversights in" Ms. Frederiksen-Cross's Opening Report; so Rimini's out-of-circuit cases are inapposite.  Rimini Daubert at 28 (quoting *Ernst v. City of Chicago*, 2013 WL 4804837, at *1 (N.D. Ill. Sept. 9, 2013); citing *Ironshore Ins. Ltd. V. W. Asset Mgmt. Co.*, 2013 WL 2051863, at *2 (S.D.N.Y. May 15, 2013)).  The *Ernst* case makes clear that experts may file "surrebuttal expert report[s]" so long as they are limited "to the scope of the issues raised in the rebuttal reports."  2013 WL 4804837, at *1; *id.* at *4-5 (denying motion to strike surrebuttal expert reports because they were "at least arguably, proper surrebuttal").

In addition to citing no authority barring Oracle's reliance on the Surrebuttal, Rimini has waited too long to lodge a complaint regarding Ms. Frederiksen-Cross's responses to Professor Astrachan's Rebuttal.  The Surrebuttal was served on September 14, 2018—*four years ago*, and prior to Ms. Frederiksen-Cross's deposition.  Rimini never sought any additional deposition testimony regarding the Surrebuttal, and never moved to strike the report (or challenged it in any way until now), yet the cases it relies on show a *three-month* delay in filing a motion to strike and the ability to depose the expert remove any prejudice from the Surrebuttal and favor its consideration.  *See Ernst*, 2013 WL 4804837, at *4; *see also Sherwin-Williams Co. v. JB Collision Servs., Inc.*, 2015 WL 4742494, at *1 (S.D. Cal. Aug. 11, 2015) (motion to strike filed less than month after supplemental report); *Nazar v. Harbor Freight Tools USA Inc.*, 2020 WL 4730975, at *2 (E.D. Wash. May 27, 2020) (motion to strike filed three days after supplemental report; motion denied because supplement was justified).

**D.      Rimini (not Ms. Frederiksen-Cross) misstates the DMCA standard.**

Rimini's final argument regarding Ms. Frederiksen-Cross's opinions is a procedurally improper dispositive motion on one of Oracle's claims.  Rimini makes legal arguments that could have been, but were not, raised in its motion for summary judgment regarding the scope of the Digital Millennium Copyright Act (DMCA).  *Cf. Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158,

10

1162 n.4 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015) ("A motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed.").  Rimini has waived these arguments—and, in any event, they are wrong.

**First**, Rimini argues that a work that removes copyright management information (CMI) must be an exact copy of the original work, Rimini Daubert at 29, but the law is to the contrary—especially in the software context. Where a defendant "modifie[s] source code '*substantially similar*' to Plaintiff's copyrighted source code," including by replacing the author's name with its own, the defendant is liable under the DMCA. *Enter. Tech. Holdings, Inc. v. Noveon Sys., Inc.*, 2008 WL 11338356, at *14-16 (S.D. Cal. July 29, 2008) (emphasis added); *see also Empire Med. Review Servs., Inc. v. CompuClaim, Inc.*, 326 F. Supp. 3d 685, 689-91 (E.D. Wis. 2018) (denying summary judgment to defendant where it used the plaintiff's source code "as a starting point" for its software); *Bounce Exch., Inc. v. Zeus Enter. Ltd.*, 2015 WL 8579023, at *1 (S.D.N.Y. Dec. 9, 2015) (DMCA claim stated where defendant sold software that directly reproduced "portions of [plaintiff's] code, structure, sequence, and organization"); *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 457-58, 462 (S.D.N.Y. 2009) (denying motion to dismiss DMCA claim where the defendant news outlet found news stories online and republished them "either rewriting the text or copying the stories in full" with the AP "author or copyright" information omitted).  In the Ninth Circuit, a "'striking similarity' between the works may give rise to a permissible inference of copying" supporting a DMCA claim.  *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016).  These cases support the commonsense position that a party may not copy a software file, remove CMI, and then avoid DMCA liability by adding to the code.[6]

Even if Rimini's reading of the DMCA were correct, Ms. Frederiksen-Cross's Opening Report identified several examples ████████████████████

---

[6] Rimini's case implying that the infringing work should be an exact copy dealt with "images," not software. *Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020). And its other case is inapposite, as it dealt with architecture plans and assumed that scanning copyrighted plans constituted copying but noted there was "no evidence even suggesting that the CMI was removed." *Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017); *see also Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556 (D. Hawai'i Jan. 21, 2015) (dealing with new design based on prior architect's work—not exact copying of portions of software).

1    ██████████████████████████████████████████████████████████████  *See,*

2    *e.g.,* Ex. C ¶¶ 825-26 (finding ████████████████████

3    ████████████████████████████████████; and Exs. AA.1 and AA.2 to the

4    Frederiksen-Cross Report show Rimini ██████████████████████████ *id.*

5    ¶¶ 660-63 █████████████████████████████████████████████████

6    ███████████████████████████████████████████████████████████████

7    █████████; Smith Decl., Exs. 11 and 12 (BFC Exs. AA.1 and AA.2).  These are examples of

8    ███████████████████████████████████████████████████████████████

9    █████, plainly satisfying DMCA.[7]

10        **Second**, Rimini argues that a defendant must have removed the CMI, rather than copy the

11   entire file except for the CMI, to give rise to DMCA liability.  That is wrong, and Rimini cites no

12   support for this nonsensical view.  Moreover, the DMCA prohibits both the intentional removal of

13   CMI from infringed works, as well as the distribution of that work with knowledge that CMI "has

14   been removed or altered."  17 U.S.C. § 1202(b)(1), (3).  While the *Frost-Tsuji* case Rimini cites

15   alleged intentional removal of CMI under Section 1202(b)(1), which forbids "intentionally

16   remov[ing] or alter[ing] any" CMI, that case is inapposite since Oracle's claims arise under

17   Sections (b)(2) and (b)(3), which forbid distribution with knowledge that CMI has been removed

18   or altered—i.e., these latter two section may be violated without removal.  *See* ECF No. 584 ¶ 184.

19        Under those sections, Oracle can "prevail upon a showing that [Rimini] distributed

20   [Oracle's] works with the knowledge that CMI had been removed, even if [Rimini] did not remove

21   it."  *Friedman*, 833 F.3d at 1187; *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL

22   10350547, at *11 (C.D. Cal. Nov. 13, 2017) ("Defendants may still be held liable if they distributed

23   Plaintiff's Logo with knowledge that the CMI had been removed, even if [they] did not remove

24   it."); *Reno-Tahoe Specialty, Inc., v. Mungchi, Inc.*, 2014 WL 7336082, at *11 (D. Nev. Dec. 19,

25   ───────────────────

26   [7] Ms. Frederiksen-Cross also identified several other instances of files being substantially similar
     to Oracle files █████████████████████████████████████████████████

27   ███████ Ex. C ¶¶ 667-68 █████████████████████

28   ███████████ *id.* ¶ 806 ████████████████████████████████

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

1   2014) (noting same, and holding there was evidence the defendant knew, or had reasonable grounds

2   to know, CMI was removed as an image was cropped to remove the CMI).

3       In any event, there is clearly evidence of removal (and thus distribution with knowledge of

4   removal) here.   Ms.  Frederiksen-Cross  notes ███████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ███. Ex. C ¶ 549. ████████████████████████████████████████████████████████████

7   ██████████████████████████████████████████████ *id.* ¶¶ 206-14.  As just one example,

8   Ms. Frederiksen-Cross analyzed files of ██████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████████

10  ██████████████████████████████████████████ *Id.* ¶¶ 821-24 (including

11  screenshot).  Ms. Frederiksen-Cross's Report includes evidence of removal of CMI, and certainly

12  of distribution with knowledge of removal, so this motion should be denied.

13  **II.    PAUL PINTO'S AVOIDED COST ANALYSIS AND OPINION THAT RIMINI**
         **COULD NOT OFFER A ███ DISCOUNT WITHOUT INFRINGEMENT**

14       **SHOULD NOT BE EXCLUDED.**

15      In its *Daubert* motion challenging several of Mr. Pinto's causation opinions, Rimini raises

16  arguments relating to the weight of his opinions, not their admissibility.  First, Rimini misrepresents

17  Mr. Pinto's reliance on another expert and on Rimini's ███████████████████████████████

18  ████████████████████████████████████████ figure.  While Rimini may be able to

19  present its own causation evidence, that does not undermine the *reliability* of Mr. Pinto's opinion.

20  Second, Rimini disagrees with Mr. Pinto's expert conclusion that, based on ████████████████

21  ████████████████████████████████████████ would have made Rimini's ███ discount

22  impossible.  Again, Rimini may present contrary evidence at trial, but that does not undermine the

23  reliability of Mr. Pinto's opinions.[8]

24      **A.    Rimini identifies no reason to exclude Mr. Pinto's avoided-costs analysis.**

25      Rimini does not challenge Mr. Pinto's qualifications as an expert, or the relevance of his

26  ———————————————

27  [8] Rimini also attacks Mr. Pinto's conclusion that Rimini's ███ discount caused Oracle to lose
    clients, incorrectly describing Mr. Pinto's opinion as relating only to specific customers' state of

28  mind.  Oracle's response to this argument—and Rimini's other arguments (against McDaniel and
    Cauthen) concerning so-called "state of mind" testimony are addressed below in Section V.

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

1  causation opinions to this case.  Rather, Rimini attacks the reliability of Mr. Pinto's avoided-costs

2  analysis—*i.e.*, his conclusion that Rimini's ████████████████████████████████████

3  ████  Both of Rimini's arguments against the reliability of that conclusion fail.

4        **First**, ████████████████████████████████████████████████████████████

5  ██████████████████████████████  Mr. Pinto went through six steps to come to this conclusion:

6  (1) he reviewed the record and identified documents and testimony regarding Rimini's efficiency

7  and cost savings from infringing practices, (2) generated random samples of Rimini's fixes and

8  updates with the help of a statistician, (3) analyzed the fixes in the samples to calculate the time

9  Rimini saved on each fix by cross-using using Function Point Analysis, a standard method of

10  analysis introduced by IBM in 1979 to estimate the costs of software development, (4) calculated

11  the average time saved with the help of a statistician, (5) used input from Ms. Frederiksen-Cross

12  regarding number of cross-uses to estimate total number of hours saved, and (6) used wage data to

13  calculate ████████████████████████████████████████████████  Ex. H

14  § 7.1.1 (summary of process); *id.* §§ 7.1.1.1-10 (more detailed explanation of every step).  The

15  opinion does not attempt to calculate avoided labor costs from other infringement by Rimini and

16  therefore, in Mr. Pinto's estimation, is conservative.  *Id.* § 7.1.2.

17        The statistician who helped Mr. Pinto generate random samples of updates (step 2) and

18  average the time saved (step 4) is Dr. Levy—who served an expert report in this case, but who

19  Oracle has decided it need not call as an expert witness given the tight time constraints on trial

20  testimony.  To be clear, Mr. Pinto does not rely on Mr. Levy's expert report in any way, so all of

21  Rimini's cases are inapposite.  Rimini Daubert at 11 (citing *TK-7 Corp. v. Est. of Barbouti*, 993

22  F.2d 722, 731 (10th Cir. 1993), which limits a testifying expert's ability to use the expert <u>report</u> of

23  another expert not called at trial, but not limiting reliance on absent expert's opinions generally;

24  *Villagomes v. Lab'y Corp. of Am.*, 2010 WL 4628085, at *4 (D. Nev. Nov. 8, 2010), permitting

25  experts to "rely on opinions of non-testifying experts as a foundation" but disallowing "parrot[ing]

26  the opinions of non-testifying experts").  Dr. Levy's assistance in creating a random sample and

27  calculating a mean average is not expert testimony—and Mr. Pinto does not "parrot" any opinion

28  by Dr. Levy. *See Villagomes*, 2010 WL 4628085, at *4 ("a qualified expert may base his opinions

on facts or data made known to him if it is of a type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject"). Mr. Pinto adequately described his process in a manner that "can be … tested": step 2 involves the creation of a random sample, and step 4 involves calculating an average. *See Boyd v. City and Cty. of S.F.*, 576 F.3d 938, 945 (9th Cir. 2009). His methodology is reliable, and the fact that Dr. Levy isn't testifying is irrelevant.

**<u>Second</u>**, Rimini claims that Mr. Pinto assumed it should take an engineer the same amount of time developing an update for Client A and Client B, which Rimini argues is in "conflict" with this Court's MSJ Order. That claim misrepresents Judge Hicks's order and Mr. Pinto's opinion.

At summary judgment, this Court did not hold that Rimini engineers gain increased efficiency every update they create, and thus that the manner in which Rimini engineers actually save time is not cross-use. Rather, the Court held there was a material dispute of fact that prohibited summary judgment in favor of Rimini because Oracle presented evidence that Rimini was able to increase its subsequent client update speed because it copied files with Oracle code to create updates for Rimini clients—clear examples of cross-use. MSJ Order at 88. What Rimini engineers actually did goes to the weight of the evidence—as this Court already held in finding a material dispute of fact. Rimini can attempt to critique Mr. Pinto's evidence before the jury if it wishes, but Mr. Pinto's testimony may not be excluded based on Rimini's mere say-so.

Moreover, Mr. Pinto's Report <u>did</u> assume increased efficiency, so Rimini's argument is based on a false premise. In Section 7.1.1.6, Mr. Pinto explains that, to be "conservative" about how much time Rimini engineers were saving through cross-use, he excluded the "Plans & Requirements" phase and the "Transition" phase from each client's software development life cycle. Ex. H at 71-74. Mr. Pinto excluded ███ of Rimini's potentially infringing labor hours from his calculations. *Id.* at 72. The other ███ of time is spent on design, coding, and testing— tasks "specific to an individual customer" that could not be avoided absent infringing cross-use and that could not be made more efficient through know-how or experience, especially given wide variations in Oracle products, customer-specific modules, and the like. *Id.* at 73.

**B.    Mr. Pinto's opinion that Rimini could not offer a ▮▮▮ discount without infringement is admissible.**

Next, Rimini labels Mr. Pinto's opinion that Rimini's ▮▮ discount from Oracle's support services was made possible only by Rimini's cost-saving copyright infringement as "pure *ipse dixit*." Rimini Daubert at 13. In so doing, Rimini ignores the analysis performed by Mr. Pinto providing the very support that Rimini asserts is lacking. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮. *See* Ex. H at 114-19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 76—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. M at 78-79—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 78 ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9]

Mr. Pinto's opinion is not based on *ipse dixit* or circumstantial evidence, as Rimini alleges. Rimini Daubert at 13-14. Rimini's cases where a purported expert "has not provided any explanation for his opinion" from any "specialized insight," *Prall v. Ford Motor Co.*, 2017 WL 361545, at *3-4 (D. Nev. Jan. 24, 2017), or makes an assertion with no support at all (such as stating a patient's surgery is or is not necessary based on general knowledge of "the literature"), *Carlson v. Sam's W., Inc.*, 2022 WL 428551, at *3 (D. Nev. Feb. 11, 2022), are inapposite.

Rimini may offer evidence ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to contradict Mr. Pinto's opinion—but that does not make his opinion unreliable or excludable under Rule 702.

Rimini has offered no evidence that contradicts Mr. Pinto's conclusion regarding ▮▮▮

---

[9] *See also* Ex. N at 80-81 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.



ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

1   ███████████████████████████████████████████████████████. But

2   even if it could, that evidence (and Mr. Pinto's contrary opinions) should be presented to the jury.[10]

3   **III.   ELIZABETH DEAN'S HYPOTHETICAL NEGOTIATION MODEL AND CAUSATION OPINIONS SHOULD NOT BE EXCLUDED.**

4   Oracle proffers Ms. Dean as a damages expert.   Rimini asserts that two aspects of Ms.

5   Dean's damages estimates are unreliable, but both challenges miss the mark. Rimini Daubert at 18.

6   First, Rimini seeks to exclude Ms. Dean's hypothetical negotiations model that partly forms the

7   basis of her hypothetical license damages calculation. Rimini's objection to Ms. Dean's

8   hypothetical negotiations model fails to recognize that Ms. Dean's use of a license ██████████

9   ████████████████████████████████████ was not the sole license that she

10  relied on for her model and that her approach to valuation did not require her to use it as a

11  benchmark. Further, contrary to Rimini's position, the royalty rate of the license ███████

12  ███ is not a component of Ms. Dean's model. Second, Rimini objects to what it refers to as Ms.

13  Dean's "general causation opinion." Ms. Dean's opinions concerning what caused Rimini's

14  customers to leave Oracle are not based on her *ipse dixit*, but rather on Ms. Dean's expert analysis

15  of the deposition testimony of numerous Rimini customers, as well as other evidence in the record.

16  Rimini's contentions here may go to the weight of Ms. Dean's challenged opinions, but not to their

17  admissibility. Rimini's motion as to Ms. Dean's opinions should be denied.

18  **A.   Ms. Dean's hypothetical negotiation model is reliable.**

19  An expert's opinions on hypothetical-license damages are admissible if they are not "unduly

20  speculative," *Williams v. Gaye*, 895 F.3d 1106, 1129 (9th Cir. 2018). To meet this standard, an

21  expert need not "present evidence of benchmark agreements." *Oracle Corp. v. SAP AG*, 765 F.3d

22  1081, 1093 (9th Cir. 2014). Thus, in *Williams*, the Ninth Circuit held that an award based on an

23  expert's hypothetical-damages opinion was reasonable, despite there not being a previous

24

25  [10] Rimini also implies, though does not clearly state, that Mr. Pinto has had similar testimony
    excluded before.  Not so.  A district court in another circuit, *McLane Co., Inc. v. ASG Techs. Grp.*

26  *Inc.*, 2019 WL 590081 (W.D. Tex. Jan. 2, 2019), excluded analysis that assumed the value of certain
    software was "priced solely by the number of sessions," where suites actually could be "customized

27  by number of products, concurrent sessions, servers, and CPUs," such that "[n]o evidence suggests
    the suites are priced solely by session."  *Id.* at *11.  Mr. Pinto's supplemental report in that case,

28  based on the full complement of production materials, was not met with any exclusions.

benchmark license between the parties, because the expert used an "industry standard" and presented "extensive and specialized knowledge regarding the type of hypothetical license at issue." 895 F.3d at 1129. As in *Williams*, Ms. Dean used an industry standard and applied her specialized expertise in her hypothetical negotiation model based on the income approach—an approach that Rimini has not argued is unreliable. Her resulting calculations were "objective" and the result of "examin[ing] the financial perspectives of both the willing buyer … and the willing seller at the hypothetical time of sale." *Jarvis v. K2 Inc.*, 486 F.3d 526, 534 (9th Cir. 2007).[11]

Rimini's arguments as to Ms. Dean's hypothetical negotiation model are fundamentally flawed.  Rimini is wrong in asserting that "Ms. Dean fails to provide any examples of other licenses that do not involve intra-Oracle deals, despite there being numerous viable third-party support businesses in the marketplace." Rimini Daubert at 19.  Ms. Dean cited to, and referenced, numerous other licenses noting that ███████████████████████████████████████████ ██████████████████████████████████████████████████████████." Ex. B at ¶ 44, n.319; *see also* Smith Decl., Ex. 5 (Dean Schedule 28) (██████████████████████ ████████). Analyzing those fees led Ms. Dean to conclude that ████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████ *Id*. ¶ 45.

Moreover, Ms. Dean's use ██████████████████████████ is a reliable basis for her opinion. Ms. Dean did not use █████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Ex. B at ¶124. As noted above, Rimini has not challenged Ms. Dean's overall approach as unreliable.

Contrary to Rimini's assertion, it is not "simply implausible to expect that the amount one corporate component of Oracle pays another to license copyrighted works represents a reasonable proxy for what a third-party competitor would agree to pay to Oracle in a hypothetical negotiation," Rimini Daubert at 19. That is precisely the standard that Oracle must demonstrate it meets in order

---

[11] Ms. Dean's opinions here are not related to the expert's proffered opinions in *Oracle Corp. v. SAP AG*. The expert there did not apply the income approach that Dean does here.  Nor did the expert there use an industry standard license as part of his model. *See* 765 F.3d at 1093.

for the price of the license to be a valid transfer pricing arrangement under the tax laws. Under Treasury regulations, a license fee between affiliated entities must meet the "arm's length standard"—a standard that is only met if "if the results of the transaction are consistent with the results that would have been realized if uncontrolled taxpayers had engaged in the same transaction under the same circumstances.'" *Amazon.com, Inc. v. Comm'r*, 934 F.3d 976, 980 (9th Cir. 2019) (citing Treas. Reg. § 1.482-1(b)(1)); *see also Comm'r v. First Sec. Bank of Utah, N.A.*, 405 U.S. 394, 400 (1972) ("The purpose of section 482 is to place a controlled taxpayer on a tax parity with an uncontrolled taxpayer, by determining according to the standard of an uncontrolled taxpayer."). ████████████████████████████████████████████ Ex. B ¶ 138, n. 312. ███████████████████████████████████████████ but rather one that had to be, and was, based on a standard required by the tax laws ███████████ ███ and that is nearly identical to the one courts in the Ninth Circuit use to estimate copyright damages. *See SAP AG*, 765 F.3d at 1088 ("Hypothetical-license damages must be based on what "a willing owner actually would have charged after negotiation with the buyer").

Rimini also is incorrect in claiming that "Ms. Dean's analysis fails to demonstrate, as is required by the case law, that ███████████████████████████████████████ ████████████████████████████████." Rimini Daubert at 20 (internal quotation marks omitted). Ms. Dean did exactly that—spending six full pages of her report discussing the benefits that Rimini would receive from entering a license agreement with Oracle. Ex. B 75-82. Ms. Dean noted that these benefits would include ██████████████████████████████████████████████ ██████████████████████████████████ and then went on to analyze and quantify those many benefits based on her expertise and the available data. *Id*. ¶ 146. Ninth Circuit precedent is clear that Ms. Dean "need not demonstrate that [Oracle] would have reached a licensing agreement with the infringer." *SAP AG*, 765 F.3d at 1093. And, contrary to Rimini's assertion, Ms. Dean does connect the benefits to Oracle from a license to its willingness to pay for one. Among other factors, she notes that ████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████. Ex. B ¶¶ 149-152. Rimini's challenges to the factors that Dean considered in making

1    this determination go not to her reliability, but at most to the weight of this evidence. *Rimini I*, ECF

2    No. 636 at 6.

3        **B.    Ms. Dean's opinions on causation are admissible.**

4        Ms. Dean opines that, █████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████ Ex. B at ¶¶ 80-98. Rimini is wrong to assert that "Ms. Dean

7    discloses no analysis about customer decision making in her report and offers no explanation of

8    any causal link between Rimini's alleged infringement and Oracle's damages." Rimini Daubert at

9    21. As Ms. Dean testified at her deposition, her causation opinions were based on her "drawing on

10   the factual evidence" such as "Rimini documents" and applying her expertise. Smith Decl., Ex. 6

11   at 287-288. Contrary to Rimini's assertion, Ms. Dean's report cites to testimony and evidence in

12   the record as support for her opinion. Ex. B ¶ 84, n.193 (collecting evidence and testimony).

13       Additionally, her report discusses several factors that contributed to, and explain, her

14   causation analysis. ███████████████████████████████████████████████████████████

15   ███████████████████████████████████ *Id.* ¶¶ 81-82. Ms. Dean also points to how ████████

16   ████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████ *Id.* ¶¶ 86-90. These considerations based on evidence in the

18   record—and plain common sense—explain Ms. Dean's opinion that Rimini's ████ pricing model

19   would be a substantial factor in convincing customers to leave Oracle.

20       These opinions are not "*ipse dixit* assertions," as Rimini contends, and this case is very

21   different from *Bayoh v. Afropunk LLC*, 2020 WL 6269300, at *5 (S.D.N.Y. Oct. 26, 2020), on

22   which Rimini relies. In *Bayoh*, the court excluded an expert's damages opinion because it

23   concluded that there was a "complete absence of evidence to establish causality." *Id*. By contrast,

24   Ms. Dean cited to deposition testimony and other evidence to support her opinion. *Barber v.*

25   *Corizon Health, Inc.,* 2019 WL 8112500, at *1 (W.D. Pa. May 6, 2019) (declining to exclude

26   experts' testimony on causation that was based on "a variety of medical, jail records, and deposition

27   testimony" that the experts "then construed" using their "background and experience."); *Boykin v.*

28   *W. Exp., Inc*., No. 12-CV-7428 NSR JCM, 2015 WL 539423, at *6 (S.D.N.Y. Feb. 6, 2015)

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

(admitting expert testimony on causation based on " [a] report, witness deposition testimony, a fairly comprehensive collection of photographs of the damage to the vehicle, the police report, Plaintiff's medical records, and his years of experience.")

## IV. JOHN CAUTHEN'S OPINIONS ANALYZING AND COMPARING RIMINI'S SYSTEMS SHOULD NOT BE EXCLUDED.

Oracle proffers the expert testimony of former FBI special agent John Cauthen to rebut the testimony of Rimini's purported expert Owen Astrachan. Ex. A ¶¶ 1, 5. During his almost 22 years of service with the FBI, Cauthen focused his career on copyright infringement and other cybercrimes. *See id.* ¶¶ 5–17. In connection with this work, Cauthen "routinely analyzed technical and computer evidence to assess the reasons why computer and software tools were designed in certain ways and what they were designed to accomplish." *Id.* ¶ 12. These accomplishments more than qualify him to assess the design and function of Rimini's systems. Nonetheless, Rimini contends Cauthen presented inadmissible testimony about Rimini's ▮▮▮▮ and about how Rimini's practice compares to that typical of support practices for Enterprise Resource Planning ("ERP") software. Both arguments fail, and each category of Cauthen's opinions is admissible expert testimony.

### A. Cauthen's substantiated ▮▮▮▮▮▮ is admissible.

Rimini moves to exclude Cauthen's opinions about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—which Cauthen testifies are another means of cross-using Oracle's code. Ex. A ¶ 45. Specifically, Rimini asserts that Cauthen's technical analysis lacks foundation and is therefore "unreliable." Rimini Daubert at 9. Not so. The purpose of Cauthen's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ after *Rimini I*. *See* Ex. A ¶ 45 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That analysis was straightforward: he compared the files ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* ¶ 54 (explaining Cauthen's comparative

21

1   process).   If the files matched, he concluded there was cross-use.   *See id.* ¶¶ 55–62 ████

2   ████████████████████████████████████████████████████████████████.   Thus,

3   contrary to Rimini's argument, ████████████████████████████████████████

4   ██████████████████████

5       **B.**    **Cauthen is qualified to opine on the ERP support industry.**

6       Rimini also seeks to exclude Cauthen's testimony that Rimini's conduct ████

7   ██████████████████████████   in the ERP support industry because Cauthen testified he is not

8   specifically an expert in the ERP support industry.   Rimini Daubert at 9–10.   But one need not have

9   an expertise specific to the ERP support industry *in particular* to know what is commonplace or

10   customary in the computer-systems industry *in general*.   *See Roman v. W. Mfg., Inc.*, 691 F.3d 686,

11   692–93 (5th Cir. 2012) (holding that a "district court was within its wide discretion to conclude

12   that the[] offered witnesses had the qualifications to state a reliable opinion" despite their lack of

13   experience in the specific industry at issue); *see, e.g.*, *In re Corporate Res. Servs., Inc.*, 603 B.R.

14   888, 896 (Aug. 22, 2019) (S.D.N.Y. 2019) (holding that an consultant experienced in financial

15   analysis and valuation services could serve as an expert on the value of a business despite "not

16   hav[ing] the expertise of valuing staffing companies or the narrow disputes in this lawsuit," as "lack

17   of industry-specific experience is not disqualifying"); *United States v. Holmes*, No. 18-258, 2021

18   WL 2035177, at *3 (N.D. Cal. May 21, 2021) (holding that a doctor "qualified to opine about

19   laboratory practices and clinical pathology generally" could serve as an expert on company's

20   fingerstick blood testing despite lack of experience specific to that type of test).   In Cauthen's case,

21   being an expert in computer systems and cybercrimes qualifies Cauthen to testify that it not

22   commonplace for ERP support providers ████████████████████████████████████

23   ██████████████████████████████████████████████████████████████████

24   ██████   Ex. A ¶ 127; *see also id.* ¶¶ 5–17 (detailing Cauthen's experience analyzing computer

25   systems).   Rimini's motion as to Cauthen's opinions should be denied.

26   **V.**    **RIMINI'S CONTENTIONS CONCERNING "STATE OF MIND" OPINION**
   **TESTIMONY ARE MISPLACED AND OVERBROAD.**

27

28       Rimini's remaining arguments for excluding portions of the opinions of Oracle's experts

1   are based on assertions that they improperly speculate as to the intent, knowledge, or state of mind

2   of Rimini, its employees, or its customers. But Rimini provides the wrong standard for expert

3   opinion on these subjects, and its contentions about portions of the opinions of Mr. Pinto, Mr.

4   Cauthen, and Dr. McDaniel are incorrect or overbroad.

5          Courts will admit an expert's testimony as to the intent or knowledge of an organization or

6   its employees where the testimony is based on the expert's specialized knowledge and a review of

7   record evidence, as opposed to "purely speculative opinions on the subjective motivations or beliefs

8   of employees or executives." *United Food & Com. Workers Loc. 1776 & Participating Emps.*

9   *Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1194 (N.D. Cal. 2017);

10  *see also In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 2022 WL 2343268, at *44

11  n. 50 (N.D. Cal. June 28, 2022) ("courts in the Ninth Circuit have allowed such expert testimony

12  about the actions and motivations of a party when based on industry experience and the review of

13  record evidence.") (citation omitted). Additionally, an expert can rely on expertise and facts in the

14  record to provide an "opinion that certain actions require or demonstrate a certain mental state."

15  *Beaton v. SpeedyPC Software*, 2017 WL 6569630, at *4 (N.D. Ill. Dec. 21, 2017). For example, in

16  *United Food & Com. Workers*, the court held that expert opinion as to the intent of a company to

17  launch generics was admissible, where the opinion was based on a review of record evidence

18  including "public and non-public comments that were made" and where expert had insights due to

19  "industry experience." 296 F. Supp. 3d at 1194.

20      **A.    Mr. Pinto's opinion, based on documentary evidence and industry expertise,
               that customers value Rimini's massive discounts is admissible.**

21

22         Rimini claims that Mr. Pinto's opinions regarding the effect of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

23  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ are opinions concerning customers' state of mind or motivations

24  and thus should be excluded.  But Mr. Pinto's opinion is not about state of mind or "unexpressed

25  reasons for [customers'] decisions." *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon*

26  *Univ.*, 927 F. Supp. 2d 1069, 1078 (D. Or. 2013); *see also Oracle Am., Inc. v. Hewlett Packard*

27  *Enter. Co.*, 2018 WL 6511146, at *2 (N.D. Cal. Dec. 11, 2018) (forbidding drawing inference

28  regarding intent or motive).  Instead, Mr. Pinto's opinions are based on (i) documentary evidence

1   in the record, and (ii) "considerations on which persons in the field generally rely," which Rimini

2   agrees are admissible, Rimini Daubert at 15.

3       First, Mr. Pinto made clear his opinion as an industry expert[12] that CIOs of customers "are

4   generally risk averse and cost sensitive," and it is an "industry norm" that "most CIOs will not

5   switch vendors for anything less than a 30% cost savings, assuming an equivalent level of quality."

6   Ex. H at 131-32 (discussing hurdle rates of "30 percent to 50 percent," and opining that "the vast

7   majority of CIOs would not consider terminating" Oracle support services "without cost savings of

8   more than 30%").  This opinion is based on his knowledge of the industry and industry documents

9   he reviewed, and is not about any specific customer's state of mind.  As a result, the opinion is

10  admissible under *Oracle*, 2018 WL 6511146, at *2, as regarding "the considerations on which

11  persons in the field generally rely."  Rimini Daubert at 15.

12      As noted above, courts have admitted expert testimony regarding the intent of companies

13  (*e.g.*, whether they had decided to launch generics) based on a review of record evidence and

14  "public and non-public comments that were made" where an expert had insights due to "industry

15  experience," so long as the expert did not opine on what company "executives subjectively decided,

16  thought, believed, or intended."  *United Food & Com. Workers*, 296 F. Supp. 3d at 1194 (N.D. Cal.

17  2017); *see also JUUL Labs, Inc.*, 2022 WL 2343268, at *44 & n.50 ("courts in the Ninth Circuit

18  have allowed such expert testimony about the actions and motivations of a party when based on

19  industry experience and the review of record evidence") (citation omitted).  Mr. Pinto's opinions

20  based on the review of record documents and his industry expertise are admissible.

21      Second, again using his industry background, Mr. Pinto describes the information and many

22  thousands of customer documents he reviewed, ███████████████████████████████████████

23  ██████████████████████████████.  Ex. H at 51-53 (citing appendices); *see id.* at 56

24  (review of Rimini customer documents and depositions).  ███████████████████████████

25  ███████████████████████████████████████████████████  *id.* at 23, 77,

26  and Mr. Pinto also clearly indicated customers whose documents did not reveal as much, *see*

---

[12] Whether Mr. Pinto's "experience is an exact fit with the particulars of this case is a matter for cross-examination. So is whether he has examined sufficient material to support his opinions." *Oracle*, 2018 WL 6511146, at *2.

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

1    Appendices 3.1, 7.

2         Finally, Rimini ends its argument by faulting Mr. Pinto for not undertaking a "sensitivity or

3    elasticity analysis to show how customer decisions to leave Oracle would have been different if

4    they had received a different discount from Rimini." Rimini Daubert at 16-17.  But Rimini provides

5    no reason why such an analysis is needed.  Mr. Pinto looked at the ▮▮▮ discount that Rimini

6    advertises widely ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. M at 73-74, 77—and

8    opined ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Rimini also ignores Mr. Pinto's explanation that "a Customer

10   would not leave their incumbent Vendor for anything less than a 30% savings off of what they were

11   paying for Oracle Maintenance and Support Services," and that the 30% figure is "quite

12   conservative" and derived "exercising an abundance of caution." Ex. H at 131-32.  This opinion is

13   not "conclusory," as it is based off Mr. Pinto's industry experience, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14   ▮▮ and literature regarding CIO practices.  *Id.*

15        **B.    Dr. McDaniel's statements in his opinion are not inadmissible speculation
              concerning the state of mind of Rimini or its employees.**
16

17        Dr. Patrick McDaniel is indisputably qualified to provide expert opinions about Rimini's

18   deficient security offerings for Oracle licensees. Ex. F ¶¶ 5, 8-18. Rimini's own security expert, Dr.

19   Aviel Rubin, agrees that Dr. McDaniel is an expert in the fields of computer security software and

20   network security.  Smith Decl., Ex. 7 (Rubin Depo.) at 59:15-21.

21        Each of his opinions is grounded in Dr. McDaniel's expertise in the "field of network and

22   security management, computer systems, authentication, systems security, applied cryptography

23   and network security"—which Rimini does not dispute. Ex. F ¶ 18. And at his deposition, McDaniel

24   stated that he was applying this technical background in rendering his opinions. Smith Decl., Ex. 8

25   (McDaniel Depo.) at 46:16-47:16. He confirmed that "what I'm discussing is whether somebody

26   understood something based on what they said and – and what they're acting on. I have no idea

27   what their state of mind is" and that his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1     ███████████████████████████████████████████ *Id*. at 47:25-48:13: 250:23-

2 251:3. Dr. McDaniel's opinions about Rimini's security offerings will be helpful to the jury because

3 he is offering specialized knowledge about Rimini's inability to provide adequate security to its

4 customers.

5       Rimini does not challenge the reliability or relevance of Dr. McDaniel's opinions.  Instead,

6 Rimini quibbles with certain statements in Dr. McDaniel's reports that Rimini asserts are improper

7 expert opinion about the intent, motive, or state of mind of Rimini and its employees. Rimini

8 Daubert at 1. But the bulk of the opinions challenged by Rimini are not, in fact, opinions about

9 Rimini's (or its employee's) state of mind, but rather examples of Dr. McDaniel applying his

10 expertise in analyzing the record evidence, including admissions by Steven Salaets, Rimini's Rule

11 30(b)(6) deponent and the testimony of Rimini employees concerning the company's security

12 policies.  Ex. F ¶¶ 5, 75, 105, 107-08, 110-111, 122-24, 158, 162, 170, 175, 176, 207, 212, 220,

13 221, 223, 224 Opinions 5, 6, and 21; Ex. G ¶¶ 8, 18, 24, 28, 72 and 76.  Rimini does not provide

14 any argument for excluding these opinions, which are relevant, reliable, and should be admitted.

15       In many of the examples that Rimini cites, Dr. McDaniel is applying his expertise to the

16 facts and evidence of record and opining on what this evidence reveals about ██████████████

17 ██████████████████████████████████████████████████████████████████

18 As one example, Rimini seeks to exclude Dr. McDaniel's opinion as to how Rimini ████████

19 ████████████████████████████████ Ex. F ¶ 75 (emphasis added). But in the

20 preceding paragraph Dr. McDaniel cites numerous examples of the ██████████████████

21 ██████████████████████████████████████████████████████████████████

22 ████████████████████████████████ *Id*. ¶¶ 74, 76.  This is a permissible use

23 of specialized knowledge applied by an expert to the facts in the case. *United Food & Com.*

24 *Workers*, 296 F. Supp. 3d at 1194.

25       Other opinions that Rimini contends are improper state-of-mind evidence are likewise

26 grounded in admissions by Mr. Salaets and Rimini's internal documents. These include Dr.

27 McDaniel's statement that ████████████████████████████████████████████

28 ██████████████████████████████████████████████████████████████████

1    ███████████████████████████████████████████ Ex. F ¶ 105; *see also* ¶¶ 108, 110, 11.

2    Courts routinely admit similar opinions where an expert is applying expertise to the record

3    evidence. *JUUL Labs*, 2022 WL 2343268, at *44 n. 50.

4        And for many other of Dr. McDaniel's opinions, he is reaching the conclusion ███████

5    ████████████████████████████████████████████████████████████████████████████████████

6    ████████   Ex. F ¶¶ 124, 158, 162.  For these opinions, Dr. McDaniel is not opining on Rimini's

7    state of mind.  He is instead pointing to the absence of any evidence that Rimini is able to provide

8    its customers with an effective security offering.  *See Rimini I*, ECF No. 790 (Tr. at 446:1-447:11)

9    (Ravin admitting that Rimini "can't provide security patches because we don't have those parts of

10    source code for Oracle products.").

11        Finally, Oracle confirms that Dr. McDaniel will not testify to certain of the opinions that

12    Rimini has highlighted in paragraphs 159, 163, 210, 219, 221, and 222 of his opening report, and

13    paragraph 46 of his rebuttal report.  *See, e.g.*, Exhibits F and G.  This confirmation moots the

14    remainder of Rimini's challenges to his opinions and warrants the denial of its *Daubert* motion.

15        **C.    Cauthen does not present inadmissible expert testimony on Rimini's intent,**
          **motivation, or state of mind.**

16

17        Cauthen's experience as a former FBI special agent qualifies him to rebut Astrachan's

18    opinions regarding the design and function of Rimini's software tools and support practices, as well

19    as Lanchak's opinions that Rimini's infringing practices are somehow common and accepted in the

20    industry.  Rimini erroneously argues that Cauthen is opining on Rimini's intent, motive, or state of

21    mind, Rimini Daubert at 3–8, even though Cauthen hews to and rebuts the various "design" and

22    intent opinions proffered by Rimini's own experts.

23        Rimini disregards its own purported expert testimony when it asks the Court to exclude

24    Cauthen's opinions that "███████████████████████████████████████████████████████

25    ████████████████████████████████████████ Ex. A ¶¶ 134, 137.  Rimini expert

26    Astrachan advanced and defended ████████████████████████████████████████████

27    ████████████████████████████████████████████████████████████████████████████████

28    ████████████████████████████████████████████████████████████████████████████████

27

1

2

3

4

5       Smith Decl., Ex. 9 (Astrachan Report) ¶¶ 19-21.

6        In rebuttal to these opinions, Cauthen opines that

7

8        *See, e.g.*, Ex. A ¶ 159

9

10 ).

11        Astrachan—not Cauthen—opened the door for testimony on

12

13

14        *See, e.g.,* Smith Decl.,

15 Ex. 9 ¶ 134

16

17 . To the extent Astrachan is allowed to testify regarding

18 Cauthen must be allowed to rebut such

19 testimony.  *See Freteluco v. Smith's Food & Drug Ctrs., Inc.*, 2021 WL 183321, at *5 (D. Nev.

20 Jan. 19, 2021) ("The function of rebuttal is to explain, repel, counteract or disprove evidence of the

21 adverse party, and the decision to admit rebuttal testimony is entrusted to the sound discretion of

22 the district court." (internal quotation marks omitted) (quoting *United States v. Luschen*, 614 F.2d

23 1164, 1170 (8th Cir.)).

24        Rimini next challenges Cauthen's opinions regarding Rimini's

25 Rimini Daubert at 4-5.  Again, however, Rimini ignores its own expert, who

26 opines that *See* Smith Decl.,

27 Ex. 9 ¶¶ 39-42 (

28

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

████████████████████████████████████████████████████

(emphasis added)).   Cauthen rebuts this based on his experience, analysis of ████████

███████████.  *See* Ex. A ¶ 159 ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████). In

this regard, Cauthen outlines and analyzes the evidence demonstrating the ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████.  *Id.* ¶¶

159-64.

Rimini argues that Cauthen's opinion that the *Rimini I* litigation and other events placed Rimini "on notice" that certain of its practices infringed Oracle's copyrights is an opinion concerning Rimini's state of mind.  In fact, this opinion simply rebuts the opinion of Rimini expert Stephen Lanchak, who opines that the ████████████████████████████

████████████████████████████████████████████ Smith

Decl., Ex. 10 (Lanchak Report) ¶ 14.  Even assuming Rimini's practices were widely accepted in the industry—they unquestionably are not, as Cauthen opines based on his industry experience—Rimini cannot rely upon any claimed industry custom or practice given its status as an adjudged infringer.  The issue is not Rimini's state of mind, but rather the viability of Rimini's industry custom and practice defense.  Any attacks on Cauthen's opinion in this regard "bears on the weight of the expert's testimony as opposed to its admissibility."  *See, e.g., JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, --- F. Supp. 3d ---, 2022 WL 1817415, at *3 (N.D. Cal. 2022).

Rimini next accuses Cauthen of "parroting" the expert opinion of Oracle experts Barbara Frederiksen-Cross and Christian Hicks.  Rimini Daubert at 6–8.  But Cauthen did not "parrot" Frederiksen-Cross's or Hicks's opinions; he used them to develop his own independent opinions. For example, based on the forensic analysis of Rimini's actual Process 2.0 practices performed by Frederiksen-Cross and Hicks, Cauthen rebuts the ████████████████████ opinions of Rimini's experts.  Relying on Hick's ████████████████████

1

2

3

4  ██████████████████████████████████████   *See, e.g.,* Ex. A ¶¶ 38, 41, 63-68.  Courts routinely

5  find such reliance on the expert opinions of others admissible.  *See Janopoulos v. Harvey L. Walner*

6  *& Assocs., Ltd.*, 866 F. Supp. 1086, 1095 (N.D. Ill. 1994) ("an expert may rely in part on

7  information supplied by another expert"); *see also Nat'l Union Fire Ins. Co. v. Smith Tank & Steel,*

8  *Inc.*, 2014 WL 5794952 (M.D. La. Nov. 6, 2014) ("Consultation with other experts is entirely

9  permissible under Rule 703.").  In fact, "[i]t is common in technical fields for an expert to base an

10  opinion in part on what a different expert believes on the basis of expert knowledge not possessed

11  by the first expert."  *In re: Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1033 (E.D. Mo.

12  2009) (*quoting Dura Auto. Sys. Of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002)).

13  Finally, Rimini claims Cauthen "offers lengthy narratives merely summarizing select record

14  evidence, which he then uses as a basis to speculate about Rimini's intent, motive, or state of mind."

15  Rimini Daubert at 8.  Rimini does not dispute the facts Cauthen uses to support his opinions about

16  what Rimini and Mr. Ravin were aware of, and there is nothing improper about an expert's setting

17  forth the facts underlying an opinion.  *See, e.g., Barlovento, LLC v. AUI, Inc.*, 2020 WL 6689618,

18  at *4 (D.N.M. Nov. 13, 2020) (stating that an expert witness "must be permitted at least some

19  amount of summarizing of the facts to bring his or her opinions into context," as when "their

20  opinions require some scene-setting, including some reasonable summary of evidence the jury has

21  already heard").  Rimini's motion should be denied.

22  <u>**CONCLUSION**</u>

23  For the foregoing reasons, Oracle respectfully requests that the Court deny Rimini's

24  *Daubert* motion.

25

26

27

28

DATED: September 30, 2022

MORGAN, LEWIS & BOCKIUS LLP

By:        */s/ Benjamin P. Smith*
                Benjamin P. Smith

Attorneys for Plaintiffs and Counterdefendants
Oracle International Corporation and Oracle
America, Inc.

ORACLE'S RESPONSE TO RIMINI'S DAUBERT MOTION
TO EXCLUDE PROPOSED WITNESS TESTIMONY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 30th day of September, 2022, I electronically transmitted the foregoing Case No. 2:14-cv-01699-MMD-DJA **ORACLE INTERNATIONAL CORPORATION AND ORACLE AMERICA, INC.'S RESPONSE TO RIMINI'S DAUBERT MOTION TO EXCLUDE PROPOSED WITNESS TESTIMONY** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

DATED:  September 30, 2022

MORGAN, LEWIS & BOCKIUS LLP

By: _____*/s/ Benjamin P. Smith*_____
Benjamin P. Smith

Attorneys for Plaintiffs and Counterdefendants
Oracle International Corporation and Oracle
America, Inc.