1

2

3                      UNITED STATES DISTRICT COURT

4                          DISTRICT OF NEVADA

5                                * * *

6    ORACLE INTERNATIONAL                    Case No. 2:14-cv-01699-MMD-DJA
     CORPORATION, *et al.*,
7                                            ORDER
                              Plaintiffs,
8          v.

9    RIMINI STREET, INC., *et al.*,

10                           Defendants.

11

12   **I.    SUMMARY**

13          This is a software copyright and unfair competition dispute between Plaintiffs and

14   Counter Defendants Oracle America, Inc., and Oracle International Corporation

15   (collectively, "Oracle") and Defendants and Counter Claimants Rimini Street, Inc., and

16   Seth Ravin (collectively "Rimini") generally regarding Rimini's unauthorized copying of

17   Oracle's enterprise software into and from development environments created by Rimini

18   for its clients. (ECF Nos. 1253 at 2, 1305 at 12-13.) This case is now approaching a bench

19   trial set to start on November 29, 2022. (ECF No. 1416.) Before the Court are several

20   motions: (1) Oracle's consolidated motions in limine (ECF No. 1372);[1] (2) Oracle's

21   consolidated *Daubert*[2] motions (ECF No. 1373);[3] (3) Rimini's consolidated motions in

22   limine (ECF No. 1374);[4] Rimini's consolidated *Daubert* motions (ECF No. 1382);[5] and

23   Rimini's motion to strike the third supplemental expert report of Oracle's expert Elizabeth

24

25          [1]Rimini responded. (ECF No. 1393.)

26          [2]*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

27          [3]Rimini responded. (ECF No. 1396.)

28          [4]Oracle responded. (ECF No. 1401.)

            [5]Oracle responded. (ECF No. 1402.)

A. Dean (ECF No. 1387).[6] As further explained below, several of these motions have since been withdrawn and many of the issues in these motions have become moot because the parties have agreed to proceed with a bench, instead of jury, trial. The Court provides below rulings on the issues that the parties agree remain live after explaining which issues are no longer live.

## II.    BACKGROUND

This case was set for a jury trial when the parties filed the pending motions. (ECF No. 1368.) However, Oracle filed a notice announcing its willingness to abandon its damages claims and proceed with a bench trial instead after the parties filed the pending motions. (ECF No. 1409.) The Court directed Rimini to respond to Oracle's notice (ECF No. 1410), and Rimini responded that it would be open to a bench trial under certain conditions (ECF No. 1411).

At the ensuing hearing, the parties agreed that this case proceed to a bench, rather than jury, trial. (ECF No. 1416.) Given the parties' agreement, the Court decided the case would proceed to a bench trial. (*Id.*) The Court noted this change may render some of the pending motions moot or irrelevant, so it directed the parties to file status reports on the effect of the switch to a bench trial on the pending motions. (*Id.*) The Court also ordered the parties to file a stipulation to dismiss the claims that Oracle indicated it was willing to dismiss to permit this case to proceed as a bench trial. (*Id.*)

In its status report, Oracle withdrew its *Daubert* motions. (ECF No. 1418 at 2.) The Court accordingly denies Oracle's *Daubert* motions without prejudice as moot. (ECF No. 1373.) Oracle also withdrew all of its motions in limine except its motion number seven seeking exclusion of certain materials that Rimini allegedly did not produce in discovery and its opposition to Rimini's motion in limine number three, where Rimini argues for the exclusion of materials from contempt proceedings in a related case, and Oracle argues that the Court should consider some relevant components of those contempt proceedings. (ECF No. 1418 at 2-3.) The Court accordingly denies as moot all of Oracle's

---

[6]Oracle responded. (ECF No. 1408.)

1  pending motions in limine without prejudice except for motion number seven, which the

2  Court addresses below.[7]

3      In its status report, Rimini withdrew its *Daubert* motion as to Dean (while reserving

4  its rights) but otherwise contends its four other *Daubert* motions still require resolution.

5  (ECF No. 1419 at 2-3.) Thus, Rimini's *Daubert* motion as to Dean is denied without

6  prejudice as moot, and the Court addresses below its remaining *Daubert* motions. Rimini

7  also conceded that its motion to strike Dean's third supplemental expert report no longer

8  requires pretrial resolution (*id.* at 3), so the Court denies that motion (ECF No. 1387)

9  without prejudice as moot as well. As to its motions in limine, Rimini states that only

10  numbers three and eight still require pretrial resolution. (ECF No. 1419 at 3.) The Court

11  addresses those two motions below, and otherwise denies Rimini's motions in limine

12  without prejudice as moot.

13      The Court also notes that it recently granted the parties' stipulation of dismissal of

14  certain claims and remedies. (ECF No. 1421.) Per that order, Oracle's claims for breach

15  of contract, an accounting, and any and all claims seeking monetary relief (except for

16  attorneys' fees and costs) are dismissed with prejudice. (*Id.* at 2-3.) The order also

17  reaffirms that the parties are proceeding to a bench trial on the remaining, non-monetary

18  claims for equitable relief. (*Id.* at 3.)

19  **III.   DISCUSSION**

20      The Court first addresses Rimini's *Daubert* motions, and then the parties'

21  remaining motions in limine.

22      **A.    Rimini's *Daubert* Motions**

23      As noted, Rimini maintains its *Daubert* motions as to Patrick McDaniel, John

24  Cauthen, Paul Pinto, and Barbara Frederiksen-Cross require resolution. (ECF No. 1419

25  at 2.) The Court accordingly addresses each of these motions below, organized by expert.

26  But the Court first describes the applicable legal framework.

27

28      [7]The Court also addresses below Oracle's opposition to Rimini's motion number three.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Supreme Court provided additional guidance on Rule 702 and its application in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). In *Daubert*, the Court held that scientific testimony must be reliable and relevant to be admissible. *See* 509 U.S. at 589. *Kumho Tire* clarified that *Daubert's* principles also apply to technical and specialized knowledge. *See Kumho*, 526 U.S. at 141. The trial court has "considerable leeway" in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. *Id.* at 152. The "test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141.

The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (citations and internal quotation marks omitted). "An expert witness—unlike other witnesses—is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion has a reliable basis in the knowledge and experience of his discipline." *Id.* (citations and internal quotation marks omitted). Shaky but admissible evidence should not be excluded but instead attacked by cross-examination, contrary evidence, and attention to the burden of proof. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.), *as amended* (Apr. 27, 2010).

///

1           **1.    McDaniel**

2           Rimini seeks to preclude Oracle's expert McDaniel from offering testimony

3    consistent with opinions expressed in specified paragraphs of his opening and rebuttal

4    reports, arguing that he impermissibly opines on Rimini's mental state in those

5    paragraphs. (ECF No. 1384 (sealed) at 9-10.)[8] Oracle represents in response that

6    McDaniel will not testify to the opinions provided in "paragraphs 159, 163, 210, 219, 221,

7    and 222 of his opening report, and paragraph 46 of his rebuttal report." (ECF No. 1405

8    (sealed) at 34.) The Court accepts Oracle's representation as binding, and accordingly

9    denies Rimini's *Daubert* motion as moot as to McDaniel to the extent it sought to preclude

10   him from offering the opinions offered in those particular paragraphs.

11          As to the remaining paragraphs that Rimini challenges, Oracle counters that

12   McDaniel is not offering an opinion on Rimini's state of mind, and his challenged opinions

13   instead reflect instances where McDaniel is "applying his expertise to the facts and

14   evidence of record and opining on what this evidence reveals about Rimini's inadequate

15   security practices and the falsity of the security related statements that Rimini makes to

16   customers[,]" (*id.* at 33), or where McDaniel is "reaching the conclusion that Rimini lacks

17   the resources and competence to address security vulnerabilities encountered by its

18   customers" (*id.* at 34). The Court agrees with Oracle.

19          The Court reviewed the paragraphs that Rimini challenges (which Rimini helpfully

20   highlighted) minus the paragraphs Oracle represents McDaniel will not testify to and finds

21   that McDaniel is not offering opinions on Rimini's state of mind in them. Put succinctly,

22   McDaniel is primarily opining in these paragraphs that Rimini's security practices are so

23   lacking that they are essentially nonexistent, so many of Rimini's statements about the

24   security it provides its customers are false. The Court does not read McDaniel as opining

25

26          [8]Generally speaking, the parties filed each of the pending motions and responses
     twice: once with redactions, and once under seal. (*See, e.g.*, ECF Nos. 1382, 1384.) The
27   Court sanctioned this approach by granting the parties' motions to seal filed concurrently
     with the pending motions. (ECF No. 1415.) For administrative purposes, the Court refers
28   to the redacted, unsealed versions of the pending motions in Sections I, II, and IV of this
     order. However, the Court refers to the sealed versions of the motions and responses in
     this Section III.

1    on Rimini's state of mind in the challenged paragraphs. Thus, Rimini's sole argument as

2    to McDaniel is unpersuasive.

3         Moreover, the Court agrees with Oracle that, "Rimini does not challenge the

4    reliability or relevance of Dr. McDaniel's opinions." (*Id.* at 33.) The absence of such a

5    challenge further suggests that the Court should let McDaniel offer them at trial. After all,

6    "[a]n expert witness—unlike other witnesses—is permitted wide latitude to offer opinions,

7    including those that are not based on firsthand knowledge or observation, so long as the

8    expert's opinion has a reliable basis in the knowledge and experience of his discipline."

9    *Jinro Am. Inc.*, 266 F.3d at 1004 (citations and internal quotation marks omitted). And as

10   noted, Rimini does not challenge McDaniel's knowledge and experience in his discipline.

11        In sum, Rimini's *Daubert* motion as to McDaniel is denied, in part as moot, and in

12   part because the Court is unpersuaded by Rimini's pertinent argument.

13                    **2.    Cauthen**

14        Rimini next moves to exclude certain opinions of Oracle's expert Cauthen

15   generally because Rimini argues he offers inappropriate testimony on Rimini's mental

16   state, his technical analysis is unreliable, and he lacks a basis to opine on what is

17   commonplace or customary in the 'ERP support industry.' (ECF No. 1384 (sealed) at 10-

18   11.) Oracle counters that Cauthen does not opine on Rimini's state of mind (ECF No.

19   1405 (sealed) at 34-37), Cauthen's technical analysis is admissible (*id.* at 28-29), and

20   Cauthen is sufficiently qualified to opine on the ERP support industry (*id.* at 29). The Court

21   again agrees with Oracle in pertinent part.

22        To start, much of Rimini's argument regarding Cauthen focuses on jury prejudice

23   and the related concerns that Fed. R. Evid. 403 is intended to address—including Rimini's

24   argument that Cauthen is impermissibly testifying to Rimini's state of mind. (ECF No.

25   1384 (sealed) at 11 ("would be highly prejudicial to Rimini, and these opinions should thus

26   be excluded under Rule 403 as well"), 12-14 (relying on cases discussing the jury's

27   capability to draw inferences and jury verdicts), 16 (relying on cases discussing the

28   presentation of evidence to a jury and describing certain testimony as unhelpful to the

1    jury).) These arguments are no longer persuasive or even relevant because this case is

2    proceeding to a bench trial.

3    　　　　Further, the Court finds that Rimini's remaining arguments (regarding the DAT file

4    analysis and Cauthen's familiarity with the ERP support industry) go to the weight, but not

5    the admissibility, of Cauthen's opinions. (*Id.* at 17-18 (making these arguments).) Indeed,

6    these portions of Rimini's argument as to Cauthen read like potential cross-examination

7    lines of inquiry. And perhaps the Court will not find Cauthen's testimony ultimately

8    persuasive at trial. But the Court sees no reason to preclude Cauthen from testifying on

9    these challenged topics based on Rimini's *Daubert* motion. To the contrary, Cauthen's

10   background as an FBI agent who investigated criminal copyright infringement suggests

11   he is qualified to offer opinions on whether Rimini's processes are infringing and whether

12   Rimini has attempted to conceal that infringement. (ECF No. 1384-1 (sealed) at 4-6

13   (describing his background and experience).) Concealing copyright infringement is

14   precisely the sort of conduct that Cauthen appears to have experience investigating.

15   　　　　More specifically, Rimini argues that Cauthen's analysis of DAT files is unreliable

16   and should be excluded. (ECF No. 1384 (sealed) at 17.) But the Court is persuaded by

17   Oracle's counterargument that his method of analysis is reliable—he compared the files

18   in one Rimini customer's system to those in another. (ECF No. 1405 (sealed) at 28-29.)

19   He says that he found copies when he did. (ECF No. 1384-1 (sealed) at 13-14.) The Court

20   may or may not find that conclusion persuasive at trial. But again, Rimini's challenge goes

21   to the weight, not the admissibility, of Cauthen's opinions regarding the DAT files. Indeed,

22   Rimini's argument is more of a legal one, arguing that the copied material Cauthen

23   identified is not entitled to copyright protection—contrary to the assumptions in Cauthen's

24   report. (ECF No. 1384 (sealed) at 17.) Whether something is entitled to copyright

25   protection is a legal question for the Court, and, in any event, Rimini's argument is an

26   argument best made at trial.

27   　　　　As to Rimini's argument that Cauthen should be precluded from offering any

28   opinions that Rimini's conduct is not commonplace or customary in the ERP support

1  industry because he does not, himself, have any experience working in that industry (*id.*
2  at 17-18), the Court also agrees with Oracle that, "being an expert in computer systems
3  and cybercrimes qualifies Cauthen to testify that it not commonplace for ERP support
4  providers 'to possess software for which there is no license, to copy that unlicensed
5  software, or to copy, distribute, or modify copyrighted software when not expressly
6  allowed.'" (ECF No. 1405 (sealed) at 29 (citations omitted).) Cauthen's experience as an
7  FBI agent suggests that he has experience with many different entities who engaged in
8  copyright infringement and were likely trying to conceal it, and some of them were likely
9  commercial enterprises. (ECF No. 1384-1 at 4-6 (describing background).) From this
10  experience, he could plausibly infer that it is unusual for a legitimate business to build its
11  whole business on copyright infringement. *Cf. Oracle USA, Inc. v. Rimini St., Inc.*, 209 F.
12  Supp. 3d 1200, 1208-09 (D. Nev. 2016), *aff'd in part, vacated in part, rev'd in part on other*
13  *grounds*, 879 F.3d 948 (9th Cir. 2018), *rev'd in part*, 139 S. Ct. 873 (2019), *and vacated*
14  *in part*, 922 F.3d 879 (9th Cir. 2019) ("In fact, Rimini's business model was built entirely
15  on its infringement of Oracle's copyrighted software and its improper access and
16  downloading of data from Oracle's website and computer systems, and Rimini would not
17  have achieved its current market share and business growth without these infringing and
18  illegal actions."). And he could similarly offer a reliable opinion drawing a distinction
19  between such a business and its competitors who construct their practices to avoid
20  copyright infringement and related torts. Cauthen does not need to have spent time
21  working in the ERP industry to offer such an opinion.

22  But to be clear, the Court is not prejudging Rimini's further liability at trial.[9] The
23  Court is merely finding that Rimini's arguments as to Cauthen's proposed testimony go
24  to the weight, but not the admissibility, of Cauthen's opinions. Rimini's *Daubert* motion as
25  to Cauthen is accordingly denied.

26

27  [9]The Court includes the word 'further' because Judge Hicks already found at least
28  some of Rimini's conduct at issue in this case infringing. (ECF No. 1253.) As it must, the
Court will honor Judge Hicks' summary judgment order under the law of the case doctrine.
(*Id.*)

8

### 3. Pinto

Rimini next seeks to preclude Oracle's expert Pinto from offering his causation opinions, which Rimini characterizes as relevant to Oracle's claim for actual copyright damages. (ECF No. 1384 (sealed) at 18.) Rimini attacks several elements of Pinto's opinions, but continues to frame those opinions as going to the causation element of Oracle's claim for actual copyright damages. (*Id.* at 18-26.) Towards the end of its *Daubert* motion as to Pinto, Rimini argues that his opinions, "must be kept from the jury." (*Id.* at 25.)

Oracle has abandoned its claims for damages. (ECF No. 1421.) The Court accordingly denies Rimini's *Daubert* motion as to Pinto as moot because it is primarily targeted at the causation element of Oracle's actual copyright damages claim. Moreover, the Court again notes that, to the extent Rimini's *Daubert* motion as to Pinto is directed towards protecting the jury from Pinto's opinions, that argument is no longer relevant because this case is proceeding to a bench trial. That said, the Court's denial of Rimini's *Daubert* motion as to Pinto is without prejudice to Rimini raising any relevant and more targeted evidentiary challenges to Pinto's testimony at trial, including but not limited to any of the sub-arguments it makes in its *Daubert* motion as to Pinto.

### 4. Frederiksen-Cross

Rimini finally argues that four aspects of Oracle's expert Frederiksen-Cross' opinions are legally incorrect. (ECF No. 1384 (sealed) at 29-38.) Oracle counters that Rimini's motion as to Frederiksen-Cross is not a proper *Daubert* motion because it challenges neither Frederiksen-Cross' experience, qualifications, nor methodology, and more specifically responds to each of Rimini's arguments, arguing they are contrary to the law of the case, legally incorrect, and based on a misreading of Frederiksen-Cross' reports. (ECF No. 1405 (sealed) at 8-20.) The Court agrees with Oracle. But the Court will nonetheless briefly address each of Rimini's four arguments as to Frederiksen-Cross below.

///

For some reason, Rimini makes its first argument regarding derivative works even while conceding therein that Judge Hicks rejected the same argument in his summary judgment order and then denied Rimini's motion to certify that issue for interlocutory appeal. (ECF No. 1384 (sealed) at 29-31.) This is improper, and a waste of time. Judge Hicks' prior orders in this case constitute the law of this case, and the Court will not deviate from the rulings he made in those orders.

Rimini's next argument consists of setting up and then dismantling a straw man and is accordingly unpersuasive. (*Id.* at 31-33.) Specifically, Rimini argues that Frederiksen-Cross' reports reflect the view that Rimini's developers' use of knowledge gained on one project for a client for another, subsequent project constitutes impermissible 'cross-use.' (*Id.*) But that is not how the Court reads the pertinent sections of her reports. To the contrary, Frederiksen-Cross describes instances throughout her reports where Rimini developers purportedly copied Oracle code in one client's environment and then sent it into other client's environments. (ECF No. 1384-3 (sealed) at 13-14 ("Developing updates to Oracle software through unlicensed cross-use by using an environment associated with one customer and then sending the updates to multiple customers thousands of times during the Relevant Period[.]"), 43 ("When Rimini copied WSM-F482MOSM and sent it to customer Mosaic, it was reproducing and then distributing an environment that was originally created by cloning New York State Urban Development Corp's environment. I understand that the copies made during migration would constitute cross-use of New York State Urban Development Corp's software because it had been used for the benefit of Mosaic."), 67-68 ("A cross-used update for PeopleSoft FSCM was shared to a unique customer beyond the initial customer used for development 1,183 times.") (footnote omitted), 73 ("distributed to a PeopleSoft environment associated with another customer, are examples of cross-use"), 81 ("use of the first function constitutes cross-use because it copies the contents of a file from one environment and distributes it, via Rimini, to another environment.").) She does not appear to be describing instances where Rimini developers used 'know how' they

1   developed to solve the same problem over and over again—she is describing and

2   documenting instances of copying.

3       Moreover, Frederiksen-Cross' apparent understanding of 'cross-use' in the

4   excerpts included above is in line with Judge Hicks' summary judgment order. In that

5   order, he held, for example, that Rimini engaged in impermissible 'cross use,' violated the

6   applicable license, and committed copyright infringement when Rimini developers

7   developed an update in the Campbell Soup development environment and then gave that

8   update to Toll Brothers (another Rimini client) outright. (ECF No. 1253 45-48.) Thus,

9   Rimini's cross-use argument in its motion as to Frederiksen-Cross falls flat.

10      Rimini next argues that Frederiksen-Cross failed to apply the required 'analytic

11  dissection analysis' in her reports, and argues her "opinions have been deemed

12  inadmissible for this very reason previously" in *DropzoneMS, LLC v. Cockayne*, Case No.

13  3:16-CV-02348-YY,   2019   WL   7630788,   at   *14   (D.   Or.   Sept.   12,

14  2019), *supplemented,* Case No. 3:16-CV-02348-YY, 2019 WL 7633155 (D. Or. Oct. 15,

15  2019), and *report and recommendation adopted,* Case No. 3:16-CV-02348-YY, 2020 WL

16  591353 (D. Or. Feb. 6, 2020), and *report and recommendation adopted,* Case No. 3:16-

17  CV-02348-YY, 2020 WL 591353 (D. Or. Feb. 6, 2020). (ECF No. 1384 (sealed) at 33-34.)

18  But Rimini neglects to mention a determinative element of the *DropzoneMS* court's

19  decision—that counsel who retained her in that case missed the expert discovery

20  deadline, and then tried to submit her declaration as that of a lay witness, leading that

21  court to exclude her declaration because it contained expert testimony. *See DropzoneMS*,

22  2019 WL 7633155, at *5-*8. Even the page of this case that Rimini relies on suggests the

23  plaintiff's counsel's blunder was determinative, where the *DropzoneMS* court writes,

24  "plaintiff concedes 'that there is no 'filtration analysis' in the Frederiksen-Cross

25  Declaration—or any other specialized analysis—because it is not an expert report.'" *Id.*,

26  2019 WL 7630788, at *14. Rimini's reliance on *DropzoneMS* is accordingly unpersuasive.

27      Rimini is also wrong on the law forming the basis for its whole 'analytic dissection

28  analysis' argument. Indeed, as Oracle argues (ECF No. 1405 (sealed) at 14), the

11

1   substantial similarity analysis is only relevant absent evidence of direct copying. "As

2   Professor Nimmer explains, "[i]f such duplication is literal or verbatim, then clearly

3   substantial similarity exists."' *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1074

4   (9th Cir. 2021) (citation omitted). And analytic dissection is a tool that courts have

5   historically used to determine whether there is substantial similarity between an original

6   and an unidentical allegedly infringing work. *See Apple Computer, Inc. v. Microsoft Corp.*,

7   35 F.3d 1435, 1442-43 (9th Cir. 1994) (regarding copyrights on the graphical user

8   interface of Apple's Mac operating system, including for example the icons shown in the

9   desktop view). But as explained above, Frederiksen-Cross opines that, in many

10  instances, Rimini directly copied Oracle's code. Thus, it does not appear that analytic

11  dissection will be very useful if the Court ultimately finds Frederiksen-Cross' opinion that

12  direct copying occurred in many instances persuasive. Logically, an identical copy must

13  be at least substantially similar. In sum, the Court rejects Rimini's 'analytic dissection'

14  argument.

15        As to Rimini's DMCA argument (ECF No. 1384 (sealed) at 36-38), the Court also

16  agrees with Oracle (ECF No. 1405 (sealed) at 17-18); "[a] motion in limine is not the

17  proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline

18  for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162

19  n.4 (9th Cir. 2013), *aff'd,* 574 U.S. 418 (2015). And this brings the Court back to Oracle's

20  first responsive argument, which the Court finds persuasive. Rimini's *Daubert* motion as

21  to Frederiksen-Cross is not really a *Daubert* motion at all. It does not attack her

22  qualifications or expertise. It instead raises four legal arguments that, as explained above,

23  Judge Hicks either already rejected at summary judgment, are unpersuasive, or should

24  have been raised at summary judgment. It is more akin to a dispositive motion improperly

25  masquerading as a motion in limine, but in this case, wearing a second layer of disguise

26  as a *Daubert* motion. The Court will accordingly let Frederiksen-Cross testify at trial.

27  Rimini's motion to preclude her testimony on certain topics is denied.

28  ///

In sum, the Court denies Rimini's *Daubert* motions in full, partially as moot, and partially as explained above.

**B.   Motions in Limine**

The Court addresses Oracle's motion number seven, then Rimini's motion number three, and finally addresses Rimini's motion number eight after first describing the applicable legal standard.

A motion in limine is a procedural mechanism to limit testimony or evidence in a particular area in advance of trial. *See U.S. v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009). It is a preliminary motion whose outcome lies entirely within the discretion of the Court. *See Luce v. U.S.*, 469 U.S. 38, 41-42 (1984). "Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous." *Heller*, 551 F.3d at 1112.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Only relevant evidence is admissible. *See* Fed. R. Evid. 402. Relevant evidence may still be inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfairly prejudicial" evidence is that which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Gonzalez-Flores,* 418 F.3d 1093, 1098 (9th Cir. 2005) (quoting *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997)).

**1.   Oracle's Motion Number Seven**

Oracle moves in limine to preclude Rimini from admitting evidence or argument at trial regarding evidence Rimini did not produce during discovery. (ECF No. 1378 (sealed) at 19-21.) Oracle specifically discusses DevTrack entries listed on Rimini's exhibit list that did not have corresponding bates stamps. (*Id.*) Rimini counters that it gave Oracle live access to its DevTrack database during the discovery period. (ECF No. 1395 (sealed) at

27-28.) Rimini explains it did this because it would have been impractical to print the contents of DevTrack, a relational database, and apply bates-stamps to individual pages. (*Id.*) Rimini argues the approach it took—giving Oracle live access to the database—is permissible under Fed. R. Civ. P. 34(b)(2)(E)(ii)-(iii). (*Id.* at 28.) Rimini further contends that Oracle's motion is now moot because "Rimini unilaterally produced Bates-numbered, printed versions of the relevant DevTrack entries on September 6, 2022—the business day after Oracle filed this motion—and the parties exchanged stamped exhibits on September 23 (per the Court's order, not by Oracle's agreement)." (*Id.*)

Despite Rimini's representations that this dispute is moot or otherwise already resolved, Oracle states simply in its status report, "Oracle maintains its Motion in Limine No. 7." (ECF No. 1418 at 3.) This suggests Oracle disagrees with Rimini's representations to the effect that this dispute is either resolved, moot, or both. However, it does not give the Court any additional information permitting it to evaluate Oracle's arguments in light of Rimini's responsive representations. Moreover, and as Rimini points out (ECF No. 1395 (sealed) at 10-11), Oracle does not identify all of the evidence it seeks to exclude under motion number three. This also makes it impossible for the Court to conclude that the challenged evidence is inadmissible based on the grounds Oracle presented in this motion. The Court accordingly denies Oracle's motion in limine number three without prejudice.

### 2.    Rimini's Motion Number Three

"Rimini moves under Rules 402, 403, and 404 to prohibit Oracle from introducing evidence from the contempt proceedings arising out of *Rimini I* and currently on appeal in the Ninth Circuit, including all materials produced after the close of discovery in *Rimini II*, as well as the order finding Rimini in contempt on certain discrete issues and not others." (ECF No. 1377 (sealed) at 17.) As to relevance, Rimini argues this evidence is irrelevant because it postdates the time period covered by this case, involves distinct issues from those set for resolution in this case, and lacks probative value because the contempt order is currently on appeal. (*Id.* at 18-19.) Rimini further argues the contempt

14

evidence is unduly prejudicial under Fed. R. Evid. 403 because Judge Hicks' contempt findings could cause the jury to essentially jump to conclusions about Rimini's liability in this case, and inadmissible under Fed. R. Evid. 404 as propensity evidence.

As mentioned throughout this order, the Fed. R. Evid. 403 concerns Rimini expresses here are largely mitigated because this will now be a bench trial. As to Rimini's Fed. R. Evid. 404 argument, Oracle counters that "Oracle does not intend to introduce the contempt evidence and arguments about the Court's findings as propensity evidence[.]" (ECF No. 1404 (sealed) at 16 n.4.) The Court accordingly denies the Fed. R. Evid. 404 portion of Rimini's motion number three without prejudice as moot.

As to relevance, Oracle counters that Judge Hicks' contempt findings (and corresponding underlying documents and testimony) are relevant to Oracle's Lanham Act claims because they tend to show Rimini's statements to customers that its 'Process 2.0' is noninfringing are false. (*Id.* at 16-17.) Oracle further counters that Judge Hicks' contempt findings (and corresponding underlying documents and testimony) are relevant to rebut Rimini's continued assertions that its 'Process 2.0' is noninfringing, as 'Process 2.0 was also at issue in the contempt proceedings, and Judge Hicks found that process at least partially infringing. (*Id.* at 17-18.) The Court agrees with Oracle.

As Judge Hicks wrote, "the Court does not agree that [a] stark divide between the two cases—that *Oracle I* only concerns Process 1.0 while *Rimini II* only concerns Process 2.0—exists." *Oracle USA, Inc. v. Rimini Street, Inc.*, Case No. 2:10-cv-00106-LRH-VCF, ECF No. 1459 at 10 (D Nev. Mar. 31, 2021) ("*Rimini I*"). The two cases overlap. And as Oracle argues, Judge Hicks' findings in the contempt order are relevant both to Oracle's Lanham Act claims and to Rimini's more general claims that 'Process 2.0' is noninfringing. For example, Rimini sent its client Toll Brothers an email that stated the processes Judge Hicks adjudicated as infringing in the first case between these parties were no longer in use. (ECF No. 1401-7 at 2.) Oracle argues this statement is false in part because, "evidence and findings from the contempt proceedings show that, under Process 2.0, Rimini continued to host Oracle copyrighted material on its systems and continued to

1  cross-use customer environments." (ECF No. 1404 (sealed) at 16.) Evidence like this is

2  relevant to Oracle's Lanham Act claim, and to rebut Rimini's contention that its 'Process

3  2.0' is noninfringing more generally.

4  Moreover, the Court finds Rimini's argument that the contempt order is entitled to

5  little weight because Rimini appealed it unpersuasive. (ECF No. 1377 (sealed) at 19.)

6  Unless and until Judge Hicks' contempt order is vacated and remanded, it reflects the

7  considered judgment of a District Judge who has presided over disputes between the

8  parties to this case for some 12 years.  And as Oracle argues (ECF No. 1404 (sealed) at

9  20), *Grace v. Apple, Inc.*, Case No. 17-CV-00551-LHK, 2020 WL 227404, at *2 (N.D. Cal.

10  Jan. 15, 2020) is distinguishable from this case because there, the "evidence and

11  testimony concerning the VirnetX Litigation [was] of minimum probative value[,]" (ECF

12  No. 1404 at 20), and the *Grace* court was concerned about confusing the jury, *see Grace*,

13  2020 WL 227404, at *3. Here, there will be no jury, and some of Judge Hicks' findings in

14  the contempt order—and the evidence and testimony underlying it—may have significant

15  probative value.

16  In sum, the Court denies Rimini's motion in limine number three.

17  ### 3.    Rimini's Motion Number Eight

18  Finally, "Rimini moves under the Seventh Amendment, the doctrine of collateral

19  estoppel, and Rules 402, 404, and 802 to prohibit Oracle from making arguments or

20  introducing evidence from the *Rimini I* litigation to contradict the jury's verdict and special

21  findings in that case, whether explicitly or implicitly, and from wholesale introducing the

22  *Rimini I* record into the *Rimini II* record without otherwise complying with the Rules of

23  Evidence." (ECF No. 1377 (sealed) at 32; *see also id.* at 32-36.) As an initial note, the

24  Court expects both parties to comply with the Federal Rules of Evidence. Regardless,

25  Oracle counters that it told "told Rimini [at] several meet and confers[] it has no intention

26  of re-trying *Rimini I*." (ECF No. 1404 (sealed) at 32.) Oracle further counters that it does

27  not intend to re-litigate issues of willfulness, willfulness is no longer relevant to the claims

28  that remain in this case, and "[o]therwise, to the extent that Oracle offers evidence from

1   the *Rimini I* record, it will do so for purposes other than proving Rimini's willfulness as to

2   its pre-July 2014 infringement or its continuing infringement of Oracle's copyrights in this

3   case." (*Id.* at 33.) Oracle accordingly urges the Court to deny Rimini's motion number

4   eight as moot as to the issue of willfulness. (*Id.*) But Oracle alternatively contends that it

5   should be able to introduce evidence of willful infringement for impeachment purposes if

6   Rimini puts its state of mind at issue.[10] (*Id.* at 33-34.) The Court overall agrees with Oracle.

7          To start, the Court notes that significant elements of this dispute are now moot

8   because Oracle is no longer seeking damages. (ECF No. 1421.) To the extent the

9   question of willfulness goes to what type of copyright damages Oracle is entitled to—or

10  the amount of damages—it is now moot. (ECF No. 1404 (sealed) at 32 (describing the

11  issue of willfulness primarily in terms of its impact on the damages available and their

12  amount).)

13         But the Court agrees with Oracle that it may introduce evidence tending to show

14  willful infringement if Rimini makes arguments at trial like, "'*at all times*, it has intended to

15  respect, and has respected, Oracle's intellectual property rights.'" (*Id.* at 33 (citing ECF

16  No. 1309 at 19 (emphasis added by Oracle).) As Oracle points out, "Rimini's state of mind

17  with respect to its infringing conduct under Process 2.0 is not identical to Rimini's state of

18  mind with respect to its copyright infringement under Process 1.0." (*Id.* at 34.) And

19  certainly, the statement excerpted above is false because Judge Hicks found Rimini

20  committed copyright infringement in both *Rimini I* and this case. In addition, as a matter

21  of logic, innocent infringement is no longer innocent if a court has told you some conduct

22  is infringing and you do the same thing again. The Court is accordingly unwilling to

23  preclude Oracle from offering any argument going to willfulness based on evidence from

24  *Rimini I* at this time, and will instead resolve appropriate objections and argument in the

25  context of trial.

26  ///

27  _____

28  [10]Oracle also makes an argument about damages for gap customers (ECF No. 1404 (sealed) at 34-35) but that argument is now moot because Oracle has abandoned its damages claims (ECF No. 1421).

The Court also finds Rimini's Seventh Amendment argument fatally hard to follow to the extent it is not moot. It may be moot because Rimini argues that the Seventh Amendment's Reexamination Clause bars, "also putting the same evidence before a second jury that will inevitably reevaluate 'the findings of a first jury.'" (ECF No. 1377 (sealed) at 34.) As repeated *ad nauseum* in this order, there will be no second jury. (ECF No. 1421.) But Rimini also argues that the Reexamination Clause bars findings inconsistent with a prior jury verdict. (ECF No. 1377 (sealed) at 33-34.) However, *Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931) seems to sanction a situation similar to letting Oracle rely on pertinent evidence from *Rimini I* in this case, because there, the Court held that the trial court should allow some evidence in from a prior proceeding while ordering a new trial, because the "jury cannot fix the amount of damages unless also advised of the terms of the contract; and the dates of formation and breach may be material, since it will be open to petitioner to insist upon the duty of respondent to minimize damages." *Id.* at 499. And in the portion of *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961-62 (9th Cir. 2001) upon which Rimini relies (ECF No. 1377 (sealed) at 34), the Ninth Circuit Court of Appeals merely found that "bifurcation causes no constitutional problems, so long as the legal and equitable issues are distinct[.]" *Danjaq*, 263 F.3d at 962. Bifurcation is not at issue here. In any event, this portion of *Danjaq LLC* does not support Rimini's proposition that that the Reexamination Clause bars findings inconsistent with a prior jury verdict. (ECF No. 1377 (sealed) at 33-34.) The Court accordingly does not follow Rimini's argument.

In sum, Rimini's motion in limine number eight is denied.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

///

1        It is therefore ordered that Oracle's consolidated motions in limine (ECF No. 1372)

2  are denied in part, and denied in part as moot, as specified herein.

3        It is further ordered that Oracle's consolidated *Daubert* motions (ECF No. 1373)

4  are denied as moot.

5        It is further ordered that Rimini's consolidated motions in limine (ECF No. 1374)

6  are denied in part, and denied in part as moot, as specified herein.

7        It is further ordered that Rimini's consolidated *Daubert* motions (ECF No. 1382)

8  are denied in part, and denied in part as moot, as specified herein.

9        It is further ordered that Rimini's motion to strike (ECF No. 1387) is denied as moot.

10        DATED THIS 1st Day of November 2022.

11

12                               _____

13                           MIRANDA M. DU
                          CHIEF UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28