BOIES, SCHILLER FLEXNER LLP
RICHARD J. POCKER (NV Bar No. 3568)
300 South Fourth Street, Suite 800
Las Vegas, NV 89101
Telephone:    702.382.7300
Facsimile:    702.382.2755
rpocker@bsfllp.com

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
WILLIAM A. ISAACSON (*pro hac vice*)
KAREN DUNN (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006
Telephone:    202.223.7300
Facsimile:    202.223.7420
wisaacson@paulweiss.com
kdunn@paulweiss.com

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA  94105
Telephone:    415.442.1000
Facsimile:    415.442.1001
benjamin.smith@morganlewis.com

JAMES C. MAROULIS (*pro hac vice*)
ORACLE CORPORATION
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:    650.506.4846
Facsimile:    650.506.7114
jim.maroulis@oracle.com

*Attorneys for Plaintiffs and
Counterdefendants Oracle International
Corporation and Oracle America, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ORACLE INTERNATIONAL CORP., a
California corporation, and ORACLE
AMERICA, INC., a Delaware corporation,

        Plaintiffs/Counterdefendants,

    v.

RIMINI STREET, INC., a Nevada corporation,
and SETH RAVIN, an individual,

        Defendants/Counterclaimants.

Case No.  2:14-cv-01699-MMD-DJA

**ORACLE INTERNATIONAL
CORPORATION AND ORACLE
AMERICA, INC.'S SUPPLEMENTAL
BRIEF IN SUPPORT OF PROPOSED
FINDINGS OF FACT AND
CONCLUSION OF LAW**

Oracle International Corporation and Oracle America, Inc. ("Oracle") submit this brief regarding *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, Case No. 21-869, 2023 WL 3511534, at *14 (U.S. May 18, 2023) ("*Goldsmith*") and its impact on the parties' fair use arguments in their proposed findings of fact and conclusions of law.  *See* ECF No. 1531.

## I.   INTRODUCTION

*Goldsmith* further shows that the fair use arguments asserted by Rimini Street, Inc. and Seth Ravin ("Rimini") are meritless.  Rimini wrongly claims that fair use excuses its infringing copying of Oracle software (1) as part of Rimini's migration of PeopleSoft environments, (2) when Rimini compares Oracle source code as part of the GenDiff function in CodeAnalyzer, and (3) to develop and test automated tools used to support Oracle software.[1]  Rimini's copying of this software falls outside any traditional category of fair use, "such as criticism, comment, news reporting, teaching . . . , scholarship, or research." 17 U.S.C. § 107.

Rather, Rimini made unlicensed copies of the Oracle copyrighted software to compete directly with Oracle in the market to provide support services to Oracle customers.  In doing so, Rimini used the Oracle software for the very same purpose that Oracle uses this software in its support business:  to develop and distribute fixes and updates that it sells to Oracle customers.  Rimini wrongly asserts that fair use applies to its unlicensed copying because Rimini's copying was "transformative."  *Goldsmith* explains that where a secondary work is created for the same purpose as the original work—in this case, to provide fixes and updates to Oracle customers for commercial purposes—the new work is not "transformative" for the purposes of copyright law. *Id.* at *11.  Rimini's fair use defense should be rejected.

## II.   BACKGROUND

Oracle develops and licenses enterprise software, including the copyrighted PeopleSoft and EBS software that are relevant to Rimini's fair use defense.  Oracle-licensed customers use this software to run their businesses. The software at issue was purposefully designed to be changed and updated.  Rimini stipulated that Oracle software "can be modified and customized,"

---

[1] Though Rimini cites testimony from Professor Astrachan for each of its fair use arguments, his fair use opinions were "restricted to GenDiff" (*i.e.*, category 2). Tr. 2436:3-10 (Astrachan).

"generally must be updated to account for" legislative and regulatory changes, and that "a licensee can modify and customize the software for the licensee's own business purposes." ECF No. 1460, ¶¶ 6–9. Oracle sells support to Oracle's customers, and this support includes fixes and updates that Oracle is able to create because the software can be modified and customized. Rimini and other third-party support providers are able to offer products and services to Oracle licensed customers—such as fixes and updates—because the software is modifiable and customizable.

In its Post-Trial Proposed Findings of Fact and Conclusions of Law ("FOFCOL"), Rimini asserted a fair use defense for the three instances of copying described above.  As to the migration of PeopleSoft environments, Rimini claimed that its clients would have been harmed had if it deleted these adjudicated-infringing copies of Oracle software.  ECF No. 1525, ¶ 447. Regarding the GenDiff function of Code Analyzer and Rimini's automated tools, Rimini asserted that they were "transformative" because each used the Oracle licensed software in a manner that was different from how a customer would use that software to run the customer's business.  *Id.*, ¶¶ 453, 459.  Rimini does not argue that the GenDiff function or Rimini's automated tools use Oracle software copies differently from other tools or practices that support providers (including Oracle) use to provide software support to Oracle-licensed customers.

## III.    DISCUSSION

### A.    *Goldsmith*

In *Goldsmith*, plaintiff photographer Lynn Goldsmith took a photograph of the musician Prince for use in a magazine article on Prince. 2023 WL 3511534, at *5. Another magazine later licensed that photograph for use "as an artist reference for an illustration." *Id.* Andy Warhol created the illustration based on Goldsmith's photograph, and it was published in a later magazine article. Warhol also used the same photo to create 15 other works. Years later, one of those 15 Warhol works was licensed by a magazine for another story on Prince. *Id.* at *6. Goldsmith claimed copyright infringement against the Andy Warhol Foundation. *Id.* The question before the Court was "whether the court below correctly held that the first factor, 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes,' §107(1), weighs in Goldsmith's favor." *Id.* at *7.  The Court ruled it did.

The Court noted that the fair use defense applies to "purposes such as criticism, comment, news reporting, teaching . . . , scholarship, or research . . . ." *Id.* at *8 (quoting 17 U.S.C. § 107). The Court explained that the first statutory factor to be considered in a fair use analysis is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." *Id.* (quoting 17 U.S.C. § 107(1). The Court instructed that "the first factor relates to the problem of substitution—copyright's bête noire. The use of an original work to achieve a purpose that is the same as, or highly similar to, that of the original work is more likely to substitute for, or supplan[t], the work." *Id.* at *9 (internal quotation marks omitted). Accordingly, "[i]f an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying." *Id.* at *11.

The Court also discussed how the "transformative" nature of a work fits into the analysis under the first factor. Noting that the word "transform" does not appear in the fair use statutory language, the Court explained that "[a] use that has a further purpose or different character is said to be 'transformative.'" *Id.* at *9. In *Goldsmith*, although Warhol added "new expression" to Goldsmith's original photograph, the court found that the Warhol work was used commercially, and both the Warhol work and the Goldsmith photograph shared "substantially the same purpose." *Id.* at *8. Accordingly, the first factor of the fair use analysis favored the copyright holder.

## B.   The *Goldsmith* Analysis Favors Oracle as to Rimini's Migration Copies.

Rimini admits it created hundreds of copies of PeopleSoft software environments—already adjudged infringing—as part of the migration. ECF No. 1524 (Oracle's FOFCOL) at 66-73; ECF No. 1525 at 54. Rimini concedes its migration copies of PeopleSoft were "minimally transformative." *Id.*, ¶ 449. While Rimini claims that it migrated these environments to comply with the Court's summary judgment order, that order said nothing about migrating environments, and Rimini ultimately conceded that it began the migration before the order issued. *Id.*, ¶ 118.

Citing the first fair use factor, Rimini claims that it needed to migrate these environments to prevent harm to Rimini's customers. *Id.* at 161:6-7. This purpose is not criticism, comment, news reporting, teaching, scholarship, or research; it is commercial. Rimini began migrating its

1   environments before the summary judgment order issued in order to compete with Oracle in the

2   market for Oracle support customers, and it continued to do so after the order issued.   Under

3   *Goldsmith*, the first fair use factor favors Oracle as to the migration copies.

4       **C.      The Goldsmith Analysis Favors Oracle as to CodeAnalyzer RAM copies.**

5           Another Rimini infringing support practice was to make a source code change to one

6   customer's PeopleSoft environment, and then use the GenDiff function of Rimini's CodeAnalyzer

7   tool to identify the exact details of that code change and automatically replicate them in other

8   customers' environments. ECF No. 1524 at 107-109. Rimini agrees that the GenDiff function of

9   CodeAnalyzer creates exact RAM copies of Oracle source code. ECF No. 1525, ¶ 452. This

10  copying is also an infringement of Oracle's PeopleSoft copyrights.

11          While conceding its use of these RAM copies was commercial, *id.*, ¶ 453, Rimini argues

12  that the purpose of the original Oracle source code files was limited to "carry[ing] out specific

13  computer instructions relating to the client's use of its PeopleSoft software," whereas Rimini used

14  the CodeAnalyzer RAM copies of Oracle source code for "finding and identifying" the changes

15  Rimini made. *Id.* Rimini then replicated those same changes in other customer's environments,

16  thereby engaging in infringing cross-use. ECF No. 1524 at 107-109.

17          The Court has already rejected Rimini's argument at summary judgment, finding that

18  "Rimini's direct purpose in copying Oracle's software was not for research of the software but to

19  create and test updates, that work within and can only be used with the existing PeopleSoft

20  software, that Rimini then marketed to its clients for profit." ECF No. 1253 at 58:27-59:2. Rimini

21  wrongly distinguishes between the purpose behind customers' use of the PeopleSoft software—to

22  run their businesses—and support providers' commercial purpose, which is to make money by

23  selling services that includes fixes and updates to Oracle software. Oracle delivers the PeopleSoft

24  software to customers with some source code accessible so that the PeopleSoft source code can be

25  modified where desirable. Therefore, one use of Oracle's PeopleSoft source code files is

26  modification and customization.  Rimini's use of RAM copies via CodeAnalyzer shares a use with

27  the accessible Oracle source code files: modification of the customer's PeopleSoft software.  And

28  it shares the same commercial purpose:  to earn money by selling support services.

The Court's reasoning is consistent with *Goldsmith*, and the same reasoning applies here. In *Goldsmith*, the photograph was used to portray Prince as vulnerable, whereas the Warhol work was used to portray Prince as iconic, but both uses fell under the broader purpose of being licensed by magazines for articles about Prince. 2023 WL 3511534, at *17. Similarly, Rimini's use of RAM copies in CodeAnalyzer falls under the category of creating updates for PeopleSoft for profit.

**D.      The *Goldsmith* Analysis Favors Oracle as to the Creation of Rimini Tools.**

Rimini also infringed Oracle's PeopleSoft and EBS copyrights by copying that software in one customer's environment to develop and test its AFW and ePack tools that Rimini then used to automate certain development processes used in creating fixes and updates for all of Rimini's customers. ECF No. 1524 at 105-19 (AFW), 128-29 (ePack). Rimini does not dispute that the copies of Oracle software created in developing and testing its automated tools were exact or near exact copies of the original Oracle software. ECF No. 1525 at 163, ¶ 459. And Rimini again acknowledges that the tools it developed were "for a commercial purpose." *Id.*

Rimini again wrongly compares itself to Oracle customers instead of support providers. The purpose behind a customer's use of the software is to run a business.  The purpose behind a support provider's use of the software is to sell support to Oracle customers. As the Court found on summary judgment, even when Rimini uses copies of PeopleSoft software to create new software, that does not favor Rimini under the first fair use factor when the software is implemented in the same Oracle software, the Oracle software works the same way, and customers access and use the software in the same way. ECF No. 1253 at 57:27-58:4. Rimini cross-used Oracle software to develop tools that would enable Rimini to further cross-use Oracle software more easily. And Rimini engaged in this cross-use to compete directly with Oracle in providing support to Oracle licensed customers. *Goldsmith* compels the conclusion that the first factor weighs against fair use in these circumstances.

**IV.    CONCLUSION**

For the reasons stated above, the Supreme Court's opinion in *Andy Warhol Found. v. Goldsmith* further supports a finding that the "purpose and character" fair use factor favors Oracle.

DATED: May 30, 2023    MORGAN, LEWIS & BOCKIUS LLP

By:     */s/ Benjamin P. Smith*
      Benjamin P. Smith

Attorneys for Plaintiffs and Counterdefendants
Oracle International Corporation and Oracle
America, Inc.

6

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on the 30th day of May, 2023, I electronically transmitted the

3   foregoing, **ORACLE INTERNATIONAL CORPORATION AND ORACLE AMERICA,**

4   **INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF PROPOSED FINDINGS OF FACT**

5   **AND CONCLUSION OF LAW**, to the Clerk's Office using the CM/ECF System for filing and

6   transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being

7   registered to receive Electronic Filing.

8

9    DATED:  May 30, 2023                              MORGAN, LEWIS & BOCKIUS LLP

10

11                                                     By: _____ */s/ Benjamin P. Smith* _____
                                                              Benjamin P. Smith
12
                                                       Attorneys for Plaintiffs and Counterdefendants
13                                                     Oracle International Corporation and Oracle
                                                       America, Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28