UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ORACLE INTERNATIONAL CORPORATION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> RIMINI STREET, INC., *et al.*, <br><br> Defendants. | Case No. 2:14-cv-01699-MMD-DJA <br><br> ORDER |

**I.    SUMMARY**

This was a software copyright and unfair competition dispute between Plaintiffs and Counter Defendants Oracle America, Inc., and Oracle International Corporation (collectively, "Oracle") and Defendants and Counter Claimants Rimini Street, Inc., and Seth Ravin (collectively, "Rimini") generally regarding Rimini's unauthorized copying of Oracle's enterprise software into and from development environments created by Rimini for its clients, along with disputes regarding allegedly false statements in marketing and advertising and unfair competition. (ECF Nos. 1253 at 2, 1305 at 12-13.) Following a bench trial, the Court mostly—but not entirely—found in Oracle's favor and entered a permanent injunction against Rimini. (ECF Nos. 1536 ("Bench Order"), 1537 (the "Injunction"), 1538 ("Judgment").) Rimini appealed (ECF No. 1540), and then filed the currently pending emergency motion for a stay of the Injunction pending the outcome of Rimini's appeal, or, alternatively, for a temporary, administrative stay until the United States Court of Appeals for the Ninth Circuit can weigh in on a similar motion to stay the

Injunction directed to that court (ECF No. 1542 ("Motion")).[1] Because the applicable factors do not favor a stay, and as further explained below, the Court will deny the Motion. However, the Court will temporarily stay its Injunction until the Ninth Circuit is able to resolve the motion to stay Rimini states it intends to file with the Ninth Circuit because it is true that the Court's Injunction imposes a 60-day timetable to certify compliance and requires the deletion of significant amounts of code.

**II.     DISCUSSION**

Rimini's Motion falls under Fed. R. Civ. P. 62(d). That rule provides that the Court may "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights" "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction[.]" Fed. R. Civ. P. 62(d). The Injunction was such an order. *See id.* In resolving the Motion, the Court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Sierra Club v. Trump*, 929 F.3d 670, 687 (9th Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). And as the party who filed the Motion, Rimini bears the burden of showing that the circumstances justify an exercise of judicial discretion to intrude into the ordinary processes of administration and judicial review—which in this case resulted in the Bench Order, Injunction, and Judgment. *See id.* at 687-88. Said otherwise, these orders would normally be the end of this case at the district court level. This is why Rimini must make a strong showing of likelihood of success on the merits to establish its entitlement to a stay pending appeal. *See id.*

---

[1] Per an expedited briefing schedule (ECF No. 1543), Oracle filed a response (ECF No. 1546) and Rimini replied (ECF No. 1552).

The Court next addresses the factors that Rimini must satisfy to obtain a stay of the Injunction pending appeal. Rimini has not carried its burden.

### A. Likelihood of Success on the Merits

Rimini argues that it is likely to succeed in its appeal because the Injunction is overbroad,[2] the Court applied the wrong definition of derivative works, the Court incorrectly construed certain license agreements, Oracle failed to establish its Lanham Act claims, and Oracle failed to demonstrate irreparable harm or the requisite causal nexus necessary to obtain injunctive relief. (ECF No. 1542 at 14; *see also id.* at 14-26.) The Court is unpersuaded. The Court recently issued the Bench Order considering and rejecting these arguments. The Court incorporates by reference the pertinent portions of the Bench Order here and rejects Rimini's argument that it is likely to prevail on the merits of its appeal for the reasons extensively provided therein. This factor does not favor staying the Injunction.

### B. Irreparable Injury Absent a Stay

Turning to the irreparable harm prong of the analysis, a stay "is not a matter of right, even if irreparable injury might otherwise result." *Sierra Club*, 929 F.3d at 687. (citation omitted). Rimini argues it and its clients will be irreparably harmed by the Injunction because the Injunction requires it to delete code the Court mostly found infringing, the Injunction violates Rimini's First Amendment rights, and complying with the Injunction will both harm Rimini's business and its ability to compete with Oracle for support of Oracle's products. (ECF No. 1542 at 26-28.) Rimini has not made a sufficient irreparable harm showing in its Motion, but presents a close call favoring a temporary, administrative stay of the Injunction.

---

[2]To the extent this argument carries the day on appeal, this is at least in part a problem of Rimini's own making because Rimini made the strategic choice to argue against any injunction at all instead of weighing in on the precise terms of an injunction that would be equitable given Rimini's conduct—despite clear orders to the contrary. (ECF No. 1529.)

This prong of the analysis presents a close call because, on the one hand, Rimini is correct that the Injunction imposes significant burdens on it that cannot realistically be undone, such as deleting automated software tools and posting a press release about its false and misleading statements. Were the Ninth Circuit to disagree with the Court on its findings of fact and conclusions of law supporting these terms of the Injunction, allowing the Injunction to have gone into effect while Rimini appealed would irreparably harm Rimini. But on the other hand, Rimini's own conduct—as further explained below—contradicts its representations of irreparable harm to the Court and several components of Rimini's irreparable harm argument are legally unpersuasive.

To start, the potential harm to Rimini's clients that Rimini highlights in its Motion is not pertinent to the inquiry the Court must undertake in considering the extraordinary remedy of a stay of the Injunction. "[M]onetary injury to third parties" provides only a weak justification for an irreparable harm finding because the pertinent "irreparable harm standard is 'whether the *applicant* will be irreparably injured absent a stay.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) (citations omitted, emphasis in original). And to the extent Rimini has not prepared its clients for the potential consequences of Rimini complying with the Injunction in the ninth year of litigating this second case between the parties (which Rimini filed originally),[3] "[s]elf-inflicted wounds are not irreparable injury." *Ahlman v. Barnes*, Case No. 20-55568, 2020 WL 3547960, at *3 (9th Cir. June 17, 2020) (quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)).

As to Rimini's First Amendment argument, "[f]raudulent commercial speech may be enjoined[,]" *United States v. Schiff*, 379 F.3d 621, 630 (9th Cir. 2004), and "the mere assertion of First Amendment rights does not automatically require a finding of irreparable injury." *CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 851 (9th Cir. 2019). Rimini ignores in its Motion that the Court found in the Bench Order that Rimini

---

[3] Judge Hicks also found some of Rimini's 'Process 2.0' practices infringing back in 2020. (ECF No. 1253.)

engaged in fraudulent commercial speech, specifically finding that several statements Rimini made in marketing and sales communications were false—and Rimini knew they were false. The Court again incorporates by reference the pertinent portions of the Bench Order here. Rimini's attempt to vehemently invoke the First Amendment is unpersuasive.

Moreover, according to exhibits filed with Oracle's response, Rimini appears to be both publicly ignoring the Injunction and specifically the Court's extensive findings that Rimini made a series of false statements over years of competing with Oracle. Indeed, Rimini issued a press release the day after the Court issued the Bench Order and Injunction that does not mention the Court's Lanham Act findings at all, instead making it sound like Rimini mostly prevailed in this case. (ECF No. 1546-2.) *See also* Rimini Street, Rimini Street Statement on U.S. Federal Court Ruling (Jul. 25, 2023), https://perma.cc/YJ5M-TSCR (same document on the internet). It is at least notable that Rimini issued a misleading press release the day after the Court issued the Injunction— that is misleading in part because it declines to mention that the Court had found several of Rimini's standard talking points with customers false and misleading. The press release is also misleading because it suggests that Rimini mostly prevailed in this case and will otherwise prevail on appeal, but the former is directly contrary to the Court's extensive findings in the Bench Order, and the Court is unconvinced of the latter. More broadly, Rimini's issuance of the misleading press release does not support Rimini's general argument that the equities favor staying the Injunction.[4] And what Rimini seeks here is equitable relief. "[T]he fundamental principle [is] that injunctions are equitable in nature and should only issue when supported by the equities." *Miller for & on Behalf of N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536, 540 (9th Cir. 1993), *on reh'g*, 19 F.3d 449 (9th Cir. 1994).

///

---

[4] This accordingly also goes to the fourth factor and the overall analysis but the Court will not repeat this point in this order.

In addition, while the Injunction orders Rimini to stop making the statements the Court found false and misleading, Rimini has apparently not yet complied. (*Compare* ECF No. 1537 at 4-5 (specifying certain statements that Rimini cannot not make anymore) *with* ECF Nos. 1546-4, 1546-5, 1546-6, 1546-7, 1546-8 (making either the same or substantially similar statements in pertinent part).) Unfortunately, this fits a pattern of conduct that the Court extensively detailed in the Bench Order as one of the reasons that the Injunction is warranted—Rimini's noncompliance with Judge Hicks' prior orders. (ECF No. 1536 at 115-19, 193.)

As to the harm that Rimini argues it will suffer from complying with the Injunction pending appeal, the Court agrees with Oracle that Rimini cannot have it both ways. (ECF No. 1546 at 11-12.) While Rimini represents to the Court—supported by sworn declarations from Craig Mackereth and Jeff Spicer—that it will be irreparably harmed by complying with the Injunction (ECF No. 1542 at 26-28; *see also* ECF Nos. 1542-1, 1542-2), Rimini generally and Seth Ravin specifically are concurrently representing to the public and investors that Rimini will not be irreparably harmed by the Injunction. (ECF Nos. 1546-2, 1546-3; *see also* Rimini St., Inc., *Rimini Street Announces Fiscal Second Quarter 2023 Financial and Operating Results* (last visited August 15, 2023), https://www.sec.gov/Archives/edgar/data/1635282/000163528223000176/rmniq22023earningreleaseex.htm.

To elaborate, both Mr. Ravin in a call with investors regarding Rimini's second quarter financial results and Rimini generally in the above referenced document filed with the SEC state that PeopleSoft support, "was approximately 8% of [Rimini's] total revenue during the fiscal second quarter of 2023." (ECF No. 1546-3 at 5, 7.) And Mr. Ravin answered a question from an investor about the expenses necessary to comply with the Injunction in terms of changing Rimini's PeopleSoft support processes as follows:

> What I can say is when you go back, if you look historically in the records, when we dealt with this discussion point back in 2015 and '16 through Rimini I, we used to estimate at that time that we thought that conversion to a manual process would likely cost 1% to 2% of gross margin in that product

> line. As you've seen, based on our disclosures, the product line accounted for roughly 8% of our revenue. You could do some calculations against our gross margins and see what those numbers might look like.

(*Id.*) Mr. Ravin also otherwise suggested on the call that he did not think the Injunction will have much impact on Rimini's business in stating that he has only gotten a few customer inquiries about it. (*Id.* at 9.) The Court cannot square these statements with Mr. Mackereth's statement that compliance with the PeopleSoft components of the Injunction will result in immediate and irreparable harm. (ECF No. 1542-1 at 3.) Moreover, Rimini's press release also suggests to a reasonable reader that the Injunction will not cause Rimini irreparable harm, declining to even mention the Injunction, instead emphasizing that "Rimini Street is not prohibited from providing support or services for any Oracle products[,]" moving on to discuss how Oracle dropped its damages claims pretrial, then listing the 'many significant legal points' on which Rimini prevailed at trial, before closing with statements to the effect that Rimini is appealing and has always found success in past appeals from this case and *Oracle I*. (ECF No. 1546-2.) And again, the press release simply does not discuss the Court's Lanham Act findings. (*Id.*)

In response to questions from investors about the Lanham Act portion of the Injunction, Mr. Ravin would not definitively state that he and Rimini would comply. (ECF No. 1546-3 at 13-14; *see also id.* at 14 ("The court had asked us to put that up 30 days after issuing the injunction, and we'll cross that bridge in 30 days.").) He accordingly must not expect much irreparable harm from that portion of the Injunction if he will not commit to complying with it. Indeed, the harm that Mr. Spicer discusses in his declaration (ECF No. 1542-2) would only come to pass if Rimini complies with the Injunction.

Said otherwise, Rimini and Mr. Ravin are publicly representing that the Injunction will not irreparably harm Rimini while their attorneys and Mr. Ravin's subordinates are arguing to the Court—under penalty of perjury—that it will. This contradictory conduct significantly reduces the persuasiveness of Rimini's irreparable harm argument. *See, e.g.*, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, Case No. C 10-3428 PSG,

2013 WL 557102, at *5 (N.D. Cal. Feb. 12, 2013) (finding no irreparable harm warranting stay pending appeal of permanent injunction in a patent portion of suit where the adjudicated infringer's "executives have indicated to the press that the design-arounds to the infringing features are already in place and the injunction will not disrupt [the infringer's] shipment of product"); *Ahlman*, 2020 WL 3547960, at *3 (finding irreconcilable declarations undermined the party seeking the stay's irreparable harm argument). On balance, while presenting a close call, this factor does not favor staying the Injunction either.

### C. Substantial Injury to Other Parties

The third prong of the analysis is "whether issuance of the stay will substantially injure the other parties interested in the proceeding[.]" *Sierra Club*, 929 F.3d at 687. Rimini incredibly argues that staying the Injunction will not harm Oracle, and goes farther, arguing that Oracle "never presented any evidence of harm throughout this case." (ECF No. 1542 at 29.) The Court disagrees and again incorporates by reference its irreparable harm findings as to Oracle from the Bench Order. (ECF No. 1536 at 183-88; *see also id.* at 187 (pointing in part to Oracle's CEO Safra Katz's trial testimony that Rimini's conduct has "'had an incredibly detrimental impact on' Oracle because not only does Rimini take Oracle's customers while infringing on Oracle's rights, 'but they also tell our customers that we're pretty much overcharging them for their support agreement, and they break that relationship' between Oracle and its customers, who 'would have both bought support from' Oracle 'in subsequent years, or potentially bought new products, totally different products from us over the future.'").) This factor also does not favor staying the Injunction.

### D. Public Interest

As to the fourth prong, Rimini reiterates its likelihood of success on the merits argument that the Court erred in certain copyright portions of the Bench Order and Injunction, invokes the public interest in upholding First Amendment principles, and mentions that competition is vital to the public interest. (ECF No. 1542 at 29-30.) The

Court again notes its disagreement that it erred in the copyright portions of the Bench Order and also notes that it found for Oracle on all of Rimini's claims regarding Oracle's purportedly anticompetitive conduct (either in the Bench Order or in Judge Hicks' prior orders) as well.

As to Rimini's First Amendment argument, the Ninth Circuit "has held that mandated disclosure of factual, commercial information does not offend the First Amendment." *Schiff*, 379 F.3d 621, 631 (citation omitted). It also does not serve the public interest to allow Rimini to falsely advertise while it appeals. *See Monster Energy Co. v. Vital Pharms.*, Inc., Case No. EDCV181882JGBSHKX, 2023 WL 2918724, at *17 (C.D. Cal. Apr. 12, 2023) ("The Court finds no reason to stay the issuance or enforcement of the injunction. While Defendants await the conclusion [other proceedings and another decision], they should not be permitted to falsely advertise."); *see also id.* at *7 ("There is a strong public interest in preventing false advertising of products in the marketplace.") (citations omitted, currently on appeal).

Indeed, the Court finds Oracle's counterargument, which refers back to the Court's findings in the Bench Order supporting the Court's decision to issue the Injunction, more persuasive on the public interest prong of the analysis. (ECF No. 1546 at 28-29.) The Court continues to find that enjoining copyright infringement, violations of the DMCA, and false and misleading statements is in the public interest. (ECF No. 1536 at 193-94.)

In sum, and on balance, the four applicable factors, *see Sierra Club*, 929 F.3d at 687, do not favor granting Rimini's Motion.

### E.     Temporary Stay

But as noted, Rimini alternatively moves for a temporary, administrative stay of the Injunction so that Rimini may seek a stay from the Ninth Circuit. (ECF No. 1542 at 30.) The Court will grant this request. First, the Court finds persuasive Rimini's argument in reply that its right to appeal will not be meaningful unless the Court at least grants Rimini's alternative request because, given the timelines specified in the Injunction, it will not

1 realistically get an answer from the Ninth Circuit on its stay request until after it must
2 evidence its compliance with the Injunction. (ECF No. 1552 at 5.) Second, there is no
3 question that the Injunction requires Rimini to delete significant amounts of code and is
4 drafted in a way calculated to ensure such deletion cannot be easily undone. A temporary
5 stay of the Injunction will at least enable Rimini to get the Ninth Circuit's ruling before it
6 must certify that it has completed the deletions the Injunction requires. Third, Oracle has
7 been harmed by Rimini's conduct for years now, so the marginal delay associated with
8 the time it takes the Ninth Circuit to resolve Rimini's motion to stay enforcement of the
9 Injunction will not cause much additional harm.

For these reasons, and like Judge Hicks did in *Oracle I*, Case No. 2:10-cv-00106-LRH-VCF, ECF No. 1177 at 4-5 (D. Nev. Sept. 11, 2018), the Court will temporarily stay its Injunction until the Ninth Circuit is able to resolve Rimini's contemplated motion to stay directed at that court.

**III.   CONCLUSION**

It is therefore ordered that Rimini's emergency motion for a stay of the Injunction pending appeal (ECF No. 1542) is denied.

But it is further ordered that the Court's previously issued Injunction (ECF No. 1537) is temporarily stayed until the United States Court of Appeals for the Ninth Circuit resolves the motion for a stay pending appeal that Rimini states it intends to file with the Ninth Circuit under Federal Rule of Appellate Procedure 8(a)(2). Rimini must file such a motion with the Ninth Circuit by August 25, 2023.

///
///
///
///
///
///

It is further ordered that Rimini must file a notice with the Court of the ultimate disposition of Rimini's motion to stay within five days of the Ninth Circuit's order on that motion. If the Ninth Circuit denies Rimini's contemplated motion to stay, the Court will set a revised timeline for Rimini's compliance with the Injunction upon receipt of Rimini's required notice with the Court.

DATED THIS 15th Day of August 2023.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE