GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:    949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
cmccracken@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
ILISSA S. SAMPLIN (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com
isamplin@gibsondunn.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV  89169
Telephone:    702.667.4843
wwa@h2law.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
7251 West Lake Mead Blvd.
Suite 300
Las Vegas, NV  89128
Telephone:    336.908.6961
jreilly@riministreet.com

WEIL, GOTSHAL & MANGES LLP
MARK A. PERRY (*pro hac vice*)
2001 M Street, N.W., Suite 600
Washington, DC  20036
Telephone:    202.682.7511
mark.perry@weil.com

*Attorneys for Defendants/ Counterclaimants
Rimini Street, Inc., and Seth Ravin*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ORACLE INTERNATIONAL CORP., and ORACLE AMERICA, INC.,<br><br>              Plaintiffs/ Counterdefendants,<br><br>v.<br><br>RIMINI STREET, INC., and SETH RAVIN,<br><br>              Defendants/ Counterclaimants. | CASE NO. 2:14-cv-01699-MMD-DJA<br><br>**RIMINI'S OPPOSITION TO ORACLE'S MOTION TO AMEND THE JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(E)**<br><br>Judge:    Hon. Miranda M. Du |

1

**TABLE OF CONTENTS**

2
**Page**

3

I.      INTRODUCTION ......................................................................................................... 1

4

II.     LEGAL STANDARD................................................................................................... 2

5

III.    ARGUMENT ............................................................................................................... 2

6

        A.      Oracle's Rule 59(e) Motion Merely Repeats Its Prior Arguments and Is

7               Thus Improper................................................................................................. 2

8       B.      There Is No Basis to Amend the Judgment or Injunction................................ 4

9               1.      The Court's Findings and Judgment Regarding ePack Were

10                      Correct................................................................................................. 4

11                      a.      Rimini's ePack Script Is Used by Clients to Install Their

                                Updates .................................................................................. 4

12                      b.      The Court's Ruling Regarding ePack Was Correct ...................... 5

13              2.      EBS100025 ......................................................................................... 9

14      IV.     CONCLUSION............................................................................................................ 11

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RIMINI'S OPPOSITION TO ORACLE'S MOTION TO AMEND THE JUDGMENT
CASE NO. 2:14-CV-01699-MMD-DJA

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3

### Cases

4

*389 Orange St. Partners v. Arnold,*
5
   179 F.3d 656 (9th Cir. 1999) ....................................................................2

6
*Abet Just., LLC v. Am. First Credit Union,*
   2014 WL 5342126 (D. Nev. Oct. 20, 2014) ................................................3
7

*Allstate Ins. Co. v. Herron,*
8
   634 F.3d 1101 (9th Cir. 2011) ...................................................................2

9
*Antonetti v. Neven,*
   2010 WL 11537730 (D. Nev. May 28, 2010)..............................................2
10

*Brown v. United States,*
11
   2023 WL 2537943 (D. Nev. Mar. 15, 2023) ..........................................2, 3, 4

12
*Kona Enters., Inc. v. Est. of Bishop,*
   229 F.3d 877 (9th Cir. 2000) .....................................................................2
13

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.,*
14
   636 F.3d 1150 (9th Cir. 2011) ..................................................................10

15
*Taylor v. Matal,*
   2017 WL 5147147 (E.D. Va. Nov. 6, 2017), *abrogated on other grounds by*
16
   *Hyatt v. Hirshfeld,* 16 F.4th 855 (Fed. Cir. 2021)......................................8

17
*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.,*
   282 F.R.D. 216 (D. Ariz. 2012) ..............................................................4, 9
18

*Troy Cap. LLC v. Patenaude & Felix APC,*
19
   2023 WL 319859 (D. Nev. Jan. 18, 2023)..................................................3

20
*Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.,*
   979 F.3d 1209 (9th Cir. 2020) ...................................................................4
21

*Wood v. Ryan,*
22
   759 F.3d 1117 (9th Cir. 2014) ...................................................................2

23
### Rules

24
LR 59-1(b) ......................................................................................................3

25

26

27

28

Gibson, Dunn &
Crutcher LLP

## I.    INTRODUCTION

The Court held that "Oracle has not met its burden to show that Rimini's EBS support processes infringe Oracle's pertinent copyrights," which necessarily extends to the ePack script and EBS100025.  ECF No. 1536 at 158.  Nevertheless, Oracle now claims it is *entitled* to amendment of the judgment under Rule 59(e) to hold that Rimini infringed with respect to ePack and EBS100025, and it asks the Court to modify the injunction with respect to both.  But amendment under Rule 59(e) is an "extraordinary remedy" that courts grant only "sparingly."  And as this Court's Local Rules make clear, a party should never use Rule 59(e) to reargue issues or express disagreement with a result.  Instead, such a motion must identify (i) new evidence, (ii) new controlling law, or (iii) some clear error in the Court's judgment that justifies amendment.  But Oracle does not base its motion on any of these categories.  Rather, Oracle appears to assume the Court missed or misunderstood its prior arguments about ePack and EBS100025 and simply reasserts them for reconsideration.  This is an improper use of Rule 59(e)—if Oracle wants to reargue these issues, it must do so on appeal.  The Court should deny Oracle's motion on this basis alone.

Even if the Court construes Oracle's motion as arguing that the Court's judgment is clearly erroneous, Oracle's motion fails.  To show clear error, Oracle must identify a "plain and indisputable" error "that amounts to a complete disregard of the controlling law or the credible evidence in the record."  Oracle cannot meet this stringent standard.  The Court got it exactly right in holding that Oracle failed to prove EBS infringement, including with respect to ePack and EBS100025.  ePack is a script *run by clients* to apply finished updates to their production environments; the undisputed evidence showed that ePack *operates solely in the environment of the client that runs it*, does not cause anything to be transferred to any other client, contains no Oracle expression, and is a "shell" script that can be run in multiple different operating systems.  Similarly, Oracle failed to meet its burden to present evidence at trial of cross-use with respect to the technical specification for EBS100025; instead, Oracle's expert offered only the hypothetical that *if* the technical specification was used with multiple clients it *would* be cross-use.  The Court's rejection of Oracle's infringement arguments with respect to ePack and EBS100025 is thus *fully*

*consistent* with—not a "complete disregard" of—the record.  There is no error, let alone clear error, and therefore no basis for amending the Court's judgment or injunction as to EBS.

## II.     LEGAL STANDARD

"[A] Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Kona Enters., Inc. v. Est. of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000)).  Rule 59(e) motions "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."  *Kona Enters.*, 229 F.3d at 890 (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).  "A party cannot have relief under this rule merely because he or she is unhappy with the judgment."  *Antonetti v. Neven*, 2010 WL 11537730, at *1 (D. Nev. May 28, 2010).  Thus, a Rule 59(e) motion fails where "Plaintiffs do nothing more than relitigate old matters" and "do not point to any new evidence or change(s) in controlling law."  *Brown v. United States*, 2023 WL 2537943, at *1 (D. Nev. Mar. 15, 2023) (Du, C.J.).

## III.     ARGUMENT

Oracle's motion should be denied outright because Oracle fails to identify any newly discovered evidence, intervening change in controlling law, or clear error by this Court, as is required for a Rule 59(e) motion.[1]  Even if the Court elects to consider the motion, the Court's judgment with respect to the EBS claims Oracle seeks to relitigate should be affirmed because it is correct.

### A.     Oracle's Motion Merely Repeats Its Prior Arguments and Is Thus Improper

Oracle's motion does not meet the basic requirements of Rule 59(e).  Oracle does not contend that there is new evidence, an intervening change in the law, or clear error in the Court's Bench Order.  Nor does it claim that "highly unusual circumstances" apply here that would warrant abandoning those typical requirements.  Instead, under the guise of seeking "clarification" (Mot.

---

[1] Some cases identify a fourth basis to grant relief under Rule 59(e)—when it is "necessary to prevent manifest injustice" (*e.g.*, *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011))—but Oracle does not contend that there is any manifest injustice here.

Gibson, Dunn & Crutcher LLP

at 2), Oracle's motion merely reargues issues already presented to and resolved by the Court.

At trial and in its post-trial proposed findings of fact and conclusions of law, Oracle argued: (i) that the ePack script used in Rimini's EBS support process was an "endpoint of cross-use" and an infringing derivative work, and (ii) that Rimini's 2013 technical specification for EBS100025 contained embedded Oracle files. Tr. 354:7-17 [Frederiksen-Cross]; ECF No. 1524 at 106-12, 204-06. Oracle also sought, as it does once again in its motion, injunctive relief on the basis of both arguments. ECF No. 1524-9 ¶¶ 21-22. The Court rejected these arguments, holding that "Oracle has not met its burden to show that Rimini's EBS support processes infringe Oracle's pertinent copyrights" (ECF No. 1536 at 158), and the Court specifically declined to adopt portions of Oracle's proposed injunction seeking relief regarding ePack and technical specifications. *Compare id.* at 194 ("To start, the Court will omit from the injunction Oracle's proposed sections regarding EBS and JDE because the Court found Oracle did not meet its burden to establish copyright infringement as to those products."), *with* ECF No. 1524-9 ¶¶ 21-22. Unhappy with that result, Oracle now seeks a do-over—without any new evidence, new law, or clear error identified—and presents precisely the same arguments it raised previously with respect to ePack and EBS100025, even citing to those previously-made arguments in its post-trial briefing as support for its motion. Mot. at 3-4 (citing Oracle's post-trial proposed findings of fact and conclusions of law).

As this Court has repeatedly made clear, a Rule 59(e) motion is not a vehicle to "relitigate old matters" or "rehash[] old arguments." *Brown*, 2023 WL 2537943, at *1; *Abet Just., LLC v. Am. First Credit Union*, 2014 WL 5342126, at *2 (D. Nev. Oct. 20, 2014) (Du, C.J.). And the Court's Local Rules explicitly prohibit a party from repeating prior arguments in a Rule 59 motion: "A movant *must not* repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts. A movant who repeats arguments will be subject to appropriate sanctions." LR 59-1(b) (emphasis added); *see also Troy Cap. LLC v. Patenaude & Felix APC*, 2023 WL 319859, at *1-2 (D. Nev. Jan. 18, 2023) (applying local rule). The Court should deny Oracle's motion on this basis alone.

Gibson, Dunn &
Crutcher LLP

**B.      There Is No Basis To Amend the Judgment or Injunction**

Oracle's motion should be denied outright, but in any case there is no basis to amend the Court's judgment or injunction.  Because there is no new evidence or case law applicable here, Oracle's request must be based on supposed "clear error."  *Brown*, 2023 WL 2537943, at *1 ("A district court generally should not grant a Rule 59(e) motion in the absence of 'newly discovered evidence,' 'clear error,' or 'an intervening change in the controlling law.'" (quoting *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020))).

Clear error under Rule 59(e) is a "very exacting standard, such that a court should have a clear conviction of error."  *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 231 (D. Ariz. 2012) (cleaned up).  "To be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must be *dead wrong*."  *Id.* (emphasis added).  "[A] manifest error of fact or law must be one 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'"  *Id.* (citation omitted).  None of Oracle's arguments come close to meeting this standard.

**1.      The Court's Findings and Judgment Regarding ePack Were Correct**

**a.      Rimini's ePack Script Is Used by Clients To Install Their Updates**

ePack is a "shell script." Tr. 2321:9-13 [Astrachan].  A script in computer parlance is simply a text file that contains a series of instructions carried out in a specific order. *Id.* 2321:14-2322:3.  A "shell" script is a script that runs in the outermost layer of the operating system (such as Windows or Unix), called a "shell." *Id.* 2321:9-2322:7.  A shell script is run via the "command line"—a core functionality provided by a computer's operating system into which operating system commands can be entered—and invokes a list of commands for the computer to execute, including tasks like unzipping folders or moving files. *Id.* 2321:14-2322:3.

ePack has no role at all in Rimini's development of updates for its EBS clients.  Instead, Rimini created the ePack script to help clients with the monotonous and error-prone burden of applying Rimini's updates—*after* Rimini delivers them to the client—to the production version of their EBS software. Tr. 1480:20-1481:13 [Mackereth].  The task of applying an update can be tedious and involves a number of different steps, and numerous different files, and if those steps

4

1   are not executed precisely, errors will occur.  *Id.*  When run, ePack provides instructions to the

2   computer on how to perform the necessary steps to apply a finished update to the client's

3   production environment.  *Id.*  Importantly, the *client* runs the ePack script to apply updates to the

4   client's *production* environment, and this occurs *after* Rimini has created and delivered a finished

5   update to the client—ePack is not used during the development of updates.  Tr. 2319:25-2320:2

6   [Astrachan]; Tr. 1453:23-1454:11, 1480:20-1481:13 [Mackereth]; Tr. 537:6-12 [Frederiksen-

7   Cross].

8            All of ePack's activity occurs in a single client's environment, solely for that client.  Ms.

9   Frederiksen-Cross admitted that when ePack is run it "does not cause anything to happen in any

10  other client's environment," "nothing is going to or from or between any clients," and "nothing is

11  going to or from Rimini." Tr. 538:15-539:6 [Frederiksen-Cross].  It was also undisputed that the

12  ePack script contains no literal or nonliteral protected Oracle expression.  *Id.* 536:12-537:5; Tr.

13  1481:17-18 [Mackereth]; Tr. 2322:25-2323:5 [Astrachan].

14                       **b.       The Court's Ruling Regarding ePack Was Correct**

15           As an initial matter, Oracle suggests that the Court's Bench Order did not contain "express

16  findings" on whether the ePack script infringes.  Mot. at 4.  That is false: the Court expressly held,

17  multiple times, that Oracle failed to establish *any* infringement in Rimini's EBS support processes.

18  ECF No. 1536 at 158 ("Oracle failed to present any evidence that Rimini's EBS support processes

19  involve sharing Oracle code between clients or including it in technical specifications under

20  Process 2.0.  That means that every copy of Oracle expression made during this process, whether

21  disk or RAM, is made in the siloed client environment and for that client."); *id.* ("In sum, Oracle

22  has not met its burden to show that Rimini's EBS support processes infringe Oracle's pertinent

23  copyrights."); *id.* at 169 ("[T]he Court declares that, based on the evidence introduced at trial,

24  Rimini's support process for EBS does not infringe Oracle's pertinent copyrights."); *id.* at 194

25  ("[T]he Court found Oracle did not meet its burden to establish copyright infringement as to

26  [EBS]").  The ePack script is part of Rimini's EBS support processes, and the Court's finding that

27  Oracle failed to establish any infringement in Rimini's EBS support processes thus necessarily

28  extends to ePack.

Gibson, Dunn &
Crutcher LLP

Oracle has not identified any clear error in these findings. Oracle contends that ePack infringes "for nearly identical reasons" that the Court found Rimini's PeopleSoft tools infringe, but this argument fails because the PeopleSoft AFW tools are completely different from ePack. Mot. at 3. Rimini's PeopleSoft tools, including the AFW tools, "facilitate and automate" a TLR update process that the Court found to be "impermissible cross-use." ECF No. 1536 at 43. The Court found that portions of AFW "essentially function[] as a 'drop box' where computer communications and data are deposited to be retrieved" (*id.* at 45), and that various tools within AFW facilitated transferring such materials—including, in some cases, Oracle protected expression—between clients (*id.* at 43-44, 50-51). Thus, in the Court's view, AFW was an "important component" of "impermissible cross use" in Rimini's PeopleSoft support process. *Id.* at 150-51; *see also*, *e.g.*, *id.* at 47 (CodeAnalyzer tool "is an engine of impermissible cross-use because, as detailed above, it permits Rimini to . . . develop an update once and apply the modifications automatically to remaining customers in the group"); *id.* ("Rimini uses the function 'CopyRSIFileFromClientToClient' to copy files from one customer's PeopleSoft environment and distribute them to multiple other customers"); *id.* at 53-54 (ApplyUpdate tool facilitates "impermissible cross use" because the tool "involves the use of Client A's environment for updates to Client B's and C's environments"). While Rimini respectfully disagrees with the Court's findings as to the PeopleSoft AFW tools, ePack is fundamentally different in how it operates.

ePack is a script that is executed by *the client* and run *after* an update has been created and delivered to the client—the script is not involved in the *creation* of updates like the PeopleSoft tools the Court found infringing. And the script does not facilitate the transfer of anything between clients or between a client and Rimini, as Ms. Frederiksen-Cross admitted:

> **Q.** When ePack is run in a client's environment, it does not cause anything to happen in any other client's environment, correct?
>
> **A.** The specific instance of running it in that environment is confined to the environment where it's being run and the environment that it's being used to promote to.
>
> **Q.** So when it's run, nothing is going to or from or between any clients, correct?

Gibson, Dunn & Crutcher LLP

**A.**   Not in any of the evidence that I have seen.   It's confined within the boundaries of the various environments that one client has.

Tr. 538:15-25 [Frederiksen-Cross]; *see also* Tr. 2321:2-5 [Astrachan] ("**Q**. Is there anything about this process that moves files from one client to another?   **A**. No.   Those are in the client's environment, not moved between clients.").   Further, Oracle's basis for accusing ePack of cross-use was that it was allegedly the "endpoint" of supposed cross-use that occurred when Rimini *created EBS updates* (Tr. 354:18-20 [Frederiksen-Cross]), but the Court squarely rejected the argument that Rimini's processes for EBS updates involved cross-use.   ECF No. 1536 at 157-58.

Oracle also suggests that ePack must be infringing because, in ruling on Rimini's declaratory relief claim, the Court held that Rimini is "entitled to a declaration of non-infringement as to its EBS support processes to the extent Rimini . . . does not use any automated tools."   *Id.* at 197.   From that statement, Oracle jumps to the conclusion that the Court found all automated tools infringing and that the Court implicitly found that ePack is an automated tool and an infringing one.

The Court found nothing of the sort, and Oracle's attempt to interpret this language so broadly flips the Court's order on its head.   If the Court concluded that ePack infringes, it would have said so.   Instead, despite Oracle vigorously contending that ePack infringed its EBS copyrights, the Court repeatedly found that "based on the evidence introduced at trial"—which of course includes the evidence about ePack Oracle introduced—"Rimini's support process for EBS does not infringe Oracle's pertinent copyrights."   ECF No. 1536 at 169.   The Court's declaratory relief language concerning "automated tools" cannot be read, as Oracle argues, to "prohibit" Rimini from using ePack, as that would *contradict* the Court's repeated holdings that Rimini's EBS support processes do not infringe.   Moreover, it is unreasonable to read the Court's order, as Oracle does, as precluding Rimini from using *any* "automated" software tool whatsoever—no matter what it does—when providing EBS support.   Take, for instance, tools that can "automatically" compile source code into object code, text editors that "automatically" save files as one works, spell-checkers that "automatically" underline misspelled words, and even standard operating systems actions that can "automatically" copy files from one location to another on the

RIMINI'S OPPOSITION TO ORACLE'S MOTION TO AMEND THE JUDGMENT
CASE NO. 2:14-CV-01699-MMD-DJA

Gibson, Dunn &
Crutcher LLP

same computer system.  Oracle certainly has not demonstrated that *all* "automated" tools that could possibly be used in the software development process are infringing.  Indeed, the only automated tools the Court found infringing were certain Rimini *PeopleSoft tools*, but as noted above ePack is entirely different than those tools.

The record also contradicts Oracle's suggestion that ePack was "created through impermissible cross-use," Mot. at 3, and supports the Court's prior rejection of that argument.  As Rimini's expert explained, ePack is a "shell script" that was written using a (non-Oracle) text editor "like Notepad or Workpad on the Rimini systems, so it was certainly not developed using Oracle tools or in a client's Oracle environment." Tr. 2323:10-15 [Astrachan].  While Ms. Frederiksen-Cross offered testimony that ePack was developed "using Rimini customer EBS environments," she offered no explanation and identified no evidence to support this assertion.  Tr. 354:23-25 [Frederiksen-Cross].[2]  Regardless, the mere fact that there was a difference of opinion between the parties' experts does not mean that the Court's decision that Oracle failed to prove infringement was manifestly erroneous.  *See*, *e.g.*, *Taylor v. Matal*, 2017 WL 5147147, at *3 (E.D. Va. Nov. 6, 2017), *abrogated on other grounds by Hyatt v. Hirshfeld*, 16 F.4th 855 (Fed. Cir. 2021) (denying Rule 59(e) motion where plaintiff argued that "the Court 'overlooked or misunderstood' his experts' evidence"; the court "did not overlook the evidence from these experts in its opinion [but] actually examined each expert opinion offered by both parties" and found plaintiff's experts "unpersuasive").  Indeed, the Court did not accept any of Ms. Frederiksen-Cross's other opinions about supposed EBS infringement either, despite her lengthy testimony on that topic.

Finally, ePack is not a derivative work.  As noted, Oracle's own expert conceded at trial that ePack incorporates no literal or nonliteral Oracle expression.  Tr. 536:12-537:5 [Frederiksen-Cross].  While this Court has ruled that a Rimini-created file can be a derivative work even where

---

[2] Nor was ePack tested in one client's environment "for" other clients, as Oracle appeared to contend in its post-trial briefing.  ECF No. 1524 at 111, 206.  ePack was tested "in a client's environment as part of applying an update for that client" "to particularly support that client as part of that update." Tr. 2323:16-25 [Astrachan].  There was no evidence that Rimini tested the tool once for a single client and then distributed it to other clients.  Even if there were, this Court ruled—reaffirming Judge Hicks's prior holding—that "Rimini is permitted to perform less or even no testing if it so chooses." ECF No. 1536 at 43.

8

Gibson, Dunn &
Crutcher LLP

it does not incorporate Oracle protected expression if it "interact[s] only with" Oracle software and was "designed using Oracle" software and tools (ECF No. 1536 at 146), even under that definition, ePack does not qualify as a derivative work. As Rimini's expert Professor Astrachan explained, ePack is a "shell script"—a type of script that can be run in "[m]ost operating systems" including "Windows or Unix." Tr. 2322:4-7 [Astrachan]. And ePack was not written using EBS, as explained above. While Ms. Frederiksen-Cross testified that she had not "seen any evidence" that ePack "operate[s] with anything other than Oracle E-Business Suite" (Tr. 355:1-3 [Frederiksen-Cross]), she did not contradict Professor Astrachan's testimony that shell scripts like ePack are not specific to EBS and can be executed in "[m]ost operating systems." Similarly, although Ms. Frederiksen-Cross testified that ePack makes use of "E-Business Suite software tools" when the script is *run* (*id.* 355:4-9), she admitted that any calls to these tools are made "through the form of a standard programmatic call" and she had no opinion that the script itself actually incorporated any Oracle expression. *Id.* 536:19-537:5. And again, even if Ms. Frederiksen-Cross's testimony contradicted Professor Astrachan's, the fact that the Court did not accept her opinions does not mean that the Court made a "plain and indisputable" error "that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Apollo*, 282 F.R.D. at 231.

## 2. EBS100025

Oracle's argument as to EBS100025 similarly fails. EBS100025 is an update that made necessary adjustments to the federal IRS Form-1099. Rimini provided the update in 2013. According to Oracle, the Court found this update was not infringing because it was from 2013, even though Oracle's infringement claim purportedly goes back to 2011. Apparently believing the Court misunderstood this, Oracle repeats its prior arguments and declares that it is "entitled" to infringement findings on EBS100025. Mot. at 5.

Once again, Oracle ignores the Court's express findings. While the Court did note that there was no evidence that Rimini had used EBS100025 after October 2013, the Court also elsewhere held that Oracle did not meet "its burden to show that Rimini's EBS support processes infringe Oracle's pertinent copyrights." ECF No. 1536 at 158. As with ePack, the Court so held

9

despite Oracle vigorously contending the opposite with respect to EBS100025.  ECF No. 1524 at 106-11, 204-06.  And Oracle identifies no manifest error of fact or law in the Court's holding that would justify relief under Rule 59(e).

Ms. Frederiksen-Cross testified that EBS100025 was prototyped in client Viking Range's environment.  Tr. 465:3-8 [Frederiksen-Cross].  She also claimed that the technical specification associated with the update contained embedded files that included protected Oracle expression, and that the technical specification listed certain other clients that were "intended" to receive the update.  *Id.* 465:9-466:5.  However, she did not offer any testimony on *how* or even *whether* the technical specification was used with other clients, and did not testify about any analysis of the update actually delivered to a client and what it contained.[3]  Instead, she testified only that it *would be* cross-use *if* the embedded files in the technical specification were distributed to multiple clients.  *Id.* 474:5-10 ("**Q.** And do you understand these files to be products of cross-use?  **A.** Yes, *insofar* as these files were distributed to other customers, and *insofar* as they cross-used a customer's environment for their development, *they would be products of cross-use*." (emphasis added)).  Similarly, although she claimed that she found versions of the files embedded in the technical specification present on Rimini's systems, she offered no opinion about how the files were used.  *Id.* 541:20-542:7.[4]

Further, Oracle's argument that it is entitled to injunctive relief based on this update is also directly inconsistent with the Court's findings.  To obtain that relief, Oracle must show that it is likely to suffer irreparable harm absent an injunction preventing Rimini from "using" this update.  Mot. at 4-5; *see Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011).  But the Court expressly found that there was *no* evidence that this update or the

---

[3] While Oracle's post-trial findings of fact argued that the EBS100025 *update* was delivered to other customers after Viking Range received it, Oracle cited only the technical specification itself for that proposition—it provided no actual evidence or analysis of what was delivered to a client as part of this update, or how the technical specification was used in that process.  ECF No. 1524 at 107.

[4] Ms. Frederiksen-Cross also conceded she was not contending that the presence of these files on Rimini's systems constituted infringement based on a "facilities" restriction in a client license (which EBS licenses do not have).  Tr. 539:16-24 [Frederiksen-Cross].

10

1   associated technical specification "were ever used by Rimini after October 2013," and further

2   found that there was no evidence of cross-use by Rimini in its EBS support processes.  ECF

3   No. 1536 at 63, 157-58.  Thus, there is no basis to contend that there is likelihood of harm to Oracle

4   from this update.

5        In sum, the record fully supports the Court's conclusion that Oracle did not show any

6   infringement in Rimini's EBS support processes—including this specific update—and thus there

7   is no clear error.

8                               IV.    CONCLUSION

9        For the foregoing reasons, the Court should deny Oracle's motion to amend the judgment.

10  Dated:  September 5, 2023                    Respectfully submitted,

11                                              GIBSON, DUNN & CRUTCHER LLP

12

13                                              By:  _____/s/ Eric D. Vandevelde_____
                                                      Eric D. Vandevelde

14                                              *Attorneys for Defendants/ Counterclaimants*

15                                              *Rimini Street, Inc., and Seth Ravin*

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP