GIBSON, DUNN & CRUTCHER LLP
JEFFREY T. THOMAS (*pro hac vice*)
BLAINE H. EVANSON (*pro hac vice*)
CASEY J. MCCRACKEN (*pro hac vice*)
JOSEPH A. GORMAN (*pro hac vice*)
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone:    949.451.3800
jtthomas@gibsondunn.com
bevanson@gibsondunn.com
cmccracken@gibsondunn.com
jgorman@gibsondunn.com

GIBSON, DUNN & CRUTCHER LLP
SAMUEL LIVERSIDGE (*pro hac vice*)
ERIC D. VANDEVELDE (*pro hac vice*)
ILISSA S. SAMPLIN (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
sliversidge@gibsondunn.com
evandevelde@gibsondunn.com
isamplin@gibsondunn.com

HOWARD & HOWARD ATTORNEYS PLLC
W. WEST ALLEN (Nevada Bar No. 5566)
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, NV 89169
Telephone:    702.667.4843
wwa@h2law.com

RIMINI STREET, INC.
JOHN P. REILLY (*pro hac vice*)
7251 West Lake Mead Blvd.
Suite 300
Las Vegas, NV 89128
Telephone:    336.908.6961
jreilly@riministreet.com

WEIL, GOTSHAL & MANGES LLP
MARK A. PERRY (*pro hac vice*)
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
Telephone:    202.682.7511
mark.perry@weil.com

*Attorneys for Defendants/ Counterclaimants
Rimini Street, Inc., and Seth Ravin*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| ORACLE INTERNATIONAL CORP., and ORACLE AMERICA, INC.,<br><br>    Plaintiffs/ Counterdefendants,<br><br>v.<br><br>RIMINI STREET, INC., and SETH RAVIN,<br><br>    Defendants/ Counterclaimants. | CASE NO. 2:14-cv-01699-MMD-DJA<br><br>**RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge:    Hon. Miranda M. Du<br><br>**ORAL ARGUMENT REQUESTED** |

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 3

    A. Rimini's Support for Different Oracle Product Lines ............................ 3

    B. Oracle's Claims and the Mixed Result ................................................... 3

        1. Oracle Abandons Its Damages Claims ....................................... 3

        2. Oracle's Allegations and the Results of the Bench Trial ............ 4

    C. Oracle's Requested Fees ......................................................................... 8

III. ARGUMENT ..................................................................................................... 8

    A. Fees Are Not Warranted Because This Is a Mixed-Results Case ........... 9

    B. Fees Are Not Warranted Under the Copyright Act or the Lanham Act ............. 11

        1. Copyright Act – The *Fogerty* Factors Weigh Against an Award of Fees ........................................................................................ 11

        2. Lanham Act – This Is Not an Exceptional Case Warranting Fees .......... 15

    C. If Oracle Is Awarded Any Fees, They Should Be Vastly Reduced to Be Reasonable ......................................................................................... 16

        1. At a Minimum, Oracle's Fees Must Be Apportioned to Fees for Work Only on *Successful* Copyright, DMCA, and Lanham Act Claims ......................................................................................... 16

            a. Oracle Lost or Withdrew Multiple Claims That Must Be Apportioned ...................................................................... 18

            b. The Issues Oracle Lost Were Not Intertwined with Issues It Won ..................................................................................... 20

            c. A 70% Fees Reduction for Limited Success Is Appropriate ....... 21

        2. An Additional 30% Reduction for Unreasonable Billing Is Warranted .................................................................................. 22

    D. Oracle's Request for e-Discovery Expenses Should Be Denied as a Matter of Law ................................................................................................... 24

IV. CONCLUSION .................................................................................................. 24

i

Gibson, Dunn &
Crutcher LLP

**Cases**

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) ...................................................................................1, 9

*Anhing Corp. v. Viet Phu, Inc.*,
  2017 WL 11630841 (C.D. Cal. May 18, 2017) ....................................................15

*Anthony Cal. v. Fire Power Co.*,
  2018 WL 5816169 (C.D. Cal. Aug. 10, 2018) .......................................................13

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  49 F. Supp. 3d 710 (S.D. Cal. 2014).....................................................................17

*ARP Films, Inc. v. Marvel Entm't Grp., Inc.*,
  952 F.2d 643 (2d Cir. 1991)....................................................................................9

*Balsley v. LFP, Inc.*,
  2011 WL 1303738 (N.D. Ohio Mar. 31, 2011) .....................................................17

*Bird v. Or. Comm'n for the Blind*,
  2021 WL 7709970 (D. Or. Aug. 11, 2021)............................................................22

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
  2014 WL 5438532 (S.D. Cal. Oct. 24, 2014) ........................................................17

*Cadkin v. Loose*,
  569 F.3d 1142 (9th Cir. 2009) .................................................................................9

*Creative Computing v. Getloaded.com LLC*,
  386 F.3d 930 (9th Cir. 2004) ...........................................................................17, 20

*Designer Skin, LLC v. L Vitamins, Inc.*,
  2008 WL 4174882 (D. Ariz. Sept. 5, 2008)..........................................................10

*Doe 1 v. GitHub, Inc.*,
  2024 WL 235217 (N.D. Cal., Jan. 22, 2024) .........................................................13

*Ets-Hokin v. Skyy Spirits, Inc.*,
  323 F.3d 763 (9th Cir. 2003) .................................................................................12

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
  915 F. Supp. 2d 1179 (D. Nev. 2013)....................................................................17

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994).................................................................................9, 11, 15

*Gilead Scis., Inc. v. Merck & Co.*,
  2017 WL 3007071 (N.D. Cal. July 14, 2017)........................................................22

*Glacier Films USA, Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018) ...............................................................................12

ii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Gracie v. Gracie,*
   217 F.3d 1060 (9th Cir. 2000) ........................................................................17

*Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.,*
   2015 WL 1160584 (N.D. Cal. Mar. 13, 2015).................................................22

*Greg Young Publ'g, Inc. v. Zazzle, Inc.,*
   2018 WL 1626053 (C.D. Cal. Mar. 21, 2018)...........................................12, 13

*Grouse River Outfitters, Ltd. v. Oracle Corp.,*
   848 F. App'x 238 (9th Cir. 2021) ...................................................................22

*Guthy-Renker Corp. v. Bernstein,*
   39 F. App'x 584 (9th Cir. 2002) .......................................................................9

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.,*
   2023 WL 2652855 (C.D. Cal. Mar. 13, 2023)............................................10, 15

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983).....................................................................2, 12, 17, 20

*Inhale, Inc. v. Starbuzz Tobacco, Inc.,*
   755 F.3d 1038 (9th Cir. 2014) ........................................................................14

*Jackson v. Gaspar,*
   2022 WL 2155975 (C.D. Cal. Feb. 24, 2022).................................................18

*Kaloud, Inc. v. Shisha Land Wholesale, Inc.,*
   741 F. App'x 393 (9th Cir. 2018) .....................................................................9

*King Records, Inc. v. Bennett,*
   438 F. Supp. 2d 812 (M.D. Tenn. 2006)..........................................................18

*Kirtsaeng v. John Wiley & Sons, Inc.,*
   579 U.S. 197 (2016).............................................................................9, 11, 12

*Lanard Toys Ltd. v. Dimple Child LLC,*
   843 F. App'x 894 (9th Cir. 2021) ...................................................................18

*LHF Prods., Inc. v. Kabala,*
   2019 WL 7403960 (D. Nev. Dec. 31, 2019)....................................................10

*Lobatz v. U.S. W. Cellular of Cal.,*
   222 F.3d 1142 (9th Cir. 2000) ........................................................................22

*Mattel, Inc. v. MGA Entm't, Inc.,*
   705 F.3d 1108 (9th Cir. 2013) ........................................................................15

iii

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*McCown v. City of Fontana,*
  565 F.3d 1097 (9th Cir. 2009) ........................................................................17

*Narkiewicz-Laine v. Doyle,*
  930 F.3d 897 (7th Cir. 2019) ......................................................................1, 10

*Nat'l Rifle Ass'n of Am. v. City of Los Angeles,*
  2020 WL 13678741 (C.D. Cal. Oct. 30, 2020) ...............................................22

*Norris v. Sysco Corp.,*
  191 F.3d 1043 (9th Cir. 1999) ........................................................................18

*Nutrition Distrib. LLC v. IronMag Labs, LLC,*
  978 F.3d 1068 (9th Cir. 2020) ........................................................................15

*Odima v. Westin Tucson Hotel,*
  53 F.3d 1484 (9th Cir. 1995) ..........................................................................17

*Rimini Street, Inc. v. Oracle USA, Inc.,*
  568 U.S. ---, 139 S. Ct. 873 (2019) ...........................................................2, 24

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union,*
  2023 WL 7597630 (S.D. Cal. Nov. 14, 2023) .................................................10

*Seltzer v. Green Day, Inc.,*
  725 F.3d 1170 (9th Cir. 2013) ........................................................................13

*Southland Sod Farms v. Stover Seed Co.,*
  108 F.3d 1134 (9th Cir. 1997) ........................................................................16

*The Traditional Cat Ass'n, Inc. v. Gilbreath,*
  340 F.3d 829 (9th Cir. 2003) .....................................................................17, 18

*Transverse, LLC v. Iowa Wireless Servs, LLC,*
  2020 WL 614590 (W.D. Tex. Feb. 7, 2020) ...................................................24

*Welch v. Metro. Life Ins. Co.,*
  480 F.3d 942 (9th Cir. 2007) ..........................................................................23

**Statutes**

15 U.S.C. § 1117(a) ...........................................................................................15

Gibson, Dunn &
Crutcher LLP
Attorneys at Law

1

## TABLE OF ABBREVIATIONS

The following abbreviations are used for this brief and the declarations concurrently submitted in support of Rimini's Opposition to Oracle's Motion for Attorneys' Fees and Costs:

| Abbreviation | Description |
| --- | --- |
| "Kennedy Decl." | Declaration of Dennis Kennedy in Support of Rimini's Opposition to Oracle's Motion for Attorneys' Fees and Costs |
| "Ross Decl." | Declaration of Professor William Ross in Support of Rimini's Opposition to Oracle's Motion for Attorneys' Fees and Costs |
| "Trunko Decl." | Declaration of John Trunko in Support of Rimini's Opposition to Oracle's Motion for Attorneys' Fees and Costs |
| "Vandevelde Decl." | Declaration of Eric Vandevelde in Support of Rimini's Opposition to Oracle's Motion for Attorneys' Fees and Costs |
| "Vogel Decl." | Declaration of Peter Vogel in Support of Rimini's Opposition to Oracle's Motion for Attorneys' Fees and Costs |

Gibson, Dunn & Crutcher LLP

1

## I. INTRODUCTION

2   Oracle seeks more than $70 million in attorneys' fees and costs related to this case, but

3   Oracle lost many of its claims, recovered no damages, and the judgment was mixed.  And "[i]n the

4   event of a mixed judgment," the court should "require each party bear its own costs."  *Amarel v.*

5   *Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996); *Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir.

6   2019).  Accordingly, Oracle's motion should be denied in its entirety.

7   Oracle claimed that Rimini's support processes across five different Oracle product lines—

8   EBS, JDE, Siebel, PeopleSoft, and Database—infringed, and alleged tens of thousands of instances

9   of infringement and other claims totaling $1.4 *billion* in damages.  Oracle conducted eight years

10  of extensive discovery, including more than 800 client subpoenas, 31 client depositions, over 40

11  million pages of documents, terabytes of technical data, and unfettered 24/7/365 direct access to

12  certain Rimini systems for years.

13  Rimini vigorously defended against Oracle's sweeping claims (at substantial cost of

14  millions of dollars). While Oracle prevailed on liability for its DMCA and Lanham Act claims

15  (with no damages award), Oracle abandoned its $1.4 billion damages claim and all non-equitable

16  claims with prejudice on the eve of a jury trial and lost its copyright claims for a majority of product

17  lines at issue in the case—EBS, JDE, and Siebel.  On the remaining product lines, Oracle prevailed

18  as to PeopleSoft on "the migration" process, the use of certain "rewrite" files, and the use of certain

19  "automated tools, " but Oracle obtained no relief as to Database, and Rimini prevailed on central,

20  cross-cutting legal theories that were core to Oracle's broad infringement claims spanning all

21  Oracle product lines, such as confirming that Rimini may write down and re-use its own know-

22  how, and that Oracle's licenses permit a third party like Rimini to perform updates or fixes to the

23  same extent as the licensee. Oracle told this Court that this was a "copyright case first and

24  foremost," and Oracle only had mixed success on its copyright claims.

25  A proper application of the four *Fogerty* factors here counsels against awarding any fees.

26  Simply "prevailing" (in whole or in part) is not sufficient to support a fee award.  Rather, the Court

27  is required to consider, among other things, Oracle's degree of success (including the product lines,

28  theories, and claims it lost), the reasonableness of Rimini's arguments (including those Rimini

1

1   won), and the absence of any need to compensate Oracle (given its abandonment of all damages

2   claims.  These factors all weigh decidedly in favor of each party bearing its own fees.

3        If the Court were to award Oracle any fees and costs (it should not), the award should be

4   limited to only those reasonably incurred to prove the claims and theories on which Oracle

5   prevailed.  Oracle failed to apportion its fees and costs, and its request includes fees spent pursuing

6   claims and issues Oracle lost, withdrew, and abandoned, fees incurred preparing for a jury trial

7   that did not happen at its own request, and fees and costs for numerous instances of unreasonable,

8   deficient, and duplicative billing (including billing that conflicts with Oracle's own billing

9   practices and guidelines) by ███ *different billers across five law firms*.

10       For example, Oracle seeks tens of millions of dollars in attorneys' fees related to its

11  unsuccessful attempt to prove *any* causation and damages whatsoever, ██████ in fees for a

12  ████████████████████████████████████████, and $1.39 million

13  in e-discovery expenses that Oracle knows are not recoverable as a matter of law because the

14  Supreme Court already held so in *Rimini I*.  *Rimini Street, Inc.* v. *Oracle USA, Inc*., 568 U.S. ---,

15  139 S. Ct. 873, 878 (2019). Oracle even concedes that in *Rimini I*, Judge Hicks reduced Oracle's

16  requested fees award by 20% to account for billing issues—which were much less severe than

17  those presented in this case.

18       For the reasons discussed herein and in the accompanying expert declarations**,** Oracle is

19  not entitled to any fees, and each party should bear its own fees and costs. However, if fees are

20  awarded, at the very least, any award must be apportioned to account for Oracle's mixed success

21  and billing issues, and the amount should not exceed $14.47 million.  Even this amount would

22  vastly overcompensate Oracle because it does not consider the millions of dollars in costs Rimini

23  incurred litigating and defeating Oracle's unmeritorious claims.[1]

---

[1] The "degree of success obtained" by Oracle is the "most critical factor" in determining whether to award fees. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  Several of the core issues in this case are currently on appeal with expedited briefing set by the Ninth Circuit.  Because an appellate ruling may change the degree of success analysis, it would be efficient for the Court to refrain from ruling on this motion until after the Ninth Circuit's ruling.

RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 2:14-CV-01699-MMD-DJA

## II.      BACKGROUND

### A.      Rimini's Support for Different Oracle Product Lines

This case concerned Rimini's support for five Oracle product lines—EBS, JDE, Siebel, PeopleSoft, and Database.  It was undisputed that Rimini's clients all had licenses to the Oracle products they used and Rimini had contracts with each client to support the products.  Three of these product lines (PeopleSoft, JDE, and Siebel) were developed by different companies, which Oracle later acquired.  ECF No. 1460.  The licenses for these products (called "legacy licenses"), like the products themselves, were authored by different companies and thus included different terms.  Tr. 922, 931-32.  Rimini's support processes vary by product line, as the products themselves function differently, were developed separately, have different purposes, and are coded in different languages.  Tr. 1461:7-9.  Rimini's developers are likewise segregated by product line. *Id.*  As a result, Oracle's allegations, discovery, the evidence at trial, and the ultimate judgment all distinguished between each of the product lines.  Vandevelde Decl. ¶¶ 9, 13–15.

### B.      Oracle's Claims and the Mixed Result

Rimini filed this case seeking adjudication of its support processes used for Oracle product lines.  After multiple amendments to the pleadings, the case expanded to include (1) claims for infringement/non-infringement as to Rimini's support processes for all five product lines; (2) Lanham Act claims by each party; (3) a DMCA claim by Oracle; and (4) a host of state law claims by both parties.  ECF No. 1253 at 4–6.  In total, Oracle claimed damages of more than $1.4 billion.

#### 1.      Oracle Abandons Its Damages Claims

Throughout the entirety of the case, up until two weeks before trial, Oracle sought damages. On September 1, 2022, Oracle supplemented its damages report to allege $1.4 billion in damages, in advance of a jury trial to begin on November 2, 2022.  Vandevelde Decl., Ex. A.  Oracle pursued massive discovery to attempt to prove both damages and causation.  *Id.* ¶ 5.  It claimed that virtually every Rimini client left Oracle and joined Rimini *because of* Rimini misconduct and that absent the misconduct, they would have remained Oracle customers.  *Id.*, Ex. C at 25.  In support of its damages claims, Oracle subpoenaed more than 800 Rimini clients.  *Id.* ¶ 3.  It told the Court that it was doing so in order to attempt to prove "causation, reliance, or harm" for each client,

stating that: "[i]n light of the [causation] arguments advanced by Rimini at [the *Rimini I*] trial, Oracle intends to subpoena all or virtually all of the relevant Rimini customers." ECF No. 153 at 22; *see also* ECF No. 283 at 1. Almost all of that work would have been unnecessary if Oracle had sought only injunctive relief.

Despite pursuing damages for eight years, on October 10, 2022, out of the blue and ███ ████████████████████████████ (Trunko Decl. ¶ 31), Oracle abandoned its entire $1.4 billion damages claim and all its non-equitable claims with prejudice and sought to transition from a jury trial to bench trial. ECF No. 1409.

### 2. Oracle's Allegations and the Results of the Bench Trial

Oracle broadly alleged that virtually every update Rimini performed for every product line infringed its copyrights. As relevant here, Oracle asserted at least two sweeping theories of "cross-use." First, it claimed that if Rimini performed an update for Client A using Client A's software environment, wrote down the solution in a technical specification that did not contain any Oracle copyrighted expression, and then used that specification when performing the same or a similar update for Client B, that constituted copyright infringement. ECF No. 1536 at 24–25, 147–49. Oracle claimed that Rimini engineers could not re-use their know-how when supporting multiple clients, regardless of whether they copied Oracle expression. *Id.* Second, Oracle claimed that if Rimini tested an update for Client A using Client A's software, it could not use that knowledge to perform less or no testing of a similar update for Client B. *Id.* at 41–43. Apart from those sweeping allegations that cut across product lines (which were ultimately rejected), Oracle also made product-specific claims, and the parties engaged in substantial discovery specific to each product line, as set forth below. Vandevelde Decl. ¶¶ 9, 13–15.

***EBS.*** EBS was the most litigated product line during discovery. Vandevelde Decl. ¶ 9. Oracle sought ███████ in EBS damages, and EBS was the subject of the most document requests—with *49* directed specifically to it. *Id.* ¶ 9, Ex. A at 6, Ex. B. Oracle issued 228 subpoenas to Rimini's EBS clients alone, and Rimini produced over *850,000 documents* from custodians that worked solely or primarily on EBS. *Id.* ¶ 9. Oracle broadly alleged that every single Rimini update that was provided to more than one client (thousands in total) infringed. *E.g.*,

Tr. 552:15–553:8; Tr. 2305:7–18; Vandevelde Decl., Ex. F at 102–103, Ex. D at 8–10, 151.  Oracle also claimed at trial that EBS support by third parties was impossible because the EBS licenses supposedly did not allow third-party providers to "copy" the software, even though copying is inherent in all software use.  *Id.*, Ex. F at 103–106.  Oracle's allegations thus sought to shut down all third-party support for EBS.

Following a bench trial, the Court rejected all of Oracle's EBS claims and granted Rimini a declaration of non-infringement as to its EBS support processes.  ECF No. 1536 at 197.

***JDE.***  Oracle claimed ███████ in damages for JDE.  Vandevelde Decl., Ex. A at 6, Ex. B.  Oracle's expert claimed that every JDE update provided to more than one client (even if created separately in that client's environment) infringed.  *Id.*, Ex. F at 124–26, Ex. D at 8–10; ECF No. 1536 at 74; Tr. 552:15–553:8.  It subpoenaed 123 JDE clients.  Vandevelde Decl. ¶ 3.  Oracle also claimed that JDE support was effectively impossible for many clients due to restrictions in some legacy licenses on accessing "source code." ECF No. 1447 at 72–74. JDE discovery also concerned the processes of Spinnaker—a third-party JDE support provider with processes similar to Rimini's, which Oracle had approved.  Vandevelde Decl., ¶10, Ex. D at 174–75.

The Court entered judgment for Rimini on Oracle's JDE infringement claims.  ECF No. 1536 at 194.  It generally found Rimini's JDE support processes non-infringing but held that three technical specifications contained snippets of Oracle code as "locators," that "Judge Hicks already found infringing in [*Rimini*] *I*," and on that basis denied a declaration of non-infringement.  *Id.* at 148, 169, 194.  After the Court's Order, the Ninth Circuit reversed Judge Hicks's ruling and held that certain "snippets of Oracle source code" in a JDE specification did not violate the Copyright Act or the *Rimini I* injunction.  *Rimini I* ECF No. 1583 at 27–28.

***Siebel.***  Throughout discovery, Oracle alleged that Rimini's support processes for Siebel infringed, and sought more than ███████ in damages.  Vandevelde Decl., Ex. A at 6, Ex. B.  Oracle issued 71 subpoenas specifically to Rimini's Siebel clients and Rimini produced 200,000 Siebel documents.  *Id.* ¶¶ 3, 13.  Throughout the entire case and continuing through the Pretrial Order and its damages report two months before trial, Oracle steadfastly maintained its infringement allegations.  ECF No. 1309 at 37.  However, without ever informing Rimini or the

5

1   Court that it was abandoning its Siebel claims, Oracle simply presented no Siebel evidence at trial,

2   and Rimini prevailed on Oracle's Siebel claim.  Vandevelde Decl. ¶ 14.

3     ***PeopleSoft.*** Oracle alleged ▮▮▮▮▮▮▮ in copyright infringement and Lanham Act

4   damages related to PeopleSoft.  *Id.*, Ex. A at 6, Ex. B.  Oracle alleged multiple different

5   infringement issues for PeopleSoft: (1) that all of Rimini's manual updates involving the use of

6   technical specifications infringed for similar reasons as alleged for EBS and JDE; (2) that Rimini's

7   testing processes infringed; (3) that Rimini's "migration" of Process 1.0 environments infringed;

8   (4) that Rimini's AFW tools infringed; and (5) that specific Rimini "rewrite" files contained Oracle

9   code.  ECF No. 1448 at 11–14.  The Court found for Rimini on Oracle's two broad theories (1 and

10   2 above) (ECF No. 1536 at 24–25, 41–43, 147–49), and for Oracle on the remaining PeopleSoft-

11   specific issues.  The Court granted injunctive relief on those issues and denied injunctive relief on

12   the issues Oracle lost.  *Id.* at 194–95; ECF No. 1537 at 2–4.

13     ***Database.*** Oracle alleged ▮▮▮▮▮ in damages for Oracle Database.  Vandevelde

14   Decl., Ex. A at 6, Ex. B.  Oracle's Database allegations fell into three categories.  First, Oracle

15   initially alleged that Rimini's support processes for the Database software itself was infringing.

16   *E.g.*, ECF No. 584 ¶¶ 78, 90.  Second, Oracle alleged that 18 "gap customer" environments on its

17   systems during Process 1.0 prior to 2014 infringed, which was not disputed.  ECF No. 1536 at 159.

18   Third, Oracle alleged that because each of the EBS, JDE, Siebel, and PeopleSoft product lines

19   require a database, if a client used one of the accused applications and also used Oracle Database,

20   then cross-use of the application would necessarily cause cross-use of Database.  *Id.*  Oracle

21   conducted substantial discovery into Rimini's support processes for Database, subpoenaing over

22   261 clients.  Vandevelde Decl. ¶ 3.

23     After fact discovery, Oracle abandoned its claim that Rimini's Oracle Database support

24   processes infringed; it pursued only its (undisputed) gap customer claim and inherent-

25   infringement-by-the-application theories at trial.  *Compare, e.g.*, ECF No. 584 ¶¶ 78, 90 *with* ECF

26   No. 1536 at 158–59. Tracking its rulings on the applications, the Court found infringement as to

27   Database clients that had PeopleSoft and no infringement as to clients that used EBS, JDE, or

28   Siebel.  ECF No. 1536 at 163–64.  The Court did not award any injunctive relief.  *Id.* at 194.

***DMCA.*** Oracle alleged that Rimini either removed or failed to insert Oracle copyright notices for approximately 20 PeopleSoft files. ECF 1447 at 34–35. Because those files were modified and re-copied over years, Oracle claimed that those 20 instances eventually resulted in 5,393 violations of the DMCA and sought ███████ in statutory damages. *Id.* at 51; Vandevelde Decl., Ex. E at 97. That the files did not contain Oracle copyright notices was undisputed; the crux of the dispute was (1) whether a DMCA violation can exist where the modified copy was different from the original copyrighted work; (2) whether failure to *insert* a copyright notice into a file containing Oracle copyrighted expression could be a DMCA violation; and (3) whether each subsequent copy of a file amounted to a new "violation" for which statutory damages were available. ECF No. 1536 at 164–67. The Court found DMCA liability for Oracle and granted injunctive relief, but Oracle abandoned its damages claim. *Id.* at 196.

***Lanham Act.*** Oracle initially alleged 43 false statements. Vandevelde Decl. ¶¶ 16–17 . Fifteen were ultimately alleged at trial. ECF No. 1538 at 76–77, 81–83, 93. Twelve of the 15 statements related to Rimini's security offering (*e.g.*, "Rimini offers 'holistic security' solutions for enterprises"), which was wholly unrelated to any copyright infringement allegations in the case; two of the statements related to Rimini's revised support processes compared to *Rimini I* processes; and one statement related to the similarity of Rimini and TomorrowNow. *Id.*; ECF No. 1537 at 4–5. Oracle claimed that these statements caused almost every Rimini client to leave Oracle and go to Rimini for support. Vandevelde Decl. ¶ 8, Ex. C at 25. The Court found for Oracle on injunctive relief and did not reach the questions of causation or reliance because Oracle abandoned its damages claim. ECF No. 1536 at 196.

The below chart summarizes the mixed results of the case:

| Product / Claim | Result |
|---|---|
| EBS | Oracle lost:<br>• Declaration of non-infringement<br>• No injunctive relief granted<br>• No damages |
| JDE | Oracle lost:<br>• No finding of infringement<br>• No injunctive relief granted<br>• No damages |

7

Gibson, Dunn & Crutcher LLP

| Product / Claim | Result |
|---|---|
| Siebel | Oracle lost:<br>• No finding of infringement<br>• No injunctive relief granted<br>• No damages |
| PeopleSoft | Mixed result<br>• Findings of infringement as to certain files, updates, and automated tools and injunctive relief granted<br>• No findings of infringement as to testing and re-use of know-how and work product<br>• No damages |
| Database | Mixed result<br>• Findings of infringement as to 18 Oracle Database environments created before March 2014 used with PeopleSoft<br>• No injunctive relief granted<br>• No damages |
| DMCA | Mixed result<br>• Finding of liability as to PeopleSoft rewrite files, and injunctive relief granted<br>• No damages |
| Lanham Act | Mixed result<br>• Finding of liability for 15 statements out of 43 alleged, and injunctive relief granted<br>• No damages |
| State Claims | Mixed result<br>• Both sides lost their respective state-law claims |

## C.   Oracle's Requested Fees

Ignoring these mixed results, Oracle seeks over $70 million in fees and costs, including fees for litigating damages and the product lines it lost.  Oracle claims fees for ███ *timekeepers* across *five different law firms*, including ██ at Paul Weiss and ██ at Morgan Lewis.  Trunko Decl. ¶ 7.  Oracle also added ████████████████████████████.  *Id.* ¶ 30. Oracle's invoices also contain errors, duplicative charges, violations of Oracle's own billing guidelines, and clear overbilling: for example, ██████████████████████████████ *in one day*. *Id.* ¶ 29.

## III.   ARGUMENT

As set forth below, this Court should deny Oracle's request for fees and costs in its entirety. *First*, this is a quintessential mixed-results case in which courts routinely require each party to bear

8

Gibson, Dunn & Crutcher LLP

its own fees.  *Second*, whether a party prevailed (in whole or in part) is not enough to warrant fees under the statutes here, and the applicable *Fogerty* factors weigh against fees.  *Third*, if fees are awarded at all, any award should be: (1) apportioned to account for Oracle's limited success; and (2) further reduced to account for Oracle's unreasonable billing.  This would result in fees of no more than $14.47 million.  However, this amount would vastly overcompensate Oracle because it does not consider the millions of dollars Rimini incurred litigating and defeating Oracle's unmeritorious claims.

A.      **Fees Are Not Warranted Because This Is a Mixed-Results Case**

The Supreme Court has established two "restrictions" on a court's discretion to award attorneys' fees to a prevailing party.  "First, a district court may not 'award attorney's fees as a matter of course;' rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)).  "Second, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement."  *Id.* (alterations omitted).  A defendant is a prevailing party when it obtains a judgment or dismissal of claims that the plaintiff is prohibited from refiling.  *Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009).

In mixed-results cases—where each party prevails on some claims but loses others or obtains limited relief—courts routinely decline to award fees and costs to either party.  *See, e.g.*, *Amarel*, 102 F.3d at 1523 ("In the event of a mixed judgment," the court may "require each party bear its own costs"); *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, 741 F. App'x 393, 396–97 (9th Cir. 2018) (affirming denial of attorneys' fees on the ground that the plaintiff was not the "prevailing party" where it obtained injunctive relief but no damages); *Guthy-Renker Corp. v. Bernstein*, 39 F. App'x 584, 587–88 (9th Cir. 2002) (affirming denial of fees where copyright holder won copyright claim, but obtained limited damages and lost other claims); *ARP Films, Inc. v. Marvel Entm't Grp., Inc.*, 952 F.2d 643, 651 (2d Cir. 1991) ("In view of the mixed outcome of this litigation, the district court was well within its discretion in concluding that plaintiffs were not

9

prevailing parties within the meaning of section 505 [of the Copyright Act].").[2]

This is a classic mixed-results case warranting a denial of fees. When Oracle's $1.4 billion of damages claims were dismissed in their entirety with prejudice, Rimini became the prevailing party on damages just as if Oracle had tried those claims to a jury and lost. *LHF Prods., Inc. v. Kabala*, 2019 WL 7403960, at *1 (D. Nev. Dec. 31, 2019). That Rimini victory cannot be overstated. Oracle's request for nearly $70 million in fees in a case where it could not prove even *one dollar* of damage is unprecedented. Attorneys' fees cannot be used as a substitute for the complete failure to prove any damages.

Moreover, Rimini defeated infringement claims on three out of five Oracle product lines. As to the other two, Rimini won significant victories even beyond winning entirely on damages. As to PeopleSoft, although Oracle proved infringement as to certain aspects of Rimini's processes, such as the 2014 migration, AFW tools, and specific rewrite files, Rimini won critical victories regarding use of its technical specifications and its testing processes. *Supra* p. 6. As to Oracle Database, Oracle achieved a technical victory as to undisputed "gap" customers and PeopleSoft-Database clients (found infringing only to the extent PeopleSoft processes infringe), but Rimini won as to all other Database clients, and Oracle obtained no relief, monetary or injunctive. *Id.*

The Seventh Circuit's recent decision in *Narkiewicz-Laine v. Doyle*, 930 F.3d 897 (7th Cir. 2019), is particularly analogous and instructive. There, the plaintiff brought copyright claims regarding many works, but prevailed on only a fraction, and was awarded a portion, but not all, of the claimed damages. *Id.* at 901. The district court held that "there was no clear prevailing party" because, while the plaintiff had won a damages award as to some works, it had lost as to many others. *Id.* The Seventh Circuit affirmed. It reasoned that "though embodied in only one count in his complaint" the plaintiff had asserted multiple claims covering 1,457 pieces of artwork and sought damages "far beyond what he actually recovered." *Id.* at 906. The Seventh Circuit held

---

[2] Recent district court cases hold similarly. *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 2023 WL 7597630, at *7 (S.D. Cal. Nov. 14, 2023) ("[B]ecause both parties obtained significant victories in judicial decisions in each of their favors, the Court concludes that neither [party] is a prevailing party in this mixed judgment case."); *Designer Skin, LLC v. L Vitamins, Inc.*, 2008 WL 4174882, at *6 (D. Ariz. Sept. 5, 2008); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 2023 WL 2652855, at *9 (C.D. Cal. Mar. 13, 2023).

1   that, "[w]here as here, the jury's verdict points in two directions as to who prevailed, the district

2   court was well within its discretion in declining to grant [] fees." *Id.* at 907–08.

3         Here, as in *Narkiewicz*, Oracle brought a single count for copyright infringement that was

4   really made up of five separate claims as to five of its different product lines.  Oracle lost its

5   infringement claims outright on three, only prevailed with mixed results on portions of the other

6   two, and obtained no damages whatsoever.  *Supra* pp. 4–8.  Under those circumstances, Oracle

7   did not prevail any more than Rimini did, and each side should bear its own fees and costs.

8         Importantly, this case is very different from *Rimini I*, in which Judge Hicks awarded Oracle

9   80% of the fees it sought.  *Rimini I* ECF No. 1049 at 19–20.  In *Rimini I*, Judge Hicks held that the

10  case was "a copyright case first and foremost, regardless of all other claims pled" (*id.* at 14), and

11  Oracle prevailed on its copyright claims on every product line at issue, including injunctive relief

12  and $57 million in damages and interest.  Here, in *Rimini II*, Oracle admits the case is still a

13  copyright case first and foremost (ECF No. 1279 at 1 n.1), but Oracle's success on that claim was

14  mixed:  no infringement on three out of five product lines, no damages, only part of the injunctive

15  relief requested as to PeopleSoft, and a rejection of its broad theories regarding re-use of technical

16  specifications and testing.  *Supra* pp. 4–8.  Unlike *Rimini I*, the mixed results on the core claims

17  in *Rimini II* compel that each side should bear its own costs.

**B.     Fees Are Not Warranted Under the Copyright Act or the Lanham Act**

19        Even if Oracle were to be deemed the prevailing party overall, it is not automatically

20  entitled to fees.  Rather, to obtain fees under the Copyright Act, the prevailing party must satisfy

21  the *Fogerty* factors.  To obtain fees under the Lanham Act, the prevailing party must demonstrate

22  that it is an *exceptional* case.  Oracle cannot meet either standard.

**1.     Copyright Act – The *Fogerty* Factors Weigh Against an Award of Fees**

24        A fee award is not "automatic" (*Fogerty*, 510 U.S. at 534), and courts "may not award

25  attorney's fees as a matter of course" (*Kirtsaeng*, 579 U.S. at 202).  Instead, courts look to

26  nonexclusive, equitable *Fogerty* factors that include: (1) the degree of success obtained by the

27  prevailing party; (2) the reasonableness of the losing party's legal and factual arguments; (3) the

28  need to advance compensation and deterrence; and (4) whether an award of fees furthers the

11

purposes of the Copyright Act.  *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003).  Here, the factors weigh against a fee award.

**Limited Degree of Success.**  The Supreme Court has characterized "degree of success obtained" as the "most critical factor" in assessing fees, and it is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."  *Hensley*, 461 U.S. at 434, 436.  Oracle obtained only limited success.  Oracle sought *$1.4 billion* in damages throughout eight years of litigation before dismissing its damages claim entirely before trial.  To say that was a tremendous victory for Rimini is an understatement.  Indeed, if not for Oracle's colossal and meritless damages claim, this case could potentially have settled years ago for a fraction of the fees incurred by both sides.

Moreover, as discussed above, Oracle lost its claims on EBS, JDE, and Siebel and lost important portions of its claims as to PeopleSoft and Database.  And while Oracle prevailed on its Lanham Act and DMCA claims, the heart of the dispute on those claims was damages and causation (*i.e.*, whether a customer ever left Oracle because of a statement), which Oracle lost.

Oracle cites no case, and Rimini found no case, that has awarded attorneys' fees (let alone tens of millions in fees) with such limited success.  The case Oracle does cite, *Glacier Films USA, Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018), suggested that $4,833.45 in fees could be awarded where the plaintiff won *entirely* its claim for an infringing movie download and was awarded the statutory damages it sought.  By contrast, a party that brings claims for more than a billion dollars and walks away with no monetary relief was clearly not successful.  *Cf. Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2018 WL 1626053 (C.D. Cal. Mar. 21, 2018) (no fees warranted where plaintiff won some copyright claims and lost others, sought $2.1 million in damages and was awarded $350,000); *see supra* pp. 9–10 (citing mixed results cases).

**Reasonableness of Rimini's Position.**  Rimini's positions were objectively reasonable, as demonstrated by Rimini's outright *success* in significant areas of this case and partial success in other areas of the case.  *See Kirtsaeng*, 579 U.S. at 199–200 (instructing courts to give "substantial weight" to this factor).  Rimini completely defeated Oracle's infringement claims as to EBS, JDE, and Siebel, in addition to all of Oracle's state-law claims and obtained dismissal of Oracle's $1.4

12

billion claim for damages.  *Supra* pp. 4–8.  It was eminently reasonable for Rimini to have *successfully* defended itself against these claims; this is *not* a case where a party "should have known from the outset that its chances of success… were slim to none." *Zazzle*, 2018 WL 1626053 at \*4; *Anthony Cal. v. Fire Power Co.*, 2018 WL 5816169, at \*4 (C.D. Cal. Aug. 10, 2018) (defendants' position "cannot be deemed objectively unreasonable or frivolous" where its arguments were at least "partially successful").

Even on the issues Rimini lost, Rimini's positions were reasonable and in good faith.  For example, Rimini's position that its own work product not containing any Oracle copyrighted expression is not a derivative work, regardless of whether it is intended to operate with PeopleSoft, was well supported by case law, although the Court disagreed.  ECF No. 1298 at 7–16.  On the Lanham Act claims, although the Court ultimately sided with Oracle, it was not unreasonable for Rimini to claim that many of the statements at issue regarding which security is "more," "faster," "ineffective," or "risky," were statements of opinion or puffery.  It was also reasonable for Rimini to defend the (multiple hundred million dollar) DMCA claim on the ground that "a work that removes copyright management information must be an exact copy of the original work." ECF No. 1536 at 165.  Although the Court disagreed with that position, the law is unsettled, and other judges in this circuit have agreed with Rimini.  *See, e.g.*, *Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at \*9 (N.D. Cal., Jan. 22, 2024) (dismissing DMCA claim for lack of allegations that the works constituted an "identical copy" of the copyrighted work) (collecting cases).

Oracle points to factual findings the Court made against Rimini, but that the Court found against Rimini on some issues does not make Rimini's positions unreasonable.  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013).  Oracle itself took a number of unreasonable positions that Judge Hicks and this Court rejected, such as the argument that Rimini engineers could not write down (or even *memorize*) the steps they took to support one client if they supported multiple clients, or that the Copyright Act and licenses prohibited Rimini from providing the very JDE support that Oracle had told Spinnaker was expressly permitted.  *See* ECF No. 1253 at 87; ECF No. 1525 at 32–33, 87–88.  Indeed, even *after* Judge Hicks rejected Oracle's argument that Rimini cannot re-use its own know-how and work product (ECF No. 1253 at 87), Oracle persisted

13

through trial to accuse every EBS and JDE update on that basis alone and lost. ECF No. 1536 at 157–58. The Court expressly noted the inconsistencies between Oracle's own two witnesses on this point—Ms. Frederiksen-Cross, who claimed that it was acceptable to write "a simple change" on "the back of [a] napkin" but not "detailed instructions," and Mr. Allison who claimed it was permissible to "go back to the office" and write down a solution, but not to write down a Rimini solution while looking at an Oracle program. *Id.* at 147–48. Oracle's $1.4 billion damages claim (which caused Rimini to incur millions of dollars in defense costs) was also unreasonable, as evidenced by the fact that Oracle abandoned *every dollar* of that claim ████████████████. No plaintiff would drop a $1.4 billion claim completely if they thought they had a credible claim and sufficient evidence to win even a fraction of that amount.

**No Need to Compensate Oracle.** A fee award is unnecessary to "make Oracle whole," as Oracle argues. Mot. at 12. Oracle had every opportunity to be "made whole" by seeking damages *if it could prove it had been harmed,* but instead it abandoned its damages claims and never proved that it lost even a *single* customer or dollar as a result of any alleged Rimini conduct. Attorneys' fees motions are not a replacement for lost damages claims. Moreover, if awards of attorneys' fees are necessary to be "made whole" when a party is successful, then Rimini has at least an equal right to be "made whole" after having spent millions of dollars successfully defeating Oracle's damages, EBS, JDE, and Siebel claims.

**Rimini is Already Deterred.** Rimini has no interest in infringing Oracle's copyrights. It brought this suit to obtain clarity on its support processes. Now that the Court has made rulings, some for Rimini and some for Oracle, Rimini intends to abide by them. A fees award, however, would have the perverse effect of deterring Rimini from raising many of its meritorious defenses.

**Fees Would Not Promote the Purposes of the Copyright Act.** Finally, a fee award would *undermine*, rather than promote, the purposes of the Copyright Act. "A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014). "Defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the

14

same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty*, 510 U.S. at 527. Awarding fees to Oracle here would have the perverse effect of *discouraging* Rimini, and other defendants, from litigating meritorious defenses. Oracle alleged that nearly every Rimini update for five product lines infringed Oracle's copyrights, that Rimini could not write down its own know-how in technical specifications, and it sought over a billion dollars in damages. It claimed that third-party support for EBS was impossible because third-party providers have the right to "use" the software but not "copy" it (Tr. 933:9-18)—a position that, if adopted, would have eviscerated the third-party support industry and much of the consulting industry. Tr. 2136:16-2137:25. Rimini standing up to those claims, among others—and winning—promoted the purposes of copyright. Given the sheer breadth of Oracle's infringement theories, Rimini's "failure to vigorously defend against [Oracle's] claims could have ushered in a new era of copyright litigation aimed not at promoting expression but at stifling the 'competition' upon which America thrives." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

Thus, the *Fogerty* factors weigh heavily against an award of fees under the Copyright Act.

## 2. Lanham Act – This Is Not an Exceptional Case Warranting Fees

Awards of fees under the Lanham Act are discretionary only "in exceptional cases." 15 U.S.C. § 1117(a). A court may award fees "only in rare cases where the defeated party's conduct amounts to exceptional behavior," *Anhing Corp. v. Viet Phu, Inc.*, 2017 WL 11630841, at *3 (C.D. Cal. May 18, 2017), and even in such cases, the Lanham Act "permits, but does not mandate an award of attorneys' fees." *Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020). Thus, the Court considers the same factors, but Oracle's burden is much higher. The Court should deny fees related to the Lanham Act for all the same reasons as under the *Fogerty* factors and for the additional reasons below.

*First*, Oracle abandoned its request for Lanham Act damages. Rimini's arguments as to causation and damages were not only reasonable; they were also meritorious. *IronMag*, 978 F.3d at 1081–82 (9th Cir. 2020) (affirming denial of fees where plaintiff "failed to show injury or damage resulting from [defendant's] advertising"); *Harbor Breeze*, 2023 WL 2652855, at *9 (case not exceptional where plaintiffs "proved liability and obtained an injunction yet failed to recover

1    damages or profits").

2        *Second*, Rimini's argument that the challenged statements were nonactionable statements

3    of opinion and puffery, not statements of fact, was objectively reasonable even though the Court

4    sided with Oracle.  For example, many of the statements concern the assertion that Rimini provides

5    "better" or "more" security than Oracle or other software vendors, which is "precisely the type of

6    generalized boasting" that the Ninth Circuit has held is "nonactionable puffery."  *Southland Sod*

7    *Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

8        *Third*, Rimini provided substantial evidence, including expert testimony, at trial showing

9    that the challenged statements were not false.  *See*, *e.g.*, Tr. 2025:21–26:7 (Rimini's security expert

10   identifying "several" specific vulnerabilities that Rimini's virtual patching product could

11   remediate before Oracle (the software vendor) released a patch for those vulnerabilities, in

12   response to Oracle's claim that Rimini falsely stated its security services "can pinpoint and

13   circumvent vulnerabilities months and even years before they are discovered and addressed by the

14   software vendor"); Tr. 1590:9–13, 2282:2–4 (Rimini clients testifying they did not suffer any

15   security breaches despite not receiving Oracle's CPUs, in response to Oracle's claim that the

16   statement "Oracle's CPUs are unnecessary to be secure" was false).

17       *Finally*, Oracle makes no showing that this case was "exceptional" as to *Rimini's* Lanham

18   Act claims *against Oracle*.  Mot. at 12–16.  That claim was dismissed early in the case because

19   the statements were made in emails, and the Court found that they were not "disseminated

20   sufficiently to the relevant purchasing public."  ECF No. 633 at 23.  Rimini's position that that

21   was a factual issue was reasonable, even if not successful.

22   **C.    If Oracle Is Awarded Any Fees, They Should Be Vastly Reduced to Be Reasonable**

23       **1.    At a Minimum, Oracle's Fees Must Be Apportioned to Fees for Work Only on *Successful* Copyright, DMCA, and Lanham Act Claims**

24       If the Court awards Oracle any fees at all, it should not award "full fees" because Rimini

25   won substantial portions of the case and should not pay Oracle's attorneys for work in pursuit of

26   claims Oracle lost.  A prevailing party under the Copyright Act, DMCA, or the Lanham Act may

27   recover only the attorneys' fees incurred on those claims, and "not on other claims in the same

28

lawsuit." *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003); *see also Gracie v. Gracie*, 217 F.3d 1060, 1069–70 (9th Cir. 2000). "[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435. The Court must apportion fees between the successful and unsuccessful claims.

The limited exception is that direct apportionment is not required where the claims are so related that they "require[] substantially the same expense on prevailing and unsuccessful claims." *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 937 (9th Cir. 2004); *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (claims related where they require "virtually the same evidence"). Absent such overlap, the district court has a "duty" to apportion the fee award to remove costs related to unsuccessful claims. *Gracie*, 217 F.3d at 1070.

Further, even where the successful and unsuccessful claims overlap, a reduction for partial success is required: the Supreme Court has recognized that a full fee award may "be an excessive amount" where, as here, a plaintiff "has achieved only partial or limited success." *Hensley*, 461 U.S. at 436. For example, in *McCown v. City of Fontana*, 565 F.3d 1097, 1104–05 (9th Cir. 2009) the Ninth Circuit reversed the district court for failing to adjust a fee award downward based on lost claims and damages that "fell far short of [plaintiff's] goal." A court should consider among other things "the amount of damages awarded compared to the amount sought" and "the amount of damages awarded relative to the amount of attorney's fees sought." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 724 (S.D. Cal. 2014). Judge Hicks also held in *Rimini I* that fees incurred on an issue a party drops or withdraws are not recoverable. *Rimini I* ECF No. 1049 at 21 (reducing award of expert fees by 50% where Oracle withdrew one out of two expert opinions). In determining the "degree of success obtained" by Oracle, this Court may, in its equitable discretion, "attempt to identify specific hours that should be eliminated" or "simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37.[3]

---

[3] Following this precedent, district courts consistently reduce fee awards to apportion for non-compensable claims and claims the prevailing party lost. *See Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2014 WL 5438532, at *10 (S.D. Cal. Oct. 24, 2014) (60% reduction); *Balsley v. LFP, Inc.*, 2011 WL 1303738, at *7 (N.D. Ohio Mar. 31, 2011) (60% reduction); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 915 F. Supp. 2d 1179, 1189–90 (D. Nev. 2013) (30%-40%

1

### a. *Oracle Lost or Withdrew Multiple Claims That Must Be Apportioned*

2

Indisputably, there were large portions of this case on which Rimini prevailed and Oracle

3 lost. But *Oracle does not even attempt to apportion that work. Oracle*, not Rimini, has the burden

4 to submit evidence that enables the Court to apportion fees. *Gilbreath*, 340 F.3d at 834. Where,

5 as here, the moving party makes a "deficient presentation" in requesting fees, the Court is justified

6 "in refusing to award any fees whatsoever." *Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir.

7 1999). Oracle's failure to provide any means to apportion its fees to recoverable amounts is cause

8 to deny Oracle's motion outright, but at a minimum, the Court must perform that apportionment.

9 **Damages.** Oracle lost all of its $1.4 billion damages claim. There is no justifiable reason

10 for Rimini to compensate Oracle for fees incurred litigating damages. *Rimini I* ECF No. 1049 at

11 21 (Judge Hicks holding that no fees should be awarded on withdrawn damages opinions); *King*

12 *Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 868 (M.D. Tenn. 2006) (denying fee award to

13 prevailing plaintiff where, "[o]n the first day of trial without explanation or notice to this Court or

14 to the Defendants, Plaintiff requested the dismissal without prejudice of" several copyright claims

15 that had required "laborious and contentious discovery spanning three years"). Oracle incurred

16 substantial fees (and caused Rimini to incur millions of dollars in fees) in support of its failed

17 damages claims. For instance, at least 11 of the expert reports in this case related to causation and

18 damages. Vandevelde Decl. ¶ 5. In addition, Oracle sought sweeping fact discovery concerning

19 causation and damages, which was worthless because those issues were never tried. For example,

20 Oracle served *over 800 subpoenas on Rimini's clients* (Vandevelde Decl. ¶ 3) and told the Court

21 it was doing so in order to attempt to prove causation and damages—*i.e.*, that every customer left

22 Oracle and joined Rimini because of alleged misconduct. ECF No. 153 at 21–22; ECF No. 283 at

23 1. Oracle also took 31 third-party depositions of Rimini clients for that same reason. Vandevelde

24 Decl. ¶ 4. Although Oracle's causation and damages experts discussed this evidence in their

25 reduction); *Jackson v. Gaspar*, 2022 WL 2155975, at *8–9 (C.D. Cal. Feb. 24, 2022) (50%
reduction in part for limited success on copyright claims, 30% reduction for non-compensable

26 claims). For example, in *Lanard Toys Ltd. v. Dimple Child LLC*, 843 F. App'x 894, 898 (9th Cir.

27 2021), the court reduced the requested fees by 80% "in proportion to Lanard having prevailed on
one out of five claims and having won roughly twenty percent of the damages it originally sought,"

28 holding that "[t]his approach is in line with Supreme Court precedent."

18

reports (Kennedy Decl. ¶¶ 14.9.1–3), it was not presented at trial after Oracle dropped damages.

Had Oracle never sought damages, this case would have been far simpler and less expensive.  The case could have been litigated based on Rimini's processes and a handful of clients without the need for 800 client subpoenas.  The fact that Oracle abandoned its $1.4 billion damages claim after causing Rimini to expend millions of dollars defending itself alone warrants deeming this case a "mixed judgment" case and having each party bear its own costs.  But at a minimum, Rimini should not have to pay for Oracle's enormous expenditures on a damages claim it lost completely, and fees should be reduced for Oracle's lack of success on damages.

***Non-Infringement Judgment as to EBS, JDE, and Siebel.***  Rimini should also not have to pay for Oracle's work pursuing liability claims for EBS, JDE, and Siebel, which Oracle lost completely.  Oracle alleged infringement of every update for EBS and JDE, and additionally that Rimini's Siebel processes (which do not involve updates) infringed.  *Supra* pp. 4–6.  Oracle took massive discovery attempting to prove even a single violation but proved *none*.  For instance, 49 of Oracle's requests for production sought EBS-specific documents, 17 targeted all product lines, and none targeted PeopleSoft alone.  Vandevelde Decl. ¶ 9.  In addition, nearly 60% of the subpoenas were served on clients that have never used PeopleSoft.  *Id.* ¶ 3.  And the only two clients that testified at trial used EBS, not PeopleSoft.  *Id.* ¶ 9.  The parties exchanged over a dozen letters over nine months concerning "fixes, patches, and updates" for "EBS, JDE, and Siebel" located in Rimini's "Department Shares" folder.  *Id.* ¶ 15.  None of this work ultimately contributed to an infringement finding against Rimini.

Oracle claims that its work attempting to prove infringement of these non-infringing processes should be reimbursed because it overlapped with its work on PeopleSoft.  Mot. at 17.  But that is self-evidently wrong.  To the extent there was overlap between the product lines, *the overlap was on issues that Oracle lost*, such as Rimini's use of technical specifications, remote environments, and modifications of client environments.  That is why no infringement was found as to EBS, JDE, and Siebel—the processes were different and did not involve the PeopleSoft-specific issues on which Oracle prevailed (*e.g.*, the migration, AFW tools, and rewrite files).

***Jury Trial Preparation.***  Likewise, Rimini should not have to pay for Oracle's work

preparing for a jury trial that never happened; if anything, Oracle should pay Rimini's fees spent preparing a defense for a massive damages claim that Oracle abandoned with prejudice on the eve of a jury trial. Yet, Oracle seeks fees █████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████, none of which were needed for the bench trial. Oracle's attorneys billed over █████ hours in 2022 alone for these jury trial tasks. Trunko Decl. ¶ 33; Kennedy Decl. ¶¶ 28.7.23–27. As the Court later noted, "many of the issues in these [pre-trial] motions have become moot because the parties have agreed to proceed with a bench, instead of a jury, trial." ECF No. 1427 at 2. Rimini should also not have to pay █████████████████ ██████████████████████████████████████████████████████████ ████████████████. Trunko Decl. ¶ 31.

### b.   *The Issues Oracle Lost Were Not Intertwined with Issues It Won*

A reduction for partial success is required regardless of whether Oracle's various claims were interrelated or intertwined. *Hensley*, 461 U.S. at 436. However, Oracle's assertion that its claims "share[d] a common core of facts" is not accurate, and certainly Oracle cannot show that the product lines and claims on which it lost were so related to the claims on which it prevailed that they "required substantially the same expense." *Creative Computing*, 386 F.3d at 937.

The five product lines at issue did not involve the same "common core of facts" or "same evidence." The products functioned differently, were written in different computer languages, and Rimini had different processes for each. *Supra* p. 3. The licenses were largely different and included legacy licenses in addition to Oracle-written licenses for EBS and Database, each with different restrictions. *Id*. Rimini had different support and engineering teams for each product line, and thus the deposition and trial witnesses were different for each product line. The clients were different for each product line (with very few exceptions where clients had more than one product). The extensive discovery into EBS processes and EBS clients, for example, had little if anything to do with PeopleSoft processes and PeopleSoft clients. While the same technical experts addressed each product line, they separated their analysis by product line both in their reports and their trial presentations—because they are different. *See* Tr. 2290–2476, 286–614. None of the

20

fees Oracle incurred attempting and failing to prove that EBS (for example) processes infringed, nor any of the hundreds of subpoenas it issued to Rimini's EBS clients, related to—let alone duplicated—work on claims related to PeopleSoft.

Oracle also overstates the supposed overlap between its copyright claims and its Lanham Act claim. Twelve of the fifteen statements at issue concerned Rimini's and Oracle's respective security practices—primarily a dispute about the importance of Oracle patches and the effectiveness of Rimini's virtual patching. ECF No. 1536 at 76–77, 81–83, 93. That security dispute had nothing to do with the copyright issues in the case. *See id.* at 79–83. The other three statements concerned Rimini's processes, but Oracle does not—and cannot—claim that addressing those statements "required substantially the same expense" as Oracle's unsuccessful EBS, JDE, Siebel, and damages claims. Far from it. Oracle's work on EBS, JDE, and Siebel did not contribute *at all* to Oracle's claim on those three statements because the statements were found false only as to PeopleSoft and Database. *Id.* at 169–173. Moreover, the work Oracle's counsel performed in support of its unsuccessful Lanham Act damages claim, which involved client-by-client allegations that each client left Oracle due to the alleged statements, is not related to any successful Oracle claim.

Finally, Oracle is wrong to claim that the state law claims, including Rimini's UCL claim, were interrelated with claims on which Oracle prevailed. Rimini's UCL claim involved, in large part, Oracle's Matching Service Level and other allegedly anticompetitive policies. *Id.* at 97–103. The evidence at trial related to that claim came from witnesses different from those on the copyright claims. In addition, Oracle's claim regarding the 2017 cease and desist letter did not involve any of the same proof as the copyright claims. *See* ECF No. 1253 at 9–38. Nothing about that claim involved discovery into Rimini's processes, or any other aspect of the copyright claims.

### c.   *A 70% Fees Reduction for Limited Success Is Appropriate*

Given the substantial issues, including damages, that Rimini won and Oracle lost, this is a mixed-results case for which no fees should be awarded at all. But if any fees are to be awarded, they must be reduced to account for fees Oracle spent pursuing non-compensable and unsuccessful claims, and its lack of success. While Oracle did not attempt to apportion for its partial success,

Rimini retained Dennis Kennedy, an expert in legal ethics and reasonable attorneys' fees to perform that analysis in conjunction with Oracle's invoices. A district court may consider expert testimony in determining the reasonableness of a party's fee request. *See, e.g.*, *Lobatz v. U.S. W. Cellular of Cal.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000). As set forth in his declaration, Mr. Kennedy concluded that at least a 50% reduction is warranted for Oracle's loss on its $1.4 billion damages claim. Kennedy Decl. ¶¶ 27–28.7.36, 29–30.10. Rimini submits that this percentage is conservative given the magnitude of the damages claim and the fees expended in pursuing it, including Oracle issuing subpoenas to over 800 Rimini clients. Mr. Kennedy further concluded that an additional reduction of 15% to 25% is appropriate to apportion for Rimini's judgment of non-infringement as to three product lines, Oracle's failure to obtain any relief on Oracle Database, and Oracle's partial success on PeopleSoft. *Id.* ¶¶ 28.8–28.11.8, 30.11–31.

### 2. An Additional 30% Reduction for Unreasonable Billing Is Warranted

The Court should apply an additional 30% reduction to account for Oracle's unreasonable billing practices. Under Ninth Circuit law (and as Judge Hicks did in *Rimini I*), courts may reduce fees without performing a line-by-line analysis of the invoices, to account for improper billing practices such as block billing, excessive conferences, redundant and excessive work, vague entries, unreasonably long days, and administrative and clerical tasks.[4]

Rimini retained Professor William G. Ross, a legal ethics professor and author of a leading book on billing ethics, *The Honest Hour: The Ethics of Time-Based Billing by Attorneys*, to analyze Oracle's invoices. Professor Ross identified numerous billing deficiencies, including billing that *conflicts with Oracle's own billing practices and guidelines*. For example, he explains that "block

---

[4] *See Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 245 (9th Cir. 2021) ("attorneys' fees awards can be reduced where a party block bills because 'block billing makes it more difficult to determine how much time was spent on particular activities'"); *Bird v. Or. Comm'n for the Blind*, 2021 WL 7709970, at *4 (D. Or. Aug. 11, 2021) ("block billing may increase time by 10% to 30%"); *Nat'l Rifle Ass'n of Am. v. City of Los Angeles*, 2020 WL 13678741, at *5 (C.D. Cal. Oct. 30, 2020) (reducing fee award by over 50% because "numerous attorneys performed the same tasks related to the same filings, [and] the billing records often do not reveal how the work differed from similarly described work done by their colleagues"); *Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*, 2015 WL 1160584, at *5 (N.D. Cal. Mar. 13, 2015) ("Here, counsel from the two law firms at issue billed for conferences to discuss service on Defendants, 'next steps,' timing, and strategy. To charge Plaintiff twice for the same conversation would be duplicative and therefore excessive."); *Gilead Scis., Inc. v. Merck & Co.*, 2017 WL 3007071, at *8 (N.D. Cal. July 14, 2017) (35% fee reduction for vague entries).

billing"—the practice of lumping multiple tasks into one billing entry—consistently overstates time worked.  Ross Decl. ¶¶ 40–46; *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (noting studies showing block billing increases time by up to 30%).  Likely for this reason, Oracle's billing guidelines specify that ███████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████ Ross Decl. ¶ 40.  Similarly, Oracle's billing guidelines state that ████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████ *Id.* ¶ 59.  Oracle's time entries are also █████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████. *Id.* ¶¶ 11–27.  Compounding that problem, Oracle seeks █████████████████ for tasks that are partially redacted—in sharp contrast to *Rimini I* where it explicitly did not seek fees for redacted entries.  ECF No. 1569 at 35; Trunko Decl. ¶ 12.  Professor Ross also noted duplicative billing entries, conferences with many attorneys or groups described only as █████████████████████████████████████ Ross Decl. ¶¶ 28, 47, 61, 65.  Among the errors, one of Oracle's lead trial attorneys billed ███████████████ Trunko Decl. ¶ 29.  Oracle also billed ███████ *0 in clerical tasks*, such as ███████████████ ██████████████████████ *Id.* ¶ 28.

Moreover, Oracle massively overstaffed this case in a way that inevitably resulted in inefficient billing.  Oracle's invoices list ██████ *billers* from *five* different law firms.  Trunko Decl. ¶ 7.  Oracle makes no attempt to explain why so many billers were necessary or how five law firms avoided all duplication.  Oracle also brought on █████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████—and is claiming reimbursement for all the work those attorneys conducted to bring themselves up to speed on a case that had 102 depositions, 35 expert reports, 40 million pages of documents produced, and 20,000 trial exhibits.  *See* Vandevelde Decl. ¶ 2.  █████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████.  Trunko Decl. ¶¶ 30, 34.  While it is impossible to fully

23

1   quantify how shockingly inefficient that is, Oracle's invoices show ███████████

2   ████████████████████████████████████████████████████████████

3   █████████████████████████████████   Ross Decl. ¶ 67.  All of this inefficiency is

4   unreasonable, particularly considering that Oracle's counsel's billing rates ████████

5   ███████████

6          Given these pervasive deficiencies, a 30% reduction is appropriate.  Ross Decl. ¶ 10.  In

7   *Rimini I*, Judge Hicks held that "Oracle's billing records do include some inconsistencies that

8   violate regular billing practices and guidelines, such as improper block billing" and assessed a

9   20% reduction in Oracle's fees.  *Rimini I* ECF No. 1049 at 19–20.  Here, the deficiencies in

10  Oracle's billing and overstaffing of attorneys are more severe than in *Rimini I* and warrant a larger

11  reduction.  Together, a 70% reduction for Oracle's partial success and a further 30% reduction for

12  Oracle's unreasonable billing would result in fees of $14.47 million ($68,913,126.65 x .3 x .7).

13  **D.     Oracle's Request for e-Discovery Expenses Should Be Denied as a Matter of Law**

14         Oracle's request for $1.37 million in e-discovery expenses is frivolous.  Oracle knows e-

15  discovery expenditures are not recoverable as "costs" as a matter of law because the Supreme

16  Court so ruled *in a case between Rimini and Oracle*.  *Rimini Street, Inc. v. Oracle USA, Inc.*, 139

17  S. Ct. 873, 878 (2019) ("§ 1920 . . . do[es] not authorize an award for expenses such as expert

18  witness fees, *e-discovery expenses*, and jury consultant fees"); *see, e.g.*, *Transverse, LLC v. Iowa*

19  *Wireless Servs, LLC*, 2020 WL 614590, at *6 (W.D. Tex. Feb. 7, 2020) ("the Supreme Court has

20  recently read the term 'costs' in  § 1920 narrowly . . . meaning that e-discovery expenses are not

21  authorized under § 1920").  Oracle inexplicably fails to mention this binding precedent.[5]

22                                  **IV.     CONCLUSION**

23         Oracle's request for fees and costs should be denied.  Alternatively, if the Court awards

24  fees, it should limit them to no more than $14.47 million, which does not consider the millions of

25  dollars Rimini incurred litigating and defeating Oracle's unmeritorious claims.  E-discovery costs

26  are not recoverable as a matter of law and should not be awarded.

27

28  _____
    [5] Even under the pre-*Rimini* case law, the costs Oracle seeks would not have been recoverable
    because they are not akin to "copying."  *See* Vogel Decl. ¶ 20.

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  February 20, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By:  _____/s/ Eric D. Vandevelde_____
          Eric D. Vandevelde

*Attorneys for Defendants/ Counterclaimants*
*Rimini Street, Inc., and Seth Ravin*

RIMINI'S OPPOSITION TO ORACLE'S MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 2:14-CV-01699-MMD-DJA

Gibson, Dunn &
Crutcher LLP