UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ORACLE INTERNATIONAL
CORPORATION, *et al.*,

                          Plaintiffs,

     v.

RIMINI STREET, INC., *et al.*,

                       Defendants.

Case No. 2:14-cv-01699-MMD-DJA

ORDER

## I.   SUMMARY

This was a software copyright and unfair competition dispute between Plaintiffs and Counter Defendants Oracle America, Inc., and Oracle International Corporation (collectively, "Oracle") and Defendants and Counter Claimants Rimini Street, Inc., and Seth Ravin (collectively, "Rimini") generally regarding Rimini's unauthorized copying of Oracle's enterprise software into and from development environments created by Rimini for its clients, along with disputes regarding allegedly false statements in marketing and advertising and unfair competition. (ECF Nos. 1253 at 2, 1305 at 12-13.) Following a bench trial, the Court mostly—but not entirely—found in Oracle's favor and entered a permanent injunction against Rimini. (ECF Nos. 1536 ("Bench Order"), 1537 (the "Injunction"), 1538 ("Judgment").) Before the Court is Oracle's motion for attorneys' fees and costs seeking $70,602,364.20. (ECF No. 1560 ("Motion"); *see also id.* at 30.)[1]

---

[1]This docket entry contains redactions. The sealed, unredacted version of this motion was docketed at ECF No. 1568. The redacted version of Rimini's response was docketed at ECF No. 1588, and the sealed, unreacted version was docketed at ECF No. 1595. The redacted version of Oracle's reply was docketed at ECF No. 1604 and the sealed, unredacted version was docketed at ECF No. 1607. Some of the exhibits

Because Oracle has shown it is entitled to fees and costs, but the portion of its fees request seeking recovery of fees incurred to prepare for a jury trial Oracle decided to forego is slightly excessive, the e-discovery costs it seeks are not recoverable, and as further explained below, the Court will grant in part, and deny in part, the Motion.

## II.   DISCUSSION

The Court first addresses whether Oracle is entitled to recover its attorneys' fees, then whether its requested fees are reasonable, and then Oracle's request for costs.

### A.   Entitlement to Fees

The Court found in the Bench Order that Oracle prevailed on some of its copyright claims, including its claims under the Digital Millenium Copyright Act ("DMCA"), and its Lanham Act claims. The Court rejects Rimini's contrary argument that this is a mixed results case and thus no party is really the prevailing party. (ECF No. 1595 (sealed) at 15-17.) To start, the Court found that Oracle mostly prevailed in the Bench Order (ECF No. 1536 at 1, 5 n.2, 193, 196) and then reiterated that finding in its order denying Rimini's emergency motion to stay the Injunction (ECF No. 1553 at 1, 5-6). The Court also stated Oracle mostly prevailed in the Injunction. (ECF No. 1537 at 1 ("As explained in the Court's concurrently issued bench order, Oracle mostly prevailed both pretrial and at trial.").) And the Judgment also reflects that Oracle was the prevailing party. (ECF No. 1538 at 1.) But perhaps most significantly, the Court decided to issue the Injunction,[2] which reflects that Oracle established Rimini's liability as to some of its claims and some of Rimini's support processes. *See Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1038 (9th Cir. 2018) (stating that actual success involves establishing liability even if the damages awarded are nominal or nothing). The Injunction also reflects that Oracle obtained a material

associated with these motions were also filed under seal. United States Magistrate Judge Daniel J. Albregts granted the corresponding motions to seal. (ECF Nos. 1576, 1578, 1602, 1609.) The Court generally cites to the sealed versions of the documents in this order but indicates that they are sealed and does not disclose sensitive information.

[2]It remains stayed as of the date of entry of this order. (ECF No. 1553.)

alteration of the relationship between Oracle and Rimini—because it constrains what Rimini can do, say about Oracle, and requires Rimini to issue a corrective press release. *See Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009) (holding that "the material alteration test the Supreme Court articulated in *Buckhannon* governs the prevailing party inquiry under § 505 of the Copyright Act"); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1078 (9th Cir. 2015) (stating that the "material alteration" test also applies to the determination of who is the prevailing party as to Lanham Act claims). In contrast, Rimini obtained no injunction against Oracle. Oracle won the material alteration in the parties' relationship, not Rimini. This means that Oracle is the prevailing party even though Oracle stipulated to the dismissal with prejudice of its damages claims shortly before trial.

The Court further finds that Rimini's approach of tallying up claims on which Oracle prevailed (ECF No. 1595 (sealed) at 10-14, 16) does not reflect the reality that much of the trial—and the Court's corresponding findings in the Bench Order—was focused on Oracle's copyright infringement claims regarding the PeopleSoft product. (*Compare* ECF No. 1536 at 10-62, 65-69, 134-57, 164-67 (findings as to PeopleSoft) *with id.* at 62-64, 73-76, 157-64 (findings as to all other products).) And Oracle largely prevailed on its copyright infringement claims as to Rimini's support processes for Oracle's PeopleSoft product. (*See generally id.*) Thus, even though Oracle did not prevail on all its copyright claims, it substantially prevailed. Moreover, the Court's Lanham Act findings are not exclusively tied to any one Oracle product, so Rimini's tallying approach does not quite make sense when applied to them. (*Id.* at 76-95, 169-73.) In addition, Rimini did not prevail on the only claim it went to trial on. (*Id.* at 95-115, 173-82.) In sum, Rimini's tallying approach to contest whether Oracle is the prevailing party paints an inaccurate picture of the trial proceedings and the Court's findings in the Bench Order.

And the pertinent caselaw Rimini cites does not compel a different conclusion. In *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, 741 F. App'x 393, 397 (9th Cir. 2018), the

United States Court of Appeals for the Ninth Circuit affirmed on abuse of discretion review the district court's decision not to award attorneys' fees because the district court found the case unexceptional, and indeed affirmed the district court's denial of attorneys' fees to both sides. *See* 741 F. App'x at 396-97. The Court will analyze below whether this is an exceptional Lanham Act case, and to preview, finds it is because the Court found Rimini willfully made false statements. This case is accordingly not quite like *Kaloud*. Similarly, the Ninth Circuit affirmed the district court's decision not to award attorneys' fees in *Guthy-Renker Corp. v. Bernstein*, 39 F. App'x 584, 587-88 (9th Cir. 2002), again on abuse of discretion review, because the district court found the moving party had obtained only limited success on his pertinent claims, *see id.* The Court does not find Oracle's success so limited. And even that citation recognizes the Court's discretion to award fees in copyright cases.

The Court thus finds that Oracle is the prevailing party for purposes of its Motion. The Court accordingly addresses Oracle's entitlement to fees as to first Oracle's copyright claims and then Oracle's Lanham Act claims.

### 1. Copyright Claims

The Court may award attorneys' fees and costs to the party that prevails on copyright claims. *See* 17 U.S.C. § 505. As to the DMCA in particular, "[t]he DMCA authorizes a court, 'in its discretion,' to allow recovery of costs and to award 'reasonable attorney's fees' to the prevailing party." *Sony Computer Ent. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006) (quoting 17 U.S.C. § 1203(b)(4), (5)); *see also id.* (finding award of attorneys' fees and costs appropriate under the DMCA where the DMCA infringement was willful). In determining whether to award fees and costs, the Court must consider the factors described in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994), which include: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Perfect 10,*

4

*Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017) (citation omitted). The Ninth Circuit also instructs district courts to consider, "the degree of success obtained, the purposes of the Copyright Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Id.* (citation omitted). But these factors are not exclusive, and not all of them must be met for the Court to award fees. *See id.*

The parties proffer competing arguments on many of these nonexclusive factors, so the Court addresses them in turn. Oracle first argues it achieved a high degree of success on its Lanham Act claims because it got Rimini's claim dismissed pretrial and won the Injunction against Rimini, which provides in pertinent part that Rimini made false statements and requires Rimini to issue a corrective press release about them. (ECF No. 1568 (sealed) at 18-19.) And Oracle argues it achieved a high degree of success on its copyright claims because it proved many acts of infringement, the Court found Mr. Ravin vicariously liable, and the Court's Injunction requires both deletion of various infringing files and requires Rimini to stop using its infringing automated tools. (*Id.*) Rimini counters that Oracle only obtained a limited degree of success because Oracle dropped its damages claims shortly before trial, and Oracle lost its copyright claims as to Oracle products EBS, JDE, and Siebel—along with failing to obtain total victory as to PeopleSoft and Database. (ECF No. 1595 (sealed) at 18.) The Court agrees with Oracle.

Indeed, the Court agrees with Oracle's argument offered in its reply (ECF No. 1607 (sealed) at 7-8) that Rimini's argument does not adequately address the Injunction. The Injunction reflects the Court's copyright findings in the Bench Order that Process 2.0 generally infringes, Rimini did not change its conduct following Judge Hicks' findings in *Oracle I*, Rimini violated the DMCA many times, and that Rimini must discontinue its use of automated tools to perform PeopleSoft support. The Court also ordered Rimini in the Injunction to delete many infringing files. The Injunction reflects a significant victory on Oracle's part even though Oracle dropped its damages claim because, if it goes into

effect,[3] it will force Rimini to significantly change its PeopleSoft software support business. On that note, even Rimini argued to the Court that compliance with the Injunction would bring an end to an entire business line. (ECF No. 1542 at 9.) So while it is true that Oracle dropped its damages claims, Oracle nonetheless achieved a significant degree of success on its claims.

Oracle next argues that Rimini's litigation position was objectively unreasonable because the Court found some of Rimini's statements about the non-infringing nature of its support services were false—and that Rimini knew they were false when it made them. (ECF No. 1568 (sealed) at 19-21.) Rimini counters that Oracle also took some unreasonable positions, most notably not dropping its damages claim until right before trial, Rimini prevailed on some of its arguments, and it made other arguments in good faith even though the Court ultimately disagreed with them. (ECF No. 1595 at 18-20.) The Court agrees with Rimini's arguments for the most part, but finds they overlook the Court's findings about the willfulness of Rimini's copyright infringement and Rimini's related false statements.

"[W]illful infringement is an important factor favoring an award of fees[,]" *Hist. Rsch. v. Cabral*, 80 F.3d 377, 379 (9th Cir. 1996), and the Court's findings regarding Rimini's willful copyright infringement highlight an objectively unreasonable position at the core of this case. Indeed, it was Rimini who filed this case in an alleged attempt to establish that its 'Process 2.0' did not infringe Oracle's copyrights. (ECF No. 1.) But Rimini "knew when it made them" that statements about its purportedly revised support processes were false. (ECF No. 1536 at 77; *see also id.* at 12-18 (finding that Rimini did things it knew infringed and lied about the timing and purpose of the migration), 76-79 (finding other statements about Rimini's revised support processes were false).) Rimini also decided not to comply with the orders Judge Hicks issued in *Oracle I.* (*Id.* at 69-73.) In other words, this case

---

[3]Again, it is stayed pending a ruling from the Ninth Circuit. (ECF No. 1553.)

began with some false representations to the effect that Rimini had changed its practices already found infringing in *Oracle I* that Rimini knew were false when it filed this case. So what the Court views as the core position Rimini took in this case was objectively baseless regardless of the fact that Rimini took some other, reasonable positions—some of which the Court ultimately agreed with.

Oracle next argues that it needs the fee award it requests to be made whole (ECF No. 1568 (sealed) at 21), and Rimini counters that Oracle had every opportunity to be made whole by seeking a damages award, but forwent that opportunity when it dropped its damages claims right before trial (ECF No. 1595 (sealed) at 20). The Court agrees with Rimini on this argument. Damages are traditionally the vehicle for making parties whole, and the Supreme Court overruled the precise portion of *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987) that Oracle cites to support this argument in *Fogerty*, 510 U.S. at 114 in any event. This 'make whole' factor accordingly does not favor awarding Oracle fees for the copyright claims it prevailed on.

Oracle then argues a fees award is necessary to deter Rimini from future infringement, highlighting that Judge Hicks previously found this factor supported awarding fees in *Oracle I* and that the deterrence rationale is only stronger now that the Court has found Rimini a 'recidivist infringer.' (ECF No 1568 (sealed) at 21-22.) Rimini counters in pertinent part that it is already deterred and has no interest in infringing Oracle's copyrights. (ECF No. 1595 (sealed) at 20.) But this very case illustrates that Rimini's response is not credible.

Deterrence is a valid reason to award fees. *See Perfect 10*, 847 F.3d at 675. And deterrence is also a valid reason to award fees here. Again, Rimini filed this case based on its false representations that it had changed its processes to avoid infringing Oracle's copyrights, *see supra*, but it had not stopped infringing and the Court found Rimini a recidivist infringer (ECF No. 1536 at 190). In addition, Rimini litigated this case for some nine years before the Court found it a recidivist infringer who lied to conceal its

infringement, enabling it to successfully compete against Oracle for the support of Oracle's products during those nine years. Rimini's false statements and history of recidivism suggest that more deterrence is required to prevent Rimini from infringing on Oracle's copyrights going forward. The deterrence factor strongly favors awarding Oracle fees.

Oracle finally argues that awarding it fees would be in line with the purposes of the Copyright Act because a fee award would reward Oracle for pursuing its rights under the Copyright Act. (ECF No 1568 (sealed) at 22.) Rimini counters in pertinent part that this factor does not favor awarding Oracle fees because some of Oracle's positions—which the Court rejected—were inconsistent with the purposes of the Copyright Act and would have stifled competition if Rimini did not defend against them. (ECF No. 1595 (sealed) at 20-21.) Rimini further notes that meritorious defenses can also further the purposes of the Copyright Act. (*Id.*) The Court finds both parties' arguments as to this factor somewhat persuasive and accordingly finds it neutral.

The Copyright Act's "ultimate aim is ... to stimulate artistic creativity for the general public good." *Mattel, Inc v. MGA Ent., Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (citation omitted). But Oracle is not an artist. Pertinent to the Court's copyright infringement findings, Oracle is an enterprise software company who acquired PeopleSoft. (ECF No. 1536 at 10.) And Oracle's argument as to this factor treats as equivalent the creator of a work and someone who later acquired it. But no reasonable person would consider an art collector similarly situated to the person who painted the painting. So the Court does not find Oracle's argument on this factor entirely persuasive. That said, the Court agrees with Oracle that it found Rimini widely and willfully infringed Oracle's copyrights despite what should have been clear indications from Judge Hicks' prior orders that the way Rimini ran its PeopleSoft support business was infringing. Oracle's assertion of its copyrights to deter such willful infringement accordingly does seem somewhat consistent with the purposes of the Copyright Act, as embedded within it is the presumption that artists

unable to deter infringement may be less inclined to create—because they would less reasonably expect compensation for their original works. The Court also agrees with Rimini that meritorious defenses can serve the purposes of the Copyright Act. But only some of Rimini's defenses were meritorious. As explained above, some of them were objectively baseless. In sum, the 'purpose of the Copyright Act' factor is a mixed bag that nets out to neutral.

Weighing all these factors together, the Court finds that Oracle is entitled to fees for substantially prevailing on its copyright claims as to PeopleSoft and on its DMCA claims.

### 2.      Lanham Act Claims

The Court may also award fees to the prevailing party in exceptional Lanham Act cases. *See* 15 U.S.C. § 1117(a). "'[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). In deciding whether to award fees to the prevailing party on a Lanham Act claim, district courts should consider the totality of the circumstances, exercising their equitable discretion considering the nonexclusive factors outlined in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard. *See id.* But because the standard imposed by *SunEarth* "is less stringent than the previous 'willful infringement' standard, it stands to reason that [a] case of willful infringement would satisfy the *SunEarth* test." *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 550, (2024).

This is an exceptional case for the reasons described above as to Oracle's copyright and DMCA claims, and because the Court found Rimini willfully made the false

statements included in the Injunction. *See id.* (stating willful infringement would satisfy the *SunEarth* test). The Court included 15 false statements in the Injunction; three of which relate to whether Rimini's support processes infringe Oracle's copyrights (the Court includes the *TomorrowNow* statement in this category), and 12 which relate to the relative security offerings of the two companies. (ECF No. 1537 at 4-7.) As to the statements about Rimini's support processes, the Court found they were false and misleading, Rimini knew they were false and misleading, and Mr. Ravin was involved in making them. (ECF No. 1536 at 72, 77, 95, 115.) Similarly, the Court found Rimini's statements regarding security false and misleading as well. (*Id.* at 169-73, 195-96.) The Court also found the false and misleading nature of these statements irreparably harmed Oracle. (*Id.* at 188.) In sum, the Lanham Act portion of this case was exceptional because of Rimini's willful violations of the Lanham Act. Oracle is accordingly entitled to its fees as to its Lanham Act claims. *See Jason Scott Collection*, 68 F.4th at 1223 n.13.

### B.   Reasonableness of Fees

Now that the Court has determined Oracle is entitled to fees, the question becomes, how much? Oracle argues the Court should award it full fees of $68,913,126.65 (ECF No. 1561-3) because its successful and unsuccessful claims are intertwined, Oracle was charged reasonable hourly rates, and the amount billed on the case was reasonable. (ECF No. 1568 (sealed) at 23-29.)

Rimini counters that Oracle's requested fees are unreasonable and proposes basically four different approaches to reduce the amount of fees the Court awards supported by declarations from three experts:[4] (1) only award fees for the claims Oracle prevailed on, not the claims Oracle did not prevail on; (2) apply across-the-board reductions of certain percentages; (3) deduct fees incurred in certain bills because the bills are unreasonable or violate principles of honest billing; or (4) deduct fees incurred in

---

[4]The Court has not certified them as experts, but the Court nonetheless refers to them as experts in this order.

preparation for the jury trial that Oracle decided to forgo. (ECF No. 1595 (sealed) at 22-30; *see also* ECF Nos. 1597, 1598, 1599 (sealed expert declarations as to fees).)

The Court agrees with Rimini that it should deduct categories of fees closely associated with preparation for the jury trial that Oracle decided to forgo and deduct an additional approximately $30,000 for billing entries documenting administrative tasks billed hourly but will otherwise award Oracle the rest of the fees it requests. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). The Court exercises its discretion and finds the approach of identifying specific hours that should be eliminated the better one here. *See id.* (giving courts this discretion). The Court further describes below why it finds some of Rimini's proposed approaches for fee reductions unpersuasive, and others based on the elimination of specific hours for jury trial preparation and administrative work persuasive.

To start, Rimini argues that some fees should be deducted because they were incurred while Oracle was attempting to establish causation and damages, and Oracle dropped its damages claims shortly before trial. (ECF No. 1595 at 24-25.) But Rimini overlooks that causation was still an important issue in the bench trial, and indeed the Court found in the Bench Order that Rimini's actions caused Oracle harm in deciding to issue the Injunction. (ECF No. 1536 at 183-91 (finding that Rimini caused Oracle harm in finding that the irreparable harm and inadequacy of monetary damages prongs of the permanent injunction analysis favored issuing the Injunction).) Said otherwise, the Bench order contained significant causation findings. (*Id.*) So a reduction in fees for fees incurred establishing causation and damages without separating one from the other would be unreasonable because causation was still an important issue during the bench trial.

Rimini next argues that the Court should apportion fees and decline to award Oracle fees for claims on which it did not prevail, which Rimini contends were not intertwined with the claims Oracle prevailed on. (ECF No. 1595 (sealed) at 25-27.) This

approach is valid in the abstract, but the Court does not find it the best approach here—for two reasons. First, for the reasons Oracle provides in its Motion (ECF No. 1568 (sealed) at 23-26), Oracle's successful and unsuccessful claims were intertwined. And allocation is not required where there is a common core of facts between successful and unsuccessful claims. *See Oracle USA, Inc. v. Rimini St., Inc.*, 783 F. App'x 707, 711 (9th Cir. 2019) (affirming Judge Hicks' decision not to apportion fees in *Oracle I*). Second, and perhaps more importantly, Rimini's request to apportion fees is based on Rimini's expert's John L. Trunko's analysis where he "identified at most only 9,172.39 hours totaling $3,902,190.68 in fees associated with specific claims and issues on which Oracle prevailed, such as PeopleSoft, the DMCA, and the Lanham Act." (ECF No. 1598 (sealed) at 13.) That estimate is unrealistically low considering that Oracle seeks around $70 million in fees and the Court has determined that Oracle mostly prevailed. A reasonable estimate would thus put fees around at least more than half of that amount. Moreover, Mr. Trunko supports his estimate with a citation to his Exhibit 6, which does not show the actual billing entries he has determined are related to the claims he understands Oracle prevailed on, and instead shows a series of totals of hours and fees by timekeeper. (ECF No. 1598-6 (sealed).) This does not give the Court enough information to assess the validity of Mr. Trunko's analysis. The Court accordingly declines to apportion fees based the claims Oracle prevailed on.

However, the Court agrees with Rimini that it would be unfair and unreasonable to award Oracle fees incurred in preparation for a jury trial that Oracle chose to forego. (ECF No. 1595 (sealed) at 25-26.) Indeed, it was Oracle who initiated the stipulation to convert the trial from a jury to a bench trial. (ECF Nos. 1409, 1411, 1416, 1417.) It would thus be unreasonable to award fees to Oracle for work that it decided to render unnecessary, particularly after years of litigation where Rimini understood it was defending against some $1.4 billion in alleged damages. (ECF No. 1595 (sealed) at 9-10, 24-25.) Rimini's expert Mr. Trunko specifically identified three categories of bills that the Court finds

reasonably relate to the jury trial: (1) the mock jury exercise ($1,042,558.10); (2) third party subpoenas because those were intended to prove damages and causation on a customer-by-customer basis ($6,589,460.61); and (3) jury trial tasks ($3,058,185.98). (ECF No. 1598 (sealed) at 17-18.) These deductions total $10,690,204.69. As to the subpoenas specifically, the Court agrees with Rimini that, had Oracle never sought damages, "[t]he case could have been litigated based on Rimini's processes and a handful of clients without the need for 800 client subpoenas." (ECF No. 1595 (sealed) at 25.) Thus, the deduction for time spent on third-party subpoenas is reasonable. And overall, this $10,690,204.69 deduction for tasks related to a jury trial that never happened is reasonable.

Rimini also argues for across-the-board percentage reductions in Oracle's fees based on declarations from their experts Dennis L. Kennedy and William G. Ross (ECF No. 1598 (sealed) at 27-30), but the Court finds the deductions adopted above primarily to account for Oracle's decision to dismiss its damages claims shortly before trial and forego a jury trial provide a more specific and reasoned basis for deductions than an across-the-board percentage would. Moreover, it is possible that the amount deducted for third party subpoenas is overinclusive because, as the Court noted above, causation remained relevant to the bench trial, even though damages were no longer. It is also possible that all these deductions are somewhat overstated because Rimini's expert is the one providing the numbers. *See Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 905 (9th Cir. 1995) ("[A] district court does not abuse its discretion when it resorts to a mathematical formula, even a crude one, to reduce the fee award to account for limited success."). And while across-the-board percentage reductions have been found acceptable, *see id.*, reductions grounded in categories of unreasonable billing nonetheless seems more precise. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). In sum, the Court rejects Rimini's proposal to apply across-the-board

13

percentage reductions to Oracle's fees and further notes that the reductions for Mr. Trunko's third party subpoenas category should account for some or all the purported overbilling Rimini complains about.

Rimini's expert Mr. Trunko also proposes additional categories of unreasonable bills that he argues warrant further reductions to Oracle's fees award. (ECF No. 1598 (sealed) at 10-18.) The Court addresses the remaining categories in the order Mr. Trunko presents them. Mr. Trunko first argues for a reduction for block billing, but the exhibit he cites does not provide examples of the bills he contends are block billed, much less the actual entries. (*Id.* at 10-11; *see also* ECF No. 1598-3 (sealed) (containing a list of timekeepers and totals of their hours and fees).) The Court also finds Oracle's counterargument persuasive that a small amount of block billing is acceptable, and even taking Mr. Trunko at his word, the alleged amount of block billing is 4.7% of the total hours Oracle seeks its fees for. (ECF No. 1607 (sealed) at 14.) The Court therefore rejects an additional reduction based on block-billing.

Mr. Trunko next argues for reductions based on 'vague' time entries, but the Court does not find the examples he provides too vague. (ECF No. 1598 (sealed) at 11-13.) Mr. Trunko further explains that many of the time entries he finds objectionable under this category 'contain' words that indicate vagueness but does not list out the rest of the bill entries or point the Court to an exhibit that shows all the entries he objects to. So, the Court cannot really say whether these entries are vague, and it is unreasonable to infer that an entire bill entry is vague because it contains a single word suggesting vagueness without providing the rest of the entry. In addition, the entries that seem the vaguest in Mr. Trunko's report, such as 'attention to customer subpoenas' and 'work on third party productions' should already be captured in the deduction for hours spent on the third party subpoenas that the Court has already decided to apply to Oracle's fees award. The Court accordingly does not find a further deduction for vague entries warranted, understanding

1  that some of these entries are presumably included in the deduction category for third

2  party subpoenas.

3          Mr. Trunko then argues a further deduction for long billing days is warranted, but

4  many of the examples he points to appear to be either right before or during trial, and long

5  billable days are unfortunately to be expected preparing for and during trial, particularly a

6  trial as complex as this one. (ECF No. 1598 (sealed) at 13-15.) Moreover, the exhibits (11

7  and 12) that Mr. Trunko uses to support this portion of his declaration do not give the

8  Court any insight as to why various timekeepers may have billed long days on the

9  occasions Mr. Trunko identified, so the Court cannot find unreasonable the fees billed for

10  work performed on those long days. (*Id.*; *see also* ECF Nos. 1598-11 (sealed), 1598-12

11  (sealed).) The Court declines to further reduce Oracle's fees for purportedly long days.

12          Mr. Trunko next argues a further deduction for excessive conferencing and team

13  meetings between attorneys is warranted. (ECF No. 1598 (sealed) at 15.) But the Court

14  would both hope and expect that attorneys are meeting in a matter as complicated as this

15  one, involving this many attorneys, as hours spent meeting could eliminate many hours

16  of duplicative or unnecessary work. The Court is indeed unsure how a case like this one

17  could efficiently progress without team meetings. Regardless, the Court rejects Rimini's

18  invitation to further reduce Oracle's fees for time spent on meetings between attorneys.

19          Mr. Trunko then argues for a further reduction for time spent performing

20  administrative tasks. (*Id.* at 15-16.) To support this argument, Mr. Trunko cites two

21  exhibits: Exhibit 10 and Exhibit 14. (*Id.*) The Court agrees with Mr. Trunko that the

22  examples provided in Exhibit 10 are clerical tasks billed at hourly rates, and accordingly

23  agrees a reduction is warranted. *See Gilead Scis., Inc. v. Merck & Co.*, No. 13-CV-04057-

24  BLF, 2017 WL 3007071, at *8 (N.D. Cal. July 14, 2017) (citing *Nadarajah v. Holder*, 569

25  F.3d 906, 921 (9th Cir. 2009), and agreeing that a fees reduction is warranted for clerical

26  tasks such as maintaining files billed at hourly rates). The fees for the examples detailed

27  in Mr. Trunko's Exhibit 10 total $30,700.85. (ECF No. 1598-10 (sealed) at 13-15.) The

28

Court will accordingly apply an additional reduction of $30,700.85 to Oracle's fees award. However, Mr. Trunko's Exhibit 14 suffers from the same deficiency the Court has identified above as to several of his other exhibits—it lists timekeepers, totaling some of their hours and their fees billed, but does not show the Court the billing entries Rimini is objecting to. (ECF No. 1598-14 (sealed).) Mr. Trunko further explains in his declaration that the entries reflected in Exhibit 14 contain words like 'upload,' 'download,' 'finalize,' and 'forward.' (ECF No. 1598 (sealed) at 16.) But in addition to not showing the Court what the rest of the entries say, the Court notes that 'finalizing' a document such as a motion for summary judgment can be a substantive task that Oracle should be able to recover its fees on. The Court accordingly declines to further reduce Oracle's fees to reflect the entries covered by Mr. Trunko's Exhibit 14.

Mr. Trunko next argues for a reduction in Oracle's fees for multiple entries on the same day with the same description for each. (*Id.* at 16-17.) But this proposed reduction is illogical. It may take several days or even weeks to draft a motion. An attorney may work on it all morning, take a break for lunch, and then work on it again in the afternoon. So multiple entries on the same day with the same description does not necessarily indicate duplication—it may just indicate a longer project. The Court declines Rimini's invitation to further reduce Oracle's fees based on the 'identical entries' category.

Mr. Trunko finally argues for a reduction in fees for excessive staffing, particularly calling out time spent by attorneys added to the case after Oracle's lead attorneys switched firms, suggesting that the newly added attorneys were billing time for familiarizing themselves with things that already happened in the case. (*Id.* at 17.) This is a fair critique, but the Court declines to further reduce Oracle's fees based on this category because of the unique circumstances of this case. First, this case was filed in 2014 and went to trial in late 2022. It is reasonable to expect that some attorneys would change over time given the length of this litigation. Second, the Court agrees with Oracle (ECF No. 1607 (sealed) at 16) that Rimini's allegations of overstaffing are hypocritical

given that Rimini too employed several law firms and many lawyers over the life of this case. The Court declines to further reduce Oracle's fees based on Mr. Trunko's 'excessive staffing' category.

Zooming back out, Rimini does not challenge the reasonableness of the hourly rates Oracle was charged, and the Court finds the hourly rates reasonable. (ECF No. 1595 (sealed).) Indeed, the fact that Rimini does not challenge the reasonableness of the hourly rates Oracle's attorneys charged contributes to the Court's finding that the hourly rates Oracle's attorneys charged were reasonable. But other factors contribute to this finding as well. First, Judge Hicks found that similarly high hourly rates were reasonable in *Oracle I* and awarded Oracle some $28 million in fees. *See Oracle USA, Inc. v. Rimini St., Inc.*, 324 F. Supp. 3d 1157, 1171 (D. Nev. 2018). Second, the Ninth Circuit affirmed Judge Hicks' attorneys' fees ruling and did not specifically address the hourly rates, but did not find them unreasonably high, either. *See Oracle*, 783 F. App'x 707, 711. Third, Oracle's in-house counsel James Maroulis explains that a big part of the reason he hired these attorneys for this case is that they also represented Oracle in *Oracle I.* (ECF No. 1574 (sealed) at 2-3.) So Oracle's attorneys in this case are some of the same attorneys from *Oracle I*, and both Judge Hicks and the Ninth Circuit found their hourly rates reasonable in that very similar case. Finally, Mr. Maroulis also explains that Oracle is a sophisticated consumer of legal services, it will only pay hourly rates it finds reasonable, Oracle received discounted rates from its attorneys in this case, and he reviewed the bills and found them reasonable. (*See generally id.*) All these factors support finding that the hourly rates charged by Oracle's counsel were reasonable.

In sum, the Court finds that Oracle is entitled to $10,720,905.50 ($10,690,204.69+$30,700.85) less in fees than the $68,913,126.65 it requests in its Motion (ECF No. 1561-3 (listing this as the full amount of fees sought)). That means Oracle is entitled to $58,192,221.15 in attorneys' fees.

///

1

### C.   Costs

This brings the Court to Oracle's request for its full taxable costs. (ECF No. 1568 (sealed) at 29-30.) Rimini only objects to Oracle's request for $1,368,960 in certain e-discovery costs. (ECF No. 1595 (sealed) at 30.) Rimini does not object to Oracle's other requested costs, which total $320,277.55 ($185,303.81 + $130,601.22 + $4,372.52) for deposition costs, costs related to service of process, and costs related to paper copies and trial exhibits for court. (ECF No. 1568 (sealed) at 29-30.) And the Court agrees with Oracle that award of these costs is proper for the reasons Oracle provides. (*Id.*) The Court accordingly finds Oracle is entitled to $320,277.55 in unobjected-to taxable costs.

Turning to Rimini's objection to Oracle's request for $1,368,960 in certain e-discovery costs, Rimini argues Oracle's request is frivolous because the Supreme Court held e-discovery costs are unrecoverable in an appeal from *Oracle I*. (ECF No. 1595 (sealed) at 30 (citing *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019)).) Oracle counters in reply that these e-discovery costs are taxable costs, and the Supreme Court ruling only applies to non-taxable costs—as Rimini acknowledged later in *Oracle I*. (ECF No. 1607 (sealed) at 17.) Both parties support their arguments with declarations. (ECF No. 1568 (sealed) (citing in pertinent part ECF No. 1573 (sealed) at 2-3); ECF No. 1595 (sealed) at 30 n.5 (citing ECF No. 1600 (sealed) at 7).) And while resolution of this issue requires slightly more nuance than Rimini presents in its brief, the Court agrees with Rimini.

It is true that the Supreme Court, in the opinion arising from *Oracle I*, held that full costs under the Copyright Act means the costs specified in the general costs statutes, not other types of costs. *See Oracle I*, 586 U.S. at 346. In addition, in that opinion, Justice Kavanaugh (writing for the Court) wrote that the general costs statutes, "in turn do not authorize an award for expenses such as expert witness fees, e-discovery expenses, and jury consultant fees, which were expenses encompassed by the District Court's $ 12.8 million award to Oracle here." *Id.* at 341. The disputed costs that Oracle seeks to recover

18

here are 'e-discovery expenses' (ECF Nos. 1573 (sealed) at 2-3, 1573-2 (sealed)), so Rimini is arguably correct that Oracle's request for these costs is simply barred by the Supreme Court's opinion.

However, Oracle points to a stipulation with Rimini in *Oracle I* where Rimini agreed that the Supreme Court's opinion only related to non-taxable costs, and thus did not disturb the award of taxable costs to Oracle. (ECF No. 1607 (sealed) at 17 (citing *Oracle I*, No. 2:10-cv-00106-LRH-MDC, ECF No. 1233 at 1:17-19).) Oracle then argues that the $1,368,960 in certain e-discovery costs it seeks are taxable costs permitted under 28 U.S.C. § 1920(4) ("Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case") and thus not necessarily foreclosed by the Supreme Court's opinion. (ECF Nos. 1568 (sealed) at 30, 1607 (sealed) at 17).) But Rimini has a response to this argument, too, in the form of a declaration from its expert, Peter S. Vogel. (ECF No. 1595 (sealed) at 30 n.5 (citing ECF No. 1600 (sealed) at 7.).) And the Court finds Mr. Vogel's critique of the declaration Oracle proffers from Oracle's employee Laura Fichet persuasive.

To simplify the disagreement between Ms. Fichet and Mr. Vogel, Ms. Fichet says that Oracle is entitled to some $1.3 in taxable costs for making copies necessary to respond to Rimini's discovery requests, but Mr. Vogel counters that the supporting document Ms. Fichet attaches to her declaration does not show that Oracle paid for copies. Mr. Vogel is right. Mr. Vogel first points out some discrepancies because Ms. Fichet says her Exhibit 2 is documenting ProSearch charges, but the document itself does not refer to ProSearch at all, instead apparently documenting fees paid to the firm Ryley Carlock in an Oracle system. (ECF No. 1600 (sealed) at 5; ECF No. 1573-2 (sealed) at 2-3.) And setting that aside, Mr. Vogel explains that the document shows costs incurred for processing and production of information, which, in his experience, is not the same as 'copying.' (ECF No. 1600 (sealed) at 6-7.) The Court agrees with Mr. Vogel's read of Ms. Fichet's Exhibit 2. For example, the $971,295 for 'total production cost' includes charges

for 2,260 hours of project management, which is not copying. (ECF No. 1573-2 (sealed) at 2.) And even more generally, the charges shown for processing and production do not say copying, and both logic and Mr. Vogel's experience suggest that they reflect charges for broader activities than simply copying. (*Id.* at 2-3; *see also* ECF No. 1600 (sealed) at 6-7.)

Thus, to the extent the Supreme Court opinion in *Oracle I* does not simply bar Oracle's request for $1,368,960 in certain e-discovery costs, those costs are not recoverable because Oracle has not shown that those costs reflect "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4). *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 926 (9th Cir. 2015) (stating that, "[a]s a general rule, costs and fees should be awarded to the prevailing party[,]" but "a district court's discretion to award costs is limited to particular types of costs enumerated in 28 U.S.C. § 1920") (citations omitted).

In sum, Oracle is only entitled to $320,277.55 in taxable costs. Adding that to the attorneys' fees total mentioned above sums to $58,512,498.70 ($58,192,221.15 + $320,277.55).

## III.   CONCLUSION

It is therefore ordered that Oracle's motion for attorneys' fees and costs (ECF Nos. 1560, 1568) is granted in part, and denied in part, as specified herein.

It is further ordered that Oracle is entitled to $58,512,498.70 in attorneys' fees and costs.

The Clerk of Court is directed to enter a separate judgment in Oracle's favor reflecting this award of attorneys' fees and costs.

DATED THIS 23rd Day of September 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE